# EXHIBIT 3

FILED
BOONE COUNTY

SEP 1 5 2022

CHRISTY BLAKEMORE
CLERK, CIRCUIT COURT, COLUMBIA, MO

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MISSOURI
### Office of the Clerk

**Paige Wymore-Wynn**
**Clerk of Court**

**REPLY TO:**
**80 Lafayette Street**
**Jefferson City, MO 65101**

September 12, 2022

Boone County Circuit Court
Attn: Clerk's Office
705 E. Walnut St.
Columbia, MO 65201

**Re:**     *Remand of U.S. District Court Case No.: 2:22-CV-4100-NKL*
*The Curators of the University of Missouri et al v. Corizon Health, Inc. et al*
*Boone County Case No.: 22BA-CV01701*

Dear Clerk:

The above case has been remanded to your court by the Western District of Missouri. Pursuant to the Federal Rules of Civil Procedure and 28 U.S.C. § 1447, we are enclosing a certified copy of the *Order of Remand*, as well as a copy of our Court's latest docket sheet.

The Western District of Missouri uses an electronic case management and filing system (CM/ECF). As a result, we do not maintain paper files and our "official" court file is the electronic version maintained in CM/ECF. You can access our electronic case file using CM/ECF (http://ecf.mowd.uscourts.gov). In order to access the electronic case file, you will need a PACER viewing account. If your court does not have access to a PACER account, or if you experience any PACER-related login issues, please contact PACER directly (1-800-676-6856 or https://www.pacer.gov/). Additionally, you will need Adobe Acrobat Reader installed on your computer to view the electronic documents.

Sincerely,

Paige Wymore-Wynn, Clerk of Court

*s/T. Lock*

By:    T. Lock, Deputy Clerk

Enclosures

FILED
BOONE COUNTY
SEP 1 5 2022
CHRISTY BLAKEMORE
CLERK, CIRCUIT COURT, COLUMBIA, MO

**UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

THE CURATORS OF THE UNIVERSITY OF
MISSOURI and CAPITAL REGION
MEDICAL CENTER,

        Plaintiffs,

        v.

CORIZON HEALTH, INC. and CORIZON,
LLC,

        Defendants.

Case No. 2:22-cv-4100-NKL

I HEREBY ATTEST AND CERTIFY ON 09-12-2022
THAT THE FOREGOING DOCUMENT IS A FULL TRUE AND
CORRECT COPY OF THE ORIGINAL ON FILE IN MY OFFICE
AND IN MY LEGAL CUSTODY.

PAIGE A. WYMORE-WYNN
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

BY _____ DEPUTY

**ORDER**

Plaintiffs, The Curators of the University of Missouri (the "University") and Capital

Region Medical Center ("Capital Region"), seek to remand this case to the Circuit Court of Boone

County. *See* Doc. 7. Plaintiffs bring exclusively Missouri state law claims, and accordingly argue

that this Court lacks subject matter jurisdiction given the absence of complete diversity between

the Parties. Defendants Corizon Health, Inc. and Corizon, LLC (together, "Corizon") oppose, and

succinctly identify the issue in this case: does the presence of the University of Missouri—an arm

of the State of Missouri—destroy this Court's diversity jurisdiction? Corizon suggests the answer

is no. Settled law holds the opposite. Accordingly, this Court lacks subject matter jurisdiction,

and this case is REMANDED to the Circuit Court of Boone County.

## I.    BACKGROUND

Defendant Corizon provides healthcare services to corrections facilities throughout the

United States. Corizon contracts with the Missouri Department of Corrections ("MDOC") to

provide or arrange for the provision of healthcare services to inmates in MDOC's custody.

Corizon, in turn, contracts with the University. Under that agreement (the "Agreement"), the

**UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

|  |  |
|---|---|
| THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER, <br><br> Plaintiffs, <br><br> v. <br><br> CORIZON HEALTH, INC. and CORIZON, LLC, <br><br> Defendants. | Case No. 2:22-cv-4100-NKL <br><br> *ECF DOCUMENT* <br> I hereby attest and certify this is a printed copy of a document which was electronically filed with the United States District Court for the Western District of Missouri. <br><br> Date Filed: _____ Paige A. Wymore-Wynn, Clerk <br><br> By:_____, Deputy Clerk |

<u>**ORDER**</u>

Plaintiffs, The Curators of the University of Missouri (the "University") and Capital

Region Medical Center ("Capital Region"), seek to remand this case to the Circuit Court of Boone

County. *See* <u>Doc. 7</u>. Plaintiffs bring exclusively Missouri state law claims, and accordingly argue

that this Court lacks subject matter jurisdiction given the absence of complete diversity between

the Parties. Defendants Corizon Health, Inc. and Corizon, LLC (together, "Corizon") oppose, and

succinctly identify the issue in this case: does the presence of the University of Missouri—an arm

of the State of Missouri—destroy this Court's diversity jurisdiction? Corizon suggests the answer

is no. Settled law holds the opposite. Accordingly, this Court lacks subject matter jurisdiction,

and this case is REMANDED to the Circuit Court of Boone County.

**I.    BACKGROUND**

Defendant Corizon provides healthcare services to corrections facilities throughout the

United States. Corizon contracts with the Missouri Department of Corrections ("MDOC") to

provide or arrange for the provision of healthcare services to inmates in MDOC's custody.

Corizon, in turn, contracts with the University. Under that agreement (the "Agreement"), the

1

University and Capital Region provide both impatient and outpatient healthcare services in exchange for compensation from Corizon.

The University and Corizon are the only signatories to the Agreement; the University signed the Agreement on its own behalf and for its affiliates. Capital Region is one such affiliate. Under the Agreement, certain services are offered through Capital Region and others are offered by the University directly. *See* Doc. 1-1, at 16–18. After providing services, the University seeks reimbursement from Corizon, using a procedure established by the Agreement.

The University alleges that, to date, Corizon owes more than $12,000,000.00 under the Agreement. The University raised the outstanding payments with Corizon, and while Corizon originally agreed to pay all completed claims with interest, it still has not done so. Accordingly, the University and Capital Region filed suit in the Circuit Court of Boone County. The University affirmatively alleged that federal jurisdiction was improper, given the University was an arm of the State of Missouri. Nevertheless, Corizon removed, invoking this Court's diversity jurisdiction under 28 U.S.C. §1332(a)(1). The University seeks remand because the University's status as an arm of the state destroys this Court's diversity jurisdiction, and there exists no other source of federal jurisdiction.

## II.    STANDARD

"A defendant may remove a state law claim to federal court only if the action originally could have been filed there." *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 619 (8th Cir. 2010). Corizon removed this case relying upon federal diversity jurisdiction, specifically 28 U.S.C. § 1332(a)(1). To have done so properly, Corizon must prove, by a preponderance of the evidence, that the amount in controversy exceeds $75,000 and the case is "between citizens of different [s]tates." 28 U.S.C. §§ 1332(a) and 1441(a); *see also Knudsen v. Sys. Painters, Inc.*, 634 F.3d 968,

975 (8th Cir. 2011). Statutes conferring diversity jurisdiction are to be strictly construed, as are removal statutes. *Sheehan v. Gustafson*, 967 F.2d 1214, 1215 (8th Cir. 1992); *Nichols v. Harbor Venture, Inc.*, 284 F.3d 857, 861 (8th Cir. 2002). Accordingly, a "district court is required to resolve all doubts about federal jurisdiction in favor of remand." *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997) (citation omitted).

"There is no question that a State is not a 'citizen' for purposes of [diversity jurisdiction]." *Moor v. Cnty. of Alameda*, 411 U.S. 693, 717 (1973). Nor is an entity that is merely an "alter ego" or "arm" of a State a citizen for purposes of § 1332(a)(1). *Id.* Accordingly, if a state, or arm of the state, is a party, the case is not removable on diversity grounds. *See* 14C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3723 (4th ed., Apr. 2022 update) ("Since it is well established that a state is not a 'citizen' of any state, it follows that when a state is a real party in interest, the case cannot be removed on the basis of diversity jurisdiction."); *Pub. Sch. Ret. Sys. of Missouri v. State St. Bank & Tr. Co.*, 640 F.3d 821, 833 (8th Cir. 2011) (finding claim brought by arm of state was not subject to removal pursuant to diversity statute because an arm of the state is not a "'citizen[]' for the purposes of § 1332(a)(1)[.]'"); *Missouri State Employees' Ret. Sys. v. Credit Suisse, New York Branch*, No. 09-cv-4224-NKL, 2010 WL 318652, at *6 (W.D. Mo. Jan. 21, 2010) (remanding case brought by arm of state retirement plan because "suits [by an arm of the state] are not subject to removal to federal court on the basis of diversity jurisdiction.").[1]

---

[1] *See also Maryland Stadium Auth. v. Ellerbe Becket Inc.*, 407 F.3d 255, 260 (4th Cir. 2005) ("Thus, if one party to an action is not a citizen, and therefore not able to sue or be sued in federal court under § 1332, the district court does not have jurisdiction of the action under § 1332, even if all other parties to that action are citizens of different states."); *Louisiana v. Union Oil Co. of California*, 458 F.3d 364, 366 (5th Cir. 2006) ("Ordinarily '[i]n an action where a state is a party, there can be no federal jurisdiction on the basis of diversity of citizenship because a state is not a citizen for purposes of diversity jurisdiction.'"); *Univ. of S. Alabama v. Am.*

## III.   DISCUSSION

The Parties do not dispute that the amount in controversy exceeds $75,000 in this case. Accordingly, whether this Court has subject matter jurisdiction turns on whether this lawsuit is between citizens of different states. Corizon argues that diversity exists unless: (1) the University is an arm of the state and, if so, (2) the University's presence in this case destroys diversity even if there is an additional, diverse plaintiff. To the first point, Corizon suggests that the University's role as an arm of the state is different in the context of this lawsuit, because the University is a plaintiff, rather than a defendant. And to the second, Corizon argues that complete diversity exists even if the University is an arm of the state because Capital Region and both Corizon Defendants are diverse, and "nothing in the statute creating diversity jurisdiction requires that every party be a citizen of a state." Doc. 18, at 2. Each argument is foreclosed by binding precedent.

### A. Whether the Curators of the University of Missouri Acts as an Arm of the State

#### a. Whether the Arm of the State Test is the Same Under the Diversity Statute and Eleventh Amendment Immunity

Corizon does not dispute that the University has, many times, been recognized as an arm of the State of Missouri. *See, e.g., Scherer v. Curators of Univ. of Missouri*, 49 F. App'x 658, 658–59 (8th Cir. 2002) (holding that the "University of Missouri is [a] state instrumentality" and finding the district court properly dismissed plaintiff's claims against the Curators based on Eleventh Amendment immunity); *Ormerod v. Curators of Univ. of Missouri*, 97 F. App'x 71, 72 (8th Cir. 2004) (affirming summary judgment for the University based on the Eleventh Amendment); *Hershey v. Curators of Univ. of Missouri*, No. 2:20-CV-04239-MDH, 2022 WL

---

*Tobacco Co.*, 168 F.3d 405, 412 (11th Cir. 1999) ("Therefore, if a party is deemed to be 'an arm or alter ego of the State,' then diversity jurisdiction must fail.").

1105743, at *4 (W.D. Mo. Apr. 13, 2022) (holding that the University is an arm of the state and

therefore entitled to immunity). However, Corizon counters that in each of these cases—and in

each of those cited by the University—the University was the defendant seeking immunity. To

Corizon, the University can be an arm of the state and entitled to immunity, but a "citizen of a

state" for the purposes of the diversity statute. Corizon cites no case to support its position, and

binding authority says otherwise.[2]

In *Pub. Sch. Ret. Sys. of Missouri*, the Eighth Circuit unequivocally held that the test for

whether an entity is an arm of the state under the diversity statute is the same as the test governing

the applicability of Eleventh Amendment immunity. 640 F.3d at 826–27. Indeed, every Circuit

---

[2] Corizon does cite *United States ex rel. Fields v. Bi–State Dev. Agency of the Missouri–Illinois Metro. Dist.*, 829 F.3d 598, 600 (8th Cir. 2016) (*Bi–State I*) to seemingly argue that the arm-of-the-state analysis for Eleventh Amendment immunity may produce different results than the citizenship test under § 1332(a)(1). On its face, *Bi–State I* does recognize that whether an entity is a "person" under the False Claims Act ("FCA") is a different inquiry from whether that entity is entitled to Eleventh Amendment immunity, despite both turning on the traditional arm of the state test. *Id.* But Corizon has not explained—and the Court does not see—how that reality impacts the interpretation of the diversity statute. The Eighth Circuit, and the Supreme Court case to which it cited, recognized only that first a plaintiff proves that the FCA applies to the defendant (using the arm of the state test), and then, if it does, the defendant may raise and prove an immunity defense (using the same test). *Id.* While the arm of the state test may be implicated in both, the only indication that it might produce different results in the FCA context is that the plaintiff bears the burden to first prove personhood under the statute. After that, the burden switches to the defendant to prove immunity. *Id.* Indeed, despite making this observation, in dicta, the Eighth Circuit ultimately affirmed first that the defendant was a "person" (and therefore not an arm of the state) under the FCA, and later, not an arm of the state for the purposes of sovereign immunity. *United States ex rel. Fields v. Bi–State Dev. Agency of Missouri–Illinois Metro. Dist.*, 872 F.3d 872, 876 (8th Cir. 2017) (*Bi–State II*). Despite Corizon's suggestion that *Bi–State I* holds that the arm of the state test can produce different results, *Bi–State* itself did not produce divergent findings, or suggest how divergent findings could occur, beyond the different burdens involved at each step. Nor does Corizon cite *any* case in which a court applied the arm of the state test to separate analyses to reach different results in the same case. At bottom, the Eighth Circuit, and indeed many circuits, have unquestionably held that the arm-of-the-state analysis for the citizenship test under § 1332(a)(1) is the same as the test for Eleventh Amendment immunity. *Pub. Sch. Ret. Sys. of Missouri*, 640 F. 3d at 826–27 & n.3.

to address the issue has held that the analysis is practically identical, and the Court found no case holding, or even suggesting, a difference. *See, e.g., Maryland Stadium Authority v. Ellerbe Becket Inc.*, 407 F.3d 255, 260–61 (4th Cir. 2005); *N.E. Fed. Credit Union v. Neves*, 837 F.2d 531, 534 (1st Cir. 1988) (tests "pretty much the same"); *Coastal Petroleum Co. v. U.S.S. Agri–Chems.*, 695 F.2d 1314, 1318 (11th Cir. 1983) (analysis is "the same"); *Tradigrain, Inc. v. Mississippi State Port Auth.*, 701 F.2d 1131, 1132 (5th Cir. 1983) (analysis is "virtually identical"); *see also Kansas Public Employees Retirement System v. Boatmen's First Nat. Bank of Kansas City*, 982 F. Supp. 806, 809 (D. Kan. 1997) (applying Eleventh Amendment test to find that public retirement system is an alter ego of the state of Kansas, and, "therefore, is not a 'citizen' for the purposes of diversity jurisdiction pursuant to 28 U.S.C. § 1332.").

### b. Whether the Court Must Reevaluate the University's Status as an Arm of the State

What's more, courts need not start from scratch each time an entity claims to be an arm of the state. *Ormerod v. Curators of Univ. of Missouri*, 97 F. App'x 71, 72 (8th Cir. 2004) (holding district court did not need to reevaluate whether the University was an arm of the state when the plaintiff failed to show that the University's position was in any way different from previous cases); *World Trade Ctr. Properties, L.L.C. v. Hartford Fire Ins. Co.*, 345 F.3d 154, 162 (2d Cir. 2003)[3] (holding, without further analysis, that, because Port Authority had consistently been denied Eleventh Amendment immunity, it was not an arm of the state for purposes of the diversity statute). Because the University has consistently—and uniformly—been found to be an arm of the state, the Court begins with the strong presumption that it remains one in this case. *Treleven v. University of Minnesota*, 73 F.3d 816, 818–19 (8th Cir. 1996) (holding that the district court "had no need to consider the [Eleventh Amendment immunity] factors; it had before it the prior

---

[3] Abrogated on other grounds by *Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006)

decisions of this Court adjudicating the question of the University's relationship with the state."). Corizon has identified no structural changes between the University and the State of Missouri that would suggest it appropriate to revisit the University's status as an arm of the state. *Id.* at n.3; *see also United States ex rel. Fields v. Bi–State Dev. Agency of Missouri–Illinois Metro. Dist.*, <u>872 F.3d 872, 877</u> (8th Cir. 2017) (reassessing the status of the arm of the state entity because counsel argued that there had been material changes impacting the Eighth Circuit's previous conclusion).

The only change Corizon identifies is that "it is not at all clear why a recovery at an individual health care facility could benefit the state treasury" because "Plaintiffs have not alleged that payments received go to the state treasury." <u>Doc. 18, at 5</u>. Corizon's argument ignores the long-since established relationship between the University and the State of Missouri. First, it appears Corizon implies that because the University is involved in this case only through the University Physicians and the University of Missouri Health Care (together, "MU Health")—both operated by the University as part of its academic health system—on the facts of this case, recovery would not benefit the State. As an initial matter, this argument has been rejected in the past; the Eighth Circuit has recognized that universities, acting through hospital systems analogous to the one at issue here, are arms of the state. *Walstad v. Univ. of Minnesota Hosps.*, <u>442 F.2d 634, 641</u>–42 (8th Cir. 1971) (finding immunity under the arm of the state test because "the University of Minnesota Hospitals are of course a part of the Medical School of the University."); *see also Treleven,* <u>73 F.3d at 818</u>–19.

Furthermore, as this Court has consistently recognized, the University comingles the funds it receives from all streams—including the profits of MU Health—and a significant portion of the University's total operating budget is comprised of funds received from those programs. *Sherman v. Curators of Univ. of Missouri*, <u>871 F. Supp. 344, 345</u>–46 (W.D. Mo. 1994); *see also Scherer,*

49 F. App'x at 658–59 (citing *Sherman* to hold University is an arm of the state).  Corizon owes

more than $12,000,000.00 under its contract with the University.  Some of that money is directly

payable to the University, not Capital Region.  *See* Doc. 1-1, at 16–18 (describing services to be

provided by MU Health and University Physicians, as opposed to Capital Region).  It is certainly

more likely than not that recovering even a portion of the amount owed would have a potential

benefit to the State treasury.  *Pub. Sch. Ret. Sys.*, 640 F.3d at 827.

　　What was true in *Sherman* is still true now: the University's finances are inextricably linked

with the State.  *Sherman*, 871 F. Supp. at 347.  The Missouri Constitution requires the State to

"adequately maintain" the University.  *Id.*  State appropriated funds certainly provide a large

portion of the University's operating budget, and the State carefully calibrates the University's

appropriations based upon the University's reported needs.  *Id.* at 346.  The University's needs are

necessarily impacted by the funds it receives from other sources, including the profits from the

hospital and clinical programs run through MU Health.  If the University fails to recover the money

owed to MU Health under its contract with Corizon, it will ultimately fall to the State of Missouri,

as part of its constitutional duty to "adequately maintain" the University, to make up the difference.

*See Sherman*, 871 F. Supp. at 347; *cf. Kashani v. Purdue Univ.*, 813 F.2d 843, 845 (7th Cir. 1987)

("If a judgment were awarded against Purdue, the state treasury would not write out a check to

[plaintiff].  But [because] Purdue is by design dependent on state appropriations, which are

evidently carefully geared through close oversight to meet the changing financial needs of the

university, it is apparent that the payment would directly affect the state treasury."); *Van Pilsum v.

Iowa State Univ.*, 863 F. Supp. 935 (S.D. Iowa 1994) (finding that even though less than 40% of a

university's budget came from the state, any judgment would ultimately affect the state treasury

by influencing state appropriation and budgeting decisions).  Corizon offers nothing to suggest

that the University's relationship with State is materially different in this case, where it acts as a plaintiff, such that that this Court should be the first to hold the University is not an arm of the state.

Accordingly, the University is an arm of the state, and is not a "citizen" for the purposes of the diversity statute.

### c.  Whether the University is a Real Party in Interest

Corizon also argues that Capital Region, not the University, is the real party in interest. The Court disagrees.  Even assuming that payments owed to Capital Region, an affiliate of the University, do not benefit the University, the University itself directly provides, and is then compensated for, certain services under the Agreement independent of Capital Region.  Doc. 1-1, at 16–18.  Because Corizon potentially owes the University money under the Agreement, the University is certainly a real party in interest.  Corizon cites only *State of Mo. ex rel. Webster v. Freedom Fin. Corp.* to argue that the University is not the party in interest.  727 F. Supp. 1313, 1316–18 (W.D. Mo. 1989).  *Webster* stands only for the unremarkable proposition that the "real party in interest" is the party who, under the governing substantive law, is entitled to enforce the right asserted, and that in a diversity case, the governing substantive law is ordinarily state law. *Id.* at 1316.  The *Webster* court found that, under Missouri law, one test to determine whether a party is proper is to determine if the party "has some actual and justiciable interest susceptible of protection by the suit." *Id.*  The *Webster* Court concluded that the State of Missouri had perceptible interests in enforcing its consumer protection statutes, independent of the interests of the affected consumers. *Id.* at 1317.

While Corizon argues that Capital Region benefits from payments made under the Agreement, this argument does nothing to defeat the University's role as a real party in interest.

The University signed the Agreement with Corizon on its own behalf, the University receives direct compensation from Corizon under the agreement, and the University certainly has an interest in Corizon's performance under the Agreement.  While Capital Region does also offer services, Capital Region is affiliated with the University, and the University offers some of its services through Capital Region.  In short, the University, as a signatory to the Agreement, may enforce its rights under the Agreement and is a real party in interest in this case; Capital Region's involvement in the Agreement does nothing to change that.

### B.  Whether Diversity is Destroyed by the University

Corizon's final defense is that, even if the University is an arm of the state, because Plaintiff Capital Region and the Corizon defendants are diverse, this Court's diversity jurisdiction remains intact.  Corizon paints this issue as unsettled, attempting to distinguish this case from the "settled" body of law that, to Corizon, holds only that when *all* plaintiffs or *all* defendants are states or their alter egos, the federal courts lack diversity jurisdiction.  Doc. 18, at 7.  Corizon argues that nothing in the diversity statute requires that "every party must be a citizen of a state for jurisdiction to exist."  *Id.*  Instead, to Corizon, "if all plaintiffs and defendants who *are* citizens of a state are citizens of different states, then the lawsuit 'is between citizens of different States[,]'" even if the University is effectively "stateless."  *Id.* (quoting 28 U.S.C. § 1332(a)(1)).

The Court disagrees.  Indeed, first principles of federal diversity jurisdiction squarely foreclose Corizon's argument.  As an initial matter, the diversity statute plainly requires that, for a federal court to have original diversity jurisdiction over an action, it must be between "citizens of different states." 28 U.S.C. § 1332(a).  Corizon's interpretation, in substance, asks the Court to endorse a "minimum diversity" regime by which if one set of parties satisfies the requirements of the diversity statute, a federal court has jurisdiction.  That is not—and, at least since 1806, has not

been—the Supreme Court's interpretation of the diversity statute. 13E CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3605 (3d ed., Apr. 2022 Update). Instead, complete diversity is required.

Accordingly, the requirements of diversity must be met by *each* party. *Newman–Green, Inc. v. Alfonzo–Larrain*, <u>490 U.S. 826, 829</u> (1989). The Supreme Court strictly construes the requirements of the diversity statute. *See generally id.* For example, in *Newman–Green*, an Illinois corporation sued a Venezuelan corporation, four Venezuelan citizens, and William Bettison, a United States citizen domiciled in Venezuela, invoking diversity jurisdiction under <u>28 U.S.C. §1332(a)(3)</u>, which permits suit between "citizens of different States and in which citizens or subjects of a foreign state are additional parties." *Id.* at 828. Mr. Bettison was not a "citizen of a state" for the purposes of the diversity statute because, despite his U.S. citizenship, he was not domiciled in any state. *Id.* The plaintiff could not rely on § 1332(a)(2), which permits suit between citizens of a state and citizens or subjects of a foreign state, either, because Mr. Bettison was, despite residing in Venezuela, a United States citizen. *Id.* "Bettison's 'stateless' status destroyed complete diversity under § 1332(a)(3), and his United States citizenship destroyed complete diversity under § 1332(a)(2)." *Id.* Accordingly, no path to diversity jurisdiction existed. None of this was controversial; instead, the issue was only whether Mr. Bettison could be severed from the case to preserve jurisdiction. Otherwise, the entire case—including the claims against defendants who otherwise satisfied the diversity statute—had to be dismissed. *Id.* at 828–31. This case illustrates why Corizon's position is untenable.

Corizon argues that diversity exists even if the University is an arm of the state, because Capital Region and the Corizon Defendants are diverse, and "nothing [in the statute] suggests that every party must be a citizen of a state for jurisdiction to exist." The same logic would have saved

the plaintiff's claim against Mr. Bettison in *Newman–Green*. 28 U.S.C. § 1332(a)(2) permits suits between citizens of a state and citizens or subjects of a foreign state. By Corizon's logic, the statute did not require that *all* defendants must be foreign citizens; it should have been enough that the plaintiff was a citizen of a state and some of the defendants were foreign citizens. The Supreme Court rejected that interpretation without hesitation, just as it had previously rejected the proposition that it was enough that some, but not all, defendants were diverse from a citizen plaintiff. *Newman–Green*, 490 U.S. at 828–831; *Walker by Walker v. Norwest Corp.*, 108 F.3d 158, 161–62 (8th Cir. 1997) (finding that plaintiffs' argument that nondiverse defendants did not destroy diversity because some defendants were diverse was not only wrong, but it was also sanctionable under Rule 11).

Given this foundation, it makes sense that every court to consider this issue has disagreed with Corizon. *See, e.g., Pigg v. Harris*, 20-30546, 2021 WL 6102531, at *1 (5th Cir. Dec. 23, 2021) (dismissing case because Louisiana Department of Natural Resources was an arm of the state and its presence destroyed diversity, even when otherwise diverse defendant remained); *Maryland Stadium Auth.*, 407 F.3d 255, 260, n.7 (4th Cir. 2005) ("Thus, if one party to an action is not a citizen . . . the district court does not have jurisdiction of the action under § 1332, even if all other parties to that action are citizens of different states."); *Long v. District of Columbia*, 820 F.2d 409, 416 (D.C. Cir. 1987) (finding that unless the District of Columbia, a "stateless" entity under the diversity statute, was dismissed, federal diversity jurisdiction did not exist for plaintiff's suit, even with a diverse codefendant).[4] This case presents nothing more than another

---

[4] *See also Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, 921 F. Supp. 2d 158, 160 (S.D.N.Y. 2013) ("[E]very court to address the question, including the Second Circuit, has held that the initial inclusion of an arm of the state *destroys* complete diversity where it would otherwise exist." (emphasis in original)); *Tomback v. UnumProvident Corp.*, 2005 WL 2596449, at *3–4 (N.D. Cal. Oct. 13, 2005) (finding no diversity jurisdiction due to inclusion of the California

manifestation of the complete diversity rule.  Accordingly, contrary to Corizon's assertion, the

University's inclusion does plainly and unambiguously destroy the Court's diversity jurisdiction.

### C.  Whether Jurisdictional Discovery is Warranted

Corizon asks for jurisdictional discovery to explore the State's relationship with MU

Health and the funds that it generates.  At its discretion, a district court may permit jurisdictional

discovery "to ascertain facts bearing on [the court's jurisdiction]."  *Pudlowski v. The St. Louis*

*Rams, LLC*, 829 F.3d 963, 964 (8th Cir. 2016).  However, it need not do so when the party seeking

discovery does not dispute facts central to the Court's jurisdictional conclusion or offers only

speculation about what discovery will produce.  *See Viasystems, Inc. v. EBM–Papst St. Georgen*

*GmbH & Co., KG*, 646 F.3d 589, 598 (8th Cir. 2011).  Here, Corizon's focus on the individual

healthcare facilities involved in the contract is misplaced, and the discovery it seeks is wholly

speculative.

First, this lawsuit is brought on behalf of the University itself, not just MU Health or any

individual medical center.  That the State is not directly involved with the provision of healthcare

or hospital administration is irrelevant.  The State does not directly manage the University's

curricular offerings or the professors who facilitate them either.  Nevertheless, the University

system as a whole, including its governing administration, is still inextricably linked with the State

---

Commissioner of Insurance in a suit against diverse insurers); *Jakoubek v. Fortis Benefits Ins. Co.*,
301 F. Supp. 2d 1045, 1049 (D. Neb. 2003) (concluding that inclusion of state defendants, if they
were proper defendants, destroyed diversity, even if a diverse defendant remained in the case);
*Wilkerson v. Missouri Dept. of Mental Health*, 279 F. Supp. 2d 1079, 1080 (E.D. Mo. 2003)
(inclusion of state agency destroyed diversity, despite presence of diverse codefendant); *Bosse v.
Pitts*, 455 F. Supp. 2d 868, 875 (W.D. Wis. 2006) (remanding case when one plaintiff was arm of
state, even when other plaintiff and defendants would have satisfied diversity); *Kansas State Univ.
v. Prince*, 673 F. Supp. 2d 1287, 1293 (D. Kan. 2009) ("The State's presence in this suit is not
ignored, however . . . Rather, if the State of Kansas [through Kansas State University] is the real
party in interest bringing this action then its presence destroys diversity jurisdiction, because the
statute requires a suit between *citizens* of different states." (emphasis in original)).

of Missouri, even if certain University functions are—and logically must remain—beyond the day-to-day involvement of the State. *See generally Hoeffner v. Univ. of Minnesota*, 948 F. Supp. 1380, 1388 (D. Minn. 1996) (finding individual characteristics of university hospitals, clinics, and medical programs irrelevant; "[h]ere, the Plaintiffs have sued the University as a whole and, therefore, they seek a declaration that, as a whole, the University [is not an arm of the state under] the Eleventh Amendment. With a recognition of the Plaintiff's goal, the evidence of Record overwhelmingly demonstrates that the University and the State remain inextricably interwoven in a closely entwined relationship.").

Corizon's proposed discovery into MU Health's finances is similarly unnecessary. The Eighth Circuit has already established that "whether a money judgment in this particular case will actually benefit the State of Missouri's treasury is not the relevant inquiry;" instead, the Court must focus on a potential benefit. *Pub. Sch. Ret. Sys. of Missouri*, 640 F. 3d at 830. As already explained, recovery in this case has the potential to benefit the State of Missouri's treasury. While Corizon argues that it needs discovery to determine how funds from MU Health and Capital Region affect the University's finances, the relevant facts have been previously established and are further publicly available, should Corizon wish to investigate them. While the granular financial information Corizon seeks may not be public, it is enough that the University's overall budget is supported, in substantial part, by proceeds from MU Health. Funds from *all* the University's revenue streams are comingled and used to meet *all* the University's expenses. If the University's revenue from MU Health is decreased, the State—through its Constitutional obligation to adequately maintain the University—would be required to make up the difference. Proceeds owed to MU Health under the University's contract with Corizon certainly impacts the

revenue that MU Health generates. Corizon has not suggested that any of these foundational facts have changed, nor will the discovery Corizon seeks impact them.

Accordingly, Corizon's request for jurisdictional discovery is DENIED as unnecessary and speculative. At bottom, the facts necessary to this Court's jurisdictional analysis are already established, and Corizon's proposed discovery does nothing to suggest they have since changed. *See Viasystems, Inc.*, 646 F.3d at 598 (affirming denial of jurisdictional discovery because proposed topics would not ultimately support jurisdiction and the plaintiff's assertion that discovery "would likely" reveal facts supporting jurisdiction was "entirely speculative").

### D.  Whether Fees Are Appropriate

"An order remanding [a] case may require [the removing defendant to pay] just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The reasonableness standard was ultimately the result of balancing "the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Id.* at 140.

Corizon suggests fees are unwarranted in this case because the case presented an "unusual posture" and "unsettled law." Doc. 18, at 7–8. The University counters that Eighth Circuit precedent clearly establishes that the University is an arm of the state and that an arm of the state is not a citizen for the purposes of diversity. Doc. 21, at 2–4. It further notes that Corizon knew the University's position on removal because it was established in the state court petition; as such,

Corizon could have easily discovered the state of the law before removing. Doc. 8 at 7. Corizon ultimately maintains that it was not required to accept the University's legal conclusions, especially because the cases the University cited were all decided in the immunity context. Doc. 18, at 8.

Here, Corizon's argument is little more than a recognition that the Eighth Circuit has not decided a case exactly like this one before. Even still, a review of Corizon's arguments demonstrates that removal was objectively unreasonable.

Corizon first argued that the University could be an arm of the state for the purposes of Eleventh Amendment immunity, but a citizen for the purposes of diversity jurisdiction. Corizon cited only one case to support its argument. Doc. 18, at 4 (citing *United States ex rel. Fields v. Bi-State Dev. Agency of the Missouri–Illinois Metro. Dist.*, 829 F.3d 598 (8th Cir. 2016) ("*Bi-State*"). That case, at best, suggested that the arm of the state test could perhaps produce different results in the FCA context. *Bi-State*, 829 F.3d at 600. Even so, the application of the arm of the state test in that case did not actually produce different results, or suggest how it might do so, beyond that the relevant statutory and immunity questions involved different burdens of proof. And, perhaps more importantly, Corizon never attempted to apply the reasoning of that case to the diversity statute; it just cited the case to suggest, somehow, that not only *could* the Court conclude that the University was an arm of the state for the purposes of immunity and a citizen for the purposes of diversity, but that it *should*. Doc. 18, at 2.

Corizon's arguments ignored the universal consensus—in this Circuit and beyond—that (1) an arm of the state is not a citizen under the diversity statute, regardless of its role in the lawsuit; (2) to determine whether an entity is an arm of the state for the purposes of diversity, the Court's analysis is functionally identical to its immunity analysis; and (3) that prior judicial determination

16

of an entity's relationship with the state removes any obligation to revisit the entity's status, unless a party can identify meaningful changes in the relationship. Corizon identified no meaningful change in the University's relationship with the State. It simply argued that because the State was not directly involved with the funds and management of the hospital involved in the Agreement, the University was not acting as an arm of the state in this instance. By doing so, Corizon both ignored the proper analysis of the arm of the state test and demonstrated a misunderstanding of the very contract by which it is bound. As even a cursory reading demonstrates, the University itself provides certain services independent of Capital Region—and the University itself is to be compensated for them.

Perhaps even more surprising is Corizon's assertion that the presence of an arm of the state does not destroy diversity when the remaining parties are diverse. Corizon argues that no *binding* case in this circuit has held so explicitly. Even so, Corizon recognizes that several other district courts have. Nevertheless, Corizon argues that this Court should not follow suit because, in those cases, the courts merely assumed "that there is no difference between an arm of a state being the *exclusive* plaintiff or defendant, and an arm of the state being *a* plaintiff or defendant." Doc. 18, at 7 (emphasis in original). Of course, the extent of Corizon's analysis is limited to quoting the diversity statute and Eighth Circuit case law identifying the concept of complete diversity for citizen parties. As explained above, this conclusion flies in the face of (1) the decision of every district and circuit court to address the issue and (2) the Supreme Court's interpretation of the complete diversity requirement—established for the first time over two centuries ago.

Of course, simply making a losing argument will not saddle a defendant with fees. However, even losing arguments must be supported and made in good faith. Here, Corizon's conclusory arguments that the Court should adopt its positions, simply because the cases cited by

the University were decided in different contexts, are not enough. Corizon does not address the University's underlying reasoning or the mountain of authority—from this Circuit, beyond, and black letter law[5]—that squarely foreclose its arguments. This is not the first time a plaintiff state university has sued a defendant on a state law claim. Nor is it the first time that a defendant tried to remove to federal court in such a case. Each time—if that state university was truly an arm of the state and the party in interest—the case was remanded. Had Corizon looked, it would have found these cases. Had Corizon attempted to reason around these cases with a good faith argument, fees might not be warranted. However, here, Corizon knew the University's argument from the start, and still offers little to support its decision to remove. For that, the Court cannot say that Corizon had a reasonable basis to remove. Reasonable fees and costs are warranted.

## IV.    CONCLUSION

For the reasons discussed above, the University's Motion to Remand, Doc. 7, is GRANTED, and Corizon shall pay the reasonable attorneys' fees and costs the University incurred litigating its Motion to Remand.

Dated: 9/9/2022
Jefferson City, Missouri

s/ Nanette K. Laughrey
NANETTE K. LAUGHREY
United States District Judge

---

[5] *See, e.g.*, 14C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3723 (4th ed., Apr. 2022 update.) ("Since it is well established that a state is not a 'citizen' of any state, it follows that when a state is a real party in interest, the case cannot be removed on the basis of diversity jurisdiction.").

CLOSED,MAPN

# U.S. District Court
## Western District of Missouri (Jefferson City)
## CIVIL DOCKET FOR CASE #: 2:22-cv-04100-NKL
### Internal Use Only

FILED
BOONE COUNTY

SEP 1 5 2022

CHRISTY BLAKEMORE
CLERK, CIRCUIT COURT, COLUMBIA, MO

The Curators of the University of Missouri et al v. Corizon
Health, Inc. et al
Assigned to: District Judge Nanette K. Laughrey
Demand: $120,000
Case in other court: Circuit Court of Boone County, Missouri,
        22BA-CV01701
Cause: 28:1441 Petition for Removal- Breach of Contract

Date Filed: 06/27/2022
Date Terminated: 09/12/2022
Jury Demand: Both
Nature of Suit: 190 Contract: Other
Jurisdiction: Diversity

**Plaintiff**

**The Curators of the University of
Missouri**

represented by **Ethan M Lange**
Stueve Siegel Hanson, LLP - KCMO
460 Nichols Road
Suite 200
Kansas City, MO 64112
816-714-7100
Fax: 816-714-7101
Email: lange@stuevesiegel.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Active*

**Jordan A Kane**
Stueve Siegel Hanson, LLP - KCMO
460 Nichols Road
Suite 200
Kansas City, MO 64112
816-876-5098
Email: kane@stuevesiegel.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Active*

**Patrick J. Stueve**
Stueve Siegel Hanson, LLP - KCMO
460 Nichols Road
Suite 200
Kansas City, MO 64112
(816) 714-7110
Fax: (816) 714-7101
Email: stueve@stuevesiegel.com
*LEAD ATTORNEY*

I HEREBY ATTEST AND CERTIFY ON 09-12-2022
THAT THE FOREGOING DOCUMENT IS A FULL TRUE AND
CORRECT COPY OF THE ORIGINAL ON FILE IN MY OFFICE
AND IN MY LEGAL CUSTODY.

PAIGE A. WYMORE-WYNN
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

BY _____ DEPUTY

**Plaintiff**

**Capital Region Medical Center**                    represented by   **Ethan M Lange**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Active*

**Jordan A Kane**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Active*

**Patrick J. Stueve**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: Active*

V.

**Defendant**

**Corizon Health, Inc.**                    represented by   **Reed T Warburton**
Bradley Arant Boult Cummings
al
1819 Fifth Ave North
Birmingham, AL 35203
205-521-8987
Fax: 205-488-6987
Email: twarburton@bradley.com
*ATTORNEY TO BE NOTICED*
*Bar Status: Active*

**Defendant**

**Corizon, LLC**                    represented by   **Reed T Warburton**
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: Active*

Email All Attorneys

Email All Attorneys and Additional Recipients

| Date Filed | # | Docket Text |
|---|---|---|
| 06/27/2022 | 1 | NOTICE OF REMOVAL from Circuit Court of Boone County, case number 22BA-CV01701, filed by Reed T Warburton. Filing fee $402, receipt number AMOWDC-7993717. (Attachments: # 1 Exhibit Exhibit A - State Court Pleadings, # 2 Exhibit Exhibit B - Declaration, # 3 Civil Cover Sheet)(Warburton, Reed) (Entered: 06/27/2022) |

| 06/27/2022 | 2 | DISCLOSURE OF CORPORATE INTERESTS filed by Reed T Warburton on behalf of Defendant Corizon Health, Inc..(Warburton, Reed) (Entered: 06/27/2022) |
|---|---|---|
| 06/28/2022 | 3 | **NOTICE OF INCLUSION FOR MEDIATION AND ASSESSMENT PROGRAM (MAP). REVIEW NOTICE AND MAP GENERAL ORDER CAREFULLY FOR IMPORTANT CHANGES, DEADLINES AND REQUIREMENTS.**<br><br>**Notice of MAP assignment to an outside mediator.** (Attachments: # 1 MAP General Order)(Warren, Melissa) (Entered: 06/28/2022) |
| 06/28/2022 | 4 | ORDER ON PRETRIAL PROCEDURES. Signed on 06/28/2022 by District Judge Nanette K. Laughrey. (Lock, Tania) (Entered: 06/28/2022) |
| 06/28/2022 | 5 | ORDER entered by Judge Nanette K. Laughrey.Proposed scheduling order due by 7/19/2002. Rule 26 conference due by 7/12/2022. Signed on 06/28/2022 by District Judge Nanette K. Laughrey. (Lock, Tania) (Entered: 06/28/2022) |
| 06/29/2022 | | NOTICE of filing: Mediation and Assessment Program Reminder: Your Designation of Mediator is due soon (filed as an ADR event in CM/ECF). See Notice of Inclusion and MAP General Order for specifics. (ADI, MAP) (Entered: 06/29/2022) |
| 07/01/2022 | 6 | NOTICE of filing *Amended Declaration of Scott King* by Corizon Health, Inc., Corizon, LLC (Warburton, Reed) (Entered: 07/01/2022) |
| 07/08/2022 | 7 | MOTION to remand *and for Costs and Attorneys' Fees* filed by Patrick J. Stueve on behalf of All Plaintiffs. Suggestions in opposition/response due by 7/22/2022 unless otherwise directed by the court. (Stueve, Patrick) (Entered: 07/08/2022) |
| 07/08/2022 | 8 | SUGGESTIONS in support re 7 MOTION to remand *and for Costs and Attorneys' Fees* filed by Patrick J. Stueve on behalf of Plaintiffs Capital Region Medical Center, The Curators of the University of Missouri. (Related document(s) 7 ) (Stueve, Patrick) (Entered: 07/08/2022) |
| 07/11/2022 | 9 | ANSWER to Complaint on behalf of Corizon Health, Inc., Corizon, LLC.(Warburton, Reed) (Entered: 07/11/2022) |
| 07/12/2022 | 10 | CERTIFICATE OF SERVICE OF INITIAL RULE 26 DISCLOSURES filed by Ethan M Lange on behalf of Plaintiff The Curators of the University of Missouri. (Lange, Ethan) (Entered: 07/12/2022) |
| 07/12/2022 | 11 | Supplemental DISCLOSURE OF CORPORATE INTERESTS *of Defendants Corizon Health, Inc and Corizon, LLC* filed by Reed T Warburton on behalf of Defendants Corizon Health, Inc., Corizon, LLC.(Warburton, Reed) (Entered: 07/12/2022) |
| 07/12/2022 | 12 | DISCLOSURE OF CORPORATE INTERESTS filed by Ethan M Lange on behalf of Plaintiff The Curators of the University of Missouri.(Lange, Ethan) (Entered: 07/12/2022) |
| 07/12/2022 | 13 | CERTIFICATE OF SERVICE by All Plaintiffs filed by Ethan M Lange on behalf of Plaintiffs Capital Region Medical Center, The Curators of the University of Missouri. (Lange, Ethan) (Entered: 07/12/2022) |
| 07/12/2022 | 14 | CERTIFICATE OF SERVICE OF INITIAL RULE 26 DISCLOSURES filed by Reed T Warburton on behalf of Defendants Corizon Health, Inc., Corizon, |

| | | LLC.(Warburton, Reed) (Entered: 07/12/2022) |
|---|---|---|
| 07/19/2022 | 15 | Joint PROPOSED SCHEDULING ORDER *Discovery Plan* by Capital Region Medical Center, The Curators of the University of Missouri. (Lange, Ethan) (Entered: 07/19/2022) |
| 07/20/2022 | 16 | SCHEDULING ORDER: Discovery due by 1/13/2023. Pretrial Conference set for 6/7/2023 at 9:00 AM in Courtroom 4A, Jefferson City (NKL) before District Judge Nanette K. Laughrey. Jury Trial set for 6/20/2023 at 9:00 AM in Courtroom 4A, Jefferson City (NKL) before District Judge Nanette K. Laughrey. Dispositive Motions due by 2/6/2023. Signed on 07/20/2022 by District Judge Nanette K. Laughrey. (Attachments: # 1 Memo on PTC) (Lock, Tania) (Entered: 07/20/2022) |
| 07/20/2022 | 17 | RULES OF TRIAL. Signed on 07/20/2022 by District Judge Nanette K. Laughrey. (Lock, Tania) (Entered: 07/20/2022) |
| 07/22/2022 | 18 | SUGGESTIONS in opposition re 7 MOTION to remand *and for Costs and Attorneys' Fees* filed by Reed T Warburton on behalf of Defendants Corizon Health, Inc., Corizon, LLC. Reply suggestions due by 8/5/2022 unless otherwise directed by the court. (Related document(s) 7 ) (Warburton, Reed) (Entered: 07/22/2022) |
| 07/26/2022 | 19 | AMENDED SCHEDULING ORDER: Discovery due by 1/13/2023. Pretrial Conference set for 8/30/2023 at 1:00 PM in Courtroom 4A, Jefferson City (NKL) before District Judge Nanette K. Laughrey. Jury Trial set for 9/11/2023 at 9:00 AM in Courtroom 4A, Jefferson City (NKL) before District Judge Nanette K. Laughrey. Dispositive Motions due by 2/6/2023. Signed on 07/26/2022 by District Judge Nanette K. Laughrey. (Attachments: # 1 Memo on PTC) (Lock, Tania) (Entered: 07/26/2022) |
| 07/26/2022 | 20 | DESIGNATION OF MEDIATOR naming Frank Neuner(Lange, Ethan) (Entered: 07/26/2022) |
| 07/27/2022 | | NOTICE of filing: Mediation and Assessment Program Reminder: Your post-mediation status report is due within 10 calendar days after the mediation. See MAP FAQs on Court's website for specifics and submit report(s) to: map@mow.uscourts.gov. (ADI, MAP) (Entered: 07/27/2022) |
| 08/05/2022 | 21 | REPLY SUGGESTIONS to motion re 7 MOTION to remand *and for Costs and Attorneys' Fees* filed by Patrick J. Stueve on behalf of Plaintiffs Capital Region Medical Center, The Curators of the University of Missouri. (Related document(s) 7 ) (Stueve, Patrick) (Entered: 08/05/2022) |
| 09/09/2022 | 22 | Order by Judge Nanette K. Laughrey. Plaintiffs' 7 Motion to Remand is GRANTED, with Defendants to pay fees and costs pursuant to 28 U.S.C. § 1447(c). Signed on 9/9/2022 by District Judge Nanette K. Laughrey. (Gassen, Austin) (Entered: 09/09/2022) |
| 09/12/2022 | 23 | CLERK'S JUDGMENT (Lock, Tania) (Entered: 09/12/2022) |

Electronically Filed - Boone - September 26, 2022 - 06:47 PM

## IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI

| | | |
|---|---|---|
| **THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | **Case No.** 22BA-CV01701 |
| **v.** | ) ) | Division 4 |
| **CORIZON HEALTH, INC., and CORIZON, LLC,** | ) ) ) | |
| **Serve: C T CORPORATION SYSTEM 120 South Central Ave Clayton, MO 63105** | ) ) ) ) | |
| **Defendants.** | ) ) | |

### CERTIFICATE OF SERVICE

     The undersigned hereby certifies that on September 26, 2022, Plaintiffs The Curators of the University of Missouri and Capital Region Medical Center served their Responses and Objections to Defendant Corizon Health, Inc.'s First Set of Requests for Production to Plaintiffs and their Answers and Objections to Defendant Corizon Health, Inc.'s First Set of Interrogatories to Plaintiffs via electronic mail upon counsel of record for Defendants.

Dated: September 26, 2022        Respectfully submitted,

                        **STUEVE SIEGEL HANSON LLP**

                         _/s/_ Patrick J. Stueve
                        Patrick J. Stueve MO Bar # 37682
                        Ethan M. Lange MO Bar # 67857
                        Jordan A. Kane MO Bar # 71028
                        460 Nichols Road, Suite 200
                        Kansas City, Missouri 64112
                        816-714-7100 (p)
                        816-714-7101 (f)
                        stueve@stuevesiegel.com
                        lange@stuevesiegel.com
                        kane@stuevesiegel.com

Electronically Filed - Boone - September 26, 2022 - 06:47 PM

**COUNSEL FOR PLAINTIFFS THE
CURATORS OF THE UNIVERSITY OF
MISSOURI AND CAPITAL REGION
MEDICAL CENTER**

Electronically Filed - Boone - October 07, 2022 - 12:01 PM

**IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI**

| | |
|---|---|
| **THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER,** | ) ) ) ) |
| Plaintiffs, | ) |
| | ) Case No. 22BA-CV01701 |
| v. | ) ) |
| **CORIZON HEALTH, INC., and CORIZON, LLC,** | ) ) ) |
| Defendants. | ) ) |

### PLAINTIFF'S RULE 55.34 LIST OF DOCUMENTS
### TO BE INCLUDED WITH THE STATE COURT FILE

COMES NOW Plaintiffs The Curators of the University of Missouri and Capital Region Medical Center, by and through counsel, and states that the above-referenced case was removed to the United States District Court for the Western District of Missouri on June 27, 2022. On September 9, 2022, the United States District Court for the Western District of Missouri remanded this matter back to this Court. Plaintiff designates the following documents to be made part of the Court's file:

1.  Civil docket sheet for *The Curators of the University of Missouri et al. v. Corizon Health, Inc. et al.*, No. 2:22-cv-04100-NKL, in the Western District of Missouri

2.  Defendants' Notice of Removal – 06/27/22

3.  Defendants' Disclosure of Corporate Interests – 06/27/22

4.  Defendants' Notice of Filing of Amended Declaration of Scott King – 07/01/22

5.  Plaintiffs' Motion to Remand and For Costs and Attorneys' Fees  – 07/08/22

6.  Plaintiffs' Suggestions in Support of Motion to Remand and For Costs and Attorneys' Fees – 07/08/22

7.  Defendants' Answer – 07/11/22

8.  Plaintiffs' Certificate of Service of Initial Rule 26 Disclosures – 07/12/22

9.  Defendants' Supplemental Disclosure of Corporate Interests – 07/12/22

Electronically Filed - Boone - October 07, 2022 - 12:01 PM

10.     Plaintiffs' Certificate of Service of First Set of Interrogatories, First Requests for Production, and First Requests for Admission – 07/12/22

11.     Defendants' Certificate of Service of Initial Rule 26 Disclosures – 07/12/22

12.     Defendants' Suggestions in Opposition to Motion to Remand and For Costs and Attorneys' Fees – 07/22/22

13.     Parties' Designation of Mediator – 07/26/22

14.     Plaintiffs' Reply Suggestions to Motion to Remand and For Costs and Attorneys' Fees – 08/05/22

15.     Order Granting Motion to Remand and For Costs and Attorneys' Fees – 09/09/22

16.     Remand letter and instructions sent to Circuit Court of Boone County, Missouri – 09/12/22

17.     Clerk's Judgment – 09/12/22

Copies of these documents are attached hereto as Exhibits 1 through 17.

Dated: October 7, 2022                    Respectfully submitted,

                                          **STUEVE SIEGEL HANSON LLP**

                                           */s/ Patrick J. Stueve*
                                          Patrick J. Stueve MO Bar # 37682
                                          Ethan M. Lange MO Bar # 67857
                                          Jordan A. Kane MO Bar # 71028
                                          460 Nichols Road, Suite 200
                                          Kansas City, Missouri 64112
                                          816-714-7100 (p)
                                          816-714-7101 (f)
                                          stueve@stuevesiegel.com
                                          lange@stuevesiegel.com
                                          kane@stuevesiegel.com

                                          **COUNSEL FOR PLAINTIFFS THE
                                          CURATORS OF THE UNIVERSITY OF
                                          MISSOURI AND CAPITAL REGION
                                          MEDICAL CENTER**

Electronically Filed - Boone - October 07, 2022 - 04:39 PM

**IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI**

| | | |
|---|---|---|
| **THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | **Case No.** 22BA-CV01701 |
| **v.** | ) ) | Division 4 |
| **CORIZON HEALTH, INC., and CORIZON, LLC,** | ) ) ) | |
| **Serve: C T CORPORATION SYSTEM 120 South Central Ave Clayton, MO 63105** | ) ) ) ) | |
| **Defendants.** | ) ) | |

## PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED PETITION

Pursuant to Mo. Sup. Ct. R. 55.33(a) and Mo. Rev. Stat. § 510.261(5), Plaintiffs the Curators of the University of Missouri and Capital Region Medical Center ("Plaintiffs"), by and through undersigned counsel, respectfully move the Court for an Order granting Plaintiffs leave to file a First Amended Petition (Exhibit A). In support, Plaintiffs state as follows:

1.      First, Plaintiffs seek to amend their Petition to add newly discovered defendants, YesCare Corp. ("YesCare") and CHS TX, Inc. ("CHS TX"), along with accompanying facts and counts that pertain to these newly discovered defendants' scheme with current-defendants Corizon Health, Inc. and Corizon, LLC (collectively, "Corizon Health") to defraud Defendants' creditors. Plaintiffs also seek to amend their Petition to reflect Corizon Health's previously undisclosed name change to Tehum Care Services, Inc. These additions are based on facts unknown to Plaintiffs at the time of the Petition's original filing on May 11, 2022.

Electronically Filed - Boone - October 07, 2022 - 04:39 PM

2.     After Corizon Health removed this case to federal court, Plaintiffs learned that on May 16, 2022, after they filed suit, Corizon Health's leadership launched YesCare and CHS TX. Before the May 16, 2022 launch, and unbeknownst to Plaintiffs, Corizon Health enacted a restructuring scheme intended to frustrate and defraud Corizon Health's creditors, like Plaintiffs.

3.     Unbeknownst to Plaintiffs, on January 31, 2022, Sara Tirschwell, Corizon Health's CEO, incorporated YesCare Corp. in Texas. Sara Tirschwell is listed as YesCare Corp.'s registered agent and sole director.

4.     Also unbeknownst to Plaintiffs, on April 28, 2022, Corizon Health, Inc. and its parent company, Valitas Health Services, Inc., were converted from Delaware corporations to Texas corporations.  At the time of the conversions, Corizon Health had no significant operations in Texas. Corizon Health's corporate headquarters was in Brentwood, Tennessee, and it maintained a second major corporate office in St. Louis, Missouri.

5.     Then, on May 3, 2022, Valitas Health Services, Inc., Corizon Health, Inc., and the two other Corizon subsidiaries that were incorporated in states other than Delaware, Corizon, LLC (a Missouri entity), and Corizon Health of New Jersey, LLC (a new Jersey entity), completed a four-way merger under the Texas Business Organizations Code. The four entities merged into one surviving Texas corporation: Corizon Health, Inc.

6.     Also on May 3, 2022, immediately following the four-way merger, the combined entity, "Corizon Health," underwent a Texas divisional merger, resulting in two entities: Corizon Health, Inc., and CHS TX.

7.     CHS TX then became a wholly-owned subsidiary of YesCare.

8.     Corizon Health transferred all or substantially all of its assets to CHS TX.

Electronically Filed - Boone - October 07, 2022 - 04:39 PM

9.      Then, on June 1, 2022, Corizon Health changed its name to Tehum Care Services, Inc.

10.      As a result of Corizon Health, YesCare, and CHS TX's restructuring scheme, and unbeknownst to Plaintiffs at the time of filing, CHS TX and YesCare received substantially all the assets and all the active contracts, customers, and employees of pre-division Corizon Health, leaving Defendants with no active contracts, no customers, and no meaningful assets.

11.      Upon information and belief, a mere $1,000,000 remains in Corizon Health's accounts to cover Corizon Health's liabilities owed to Plaintiffs, owed to other vendors with expired contracts, and potentially owed in over 500 active lawsuits and claims.

12.      Upon information and belief, Corizon Health, YesCare, and CHS TX's scheme to remove substantially all assets from Corizon Health was intended to render Corizon Health unable to meet its payment obligations to Plaintiffs.

13.      While enacting this scheme of which Plaintiffs were unaware, Corizon Health continued to fraudulently assure Plaintiffs it intended to pay its liabilities under the Agreement, intending to and in fact inducing Plaintiffs to continue performance under the Agreement. Further, Corizon Health, YesCare, and CHS TX concealed and continue to conceal the details of this scheme from Plaintiffs, including YesCare and CHS TX's very existence and Corizon Health's name change. For example, while Plaintiffs' Motion to Remand was pending, Defendants filed an Answer to Plaintiffs' Petition on July 11, 2022 and responded to discovery requests from Plaintiffs on August 25, 2022. Neither Defendants' Answer nor their discovery responses indicated the existence of YesCare or CHS TX, acknowledged Corizon Health's restructuring, or mentioned Corizon Health's subsequent name change.

Electronically Filed - Boone - October 07, 2022 - 04:39 PM

14.     Missouri Rule of Civil Procedure 55.33 states that leave to amend "shall be freely given when justice so requires." "[An] amendment to the pleadings . . . [is] to be freely allowed where the presentation of the merits will be served and where the [non-moving] party will not be prejudiced in the presentation of his case." *East v. Landmark Central Bank & Trust Co.*, 585 S.W.2d 222, 225 (Mo. App. E.D. 1979) (internal quotations omitted).  The rules on amendment serve to enable a party to present matters that were unknown or overlooked when the party originally filed its pleading. *Concerned Citizens for Crystal City v. City of Crystal City*, 334 S.W.3d 519, 526 (Mo. App. E.D. 2010), *transfer denied* (Apr. 26, 2011), *reh'g and/or transfer denied* (Mar. 1, 2011).

15.     It is within the trial court's broad discretion to allow amendment of the pleadings at any stage in the proceedings. *Jennings v. Chatsworth Apartments Project Ltd.*, 186 S.W.3d 457, 463 (Mo. App. W.D. 2006); *Ferrellgas, Inc. v. Edward A. Smith, P.C.*, 190 S.W.3d 615, 619 (Mo. App. W.D. 2006) ("Trial courts are not to be stingy in granting leave to amend. The trial court has broad discretion to grant a party leave to amend . . . it is an abuse of discretion not to grant such leave when justice requires"). In fact, amendments, "even during trial, are authorized by court rule and are quite usual." *Hanes v. Bacon Sales Co.*, 602 S.W.2d 50, 53 (Mo. App. W.D. 1980).

16.     In determining whether leave to amend should be granted, courts evaluate three different criteria: (1) reasons for the moving party's failure to include the matter in the original proceedings; (2) any prejudice to the non-moving party; and (3) hardship to the party requesting amendment if the request is denied. *Wheelehan v. Dueker*, 996 S.W.2d 780, 782 (Mo. App. E.D. 1999).  Each factor weighs in favor of granting Plaintiffs' request for leave to amend.

Electronically Filed - Boone - October 07, 2022 - 04:39 PM

17.    First, Plaintiffs could not have included these matters in the original pleading because they were unknown to—and upon information and belief, in the course of Defendants' conspiracy, intentionally withheld from—Plaintiffs at the time of the Petition's filing.

18.    Second, Defendants cannot claim prejudice by Plaintiffs' amendment. Prejudice is measured "by whether a party is deprived of a legitimate claim or defense because the motion for leave to amend caught that party by surprise after it had developed its strategy." *State ex rel. Hale v. Hendrickson*, 553 S.W.3d 432, 436 (Mo. App. S.D. 2018) (explaining prejudice is not measured "by whether one party or the other would stand to suffer financial loss as a result of the court ruling"). Plaintiffs' motion is not prejudicial, because the facts alleged and claims asserted arise out of the same subject matter as the original Petition; namely, Corizon Health's obligations to Plaintiffs under the Agreement, and the new discovery of Corizon Health's scheme with YesCare and CHS TX to evade and frustrate Corizon Health's creditors by taking possession of substantially all of Corizon Health's assets. Further, the timing of Plaintiffs' request is not otherwise prejudicial to Defendants.  This case has only recently been returned to state court. Shortly after Plaintiffs filed suit in May 2022, Defendants removed this case to the United States District Court for the Western District of Missouri on June 27, 2022. On July 8, 2022, Plaintiffs filed a Motion to Remand and for Costs and Attorneys' Fees. On September 9, 2022, the United States District Court for the Western District of Missouri granted Plaintiffs' Motion to Remand and for Costs and Attorneys' Fees, finding removal was "objectively unreasonable." *Curators of Univ. of Missouri v. Corizon Health Inc.*, Case No. 2:22-cv-04100-NKL, Doc. 22 at 16 (W.D. Mo. Sept. 9, 2022). This Court has not yet set this matter for trial; nor has this Court entered a scheduling order setting deadlines to amend the pleadings and add parties. While the parties have conducted some written discovery, no depositions have been conducted, and any additional

Electronically Filed - Boone - October 07, 2022 - 04:39 PM

discovery Defendants wish to take will occur with a full understanding of the claims and damages in the proposed Amended Petition.

19.     Third, Plaintiffs will suffer obvious hardship if their request for amendment is denied. Before filing this suit, Plaintiffs were unable to discern information regarding the liability of the two proposed new defendants. Plaintiffs were injured due to Corizon Health's failure to pay the amounts owed under the Agreement, and are further injured by Corizon Health, YesCare, and CHS TX's scheme to shield Corizon Health's assets from its creditors like Plaintiffs. Thus, Plaintiffs are entitled to recover from Corizon Health, YesCare, and CHS TX jointly and severally. Not allowing Plaintiffs to add the proposed defendants and claims would prejudice Plaintiffs and prevent them from receiving full recovery for the damages they have sustained.

20.     Additionally, Plaintiffs' proposed amendment requests additional relief, including injunctive relief, attachment or other provisional remedy against the assets transferred, punitive damages, and attorneys' fees. These remedies are supported by the factual allegations and supporting citations and claims. *See, e.g.*, Exhibit A, ¶¶ 56-72 (alleging facts describing Corizon Health's scheme to frustrate its growing list of creditors; ¶¶ 73-86 (alleging facts demonstrating that Defendants concealed the restructuring scheme from Plaintiffs, fraudulently induced Plaintiffs to continue performing under the Agreement, and represented that they intended to pay the amounts owed while stripping Corizon Health of its assets); ¶¶ 87-108 (alleging facts establishing YesCare and CHS TX are successors to Corizon Health, sharing the same headquarters, management, employees, marketing, websites, and social media); ¶¶ 109-127 (alleging facts showing YesCare and CHS TX publicly hold themselves out as Corizon Health's successor); *see also* Count VII (common law fraud and conspiracy to commit common law fraud claim) and Counts VIII-XI (fraudulent transfer and conspiracy to commit fraudulent transfer claims); Mo.

Electronically Filed - Boone - October 07, 2022 - 04:39 PM

Rev. Stat. § 510.261(5) (stating a trial court may grant leave to file a pleading containing a claim for punitive damages if the trial court concludes, following a reviewing of all materials submitted in connection with the motion, that based on the evidence to be admitted at trial a trier of fact could reasonably conclude, based on clear and convincing evidence, that the standards for a punitive damage award have been met).

21.    Plaintiffs respectfully request a hearing on this Motion at the Court's earliest convenience.

WHEREFORE, for the foregoing reasons, Plaintiffs request this Court grant leave to amend the Petition, deem the First Amended Petition attached as Exhibit A filed as of the date of the Court's order, and grant any other further relief as the Court deems just and proper.

Dated: October 7, 2022                    Respectfully submitted,

                                          **STUEVE SIEGEL HANSON LLP**

                                          _/s/_ Patrick J. Stueve
                                          Patrick J. Stueve MO Bar # 37682
                                          Ethan M. Lange MO Bar # 67857
                                          Jordan A. Kane MO Bar # 71028
                                          460 Nichols Road, Suite 200
                                          Kansas City, Missouri 64112
                                          816-714-7100 (p)
                                          816-714-7101 (f)
                                          stueve@stuevesiegel.com
                                          lange@stuevesiegel.com
                                          kane@stuevesiegel.com

                                          **COUNSEL FOR PLAINTIFFS THE
                                          CURATORS OF THE UNIVERSITY OF
                                          MISSOURI AND CAPITAL REGION
                                          MEDICAL CENTER**

Electronically Filed - Boone - October 13, 2022 - 02:54 PM

## IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI

| | |
|---|---|
| THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER, | ) ) ) |
| | ) |
| Plaintiffs, | ) Case No. 22BA-CV01701 |
| | ) |
| v. | ) |
| | ) Division 4 |
| CORIZON HEALTH, INC., and CORIZON, LLC, | ) ) |
| | ) |
| Defendants. | ) |

## REQUEST FOR HEARING ON
## PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED PETITION

Plaintiffs The Curators of The University of Missouri on behalf of University of Missouri

Health Care and University Physicians and Capital Region Medical Center (collectively,

"Plaintiffs"), by and through undersigned counsel, request the Court schedule Plaintiffs' Motion

for Leave to File Amended Petition to be heard on October 31, 2022 at 1:30 p.m., or at the Court's

earliest convenience, via Webex.

Dated: October 13, 2022                Respectfully submitted,

                                       **STUEVE SIEGEL HANSON LLP**

                                        _/s/_ Patrick J. Stueve
                                       Patrick J. Stueve MO Bar # 37682
                                       Ethan M. Lange MO Bar # 67857
                                       Jordan A. Kane MO Bar # 71028
                                       460 Nichols Road, Suite 200
                                       Kansas City, Missouri 64112
                                       816-714-7100 (p)
                                       stueve@stuevesiegel.com
                                       lange@stuevesiegel.com
                                       kane@stuevesiegel.com
                                       **COUNSEL FOR PLAINTIFFS THE
                                       CURATORS OF THE UNIVERSITY OF
                                       MISSOURI AND CAPITAL REGION
                                       MEDICAL CENTER**

Electronically Filed - Boone - October 19, 2022 - 10:59 AM

## IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI

| | |
|---|---|
| **THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER,** )<br>)<br>)<br>) | |
| **Plaintiffs,** ) | |
| ) | **Civil Action No. 22BA-CV01701-01** |
| **v.** ) | |
| **CORIZON HEALTH, INC., and CORIZON, LLC,** )<br>) | |
| **Defendants.** )<br>)<br>) | |

## NOTICE OF APPEARANCE

R. Thomas Warburton of the law firm of Bradley Arant Boult Cummings LLP, 1819 Fifth Avenue North, Birmingham, Alabama 35203, enters his appearance as counsel for Defendant CORIZON HEALTH, INC., and CORIZON, LLC. The Clerk of the Court and counsel are requested to forward copies of all dockets, notices, pleadings, motions and other documents to the undersigned as counsel of record for Defendant.

Submitted this 19th day of October, 2022.

                                                */s/ R. Thomas Warburton*
                                                R. Thomas Warburton (218175)

                                                *Counsel for Defendants Corizon Health, Inc.
                                                and Corizon, LLC*

**OF COUNSEL**
R. Thomas Warburton
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
Phone: (205) 521-8000
Email: twarburton@bradley.com

Electronically Filed - Boone - October 19, 2022 - 10:59 AM

## CERTIFICATE OF SERVICE

I hereby certify on this the 19th day of October, 2022, that a true and correct copy of the foregoing was served electronically by operation of the Court's electronic filing system to the following:

Patrick J. Stueve
Ethan M. Lange
Jordan A. Kane
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, Missouri  64112

*/s/   R. Thomas Warburton*
Of Counsel

Electronically Filed - BOONE - October 28, 2022 - 01:50 PM

### IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI

| | |
|---|---|
| THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER, | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| CORIZON HEALTH, INC., and CORIZON, LLC, | ) ) |
| | ) |
| Serve: C T CORPORATION SYSTEM 120 South Central Ave Clayton, MO 63105 | ) ) ) |
| | ) |
| Defendants. | ) |

Case No. 22BA-CV01701

Division 4

### <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on October 28, 2022, Plaintiffs The Curators of the University of Missouri and Capital Region Medical Center served Plaintiffs' Second Set of Interrogatories to Corizon Health, Plaintiffs' Second Set of Requests for Admission to Corizon Health, and Plaintiffs' Second Set of Requests for Production to Corizon Health via electronic mail upon counsel of record for Defendants.

Dated: October 28, 2022

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

  _/s/_ Patrick J. Stueve
Patrick J. Stueve MO Bar # 37682
Ethan M. Lange MO Bar # 67857
Jordan A. Kane MO Bar # 71028
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
816-714-7100 (p)
816-714-7101 (f)
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

Electronically Filed - BOONE - October 28, 2022 - 01:50 PM

**COUNSEL FOR PLAINTIFFS THE
CURATORS OF THE UNIVERSITY OF
MISSOURI AND CAPITAL REGION
MEDICAL CENTER**

Electronically Filed - BOONE - October 31, 2022 - 03:55 PM

## IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI

THE CURATORS OF THE UNIVERSITY OF        )
MISSOURI and CAPITAL REGION              )
MEDICAL CENTER,                          )
                                         )
        **Plaintiffs,**        )        Case No. 22BA-CV01701-01
                                         )
v.                                       )
                                         )        Division 4
CORIZON HEALTH, INC., and                )
CORIZON, LLC,                            )
                                         )
Serve: C T CORPORATION SYSTEM            )
120 South Central Ave                    )
Clayton, MO 63105                        )
                                         )
        **Defendants.**        )

## PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY

Plaintiffs the Curators of the University of Missouri and Capital Region Medical Center

("Plaintiffs") move for an Order requiring Defendant Corizon Health, Inc. ("Corizon Health") and

proposed Defendants YesCare Corp. ("YesCare") and CHS TX, Inc. ("CHS TX") to produce

documents and answers to Plaintiffs' discovery requests (attached hereto as **Exhibits 1-6**) by

November 21, 2022, and in support state as follows:

1.      On October 7, 2022, Plaintiffs filed their Motion for Leave to File Amended

Petition, seeking to add, among other things, Defendants YesCare and CHS TX, who are mere

continuations of Corizon Health and were created to shield Corizon Health's assets from creditors,

like Plaintiffs.

2.      On October 28, 2022, Plaintiffs served their Second Set of Interrogatories to

Corizon Health, Inc., attached hereto as **Exhibit 1**. Under Mo. R. Civ. P. 57.01(c)(1), Corizon

Electronically Filed - BOONE - October 31, 2022 - 03:55 PM

Health's responses to these Interrogatories are currently due November 28, 2022. However, "the court may allow a shorter [] time" for Corizon Health's responses. Mo. R. Civ. P. 57.01(c)(1).

3.      On October 28, 2022 Plaintiffs also served their Second Requests for Production of Documents to Corizon Health, Inc., attached hereto as **Exhibit 2**. Under Mo. R. Civ. P. 58.01(c)(1) Corizon Health's responses to these Requests are currently due November 28, 2022. However, "the court may allow a shorter [] time" for Corizon Health's responses. Mo. R. Civ. P. 58.01(c)(1).

4.      Finally, on October 28, 2022, Plaintiffs served their Second Requests for Admission on Corizon Health, Inc, attached hereto as **Exhibit 3**.[1] Under Mo. R. Civ. P. 59.01(d)(1), Corizon Health's responses to these Requests are currently due November 28, 2022. However, "the court may allow a shorter [] time" for Corizon Health's responses. Mo. R. Civ. P. 59.01(d)(1).

5.      In the event this Court grants Plaintiffs' Motion for Leave to Amend Petition, Plaintiffs will serve, that same day, their First Requests for Production of Documents to YesCare Corp. and CHS TX, Inc. (**Exhibit 4** and **Exhibit 5**). Under Mo. R. Civ. P. 58.01(c)(1), once these Requests are served, YesCare and CHS TX's responses to these Requests would ordinarily be due forty-five (45) days after either the date each defendant enters an appearance or the date each defendant is served with process, whichever is earlier. However, "the court may allow a shorter [] time" for YesCare and CHS TX's responses. *Id.*

6.      Likewise, in the event this Court grants Plaintiffs' Motion for Leave to Amend Petition, Plaintiffs seek this Court's permission to serve, that same day, their First Requests for Admission on YesCare Corp. (**Exhibit 6**).  Under Mo. R. Civ. P. 59.01(d)(1), once these Requests

---

[1] These Second Requests for Admission 16 Requests, meaning Plaintiffs have, to date, served 35 Requests on Corizon Health. Although Mo. R. Civ. P. 59.01(a) provides for only twenty-five written requests for admission upon any individual party, more may be served with leave of court. Plaintiffs request this Court grant leave for service of the additional 16 requests for admission on Corizon Health.

Electronically Filed - BOONE - October 31, 2022 - 03:55 PM

are served, YesCare's responses to these Requests would ordinarily be due sixty (60) days after either the date YesCare enters an appearance or the date YesCare is served with process, whichever is earlier. However, "the court may allow a shorter [] time" for YesCare's responses. *Id.*

7. Each of the above discovery requests seeks confirmatory information on YesCare and CHS TX's relationship to Corizon Health as well as Corizon Health, YesCare, and CHS TX's financial status, assets, and liabilities.

8. Plaintiffs seek to conduct this confirmatory discovery on an expedited basis because of Corizon Health, YesCare, and CHS TX's efforts to hinder, delay, or defraud Plaintiffs with respect to the over eleven million dollars Corizon Health admits it owes to Plaintiffs under the parties' Agreement. *See* Defendants' Responses to Plaintiffs' First Set of Interrogatories No. 9 (**Ex. 7**) ("Corizon shows that the total amount owed to Plaintiffs under the Agreement, once billing discrepancies are accounted for, is 11,174,465.50").

9. As is fully laid out in Plaintiffs' proposed Amended Petition, Corizon Health engaged in a fraudulent scheme to shield its assets from Plaintiffs and its growing list of creditors while continuing its business operations. To do so, it underwent a "corporate restructuring" in which it formed YesCare and CHS TX, allocated all of Corizon Health's assets to YesCare and CHS TX, and then arranged for YesCare and CHS TX to continue on with Corizon Health's same business operations, clients, ownership, management, leadership, workforce, headquarters, bank account, and federal identification number. *See* Ex. A to Pls' Mot. For Leave to File Am. Pet. ¶¶ 56-72; ¶¶ 87-108. Indeed, YesCare and CHS TX publicly hold themselves out as Corizon Health's successor. *Id.* ¶¶ 109-127.

10. Considering Corizon Health, YesCare, and CHS TX's scheme to defraud Corizon Health's creditors, Plaintiffs fear the addition of YesCare and CHS TX to this suit will energize

Electronically Filed - BOONE - October 31, 2022 - 03:55 PM

further efforts to place those same assets out of Plaintiffs' reach. Thus, time is of the essence in discovering documents related to: (1) whether Corizon Health has sufficient assets to satisfy the eleven million admittedly owed to Plaintiffs (upon information and belief, they do not); (2) whether YesCare and CHS TX are actively shedding the assets transferred to them by Corizon Health in further attempts to avoid Corizon Health's creditors; (3) whether Corizon Health committed a fraudulent or constructively fraudulent transfer of its assets to YesCare and CHS TX; and (4) whether YesCare and CHS TX are liable for the over eleven million owed to Plaintiffs as Corizon Health's successors.

11.     Plaintiffs need this discovery on an expedited basis to prepare a motion for preliminary injunction, which will seek to enjoin further disposition by YesCare and CHS TX of the assets transferred to them by Corizon Health and an attachment or other provisional remedy against the assets transferred pursuant to this Court's authority under Mo. Ann. Stat. § 428.039. Without such relief, Plaintiffs will have no remedy to ensure YesCare and CHS TX are barred from transferring the subject assets to other entities, or otherwise frustrating Plaintiffs' ability to recover the funds Corizon Health owes. Further, such relief supports Missouri's interest in protecting its creditors from debtors' efforts to frustrate legitimate collection efforts.[2] *See State ex rel. Director of Revenue, State of Missouri v. Gabbert*, 925 S.W.2d 838, 839 (Mo. 1996) (en banc) (explaining the preliminary injunction factors are: (1) whether there is a substantial probability movant will prevail on the merits; (2) whether the moving party will suffer irreparable injury absent the injunction; (3) the harm to other interested parties if the relief is granted; and (4) the effect on the public interest).

---

[2] *See BancorpSouth Bank v. Hall*, No. 6:10-CV-03390-DGK, 2011 WL 529971, at *6 (W.D. Mo. Feb. 7, 2011) (explaining the public has an interest in "ensuring that debtors not be allowed to frustrate legitimate collection efforts by creditors").

Electronically Filed - BOONE - October 31, 2022 - 03:55 PM

12.    Along with injunctive relief, Plaintiffs intend to use the requested discovery to move for summary judgment on Plaintiffs' claims for the $11,174,465.50 undisputedly owed by Corizon Health, and to seek recovery of those funds from Corizon Health, YesCare, and CHS TX.

13.    For the foregoing reasons, Plaintiffs request this Court issue an order requiring Corizon Health to respond to Plaintiffs' Second Set of Interrogatories (**Ex. 1**) by November 21, 2022. Plaintiffs further request an order requiring Corizon Health, YesCare, and CHS TX to submit responses and produce documents in response to Plaintiffs' Second Requests for Production of Documents to Corizon Health, Inc. (**Ex. 2**) and Plaintiffs' First Requests for Production of Documents to YesCare and CHS TX (**Ex. 4, 5**) by November 21, 2022. Further, Plaintiffs request this Court issue an order requiring Corizon Health to respond to Plaintiffs' Second Requests for Admission (**Ex. 3**) by November 21, 2022. Last, Plaintiffs request this Court issue an order permitting Plaintiffs to serve Plaintiffs' First Requests for Admission on YesCare (**Ex. 6**) and requiring YesCare to respond to same by November 21, 2022.

WHEREFORE, for the reasons stated herein, Plaintiffs respectfully request the Court grant Plaintiffs' Motion for Expedited Discovery and afford any and all relief as the Court deems just and proper.

Dated: October 31, 2022                 Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

   */s/ Patrick J. Stueve*
Patrick J. Stueve MO Bar # 37682
Ethan M. Lange MO Bar # 67857
Jordan A. Kane MO Bar # 71028
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
816-714-7100 (p)
816-714-7101 (f)
stueve@stuevesiegel.com

Electronically Filed - BOONE - October 31, 2022 - 03:55 PM

lange@stuevesiegel.com
kane@stuevesiegel.com

**COUNSEL FOR PLAINTIFFS THE
CURATORS OF THE UNIVERSITY OF
MISSOURI AND CAPITAL REGION
MEDICAL CENTER**

Electronically Filed - BOONE - October 31, 2022 - 03:57 PM

# IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI

| | |
|---|---|
| **THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER,** ) ) ) ) | |
| **Plaintiffs,** ) ) | Case No. 22BA-CV01701-01 |
| **v.** ) ) | Division 4 |
| **CORIZON HEALTH, INC., and CORIZON, LLC,** ) ) ) | |
| **Serve: C T CORPORATION SYSTEM 120 South Central Ave Clayton, MO 63105** ) ) ) ) ) | |
| **Defendants.** ) | |

## PLAINTIFFS' NOTICE OF HEARING
## ON PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY

Please take notice that Plaintiffs shall call for hearing their Motion for Expedited Discovery

on **November 7, 2022** at **1:30 p.m.**, or at such time thereafter as counsel may be heard.

Dated: October 31, 2022

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

  _/s/ Patrick J. Stueve_
Patrick J. Stueve MO Bar # 37682
Ethan M. Lange MO Bar # 67857
Jordan A. Kane MO Bar # 71028
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
816-714-7100 (p)
816-714-7101 (f)
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

**COUNSEL FOR PLAINTIFFS THE CURATORS OF THE UNIVERSITY OF MISSOURI AND CAPITAL REGION MEDICAL CENTER**

Electronically Filed - BOONE - November 02, 2022 - 09:29 AM

**IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI**

| | |
|---|---|
| **THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER,** )<br>)<br>)<br>)<br>**Plaintiffs,** )<br>)<br>**v.** )<br>**CORIZON HEALTH, INC., and** )<br>**CORIZON, LLC,** )<br>)<br>**Defendants.** )<br>) | **Civil Action No. 22BA-CV01701-01** |

<u>**JOINT NOTICE RESETTING HEARING ON PLAINTIFFS' MOTION FOR EXPEDITED DISCOVERY**</u>

Please take notice that the hearing on Plaintiffs' Motion for Expedited Discovery, previously set by Plaintiffs for November 7, 2022 at 1:30 PM, is by joint agreement of the Parties hereby **RESET** for **November 14, 2022 at 1:30 PM**, or at such time thereafter as counsel may be heard.

Respectfully submitted,

*/s/ R. Thomas Warburton*
R. Thomas Warburton (218175)
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
Phone: (205) 521-8000
Email: twarburton@bradley.com

*Counsel for Defendants Corizon Health, Inc. and Corizon, LLC*

*/s/    Ethan M. Lange*

Electronically Filed - BOONE - November 02, 2022 - 09:29 AM

Patrick J. Stueve MO Bar # 37682
Ethan M. Lange MO Bar # 67857
Jordan A. Kane MO Bar # 71028
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
816-714-7100 (p)
816-714-7101 (f)
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

*Counsel for Plaintiffs the Curators of the
University of Missouri and Capital Region
Medical Center*

## CERTIFICATE OF SERVICE

I hereby certify on this the 2nd of November, 2022, that a true and correct copy of the foregoing was served electronically by operation of the Court's electronic filing system and/or email to the following:

R. Thomas Warburton (218175)
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
Phone: (205) 521-8000
Email: twarburton@bradley.com

*Counsel for Defendants Corizon Health, Inc.
and Corizon, LLC*

      /s/   Ethan M. Lange
Attorney

Electronically Filed - BOONE - November 02, 2022 - 09:31 AM

## IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI

**THE CURATORS OF THE UNIVERSITY**     )
**OF MISSOURI and CAPITAL REGION**    )
**MEDICAL CENTER,**                      )
                                     )
     **Plaintiffs,**                   )
                                     )     **Civil Action No. 22BA-CV01701-01**
**v.**                                 )
**CORIZON HEALTH, INC., and**        )
**CORIZON, LLC,**                   )
                                     )
     **Defendants.**                )
                                     )

## AGREED ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED PETITION AND CANCELING HEARING THEREON

It appearing to the Court that, on October 7, 2022, Plaintiffs the Curators of the University of Missouri and Capital Region Medical Center ("Plaintiffs") moved for leave to file their Amended Petition (the "Motion"); *and*

It further appearing to the Court that Defendants Corizon Health, Inc. and Corizon, LLC ("Defendants") do not procedurally oppose the Motion, but expressly reserve the right to challenge the merits of any allegations in the Amended Petition and preserve all defenses thereto both factual and legal; *and*

It likewise appearing to the Court that Defendants' counsel will not be jointly representing proposed defendants YesCare Corp. ("YesCare") and/or CHS TX, Inc. ("CHS TX") (together the "Proposed Defendants"), but rather the Proposed Defendants will obtain independent representation in this matter.

For these reasons, it is therefore **ORDERED** that Plaintiffs' Motion is granted. Within seven (7) days of the entry of this Order, Plaintiffs shall file their First Amended Petition as was attached as Exhibit A to Plaintiffs' Motion. Thereafter, Plaintiffs shall serve the First Amended

Electronically Filed - BOONE - November 02, 2022 - 09:31 AM

Petition on Defendants' undersigned counsel, as well as on the Proposed Defendants as provided by the Missouri Rules of Civil Procedure. The Hearing on the Motion currently set for November 7, 2022 is therefore **CANCELED**.

**DATED:** November _____, 2022.

_____
**JUDGE**

**APPROVED FOR ENTRY:**

_/s/ R. Thomas Warburton_____
R. Thomas Warburton (218175)
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
Phone: (205) 521-8000
Email: twarburton@bradley.com

_Counsel for Defendants Corizon Health, Inc._
_and Corizon, LLC_

_/s/_____Ethan M. Lange_____
Patrick J. Stueve MO Bar # 37682
Ethan M. Lange MO Bar # 67857
Jordan A. Kane MO Bar # 71028
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
816-714-7100 (p)
816-714-7101 (f)
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

_Counsel for Plaintiffs the Curators of the University_
_of Missouri and Capital Region Medical Center_

Electronically Filed - BOONE - November 02, 2022 - 09:31 AM

## IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI

| | |
|---|---|
| **THE CURATORS OF THE UNIVERSITY**<br>**OF MISSOURI and CAPITAL REGION**<br>**MEDICAL CENTER,**<br><br>    **Plaintiffs,**<br><br>**v.**<br>**CORIZON HEALTH, INC., and**<br>**CORIZON, LLC,**<br><br>    **Defendants.** | )<br>)<br>)<br>)<br>)<br>)    **Civil Action No. 22BA-CV01701-01**<br>)<br>)<br>)<br>)<br>)<br>) |

## AGREED ORDER GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED PETITION AND CANCELING HEARING THEREON

It appearing to the Court that, on October 7, 2022, Plaintiffs the Curators of the University of Missouri and Capital Region Medical Center ("Plaintiffs") moved for leave to file their Amended Petition (the "Motion"); *and*

It further appearing to the Court that Defendants Corizon Health, Inc. and Corizon, LLC ("Defendants") do not procedurally oppose the Motion, but expressly reserve the right to challenge the merits of any allegations in the Amended Petition and preserve all defenses thereto both factual and legal; *and*

It likewise appearing to the Court that Defendants' counsel will not be jointly representing proposed defendants YesCare Corp. ("YesCare") and/or CHS TX, Inc. ("CHS TX") (together the "Proposed Defendants"), but rather the Proposed Defendants will obtain independent representation in this matter.

For these reasons, it is therefore **ORDERED** that Plaintiffs' Motion is granted. Within seven (7) days of the entry of this Order, Plaintiffs shall file their First Amended Petition as was attached as Exhibit A to Plaintiffs' Motion. Thereafter, Plaintiffs shall serve the First Amended

Electronically Filed - BOONE - November 02, 2022 - 09:31 AM

Petition on Defendants' undersigned counsel, as well as on the Proposed Defendants as provided

by the Missouri Rules of Civil Procedure. The Hearing on the Motion currently set for November

7, 2022 is therefore **CANCELED**.

**DATED:** November ___2nd___, 2022.



Honorable Joshua C. Devine, Division IV

**APPROVED FOR ENTRY:**

COURT SEAL OF

*/s/ R. Thomas Warburton*
R. Thomas Warburton (218175)
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
Phone: (205) 521-8000
Email: twarburton@bradley.com

BOONE COUNTY

*Counsel for Defendants Corizon Health, Inc.
and Corizon, LLC*

*/s/       Ethan M. Lange*
Patrick J. Stueve MO Bar # 37682
Ethan M. Lange MO Bar # 67857
Jordan A. Kane MO Bar # 71028
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
816-714-7100 (p)
816-714-7101 (f)
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

*Counsel for Plaintiffs the Curators of the University
of Missouri and Capital Region Medical Center*

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

## IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI

**THE CURATORS OF THE UNIVERSITY OF**　)
**MISSOURI and CAPITAL REGION**　)
**MEDICAL CENTER**,　)
　)
　　　　　Plaintiffs,　)　　Case No. 22BA-CV01701
　)
v.　)
　)　　Division 4
**TEHUM CARE SERVICES, INC. d/b/a**　)
**CORIZON HEALTH, INC.,**　)
　)
Serve:  C T CORPORATION SYSTEM　)
　　　　120 South Central Ave　)
　　　　Clayton, MO 63105　)
　)
**CHS TX, Inc.,**　)
　)
Serve:  C T CORPORATION SYSTEM　)
　　　　120 South Central Ave　)
　　　　Clayton, MO 63105　)
　)
**and YESCARE CORP.,**　)
　)
Serve:  Sara Tirschwell　)
　　　　3411 Yoakum Blvd. #2901　)
　　　　Houston, TX 77006　)
　)
　　　　　Defendants.　)

## FIRST AMENDED PETITION

Plaintiffs The Curators of The University of Missouri on behalf of University of Missouri

Health Care and University Physicians ("University"), and Capital Region Medical Center

("Capital Region") (collectively, "Hospital" or "Plaintiffs"), by and through undersigned counsel,

hereby allege as follows against Defendants Tehum Care Services, Inc. d/b/a Corizon Health, Inc.,

CHS TX, Inc., and YesCare Corp. (collectively, "Defendants"):

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

## PARTIES

1.     Plaintiff The Curators of The University of Missouri is the state university recognized by Article IX, Sections 9(a) and 9(b) of the Missouri Constitution and incorporated by Mo. Rev. Stat. § 172.020. The Curators of the University of Missouri operates University Physicians and University of Missouri Health Care as part of its academic health system based in Columbia, Missouri. The University includes accredited healthcare facilities that are authorized to operate as hospitals in the State of Missouri.

2.     Plaintiff Capital Region Medical Center is a nonprofit corporation organized under the laws of the State of Missouri with its principal place of business in Jefferson City, Missouri. Capital Region is an affiliate of the University (as defined in the Agreement at Exhibit 1 p. 1, ¶ 1.2, referenced below) and operates an accredited healthcare facility authorized to operate as a hospital in the State of Missouri.

3.     Defendant Tehum Care Services, Inc. d/b/a Corizon Health, Inc. ("Corizon Health") is a Texas for-profit corporation formed on May 3, 2022 by a four-way merger of four entities (Corizon Health, Inc., Valitas Health Services, Inc., Corizon Health of New Jersey, LLC, and Corizon, LLC) with its principal place of business at 205 Powell Place, Suite 104, Brentwood, Tennessee. One of those entities, Corizon, LLC, was a Missouri limited liability company licensed and doing business in Missouri. As a result of the four-way merger, Corizon Health remained as the surviving entity and is liable for Corizon Health, Inc. and Corizon, LLC's contractual obligations, including Corizon Health, Inc. and Corizon LLC's Hospital Services Agreement with Plaintiffs. Before transferring all of its active contracts to Defendant CHS TX, Inc. in May 2022, Corizon Health was engaged in the business of practicing medicine and providing correctional healthcare throughout the United States, including in the State of Missouri. Corizon Health's officers and directors include Chief Executive Officer Sara Tirschwell, Chief Financial Officer

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

Jeff Sholey, Chief Legal Officer J. Scott King, Chief Medical Officer Gregory Ladele, Chairman David Gefner, Vice Chairman Abe Goldberger, Director Jay Leitner, and Director Isaac Lefkowitz.

4.      Defendant YesCare Corp. ("YesCare") is a Texas for-profit corporation formed on January 26, 2022, with its principal place of business at 205 Powell Place, Suite 104, Brentwood, Tennessee. YesCare's organizer and director is Sara Tirschwell. YesCare's executive team includes, among others, Chief Executive Officer Sara Tirschwell, Chief Financial Officer Jeff Sholey, Chief Legal Officer J. Scott King, and Chief Medical Officer Gregory Ladele. Upon information and belief, David Gefner and Jay Leitner retain an ownership interest in YesCare, and Isaac Lefkowitz is likewise involved in YesCare's ownership and/or management.

5.      Defendant CHS TX, Inc. ("CHS TX") is a Texas for-profit corporation formed on May 3, 2022, with its principal place of business at 205 Powell Place, Suite 104, Brentwood, Tennessee. CHS TX's organizer is Sara Tirschwell, and its directors are Sara Tirschwell and Jeff Sholey. CHS TX is a wholly-owned subsidiary of YesCare. On the date of its formation, CHS TX absorbed all or substantially all assets of Corizon Health, including all of Corizon Health's active contracts, employees, and management.

6.      Corizon Health, YesCare, and CHS TX are "Affiliated Entit[ies]" as that term is defined in the Agreement.

7.      Additionally, YesCare and CHS TX are alter-egos, successors, or mere continuations of Corizon Health, formed for the primary purpose of evading or frustrating Corizon Health's creditors, such as Plaintiffs, and are responsible for assuming Corizon Health's obligations to Plaintiffs.

<u>**JURISDICTION AND VENUE**</u>

8.      Jurisdiction and venue are proper in this Court.

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

9.      This Court has personal jurisdiction over Defendants Corizon Health, YesCare, and CHS TX pursuant to Mo. Rev. Stat. § 506.500(1) and/or (2) because the claims alleged herein against Defendants arise from Defendants' (1) transaction of business within Missouri; (2) making of contracts within Missouri; and (3) commission of tortious acts within this state.

10.     Further, this Court has personal jurisdiction over Defendants YesCare and CHS TX because both are alter-egos, successors, or mere continuations of Corizon Health. *See LearSchmidt Inv. Grp., LLC v. AB-Alpine SPE, LLC*, No. 2:19-CV-04053-NKL, 2019 WL 2271169, at \*2 (W.D. Mo. May 28, 2019).

11.     This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to Article V, § 14(a) of the Missouri Constitution.

12.     This case is not removable to federal court because diversity jurisdiction under 28 U.S.C. § 1332(a) does not exist. The University is an "arm of the State of Missouri," and thus is not a "citizen" of a different state for diversity jurisdiction under 28 U.S.C. § 1332(a). *See Sherman v. Curators of Univ. of Mo.*, 871 F. Supp. 344, 346, 348 (W.D. Mo. 1994) (determining the University is a state instrumentality acting as an arm of the State of Missouri and enjoys Eleventh Amendment protection); *Brantl v. Curators of Univ. of Missouri*, 616 S.W.3d 494, 501 (Mo. App. W.D. 2020) ("Missouri's federal courts have uniformly held that the University is a state instrumentality acting as an arm of the State of Missouri").

13.     Based on the foregoing, the United States District Court for the Western District of Missouri remanded this action on September 9, 2022 for lack of subject matter jurisdiction, finding that "removal was objectively unreasonable." *Curators of Univ. of Missouri v. Corizon Health Inc.*, Case No. 2:22-cv-04100-NKL, Doc. 22 at 16 (W.D. Mo. Sept. 9, 2022).

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

14.     Venue is proper in this Court pursuant to Mo. Rev. Stat. § 508.010.4 because Plaintiffs were first injured by the acts and conduct alleged herein in Boone County, Missouri.

**FACTUAL ALLEGATIONS**

**A.  Corizon Health Entered Into a Hospital Services Agreement with Plaintiffs in 2016.**

15.     Corizon Health, a privately held correctional health care provider, markets itself as "the pioneer and foremost provider of correctional healthcare in the United States," and "a company built on more than 40 years of innovation and expertise in the industry."[1]

16.     In the course of its business, Corizon Health contracted with the Missouri Department of Corrections ("MDOC") to provide health care services to inmates under the MDOC's control.

17.     To fulfill its contract with the MDOC, Corizon, LLC, "acting for itself or on behalf of any/all/other affiliated companies (hereinafter collectively referred to as "Corizon Health")" entered into a Hospital Services Agreement (the "Agreement") with Plaintiffs on November 1, 2016. The Agreement is attached hereto as **Exhibit 1**, including amendments thereto.

18.     "Affiliated Entity" under the Agreement "means any entity who directly or indirectly through one (1) or more intermediaries, controls, or is controlled by, or is under common control with, Corizon Health." Ex. 1 at p. 1, ¶ 1.1.

19.     Under the Agreement between Corizon Health and Plaintiffs, Plaintiffs agreed to "provide Health Care Services to Patients" in exchange for compensation from Corizon Health. *See id.* at pp. 3-8 & Attachment IV.

20.     "Patient" is defined under the Agreement as "those correctional facility inmate patients or detainees in the custody of the [MDOC] for whom Corizon Health has contracted to

---

[1] **Exhibit 2**, Home Page, www.corizonhealth.com (last visited September 21, 2022).

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

provide or arrange for the provision of Health Care Services pursuant to the Corizon Health/[Missouri Department of Corrections] Contract." *Id.* at p. 3, ¶ 1.11.

21.    "Health Care Services" is defined under the Agreement as "the medical and other related services, including both inpatient and outpatient care, provided to a Patient by Hospital or Hospital-affiliated health care professional, which are Medically Necessary and are requested by Corizon Health contracted on-site physicians or providers or that constitute Emergency Services." *Id.* at p. 2, ¶ 1.6.

22.    Corizon Health agreed to reimburse Plaintiffs for Health Care Services for Patients admitted or brought to Plaintiffs for either inpatient or outpatient care by or at the direction of Corizon Health. *Id.* at p. 5, § 3.

23.    Plaintiffs were to "submit Completed Claims to Corizon Health on the approved hospital billing form within one hundred and twenty (120) days of date of service rendered to the Patient or Corizon Health will have no obligation to pay." *Id.* at p. 7, ¶ 3.3.2; *id.* at Second Amendment at p. 1, ¶ 1.

24.    "Completed Claim[s]" is defined under the Agreement as:

a timely claim submitted on an industry standard claim form (CMS-1500 or UB-04 or equivalent successor), for reimbursement of Health Care Services which is consistent with the definition of a clean claim in the Missouri Revised Statute 376.383 and contains at least the following information:

1) Patient (Inmate) name and Department of Correction or Booking Identification number (Inmate Number).
2) Name and Address of Correctional Facility from which the inmate was transported.
3) Patient Date of Birth.
4) Date(s) of Service.
5) Hospital Name, Address, Phone number, and Tax Identification number.
6) ICD-9, ICD-10 or successor Diagnostic and Surgical Procedure codes and descriptions.

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

7) Current industry standard procedure coding (UB-04 Revenue Codes, DRG, HCPCS and CPT codes as appropriate or equivalent successor forms or code sets) and descriptions.
8) Detailed billing of charges and units.

*Id.* at p. 2, ¶ 1.5.

25.     Completed Claims were to "be sent to the following address:"

Corizon Health accepts the electronic filing of claim forms. When submitting UB-04, or equivalent successor forms via an electronic format, Hospital should use the Corizon Health payer identification number 43160.

Or

Corizon Health
P.O. Box 981639
El Paso, TX 79998

*Id.* at p. 6, ¶ 3.3.1.

26.     Plaintiffs were to "use the most current procedural (CPT) and HCPCS codes on all forms" and "abide by all AMA/CPT code billing standards, CMS guidelines, rules and regulations that are applicable (including inclusive procedure codes, prospective payment system OPPS and/or automated payment classification APC)." *Id.* at p. 7, ¶ 3.3.3.

27.     Corizon Health agreed that "Completed Claims shall be paid within sixty (60) days." *Id.* at p. 7, ¶ 3.1.3.

28.     Further, the Agreement provides, "in the event payment is not made within such sixty (60) day time period, an interest charge of one percent (1%) of the claim per month shall be paid." *Id.*

29.     The Agreement "may be amended only by written agreement signed by the Parties." *Id.* at p. 12, ¶ 7.2. And the Agreement, inclusive of any and all amendments, attachments and exhibits "constitutes the entire understanding and agreement between the parties with regard to the subject matter." *Id.* at p. 12, ¶ 7.4. "No other prior or contemporaneous promise, obligation,

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

statement or understanding between the parties, whether written or oral, shall be valid or binding."
*Id.*

30.    "For conflict of law purposes, the laws of the State of Missouri shall apply in interpreting the terms" of the Agreement. *Id.* at p. 14, ¶ 7.13.

31.    In accordance with the Agreement, Plaintiffs provided Health Care Services to Patients.

32.    Further, Plaintiffs submitted Completed Claims to Corizon Health on approved hospital billing forms.

33.    Plaintiffs submitted such Completed Claims within one hundred and twenty (120) days of the date of service rendered to Patients.

34.    Additionally, Plaintiffs used the most current procedural (CPT) and HCPCS codes on the forms.

35.    Plaintiffs also abided by all AMA/CPT code billing standards, CMS guidelines, rules and regulations that are applicable (including inclusive procedure codes, prospective payment system OPPS and/or automated payment classification APC).

36.    The Agreement provides that the "Parties to this Agreement may not assign, sell or transfer any of their rights or responsibilities under this Agreement without the prior written consent of the other party." *Id.* at p. 12, ¶ 7.1.

37.    Corizon Health did not seek or obtain prior written consent of Plaintiffs to assign, sell, or transfer any of its rights or responsibilities under the Agreement.

38.    The Agreement further provides that "This Agreement shall be binding upon and inure to the benefit of each party hereto, and their successors and permitted assigns." *Id.* at p. 13, ¶ 7.5.

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

**B. Beginning in 2020, Corizon Health Stopped Reimbursing Plaintiffs for Health Care Services, and To Date Owes Plaintiffs Over $12 Million.**

39.    Beginning in 2020, Corizon Health did not pay Plaintiffs for all Completed Claims submitted to Corizon Health.

40.    Beginning in 2020, Corizon Health did not pay Plaintiffs for all Health Care Services rendered to Patients.

41.    Plaintiffs notified Corizon Health of its failure to timely pay Completed Claims pursuant to the Agreement. *See* Ex. 1 at p. 13, ¶ 7.9.

42.    Plaintiffs notified Corizon Health of its failure to timely pay for Health Care Services rendered to Patients.

43.    Corizon Health repeatedly represented to Plaintiffs that it intended to pay the outstanding Completed Claims, including interest at the rate of one percent (1%) per month.

44.    Nevertheless, Corizon Health has not paid Plaintiffs for outstanding Completed Claims and/or Health Care Services rendered to Patients, totaling in excess of $12,000,000.00, including interest at the rate of one percent (1%) per month that continues to accrue.

45.    Corizon Health has admitted to Plaintiffs that it is in default on Plaintiffs' outstanding Completed Claims referenced herein.

46.    Corizon Health has admitted to Plaintiffs that it owes Plaintiffs $11,174,365.50 under the Agreement.

47.    To date, Corizon Health has failed to pay even the $11,174,365.50 it admits it owes under the Agreement.

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

**C. Corizon Health Consistently Represented Itself as Having Tenure in the Correctional Healthcare Industry and a Strong Financial Position.**

48.     Until the fourth quarter of 2021, Corizon Health (including in its various previous corporate forms) had been the healthcare provider for the MDOC for twenty-nine years, maintaining a regional office in Jefferson City, Missouri since December 1, 1992 to support the medical units of all MDOC Correctional Centers.

49.     In 2011, Correctional Medical Services, Inc. and Prison Health Services, Inc. merged to form Corizon Health under its previous parent company, Valitas Health Services, Inc. To its clients and vendors, Corizon Health represented that these companies constituted the two largest correctional healthcare companies in the nation.

50.     In 2014, Corizon Health won the bid for a renewed contract with the MDOC that was slated to run from July 1, 2014 to June 30, 2021. In the process of bidding for the MDOC contract, Corizon Health represented that it had a strong cash flow and sizable cash balances, boasting access to more than $72 million in operating cash in 2012, including cash held by Valitas. In addition to cash on hand, Corizon Health represented that it had access to a significant line of credit ($75 million) which it could use to meet its needs should the cash generated by its operations not be sufficient for short term need. Corizon Health further represented that Valitas generated approximately $1.2 billion in revenues in 2012 from correctional health care services, for which Corizon Health represented 55% of those revenues. Corizon Health's earnings before interest, taxes, depreciation, and amortization for 2012 was $51.6 million.

51.     Corizon Health's representations about its financial strength persisted through its dealings with the MDOC. In April 2016, Corizon Health sent a proposal to the MDOC for amending the terms of the Contract. As a part of this proposal, Corizon Health requested a reduction in the amount of the required performance bond, citing to "Corizon Health's long term

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

tenure in the correctional healthcare industry, experience in the State of Missouri and strong financial position that makes this an unnecessary expense." The MDOC agreed with Corizon Health's proposed changes. Later that year, Corizon Health and Plaintiffs entered into the Agreement.

52.    In anticipation of Corizon Health's contract expiration, the MDOC initiated a competitive bidding process for providers to submit proposals for the MDOC contract. On May 28, 2021, the MDOC chose a different healthcare provider, Centurion Health, to serve its correctional healthcare needs, ending Corizon Health's longstanding status as the MDOC's healthcare provider. Centurion Health's contract with the MDOC was slated to begin on July 1, 2021.

53.    In June 2021, Corizon Health publicly protested the MDOC's award of the contract bid to Centurion Health. When that protest was denied, in August 2021, Corizon Health filed suit in Cole County against the state Office of Administration and Division of Purchasing over the award of the bid to Centurion Health. In the suit, Corizon Health sought an order blocking the change to Centurion Health.

54.    Corizon Health's contract with the MDOC was extended to November 14, 2021, pending the outcome of Corizon Health's lawsuit.

55.    Because Corizon Health continued to provide services to the MDOC through November 14, 2021, Plaintiffs, too, continued to provide services for Corizon Health in good faith. Despite the ongoing litigation, Plaintiffs reasonably expected Corizon Health to pay for Plaintiffs' services through the MDOC's contract termination because (1) Corizon Health periodically assured Plaintiffs that it intended to pay Plaintiffs for its services; and (2) Plaintiffs were aware

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

that the MDOC continued to pay Corizon Health for the services rendered to inmates. With this understanding, Plaintiffs continued performance under the Agreement through November 2021.

### D. Corizon Health Developed a Scheme to Frustrate its Growing List of Creditors.

56.     Unbeknownst to Plaintiffs and despite Corizon Health's assurances it would pay Plaintiffs the amounts it owed under the Agreement, Corizon Health began developing a strategy to avoid its liabilities and retain its assets and operations.

57.     In December 2021, Corizon Health appointed Sara Tirschwell as its CEO, self-described as someone "[w]ith more than 30 years of experience in distressed finance."[2]

58.     With Tirschwell as CEO, Corizon Health enacted a plan to undergo a divisional merger under the Texas Business Organization Code ("TBOC") to re-allocate assets and liabilities among the resulting entities to avoid the claims of its creditors, like Plaintiffs.

59.     YesCare represented to at least one court that Corizon Health determined the most "value-maximizing" path forward would be to separate Corizon Health's assets from its liabilities, placing the Corizon Health assets in YesCare, beyond the reach of Corizon Health's unsecured creditors, including trade debt holders such as Plaintiffs, and leaving the liabilities with Corizon Health.

60.     Unbeknownst to Plaintiffs, and while simultaneously representing its intention to pay Plaintiffs the amounts owed, Corizon Health enacted its restructuring plan in the spring of 2022:

> a.  On January 31, 2022, YesCare Corp. was incorporated in Texas. Its registered agent and sole Director at the time of formation was Sara Tirschwell, Corizon Health's Chief Executive Officer.[3]

---

[2] **Exhibit 3**, April 26, 2022 The Well News Article.
[3] **Exhibit 4**, YesCare Corp.'s Certificate of Formation; **Exhibit 5**, Sarah Tirschwell Marketing Op-Ed (Sarah Tirschwell is the chief executive officer of Corizon, soon to be YesCare").

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

b.   On April 28, 2022, Corizon Health, Inc. and its parent company, Valitas Health Services, Inc., were converted from Delaware corporations to Texas corporations.[4] At the time of the conversions, Corizon Health had no significant operations in Texas. Corizon Health's corporate headquarters was in Brentwood, Tennessee, and it maintained a second major corporate office in St. Louis, Missouri.

c.   On May 3, 2022, Valitas Health Services, Inc., Corizon Health, Inc., and the two other Corizon subsidiaries that were incorporated in states other than Delaware, Corizon, LLC (a Missouri entity), and Corizon Health of New Jersey, LLC (a new Jersey entity), completed a four-way merger under the Texas Business Organizations Code. The four entities merged into one surviving Texas corporation: Corizon Health, Inc.[5]

d.   Also on May 3, 2022, immediately following the four-way merger, the combined entity, "Corizon Health," underwent a Texas divisional merger, resulting in two entities: Corizon Health, Inc., and CHS TX, Inc.[6] CHS TX, Inc. then became a wholly-owned subsidiary of YesCare Corp.[7] Corizon Health transferred all or substantially all of its assets to CHS TX, Inc.

61.   As a result of Corizon Health's restructuring scheme, CHS TX (and consequently, YesCare) received all the assets, active contracts, customers, and employees of pre-division Corizon Health,[8] including, among other things, "[a]ll cash in the Company's bank accounts, less $1,000,000 to be maintained in the account of Corizon, LLC," "[a]ll bank accounts of the Company," with a few exceptions, "all trademarks, tradenames, domain names, trade secrets, and other intellectual property relating to the Company," "[a]ll receivable and other current assets of the Company," and "[a]ny owned real estate asset of the Company."

62.   Corizon Health, on the other hand, was gutted: the restructuring scheme left it with no active contracts, no customers, and no meaningful assets; all while bearing the liabilities for all Corizon Health's terminated or expired contracts (a list that spans over 98 pages), including

---

[4] **Exhibit 6**, Corizon Health, Inc. conversion from Delaware corp. to Texas corp. April 28, 2022; **Exhibit 7**, Valitas Health Services, Inc. conversation from Delaware corp. to Texas corp., April 28, 2022.
[5] **Exhibit 8**, Four-way Texas merger of Corizon Health, Inc., Valitas Health Services, Inc., Corizon, LLC, and Corizon Health of New Jersey, LLC
[6] **Exhibit 9**, Corizon Health, Inc./CHS TX, Inc. Texas divisional merger filing.
[7] **Exhibit 10**, Email from K. Davies to Brevard County Sheriff's Dept., June 2, 2022; **Exhibit 11**, Email from S. Koch to Wyoming DOC client, June 3, 2022.
[8] **Exhibit 12**, Plan of Divisional Merger, "NEWCO ASSETS."

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

Plaintiffs' Agreement; over 500 active lawsuits and claims; and a mere $1,000,000 in remaining assets to cover those liabilities.[9]

63.    Upon information and belief, the removal of substantially all assets from Corizon Health was intended to render Corizon Health unable to meet its payment obligations to creditors like Plaintiffs.

64.    On May 11, 2022, Plaintiffs filed this lawsuit against Corizon Health, Inc. and Corizon, LLC.

65.    On May 16, 2022, YesCare issued a press release entitled, "Leading Healthcare Group Forms YesCare, Debuting New Vision and Leadership," and introduced YesCare's top management.[10] All eleven executives listed in the press release previously held (and/or currently hold) management positions in Corizon Health. The release was published by BusinessWire at 8:07 a.m.

66.    Seven minutes before the announcement was published on May 16, 2022, at 8:00 a.m., a secured creditor filed two UCC-1s in Texas, covering YesCare and CHS TX, and asserting security interests in "all assets of debtor, whether now owned or hereafter acquired" for both entities.[11]

67.    On May 19, 2022 and May 20, 2022, the same secured creditor filed UCC-3s in Missouri and New Jersey, releasing its previously-filed liens on the assets of Corizon Health (Corizon, LLC and Corizon Health of New Jersey, LLC, the subsidiaries of Corizon Health that

---

[9] **Exhibit 12**, Plan of Divisional Merger, "REMAINCO ASSETS."
[10]https://www.businesswire.com/news/home/20220516005378/en/Leading-Healthcare-Group-Forms-YesCare-Debuting-New-Vision-and-Leadership (last visited September 20, 2022).
[11] **Exhibit 13**, UCC-1 Financing Statement for YesCare Corp., May 16, 2022; **Exhibit 14**, UCC-1 Financing Statement for CHS TX, Inc., May 16, 2022.

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

were parties to the four-way-merger-followed-by-split executed on May 3, 2022).[12] These released

liens had been in place since April of 2017, and had covered all assets of the respective debtors.[13]

68.    On June 1, 2022, post-divisional-merger Corizon Health, through Isaac Lefkowitz,

changed its name to "Tehum Care Services, Inc."[14]

69.    At no point did Corizon Health inform Plaintiffs it was "restructuring."

70.    At no point did Corizon Health inform Plaintiffs it was changing its name.

71.    Instead, Corizon Health continued and continues to hold itself out to Plaintiffs as

"Corizon Health, Inc.," even in public filings in this case.

72.    This corporate restructuring was not an arms-length transaction in which Corizon

Health sold substantially all its assets to a third party for their fair-market value. Rather, it was an

insider transaction in which Corizon Health's beneficial owners placed Corizon Health's assets

into new entities that they also control, for the purpose of frustrating creditors, like Plaintiffs, in

their efforts to collect money owed from Corizon Health.

**E. Defendants Concealed the Restructuring Scheme from Plaintiffs, Fraudulently Induced Plaintiffs to Continue Performing Under the Agreement, and Represented that it Intended to Pay the Amounts Owed While Stripping Corizon Health of its Assets.**

73.    In 2020, Corizon Health began defaulting on its payments under the Agreement.

74.    Plaintiffs, cognizant of the growing balance due, were in constant contact with

Corizon Health about its delinquent payments, frequently communicating with Corizon Health

personnel regarding payment status.

---

[12] **Exhibit 15**, UCC-3 Release of Lien on Corizon, LLC in Missouri, May 20, 2022; **Exhibit 16**, New Jersey Financing Statements for Corizon Health of New Jersey, LLC.
[13] **Exhibit 16**, New Jersey Financing Statements for Corizon Health of New Jersey, LLC; **Exhibit 17**, Original Corizon, LLC UCC-1 Financing Statement filed in Missouri.
[14] **Exhibit 18**, Corizon Health, Inc. changes name to Tehum Care Services, Inc., June 1, 2022.

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

75.    In response, Corizon Health repeatedly provided assurances to Plaintiffs that it intended to perform under the Agreement and pay the amounts owed.

76.    In May of 2021, Tom Luebbering of Capital Region raised with Corizon Health the "significant amount outstanding" and explained "the payment[s] have been slow for now six month[s] and getting worse." Corizon Health claims lead Shawn Lewis referred the matter to Corizon Health's Claims Manager, Vilayvone Chitpanya, and Claims Director, Darrell Barker. Mr. Barker (now a Claims Director for YesCare) represented that Corizon Health was developing plans to "get [Plaintiffs] balance paid to the contract position," and promised Plaintiffs "better visibility" and to "continue to advise what we can do week to week to resolve the backlog."

77.    On September 24, 2021, Mr. Luebbering reiterated that Plaintiffs were "deeply concerned with the amount of outstanding claims that have yet to be paid" and requested a "detailed plan on how interest and claims payments will be made to resolve the outstanding liability."

78.    In response, on September 27, 2021, Mr. Barker promised Corizon Health would pay Plaintiffs on a rolling basis. Mr. Barker explained he would "work to calculate the interest payment for the 2nd quarter and have approved for reimbursement," and would "work to calculate the interest for the 3rd quarter next week and have approved for reimbursement." Mr. Barker explained Corizon Health would "work to[] reimburse billed charges" on the following schedule: $3 million in October, $3 million in November, $3 million in December, and $3 million in January. Mr. Barker further represented that Corizon Health hoped to "close out" the balances "60-days from the termination of the contract."

79.    Despite these assurances, Corizon Health neither paid Plaintiffs on the promised schedule, nor closed out Plaintiffs' balance 60-days from the November 14, 2021 termination date.

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

Instead, Corizon Health's repeated assurances were intended to and did induce Plaintiffs to continue to perform under the Agreement through the fall of 2021. Plaintiffs reliance on Corizon Health's repeated assurances caused Plaintiffs to incur over $12,000,000.00 in unpaid services to Corizon Health during the height of the COVID-19 pandemic.

80.    On November 3, 2021, Plaintiffs jointly sent a demand letter to Corizon Health requesting the amounts owed under the Agreement. On November 23, Vince Cooper, Executive Director–Payer Strategy and Health System Contracting for the University followed up with Corizon Health via email, asking if Corizon Health would respond to the letter and explaining "[o]ur expectation is immediate resolution/payment of all outstanding claims." Carla Copeland, Sr. Director of Network Development and Purchasing for Corizon Health, responded to Mr. Cooper, stating "We're in the process of preparing the letter/response and will send to you shortly." Corizon Health responded on November 24, 2021 with a letter stating "Corizon Health, LLC is aware of the contractual terms and payment obligations" and that Corizon was "working through our backlog of provider claims" and would "follow up with you soon with a proposed resolution." In the email transmitting Corizon Health's response, Ms. Copeland represented that Corizon Health would "hopefully have more information after the Thanksgiving holiday."

81.    In December 2021, Jeanna Williamson from the University emailed Mr. Barker a list of 653 unpaid claims and asked for verification that all claims had been received. On December 17, 2021, Mr. Barker responded that he was "hoping to get through these today or early Monday to let you know the status [on payment]."

82.    On December 15, 2021, a University representative called Corizon Health regarding the outstanding payments. The Corizon Health representative explained that the claims

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

that Corizon Health processed were "set to pay" but that they were "holding claims payments" due to "financial issues with a few clients."

83.     On December 20, 2021, Ms. Williamson again emailed Mr. Barker asking for "confirmation [that] those claims have been received and will be processed." Mr. Barker responded by attaching an updated list of claims and explaining there was just seven visits on the log for which Corizon Health had not received claims. 598 of the 653 claims were noted as "set to pay." On January 5, 2022, Ms. Williamson sent Mr. Barker documentation and claims for those remaining seven visits.

84.     On February 8, 2022, after Ms. Tirschwell formed YesCare Corp., a customer service representative for Corizon Health told Plaintiffs that Corizon Health had "new owners," that Corizon Health was "going through and pushing out payments," and that while Corizon Health could not give Plaintiffs an exact time frame for payment, the new owners were telling Corizon Health to tell people to "allow 30 more days for clean up."

85.     But 30 days passed with no payment. On April 19, 2022, undersigned Plaintiffs' counsel sent Corizon Health a Demand for Payment of Amounts Due and Owing under the Hospital Services Agreement, demanding the $12 million owed. The letter explained that Plaintiffs intended to "enforce its contractual rights in court," if Corizon Health failed to pay the $12 million within seven business days. Corizon Health did not respond to this letter. Rather, nine days later, Corizon Health reincorporated in Texas, underwent the four-way merger, and shed its assets.

86.     In response to Plaintiffs' request for payment, on July 21, 2022, a Corizon Health customer service representative responded that "[w]e do not have an ETA of when payments will be released." Around that same time, Plaintiffs began losing access to the Corizon Health website. At no point did Corizon Health disclose to Plaintiffs that it did not intend to release the payments.

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

**F. YesCare and CHS TX are Successors to Corizon Health, Sharing the Same Headquarters, Management, and Employees.**

87.    Corizon Health's corporate headquarters is "205 Powell Place, Suite 104, Brentwood, TN 37027."[15] That address is also the corporate headquarters for both YesCare[16] and CHS TX.[17]

88.    On May 19, 2022, Sara Tirschwell tweeted "I am excited to announce that the dedicated employees of Corizon Health now work for @YesCare Corp!":



89.    YesCare confirms on its website that "YesCare acquired all of the employees and active contracts of Corizon Health in early 2022."[18]

---

[15] **Exhibit 19**, Corizon Health, Inc.'s April 19, 2022 Foreign Profit Corporation Annual Report; **Exhibit 8**, Four-way Texas merger of Corizon Health, Inc., Valitas Health Services, Inc., Corizon, LLC, and Corizon Health of New Jersey, LLC.
[16] https://www.yescarecorp.com/contact (listing YesCare's address as 205 Powell Place, Suite 104, Brentwood, TN 37027) (last visited September 21, 2022); **Exhibit 13**, UCC-1 Financing Statement for YesCare Corp., May 16, 2022.
[17] **Exhibit 14**, UCC-1 Financing Statement for CHS TX, Inc., May 16, 2022.
[18] https://www.yescarecorp.com (last visited September 26, 2022).

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

90.    In YesCare's BusinessWire-published press release on May 16, 2022 under "About YesCare," it reads: "YesCare [is] composed of the former Corizon Health team."[19]

91.    Corizon Health took down its website in late September/early October of this year. But before it did, screenshots of Corizon Health's website confirm that YesCare and Corizon Health have the exact same management. Sara Tirschwell became the Chief Executive Officer of Corizon Health in late 2021,[20] and she is now also the CEO of YesCare.[21] Ms. Tirschwell is the sole director listed on YesCare's Certificate of Formation (filed January 26, 2022) and is also a director listed on Corizon Health, Inc.'s Certificate of Formation (filed April 28, 2022) along with Abe Goldberger, David Gefner, and Isaac Lefkowitz.

92.    J. Scott King is the EVP & Chief Legal Officer for Corizon Health.[22] He is also the EVP & Chief Legal Officer for YesCare.[23]

93.    Michael Middleton is the Chief Information Officer for Corizon Health.[24] He is also the Chief Information Officer for YesCare.[25]

94.    Michael E. Murphy is the SVP for State Corrections for Corizon Health.[26]  He is also the SVP of State Client Relations and Business Development for YesCare.[27]

95.    Karen Davies is the Senior Vice President of Community Corrections for Corizon Health.[28] She is also the Senior Vice President of Community Operations–Southeast for YesCare.[29]

---

[19] https://www.businesswire.com/news/home/20220516005378/en/Leading-Healthcare-Group-Forms-YesCare-Debuting-New-Vision-and-Leadership (last accessed September 20, 2022).

[20] **Exhibit 20**, Sara Tirschwell bio page, www.corizonhealth.com (last visited September 20, 2022).

[21] https://www.yescarecorp.com/about (last visited September 20, 2022).

[22] **Exhibit 21**, J. Scott King bio page, www.corizonhealth.com (last visited September 20, 2022).

[23] https://www.yescarecorp.com/about (last visited September 20, 2022).

[24] **Exhibit 22**, Michael Middleton bio page, www.corizonhealth.com (last visited September 20, 2022).

[25] https://www.yescarecorp.com/about (last visited September 20, 2022).

[26] **Exhibit 23**, Michael Murphy bio page, www.corizonhealth.com (last visited September 20, 2022).

[27] https://www.yescarecorp.com/about (last visited September 20, 2022).

[28] **Exhibit 24**, Karen Davies bio page, www.corizonhealth.com (last visited September 20, 2022).

[29] https://www.yescarecorp.com/about (last visited September 20, 2022).

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

96.    F. Jeffrey Sholey is the Senior Vice President and Chief Financial Officer of Corizon Health.[30] He is also the Senior Vice President and Chief Financial officer for YesCare.[31]

97.    Steven Tomlin is the Senior Vice President, Business Development for Corizon Health.[32] He is also the Senior Vice President of Reentry and Community Partnerships for YesCare.[33]

98.    Gregory Ladele is the Chief Medical Officer for Corizon Health.[34] He is also the Chief Medical Officer for YesCare.[35]

99.    Joseph M. Pastor is the Chief Psychiatric Officer for Corizon Health.[36] He is also the Chief Psychiatric Officer for YesCare.[37]

100.    Mary Silva is the Senior Vice President and Chief Nursing Officer for Corizon Health.[38] She is also the Chief Clinical Officer for YesCare.[39]

101.    Stacie Koch is the Vice President of Operations–Wyoming for Corizon Health.[40] She is also the Vice President of Operations–Wyoming for YesCare.[41]

102.    Latasha McMillan is the Vice President of Operations–Maryland for Corizon Health.[42] She is also the Vice President of Operations–Maryland for YesCare.[43]

---

[30] **Exhibit 25**, F. Jeffrey Sholey bio page, www.corizonhealth.com (last visited September 20, 2022).
[31] https://www.yescarecorp.com/about (last visited September 20, 2022).
[32] **Exhibit 26**, Steven Tomlin bio page, www.corizonhealth.com (last visited September 20, 2022).
[33] https://www.yescarecorp.com/about (last visited September 20, 2022).
[34] **Exhibit 27**, Gregory Ladele bio page, www.corizonhealth.com (last visited September 20, 2022).
[35] https://www.yescarecorp.com/about (last visited September 20, 2022).
[36] **Exhibit 28**, Joseph M. Pastor bio page, www.corizonhealth.com (last visited September 20, 2022).
[37] https://www.yescarecorp.com/about (last visited September 20, 2022).
[38] **Exhibit 29**, Mary Silva bio page, www.corizonhealth.com (last visited September 20, 2022).
[39] https://www.yescarecorp.com/about (last visited September 20, 2022).
[40] **Exhibit 30**, Stacie Koch bio page, www.corizonhealth.com (last visited September 20, 2022).
[41] https://www.yescarecorp.com/about (last visited September 20, 2022).
[42] **Exhibit 31**, Latasha McMillan bio page, www.corizonhealth.com (last visited September 20, 2022).
[43] https://www.yescarecorp.com/about (last visited September 20, 2022).

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

103.    Vandelyn Phillips is the Vice President of Operations–City of Philadelphia for Corizon Health.[44] She is also the Vice President of Operations–City of Philadelphia for YesCare.[45]

**G.  YesCare/CHS TX Use the Same Marketing, Websites, and Social Media.**

104.    Despite its formation mere months ago in January 2022, and its "launch" in May of this year, YesCare's press release boasts of 40 years of experience in the field, claiming YesCare "is a leading provider of correctional healthcare services in the United States, offering quality healthcare services to states and municipalities across the country. Built on more than 40 years of innovation and expertise, the YesCare team provides services at 52 facilities across the nation, serving an average of 50,000 patients each day."[46]

105.    YesCare repeats this claim of 40-years of experience on its website, which it lifted from a substantially similar statement still appearing on Corizon Health's website as of late September 2022:



As the correctional healthcare pioneer and leader for 40 years, YesCare provides client partners with high quality healthcare and reentry services that will improve the health and safety of our patients, break the cycle of recidivism and better the communities where we live and work.

*YesCare acquired all of the employees and active contracts of Corizon Health in early 2022.

As the correctional healthcare pioneer and leader for 40 years, Corizon Health provides client partners with high quality healthcare and reentry services that will improve the health and safety of our patients, reduce recidivism and better the communities where we live and work.

---

[44] **Exhibit 32**, Vandelyn Phillips bio page, www.corizonhealth.com (last visited September 20, 2022).
[45] https://www.yescarecorp.com/about (last visited September 20, 2022).
[46] *Id.* (emphasis added).

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

106.    YesCare likewise boasts of "decades of experience providing healthcare in jails and prisons." And on YesCare's careers website, it claims it has been "serving our patients for over 40+ years," and "[o]perating across the US in over 125+ locations."[47]

107.    Not only has YesCare adopted Corizon Health's experience as its own, but it has also adopted Corizon Health's marketing and social media content; a review of YesCare's website and social media reveals references to "Corizon Health" that have yet to be scrubbed. For example, the LinkedIn icon on YesCare's website page takes users to Corizon Health's LinkedIn. The "job postings" link on Corizon Health's website, when it was still active, directed users to careers.yescarecorp.com. Under the "Culture" page of YesCare's career website are several posts showing "Corizon Health" branded banners. Several job postings for management positions for YesCare still contain reference to Corizon Health. As one example of many, a posting for the "Statewide Legal Compliance Director" for YesCare contains the following statements: "By choosing a career with Corizon Health…," "As a Corizon Health professional…," and "Join Corizon Health today."[48]

108.    Further, Corizon Health converted its Twitter, Facebook page, and other social media to "YesCare" branded social media sites. For example, a review of YesCare's Facebook page shows that before May 16, 2022, the page was Corizon Health's Facebook page. To date, YesCare has failed to update the page in its entirety, with mentions of "Corizon Health" sprinkled throughout. *See, e.g.,* "Safety Information" Section ("Corizon Health has partnered with the National Patient Safety Foundation . . . Corizon Health is also one of the only correctional healthcare providers who . . .").

---

[47] https://www.yescarecorp.com (last visited September 26, 2022).
[48] https://careers.yescarecorp.com/hanover-md/statewide-legal-compliance-director/22840D3730C44CAEAA11415E950A2F2B/job/ (last visited September 20, 2022).

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

**H. YesCare and CHS TX Publicly Hold Themselves Out as Corizon Health's Successor with a "Name Change."**

109.    Not only is YesCare performing Corizon Health's contracts, employing Corizon Health's employees and management, and utilizing Corizon Health's headquarters, it is actively holding itself out to Corizon Health's clients as Corizon Health's successor.[49] Indeed, YesCare's own public-facing statements confirm that the transition from "Corizon Health" to "YesCare" is nothing more than a "name change,"[50] boasting that the change from Corizon Health to YesCare was a "thoughtfully constructed strategy to guide the company through a pivotal time" conducted by YesCare's "experienced team," and that YesCare is nonetheless "utilizing all of its corporate resources, and those of its related companies, to meet staffing needs."[51]

110.    For example, on April 26, 2022, Sara Tirschwell wrote an article regarding the Opioid Crisis, and described herself as "CEO of Corizon, Soon to be YesCare."[52] In the article, Ms. Tirschwell states "**Among our patient population at Corizon, soon to be YesCare**, close to half battle drug dependence."[53]

111.    On Friday, May 13, 2022, two days after Plaintiffs filed this lawsuit, Corizon Health informed certain clients—but not Plaintiffs—that on the following Monday, May 16, 2022, it would publicly announce that "Corizon Health is now YesCare."[54]

112.    On June 1, 2022, YesCare's (and formerly Corizon Health's) in-house counsel Jennifer Finger made edits to a yet-to-be signed Memorandum of Understanding involving

---

[49] *See, e.g.,* **Exhibit 33**, May 13, 2022 Email to St. Clair County Jail Administrator (subject: "Excited to announce that Corizon Health is now YesCare"); **Exhibit 30**, May 13, 2022 Email from K. Davies to Brevard County Sheriff's Office.
[50] **Exhibit 10**, Email from K. Davies to Brevard County Sheriff's Dept., June 2, 2022; **Exhibit 11**, Email from S. Koch to Wyoming DOC client, June 3, 2022.
[51] *Id.*
[52] **Exhibit 3**, April 26, 2022 The Well News Article.
[53] *Id.* (emphasis added).
[54] **Exhibit 33**, May 13, 2022 Email to St. Clair County Jail Administrator (subject: "Excited to announce that Corizon Health is now YesCare"); **Exhibit 34**, May 13, 2022 Email from K. Davies to Brevard County Sheriff's Office.

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

YesCare and the Brevard County Sheriff's Office. In the edits, she changed the name of the contracting party from "YesCare Inc. (f/k/a Corizon Health)," to "CHS TX, Inc. d/b/a YesCare, **successor by merger to the rights and obligations of Corizon Health, Inc.,** hereunder ("YesCare")."[55]

113.    On May 13, 2022, Ms. Tirschwell circulated a "YesCare Announcement–Client Email" draft to Corizon Health/YesCare's management for circulation to Corizon Health's existing clients. The subject line of the email is "Excited to Announce that Corizon Health is now YesCare."[56]

114.    In the body of the email, Ms. Tirschwell explains, "Monday morning, we will be announcing that the dedicated employees of Corizon Health have teamed up with a healthcare conglomerate to create YesCare" to "drive the company's next chapter as a leading correctional healthcare company." Ms. Tirschwell's email explained this transition "will not impact our service to you in any way." The email invited Corizon Health's clients to "join us in our excitement for this next stage of innovative and compassionate care, under the YesCare name."

115.    That same day, various Corizon Health management sent this exact email to Corizon Health clients.[57]

116.    On May 16, 2022, Sara Tirschwell tweeted, "Today marks a new era in correctional healthcare as Corizon Health officially becomes @YesCare! I'm proud of the work our team has done during this transition into a better model of care."

---

[55] **Exhibit 35**, Email from Jennifer Finger to Steve Tomlin, June 1, 2022; **Exhibit 36**, p. 2, Jennifer Finger's edits to MOU, file name "20-O-BJA-2022 – 171096 SUD Reentry Grant_MOU_LM edits 06.1.22."
[56] **Exhibit 37**, May 13, 2022 Davies to D. Singleton.
[57] **Exhibit 33**, May 13, 2022 Email to St. Clair County Jail Administrator (subject: "Excited to announce that Corizon Health is now YesCare"); **Exhibit 37**, May 13, 2022 Davies to D. Singleton.

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM



117.    Likewise, on June 2, 2022, YesCare Corp.'s (and Corizon Health's) Senior Vice President Karen Davies emailed an existing Corizon Health client about the details regarding the change from YesCare to Corizon Health. "**As a follow up to our announcement on our name change**," Ms. Davies explained:

> YesCare acquired all the active business of Corizon. As part of this acquisition, your contract with Corizon is now vested in CHS TX, LLC ("CHS"), a wholly-owned subsidiary of YesCare . . . . Because CHS was split from Corizon through a merger transaction, your contract has not been assigned or transferred.[58]

118.    Ms. Davies confirmed that the transition to "YesCare" was a mere continuation of Corizon Health's business, explaining: "**[t]here are no operational changes related to this transaction. Staff, P&P, contract structures, etc. will all remain the same**."[59]

119.    Ms. Davies characterized the change to "YesCare" as a "re-branding" accompanied with significant financial backing: "Under our new ownership, we are . . . under the ownership of a healthcare corporation . . . . **This affords our re-branded organization with . . . backing of a**

---

[58] **Exhibit 10**, Email from K. Davies to Brevard County Sheriff's Dept., June 2, 2022 (emphasis added).
[59] *Id.* (emphasis added).

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

**large healthcare conglomerate with multitudes of resources for us to leverage[] and strong financial and leadership stability**."[60]

120.    Ms. Davies confirmed that YesCare would be using the same bank account as Corizon Health: "There will be no change in bank account information at this time."[61]

121.    Ms. Davies further described one of YesCare's wholly-owned subsidiaries as the "successor contracting entity" because "of the merger transaction."[62]

122.    And on June 3, 2022, Stacie Koch, YesCare's (and Corizon Health's) Vice President of Operations for Wyoming, sent the exact same email to a Wyoming client.[63] In an email titled "Name change/Invoicing," Ms. Koch said she was following up on "**our announcement on our name change**," and copied verbatim Ms. Davies' email from the day before.[64]

123.    In the course of assuming Corizon Health's operations, YesCare circulated a "Client Q&A" which further confirms YesCare as Corizon Health's successor.

124.    In the Client Q&A, YesCare answers questions like "**Why is Corizon becoming YesCare?**"[65]

125.    In the Client Q&A, YesCare confirms that YesCare's federal ID number is the same as Corizon Health's, and that "no changes [will] be made to the existing agreement."[66]

126.    In response to the question "**Will this change who we work with day-to-day?**" YesCare states "As you know, we have already made organizational changes. **We have a new**

---

[60] **Exhibit 10**, Email from K. Davies to Brevard County Sheriff's Dept., June 2, 2022 (emphasis added).
[61] *Id.*
[62] *Id.*
[63] **Exhibit 11**, Email from S. Koch to Wyoming DOC client, June 3, 2022.
[64] *Id.* (emphasis added).
[65] **Exhibit 38**, YesCare Client Q&A (emphasis added).
[66] *Id.*

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

**name**; we have higher expectations, and we intend to only increase the support and responsiveness of your company contacts."[67]

127.    In response to the question, "**Are any of the services you provide at our facility changing?**" YesCare responds, "No, the current services we provide at your facility will continue."[68]

## I.    Corizon Health, YesCare, and CHS TX Are Liable for the Amounts Owed to Plaintiffs under the Agreement.

128.    Plaintiffs provided all at-issue services to Corizon Health before Corizon Health restructured; likewise, the amounts Corizon Health owes Plaintiffs under the Agreement (exclusive of interest) were incurred well before Corizon Health restructured to avoid those liabilities.

129.    Defendants' actions described herein establish that YesCare and CHS TX are liable as Corizon Health's successors for the amounts owed to Plaintiffs under the Agreement.

130.    Defendants' restructuring scheme was conducted fraudulently to escape liability for Corizon Health's debts and liabilities. In pursuit of this scheme, Defendants intended to and did induce Plaintiffs to perform under the Agreement by assuring Plaintiffs that Corizon Health would pay the amounts owed. Defendants intended that Plaintiffs rely on their representations to induce Plaintiffs to continue to perform under the Agreement to their detriment, and Plaintiffs did so rely. Had Plaintiffs known Defendants had no intention of paying the amounts owed under the Agreement and instead intended to conduct a fraudulent scheme to transfer Corizon Health's assets, Plaintiffs would have ceased performance under the Agreement and pursued legal action against Corizon Health before it enacted its restructuring scheme.

---

[67] **Exhibit 38**, YesCare Client Q&A (emphasis added).
[68] *Id.*

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

131.    Further, Defendants' restructuring scheme amounts to a de-facto consolidation or merger. While Corizon Health remains in existence as a shell company, it has functionally ceased to exist, with the entirety of its operations and assets now with YesCare and CHS TX. Corizon Health retains no active contracts and conducts no business. YesCare and CHS TX have taken over Corizon Health's entire management team, employee base, contracts, bank accounts, assets, federal ID number, corporate headquarters, and good will.

132.    Likewise, YesCare and CHS TX are a mere continuation of Corizon Health: as is described below, Defendants retain identical incorporators, officers and directors, engage in the identical business, maintain the same employees, maintain the same contracts and customers, and maintain the same federal ID number, bank accounts, property, and headquarters.

133.    Defendants' actions as described herein show a course of conduct designed to hinder and prevent Plaintiffs from collecting the amounts owed under the Agreement, and are "fraudulent transfers" under Mo. Rev. Stat. § 428.024, which provides that a transfer made with the actual intent to hinder, delay, or defraud a creditor is a fraudulent transfer.

**COUNT I:**
**BREACH OF CONTRACT**
***All Defendants***

134.    Plaintiffs reallege and incorporate by reference each and every allegation in the previous paragraphs as though fully set forth herein.

135.    Plaintiffs and Defendants are parties to a valid and enforceable contract, the Agreement (Exhibit 1).

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

136.    The Agreement and amendments thereto define "Corizon Health" under the Agreement as "Corizon, LLC . . . acting for itself or on behalf of any/all/other affiliated companies."[69]

137.    Corizon Health, as the purported surviving entity from the four-way merger with Corizon, LLC, is bound to the Agreement.

138.    Because Corizon Health, YesCare, and CHS TX are "directly or indirectly through one (1) or more intermediaries, controls, or is controlled by, or is under common control with, Corizon Health" they are each an "Affiliated Entity" under the Agreement.

139.    Thus, Corizon Health, YesCare, and CHS TX are liable to Plaintiffs for the amounts owed under the Agreement.

140.    Alternatively, YesCare and CHS TX are liable as successors-in-interest to Corizon Health.

141.    Plaintiffs substantially performed their obligations under the terms of the Agreement.

142.    Plaintiffs timely submitted Completed Claims to Defendants pursuant to the terms of the Agreement.

143.    Plaintiffs requested payment for Health Care Services rendered to Patients pursuant to the terms of the Agreement.

144.    Defendants failed to timely pay Plaintiffs all outstanding submitted Completed Claims, including interest due and owing under the Agreement.

145.    Defendants failed to pay Plaintiffs for all Health Care Services rendered to Patients, including interest due and owing under the Agreement.

---

[69] Exhibit 1, First Amendment to Hospital Services Agreement, dated November 1, 2016, p. 1.

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

146. Defendants' non-payment of outstanding Completed Claims, including interest at the rate provided in the Agreement, constitutes breaches of the Agreement.

147. Defendants' non-payment for all Health Care Services rendered to Patients, including interest at the rate provided in the Agreement, constitutes breaches of the Agreement.

148. As a direct and proximate result of Defendants' breaches of the Agreement, Plaintiffs have sustained damages that are continuing in nature in an amount to be determined at trial.

## <u>COUNT II:</u>
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### *All Defendants*

149. Alternatively, Defendants breached the implied covenant of good faith and fair dealing.

150. Plaintiffs reallege and incorporate by reference paragraphs 1-148 as though fully set forth herein.

151. Plaintiffs and Defendants are parties to a valid and enforceable contract, the Agreement (Exhibit 1).

152. The Agreement and amendments thereto define "Corizon Health" under the Agreement as "Corizon, LLC . . . acting for itself or on behalf of any/all/other affiliated companies."

153. Corizon Health, as the purported surviving entity from the four-way merger with Corizon, LLC, is bound to the Agreement.

154. Because Corizon Health, YesCare and CHS TX are "directly or indirectly through one (1) or more intermediaries controls, or is controlled by, or is under common control with, Corizon Health" they are each an "Affiliated Entity" under the Agreement.

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

155.    Thus, Corizon Health, YesCare, and CHS TX are liable to Plaintiffs for the amounts owed under the Agreement.

156.    Plaintiffs timely submitted Completed Claims to Defendants for Health Care Services provided to Patients in accordance with the terms of the Agreement.

157.    Plaintiffs submitted requests for payment to Defendants for Health Care Services provided to Patients.

158.    Plaintiffs expected to receive payment for the Completed Claims submitted to Defendants.

159.    Plaintiffs expected to receive payment for Health Care Services provided to Patients.

160.    Despite Plaintiffs' expectation of payment for the Completed Claims, Defendants decided to withhold payment from Plaintiffs.

161.    Despite Plaintiffs' expectation of payment for Health Care Services provided to Patients, Defendants decided to withhold payment from Plaintiffs.

162.    Defendants' decision to withhold payment for Completed Claims evades the spirit of the Agreement so as to deny Plaintiffs the expected benefit of payment for Completed Claims.

163.    Defendants' decision to withhold payment for Health Care Services provided to Patients evades the spirit of the Agreement so as to deny Plaintiffs the expected benefit of payment for Health Care Services provided to Patients.

164.    As a result of the aforementioned conduct, Defendants breached the Agreement's implied covenant of good faith and fair dealing.

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

165.    Accordingly, Defendants' breach of the implied covenant of good faith and fair dealing directly and proximately caused Plaintiffs' damages that are continuing in nature in an amount to be determined at trial.

**COUNT III:**
**SUCCESSOR LIABILITY**
**Express and/or Implied Agreement to Assume Debts and/or Liabilities**
***YesCare Corp. and CHS TX, Inc.***

166.    Plaintiffs reallege and incorporate by reference paragraphs 1-165 as though fully set forth herein.

167.    On January 31, 2022, YesCare was created.

168.    Corizon Health, Inc., Valitas Health Services, Inc., Corizon Health of New Jersey, LLC, and Corizon, LLC completed a four-way merger, wherein the only surviving entity was Corizon Health, Inc.

169.    Corizon Health then split into two entities: Corizon Health, and CHS TX.

170.    CHS TX became a wholly-owned subsidiary of YesCare.

171.    Corizon Health transferred all or substantially all of its assets to CHS TX.

172.    The Agreement and amendments thereto define "Corizon Health" under the Agreement as "Corizon, LLC . . . acting for itself or on behalf of any/all/other affiliated companies," which encompasses Corizon Health, Inc., CHS TX, Inc., and YesCare Corp.

173.    Additionally, "Affiliated Entity" under the Agreement "means any entity who directly or indirectly through one (1) or more intermediaries, controls, or is controlled by, or is under common control with, Corizon Health," which encompasses Corizon Health, Inc., CHS TX, Inc., and YesCare Corp.

174.    Consequently, under the Agreement and amendments thereto, CHS TX, Inc. and/or YesCare Corp. expressly or impliedly agreed to assume the debts and/or liabilities of Corizon,

33

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

LLC and/or Corizon Health, Inc. with respect to Health Care Services provided by Plaintiffs to Patients.

175.    Accordingly, YesCare Corp. and CHS TX, Inc. are the successors to Corizon Health, Inc. and/or Corizon, LLC, and are liable to Plaintiffs for the amounts owed under the parties' Agreement.

### COUNT IV:
### SUCCESSOR LIABILITY
### De Facto Merger
### *YesCare Corp. and CHS TX, Inc.*

176.    Plaintiffs reallege and incorporate by reference paragraphs 1-175 as though fully set forth herein.

177.    On January 31, 2022, YesCare was created.

178.    Corizon Health, Inc., Valitas Health Services, Inc., Corizon Health of New Jersey, LLC, and Corizon, LLC completed a four-way merger, wherein the only surviving entity was Corizon Health, Inc.

179.    Corizon Health then split into two entities: Corizon Health and CHS TX.

180.    CHS TX became a wholly-owned subsidiary of YesCare.

181.    Corizon Health transferred all or substantially all of its assets to CHS TX.

182.    More particularly, business assets, including contracts and employees, of Corizon Health, Inc. were transferred to YesCare and CHS TX in early 2022.

183.    YesCare and CHS TX assumed the liabilities of Corizon Health necessary for the uninterrupted continuation of Corizon Health's business, including rent, electricity, salaries, wages, and business services expenses.

184.    Management of Corizon Health was continued in YesCare and CHS TX through the same leadership team, including the same CEO, Sara Tirschwell.

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

185.    Personnel employed by Corizon Health continued to be employed by YesCare and CHS TX following the transfer of Corizon Health's assets to YesCare and CHS TX.

186.    Following the transfer of Corizon Health's assets to YesCare and CHS TX, YesCare and CHS TX continued business at the same address as Corizon Health.

187.    Following the transfer of Corizon Health's assets to YesCare and CHS TX, YesCare retained the same federal ID number and bank accounts as Corizon Health.

188.    Indeed, YesCare specifically informed Corizon Health's former customers that the services they received from Corizon Health would continue through YesCare.

189.    Upon information and belief, the same individuals who have an ownership interest in Corizon Health have an ownership interest in YesCare and CHS TX.

190.    Following the transfer, Corizon Health ceased its ordinary business operations.

191.    Corizon Health no longer provides healthcare in jails and/or prisons.

192.    Corizon Health became a mere shell entity, with insufficient assets to cover liabilities.

193.    Because Corizon Health retained only expired contracts, on information and belief, it will dissolve as soon as legally and practically possible.

194.    Following the cessation of Corizon Health's business, YesCare and CHS TX have conducted the same business operation with the same clients.

195.    Specifically, CHS TX (and consequently, YesCare) received all of the active contracts of Corizon Health, which are necessary for the uninterrupted continuation of normal business operations.

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

196.    Despite only being incorporated in January of 2022, YesCare holds itself out to the public as a company with "more than 40 years of experience as the leading provider of correctional healthcare," assuming as its own Corizon Health's public-facing marketing statements.

197.    Accordingly, Defendants YesCare and CHS TX are the successors to Corizon Health and are therefore liable to Plaintiffs for the amounts owed under the parties' Agreement by reason of their de facto merger with Corizon Health.

**COUNT V:**
**SUCCESSOR LIABILITY**
**Mere Continuation**
***YesCare Corp. and CHS TX, Inc.***

198.    Plaintiffs reallege and incorporate by reference paragraphs 1-197 as though fully set forth herein.

199.    On January 31, 2022, YesCare was created.

200.    Corizon Health, Inc., Valitas Health Services, Inc., Corizon Health of New Jersey, LLC, and Corizon, LLC completed a four-way merger, wherein the only surviving entity was Corizon Health, Inc.

201.    Corizon Health then split into two entities: Corizon Health, and CHS TX.

202.    CHS TX became a wholly-owned subsidiary of YesCare.

203.    Corizon Health transferred all or substantially all of its assets to CHS TX.

204.    There is common identity of officers, directors, and stockholders of YesCare, CHS TX, and Corizon Health.

205.    The incorporators of YesCare, CHS TX, and Corizon Health are common.

206.    The business operations of YesCare and/or CHS TX are identical to the business operations of Corizon Health.

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

207.    YesCare, CHS TX, and Corizon Health are manifestations of the same business enterprise under the same real ownership, management, and control.

208.    YesCare and CHS TX assumed all employees and active contracts of Corizon Health.

209.    YesCare and CHS TX conduct the exact same business as Corizon Health, and have the same headquarters, directors, management, employees, contracts, clients, property, and use the same marketing and social media sites.

210.    YesCare and CHS TX retain the same federal identification number and bank account(s) as Corizon Health.

211.    YesCare holds itself out to the public as the same company as Corizon Health, re-branded with a "name change."

212.    Despite only being incorporated in January of 2022, YesCare claims it is a company with "more than 40 years of experience as the leading provider of correctional healthcare," assuming as its own Corizon Health's public-facing marketing statements.

213.    YesCare informed Corizon Health's employees and customers about the change to YesCare.

214.    Accordingly, YesCare and CHS TX are the successors to Corizon Health and are liable to Plaintiffs for the amounts owed under the parties' Agreement by reason of being a mere continuation of Corizon Health.

**COUNT VI:**
**SUCCESSOR LIABILITY**
**Intent to Defraud Creditors**
***YesCare Corp. and CHS TX, Inc.***

215.    Plaintiffs reallege and incorporate by reference paragraphs 1-214 as though fully set forth herein.

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

216.    On January 31, 2022, YesCare was created.

217.    Corizon Health, Inc., Valitas Health Services, Inc., Corizon Health of New Jersey, LLC, and Corizon, LLC completed a four-way merger, wherein the only surviving entity was Corizon Health, Inc.

218.    Corizon Health then split into two entities: Corizon Health, and CHS TX.

219.    CHS TX became a wholly-owned subsidiary of YesCare.

220.    Corizon Health transferred all or substantially all of its assets to CHS TX.

221.    YesCare and CHS TX were formed to frustrate and evade the creditors of Corizon Health.

222.    Corizon Health's conveyance of assets was to affiliated entities, CHS TX and YesCare.

223.    The conveyance from Corizon Health to CHS TX and YesCare was for inadequate consideration.

224.    The transfer of assets from Corizon Health to CHS TX and YesCare were different from Corizon Health's usual method of transacting business.

225.    The transfer of assets from Corizon Health to CHS TX and YesCare were made in anticipation of suit.

226.    The transfer of assets from Corizon Health to CHS TX and YesCare were made so that the assets of Corizon Health could be retained by the same ownership.

227.    The transfer of assets from Corizon Health to CHS TX and YesCare resulted in the transfer of nearly all of the Corizon Health's property.

228.    Corizon Health is rendered insolvent by the transfer of its assets to CHS TX and YesCare.

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

229.    Corizon Health, CHS TX, and YesCare are unable to produce rebutting evidence to demonstrate the circumstances surrounding the transfer of Corizon Health's assets to CHS TX and YesCare are not suspicious.

230.    YesCare and CHS TX resumed the operations of Corizon Health to frustrate and evade the creditors of Corizon Health, including Plaintiffs, with respect to the amounts owed under the parties' Agreement.

231.    Accordingly, YesCare and CHS TX are the successors to Corizon Health, and are liable to Plaintiffs for the amounts owed under the parties' Agreement by reason of their intent to defraud Corizon Health's creditors.

<u>**COUNT VII:**</u>
**COMMON LAW FRAUD and CONSPIRACY TO COMMIT COMMON LAW FRAUD**
***All Defendants***

232.    Plaintiffs reallege and incorporate by reference paragraphs 1-231 as though fully set forth herein.

233.    With an intent to hinder, delay, and defraud Plaintiffs of the obligations owed them under the Agreement, Defendants participated in, and continue to participate in, by a meeting of the minds, a civil conspiracy to prevent Plaintiffs from collecting on the obligations owed them under said Agreement by Corizon Health.

234.    In pursuit of this conspiracy, Defendants intended to and did induce Plaintiffs to perform under the Agreement by assuring Plaintiffs that Corizon Health would pay the amounts owed under the Agreement, including interest.

235.    Defendants intended that Plaintiffs rely on their representations to induce Plaintiffs to continue to perform under the Agreement to their detriment.

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

236.    Plaintiffs relied on Defendants' assurances by continuing to perform their obligations under the Agreement.

237.    After the termination of the Agreement but before restructuring, and in pursuit of the conspiracy, Corizon Health knowingly and falsely represented to Plaintiffs that Corizon Health intended to pay Plaintiffs the amounts due and owing under the Agreement.

238.    In the midst of Defendants' spring 2022 restructuring scheme, Corizon Health intentionally told vendors, like Plaintiffs, to "wait 30 days for clean up" of outstanding payments to delay vendors from taking action against it while it restructured in an attempt to make Corizon Health's assets judgment proof.

239.    Corizon Health induced Plaintiffs to rely on assurances that Corizon Health would pay the amounts owed under the Agreement, allowing Defendants time to fraudulently convey to YesCare and CHS TX the assets of Corizon Health to avoid payment to Plaintiffs.

240.    Had Plaintiffs known Defendants had no intention of paying the amounts owed under the Agreement, Plaintiffs would have ceased performance under the Agreement.

241.    Had Plaintiffs known Defendants intended to conduct a fraudulent scheme to transfer Corizon Health's assets, Plaintiffs would have pursued legal action against Corizon Health before Corizon Health enacted its restructuring scheme to strip Corizon Health of its assets.

242.    Plaintiffs have sustained damages directly and proximately caused by Defendants' fraud. Plaintiffs have and continue to be damaged as Defendants' fraud and civil conspiracy to commit fraud has prevented Plaintiffs from collecting the amounts owed under the Agreement by Defendants.

243.    Accordingly, Defendants have and continue to be engaged in such intentional conduct without just cause and with a deliberate and flagrant disregard for Plaintiffs' rights in

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

order to prevent Plaintiffs from collecting on the obligations owed them under the Agreement by Corizon Health, such that Plaintiffs are entitled to an award of punitive damages in an amount sufficient to punish and deter like conduct.

**COUNT VIII:**
**FRAUDULENT TRANSFER**
**Pursuant to the Missouri Uniform Fraudulent Transfer Act, Mo. Rev. Stat. §§ 428.005 *et seq.***
***Corizon Health***

244.    Plaintiffs reallege and incorporate by reference paragraphs 1-243 as though fully set forth herein.

245.    Plaintiffs have filed this action, in part, under the Missouri Uniform Fraudulent Transfer Act, Mo. Rev. Stat. § 428.005 *et seq.*, and are seeking all relief and remedies available under that Act.

246.    Plaintiffs are, and have been at all times material hereto, "creditors" under the Act as they are each a "person who has a claim" against Corizon Health under Mo. Rev. Stat. § 428.009(4).

247.    Corizon Health is, and has been at all times material hereto, a "debtor" that owes liability to Plaintiffs on a "claim" under Mo. Rev. Stat. § 428.009.

248.    Corizon Health admits it owes $11,174,365.50 to Plaintiffs under the Agreement.

249.    The damages owed to Plaintiffs, including the $11,174,365.50 that Corizon Health admits it owes, are a "claim" under Mo. Rev. Stat. § 428.009(3) because they are "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

250.    Corizon Health's transfer of substantially all of its assets to YesCare and CHS TX is a "transfer" under Mo. Rev. Stat. § 428.009(12).

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

251.    Corizon Health's transfer of substantially all of its assets to YesCare and CHS TX is fraudulent under Mo. Rev. Stat. § 428.024(1) because Corizon Health made the transfer to YesCare and CHS TX with the actual intent to hinder, delay, or defraud Plaintiffs, creditors of Corizon Health.

252.    Corizon Health demonstrated actual intent under Mo. Rev. Stat. § 428.024(1) to defraud Plaintiffs because, among other things:

a.  Before termination of the Agreement, Corizon Health represented to Plaintiffs that it would pay Plaintiffs for the outstanding Completed Claims under the terms of the Agreement;

b.  After termination of the Agreement, and after Plaintiffs had performed and billed for all services required under the Agreement, Corizon Health continued to represent that it would pay Plaintiffs for those services;

c.  Defendants concealed, and did not disclose, the restructuring of assets to Plaintiffs and did not make Plaintiffs aware, at any stage prior to the litigation commencing, that it had no intention of paying the amounts due under the Agreement;

d.  The transfer by Corizon Health was to insiders, namely, YesCare and CHS TX;

e.  The transfer by Corizon Health was of substantially all of the assets of Corizon Health;

f.  The value of the consideration received by Corizon Health was not reasonably equivalent to the value of the assets transferred to YesCare and CHS TX;

g.  Corizon Health became insolvent as a result of the transfer;

h.  Corizon Health transferred substantially all of its assets shortly after Plaintiffs' claims against Corizon Health had accrued.

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

253.    In transferring Corizon Health's assets to YesCare and CHS TX for inadequate or no consideration, Corizon Health actually intended to hinder, delay, or defraud Plaintiffs with respect to amounts owed to Plaintiffs by Corizon Health pursuant to the parties' Agreement.

254.    Plaintiffs have and continue to be damaged as Corizon Health's fraudulent transfer has prevented Plaintiffs from collecting the amounts owed under the Agreement by Corizon Health.

255.    Defendants have and continue to be engaged in such intentional conduct without just cause and with a deliberate and flagrant disregard for Plaintiffs' rights in order to prevent Plaintiffs from collecting on the obligations owed them under the Agreement by Corizon Health, such that Plaintiffs are entitled to an award of punitive damages in an amount sufficient to punish and deter like conduct.

256.    As a direct and proximate result of the fraudulent transfer, Plaintiffs have been damaged and are entitled to the avoidance of the transfer to the extent necessary to satisfy the debt owed to Plaintiffs, attachment or garnishment against the assets transferred or other property of YesCare, and an injunction against further disposition by Defendants of the assets transferred or of other property.

**COUNT IX:**
**CIVIL CONSPIRACY TO ENGAGE IN A FRAUDULENT TRANSFER**
**Pursuant to the Missouri Uniform Fraudulent Transfer Act, Mo. Rev. Stat. §§ 428.005 *et seq.***
***All Defendants***

257.    Plaintiffs reallege and incorporate by reference paragraphs 1-256 as though fully set forth herein.

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

258.    Plaintiffs have filed this action, in part, under the Missouri Uniform Fraudulent Transfer Act, Mo. Rev. Stat. § 428.005 *et seq.*, and are seeking all relief and remedies available under that Act.

259.    Plaintiffs are, and have been at all times material hereto, "creditors" under the Act as they are each a "person who has a claim" against Corizon Health under Mo. Rev. Stat. § 428.009(4).

260.    Corizon Health is, and has been at all times material hereto, a "debtor" that owes liability to Plaintiffs on a "claim" under Mo. Rev. Stat. § 428.009.

261.    Corizon Health admits it owes $11,174,365.50 to Plaintiffs under the Agreement.

262.    The damages owed to Plaintiffs, including the $11,174,365.50 that Corizon Health admits it owes, are a "claim" under Mo. Rev. Stat. § 428.009(3) because they are "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

263.    Corizon Health, YesCare, and CHS TX met, joined together, planned, conspired, and agreed to create a scheme for transferring assets out of the control of Corizon Health for the purpose of rendering Corizon Health insolvent and unable to pay Plaintiffs, its creditors.

264.    The scheme agreed to by Corizon Health, YesCare, and CHS TX included stripping Corizon Health of its assets and allocating them to YesCare and CHS TX, both incorporated and controlled by the same individuals responsible for Corizon Health, to insulate Corizon Health from the threat of a receiver or creditors collecting on debts owed by Corizon Health.

265.    Corizon Health, YesCare, and CHS TX agreed or understood that the purpose of their agreement was unlawful and would result in injury to Plaintiffs and others, and understood that each would act in concert with the others to achieve this purpose.

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

266.    Corizon Health's transfer of substantially all of its assets to YesCare and CHS TX is a "transfer" under Mo. Rev. Stat. § 428.009(12) that is fraudulent under Mo. Rev. Stat. § 428.024(1) because Defendants conspired to make the transfer to YesCare and CHS TX with the actual intent to hinder, delay, or defraud Plaintiffs, creditors of Corizon Health.

267.    Defendants demonstrated actual intent under Mo. Rev. Stat. § 428.024(1) to defraud Plaintiffs because, among other things:

a.    Before termination of the Agreement, Corizon Health represented to Plaintiffs that it would pay Plaintiffs for the outstanding Completed Claims under the terms of the Agreement;

b.    After termination of the Agreement, and after Plaintiffs had performed and billed for all services required under the Agreement, Corizon Health continued to represent that it would pay Plaintiffs for those services;

c.    Defendants concealed, and did not disclose, the restructuring of assets to Plaintiffs and did not make Plaintiffs aware, at any stage prior to the litigation commencing, that it had no intention of paying the amounts due under the Agreement;

d.    The transfer by Corizon Health was to insiders, namely, YesCare and CHS TX;

e.    The transfer by Corizon Health was of substantially all of the assets of Corizon Health;

f.    The value of the consideration received by Corizon Health was not reasonably equivalent to the value of the assets transferred to YesCare and CHS TX;

g.    Corizon Health became insolvent as a result of the transfer;

h.    Corizon Health transferred substantially all of its assets shortly after Plaintiffs' claims against Corizon Health had accrued.

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

268.     In conspiring to transfer Corizon Health's assets to YesCare and CHS TX for inadequate or no consideration, Defendants actually intended to hinder, delay, or defraud Plaintiffs with respect to amounts owed to Plaintiffs by Corizon Health pursuant to the parties' Agreement.

269.     Defendants have and continue to knowingly participate in the civil conspiracy involving the aforesaid fraudulent conveyance scheme and have benefitted from it.

270.     Plaintiffs have and continue to be damaged as Defendants' civil conspiracy to commit fraudulent transfer has prevented Plaintiffs from collecting the amounts owed under the Agreement by Corizon Health.

271.     Defendants have and continue to be engaged in such intentional conduct without just cause and with a deliberate and flagrant disregard for Plaintiffs' rights in order to prevent Plaintiffs from collecting on the obligations owed them under the Agreement by Corizon Health, such that Plaintiffs are entitled to an award of punitive damages in an amount sufficient to punish and deter like conduct.

272.     As a direct and proximate result of the fraudulent transfer, Plaintiffs have been damaged and are entitled to the avoidance of the transfer to the extent necessary to satisfy the debt owed to Plaintiffs, attachment or garnishment against the assets transferred or other property of YesCare, and an injunction against further disposition by Defendants of the assets transferred or of other property.

**COUNT X:**
**CONSTRUCTIVE FRAUDULENT TRANSFER**
**Pursuant to the Missouri Uniform Fraudulent Transfer Act, Mo. Rev. Stat. §§ 428.005 *et seq.***
***Corizon Health***

273.     Plaintiffs reallege and incorporate by reference paragraphs 1-272 as though fully set forth herein.

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

274.    Plaintiffs have filed this action, in part, under the Missouri Uniform Fraudulent Transfer Act, Mo. Rev. Stat. § 428.005 *et seq.*, and are seeking all relief and remedies available under that Act.

275.    Plaintiffs are, and have been at all times material hereto, "creditors" under the Act as they are each a "person who has a claim" against Corizon Health under Mo. Rev. Stat. § 428.009(4).

276.    Corizon Health is, and has been at all times material hereto, a "debtor" that owes liability to Plaintiffs on a "claim" under Mo. Rev. Stat. § 428.009.

277.    Corizon Health admits it owes $11,174,365.50 to Plaintiffs under the Agreement.

278.    The damages owed to Plaintiffs, including the $11,174,365.50 that Corizon Health admits it owes, are a "claim" under Mo. Rev. Stat. § 428.009(3) because they are "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

279.    The transfer by Corizon Health to YesCare and CHS TX of substantially all assets is a fraudulent transfer under Mo. Rev. Stat. § 428.024 because Corizon Health did not receive reasonably equivalent value in exchange for the transfer of its assets and Corizon Health was engaged in a business or transaction with Plaintiffs for which the remaining assets of Corizon Health (approximately $1 million in cash) were unreasonably small in relation to the business or transaction (the approximately $12 million owed to Plaintiffs alone).

280.    The transfer by Corizon Health to YesCare and CHS TX of substantially all assets is likewise fraudulent transfer under Mo. Rev. Stat. § 428.024 because Corizon Health intended to incur, or believed or reasonably should have believed that it would incur debts beyond their ability

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

to pay as they became due; namely, the amounts owed by Corizon Health to Plaintiffs under the Agreement.

281.    The transfers by Corizon Health is also a fraudulent transfer under Mo. Rev. Stat. § 428.029(1) because Plaintiffs' claims against Corizon Health arose before the transfer and Corizon Health did not receive reasonably equivalent value in exchange for the assets transferred, and Corizon Health was either insolvent at that time or became insolvent as a result of the transfer.

282.    By virtue of participating in and committing these fraudulent transfers, Corizon Health is liable to Plaintiffs. Plaintiffs have been damaged, in part, because they may no longer collect money owed to them by Corizon Health because Corizon Health transferred assets from itself, leaving it effectively insolvent.

283.    Corizon Health's actions in planning, orchestrating, and implementing these fraudulent transfers shows an evil motive and reckless indifference to the rights of Plaintiffs, thereby warranting the imposition of punitive damages to punish Defendants and to deter others from like conduct.

## COUNT XI:
### CONSPIRACY TO ENGAGE IN A CONSTRUCTIVE FRAUDULENT TRANSFER
### Pursuant to the Missouri Uniform Fraudulent Transfer Act, Mo. Rev. Stat. §§ 428.005 *et seq.*
### *All Defendants*

284.    Plaintiffs reallege and incorporate by reference paragraphs 1-283 as though fully set forth herein.

285.    Plaintiffs have filed this action, in part, under the Missouri Uniform Fraudulent Transfer Act, Mo. Rev. Stat. § 428.005 *et seq.*, and are seeking all relief and remedies available under that Act.

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

286.    Plaintiffs are, and have been at all times material hereto, "creditors" under the Act as they are each a "person who has a claim" against Corizon Health under Mo. Rev. Stat. § 428.009(4).

287.    Corizon Health is, and has been at all times material hereto, a "debtor" that owes liability to Plaintiffs on a "claim" under Mo. Rev. Stat. § 428.009.

288.    Corizon Health admits it owes $11,174,365.50 to Plaintiffs under the Agreement.

289.    The damages owed to Plaintiffs, including the $11,174,365.50 that Corizon Health admits it owes, are a "claim" under Mo. Rev. Stat. § 428.009(3) because they are "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

290.    Corizon Health, YesCare, and CHS TX met, joined together, planned, conspired, and agreed to create a scheme for transferring assets out of the control of Corizon Health for the purpose of rendering Corizon Health insolvent and unable to pay Plaintiffs, its creditors.

291.    The scheme agreed to by Corizon Health, YesCare, and CHS TX included stripping Corizon Health of its assets and allocating them to YesCare and CHS TX, both incorporated and controlled by the same individuals responsible for Corizon Health, to insulate Corizon Health from the threat of a receiver or creditors collecting on debts owed by Corizon Health.

292.    Corizon Health, YesCare, and CHS TX agreed or understood that the purpose of their agreement was unlawful and would result in injury to Plaintiffs and others, and understood that each would act in concert with the others to achieve this purpose.

293.    The transfer by Corizon Health to YesCare and CHS TX of substantially all assets is a fraudulent transfer under Mo. Rev. Stat. § 428.024 because Corizon Health did not receive reasonably equivalent value in exchange for the transfer of its assets and Corizon Health was

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

engaged in a business or transaction with Plaintiffs for which the remaining assets of Corizon Health (approximately $1 million in cash) were unreasonably small in relation to the business or transaction (the approximately $12 million owed to Plaintiffs alone).

294.    The transfer by Corizon Health to YesCare and CHS TX of substantially all assets is likewise fraudulent transfer under Mo. Rev. Stat. § 428.024 because Corizon Health intended to incur, or believed or reasonably should have believed that it would incur debts beyond their ability to pay as they became due; namely, the amounts owed by Corizon Health to Plaintiffs under the Agreement.

295.    The transfer by Corizon Health is also a fraudulent transfer under Mo. Rev. Stat. § 428.029(1) because Plaintiffs' claims against Corizon Health arose before the transfer and Corizon Health did not receive reasonably equivalent value in exchange for the assets transferred, and Corizon Health was either insolvent at that time or became insolvent as  a result of the transfer.

296.    Defendants have and continue to knowingly participate in the civil conspiracy involving the aforesaid fraudulent conveyance scheme and have benefitted from it.

297.    Plaintiffs have and continue to be damaged as Defendants' civil conspiracy to commit fraudulent transfer has prevented Plaintiffs from collecting the amounts owed under the Agreement by Corizon Health.

298.    Defendants' actions in planning, orchestrating, and implementing these fraudulent transfers shows an evil motive and reckless indifference to the rights of Plaintiffs, thereby warranting the imposition of punitive damages to punish Defendants and to deter others from like conduct.

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request relief and judgment against Defendants, jointly and severally, as follows:

(a)     For a judgment against Defendants for the causes of action alleged against them,;

(b)     For an order enjoining Defendants from engaging in further unlawful conduct as alleged herein;

(c)     For an attachment or other provisional remedy against the assets transferred or other property of the transferee in accordance with the procedures prescribed by Missouri law under Mo. Rev. Stat. § 428.039;

(d)     For damages in an amount to be proven at trial;

(e)     For pre-judgment and post-judgment interest at the maximum rate permitted by law;

(f)     For punitive damages;

(g)     For Plaintiffs' attorneys' fees;

(h)     For Plaintiffs' costs incurred; and

(i)     For such other relief in law or equity as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial on all claims so triable.

Dated: November 3, 2022                    Respectfully submitted,

                                           **STUEVE SIEGEL HANSON LLP**

                                            _/s/ Patrick J. Stueve_
                                           Patrick J. Stueve MO Bar # 37682
                                           Ethan M. Lange MO Bar # 67857
                                           Jordan A. Kane MO Bar # 71028
                                           460 Nichols Road, Suite 200
                                           Kansas City, Missouri 64112

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

816-714-7100 (p)
816-714-7101 (f)
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

**COUNSEL FOR PLAINTIFFS THE
CURATORS OF THE UNIVERSITY OF
MISSOURI AND CAPITAL REGION
MEDICAL CENTER**

Electronically Filed - BOONE - November 03, 2022 - 12:59 PM

## CERTIFICATE OF SERVICE

I hereby certify on this the 3rd of November, 2022, that a true and correct copy of the foregoing was served electronically by operation of the Court's electronic filing system and/or email to the following:

R. Thomas Warburton (218175)
Bradley Arant Boult Cummings LLP
One Federal Place
1819 Fifth Avenue North
Birmingham, Alabama 35203
Phone: (205) 521-8000
Email: twarburton@bradley.com

*Counsel for Defendants Corizon Health, Inc.*
*and Corizon, LLC*

  */s/ Patrick J. Stueve*
Attorney



# IN THE 13TH JUDICIAL CIRCUIT, BOONE COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>JOSHUA CALVIN DEVINE | **Case Number:  22BA-CV01701-01** |
| Plaintiff/Petitioner:<br> THE CURATORS OF THE U OF MO<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>PATRICK JOSEPH STUEVE<br>460 NICHOLS RD, SUITE 200<br>KANSAS CITY, MO  64112 |
| Defendant/Respondent:<br>CORIZON HEALTH INC- CT CORP | Court Address:<br>705 E Walnut<br>COLUMBIA, MO  65201 |
| Nature of Suit:<br>CC Breach of Contract | |
| | (Date File Stamp) |

## Summons in Civil Case

**The State of Missouri to:**  CHS TX, INC
**Alias:**

**CT CORPORATION SYSTEM**
**120 S CENTRAL AVE**
**CLAYTON, MO  63105**

*COURT SEAL OF*

*CIRCUIT COURT OF MISSOURI*

*BOONE COUNTY*

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

| 11/4/2022 | /s/ R. Lea |
|---|---|
| Date | Clerk |

Further Information:

### Sheriff's or Server's Return

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.
I certify that I have served the above Summons by: (check one)
☐ delivering a copy of the summons and petition to the defendant/respondent.
☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with
_____, a person at least 18 years of age residing therein.
☐ (for service on a corporation) delivering a copy of the summons and petition to:
_____ (name) _____ (title).
☐ other: _____.

Served at _____ (address)
in _____ (County/City of St. Louis), MO, on _____ (date) at _____ (time).

_____        _____
Printed Name of Sheriff or Server                          Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*                    Subscribed and sworn to before me on _____ (date).

My commission expires: _____        _____
Date                                   Notary Public

| **Sheriff's Fees, if applicable** | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $_____10.00_____ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| **Total** | $_____ |

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

# IN THE 13TH JUDICIAL CIRCUIT, BOONE COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>JOSHUA CALVIN DEVINE | **Case Number:  22BA-CV01701-01** |
| Plaintiff/Petitioner:<br>THE CURATORS OF THE U OF MO<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address:<br>PATRICK JOSEPH STUEVE<br>460 NICHOLS RD, SUITE 200<br>KANSAS CITY, MO  64112 |
| Defendant/Respondent:<br>CORIZON HEALTH INC- CT CORP | Court Address:<br>705 E Walnut |
| Nature of Suit:<br>CC Breach of Contract | COLUMBIA, MO  65201 |
| | (Date File Stamp) |

## Summons for Personal Service Outside the State of Missouri
### (Except Attachment Action)

The State of Missouri to:   **YESCARE CORP**
                            **Alias:**

**R/A SARA TIRSCHWELL**
**3411 YOAKUM BLVD 32901**
**HOUSTON, TX  77006**

*COURT SEAL OF*

*BOONE COUNTY*

You are summoned to appear before this court and to file your pleading to the petition, copy of which is attached, and to serve a copy of your pleading upon the attorney for the plaintiff/petitioner at the above address all within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to file your pleading, judgment by default will be taken against you for the relief demanded in this action.

| 11/4/2022 | /s/ R. Lea |
|---|---|
| Date | Clerk |

Further Information:

### Officer's or Server's Affidavit of Service

I certify that:

1. I am authorized to serve process in civil actions within the state or territory where the above summons was served.
2. My official title is _____ of _____ County, _____ (state).
3. I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with _____, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to _____ (name) _____ (title).

☐ other: _____.

Served at _____ (address)

in _____County, _____ (state), on _____ (date) at _____ (time).

_____          _____
Printed Name of Sheriff or Server                Signature of Sheriff or Server

**Subscribed and sworn to** before me this _____ (day) _____ (month) _____ (year).

I am: (check one)  ☐ the clerk of the court of which affiant is an officer.
                   ☐ the judge of the court of which affiant is an officer.
                   ☐ authorized to administer oaths in the state in which the affiant served the above summons. (use for out-of-state officer)
                   ☐ authorized to administer oaths. (use for court-appointed server)

*(Seal)*

_____
Signature and Title

**Service Fees**
Summons      $_____
Non Est      $_____
Mileage      $_____ (_____miles @ $ _____ per mile)
**Total**      $_____

**See the following page for directions to officer making return on service of summons.**

**Directions to Officer Making Return on Service of Summons**

A copy of the summons and petition must be served on each defendant/respondent. If any defendant/respondent refuses to receive the copy of the summons and petition when offered, the return shall be prepared accordingly so as to show the offer of the officer to deliver the summons and petition and the defendant's/respondent's refusal to receive the same.

Service shall be made: (1) On Individual. On an individual, including an infant or incompetent person not having a legally appointed guardian, by delivering a copy of the summons and petition personally to the individual or by leaving a copy of the summons and petition at the individual's dwelling house or usual place of abode with some person at least 18 years of age residing therein, or by delivering a copy of the summons and petition to an agent authorized by appointment or required by law to receive service of process; (2) On Guardian. On an infant or incompetent person who has a legally appointed guardian, by delivering a copy of the summons and petition to the guardian personally; (3) On Corporation, Partnership or Other Unincorporated Association. On a corporation, partnership or unincorporated association, by delivering a copy of the summons and petition to an officer, partner, or managing or general agent, or by leaving the copies at any business office of the defendant/respondent with the person having charge thereof or by delivering copies to its registered agent or to any other agent authorized by appointment or required by law to receive service of process; (4) On Public or Quasi-Public Corporation or Body. Upon a public, municipal, governmental or quasi-public corporation or body in the case of a county, to the mayor or city clerk or city attorney in the case of a city, to the chief executive officer in the case of any public, municipal, governmental, or quasi-public corporation or body or to any person otherwise lawfully so designated.

Service may be made by an officer or deputy authorized by law to serve process in civil actions within the state or territory where such service is made.

Service may be made in any state or territory of the United States. If served in a territory, substitute the word "territory" for the word "state."

The office making the service must swear an affidavit before the clerk, deputy clerk, or judge of the court of which the person is an officer or other person authorized to administer oaths. This affidavit must state the time, place, and manner of service, the official character of the affiant, and the affiant's authority to serve process in civil actions within the state or territory where service is made.

Service must be made less than 10 days nor more than 30 days from the date the defendant/respondent is to appear in court. The return should be made promptly, and in any event so that it will reach the Missouri court within 30 days after service.

Electronically Filed - BOONE - November 11, 2022 - 11:54 AM

## IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI

| | |
|---|---|
| **THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER,** ) ) ) ) | |
| **Plaintiffs,** ) | |
| **v.** ) | **Case No. 22BA-CV01701-01** |
| ) | |
| **TEHUM CARE SERVICES, INC. d/b/a CORIZON HEALTH, INC., CHS TX, INC., and YESCARE CORP.,** ) ) ) ) | **Division 4** |
| **Defendants.** ) | |

---

## CORIZON'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO EXPEDITE DISCOVERY

---

Defendant Tehum Care Services, Inc. d/b/a Corizon Health, Inc. ("Corizon") hereby responds in opposition to Plaintiffs The Curators of the University of Missouri and Capital Region Medical Center's ("Plaintiffs") Motion to Expedite Discovery.

### <u>INTRODUCTION</u>

Plaintiffs' Motion to Expedite Discovery should be denied. Plaintiffs seek to expedite Corizon's responses to 62 additional discovery requests—discovery requests that exceed the permissible number provided under the Missouri Rules of Civil Procedure. Moreover, Plaintiffs seek to expedite the discovery responses to 76 additional discovery requests directed to two newly added parties, at least one of whom it appears has not yet been served with this lawsuit (and who, accordingly, have no opportunity to present an opposition to this Motion). Plaintiffs' request is especially wrong when the totality of the circumstances is considered: Corizon has participated in discovery in good faith but *Plaintiffs* have failed to produce responsive documents to Corizon.

Electronically Filed - BOONE - November 11, 2022 - 11:54 AM

Plaintiffs have far from established that there is good cause to expedite discovery in this matter and the Court should deny Plaintiffs' Motion. Doing so will allow Corizon and the newly added parties to work through Plaintiffs' ***211 total discovery requests*** (138 of which are new) in a more reasonable (although given the scope, still very tight) time period.

## RELEVANT BACKGROUND

Plaintiffs served Corizon with their first discovery requests—43 Requests for Production ("RFPs"), 12 Interrogatories ("ROGs"), and 18 Requests for Admissions ("RFAs")—on July 12, 2022. *See* Plaintiffs' First Set of 73 Discovery Requests, attached as **Exhibit A**. Corizon served its responses on August 25, 2022, after seeking (and being granted) a brief two-week extension to respond to the voluminous requests. *See* Corizon's Responses to Plaintiffs' First Set of 73 Discovery Requests, attached as **Exhibit B**. At the same time, Corizon served its initial 10,252-page production of documents on Plaintiffs. When Plaintiffs' counsel requested Corizon's production in a different format the next day, Corizon responded within hours and re-sent the production. *See* August 26, 2022 Email Chain, attached as **Exhibit C**.

Corizon propounded discovery requests on Plaintiffs on August 12, 2022. Plaintiffs did not respond to those discovery requests within 30 days. Instead, Plaintiffs' counsel requested an extension of time to respond. Corizon had no opposition to this requested extension, and as a professional courtesy indicated that responding two weeks late would not be an issue. *See* September 8, 2022 Email from Plaintiffs Requesting Discovery Extension and Response, attached as **Exhibit D**. Plaintiffs ultimately served their discovery responses on September 26, 2022. However, Plaintiffs did not produce ***a single document*** along with their discovery responses; instead; Plaintiffs maintained for the first time that a protective order needed to be in place for Plaintiffs to make their production. Plaintiffs did not send that draft protective order (as well as an

Electronically Filed - BOONE - November 11, 2022 - 11:54 AM

additional ESI protocol) until October 6, 2022. Plaintiffs and Corizon continue to work out the details of that proposed protective order. Nine weeks after being served with Corizon's First Discovery Requests, Plaintiffs produced some—but not all—of their responsive documents. *See* October 24, 2022 Email to Corizon, attached as **Exhibit E**. Thirteen weeks have elapsed since Corizon served its First Discovery Requests on Plaintiffs and, to date, Corizon has yet to receive the remainder of Plaintiffs' production.

On October 7, 2022, Plaintiffs filed a motion for leave to file an amended petition, seeking to add two additional parties as defendants: YesCare Corp. and CHS TX, Inc. *See* October 7, 2022 Motion for Leave to File Amended Petition. In an effort to save on litigation costs for all parties (and in recognition of the liberal amendment standard), Corizon consented to Plaintiffs' Motion and filed a joint agreed order granting the Motion.[1] Plaintiffs filed the Amended Petition on November 3, 2022, and summons were issued to the new defendants on November 4, 2022. There is no indication on the docket that the new defendants have yet been served with the Amended Petition. *See* Case Docket as of November 11, 2022, attached as **Exhibit F**.

On October 28, 2022, Plaintiffs sent Corizon's counsel a letter with respect to its August 25, 2022 responses to Plaintiffs' First Set of 73 Discovery Requests. *See* October 28, 2022 Letter, attached as **Exhibit G**. Of the 73 requests served as part of Plaintiffs' First Set of Discovery, the letter raised purported deficiencies with respect to Corizon's responses to 4 RFPs. *See id.* The deficiency letter demanded that Corizon agree to supplement its production with respect to those 4 RFPs within 1 business day. *See id.* Corizon responded to that letter, reiterating that it had participated in discovery in good faith, and that while the request to supplement its responses to 4 RFPs seemed premature given the fact that the Parties were still working through the details of a

---

[1] Corizon preserved its right to challenge the merits of any allegations in the Amended Petition as well as all defenses thereto, both factual and legal.

Electronically Filed - BOONE - November 11, 2022 - 11:54 AM

protective order, Corizon would nonetheless get back to Plaintiffs regarding supplementation by November 11, 2022. *See* Corizon November 2, 2022 Letter to Plaintiffs.

Also on October 28, 2022, Plaintiffs served their Second Set of 62 Discovery Requests on Corizon. *See* Plaintiffs' Second Set of 62 Discovery Requests, attached as **Exhibit H**. Putting aside that these discovery requests violate Missouri Rule of Civil Procedure 59.01(a), the discovery requests are also entirely premature in that they seek information related to Corizon's relationship with YesCare Corp. and CHS TX, Inc.—two at the time proposed (but not yet added) parties. After serving Corizon with Plaintiffs' Second Set of 62 Discovery Requests, this brought the total number of discovery requests served by Plaintiffs on Corizon to a whopping ***135 individual requests.***

Plaintiffs filed this Motion to Expedite Discovery on October 31, 2022, requesting that the Court shorten the time Corizon has to respond to Plaintiffs' 62 additional discovery requests. *See* Motion to Expedite Discovery and Exhibits, attached as **Exhibit I**. Plaintiffs also moved to shorten the time provided to YesCare Corp. and CHS TX, Inc.—two entities at that time not yet parties to this lawsuit—to respond to Plaintiffs not-yet-served discovery requests. *See* Plaintiffs' First Set of 32 RFPs to YesCare, Corp., attached as Ex. 4 to Motion to Expedite Discovery and Exhibits, **Ex. I**; Plaintiffs' First Set of 29 RFPs to CHS TX, Inc., attached as Ex. 5 to Motion to Expedite Discovery and Exhibits, **Ex. I**; Plaintiffs' First Set of 15 RFAs to YesCare Corp., attached as Ex. 6 to Motion to Expedite Discovery and Exhibits, **Ex. I**.

## <u>ARGUMENT</u>

The standard time to respond to ROGs, RFPs, and RFAs is thirty days. *See* Mo. R. Civ. P. 57.01(c) (ROGs); Mo. R. Civ. P. 58.01(c) (RFPs); Mo. R. Civ. P. 59.01(d) (RFAs). However, a "trial court is vested with wide discretion in administering the rules of discovery." *Sims v. Harmon*,

Electronically Filed - BOONE - November 11, 2022 - 11:54 AM

22 S.W.3d 253, 256 (Mo. Ct. App. 2000). This includes, for example, the power to "allow a shorter or longer time" to respond to discovery requests. *See* Mo. R. Civ. P. 57.01(c)(1) (ROGs); Mo. R. Civ. P. 58.01(c)(1) (RFPs); Mo. R. Civ. P. 59.01(d)(1) (RFAs). In those limited instances in which a court does exercise its discretion to expedite the time in which a party must respond to discovery requests, it is for the purpose of allowing the moving party "to obtain *specific, limited, and identifiable pieces of information*, particularly when… the suit cannot reasonably proceed without the information." *See Minnetonka Moccasin Co., Inc. v. Does*, No. 22-CV-87 (PJS/TNL), 2022 WL 1055746, at *3 (D. Minn. Apr. 8, 2022). That is far from the case here and Plaintiffs' Motion to Expedite Discovery should be denied.

A.   **Plaintiffs Have Failed to Establish "Good Cause" to Expedite Discovery.**

There is no specific standard for a Missouri court to assess the propriety of a motion to expedite discovery. Indeed, Missouri state courts address expedited discovery very rarely— seemingly only a handful of times. *See Sims*, 22 S.W.3d at 257 (noting that expedited discovery is "generally reserved for the simplest cases"); *Naegele v. Biomedical Systems Corp.*, 272 S.W.3d 385, 387 (Mo. Ct. App. 2008) (involving expedited discovery in unfair competition case). Because no Missouri standard has developed, a trial court must rely on its "wide discretion in administering the rules of discovery" to determine whether a request to expedite discovery should be granted. *Sims*, 22 S.W.3d at 256.

Given the lack of Missouri case law addressing motions to expedite discovery, the Court should look to federal case law addressing analogous motions brought under the Federal Rules of Civil Procedure. Federal courts use one of two standards to determine whether a party is entitled to conduct expedited discovery: a "good cause" standard and the *Notaro* standard, whereby a court analyzes a set of factors similar to those for obtaining a preliminary injunction. *U.S. Bank Nat.*

Electronically Filed - BOONE - November 11, 2022 - 11:54 AM

*Ass'n v. Parker*, No. 4:09CV1755 HEA, 2010 WL 559135, at *1 (E.D. Mo. Feb. 10, 2010). The Eighth Circuit has not officially adopted a standard for expedited discovery. *See Barton v. Proctor & Gamble Co.*, No. 1:22-CV-00051-JAR, 2022 WL 2713107, at *2 (E.D. Mo. July 13, 2022). However, a federal district court in Missouri recently applied the "good cause" standard. *See id.*; *see also*, *e.g.*, *Andrews v. Brott*, No. 20-CV-980 (DSD/LIB), 2022 WL 1542137, at *11 (D. Minn. Mar. 23, 2022), *report and recommendation adopted*, No. CV 20-980 (DSD/LIB), 2022 WL 1541590 (D. Minn. May 16, 2022) (noting that "[c]ourts within this District have utilized a 'good cause' standard when considering a party's request for expedited discovery").

To satisfy the "good cause" standard, "the party requesting expedited discovery must show that the need for expedited discovery, in consideration of administration of justice, outweighs prejudice to responding party." *U.S. Bank Nat. Ass'n*, 2010 WL 559135, at *1. In applying the "good cause" standard, a court should "consider the scope of the requested discovery." *See Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 420 (D. Colo. 2003); *Barton*, 2022 WL 2713107, at *2 (denying motion to expedite discovery to the extent the requests were beyond a reasonable scope). This is not an easy standard to satisfy, and on those few instances in which courts in the Eighth Circuit have considered whether to expedite discovery, nearly all have denied the request. *See, e.g.*, *Ritchie Special Credit Invs., Ltd. v. U.S. Tr.*, 620 F.3d 847, 855 (8th Cir. 2010) (affirming denial of motion to expedite discovery); *Taylor v. Crawford*, 445 F.3d 1095, 1097 (8th Cir. 2006) (noting the same); *AgXplore Int'l, LLC v. Aycock*, No. 1:21-CV-154 SNLJ, 2022 WL 3576160, at *4 (E.D. Mo. Aug. 19, 2022) (denying motion to expedite discovery); *Andrews*, 2022 WL 1542137, at *12 (same). The same should occur here.

Electronically Filed - BOONE - November 11, 2022 - 11:54 AM

1.      **There is no need for expedited discovery.**

This is a lawsuit to recover money and Plaintiffs have failed to show, and cannot show, that expedited discovery is necessary for this type of dispute. First, this contract-based action involving the recovery of money damages in no way resembles those limited instances where courts have granted motions to expedite discovery: typically, patent infringement or unfair competition cases. *See Benham Jewelry Corp. v. Aron Basha Corp.*, No. 97 CIV. 3841 (RWS), 1997 WL 639037, at *20 (S.D.N.Y. Oct. 14, 1997) (noting that cases that are "appropriate" for expedited discovery include patent infringement and unfair competition); *see also Monsanto Co. v. Woods*, 250 F.R.D. 411, 413 (E.D. Mo. 2008) (limited expedited discovery permitted in patent infringement case); *Naegele*, 272 S.W.3d at 387 (expedited discovery in unfair competition case).

Second, Plaintiffs' request to expedite discovery is based entirely on speculation as to nefarious conduct between Corizon and the newly added parties. *See* Motion to Expedite Discovery and Exhibits, **Ex. I**. Plaintiffs' allegations as to nefarious conduct are not, for example, based on Corizon or the additional parties' answers to the Amended Petition—nor could they be as the deadline to answer the Amended Petition has not yet arrived. Where a party moves for expedited discovery solely based on speculation and supposition, such as here, the party has failed to show the necessity of expedited discovery and the request should be denied. *See U.S. Bank Nat. Ass'n*, 2010 WL 559135, at *2 (denying motion to expedite as the request was "based on speculation and supposition that Defendant was attempting to solicit [] Plaintiff's customers").

2.      **Corizon and the newly added parties will experience significant prejudice if Plaintiffs' Motion is granted.**

Where a party acts in good faith throughout the discovery process, Missouri courts are very hesitant to expedite discovery, to prematurely terminate discovery, or to deny a party the time necessary to respond to discovery given the prejudice that very likely will result. *See Sims*, 22

Electronically Filed - BOONE - November 11, 2022 - 11:54 AM

S.W.3d at 257. This is especially true where the party seeking to limit or shorten the discovery timeline has themselves contributed to a delay in discovery. *See id.* (noting that party opposing request for additional time to respond to discovery quite contradictorily also failed to respond to interrogatories within 30 days and required additional time).

There can be no question that Corizon has engaged in discovery is good faith and that it should not be prejudiced by the imposition of an expedited discovery deadline. Corizon served its responses to Plaintiffs' First Set of 73 Discovery Requests on August 25, 2022 with its initial 10,252 page production. *See* Corizon's Responses to Plaintiffs' First Set of 73 Discovery Requests, **Ex. B**. Plaintiffs' counsel shortly thereafter requested that Corizon provide Plaintiffs with its initial production in a different format—a request that Corizon responded to within hours. *See* August 26, 2022 Email Chain, **Ex. C**. Corizon itself then served discovery requests on Plaintiffs. Two months after serving its Responses to Plaintiffs' First Set of 73 Discovery Requests, Plaintiffs raised issues with Corizon's responses to 4 of the RFPs (and provided 1 business day to respond). *See* October 28, 2022 Letter, **Ex. G**. Corizon responded to the deficiency letter and indicated that it was working in good faith, would continue doing so, and would look into the supplementation issue. *See* Corizon November 2, 2022 Letter to Plaintiffs.

On the contrary, and similar to *Sims*, Plaintiffs—the parties seeking to expedite discovery—have caused discovery delays. *See* 22 S.W.3d at 257. For example, Plaintiffs did not respond to Corizon's discovery requests within 30 days, and instead sought and received an extension to serve their responses belatedly. *See* September 8, 2022 Email from Plaintiffs Requesting Discovery Extension and Response, **Ex. D**. When Plaintiffs did serve their discovery responses, they produced no documents; instead, Plaintiffs maintained for the first time that a protective order and ESI protocol were necessary before making any production. Plaintiffs did not

Electronically Filed - BOONE - November 11, 2022 - 11:54 AM

send that proposed protective order or ESI protocol to Corizon until October 6, 2022, and both remain in Plaintiffs' court. Nine weeks after being served with Corizon's First Discovery Requests, Plaintiffs produced some—but not all—of their responsive documents. *See* October 24, 2022 Email to Corizon, **Ex. E**. To date, thirteen weeks have elapsed since Corizon served its First Discovery Requests on Plaintiffs and Plaintiffs have yet to make a full production.

In addition, and while YesCare, Corp. and CHS TX, Inc. are separate parties who will be represented by different counsel, it goes without saying that granting Plaintiffs' Motion to Expedite would result in extreme prejudice to those newly added parties. Plaintiffs seek to expedite those additional parties' discovery responses before they are even made aware of this lawsuit and without giving them any chance to oppose the Motion to Expedite (something that logically they cannot do if they are not even aware that they have been sued). Finally, Plaintiffs seek to expedite two newly-added parties' responses to 76 discovery requests to November 21, 2022—far before those parties are required to even file a notice of appearance or answer the Amended Petition. *See* Plaintiffs' First Set of 32 RFPs to YesCare, Corp., attached as Ex. 4 to Motion to Expedite Discovery and Exhibits, **Ex. I**; Plaintiffs' First Set of 29 RFPs to CHS TX, Inc., attached as Ex. 5 to Motion to Expedite Discovery and Exhibits, **Ex. I**; Plaintiffs' First Set of 15 RFAs to YesCare Corp., attached as Ex. 6 to Motion to Expedite Discovery and Exhibits, **Ex. I**.

3.      **The scope of the discovery requests that Plaintiffs seek to expedite is very broad.**

It cannot be plausibly argued that Plaintiffs' 62 additional discovery requests to Corizon and 76 discovery requests served on two newly-added parties are limited in scope. Where discovery requests are narrow and do not present an undue burden to the responding party, a court may consider granting expedited discovery. *See Monsanto Co.*, 250 F.R.D. at 413 (granting motion to expedite discovery in patent infringement case where moving party had "narrowly tailored their

Electronically Filed - BOONE - November 11, 2022 - 11:54 AM

request for expedited discovery to a limited set of documents and physical samples"). Plaintiffs'

discovery requests are far from narrow. With respect to RFPs alone, Plaintiffs' First Set of 73

Discovery Requests (**Ex. A**) resulted in a 10,252-page production by Corizon—a production that

Plaintiffs have asked Corizon to supplement further. *See* October 28, 2022 Letter, **Ex. G**.

Logically, Corizon's production in response to Plaintiffs' Second Set of 62 Discovery Requests

(**Ex. H**) (which Plaintiffs seek to expedite) will also likely result in a significant production. But

perhaps the best indication of the broad scope of Plaintiffs' discovery requests is the fact that

Plaintiffs have served more RFAs than permitted by the Missouri Rules of Civil Procedure.

*Compare* Mo. R. Civ. P. 59.01(a) (setting twenty-five RFAs as the limit), *with* Plaintiffs' Second

Set of 62 Discovery Requests, **Ex. H** (containing RFAs 19 through 35, served in addition to

Plaintiffs' first RFAs to Corizon).

## CONCLUSION

For the reasons stated above, Corizon respectfully requests that the Court deny Plaintiffs'

Motion to Expedite Discovery and to serve more discovery requests than provided by the Missouri

Rules of Civil Procedure.

Respectfully submitted,

 /s/ R. Thomas Warburton
R. Thomas Warburton (MO Bar No. 65477)
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 5th Avenue N.
Birmingham, AL 35203
205.521.8987
twarburton@bradley.com

*Counsel for Tehum Care Services, Inc. d/b/a*
*Corizon Health, Inc.*

Electronically Filed - BOONE - November 11, 2022 - 11:54 AM

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify on this the 11th of November, 2022, that a true and correct copy of the foregoing was served electronically by operation of the Court's electronic filing system and/or email to the following:

Patrick J. Stueve
Ethan M. Lange
Jordan A. Kane
Stueve Siegel Hanson LLP
460 Nichols Rd., Suite 200
Kansas City, Missouri 64112
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

CHS TX, Inc.
CT Corporation System
120 S. Central Ave.
Clayton, Missouri 63105

YESCARE Corp.
R/A Sara Tirschwell
3411 Yoakum Blvd. 32901
Houston, Texas 77006

_/s/   R. Thomas Warburton_
Of Counsel

Electronically Filed - BOONE - November 14, 2022 - 09:02 AM

**IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI**

| | |
|---|---|
| **THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER,** ) ) ) ) | |
| Plaintiffs, ) | |
| ) | Case No. 22BA-CV01701-01 |
| v. ) | |
| ) | Division 4 |
| **TEHUM CARE SERVICES, INC. d/b/a CORIZON HEALTH, INC.,** ) ) | |
| ) | |
| **CHS TX, Inc.,** ) | |
| ) | |
| **and YESCARE CORP.,** ) | |
| ) | |
| Defendants. ) | |

**CHS TX, INC.'S OPPOSITION TO MOTION TO EXPEDITE DISCOVERY**

COMES NOW CHS TX, Inc. ("CHS") and submits this opposition to *Plaintiffs' Motion for Expedited Discovery* (the "Motion"). In support, CHS respectfully states as follows:

**OPPOSITION**

Last Monday, November 7, 2022, Plaintiffs served CHS with the petition and 29 requests for production ("RFP"). Under the routine application of the Missouri Supreme Court Rules, CHS's answer or motion to dismiss is due December 7, 2022. Mo. S. Ct. R. 55.25(a); 55.27(a). CHS's 45-day deadline to respond as a newly served defendant to the RFPs is Thursday December 22, 2022. Id. 58.01(c)(1)(B).

The Motion ignores these deadlines and asks the Court to make CHS respond to the 29 RFPs ***next Monday, November 21, 2022***: just 14 days after service, three days before Thanksgiving, and more than a month before the December 22 deadline set by Rule 58.01.

Electronically Filed - BOONE - November 14, 2022 - 09:02 AM

Granting Plaintiffs' request would cut CHS's time to respond to the RFPs by more than two-thirds (from 45 days to 14).  Nothing in the Motion or this case justifies *any* departure—let alone, such a dramatic one—from the ordinary discovery rules.[1]

By Plaintiffs' own characterization, this case is complex.  The eleven-count amended petition spans more than 50 pages and nearly 300 paragraphs.  See generally Am. Pet'n.  The Petition includes, among others, allegations regarding supposed breaches of contract, successor liability, conspiracy, fraud, constructive fraudulent transfer, and actual fraudulent transfer.  Id.  Simply put, this is not the type of straightforward case in which it is appropriate to expedite discovery—particularly where Plaintiffs plan immediately to leverage such rushed discovery to "prepare a motion for preliminary injunction."  Mot. at 4 ¶ 11.

The sprawling—and objectionable—RFPs reflect the Petition's complexity.  See Ex. 1.  Across a "Relevant Time Period" that spans more than eight years, Plaintiffs seek, among other items, documents that identify every officer, director, shareholder, or executive team member; notes or minutes of board meetings; calendar entries; video and audio recordings; corporate fairness opinions; documents identifying assets and liabilities; any compensation paid to any director, officer, or employee of other entities; consulting arrangements; bank account information; and employee-related information.  Confronted with the scope and breadth of these RFPs, CHS is well-suited to seek *extra* time to respond; not to be required to respond in less.

Granting the Motion would also prejudice CHS.  The Missouri Supreme Court Rules reflect the well-reasoned calculus that after service, a new defendant should first answer or move to dismiss (within 30 days), then respond to RFPs (within 45 days), and then address discovery devices like RFAs (within 60 days).  Courts expect these rules to be adhered to.  Cf. Lane House

---

[1] Plaintiffs served CHS through its registered agent, CT Corp.  CHS learned of service several days after November 7, 2022.

Electronically Filed - BOONE - November 14, 2022 - 09:02 AM

<u>Const., Inc. v. Ogrowsky</u>, 427 S.W.3d 882, 886 (Mo. Ct. App. 2014) (rule governing RFAs is "so plain, unambiguous, and simple, we hold that a plaintiff's premature propounding of requests for admissions are deemed invalid").

As it stands, CHS has until December 7, 2022 to first decide whether to move to dismiss or answer the allegations in the Petition.  Forcing CHS to divert its attention at this early stage to nearly 30 wide-ranging RFPs would upset the logic reflected in the Missouri Rules of Civil Procedure and disadvantage CHS.

<b><u>CONCLUSION</u></b>

CHS asks that the Court deny Plaintiffs' Motion and order the normal discovery timeframes to be adhered to in this matter.

Dated: November 14, 2022                        Respectfully submitted,

**DOWD BENNETT LLP**

By: */s/ Philip A. Cantwell*
     Philip A. Cantwell #65505
     7733 Forsyth Blvd., Suite 1900
     St. Louis, Missouri 63105
     (314) 889-7300 (telephone)
     (314) 863-2111 (facsimile)
     pcantwell@dowdbennett.com

*Attorneys for CHS TX, Inc.*

Electronically Filed - BOONE - November 14, 2022 - 09:02 AM

## <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that on November 14, 2022 the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record:

Patrick J. Stueve
Ethan M. Lange
Jordan A. Kane
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

Thomas R. Warburton
twarburton@bradley.com


                    */s/ Philip A. Cantwell*
                    Philip A. Cantwell

Electronically Filed - BOONE - November 14, 2022 - 11:18 AM

## IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI

| | |
|---|---|
| **THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER,** ) ) ) ) | |
| **Plaintiffs,** ) ) | Case No. 22BA-CV01701-01 |
| **v.** ) ) | Division 4 |
| **TEHUM CARE SERVICES, INC. d/b/a CORIZON HEALTH, INC.,** ) ) ) | |
| **CHS TX, Inc.,** ) ) | |
| **And YESCARE CORP.,** ) ) | |
| **Defendants.** ) | |

## PLAINTIFFS' REPLY IN SUPPORT OF ITS MOTION FOR EXPEDITED DISCOVERY

Plaintiffs' Motion requests this Court order CHS TX, Inc.[1] to provide responses to 29 requests for production on an expedited basis. While Rule 58.01(c)(1) ordinarily contemplates 45 days to respond to such requests, the Court may, in its discretion, allow a shorter time. Plaintiffs request this Court order CHS TX to respond to Plaintiffs' 29 RFPs by December 7, 2022.[2]

Plaintiffs' request is based on recent public filings documenting that substantially all of Corizon Health's assets now sit with newly-added Defendants YesCare Corp. and CHS TX, Inc.—corporations formed by Corizon Health leadership to acquire Corizon Health's assets, employees, management, and contracts, and continue on with Corizon Health's business, while avoiding Corizon Health's contractual obligations to its unsecured creditors. But Missouri law does not permit Defendants to avoid Corizon Health's obligations through the simple expedient of

---

[1] Plaintiffs' Motion is also directed to Defendant YesCare Corp., who was served on November 9, 2022.
[2] To provide CHS TX 30 days to respond given their actual service date of November 7, 2022, Plaintiffs amend this request from their original Motion, which asked for responses to be due on November 21, 2022.

Electronically Filed - BOONE - November 14, 2022 - 11:18 AM

reincorporation under a new name.[3] Defendants' course of conduct intentionally aimed at defrauding Corizon Health's existing creditors emphasizes that time is of essence to discover confirmatory evidence supporting Plaintiffs' forthcoming preliminary injunction motion. Otherwise, Plaintiffs fear Defendants will engage in further efforts to place the at-issue assets outside of Plaintiffs' reach—a concern CHS TX fails to address in its Opposition.

A. **The requested discovery is reasonable in scope in relation to the issues raised by Defendants' conduct and is needed to support Plaintiffs' motion for injunctive relief.**

When a party seeks expedited discovery to prepare for a preliminary injunction hearing, the court examines the discovery request on the entirety of the record and the reasonableness of the request in light of all the surrounding circumstances. *Meritain Health Inc. v. Express Scripts, Inc.*, No. 4:12-CV-266 CEJ, 2012 WL 1320147, at *2 (E.D. Mo. Apr. 17, 2012). Factors considered in this analysis include: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made. *Id.* Where the discovery plaintiffs seek "will assist them in establishing their claims at the preliminary injunction hearing," expedited discovery is "generally appropriate." *Id.*

Here, such factors weigh in favor of the expedited discovery Plaintiffs request. First, the purpose of the expedited discovery is to support a preliminary injunction motion. As is discussed in Plaintiffs' motion, and is left unaddressed by Corizon Health's opposition, Plaintiffs will be seeking injunctive relief against Defendants to preclude the disposal of assets sufficient to cover the over twelve million owed to Plaintiffs.

---

[3] *See Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 804 (8th Cir. 2003) (applying Missouri law).

Electronically Filed - BOONE - November 14, 2022 - 11:18 AM

Second, Plaintiffs' requested discovery is not very broad in relation to the legal issued implicated by Defendants' misconduct, but is tailored to address the relevant factors that this court will address at the preliminary injunction stage, including the likelihood of success on the merits of Plaintiffs' claims against YesCare and CHS TX. For example, Plaintiffs allege Defendants' corporate restructuring scheme renders YesCare and CHS TX liable as successors to Corizon Health for the amounts owed under the Agreement. A successor company is liable for the predecessor company's debts when the transferee (here, YesCare and CHS TX) is "merely a continuation" of the transferor (here, Corizon Health). Relevant to this analysis are factors such as: (1) whether there is a common identity of officers, directors, and stockholders; (2) whether the incorporators of the successor also incorporated the predecessor; (3) whether the business operations are identical; (4) whether the transferee uses the same trucks, equipment, labor force, supervisors, and name of the transferor; and (5) whether notice has been given of the transfer to employees or customers. *State ex rel. Fam. Support Div. v. Steak'm Take'm LLC*, 524 S.W.3d 584, 591 (Mo. App. W.D. 2017) (citing *Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 804 (8th Cir. 2003)).

Likewise, Plaintiffs allege YesCare and CHS TX are liable for the Corizon Health's debts because the transaction between them was entered into fraudulently to escape liability for the debts and liabilities of the predecessor. *See Steak'm Take'm LLC*, 524 S.W.3d at 590. This analysis goes hand-in-hand with Plaintiffs' additional allegations that Defendants' corporate restructuring scheme constituted a fraudulent transfer in violation of Missouri's Uniform Fraudulent Transfer Act ("MUFTA"), Mo. Rev. Stat. § 428.024(a)(1).[4] Relevant facts to establishing both claims

---

[4] Providing that, among other things, "[a] transfer made or obligation incurred by a debtor is fraudulent as to a creditor, when the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation [] with actual intent to hinder, delay, or defraud any creditor of the debtor."

Electronically Filed - BOONE - November 14, 2022 - 11:18 AM

include, for example: (1) the transfer or obligation was to an insider; (2) the transfer or obligation was disclosed or concealed; (3) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (4) the transfer was of substantially all of the debtor's assets; (5) the debtor was insolvent or became insolvent shortly after the transfer was made or obligation incurred; and (6) the transfer occurred shortly before or shortly after a substantial debt was incurred; (7) inadequacy of consideration. *See* Mo. Rev. Stat. § 428.023(2); *KCI Auto Auction, Inc. v. Anderson*, No. 5:17-CV-06086-NKL, 2018 WL 1787308, at *6 (W.D. Mo. Apr. 13, 2018).

Accordingly, to support their request for preliminary injunctive relief against all Defendants, Plaintiffs seek information, consistent with the above factors, on (1) the relationship and transactions between Corizon Health, YesCare, and CHS TX; and (2) each entities' financials. Specifically, Plaintiffs direct 29 document requests to CHS TX seeking documents sufficient to identify and/or confirm:

- CHS TX's officers, directors, shareholders, and executive team, and whether any such individual is all affiliated with YesCare or Corizon Health (RFP Nos. 1-3);
- CHS TX's federal identification number (RFP No. 4);
- CHS TX's corporate headquarters and corporate offices (RFP Nos. 5-6);
- The consideration CHS TX provided Corizon Health received in exchange for transferring substantially all its assets to CHS TX, and any distribution/allocation/transfer involving Corizon Health, YesCare, and CHS TX (RFP Nos. 12-13);
- CHS TX's assets and liabilities (RFP No. 17);
- Whether CHS TX has access to YesCare or Corizon Health's bank accounts and CHS TX's continued capitalization (RFP Nos. 18-19);
- CHS TX's current business operations (RFP No. 21);
- Any compensation paid by CHS TX to any YesCare/Corizon Health employee or director, and vice versa (RFP No. 22);
- The terms of any agreements between Corizon Health, CHS TX, or YesCare (RFP No. 23); and

Plaintiffs' document requests also seek documents related to:

Electronically Filed - BOONE - November 14, 2022 - 11:18 AM

- Meetings involving any discussion or decision regarding the 2022 Corporate Restructuring, or involving any officer or director of Corizon Health or YesCare (RFP Nos. 7-9);
- CHS TX's incorporation in Texas and Corizon Health's combination merger (RFP Nos. 10-11)
- CHS TX's acquisition of all Corizon Health's employees and active contracts (RFP Nos. 25-28);
- A copy of the fairness opinion from the FTICA that purportedly determined the 2022 Corporate Restructuring was fair to the Company's unsecured creditors (RFP No. 14);
- Discussions about, or efforts by, Corizon Health to notify its creditors, clients, and the public of the restructuring (RFP Nos. 15-16);
- CHS TX's control over Corizon Health or YesCare (RFP No. 24); and
- Communications between Corizon Health, YesCare, or CHS regarding the amounts owed to Plaintiffs under the Agreement (RFP No. 29).

These requests are not burdensome in scope, and Plaintiffs will work cooperatively with CHS TX to secure the information necessary to support their motion for injunctive relief. Finally, although CHS TX claims it will suffer prejudice by expedited discovery, it identifies no facts to support this claim.

For the foregoing reasons, Plaintiffs respectfully request this Court grant their Motion for Expedited Discovery, order CHS respond to Plaintiffs' 29 RFPs by December 7, 2022, and afford any and all relief as the Court deems just and proper.

Dated: November 14, 2022

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

  /s/ Patrick J. Stueve
Patrick J. Stueve MO Bar # 37682
Ethan M. Lange MO Bar # 67857
Jordan A. Kane MO Bar # 71028
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
816-714-7100 (p)
816-714-7101 (f)
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

Electronically Filed - BOONE - November 14, 2022 - 11:18 AM

**COUNSEL FOR PLAINTIFFS THE
CURATORS OF THE UNIVERSITY OF
MISSOURI AND CAPITAL REGION
MEDICAL CENTER**

Electronically Filed - Boone - November 15, 2022 - 04:34 PM

**IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI**

| | |
|---|---|
| **THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER,** ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | Case No. 22BA-CV01701-01 |
| **TEHUM CARE SERVICES, INC. d/b/a CORIZON HEALTH, INC.,** ) ) ) | |
| **CHS TX, Inc.,** ) ) | |
| **and YESCARE CORP.,** ) ) ) | |
| Defendants. ) | |

**<u>ENTRY OF APPEARANCE</u>**

COMES NOW Philip A. Cantwell of the law firm Dowd Bennett, LLP and hereby enters his appearance on behalf of CHS TX, Inc. in the above-captioned action.

Dated: November 15, 2022                    Respectfully submitted,

**DOWD BENNETT LLP**

By: */s/ Philip A. Cantwell*
    Philip A. Cantwell #65505
    7733 Forsyth Blvd., Suite 1900
    St. Louis, Missouri 63105
    (314) 889-7300 (telephone)
    (314) 863-2111 (facsimile)
    pcantwell@dowdbennett.com

*Attorneys for CHS TX, Inc.*

Electronically Filed - Boone - November 15, 2022 - 04:34 PM

## CERTIFICATE OF SERVICE

I hereby certify that on November 15, 2022 the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record:

Patrick J. Stueve
Ethan M. Lange
Jordan A. Kane
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

Thomas R. Warburton
twarburton@bradley.com

/s/ Philip A. Cantwell
Philip A. Cantwell

Electronically Filed - BOONE - November 15, 2022 - 11:24 AM

## AFFIDAVIT OF SERVICE

**State of Missouri**                    **County of Boone**                    **Circuit Court**

Case Number: 22BA-CV01701-01

Plaintiff/Petitioner:
**THE CURATORS OF THE UNIVERSITY OF MISSOURI, et al.**

vs.

Defendant/Respondent:
**TEHUM CARE SERVICS, INC., d/b/a CORZON HEALTH, INC., et al.**

Received by HPS Process Service & Investigations to be served on **CHS TX, Inc., c/o CT Corporation System, 120 South Central Avenue, Clayton, MO 63105**.

I, MARTIN HUECKEL, being duly sworn, depose and say that on the **7th day of November, 2022** at **2:33 pm, I**:

Served the within named establishment by delivering a true copy of **Summons in Civil Case; First Amended Petition; Exhibits 1-38; Plaintiff's Motion for Expedited Discovery; Exhibits 1-6; Plaintiffs' First Requests for Production of Documents to Defendant CHS TX, Inc..; and Joint Notice Resetting Hearing on Plaintiffs' Motion for Expedited Discovery** to Bonnie Love, Intake Specialist at the address of **120 South Central Avenue, Clayton, MO 63105**.

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made. I declare under penalty of perjury that the foregoing is true and correct.

Subscribed and Sworn to before me on the _14_ day
of _November_ _2022_ by the affiant who is
personally known to me.

_____
NOTARY PUBLIC

NICK ZOTTI
Notary Public - Notary Seal
STATE OF MISSOURI
St. Charles County
My Commission Expires: Mar. 14, 2025
Commission #13460020

**MARTIN HUECKEL**
Process Server

**HPS Process Service & Investigations**
www.hpsprocess.com
1669 Jefferson
Kansas City, MO 64108
(800) 796-9559

Our Job Serial Number: HAT-2022019231
Service Fee: $183.70

Copyright © 1992-2022 Database Services, Inc. - Process Server's Toolbox V8.2i

Electronically Filed - BOONE - November 15, 2022 - 11:24 AM

**IN THE 13TH JUDICIAL CIRCUIT, BOONE COUNTY, MISSOURI**

| | |
|---|---|
| Judge or Division:<br>JOSHUA CALVIN DEVINE | Case Number:  22BA-CV01701-01 |
| Plaintiff/Petitioner:<br>THE CURATORS OF THE U OF MO<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>PATRICK JOSEPH STUEVE<br>460 NICHOLS RD, SUITE 200<br>KANSAS CITY, MO  64112 |
| Defendant/Respondent:<br>CORIZON HEALTH INC- CT CORP | Court Address:<br>705 E Walnut<br>COLUMBIA, MO  65201 |
| Nature of Suit:<br>CC Breach of Contract | (Date File Stamp) |

## Summons in Civil Case

| | |
|---|---|
| The State of Missouri to:  CHS TX, INC<br>Alias:<br><br>CT CORPORATION SYSTEM<br>120 S CENTRAL AVE<br>CLAYTON, MO 63105<br><br>COURT SEAL OF<br><br>BOONE COUNTY | You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.<br><br>_____11/4/2022_____          _____/s/ R. Lea_____<br>Date                                      Clerk<br>Further Information: |

**Sheriff's or Server's Return**

**Note to serving officer**: Summons should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with _____, a person at least 18 years of age residing therein.

☑ (for service on a corporation) delivering a copy of the summons and petition to: _____Beana Cool_____ (name) _____Entrue Spec_____ (title).

☐ other: _____

Served at _120 S. Central Ave, Clayton MO 63105_ (address)

in _St Louis_ (County/City of St. Louis), MO, on _11/7/2022_ (date) at _238 pm_ (time).

_____Montni Heechul_____          _____Marto Heechul_____
Printed Name of Sheriff or Server          Signature of Sheriff or Server

Must be sworn before a notary public if not served by an authorized officer:

Subscribed and sworn to before me on _11/9/2022_ (date).

*(Seal)*

My commission expires: _3/14/2025_          _Nick Zotti_
Date                                                    Notary Public

NICK ZOTTI
Notary Public - Notary Seal
STATE OF MISSOURI
St. Charles County
My Commission Expires: Mar. 14, 2025
Commission #13460023

| Sheriff's Fees, if applicable | |
|---|---|
| Summons | $_____ |
| Non Est | $_____ |
| Sheriff's Deputy Salary<br>Supplemental Surcharge | $___10.00___ |
| Mileage | $_____ (_____ miles @ $._____ per mile) |
| Total | $_____ |

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

## IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI

| | | |
|---|---|---|
| THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 22BA-CV01701 |
| TEHUM CARE SERVICES, INC. d/b/a CORIZON HEALTH, INC., CHS TX, INC., and YESCARE CORP., | ) ) ) ) | Division 4 |
| Defendants. | ) | |

## ANSWER TO FIRST AMENDED PETITION

Defendant Tehum Care Services, Inc. d/b/a Corizon Health, Inc. ("Defendant" or "Corizon"), by and through undersigned counsel, respectfully submits this Answer to Plaintiffs' First Amended Petition.

## **PARTIES**

1.     Corizon admits that Plaintiff The Curators of the University of Missouri ("Curators") is a state university that operates University Physicians and University of Missouri Health Care. Upon information and belief, Corizon admits the University includes accredited healthcare facilities that are authorized to operate as hospitals in the State of Missouri.

2.     Corizon admits that Plaintiff Capital Region Medical Center ("Capital Region") is a nonprofit corporation organized under the laws of the State of Missouri with a principal place of business in Jefferson City, Missouri. Corizon further admits that Capital Region is an affiliate of Curators that operates a healthcare facility. Upon information and belief, Corizon admits that this healthcare facility is accredited and authorized to operate as a hospital in the State of Missouri.

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

3.       Corizon admits that its name was changed to Tehum Care Services, Inc. (but for ease of reference will continue using the name "Corizon" with respect to this litigation). Corizon further admits that Corizon Health, Inc. was formed as part of a four-way merger. Moreover, Corizon admits that one of the four entities that merger to form Corizon Health, Inc. was Corizon LLC, a former Missouri limited liability company. In addition, Corizon admits that it actively provided correctional healthcare throughout the United States, including the State of Missouri, through May 5, 2022. Corizon denies that it currently maintains a present place of business at 205 Powell Place, Suite 104, Brentwood, Tennessee. Corizon also denies that it "transferred" all of its active contracts to CHS TX, Inc. in May 2022 as this mischaracterizes the transaction. Finally, Corizon denies that its officers and directors currently include Sara Tirschwell, Jeff Sholey, J. Scott King, Gregory Ladele, David Gefner, Abe Goldbeger, Jay Leitner, and Isaac Lefkowitz. Corizon denies all remaining allegations not expressly admitted within Paragraph 3 of the First Amended Petition.

4.       Corizon admits that Defendant YesCare is a Texas for-profit corporation formed on January 26, 2022 by organizer/director Sara Tirschwell. Corizon further admits that YesCare maintains a corporate office at 205 Powell Place, Suite 104, Brentwood, Tennessee. Corizon moreover admits that YesCare's executive team includes Sara Tirschwell, Jeff Sholey, J. Scott King, and Gregory Ladele. Corizon denies that David Gefner, Jay Leitner, and Isaac Lefkowitz retain ownership interests in YesCare. Corizon denies all remaining allegations not expressly admitted within Paragraph 4 of the First Amended Petition.

5.       Corizon admits that Defendant CHS TX, Inc. is a Texas for-profit corporation formed on May 3, 2022 by organizer/director Sara Tirschwell. Corizon further admits that CHS TX, Inc. maintains a corporate office at 205 Powell Place, Suite 104, Brentwood, Tennessee.

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

Corizon further admits that two (although not all) of CHS TX, Inc.'s directors are Sara Tirschwell and Jeff Sholey, and that CHS TX, Inc. is a wholly-owned subsidiary of YesCare. Corizon denies all remaining allegations not expressly admitted within Paragraph 5 of the First Amended Petition.

6.     Corizon denies the allegations contained in Paragraph 6 of the First Amended Petition.

7.     Corizon denies the allegations contained in Paragraph 7 of the First Amended Petition.

## JURISDICTION AND VENUE

8.     Corizon admits that this Court has jurisdiction over Corizon. Corizon further admits that with respect to the claims asserted by Plaintiffs against it, venue is proper in this Court.

9.     Corizon admits that this Court has personal jurisdiction over it. Corizon denies the remaining allegations in Paragraph 9 of the First Amended Petition.

10.     Corizon denies the allegations contained in Paragraph 10 of the First Amended Petition.

11.     Corizon admits the allegations contained in Paragraph 11 of the First Amended Petition.

12.     Corizon admits that this case is not removable on the basis of federal diversity jurisdiction in light of the United States District Court for the Western District of Missouri's order remanding this action to Missouri state court.

13.     Corizon admits the allegations contained in Paragraph 13 of the First Amended Petition to the extent it alleges that the United States District Court for the Western District of Missouri remanded this action to Missouri state court, but otherwise notes that the Court's order remanding this action speaks for itself.

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

14.     Corizon admits that with respect to the claims that Plaintiffs have asserted against it as part of the First Amended Petition, venue is proper in this Court. Corizon denies the remaining allegations in Paragraph 14 of the First Amended Petition.

**FACTUAL ALLEGATIONS**

15.     Corizon denies that it is a "privately held correctional health care provider," as while Corizon did actively provide correctional healthcare throughout the United States through May 5, 2022, it is no longer an active entity providing correctional healthcare. Corizon denies that it markets itself via corizonhealth.com as "the pioneer and foremost provider of correctional healthcare in the United States" and "a company built on more than 40 years of innovation and expertise in the industry" as this website is no longer accessible.

16.     Corizon admits that it entered into a separate agreement with the Missouri Department of Corrections ("MDOC") whereby Corizon would provide or arrange for the provision of healthcare services to certain inmates and detainees under the control of the MDOC.

17.     Corizon admits the allegations contained in Paragraph 17 of the First Amended Petition.

18.     Corizon admits the allegations contained in Paragraph 18 of the First Amended Petition.

19.     Corizon admits the allegations contained in Paragraph 19 of the First Amended Petition.

20.     Corizon admits the allegations contained in Paragraph 20 of the First Amended Petition.

21.     Corizon admits the allegations contained in Paragraph 21 of the First Amended Petition.

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

22.     Corizon states that Section 3 of the Agreement speaks for itself, and any allegations contained in Paragraph 22 of the First Amended Petition that are contrary to Section 3 of the Agreement are denied. *See generally* Agreement, Compl., Ex. A, ¶ 3.

23.     Corizon admits the allegations contained in Paragraph 23 of the First Amended Petition.

24.     Corizon admits the allegations contained in Paragraph 24 of the First Amended Petition.

25.     Corizon admits the allegations contained in Paragraph 25 of the First Amended Petition, but notes that this provision appears at ¶ 3.3, p. 7.

26.     Corizon admits the allegations contained in Paragraph 26 of the First Amended Petition.

27.     Corizon admits the allegations contained in Paragraph 27 of the First Amended Petition.

28.     Corizon admits that the Agreement provides that "in the event payment is not made within such sixty (60) day time period, an interest charge of (1%) of the claim per month shall be paid," and clarifies that this provision, which is on page 6, not page 7, goes on to provide that: "However, any claim which has been properly denied before the 45th day shall not be subject to interest or penalties." Agreement, Compl., Ex. A, ¶ 3.1.3.

29.     Corizon admits the allegations contained in Paragraph 29 of the First Amended Petition.

30.     Corizon admits the allegations contained in Paragraph 30 of the First Amended Petition.

31.     Corizon admits that Plaintiffs provided Patients with Health Care Services.

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

32.    Corizon admits that it was billed for Health Care Services on approved hospital billing forms. Corizon denies that the Health Care Services rendered were properly billed as "Completed Claims" as defined in the Agreement because of billing discrepancies.

33.    Corizon denies that the Health Care Services rendered were properly submitted as "Completed Claims" as defined in the Agreement within 120 days of the service rendered to Patients because of billing discrepancies.

34.    Corizon is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34 of the First Amended Petition, and therefore denies them.

35.    Corizon is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34 of the First Amended Petition, and therefore denies them.

36.    Corizon admits the allegations contained in Paragraph 36 of the First Amended Petition.

37.    Corizon denies the allegations contained in Paragraph 37 of the First Amended Petition as stated.

38.    Corizon admits the allegations contained in Paragraph 38 of the First Amended Petition.

39.    Because of billing discrepancies, Corizon denies that all Health Care Services rendered were properly billed as "Completed Claims" as defined in the Agreement, therefore the allegations contained in this paragraph are denied as stated.

40.    Corizon admits that it has not paid for all Health Care Services rendered to Patients because of billing discrepancies.

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

41.     Because of billing discrepancies, Corizon denies that the Health Care Services rendered were properly billed as "Completed Claims" as defined in the Agreement, therefore the allegations contained in this paragraph are denied as stated. Corizon admits that it received at least some notices from Plaintiffs.

42.     Because of billing discrepancies, Corizon denies that the Health Care Services rendered were properly billed as "Completed Claims" as defined in the Agreement, therefore the allegations contained in this paragraph are denied as stated. Corizon admits that it received at least some notices from Plaintiffs.

43.     Corizon denies the allegations in Paragraph 43 of the First Amended Petition as stated.

44.     Corizon denies that $12,000,000.00 is the correct amount owed pursuant to the Agreement. Corizon admits that it has not paid for all Health Care Services rendered because Corizon believed that Plaintiffs failed to correctly or accurately bill for Health Care Services rendered. Because of these billing discrepancies, Corizon denies that the Health Care Services rendered were properly billed as "Completed Claims" as defined in the Agreement.

45.     Corizon denies that it is in default on all of Plaintiffs' outstanding "Completed Claims" as referenced throughout the First Amended Petition, therefore denied as stated.

46.     Corizon admits that it responded in discovery that "Corizon shows that the total amount owed to Plaintiffs under the Agreement, once billing discrepancies are accounted for, is $11,174,465.50."

47.     Corizon admits the allegations contained in Paragraph 47 of the First Amended Petition.

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

48.      Corizon admits the allegations contained in Paragraph 48 of the First Amended Petition.

49.      Corizon admits the allegations contained in Paragraph 49 of the First Amended Petition.

50.      Corizon admits that in 2014 it won the bid for a renewed contract with the MDOC that was slated to run from July 1, 2014 to June 30, 2021. Corizon notes that its RFP submitted as part of that bid process stated, among other things, that Corizon had "access to more than $72 million in operating cash as of December 31, 2012 (including cash held by its parent company – Valitas)," had access "to a $75 million line of credit," that in 2012 "Valitas generated approximately $1.2 billion of revenues from correctional health care services," that as of 2012 Corizon represented "approximately 55% of total Valitas revenues," and that "Corizon's EBITDA for 2012 was $51.6 million." All other allegations contained in Paragraph 50 of the First Amended Petition, including Plaintiffs' characterization of Corizon's RFP statements, are denied.

51.      Corizon admits that in 2016, it sent a proposal to MDOC to amend the terms of the contract and that as part of this proposal Corizon requested a reduction in amount of the required bond performance. Corizon further admits that the MDOC agreed with Corizon's proposed changes. Corizon admits that later that year, Corizon and Plaintiffs entered into the Agreement.

52.      Corizon admits the allegations contained in Paragraph 52 of the First Amended Petition.

53.      Corizon admits the allegations contained in Paragraph 53 of the First Amended Petition.

54.      Corizon admits the allegations contained in Paragraph 54 of the First Amended Petition.

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

55.    Corizon is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 55 of the First Amended Petition and therefore denies them.

56.    Corizon denies the allegations contained in Paragraph 56 of the First Amended Petition.

57.    Corizon admits that Sara Tirschwell was appointed as Corizon's CEO and that the article attached as Exhibit 3 to the First Amended Petition notes that Sara Tirschwell has "more than 30 years of experience in distressed finance."

58.    Corizon admits that it underwent a divisional merger pursuant to the Texas Business Organization Code ("TBOC"). The remaining allegations in Paragraph 58 of the First Amended Petition are denied.

59.    Corizon is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 59 of the First Amended Petition, and therefore denies them.

60.    Corizon is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 60 of the First Amended Petition, particularly what was known to Plaintiffs at a specific time. Corizon admits that it underwent a divisional merger in 2022.

a.    Corizon admits the allegations contained in Paragraph 60(a) of the First Amended Petition.

b.    Corizon admits that on April 28, 2022, it and Valitas Health Services, Inc. were converted from Delaware corporations to Texas corporations. Corizon further admits that at this time its corporate headquarters was in Brentwood, Tennessee. Corizon denies that at this time it

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

maintained a second major corporate office in St. Louis, Missouri. Corizon denies all remaining allegations not expressly admitted within Paragraph 60(b) of the First Amended Petition.

c.      Corizon admits the allegations contained in Paragraph 60(c) of the First Amended Petition.

d.      Corizon admits that it underwent a divisional merger pursuant to the Texas Business Organization Code ("TBOC"). Corizon further admits that CHS TX, Inc. is a wholly-owned subsidiary of YesCare, but expressly notes that on May 5, 2022, YesCare purchased the equity of CHS TX, Inc. Corizon denies all remaining allegations not expressly admitted within Paragraph 60(d) of the First Amended Petition.

61.     Corizon denies the allegations contained in Paragraph 61 of the First Amended Petition as stated.

62.     Corizon denies the allegations contained in Paragraph 62 of the First Amended Petition as stated.

63.     Corizon denies the allegations contained in Paragraph 63 of the First Amended Petition.

64.     Corizon admits the allegations contained in Paragraph 64 of the First Amended Petition.

65.     Corizon admits that at 8:07 AM on May 16, 2022, BusinessWire published a press release titled "Leading Healthcare Group Forms YesCare, Debuting New Vision and Leadership" that introduced YesCare management. Corizon admits that the individuals listed in the press release referenced in Paragraph 65 of the First Amended Petition previously held positions at Corizon. Corizon denies that those individually currently hold positions at Corizon, and further

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

denies all remaining allegations not expressly admitted within Paragraph 65 of the First Amended Petition.

66.    Corizon admits that a UCC-1 was filed in Texas against YesCare Corp. and CHS TX, Inc. on May 16, 2022 and notes that those documents speak for themselves. Corizon denies all remaining allegations not expressly admitted within Paragraph 66 of the First Amended Petition.

67.    Corizon admits the allegations contained in Paragraph 67 of the First Amended Petition, and notes that the UCC-3s speak for themselves.

68.    Corizon admits that on June 1, 2022, it filed a "Certificate of Amendment" pursuant to which Corizon changed its name to Tehum Care Services, Inc. Corizon further admits that Isaac Lefkowitz was the signatory for this filing.

69.    Corizon admits that it did not inform Plaintiffs of the divisional merger that occurred pursuant to the Texas Business Organization Code ("TBOC"). Corizon denies that it had any obligation to so inform Plaintiffs of this transaction.

70.    Corizon admits the allegations contained in Paragraph 70 of the First Amended Petition. Corizon denies that it had any obligation to so inform Plaintiffs of its name change.

71.    Corizon admits that it was named in this lawsuit as "Corizon Health, Inc." and is referred to as "Corizon Health, Inc." in the public filings in this case. The remaining allegations in Paragraph 71 of the First Amended Petition are denied.

72.    Corizon denies the allegations contained in Paragraph 72 of the First Amended Petition.

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

73.    Corizon admits that it owes Plaintiffs for some payments pursuant to the Agreement that date back to 2020. Corizon denies the remaining allegations contained in Paragraph 73 of the First Amended Petition.

74.    Corizon denies the allegations in Paragraph 74 of the First Amended Petition as stated.

75.    Corizon denies the allegations in Paragraph 75 of the First Amended Petition as stated.

76.    Corizon admits that on May 14, 2021, Shawn Lewis (not Darrell Barker) emailed representatives of Capital Region Medical Center and asked that a Capital Regional Medical Center representative, Michelle Hughey, call him "discuss the plans" for "getting [Plaintiffs'] balance paid to the contract position." Corizon further admits that Darrell Barker is a Claims Director for YesCare and noted in an August 2021 email to a Capital Region Medical Center representative that he would have "better visibility" and would "continue to advise what [Corizon] can do week to week to resolve the backlog." Corizon is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 76 of the First Amended Petition, and therefore denies them.

77.    Corizon admits the allegations contained in Paragraph 77 of the First Amended Petition.

78.    Corizon denies that on September 27, 2021 Darrell Barker "promised" Plaintiffs that Corizon would pay Plaintiffs on a rolling basis. Corizon admits that Darrell Barker noted in an email on September 27, 2021 that he would "work to calculate the interest payment for the 2nd quarter and have approved for reimbursement," and that he would "work to calculate the interest for the 3rd quarter next week and have approved for reimbursement." Corizon admits that Darrell

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

Barker provided the schedule listed in Paragraph 78 of the First Amended Petition in his September 27, 2021 email. Corizon denies that Darrell Barker explained that Corizon would "work to[] reimburse billed charges" on that schedule, as this is an incomplete recitation of Darrell Barker's statement. Corizon denies as stated that Darrell Barker's email indicated that Corizon hoped to "close out" the balance within 60-days from the termination of the contract.

79.    Corizon admits that it shows that the total amount owed to Plaintiffs under the Agreement, once billing discrepancies are accounted for, is $11,174,465.50, and that this amount has not yet been paid to Plaintiffs. Corizon denies the remaining allegations contained in Paragraph 79 of the First Amended Petition.

80.    Corizon denies that Plaintiffs' joint demand letter sent to Corizon requested the amounts owed under the Agreement as, because of billing discrepancies, Corizon denies that all of the Health Care Services rendered were properly billed as "Completed Claims" as defined in the Agreement. Corizon admits that Vince Cooper followed up on that letter, and that Carla Copeland responded on behalf of Corizon. The communications between the parties speak for themselves and Corizon denies the remaining allegations to the extent they differ from those communications.

81.    Corizon is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 81 of the First Amended Petition, and therefore denies them.

82.    Corizon is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 82 of the First Amended Petition, and therefore denies them.

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

83.    Corizon is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 83 of the First Amended Petition, and therefore denies them.

84.    Corizon admits that Sara Tirschwell was the organizer of YesCare. Corizon is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 84 of the First Amended Petition, and therefore denies them.

85.    Corizon admits that Plaintiffs' counsel sent a Demand for Payment of Amounts Due and Owing on or about April 19, 2022. Corizon denies as stated that "nine days later, Corizon Health reincorporated in Texas, underwent the four-way merger, and shed its assets."

86.    Corizon is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 86 of the First Amended Petition, and therefore denies them.

87.    Corizon admits that 205 Powell Place, Suite 104, Brentwood TN 37027 was previously its corporate headquarters. Corizon is no longer an active entity and denies that it currently has a corporate headquarters. Corizon admits that 205 Powell Place, Suite 104, Brentwood TN 37027 is a corporate office for YesCare and CHS TX, Inc., but denies as stated that 205 Powell Place is the "corporate headquarters."

88.    Corizon admits the allegations contained in Paragraph 88 of the First Amended Petition.

89.    Corizon denies that the website referenced in Paragraph 89 of the First Amended Petition states that "YesCare acquired all employees and active contracts of Corizon Health in early 2022."

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

90.     Corizon admits the allegations contained in Paragraph 90 of the First Amended Petition, but notes that Paragraph 90 is not a complete recitation of the press released referenced therein and that the press release speaks for itself.

91.     Corizon admits that its website is no longer operational. Corizon further admits that Sara Tirschwell was previously Corizon's CEO and is now YesCare's CEO. Corizon further admits that Sara Tirschwell is listed as the sole director for YesCare on its January 26, 2022 Certificate of Formation which speaks for itself.  Corizon admits that Sara Tirschwell is listed a director on Corizon Health Inc.'s January 26, 2022 Certificate of Formation along with Abe Goldberger, David Gefner, and Isaac Lefkowitz.

92.     Corizon admits that J. Scott King is the EVP and Chief Legal Officer for YesCare. Corizon denies the remaining allegations contained in Paragraph 92 of the First Amended Petition.

93.     Corizon admits that Michael Middleton is the Chief Information Officer for YesCare. Corizon denies the remaining allegations contained in Paragraph 93 of the First Amended Petition.

94.     Corizon admits that Michael Murphy is the SVP for State Client Relations and Business Development for YesCare. Corizon denies the remaining allegations contained in Paragraph 94 of the First Amended Petition.

95.     Corizon admits that Karen Davies is the Senior Vice President Community Operations – Southeast for YesCare. Corizon denies the remaining allegations contained in Paragraph 95 of the First Amended Petition.

96.     Corizon admits that Jeffrey Sholey is the Senior Vice President and Chief Financial Officer for YesCare. Corizon denies the remaining allegations contained in Paragraph 96 of the First Amended Petition.

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

97.    Corizon admits that Steve Tomlin is the Senior Vice President of Reentry and Community Partnerships for YesCare. Corizon denies the remaining allegations contained in Paragraph 97 of the First Amended Petition.

98.    Corizon admits that Gregory Ladele is the Chief Medical Officer of YesCare. Corizon denies the remaining allegations contained in Paragraph 98 of the First Amended Petition.

99.    Corizon admits that Joseph Pastor is the Chief Psychiatric Officer for YesCare. Corizon denies the remaining allegations contained in Paragraph 99 of the First Amended Petition.

100.    Corizon admits that Mary Silva is the Chief Clinical Officer for YesCare. Corizon denies the remaining allegations contained in Paragraph 100 of the First Amended Petition.

101.    Corizon admits that Stacie Koch is the Vice President of Operations – Wyoming for YesCare. Corizon denies the remaining allegations contained in Paragraph 101 of the First Amended Petition.

102.    Corizon admits that Tasha McMillan is the Vice President of Operations – Maryland for YesCare. Corizon denies the remaining allegations contained in Paragraph 102 of the First Amended Petition.

103.    Corizon admits that Vandelyn Phillips is the Vice President of Operations – City of Philadelphia for YesCare. Corizon denies the remaining allegations contained in Paragraph 103 of the First Amended Petition.

104.    Corizon denies the allegations contained in Paragraph 104 of the First Amended Petition as stated.

105.    Corizon admits the allegations contained in Paragraph 105 of the First Amended Petition to the extent YesCare's website notes that it has 40 years of experience. Corizon denies the remainder of the allegations in Paragraph 105 of the First Amended Petition.

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

106.    Corizon admits that the statements contained in Paragraph 106 of the First Amended Petition appear on YesCare's website, but denies the remainder of the allegations in Paragraph 106 of the First Amended Petition.

107.    Corizon admits that there are commonalities between YesCare's social media and marketing content and Corizon's prior social media and marketing content. Corizon further admits that there are references to Corizon on YesCare's website, including on the "Culture" page, but denies any allegation that those reference need to be or will be "scrubbed." Corizon further admits that the LinkedIn icon on YesCare's website takes users to Corizon's LinkedIn. Corizon denies the remaining allegations contained in Paragraph 107 of the First Amended Petition.

108.    Corizon admits that YesCare's social media profiles make reference to Corizon. Corizon denies the remaining allegations contained in Paragraph 108 of the First Amended Petition as stated.

109.    Corizon denies the allegations contained in Paragraph 109 of the First Amended Petition as stated.

110.    Corizon admits that the April 26, 2022 article attached as Exhibit 3 to the First Amended Petition identifies Sara Tirschwell as "CEO of Corizon, Soon to be YesCare" and further notes that "[a]mong our patient population at Corizon, Soon to be YesCare…", but otherwise notes that the article speaks for itself.

111.    Corizon admits that on May 13, 2022, Corizon representatives informed Corizon client(s) of the upcoming changes to Corizon, particularly the divisional merger. Corizon admits that it did not inform Plaintiffs of these upcoming changes, particularly the divisional merger, on May 13, 2022, but expressly denies that it had any obligation to so inform Plaintiffs.

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

112.    Corizon admits that Jennifer Finger was previously in-house counsel for Corizon and that she currently serves as in-house counsel for YesCare. Corizon admits that Jennifer Finger redlined the yet-to-be-signed Memorandum of Understanding as referenced in Paragraph 112 of the First Amended Petition as stated, but notes that the Memorandum of Understanding speaks for itself.

113.    Corizon admits that the announcement referenced in Paragraph 113 of the First Amended Petition has the subject line "Excited to Announce that Corizon Health is now YesCare." Corizon denies the remaining allegations contained in Paragraph 113 of the First Amended Petition as stated.

114.    Corizon admits that the statements contained in Paragraph 114 of the First Amended Petition are found in the announcement referenced therein, but notes that the announcement, which is attached as Exhibit 37 of the First Amended Petition, speaks for itself.

115.    Corizon admits that member(s) of Corizon's management sent a similar email to that attached as Exhibit 37 to the First Amended Petition to various Corizon clients on or about May 13, 2022.

116.    Corizon admits the allegations contained in Paragraph 116 of the First Amended Petition to the extent it alleges that Sara Tirschwell posted the tweet identified in Paragraph 116, but denies that this tweet was posted on May 16, 2022.

117.    Corizon admits that Karen Davies is YesCare's Senior Vice President of Community Corrections, but denies that Karen Davies is currently Corizon's Senior Vice President. Corizon further admits that Karen Davies sent the email attached as Exhibit 10 to the First Amended Petition on June 2, 2022 and notes that the email speaks for itself.

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

118.    Corizon denies the allegations contained in Paragraph 118 of the First Amended Petition as stated.

119.    Corizon admits that Karen Davies sent the email attached as Exhibit 10 to the First Amended Petition on June 2, 2022 and notes that the email speaks for itself.

120.    Corizon admits that Ms. Davies' email referenced in Paragraph 120 of the First Amended Petition, which speaks for itself, says that "There will be no change in bank account information at this time, however, that may be updated in the future."

121.    Corizon admits that Karen Davies sent the email attached as Exhibit 10 to the First Amended Petition on June 2, 2022 and notes that the email speaks for itself.

122.    Corizon admits that Stacie Koch is YesCare's Vice President of Operations for Wyoming, but denies that Stacie Koch is currently Corizon's Vice President of Operations for Wyoming. Corizon further admits that Stacie Koch sent the email attached as Exhibit 11 to the First Amended Petition on June 3, 2022 to individuals in Wyoming and notes that the email speaks for itself.

123.    Corizon denies the allegations contained in Paragraph 123 of the First Amended Petition as stated.

124.    Corizon admits that one of questions posed in the Q&A attached as Exhibit 38 to the First Amended Petition is "Why is Corizon becoming YesCare?," and that that the Q&A speaks for itself.

125.    Corizon admits the allegations contained in Paragraph 125 of the First Amended Petition but notes that the Q&A speaks for itself.

126.    Corizon admits the allegations contained in Paragraph 126 of the First Amended Petition but notes that the Q&A speaks for itself.

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

127.    Corizon admits the allegations contained in Paragraph 127 of the First Amended Petition but notes that the Q&A speaks for itself.

128.    Corizon admits that all Health Care Services at issue were rendered before May 5, 2022. Corizon further admits that any amounts owed to Plaintiffs by Corizon were incurred for Health Care Services rendered before May 5, 2022. Corizon denies that it "restructured to avoid those liabilities."

129.    Corizon denies the allegations contained in Paragraph 129 of the First Amended Petition.

130.    Corizon denies the allegations contained in Paragraph 130 of the First Amended Petition.

131.    Corizon denies the allegations contained in Paragraph 131 of the First Amended Petition.

132.    Corizon denies the allegations contained in Paragraph 132 of the First Amended Petition.

133.    Corizon denies the allegations contained in Paragraph 133 of the First Amended Petition.

<u>**COUNT I:**</u>
**BREACH OF CONTRACT**
***All Defendants***

134.    Corizon incorporates and realleges its previous responses to the preceding paragraphs as though fully set forth herein.

135.    Corizon admits the allegations contained in Paragraph 135 of the First Amended Petition to the extent that it states Corizon is a party to a valid and enforcement contract with Plaintiffs. Corizon denies that YesCare Corp. or CHS TX, Inc. are parties to that same contract.

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

136.    Corizon admits the allegations contained in Paragraph 136 of the First Amended Petition.

137.    Corizon admits the allegations contained in Paragraph 137 of the First Amended Petition.

138.    Corizon denies the allegations contained in Paragraph 138 of the First Amended Petition.

139.    Corizon denies the allegations contained in Paragraph 139 of the First Amended Petition.

140.    Corizon denies the allegation contained in Paragraph 140 of the First Amended Petition.

141.    Corizon denies the allegation contained in Paragraph 141 of the First Amended Petition as stated.

142.    Because of billing discrepancies, Corizon denies that all of the Health Care Services rendered were properly billed as "Completed Claims" as defined in the Agreement, therefore the allegations contained in Paragraph 142 of the First Amended Petition are denied as stated.

143.    Because of billing discrepancies, Corizon denies that all of the Health Care Services rendered were properly billed as "Completed Claims" as defined in the Agreement, and therefore denies that Plaintiffs requested payment pursuant to the terms of the Agreement, therefore the allegations contained in Paragraph 143 of the First Amended Petition are denied as stated.

144.    Corizon admits that beginning in 2020, Corizon did not pay for all Health Care Services rendered because Corizon believed that Plaintiffs failed to correctly or accurately bill for Health Care Services rendered. Corizon denies that the Health Care Services rendered were properly billed as "Completed Claims" as defined in the Agreement because of billing

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

discrepancies, therefore the allegations contained in Paragraph 144 of the First Amended Petition are denied as stated.

145.    Corizon admits that it has not paid for all Health Care Services rendered to Patients because of billing discrepancies, and denies all remaining allegations contained in Paragraph 145 of the First Amended Petition.

146.    Corizon denies the allegations contained in Paragraph 146 of the First Amended Petition.

147.    Corizon denies the allegation contained in Paragraph 147 of the First Amended Petition.

148.    Corizon denies the allegations contained in Paragraph 148 of the First Amended Petition as stated.

<u>COUNT II:</u>
**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**
**All Defendants**

149.    Corizon denies the allegation contained in Paragraph 149 of the First Amended Petition.

150.    Corizon incorporates and realleges its previous responses to the preceding paragraphs as though fully set forth herein.

151.    Corizon admits the allegations contained in Paragraph 151 of the First Amended Petition to the extent that it states Corizon is a party to a valid and enforcement contract with Plaintiffs. Corizon denies that YesCare Corp. or CHS TX, Inc. are parties to that same contract.

152.    Corizon admits the allegations contained in Paragraph 152 of the First Amended Petition.

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

153.    Corizon admits the allegation contained in Paragraph 153 of the First Amended Petition.

154.    Corizon denies the allegations contained in Paragraph 154 of the First Amended Petition.

155.    Corizon denies the allegation contained in Paragraph 155 of the First Amended Petition.

156.    Because of billing discrepancies, Corizon denies that all of the Health Care Services rendered were properly billed as "Completed Claims" as defined in the Agreement, therefore the allegations contained in Paragraph 156 of the First Amended Petition are denied as stated.

157.    Because of billing discrepancies, Corizon denies that all of the Health Care Services rendered were properly billed as "Completed Claims" as defined in the Agreement, and therefore denies that Plaintiffs requested payment pursuant to the terms of the Agreement, therefore the allegations contained in Paragraph 157 of the First Amended Petition are denied as stated.

158.    Corizon is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 158 of the First Amended Petition and therefore denies them.

159.    Corizon is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 159 of the First Amended Petition and therefore denies them.

160.    Corizon is without knowledge or information sufficient to form a belief as to Plaintiffs' expectations, therefore that allegation is denied. Corizon denies as stated the remaining allegations contained in Paragraph 160 of the First Amended Petition.

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

161.    Corizon is without knowledge or information sufficient to form a belief as to Plaintiffs' expectations, therefore that allegation is denied. Corizon denies as stated the remaining allegations contained in Paragraph 161 of the First Amended Petition.

162.    Corizon denies the allegations contained in Paragraph 162 of the First Amended Petition.

163.    Corizon denies the allegations contained in Paragraph 163 of the First Amended Petition.

164.    Corizon denies the allegations contained in Paragraph 164 of the First Amended Petition.

165.    Corizon denies the allegations contained in Paragraph 165 of the First Amended Petition.

**COUNT III:**
**SUCCESSOR LIABILITY**
**Express and/or Implied Agreement to Assume Debts and/or Liabilities**
***YesCare Corp. and CHS TX, Inc.***

166.    Corizon incorporates and realleges its previous responses to the preceding paragraphs as though fully set forth herein.

167.    The allegations contained in Paragraph 167 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

168.    The allegations contained in Paragraph 168 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

169.    The allegations contained in Paragraph 169 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

170.    The allegations contained in Paragraph 170 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

171.   The allegations contained in Paragraph 171 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

172.   The allegations contained in Paragraph 172 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

173.   The allegations contained in Paragraph 173 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

174.   The allegations contained in Paragraph 174 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

175.   The allegations contained in Paragraph 175 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

**COUNT IV:**
**SUCCESSOR LIABILITY**
**De Facto Merger**
***YesCare Corp. and CHS TX, Inc.***

176.   Corizon incorporates and realleges its previous responses to the preceding paragraphs as though fully set forth herein.

177.   The allegations contained in Paragraph 177 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

178.   The allegations contained in Paragraph 178 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

179.   The allegations contained in Paragraph 179 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

180.   The allegations contained in Paragraph 180 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

181.    The allegations contained in Paragraph 181 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

182.    The allegations contained in Paragraph 182 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

183.    The allegations contained in Paragraph 183 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

184.    The allegations contained in Paragraph 184 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

185.    The allegations contained in Paragraph 185 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

186.    The allegations contained in Paragraph 186 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

187.    The allegations contained in Paragraph 187 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

188.    The allegations contained in Paragraph 188 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

189.    The allegations contained in Paragraph 189 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

190.    The allegations contained in Paragraph 190 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

191.    The allegations contained in Paragraph 191 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

192. The allegations contained in Paragraph 192 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

193. The allegations contained in Paragraph 193 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

194. The allegations contained in Paragraph 194 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

195. The allegations contained in Paragraph 195 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

196. The allegations contained in Paragraph 196 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

197. The allegations contained in Paragraph 197 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

<u>COUNT V:</u>
**SUCCESSOR LIABILITY**
**Mere Continuation**
***YesCare Corp. and CHS TX, Inc.***

198. Corizon incorporates and realleges its previous responses to the preceding paragraphs as though fully set forth herein.

199. The allegations contained in Paragraph 199 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

200. The allegations contained in Paragraph 200 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

201. The allegations contained in Paragraph 201 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

202.    The allegations contained in Paragraph 202 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

203.    The allegations contained in Paragraph 203 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

204.    The allegations contained in Paragraph 204 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

205.    The allegations contained in Paragraph 205 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

206.    The allegations contained in Paragraph 206 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

207.    The allegations contained in Paragraph 207 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

208.    The allegations contained in Paragraph 208 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

209.    The allegations contained in Paragraph 209 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

210.    The allegations contained in Paragraph 210 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

211.    The allegations contained in Paragraph 211 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

212.    The allegations contained in Paragraph 212 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

213.    The allegations contained in Paragraph 213 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

214.    The allegations contained in Paragraph 214 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

**<u>COUNT VI:</u>**
**SUCCESSOR LIABILITY**
**Intent to Defraud Creditors**
***YesCare Corp. and CHS TX, Inc.***

215.    Corizon incorporates and realleges its previous responses to the preceding paragraphs as though fully set forth herein.

216.    The allegations contained in Paragraph 216 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

217.    The allegations contained in Paragraph 217 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

218.    The allegations contained in Paragraph 218 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

219.    The allegations contained in Paragraph 219 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

220.    The allegations contained in Paragraph 220 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

221.    The allegations contained in Paragraph 221 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

222.    The allegations contained in Paragraph 222 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

223.    The allegations contained in Paragraph 223 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

224.    The allegations contained in Paragraph 224 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

225.    The allegations contained in Paragraph 225 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

226.    The allegations contained in Paragraph 226 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

227.    The allegations contained in Paragraph 227 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

228.    The allegations contained in Paragraph 228 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

229.    The allegations contained in Paragraph 229 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

230.    The allegations contained in Paragraph 230 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

231.    The allegations contained in Paragraph 231 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

<u>COUNT VII:</u>
**COMMON LAW FRAUD and CONSPIRACY TO COMMIT COMMON LAW FRAUD**
*All Defendants*

232.    Corizon incorporates and realleges its previous responses to the preceding paragraphs as though fully set forth herein.

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

233.    Corizon denies the allegations contained in Paragraph 233 of the First Amended Petition.

234.    Corizon denies the allegations contained in Paragraph 234 of the First Amended Petition.

235.    Corizon denies the allegations contained in Paragraph 235 of the First Amended Petition.

236.    Corizon is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 236 of the First Amended Petition and therefore denies them.

237.    Corizon denies the allegations contained in Paragraph 237 of the First Amended Petition.

238.    Corizon denies the allegations contained in Paragraph 238 of the First Amended Petition as stated.

239.    Corizon denies the allegations contained in Paragraph 239 of the First Amended Petition.

240.    Corizon is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 240 of the First Amended Petition and therefore denies them.

241.    Corizon is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 241 of the First Amended Petition and therefore denies them.

242.    Corizon denies the allegations contained in Paragraph 242 of the First Amended Petition.

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

243.    Corizon denies the allegations contained in Paragraph 243 of the First Amended Petition.

<u>COUNT VIII:</u>
**FRAUDULENT TRANSFER**
**Pursuant to the Missouri Uniform Fraudulent Transfer Act, Mo. Rev. Stat. §§ 428.005 *et seq.***
*Corizon Health*

244.    Corizon incorporates and realleges its previous responses to the preceding paragraphs as though fully set forth herein.

245.    The allegations contained in Paragraph 245 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

246.    Paragraph 246 of the First Amended Petition contains a legal conclusion to which Corizon is not required to respond, therefore denied.

247.    Paragraph 247 of the First Amended Petition contains a legal conclusion to which Corizon is not required to respond, therefore denied.

248.    Corizon admits that it shows that the total amount owed to Plaintiffs under the Agreement, once billing discrepancies are accounted for, is $11,174,465.50.

249.    Paragraph 249 of the First Amended Petition contains a legal conclusion to which Corizon is not required to respond, therefore denied.

250.    Corizon denies the allegations contained in Paragraph 250 of the First Amended Petition.

251.    Corizon denies the allegations contained in Paragraph 251 of the First Amended Petition.

252.    Corizon denies that it demonstrated "actual intent" under Mo. Rev. Stat. § 428.024(1) to defraud Plaintiffs, and further:

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

a.      Corizon denies the allegations contained in Paragraph 252(a) of the First Amended Petition as stated.

b.      Corizon denies the allegations contained in Paragraph 252(b) of the First Amended Petition as stated.

c.      Corizon denies the allegations contained in Paragraph 252(c) of the First Amended Petition as stated.

d.      Corizon denies the allegations contained in Paragraph 252(d) of the First Amended Petition.

e.      Corizon denies the allegations contained in Paragraph 252(e) of the First Amended Petition as stated.

f.      Corizon denies the allegations contained in Paragraph 252(f) of the First Amended Petition.

g.      Corizon denies the allegations contained in Paragraph 252(g) of the First Amended Petition as stated.

h.      Corizon denies the allegations contained in Paragraph 252(h) of the First Amended Petition as stated.

253.    Corizon denies the allegations contained in Paragraph 253 of the First Amended Petition.

254.    Corizon denies the allegations contained in Paragraph 254 of the First Amended Petition.

255.    Corizon denies the allegations contained in Paragraph 255 of the First Amended Petition.

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

256.    Corizon denies the allegations contained in Paragraph 256 of the First Amended Petition.

<u>COUNT IX:</u>

**CIVIL CONSPIRACY TO ENGAGE IN A FRAUDULENT TRANSFER**
**Pursuant to the Missouri Uniform Fraudulent Transfer Act, Mo. Rev. Stat. §§ 428.005 *et***
***seq.***
***All Defendants***

257.    Corizon incorporates and realleges its previous responses to the preceding paragraphs as though fully set forth herein.

258.    The allegations contained in Paragraph 258 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

259.    Paragraph 259 of the First Amended Petition contains a legal conclusion to which Corizon is not required to respond, therefore denied.

260.    Paragraph 260 of the First Amended Petition contains a legal conclusion to which Corizon is not required to respond, therefore denied.

261.    Corizon admits that it shows that the total amount owed to Plaintiffs under the Agreement, once billing discrepancies are accounted for, is $11,174,465.50.

262.    Paragraph 262 of the First Amended Petition contains a legal conclusion to which Corizon is not required to respond, therefore denied.

263.    Corizon denies the allegations contained in Paragraph 263 of the First Amended Petition.

264.    Corizon denies the allegations contained in Paragraph 264 of the First Amended Petition.

265.    Corizon denies the allegations contained in Paragraph 265 of the First Amended Petition.

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

266.    Corizon denies the allegations contained in Paragraph 266 of the First Amended Petition.

267.    Corizon denies that it demonstrated "actual intent" under Mo. Rev. Stat. § 428.024(1) to defraud Plaintiffs, and further:

a.    Corizon denies the allegations contained in Paragraph 267(a) of the First Amended Petition as stated.

b.    Corizon denies the allegations contained in Paragraph 267(b) of the First Amended Petition as stated.

c.    Corizon denies the allegations contained in Paragraph 267(c) of the First Amended Petition as stated.

d.    Corizon denies the allegations contained in Paragraph 267(d) of the First Amended Petition.

e.    Corizon denies the allegations contained in Paragraph 267(e) of the First Amended Petition as stated.

f.    Corizon denies the allegations contained in Paragraph 267(f) of the First Amended Petition.

g.    Corizon denies the allegations contained in Paragraph 267(g) of the First Amended Petition as stated.

h.    Corizon denies the allegations contained in Paragraph 267(h) of the First Amended Petition as stated.

268.    Corizon denies the allegations contained in Paragraph 268 of the First Amended Petition.

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

269.    Corizon denies the allegations contained in Paragraph 269 of the First Amended Petition.

270.    Corizon denies the allegations contained in Paragraph 270 of the First Amended Petition.

271.    Corizon denies the allegations contained in Paragraph 271 of the First Amended Petition.

272.    Corizon denies the allegations contained in Paragraph 272 of the First Amended Petition.

<u>**COUNT X:**</u>
**CONSTRUCTIVE FRAUDULENT TRANSFER**
**Pursuant to the Missouri Uniform Fraudulent Transfer Act, Mo. Rev. Stat. §§ 428.005 *et seq.***
***Corizon Health***

273.    Corizon incorporates and realleges its previous responses to the preceding paragraphs as though fully set forth herein.

274.    The allegations contained in Paragraph 274 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

275.    Paragraph 275 of the First Amended Petition contains a legal conclusion to which Corizon is not required to respond, therefore denied.

276.    Paragraph 276 of the First Amended Petition contains a legal conclusion to which Corizon is not required to respond, therefore denied.

277.    Corizon admits that it shows that the total amount owed to Plaintiffs under the Agreement, once billing discrepancies are accounted for, is $11,174,465.50.

278.    Paragraph 278 of the First Amended Petition contains a legal conclusion to which Corizon is not required to respond, therefore denied.

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

279.    Corizon denies the allegations contained in Paragraph 279 of the First Amended Petition.

280.    Corizon denies the allegations contained in Paragraph 280 of the First Amended Petition.

281.    Corizon denies the allegations contained in Paragraph 281 of the First Amended Petition.

282.    Corizon denies the allegations contained in Paragraph 282 of the First Amended Petition.

283.    Corizon denies the allegations contained in Paragraph 283 of the First Amended Petition.

## <u>COUNT XI:</u>
### CONSPIRACY TO ENGAGE IN A CONSTRUCTIVE FRAUDULENT TRANSFER
### Pursuant to the Missouri Uniform Fraudulent Transfer Act, Mo. Rev. Stat. §§ 428.005 *et seq.*
### *All Defendants*

284.    Corizon incorporates and realleges its previous responses to the preceding paragraphs as though fully set forth herein.

285.    The allegations contained in Paragraph 285 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

286.    Paragraph 286 of the First Amended Petition contains a legal conclusion to which Corizon is not required to respond, therefore denied.

287.    Paragraph 287 of the First Amended Petition contains a legal conclusion to which Corizon is not required to respond, therefore denied.

288.    Corizon admits that it shows that the total amount owed to Plaintiffs under the Agreement, once billing discrepancies are accounted for, is $11,174,465.50.

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

289.    Paragraph 289 of the First Amended Petition contains a legal conclusion to which Corizon is not required to respond, therefore denied.

290.    Corizon denies the allegations contained in Paragraph 290 of the First Amended Petition.

291.    Corizon denies the allegations contained in Paragraph 291 of the First Amended Petition.

292.    Corizon denies the allegations contained in Paragraph 292 of the First Amended Petition.

293.    Corizon denies the allegations contained in Paragraph 293 of the First Amended Petition.

294.    Corizon denies the allegations contained in Paragraph 294 of the First Amended Petition.

295.    Corizon denies the allegations contained in Paragraph 295 of the First Amended Petition.

296.    Corizon denies the allegations contained in Paragraph 296 of the First Amended Petition.

297.    Corizon denies the allegations contained in Paragraph 297 of the First Amended Petition.

298.    Corizon denies the allegations contained in Paragraph 298 of the First Amended Petition.

Corizon denies that Plaintiffs are entitled to the relief requested within the "Prayer for Relief."

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

## ADDITIONAL AND AFFIRMATIVE DEFENSES

1.      Plaintiffs have failed to state a claim upon which relief may be granted.

2.      Plaintiffs' claims are barred by the doctrines of unclean hands, waiver, estoppel, and laches.

3.      Plaintiffs' breach of contract claim is barred as Plaintiffs were the first to materially breach the Agreement by failing to correctly or accurately bill for Health Care Services rendered.

4.      Plaintiffs' claims are barred to the extent they failed to properly and timely appeal the denial or underpayment of claims or failed to exhaust the remedial measures included in the Agreement and provider manuals.

5.      The Corizon divisional merger was not an assignment or transfer. Instead, it was a divisional merger pursuant to the Texas Business Organization Code.

6.      At no point did Corizon have actual intent to frustrate Plaintiffs' ability to collect any amounts owed to it, or to hinder, delay, or defraud Plaintiffs.

7.      To the extent there was a "transfer," that "transfer" was for reasonably equivalent value and performed in good faith.

8.      To the extent there was a "transfer," that transfer is not voidable under Mo. Rev. Stat. § 428.029 as it was made in the ordinary course of Corizon's business or financial affairs.

9.      To the extent there was a "transfer," Corizon did not have a wrongful or unlawful objective in effectuating that transfer.

10.     Plaintiffs have failed to plead the elements of fraud with the necessary specificity and/or particularity.

11.     The divisional merger transaction may be fairly reconciled with honesty, and therefore fraud may not be presumed.

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

12.　　At no point did Corizon engage in intentional conduct without just cause and with deliberate and flagrant disregard for Plaintiffs' rights.

13.　　Plaintiffs' claims against Corizon seeking punitive damages violate the substantive and procedural rights provided and guaranteed to Corizon by the United States and Missouri Constitutions as well as the public policy of the state of Missouri.

14.　　To the extent Plaintiffs are entitled to an award of punitive damages against Corizon, punitives damages cannot exceed the Missouri statutory limit.

15.　　Corizon reserves the right to assert such additional defenses and additional affirmative defenses as may be revealed by discovery in this matter.


**Dated:**　November 16, 2022

Respectfully submitted,


　*R. Thomas Warburton*
R. Thomas Warburton (MO Bar No. 65477)
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 5th Avenue N.
Birmingham, AL 35203
205.521.8987
twarburton@bradley.com

*Counsel for Tehum Care Services, Inc. d/b/a Corizon Health, Inc.*

Electronically Filed - BOONE - November 16, 2022 - 04:37 PM

## CERTIFICATE OF SERVICE

    I hereby certify that on November 16, 2022, a copy of the foregoing was filed electronically with the Clerk's office by using the CM/ECF system. We provided copies to:

    Patrick J. Stueve
    Ethan M. Lange
    Jordan A. Kane
    Stueve Siegel Hanson LLP
    460 Nichols Road, Suite 200
    Kansas City, Missouri 64112
    stueve@stuevesiegel.com
    lange@stuevesiegel.com
    kane@stuevesiegel.com

    *Counsel for Plaintiffs*

    Philip A. Cantwell
    Dowd Bennett LLP
    7733 Forsyth Blvd., Suite 1900
    St. Louis, Missouri 63105
    (314) 889-7300 (telephone)
    (314) 863-2111 (facsimile)
    pcantwell@dowdbennett.com

    *Attorney for CHS TX, Inc.*

    YESCARE Corp.
    R/A Sara Tirschwell
    3411 Yoakum Blvd. 32901
    Houston, Texas 77006

                     *R. Thomas Warburton*
                     R. Thomas Warburton

Electronically Filed - BOONE - November 17, 2022 - 10:57 AM

## AFFIDAVIT OF SERVICE

**State of Missouri** **County of Boone** **Circuit Court**

Case Number: 22BA-CV01701-01

Plaintiff/Petitioner:
**THE CURATORS OF THE UNIVERSITY OF MISSOURI, et al.**
vs.
Defendant/Respondent:
**TEHUM CARE SERVICS, INC., d/b/a CORZON HEALTH, INC., et al.**

Received by HPS Process Service & Investigations to be served on **YesCare Corp., c/o White & Case, LLP/**
**Samuel P. Hershey, 1221 Avenue of the Americas, New York, NY 10020.** I, _MICHALL MARLA_ ,
being duly sworn, depose and say that on the _9TH_ day of _November_, 20_22_ at _1:11_ .m., executed
service by delivering a true copy of the Summons for Personal Service Outside the State of Missouri (Except
Attachment Action); First Amended Petition; Plaintiff's Motion for Expedited Discovery; Exhibits 1-6; Plaintiffs' First
Requests for Production of Documents to Defendant YesCare Corp.; Plaintiffs' First Request for Admission to
YesCare Corp.; and Joint Notice Resetting Hearing on Plaintiffs' Motion for Expedited Discovery in accordance with
state statutes in the manner marked below:

( ) REGISTERED AGENT SERVICE: By serving _____
as _____ for the above-named entity.

( ) RECORDS CUSTODIAN SERVICE: By serving _____
as _____ for the above-named entity.

(X) CORPORATE SERVICE: By serving _BIANCA CARPIO_
as _ADMINISTRATIVE ASSISTANT_ for the above-named entity.

( ) OTHER SERVICE: As described in the Comments below.

() NON SERVICE: For the reason detailed in the Comments below.

**COMMENTS:**_____

_____

_____

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in
which this service was made. I declare under penalty of perjury that the foregoing is true and correct.

Subscribed and Sworn to before me on the _11TH_ day
of _NOVEMBER 2022_ by the affiant who is
personally known to me.

_____
NOTARY PUBLIC

DOMINIC DELLAPORTE
Notary Public-State of New York
No. 01DE6052212
Qualified in Nassau County
Commission Expires December 11, 2022

PROCESS SERVER # _710/634_
Appointed in accordance with State Statutes

**HPS Process Service & Investigations**
**www.hpsprocess.com**
**1669 Jefferson**
**Kansas City, MO 64108**
**(800) 796-9559**

Our Job Serial Number: 2022019308

Copyright © 1992-2022 Database Services, Inc. - Process Server's Toolbox V8.2i

Electronically Filed - Boone - November 21, 2022 - 10:01 AM

**IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI**

| | |
|---|---|
| **THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER,** ) ) ) ) | |
| Plaintiffs, ) | |
| ) | Case No. 22BA-CV01701-01 |
| v. ) | |
| ) | Division 4 |
| **TEHUM CARE SERVICES, INC. d/b/a CORIZON HEALTH, INC.,** ) ) | |
| **CHS TX, Inc.,** ) ) | |
| **and YESCARE CORP.,** ) ) | |
| Defendants. ) | |

**CHS TX, INC. AND YESCARE CORP.'S**
**OPPOSITION TO MOTION TO EXPEDITE DISCOVERY**

COMES NOW CHS TX, Inc. ("CHS TX") and YesCare Corp. ("YesCare" together with CHS TX, the "Defendants") and submit this opposition to *Plaintiffs' Motion for Expedited Discovery* (the "Motion to Expedite").  In support, Defendants respectfully state as follows:

**OPPOSITION**

Last week, the Court ordered CHS TX to "***respond*** to Plaintiff's First Requests for Production by no later than 12-7-22" (emphasis added) and otherwise denied Plaintiffs' Motion to Expedite "in all [other] respects at this time."  Plaintiffs now argue that "respond" means not just respond but also ***produce*** documents by the same deadline.  Defendants read the Court's order pursuant to its plain terms to require CHS TX to serve its responses and objections to the RFPs by December 7, 2022, and then produce documents as soon as reasonably practicable

Electronically Filed - Boone - November 21, 2022 - 10:01 AM

thereafter in accordance with the rules.[1]  Defendants therefore ask the Court to clarify that its

holding imposes only an expedited response deadline and does not impose on Defendants the

burden of rushing to produce documents responsive to over ***60 requests for production*** in the

same truncated period.[2]

### A.    Plaintiffs' Reply Asked the Court to Expedite Responses, Not Production, and the Court Obliged.

Defendants do not dispute that Plaintiffs' Motion to Expedite, as first filed, asked the

Court to order CHS TX and YesCare to "submit responses and produce documents" by

November 21, 2022—just 7 days after CHS TX was served.  See Pltfs' Mot. Expedite at 5 ¶ 13.

But CHS TX filed an Opposition, and Plaintiffs' reply appeared to change course in two

respects.  First, Plaintiffs changed the proposed discovery compliance timeframe for CHS TX

from November 21, 2022 to December 7, 2022.  See Pltfs' Reply in Supp. Mot. Expedite at 1

n.2.  Second, Plaintiffs asked the Court "to order CHS [to] respond to Plaintiffs' 29 RFPs by

December 7, 2022," id. at 5.

The Court agreed with Plaintiffs' request to order ***responses*** on an expedited basis, but

denied all other relief sought in the Motion to Expedite. The Order reads clearly:  "Plaintiff's

Motion for Expedited Discovery is granted in part and denied in part. Defendant CHS TX, Inc.

***shall respond*** to Plaintiff's First Requests for Production by no later than 12-7-22. Plaintiff's

motion is denied in all [other] respects at this time."  See Nov. 14, 2022 Order (emphasis added).

The Order's instruction to provide only responses comports with the plain reading of Missouri

---

[1]    The parties conferred after the hearing and reached agreement that YesCare would respond to the requests for production directed at it by December 9, 2022 and the requests for admission by December 27, 2022.  During those discussions on Sunday November 20, 2022, this dispute regarding the scope of the Court's prior order surfaced and the parties agreed to seek the Court's decision.

[2]    Plaintiffs issued 29 RFPs to CHS TX, and 32 to YesCare.

Electronically Filed - Boone - November 21, 2022 - 10:01 AM

Supreme Court Rule 58.01.  See Mo. Sup. Ct. R. 58.01 ("**Responses** shall be served within 30

days after the service of the request.") (emphasis added).

To be clear, CHS TX and YesCare intend to provide responses and objections thirty days

after they were served, as ordered by the Court (for CHS TX) and agreed to by the parties (for

YesCare).  And both Defendants also intend to produce documents responsive to the requests for

production as soon as reasonably practicable thereafter.  They do not seek to delay the

production of relevant documents, but simply ask as new parties to this matter first to decide

what they are able to produce, communicate that to Plaintiffs with responses and objections, and

then produce relevant materials as soon as reasonably practicable.  If Plaintiffs wish to contend

that such productions are proceeding too slowly, Rule 58.01(e) provides them with the

appropriate remedy:  move under Rule 61.01(d).  But Rule 58.01 contemplates that motion

would be filed only *after* either (1) disagreeing with an objection or (2) the defendants fail to

respond to a request.  See Mo. Sup. Ct. R. 58.01(e) ("Enforcement. The party submitting the

request may move for an order under Rule 61.01(d) with respect to any objection or other failure

to respond to the request or any part thereof or any failure to permit inspection as requested.").

Given Defendants already are responding and objecting on an expedited basis (now, on

the same timeframe they are filing their responsive pleadings), there is no reason to further rush

Defendants to complete a production of documents in response to more than *60* requests for

production on the same day they are serving their responses and objections, see Mo. Sup. Ct. R.

58.01, particularly where those requests seek a wide variety of materials, including e-mail

communications, among multiple entities.  See, e.g.,  Motion to Expedite (Oct. 31, 2022), Ex. 4

(Request No. 32 to YesCare seeking all "Documents and Communications between You and

Corizon Health or CHS TX, Inc. regarding payments owed to Plaintiffs under the Agreement").

3

Electronically Filed - Boone - November 21, 2022 - 10:01 AM

**B.      Plaintiffs' Settlement of a Similar Discovery Dispute with Corizon Has No Bearing on These Defendants, Who Were Added Months after Corizon.**

Any argument that Defendants must provide documents alongside their responses and objections because co-defendant Corizon agreed to such relief fails to account for the fact that Corizon and the Defendants are not similarly situated, including for purposes of the Motion to Expedite.  Corizon is a separate entity from the Defendants.  Corizon already has been in this case for months.  In fact, it was served in May 2022 and appears to have been engaged in the discovery process for months even before the Motion to Expedite was filed.  Thus, any resolution that Corizon and Plaintiffs negotiated (which was done without Defendants' involvement) has no bearing on the position in which Defendants now find themselves.  Corizon is its own entity, with its own counsel, and a months-long head start.

Defendants, on the other hand, are still brand new to this matter and are focused on properly responding to the *60-plus* requests for production that are now due in just two-and-a-half weeks.

<u>**CONCLUSION**</u>

For these reasons, Defendants ask that the Court clarify that Defendants must respond and object to discovery on the expedited basis and produce documents as soon as reasonably practicable thereafter.

Electronically Filed - Boone - November 21, 2022 - 10:01 AM

Dated: November 21, 2022                    Respectfully submitted,

                                            **DOWD BENNETT LLP**

                                            By: */s/ Philip A. Cantwell*
                                                 Philip A. Cantwell #65505
                                                 7733 Forsyth Blvd., Suite 1900
                                                 St. Louis, Missouri 63105
                                                 (314) 889-7300 (telephone)
                                                 (314) 863-2111 (facsimile)
                                                 pcantwell@dowdbennett.com

                                            *Attorneys for CHS TX, Inc. and YesCare
                                            Corp.*

Electronically Filed - Boone - November 21, 2022 - 10:01 AM

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 21, 2022 the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record:

Patrick J. Stueve
Ethan M. Lange
Jordan A. Kane
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

Thomas R. Warburton
twarburton@bradley.com

/s/ Philip A. Cantwell
Philip A. Cantwell

Electronically Filed - Boone - November 21, 2022 - 10:49 AM

**IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI**

| | |
|---|---|
| **THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER,** | ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | )   Case No. 22BA-CV01701-01 |
| v. | ) |
| | ) |
| **TEHUM CARE SERVICES, INC. d/b/a CORIZON HEALTH, INC.,** | ) ) |
| | ) |
| **CHS TX, Inc.,** | ) |
| | ) |
| **and YESCARE CORP.,** | ) |
| | ) |
| Defendants. | ) |

**ENTRY OF APPEARANCE**

COMES NOW Philip A. Cantwell of the law firm Dowd Bennett, LLP and hereby enters

his appearance on behalf of YesCare Corp. in the above-captioned action.


Dated: November 21, 2022                         Respectfully submitted,

                                                 **DOWD BENNETT LLP**

                                                 By: */s/ Philip A. Cantwell*
                                                     Philip A. Cantwell #65505
                                                     7733 Forsyth Blvd., Suite 1900
                                                     St. Louis, Missouri 63105
                                                     (314) 889-7300 (telephone)
                                                     (314) 863-2111 (facsimile)
                                                     pcantwell@dowdbennett.com

                                                 *Attorneys for YesCare Corp.*

Electronically Filed - Boone - November 21, 2022 - 10:49 AM

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 21, 2022 the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record:

Patrick J. Stueve
Ethan M. Lange
Jordan A. Kane
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

Thomas R. Warburton
twarburton@bradley.com

*/s/ Philip A. Cantwell*
Philip A. Cantwell

Electronically Filed - Boone - November 21, 2022 - 10:51 AM

**IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI**

| | |
|---|---|
| **THE CURATORS OF THE UNIVERSITY OF** )<br>**MISSOURI and CAPITAL REGION** )<br>**MEDICAL CENTER,** )<br> )<br>  Plaintiffs, )<br> )<br>v. )<br> )<br>**TEHUM CARE SERVICES, INC. d/b/a** )<br>**CORIZON HEALTH, INC.,** )<br> )<br>**CHS TX, Inc.,** )<br> )<br>**and YESCARE CORP.,** )<br> )<br>  Defendants. ) | Case No. 22BA-CV01701-01 |

**<u>ENTRY OF APPEARANCE</u>**

COMES NOW Robyn Parkinson of the law firm Dowd Bennett, LLP and hereby enters

her appearance on behalf of CHS TX, Inc. and YesCare Corp. in the above-captioned action.

Dated: November 21, 2022                Respectfully submitted,

                                        **DOWD BENNETT LLP**

                                        By: <u>*/s/ Robyn Parkinson*</u>
                                             Robyn Parkinson #72956
                                             7733 Forsyth Blvd., Suite 1900
                                             St. Louis, Missouri 63105
                                             (314) 889-7300 (telephone)
                                             (314) 863-2111 (facsimile)
                                             rparkinson@dowdbennett.com

                                        *Attorney for CHS TX, Inc. and YesCare
                                        Corp.*

Electronically Filed - Boone - November 21, 2022 - 10:51 AM

## CERTIFICATE OF SERVICE

I hereby certify that on November 21, 2022 the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record:

Patrick J. Stueve
Ethan M. Lange
Jordan A. Kane
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

Thomas R. Warburton
twarburton@bradley.com


/s/ Robyn Parkinson
Robyn Parkinson

Electronically Filed - BOONE - December 08, 2022 - 03:01 PM

**IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI**

THE CURATORS OF THE UNIVERSITY OF            )
MISSOURI and CAPITAL REGION                  )
MEDICAL CENTER,                              )
                                             )
       Plaintiffs,                          )    Case No. 22BA-CV01701
                                             )
v.                                           )
                                             )    Division 4
TEHUM CARE SERVICE, INC. d/b/a               )
CORIZON HEALTH, INC., CHS TX, INC.,          )
and YESCARE CORP.,                           )
                                             )
                                             )
       Defendants.                          )

**<u>STIPULATED PROTECTIVE ORDER</u>**

      Plaintiffs, Tehum Care Services, Inc. d/b/a Corizon Health, Inc., CHS TX, Inc. and YesCare Corp. (together, the "Parties") agree during the course of discovery it may be necessary to disclose certain confidential information relating to the subject matter of this action. They agree certain categories of such information should be treated as confidential, protected from disclosure outside this litigation, and used only for purposes of prosecuting or defending this action and any appeals. The Parties jointly request entry of a protective order to limit the disclosure, dissemination, and use of certain identified categories of confidential information.

      The parties assert in support of their request that protection of the identified categories of confidential information is necessary, given the nature of this suit, because the parties anticipate that discovery will likely seek private information from both parties and nonparties, including, but not limited to, protected health information regarding patients treated by any party in this case.

      For good cause shown under Missouri Supreme Court Rule 56.01(c), the Court grants the Parties' joint request and hereby enters the following Protective Order:

Electronically Filed - BOONE - December 08, 2022 - 03:01 PM

1.      **Scope.**   All documents and materials produced in the course of discovery of this case, including initial disclosures, responses to discovery requests, all deposition testimony and exhibits, and information derived directly therefrom (hereinafter, collectively, "documents"), are subject to this Order as set forth below.

2.      **Definition of Confidential Information.**   As used in this Order, "Confidential Information" is defined as information that the producing party designates in good faith has been previously maintained in a confidential manner and should be protected from disclosure and use outside the litigation because its disclosure and use are restricted by statute or could potentially cause harm to the interests of the disclosing party or nonparties.   As used in this Order, "Highly Confidential" information is defined as information which, if disclosed or disseminated, is likely to cause commercial, financial, or business harm to the interests of the disclosing party or nonparties.

For purposes of this Order, the parties will limit their designation of "Confidential Information" and "Highly Confidential Information" to the following categories of information or documents:

- Protected Health Information of any patients treated by any party in this action-; and
- Information that the producing party believes in good faith to contain or reflect trade secrets or other confidential, proprietary, and/or sensitive research, development, technical, technological, customer, marketing, financial, commercial, operational or personnel information.

Information or documents that are available to the public may not be designated as Confidential Information or Highly Confidential Information.

3.      **Form and Timing of Designation.**   The producing party may designate documents as containing Confidential Information or Highly Confidential Information and therefore subject to protection under this Order by marking or placing the words

Electronically Filed - BOONE - December 08, 2022 - 03:01 PM

"CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" (hereinafter, "the marking") on the document and on all copies in a manner that will not interfere with the legibility of the document.  As used in this Order, "copies" includes electronic images, duplicates, extracts, summaries, or descriptions that contain the Confidential Information or Highly Confidential Information.  The marking will be applied prior to or at the time the documents are produced or disclosed.   Applying the marking to a document does not mean that the document has any status or protection by statute or otherwise except to the extent and for the purposes of this Order.   Copies that are made of any designated documents must also bear the marking, except that indices, electronic databases, or lists of documents that do not contain substantial portions or images of the text of marked documents and do not otherwise disclose the substance of the Confidential Information or Highly Confidential Information are not required to be marked.   By marking a designated document as confidential, the designating attorney or party appearing *pro se* thereby certifies that the document contains Confidential Information or Highly Confidential Information as defined in this Order.

4.      **Inadvertent Failure to Designate.** Inadvertent failure to designate any document or material as containing Confidential Information or Highly Confidential Information will not constitute a waiver of an otherwise valid claim of confidentiality pursuant to this Order, so long as a claim of confidentiality is asserted within fifteen (15) days after discovery of the inadvertent failure.

5.      **Depositions.** Deposition testimony will be deemed confidential only if it directly references Confidential Information or Highly Confidential Information as defined by this Order and is designated as such when the deposition is taken or within fifteen business days after receipt of the final deposition transcript from the court reporter.   During such fifteen-day review period,

Electronically Filed - BOONE - December 08, 2022 - 03:01 PM

depositions will be treated as Confidential Information, unless the parties are aware that materials designated as Highly Confidential were discussed during the deposition, then the deposition shall be treated as Highly Confidential during such review period.   Such designation must be specific as to the portions of the transcript and/or any exhibits to be protected.

6. **Protection of Confidential Material.**

(a) **General Protections.**   Designated Confidential Information or Highly Confidential Information must be used or disclosed solely for purposes of prosecuting or defending this lawsuit, including any appeals or any other related legal proceeding brought by one of the parties to this litigation.

(b) **Who May View Designated Confidential Information or Highly Confidential Information.**   Except with the prior written consent of the designating party or prior order of the court, designated "CONFIDENTIAL" may only be disclosed to the following persons:

(1)     The parties to this litigation, including any employees, agents, and representatives of the parties;

(2)     Outside counsel engaged by the parties for this litigation and employees and agents of counsel;

(3)     The court and court personnel, including any special master appointed by the court, and members of the jury;

(4)     Court reporters, recorders, and videographers engaged for depositions;

(5)     Any mediator appointed by the court or jointly selected by the parties;

(6)     Any expert witness, outside consultant, or investigator retained specifically in connection with this litigation, but only after such persons have completed the certification contained in Attachment A, Acknowledgment and Agreement to be Bound;

(7)     Any fact witness, including a corporate representative, and his or her counsel, provided that such Confidential Information or Highly

Electronically Filed - BOONE - December 08, 2022 - 03:01 PM

Confidential Information can be shared with such person only for purposes of testimony or preparation of testimony in this case, and only after such persons have completed the certification contained in Attachment A;

(8)    The author or recipient of the document (not including a person who received the document in the course of the litigation);

(9)    Independent providers of document reproduction, electronic discovery, or other litigation services retained or employed specifically in connection with this litigation; and

(10)    Other persons only upon consent of the producing party and on such conditions as the parties may agree.

Any information designated as "HIGHLY CONFIDENTIAL" in accordance with ¶ 3 above shall be disclosed only to persons described in Paragraphs 6(b)(2)-(10).

(c)    **Control of Documents.**   The Parties must take reasonable efforts to prevent unauthorized or inadvertent disclosure of documents designated as containing Confidential Information or Highly Confidential Information pursuant to the terms of this Order.   If any such unauthorized or inadvertent disclosure occurs, the party that inadvertently disclosed such documents must make all reasonable efforts to retrieve the mistakenly disclosed documents and must also notify the producing party of the disclosure within five business days of the date that the party that mistakenly produced such documents learns of the mistaken production.

7.    **Filing of Confidential Information.**   If a party seeks to file any document containing Confidential Information or Highly Confidential Information subject to protection under this Order, that party must take appropriate action to ensure that the document receives proper protection from public disclosure, unless it is the party's own material, in which case it can waive protection. Nothing in this Order will be construed as a prior directive to allow any document to be filed under seal.   The mere designation of information as confidential pursuant to this Order is insufficient to satisfy the court's requirements for filing under seal in light of the

Electronically Filed - BOONE - December 08, 2022 - 03:01 PM

public's qualified right of access to court dockets, and the designating party bears the burden of showing the material should be filed under seal. The Parties understand that the requested documents may be filed under seal only with the permission of the court after proper motion.

If a party seeks to attach or incorporate its own Confidential Information or Highly Confidential Information that it wishes to remain under seal, it must file the pleading under seal or with the necessary redactions, accompanied by a motion to file under seal. The party should then serve the under seal or unredacted version of the pleading on all counsel of record.

If a party seeks to attach or incorporate Confidential Information or Highly Confidential Information that is not its own material, the designating person bears the burden of showing that the material should be filed under seal. In such a circumstance, the filing party must file the material under seal conditionally by filing the document under seal and clearly labeling the face of the pleading as "filed conditionally under seal." The designating person shall then have seven (7) days to file a motion requesting that the material be maintained under seal or filed in redacted form. Any opposition should be filed seven (7) days thereafter. If no motion supporting the sealing is filed, the materials shall be unsealed by the clerk after the time for supporting the sealing has expired.

Filing pleadings or other papers disclosing or containing Confidential Information or Highly Confidential Information under seal does not waive the designated status of the material. The Court will determine how Confidential Information or Highly Confidential Information will be treated during trial and other proceedings as it deems appropriate.

**8.    Challenges to a Confidential Designation.**    A party disagreeing with a designation must give written notice of its specific challenges or objections to the designating person's designation. Upon receipt of the objection, the designating person will then have ten (10)

Electronically Filed - BOONE - December 08, 2022 - 03:01 PM

days to advise the objecting party whether or not it will change the designation, and if not, the reason it believes the challenged designation(s) are valid. The parties must attempt in good faith to resolve any dispute without resort to Court intervention within seven (7) days thereafter. If the Parties are unable to reach an agreement after expiration of this seven (7) day period, it is the designating person's burden to seek judicial intervention and to show why the designation is proper. The designating person must file a motion with the Court explaining the basis for the designation within fourteen (14) days. Within seven (7) days of the filing of any such motion, the objecting party may submit a response setting forth the objection to the designation and why it should be rejected. Upon any such application to the Court by the designating person, the Confidential Information or Highly Confidential Information shall continue to be treated as designated until the Court rules on such issues or the designating person agrees in writing to withdraw the challenged designation. If the Court rules the Confidential Information or Highly Confidential Information is or was incorrectly designated, the designating person must reproduce copies of all such materials without the overruled designation at the designating person's expense, within fourteen (14) days of the Court's order.

9.    **Use of Confidential Documents or Information at Trial or Hearing.**   Nothing in this Order will be construed to affect the use of any document, material, or information at any trial or hearing.   A party that intends to present or anticipates that another party may present Confidential Information or Highly Confidential Information at a hearing or trial must bring that issue to the attention of the court and the other parties without disclosing the Confidential Information or Highly Confidential Information.   The Court may thereafter make such orders as are necessary to govern the use of such documents or information at the hearing or trial.

Electronically Filed - BOONE - December 08, 2022 - 03:01 PM

10.    **Obligations on Conclusion of Litigation.**

(a)    **Order Remains in Effect.**    Unless otherwise agreed or ordered, all provisions of this Order will remain in effect and continue to be binding after conclusion of the litigation.

(b)    **Return of Confidential Documents.**    At the conclusion of the litigation, all material treated as confidential under this Order and not received in evidence shall be returned to the originating party or destroyed.    The Clerk of the Court may return to counsel for the Parties, or destroy, any paper copies of sealed material at the end of the litigation, including any appeals.

(c)    **Retention of Work Product.** Notwithstanding the above requirements to return or destroy documents, counsel may retain attorney work product.    This work product will continue to be confidential under this Order.    An attorney may use his or her own work product in subsequent litigation provided that it does not use, disclose, or otherwise rely on Confidential Information. or Highly Confidential Information for any purpose other than in connection with the prosecution or defense of this litigation.    For the avoidance of doubt, no attorney may use any Confidential Information or Highly Confidential Information to support, in any way, any future cause(s) of action brought by such attorney or on behalf of another client or clients.

11.    **Order Subject to Modification.**    This Order is subject to modification by the court on its own motion or on motion of any party or any other person with standing concerning the subject matter.    The Order must not, however, be modified until the Parties have been given notice and an opportunity to be heard on the proposed modification.

12.    **Enforcement of Protective Order.**    Even after the final disposition of this case, a party or any other person with standing concerning the subject matter may file a motion to seek leave to reopen the case for the limited purpose of enforcing or modifying the provisions of this

Electronically Filed - BOONE - December 08, 2022 - 03:01 PM

Order.

13.     **No Prior Judicial Determination.**    This Order is entered based on the representations and agreements of the Parties and for the purpose of facilitating discovery. Nothing in this Order will be construed or presented as a judicial determination that any document or material designated as Confidential Information or Highly Confidential Information by counsel or the parties is entitled to protection under Mo. Sup. Ct. R. 56.01 or otherwise until such time as the court may rule on a specific document or issue.

14.     **Persons Bound by Protective Order.**    This Order will take effect when entered and is binding upon all counsel of record and their law firms, the parties, and persons made subject to this Order by its terms.

15.     **Applicability to Parties Later Joined.**    If additional persons or entities become parties to this lawsuit, they must not be given access to any Confidential Information or Highly Confidential Information until they execute and file their written agreement to be bound by the provisions of this Order.

16.     **Protections Extended to Non-Party's Confidential Information or Highly Confidential Information.** The Parties agree to extend the provisions of this Protective Order to Confidential Information or Highly Confidential Information produced in this case by any non-party. When serving subpoenas on non-parties, the Parties shall include a copy of this Order.

A party may seek to add Confidential designations to information produced by non-parties by notifying both the producing person and all other parties of the claim of confidentiality at the same time and within 30 days of the date the materials were received by the receiving person.

17.     **Confidential Information or Highly Confidential Information Subpoenaed or Ordered Produced in Other Litigation.**    If a receiving party is served with a subpoena or an

Electronically Filed - BOONE - December 08, 2022 - 03:01 PM

order issued in other litigation that would compel disclosure of any material or document designated in this action as Confidential Information or Highly Confidential Information, the receiving party must so notify the designating party, in writing, immediately and in no event more than three business days after counsel for the receiving party learns of the subpoena or order. Such notification must include a copy of the subpoena or court order.

The receiving party also must immediately inform in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is the subject of this Order, and deliver a copy of this Order promptly to the party in the other action that caused the subpoena to issue.

The purpose of imposing these duties is to alert the interested persons to the existence of this Order and to afford the designating party in this case an opportunity to try to protect its Confidential Information or Highly Confidential Information in the court from which the subpoena or order issued.   The designating party bears the burden and the expense of seeking protection in that court of its Confidential Information or Highly Confidential Information, and nothing in these provisions should be construed as authorizing or encouraging a receiving party in this action to disobey a lawful directive from another court.   The obligations set forth in this paragraph remain in effect while the party has in its possession, custody, or control Confidential Information or Highly Confidential Information designated by the other party to this case.

**18.     Disclosure of Confidential Information or Highly Confidential Information Covered by Attorney-Client Privilege or Work Product.**   Whether inadvertent or otherwise, the disclosure or production of any information or document that is subject to an objection on the basis of attorney-client privilege or work-product protection, including, but not limited to, information or documents that may be considered Confidential Information or Highly Confidential

-10-

Electronically Filed - BOONE - December 08, 2022 - 03:01 PM

Information under the Protective Order, will not be deemed to waive a party's claim to its privileged or protected nature or estop that party or the privilege holder from designating the information or document as attorney-client privileged or subject to the work-product doctrine at a later date.   Any party receiving any such information or document must return or destroy it upon request to the producing party.   Upon receiving such a request as to specific information or documents, the receiving party must return or destroy the information or documents to the producing party within five (5) days, regardless of whether the receiving party agrees with the claim of privilege and/or work-product protection.   Nothing in this Order shall limit a party's obligation to comply with Missouri Supreme Court Rule 56.01(b)(9), including 56.01(b)(9)(A)(ii).

Disclosure of the information or document by the other party prior to such later designation will not be deemed a violation of the provisions of this Order. Nothing in this Order is intended or will be construed to limit a party's right to conduct a review of documents, including electronically-stored information, for relevance, responsiveness, or segregation of privileged or protected information before production.

**IT IS SO ORDERED.**

Dated: _____

_____
Circuit Court Judge

Electronically Filed - BOONE - December 08, 2022 - 03:01 PM

**WE SO MOVE and agree to abide by the terms of this Order**

**STUEVE SIEGEL HANSON LLP**

   */s/ Jordan A. Kane*
Patrick J. Stueve MO Bar # 37682
Ethan M. Lange MO Bar # 67857
Jordan A. Kane MO Bar # 71028
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: 816-714-7100
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

*Counsel for Plaintiffs The Curators of The University
of Missouri and Capital Region Medical Center*

**DOWD BENNETT LLP**

   */s/   Philip A. Cantwell*
Philip A. Cantwell #65505
Robyn Parkinson #72956
7733 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
Tel: 314-889-7300
pcantwell@dowdbennett.com
rparkinson@dowdbennett.com

*Attorneys for CHS TX, Inc. and YesCare Corp.*

**BRADLEY ARANT BOULT CUMMINGS LLP**

   */s/ R. Thomas Warburton*
R. Thomas Warburton (MO Bar No. 65477)
One Federal Place
1819 5th Avenue N.
Birmingham, AL 35203
Tel: 205-521-8987
twarburton@bradley.com

*Counsel for Tehum Care Services, Inc. d/b/a Corizon
Health, Inc.*

-12-

Electronically Filed - BOONE - December 08, 2022 - 03:01 PM

**ATTACHMENT A**

**ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND**

The undersigned hereby acknowledges that he/she has read the Protective Order dated

_____ in the case captioned, *Curators of the Univ. of Mo. v. Corizon Health, Inc.*,

Case No. 22BA-CV01701, and attached hereto, understands the terms thereof, and agrees to be

bound by its terms.   The undersigned submits to the jurisdiction of the Circuit Court of Boone

County, Missouri in matters relating to this Protective Order and understands that the terms of the

Protective Order obligate him/her to use materials designated as Confidential Information or

Highly Confidential Information in accordance with the order solely for the purposes of the above-

captioned action, and not to disclose any such Confidential Information or Highly Confidential

Information to any other person, firm, or concern, except in accordance with the provisions of the

Protective Order.

The undersigned acknowledges that violation of the Protective Order may result in

penalties for contempt of court.

Name:                    _____

Job Title:               _____

Employer:                _____

Business Address:        _____

                         _____

Date:   _____     _____
                                    Signature

Electronically Filed - Boone - December 09, 2022 - 12:22 PM

## IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI

| | |
|---|---|
| **THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 22BA-CV01701-01 |
| v. ) | |
| ) | |
| **TEHUM CARE SERVICES, INC. d/b/a CORIZON HEALTH, INC.,** ) | |
| ) | |
| **CHS TX, Inc.,** ) | |
| ) | |
| **and YESCARE CORP.,** ) | |
| ) | |
| Defendants. ) | |

## MOTION FOR ADMISSION
### *PRO HAC VICE* OF SAMUEL P. HERSHEY

COMES NOW Philip A. Cantwell, an attorney admitted before the bar of the State of Missouri, and pursuant to Missouri Supreme Court Rule 9.03, respectfully requests the admission *pro hac vice* of Samuel P. Hershey so that he will be permitted to practice before this Court in this matter as counsel for Defendants CHS TX, Inc. and YesCare Corp. In support of this motion, I submit the following information as required by Rule 9.03:

(a)     Samuel P. Hershey is a member of the bar of the State of New York and has been a member since 2013.  His New York bar number is 5100854.  He is also admitted to practice in the United States District Court for the Eastern District of New York, the United States District Court for the Southern District of New York, the United States District Court for the Eastern District of Michigan, the United States Court of Appeals for the District of Columbia Circuit, the United States Court of Appeals for the Second Circuit, the United States Court of Appeals for the

Electronically Filed - Boone - December 09, 2022 - 12:22 PM

Fifth Circuit, and the United States Court of Appeals for the Sixth Circuit.  He is a member in good standing of each of these bars.

(b)      Neither Mr. Hershey nor, to the best of my knowledge, information, and belief, any member of his firm, White & Case LLP, is under suspension or disbarment from any such court; and

(c)      I, Philip A. Cantwell, am a member of the Missouri Bar with an office within the State of Missouri and will be associated with Mr. Hershey in this case.  My law firm, Dowd Bennett LLP, already appears as counsel of record for Defendants CHS TX, Inc. and YesCare Corp.

(d)      Mr. Hershey agrees, by his appearance, to comply with the Rules of Professional Conduct as set forth in Rule 4 and become subject to discipline by the courts of this state.

(e)      Mr. Hershey has tendered the filing fee required by Missouri Supreme Court Rule 6.01(m) to the Clerk of the Missouri Supreme Court in advance of filing this Motion, and a receipt for that fee is attached hereto as Exhibit A and a Certificate of Good Standing is attached hereto as Exhibit B.  He has submitted an Entry of Appearance for filing herein in the event this motion is granted.

For the foregoing reasons, movant respectfully requests that this motion be granted and that Mr. Hershey be admitted pro hac vice to appear in the instant matter and to accept filing of Mr. Hershey's Entry of Appearance herein.

Electronically Filed - Boone - December 09, 2022 - 12:22 PM

Dated:  December 9, 2022                                Respectfully submitted,

                                                       DOWD BENNETT LLP


                                                       By: */s/ Philip A. Cantwell*
                                                           Philip A. Cantwell, #65505
                                                           Robyn Parkinson, #72956
                                                           7733 Forsyth Blvd., Suite 1900
                                                           St. Louis, Missouri 63105
                                                           (314) 889-7300 (telephone)
                                                           (314) 863-2111 (facsimile)
                                                           pcantwell@dowdbennett.com
                                                           rparkinson@dowdbennett.com

                                                       *Attorneys for CHS TX, Inc. and YesCare Corp.*

Electronically Filed - Boone - December 09, 2022 - 12:22 PM

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 9th day of December, 2022, a true and correct copy of the foregoing motion was served via ECMF filing on all attorneys of record.

*/s/ Philip A. Cantwell*

Electronically Filed - BOONE - December 08, 2022 - 03:01 PM

## IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI

THE CURATORS OF THE UNIVERSITY OF ⟩
MISSOURI and CAPITAL REGION ⟩
MEDICAL CENTER, ⟩
⟩
       Plaintiffs, ⟩    Case No. 22BA-CV01701
⟩
v. ⟩
⟩    Division 4
TEHUM CARE SERVICE, INC. d/b/a ⟩
CORIZON HEALTH, INC., CHS TX, INC., ⟩
and YESCARE CORP., ⟩
⟩
⟩
       Defendants. ⟩

## STIPULATED PROTECTIVE ORDER

Plaintiffs, Tehum Care Services, Inc. d/b/a Corizon Health, Inc., CHS TX, Inc. and YesCare Corp. (together, the "Parties") agree during the course of discovery it may be necessary to disclose certain confidential information relating to the subject matter of this action. They agree certain categories of such information should be treated as confidential, protected from disclosure outside this litigation, and used only for purposes of prosecuting or defending this action and any appeals. The Parties jointly request entry of a protective order to limit the disclosure, dissemination, and use of certain identified categories of confidential information.

The parties assert in support of their request that protection of the identified categories of confidential information is necessary, given the nature of this suit, because the parties anticipate that discovery will likely seek private information from both parties and nonparties, including, but not limited to, protected health information regarding patients treated by any party in this case.

For good cause shown under Missouri Supreme Court Rule 56.01(c), the Court grants the Parties' joint request and hereby enters the following Protective Order:

Electronically Filed - BOONE - December 08, 2022 - 03:01 PM

1.    **Scope.**   All documents and materials produced in the course of discovery of this case, including initial disclosures, responses to discovery requests, all deposition testimony and exhibits, and information derived directly therefrom (hereinafter, collectively, "documents"), are subject to this Order as set forth below.

2.    **Definition of Confidential Information.**   As used in this Order, "Confidential Information" is defined as information that the producing party designates in good faith has been previously maintained in a confidential manner and should be protected from disclosure and use outside the litigation because its disclosure and use are restricted by statute or could potentially cause harm to the interests of the disclosing party or nonparties.   As used in this Order, "Highly Confidential" information is defined as information which, if disclosed or disseminated, is likely to cause commercial, financial, or business harm to the interests of the disclosing party or nonparties.

For purposes of this Order, the parties will limit their designation of "Confidential Information" and "Highly Confidential Information" to the following categories of information or documents:

- Protected Health Information of any patients treated by any party in this action.; and
- Information that the producing party believes in good faith to contain or reflect trade secrets or other confidential, proprietary, and/or sensitive research, development, technical, technological, customer, marketing, financial, commercial, operational or personnel information.

Information or documents that are available to the public may not be designated as Confidential Information or Highly Confidential Information.

3.    **Form and Timing of Designation.**   The producing party may designate documents as containing Confidential Information or Highly Confidential Information and therefore subject to protection under this Order by marking or placing the words

Electronically Filed - BOONE - December 08, 2022 - 03:01 PM

"CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" or "HIGHLY CONFIDENTIAL – SUBJECT TO PROTECTIVE ORDER" (hereinafter, "the marking") on the document and on all copies in a manner that will not interfere with the legibility of the document. As used in this Order, "copies" includes electronic images, duplicates, extracts, summaries, or descriptions that contain the Confidential Information or Highly Confidential Information. The marking will be applied prior to or at the time the documents are produced or disclosed. Applying the marking to a document does not mean that the document has any status or protection by statute or otherwise except to the extent and for the purposes of this Order. Copies that are made of any designated documents must also bear the marking, except that indices, electronic databases, or lists of documents that do not contain substantial portions or images of the text of marked documents and do not otherwise disclose the substance of the Confidential Information or Highly Confidential Information are not required to be marked. By marking a designated document as confidential, the designating attorney or party appearing *pro se* thereby certifies that the document contains Confidential Information or Highly Confidential Information as defined in this Order.

4.      **Inadvertent Failure to Designate.** Inadvertent failure to designate any document or material as containing Confidential Information or Highly Confidential Information will not constitute a waiver of an otherwise valid claim of confidentiality pursuant to this Order, so long as a claim of confidentiality is asserted within fifteen (15) days after discovery of the inadvertent failure.

5.      **Depositions.** Deposition testimony will be deemed confidential only if it directly references Confidential Information or Highly Confidential Information as defined by this Order and is designated as such when the deposition is taken or within fifteen business days after receipt of the final deposition transcript from the court reporter. During such fifteen-day review period,

Electronically Filed - BOONE - December 08, 2022 - 03:01 PM

depositions will be treated as Confidential Information, unless the parties are aware that materials designated as Highly Confidential were discussed during the deposition, then the deposition shall be treated as Highly Confidential during such review period. Such designation must be specific as to the portions of the transcript and/or any exhibits to be protected.

6.     **Protection of Confidential Material.**

(a)     **General Protections.**  Designated Confidential Information or Highly Confidential Information must be used or disclosed solely for purposes of prosecuting or defending this lawsuit, including any appeals or any other related legal proceeding brought by one of the parties to this litigation.

(b)     **Who May View Designated Confidential Information or Highly Confidential Information.**  Except with the prior written consent of the designating party or prior order of the court, designated "CONFIDENTIAL" may only be disclosed to the following persons:

(1)     The parties to this litigation, including any employees, agents, and representatives of the parties;

(2)     Outside counsel engaged by the parties for this litigation and employees and agents of counsel;

(3)     The court and court personnel, including any special master appointed by the court, and members of the jury;

(4)     Court reporters, recorders, and videographers engaged for depositions;

(5)     Any mediator appointed by the court or jointly selected by the parties;

(6)     Any expert witness, outside consultant, or investigator retained specifically in connection with this litigation, but only after such persons have completed the certification contained in Attachment A, Acknowledgment and Agreement to be Bound;

(7)     Any fact witness, including a corporate representative, and his or her counsel, provided that such Confidential Information or Highly

Electronically Filed - BOONE - December 08, 2022 - 03:01 PM

Confidential Information can be shared with such person only for purposes of testimony or preparation of testimony in this case, and only after such persons have completed the certification contained in Attachment A;

(8)     The author or recipient of the document (not including a person who received the document in the course of the litigation);

(9)     Independent providers of document reproduction, electronic discovery, or other litigation services retained or employed specifically in connection with this litigation; and

(10)    Other persons only upon consent of the producing party and on such conditions as the parties may agree.

Any information designated as "HIGHLY CONFIDENTIAL" in accordance with ¶ 3 above shall be disclosed only to persons described in Paragraphs 6(b)(2)-(10).

(c)     **Control of Documents.**   The Parties must take reasonable efforts to prevent unauthorized or inadvertent disclosure of documents designated as containing Confidential Information or Highly Confidential Information pursuant to the terms of this Order.   If any such unauthorized or inadvertent disclosure occurs, the party that inadvertently disclosed such documents must make all reasonable efforts to retrieve the mistakenly disclosed documents and must also notify the producing party of the disclosure within five business days of the date that the party that mistakenly produced such documents learns of the mistaken production.

7.     **Filing of Confidential Information.**   If a party seeks to file any document containing Confidential Information or Highly Confidential Information subject to protection under this Order, that party must take appropriate action to ensure that the document receives proper protection from public disclosure, unless it is the party's own material, in which case it can waive protection. Nothing in this Order will be construed as a prior directive to allow any document to be filed under seal.   The mere designation of information as confidential pursuant to this Order is insufficient to satisfy the court's requirements for filing under seal in light of the

Electronically Filed - BOONE - December 08, 2022 - 03:01 PM

public's qualified right of access to court dockets, and the designating party bears the burden of showing the material should be filed under seal. The Parties understand that the requested documents may be filed under seal only with the permission of the court after proper motion.

If a party seeks to attach or incorporate its own Confidential Information or Highly Confidential Information that it wishes to remain under seal, it must file the pleading under seal or with the necessary redactions, accompanied by a motion to file under seal. The party should then serve the under seal or unredacted version of the pleading on all counsel of record.

If a party seeks to attach or incorporate Confidential Information or Highly Confidential Information that is not its own material, the designating person bears the burden of showing that the material should be filed under seal. In such a circumstance, the filing party must file the material under seal conditionally by filing the document under seal and clearly labeling the face of the pleading as "filed conditionally under seal." The designating person shall then have seven (7) days to file a motion requesting that the material be maintained under seal or filed in redacted form. Any opposition should be filed seven (7) days thereafter. If no motion supporting the sealing is filed, the materials shall be unsealed by the clerk after the time for supporting the sealing has expired.

Filing pleadings or other papers disclosing or containing Confidential Information or Highly Confidential Information under seal does not waive the designated status of the material. The Court will determine how Confidential Information or Highly Confidential Information will be treated during trial and other proceedings as it deems appropriate.

**8.    Challenges to a Confidential Designation.**    A party disagreeing with a designation must give written notice of its specific challenges or objections to the designating person's designation. Upon receipt of the objection, the designating person will then have ten (10)

Electronically Filed - BOONE - December 08, 2022 - 03:01 PM

days to advise the objecting party whether or not it will change the designation, and if not, the reason it believes the challenged designation(s) are valid. The parties must attempt in good faith to resolve any dispute without resort to Court intervention within seven (7) days thereafter. If the Parties are unable to reach an agreement after expiration of this seven (7) day period, it is the designating person's burden to seek judicial intervention and to show why the designation is proper. The designating person must file a motion with the Court explaining the basis for the designation within fourteen (14) days. Within seven (7) days of the filing of any such motion, the objecting party may submit a response setting forth the objection to the designation and why it should be rejected. Upon any such application to the Court by the designating person, the Confidential Information or Highly Confidential Information shall continue to be treated as designated until the Court rules on such issues or the designating person agrees in writing to withdraw the challenged designation. If the Court rules the Confidential Information or Highly Confidential Information is or was incorrectly designated, the designating person must reproduce copies of all such materials without the overruled designation at the designating person's expense, within fourteen (14) days of the Court's order.

9.      **Use of Confidential Documents or Information at Trial or Hearing.**   Nothing in this Order will be construed to affect the use of any document, material, or information at any trial or hearing.   A party that intends to present or anticipates that another party may present Confidential Information or Highly Confidential Information at a hearing or trial must bring that issue to the attention of the court and the other parties without disclosing the Confidential Information or Highly Confidential Information.   The Court may thereafter make such orders as are necessary to govern the use of such documents or information at the hearing or trial.

Electronically Filed - BOONE - December 08, 2022 - 03:01 PM

10. **Obligations on Conclusion of Litigation.**

(a) **Order Remains in Effect.** Unless otherwise agreed or ordered, all provisions of this Order will remain in effect and continue to be binding after conclusion of the litigation.

(b) **Return of Confidential Documents.** At the conclusion of the litigation, all material treated as confidential under this Order and not received in evidence shall be returned to the originating party or destroyed. The Clerk of the Court may return to counsel for the Parties, or destroy, any paper copies of sealed material at the end of the litigation, including any appeals.

(c) **Retention of Work Product.** Notwithstanding the above requirements to return or destroy documents, counsel may retain attorney work product. This work product will continue to be confidential under this Order. An attorney may use his or her own work product in subsequent litigation provided that it does not use, disclose, or otherwise rely on Confidential Information. or Highly Confidential Information for any purpose other than in connection with the prosecution or defense of this litigation. For the avoidance of doubt, no attorney may use any Confidential Information or Highly Confidential Information to support, in any way, any future cause(s) of action brought by such attorney or on behalf of another client or clients.

11. **Order Subject to Modification.** This Order is subject to modification by the court on its own motion or on motion of any party or any other person with standing concerning the subject matter. The Order must not, however, be modified until the Parties have been given notice and an opportunity to be heard on the proposed modification.

12. **Enforcement of Protective Order.** Even after the final disposition of this case, a party or any other person with standing concerning the subject matter may file a motion to seek leave to reopen the case for the limited purpose of enforcing or modifying the provisions of this

Electronically Filed - BOONE - December 08, 2022 - 03:01 PM

Order.

13. **No Prior Judicial Determination.**   This Order is entered based on the representations and agreements of the Parties and for the purpose of facilitating discovery. Nothing in this Order will be construed or presented as a judicial determination that any document or material designated as Confidential Information or Highly Confidential Information by counsel or the parties is entitled to protection under Mo. Sup. Ct. R. 56.01 or otherwise until such time as the court may rule on a specific document or issue.

14. **Persons Bound by Protective Order.**   This Order will take effect when entered and is binding upon all counsel of record and their law firms, the parties, and persons made subject to this Order by its terms.

15. **Applicability to Parties Later Joined.**   If additional persons or entities become parties to this lawsuit, they must not be given access to any Confidential Information or Highly Confidential Information until they execute and file their written agreement to be bound by the provisions of this Order.

16. **Protections Extended to Non-Party's Confidential Information or Highly Confidential Information.** The Parties agree to extend the provisions of this Protective Order to Confidential Information or Highly Confidential Information produced in this case by any non-party. When serving subpoenas on non-parties, the Parties shall include a copy of this Order.

A party may seek to add Confidential designations to information produced by non-parties by notifying both the producing person and all other parties of the claim of confidentiality at the same time and within 30 days of the date the materials were received by the receiving person.

17. **Confidential Information or Highly Confidential Information Subpoenaed or Ordered Produced in Other Litigation.**   If a receiving party is served with a subpoena or an

Electronically Filed - BOONE - December 08, 2022 - 03:01 PM

order issued in other litigation that would compel disclosure of any material or document designated in this action as Confidential Information or Highly Confidential Information, the receiving party must so notify the designating party, in writing, immediately and in no event more than three business days after counsel for the receiving party learns of the subpoena or order. Such notification must include a copy of the subpoena or court order.

The receiving party also must immediately inform in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is the subject of this Order, and deliver a copy of this Order promptly to the party in the other action that caused the subpoena to issue.

The purpose of imposing these duties is to alert the interested persons to the existence of this Order and to afford the designating party in this case an opportunity to try to protect its Confidential Information or Highly Confidential Information in the court from which the subpoena or order issued.   The designating party bears the burden and the expense of seeking protection in that court of its Confidential Information or Highly Confidential Information, and nothing in these provisions should be construed as authorizing or encouraging a receiving party in this action to disobey a lawful directive from another court.   The obligations set forth in this paragraph remain in effect while the party has in its possession, custody, or control Confidential Information or Highly Confidential Information designated by the other party to this case.

**18.     Disclosure of Confidential Information or Highly Confidential Information Covered by Attorney-Client Privilege or Work Product.**   Whether inadvertent or otherwise, the disclosure or production of any information or document that is subject to an objection on the basis of attorney-client privilege or work-product protection, including, but not limited to, information or documents that may be considered Confidential Information or Highly Confidential

Electronically Filed - BOONE - December 08, 2022 - 03:01 PM

Information under the Protective Order, will not be deemed to waive a party's claim to its privileged or protected nature or estop that party or the privilege holder from designating the information or document as attorney-client privileged or subject to the work-product doctrine at a later date.   Any party receiving any such information or document must return or destroy it upon request to the producing party.   Upon receiving such a request as to specific information or documents, the receiving party must return or destroy the information or documents to the producing party within five (5) days, regardless of whether the receiving party agrees with the claim of privilege and/or work-product protection.   Nothing in this Order shall limit a party's obligation to comply with Missouri Supreme Court Rule 56.01(b)(9), including 56.01(b)(9)(A)(ii).

Disclosure of the information or document by the other party prior to such later designation will not be deemed a violation of the provisions of this Order. Nothing in this Order is intended or will be construed to limit a party's right to conduct a review of documents, including electronically-stored information, for relevance, responsiveness, or segregation of privileged or protected information before production.

**IT IS SO ORDERED.**

Dated:  **_12/9/2022_**

Honorable Joshua C. Devine, Division IV

COURT SEAL OF

BOONE COUNTY

Electronically Filed - BOONE - December 08, 2022 - 03:01 PM

**WE SO MOVE and agree to abide by the terms of this Order**

**STUEVE SIEGEL HANSON LLP**

   /s/ Jordan A. Kane
Patrick J. Stueve MO Bar # 37682
Ethan M. Lange MO Bar # 67857
Jordan A. Kane MO Bar # 71028
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: 816-714-7100
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

*Counsel for Plaintiffs The Curators of The University of Missouri and Capital Region Medical Center*

**DOWD BENNETT LLP**

   /s/   Philip A. Cantwell
Philip A. Cantwell #65505
Robyn Parkinson #72956
7733 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
Tel: 314-889-7300
pcantwell@dowdbennett.com
rparkinson@dowdbennett.com

*Attorneys for CHS TX, Inc. and YesCare Corp.*

**BRADLEY ARANT BOULT CUMMINGS LLP**

   /s/ R. Thomas Warburton
R. Thomas Warburton (MO Bar No. 65477)
One Federal Place
1819 5th Avenue N.
Birmingham, AL 35203
Tel: 205-521-8987
twarburton@bradley.com

*Counsel for Tehum Care Services, Inc. d/b/a Corizon Health, Inc.*

Electronically Filed - BOONE - December 08, 2022 - 03:01 PM

**ATTACHMENT A**

**ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND**

The undersigned hereby acknowledges that he/she has read the Protective Order dated

_____ in the case captioned, *Curators of the Univ. of Mo. v. Corizon Health, Inc.*,

Case No. 22BA-CV01701, and attached hereto, understands the terms thereof, and agrees to be

bound by its terms.   The undersigned submits to the jurisdiction of the Circuit Court of Boone

County, Missouri in matters relating to this Protective Order and understands that the terms of the

Protective Order obligate him/her to use materials designated as Confidential Information or

Highly Confidential Information in accordance with the order solely for the purposes of the above-

captioned action, and not to disclose any such Confidential Information or Highly Confidential

Information to any other person, firm, or concern, except in accordance with the provisions of the

Protective Order.

The undersigned acknowledges that violation of the Protective Order may result in

penalties for contempt of court.

Name: _____

Job Title: _____

Employer: _____

Business Address: _____

_____

Date: _____    _____

Signature

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

## IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI

**THE CURATORS OF THE UNIVERSITY OF
MISSOURI and CAPITAL REGION
MEDICAL CENTER,**

      Plaintiffs,

v.

**TEHUM CARE SERVICES, INC. d/b/a
CORIZON HEALTH, INC.,**

**CHS TX, Inc.,**

**and YESCARE CORP.,**

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 22BA-CV01701-01

Division 4

### CHS TX, INC. AND YESCARE CORP.'S MOTION TO DISMISS

Pursuant to Rule 55.27(a)(1) of the Missouri Rules of Civil Procedure, CHS TX, Inc. ("CHS TX") and YesCare Corp. ("YesCare") respectfully move to dismiss Plaintiffs' *First Amended Petition* (the "Amended Petition").

1.    On October 7, 2022, Plaintiffs, the Curators of the University of Missouri and Capital Region Medical Center, filed their Amended Petition seeking to pull CHS TX and YesCare into Plaintiffs' lawsuit against Tehum Care Services, Inc. d/b/a Corizon Health, Inc. ("Corizon Health"). But CHS TX and YesCare are not proper parties to the action. The underlying dispute in this lawsuit is a simple breach of contract claim against *Corizon Health*. It is *Corizon Health* alone who, allegedly, owes Plaintiffs approximately $12 million in unpaid claims, and it is *Corizon Health* alone who communicated with Plaintiffs in a manner they allege was fraudulent.

2.    But more than that, this lawsuit represents an attempt by Plaintiffs to abrogate the laws of another state. The novel theory underlying Plaintiffs' Amended Petition is that, so long as

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

a single creditor of a Texas company resides in Missouri, a restructuring of that company (and other Texas corporate entities) under Texas law can properly be challenged—and undone—by a Missouri court.  This is something no Missouri court has ever done.  To be clear, Plaintiffs' own documents show that Corizon Health adhered to Texas law in every way in executing the Texas-law divisional merger—and Plaintiffs do not claim otherwise.  Nonetheless, Plaintiffs asks this Court to provide the unprecedented relief of undoing a lawful transaction by entities incorporated in another state under that state's laws.

3.    Additionally, Plaintiffs' Amended Petition cannot provide them relief as this Court lacks personal jurisdiction over CHS TX and YesCare; the Hospital Services Agreement signed between Plaintiffs and Corizon Health does not extend to CHS TX and YesCare; Texas law does not allow successor liability in these circumstances; and Plaintiffs have failed to state a claim for their fraud and conspiracy allegations. Accordingly, this Court should dismiss their Amended Petition in its entirety.

4.    CHS TX and YesCare adopt and incorporate herein by reference their Suggestions in Support of their Motion to Dismiss, filed contemporaneously herewith.

WHEREFORE, CHS TX and YesCare respectively move this Court to grant their Motion to Dismiss and enter its Judgment and Order dismissing Plaintiffs' Petition WITH PREJUDICE, along with such other and further relief as this Court deems just and proper.

Dated: December 9, 2022

Respectfully submitted,

**DOWD BENNETT LLP**

*/s/ Philip A. Cantwell*
Philip A. Cantwell #65505
Robyn Parkinson #72956
7733 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
(314) 889-7300 (telephone)

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

(314) 863-2111 (facsimile)
pcantwell@dowdbennett.com
rparkinson@dowdbennett.com

**WHITE & CASE LLP**

Samuel P. Hershey (*pro hac vice pending*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
Email: sam.hershey@whitecase.com

*Attorneys for CHS TX, Inc. and YesCare Corp.*

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2022 the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record:

Patrick J. Stueve
Ethan M. Lange
Jordan A. Kane
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

Thomas R. Warburton
twarburton@bradley.com

By:   /s/ Philip A. Cantwell

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

**IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI**

| | | |
|---|---|---|
| **THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER,** | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 22BA-CV01701-01 |
| v. | ) | |
| | ) | Division 4 |
| **TEHUM CARE SERVICES, INC. d/b/a CORIZON HEALTH, INC.,** | ) ) | |
| | ) | |
| **CHS TX, Inc.,** | ) | |
| | ) | |
| **and YESCARE CORP.,** | ) | |
| | ) | |
| Defendants. | ) | |

**CHS TX, INC. AND YESCARE CORP.'S SUGGESTIONS IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED PETITION**

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

## TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS.................................................................................................. i

PRELIMINARY STATEMENT ......................................................................................1

BACKGROUND .............................................................................................................3

I.      Corizon Health's Agreement with Plaintiffs..........................................................3

II.     The 2022 Corporate Restructuring.........................................................................5

        i.      The Combination Merger .............................................................................5

        ii.     The Divisional Merger .................................................................................6

LEGAL STANDARD......................................................................................................9

ARGUMENT ..................................................................................................................9

I.      The Court Lacks Personal Jurisdiction over CHS TX and YesCare. ......................9

        A.      CHS TX and YesCare Are Not Subject to General Personal Jurisdiction in
                Missouri. ...................................................................................................10

        B.      CHS TX Is Not Subject to Specific Personal Jurisdiction in Missouri.................11

II.     Plaintiffs' Claims Based on Its Contract with Corizon Health Cannot Support
        Liability With Respect to CHS TX or YesCare (Counts I, II and III). ............................13

III.    Plaintiffs Fail to State a Claim for Successor Liability (Counts III, IV, V and VI). .........18

        A.      Texas Law, Which Governs the Determination of Successor Liability,
                Provides That Liability for Plaintiffs' Claims Remain with Corizon Health. .......18

        B.      Plaintiffs' Successor Liability Theories are Unavailing .......................................19

                1.      Texas Law provides that Corizon Health is Exclusively Liable on
                        Plaintiffs' Claims (Count III)..............................................................19
                2.      Plaintiffs Fail to State a De Facto Merger Claim (Count IV). ...................20
                3.      Plaintiffs Fail to State a Claim of Mere Continuation (Count V). .............22
                4.      Plaintiffs' "Intent to Defraud Creditors" Claim Cannot Provide the
                        Basis for Successor Liability (Count VI)....................................................22

IV.     Plaintiffs Have Failed to State a Claim for Common Law Fraud or any Conspiracy
        Claim (Counts VII, VIII, IX, X and XI). ............................................................23

                1.      Plaintiffs Fail to State a Claim for Common Law Fraud (Count VII). .................24

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

2.     Plaintiffs Fail to State a Claim for Fraudulent Transfer or Constructive Fraudulent Transfer (Counts VIII and X). ........................................................... 25

3.     Plaintiffs' Conspiracy Claims Fail as Matter of Law (Counts VII, IX and XI). ........................................................................................................................ 28

CONCLUSION ........................................................................................................................ 30

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

# TABLE OF AUTHORITIES

## CASES

*1400 FM 1417 LLC v. CertainTeed Corp.*,
 No. 4:21-cv-00847, 2022 U.S. Dist. LEXIS 55548 (E.D. Tex. Mar. 28, 2022) .....................19

*Acetylene Gas Co. v. Oliver*,
 939 S.W.2d 404 (Mo. App. E.D. 1996) .......................................................................17

*Allied Home Mortg. Corp. v. Donovan*,
 830 F. Supp. 2d 223 (S.D. Tex. 2011) .........................................................................22

*Bep, Inc. v. Atkinson*,
 174 F. Supp. 2d 400 (D. Md. 2001) .............................................................................29

*Bosch v. St. Louis Healthcare Network*,
 41 S.W.3d 462 (Mo. banc 2001) ...................................................................................9

*Bouchillon v. Deutz-Fahr*,
 268 F. Supp. 3d 890 (N.D. Miss. 207) ........................................................................18

*Bristol-Myers Squibb Co. v. Superior Court*,
 137 S. Ct. 1773 (2017) ................................................................................................11

*Central Dist. Alarm v. Hal-Tuc*,
 886 S.W.2d 210 (Mo. App. E.D. 1994) .......................................................................25

*Channel Clarity Holdings LLC v. Klaas (In re Channel Clarity Holdings LLC)*,
 No. 21-bk-07972, 2022 Bankr. LEXIS 1985 (Bankr. N.D. Ill. July 18, 2022) .....................22

*Creative Walking, Inc. v. American States Ins. Co.*,
 25 S.W.3d 682 (Mo. App. E.D. 2000) ....................................................................29, 30

*Dunn Indus. Grp., Inc. v. City of Sugar Creek*,
 112 S.W.3d 421 (Mo. banc 2003) ...........................................................................13, 16

*Flittie v. Solem*,
 775 F.2d 933 (8th Cir. 1985) .......................................................................................29

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
 564 U.S. 915 (2011) ...............................................................................................10, 12

*Hallmark Cards, Inc. v. Monitor Clipper Partners*,
 LLC, 757 F. Supp. 2d 904 (W.D. Mo. 2010) ..............................................................12

*Hampton v. American Family Mut. Ins. Co.*,
 624 S.W.2d 497 (Mo. App. E.D. 1981) .......................................................................17

i

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

*Hertz Corp. v. Friend*,
    559 U.S. 77 (2010) ..................................................................................................10

*Higgins v. Ferrari*,
    474 S.W.3d 630 (Mo. App. W.D. 2015) ...............................................26, 27, 28

*In re 1701 Commerce, LLC*,
    511 B.R. .......................................................................................................23, 27

*In re Bridge Info. Sys.*,
    325 B.R. 824 (Bankr. E.D. Mo. 2005) ...................................................................19

*Jennings v. SSM Health Care St. Louis*,
    355 S.W.3d 526 (Mo. App. E.D. 2011) ...........................................................25, 27

*Jones v. Shooshan*,
    855 F. Supp. 2d 594 (E.D. Va. 2012) .....................................................................29

*Konopasek v. Konopasek*,
    No. SD37388, 2022 Mo. App. LEXIS 575 (Mo. App. S.D. Sept. 13, 2022) ..........27

*Lockheed Martin Corp. v. Gordon*,
    16 S.W.3d 127 (Tex. App.—Houston [1st Dist.] 2000) ........................................21

*Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*,
    No. 11-cv-02861-SC, 2013 U.S. Dist. LEXIS 76269 (N.D. Cal. May 30, 2013) ...................29

*Mo. Highways & Transp. Comm'n v. Westgrove Corp.*,
    364 S.W.3d 695 (Mo. App. E.D. 2012) .................................................................24

*Montgomery Bank, N.A. v. First Horizon Home Loan Corp.*,
    No. 4:09CV01334 ERW, 2010 U.S. Dist. LEXIS 40600 (E.D. Mo. Apr. 26, 2010) .............18

*Motor Components, LLC v. Devon Energy Corp.*,
    338 S.W. 3d 198 (Tex. App.—Houston [14th Dist.] 2011) ....................................22

*Mudgett v. Paxson Mach. Co.*,
    709 S.W.2d 755 (Tex. App.—Corpus Christi [13th Dist.] 1986) ...........................22

*Park Ridge Assocs. v. U.M.B. Bank*,
    613 S.W.3d 456 (Mo. App. E.D. 2020) .................................................................24

*Payne v. Sec. Sav. & Loan Ass'n, F.A.*,
    924 F.2d 109 (7th Cir. 1991) .................................................................................18

*Renaissance Leasing, LLC v. Vermeer Mfg. Co.*,
    322 S.W.3d 112 (Mo. banc 2010) ..........................................................................24

*Schauer v. Gundaker Movits Real Estate Co.*,
    813 S.W.2d 112 (Mo. App. E.D. 1991) .................................................................25

*Shapolsky v. Brewton*,
    56 S.W.3d 120 (Tex. App.—Houston [14th Dist.] 2001)................................................21, 23

*State ex rel. Cedar Crest Apartments, LLC v. Grate*,
    577 S.W.3d 490 (Mo. banc 2017)..........................................................11, 12, 13, 18

*State ex rel. Norfolk S. Ry. Co. v. Dolan*,
    512 S.W.3d 41 (Mo. banc 2017)..........................................................10, 11

*State ex rel. Sperandio v. Clymer*,
    581 S.W.2d 377 (Mo. banc 1979)..........................................................13

*State v. May*,
    142 Mo. 135 (1897)..........................................................29

*TFT Galveston Portfolio, Ltd. v. C.I.R.*,
    No. 1082-12,144 T.C. 96 (T.C. Feb. 26, 2015)..........................................................22

*Travis v. Newark Corp. (In re A.T.)*,
    No. 4:16-VC-448-SNLJ, 2017 U.S. Dist. LEXIS 182548 (E.D. Mo. Nov. 3, 2017)..............17

*Yerington v. Riss*,
    374 S.W.2d 52 (Mo. banc 1964)..........................................................25

## STATUTES AND OTHER AUTHORITIES

Curtis W. Huff, *The New Texas Business Corporation Act Merger Provisions*, 21 St. Mary's
    L.J. 109, 110 (1989)..........................................................19

6 Del. C. § 18-217(b)-(c)..........................................................19

15 Pa. Cons. Stat. § 361..........................................................19

Ariz. Rev. Stat. § 29-2601..........................................................19

RSMo 2022 § 351.582..........................................................18, 26

RSMo 2022 § 428.024..........................................................26, 28

RSMo 2016 § 506.500..........................................................11, 13

Missouri Rules of Civil Procedure Rule 55.27(a)(1)..........................................................1

Mo. Sup. Ct. R. 55.15..........................................................9, 25, 27

Restatement (Second) of Conflict of Laws § 302..........................................................19

Tex. Bus. Orgs. Code § 10.008..........................................................Passim

Tex. Bus. Orgs. Code § 10.254..........................................................21, 22, 23

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

Pursuant to Rule 55.27(a)(1) of the Missouri Rules of Civil Procedure, CHS TX, Inc. ("CHS TX") and YesCare Corp. ("YesCare") respectfully state the following Suggestions in Support of their Motion to Dismiss Plaintiffs' *First Amended Petition* (the "Amended Petition"). For the reasons discussed below, the Court should dismiss Plaintiffs' Amended Petition with respect to CHS TX and YesCare.

## PRELIMINARY STATEMENT

1.      On October 7, 2022 Plaintiffs, the Curators of the University of Missouri and Capital Region Medical Center, filed their Amended Petition seeking to pull CHS TX and YesCare into Plaintiffs' lawsuit against Tehum Care Services, Inc. d/b/a Corizon Health, Inc. ("Corizon Health").  But CHS TX and YesCare are not proper parties to this action.  The underlying dispute in this lawsuit is a simple breach of contract claim against ***Corizon Health***.  It is ***Corizon Health*** alone who allegedly owes Plaintiffs approximately $12 million in unpaid claims, and it is ***Corizon Health*** alone who communicated with Plaintiffs in a manner that they allege was fraudulent.

2.      But more than that, this lawsuit represents an attempt by Plaintiffs to abrogate the laws of another state.  The novel theory underlying Plaintiffs' Amended Petition is that, so long as a single creditor of a Texas company resides in Missouri, a restructuring of that company (and other Texas corporate entities) under Texas law can properly be challenged—and undone—by a Missouri court.  This is something no Missouri court has ever done.  To be clear, Plaintiffs' own documents show that Corizon Health adhered to Texas law in every way in executing the Texas-law divisional merger—and Plaintiffs do not claim otherwise.  Nonetheless, Plaintiffs asks this Court to provide the unprecedented relief of undoing a lawful transaction by entities incorporated in another state under that state's laws.

3.      This Court should decline that invitation.  Rather, it should dismiss the Amended Petition in its entirety with respect to CHS TX and YesCare for at least five reasons:

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

4. ***First***, this Court lacks personal jurisdiction over both YesCare and CHS TX. Plaintiffs do not allege facts sufficient to establish either general or specific jurisdiction over either of the proposed new defendants. Nor can they, because no such facts exist. Neither entity is "at home" in Missouri. Rather, both have their principal place of business in Tennessee, and are incorporated in Texas. YesCare has no contacts with Missouri whatsoever, and CHS TX has only a single contract in Missouri that is unrelated to Plaintiffs' lawsuit. The Missouri long-arm statute does not allow Plaintiffs to hale YesCare or CHS TX into this Court under these circumstances.

5. ***Second***, the Hospital Services Agreement between Plaintiffs and Corizon Health provides no basis to sue CHS TX and YesCare in this Court. Plaintiffs cite to a single out-of-context sentence in an Amendment to the Agreement to claim that Corizon Health and all of its affiliates are a single entity. But that document says no such thing. Read both on its own and in the context of the entire Amendment, the language Plaintiffs cite does not label CHS TX or YesCare as Corizon Health's alter-egos, nor does it impart successor liability on CHS TX or YesCare for any breach of contract.

6. ***Third***, the question of successor liability is properly determined under Texas law, and under Texas law neither YesCare nor CHS TX can be held liable for the debts of Corizon Health as successors in interest. The Texas Business Organizations Code governs the challenged transaction, and it expressly provides that, in a divisional merger, the entity to which a claim is allocated under the plan of merger is the ***only*** successor to such claim. In accordance with Texas law, Plaintiffs' lawsuit was allocated to (and thus remained vested in) Corizon Health through the divisional merger, leaving it as the only entity that is liable on Plaintiffs' claims. This Court should deny Plaintiffs' attempt to invalidate Texas law.

7. ***Fourth***, Plaintiffs have failed to state a claim on their charges of fraud, so cannot sustain their claims of conspiracy. They have not pled with particularity—as required—essential

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

elements of fraud, including the existence of a fraudulent representation, that any representations were false, or that they relied on any representations. Their fraudulent transfer claims fail also because under Texas law the Divisional Merger did not and could not constitute a "transfer."

8.      **Fifth** and finally, Plaintiffs' conspiracy claims fail by law because, by definition, a claim for conspiracy requires the involvement of more than one party. CHS TX and YesCare either did not exist, or were not in operation, at the time of the alleged tortious conduct. They could not, therefore, be parties to a conspiracy.

9.      For these reasons, the Court should dismiss the Amended Petition in its entirety with respect to CHS TX and YesCare.

## **BACKGROUND**

### I.      **Corizon Health's Agreement with Plaintiffs**

10.      Corizon Health is a correctional health care provider who contracted with the Missouri Department of Corrections (the "MDOC") to provide health care for inmates. Plaintiffs and Corizon Health entered into a Hospital Service Agreement (the "Agreement") on November 1, 2016, whereby Plaintiffs agreed to provide health care services to Corizon Health's patients, and Corizon Health would reimburse Plaintiffs for their services upon receipt of timely submitted claims. In the Agreement, the name "Corizon Health" refers to "Corizon, LLC a Limited Liability Company with principal offices located at 103 Powell Court, Suite 1-4, Brentwood, TN 37027."[1] No other language in the Agreement defines "Corizon Health" differently. Plaintiffs entered the contract as "The Curators of the University of Missouri on behalf of University of Missouri Health and its affiliates."[2]

---

[1] *See* Amended Petition Ex. 1, Hospital Services Agreement.

[2] *See* Amended Petition Ex. 1, Hospital Services Agreement.

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

11.    On June 8, 2017, Corizon Health and Plaintiffs executed the First Amendment to the Hospital Service Agreement (the "First Amendment"). In its introduction, the First Amendment uses the phrase "Corizon Health" to refer to "Corizon, LLC, a Limited Liability Company with principal offices located at 103 Powell Court, Suite 1-4, Brentwood, TN 37027, acting for itself or on behalf of any/all/other affiliated companies."[3]  Plaintiffs again entered the Amendment as "The Curators of the University of Missouri, on behalf of University of Missouri Health and its affiliates, a Missouri based Hospital."[4]  The effect of this Amendment was to alter the reimbursement rate for certain surgeries.[5]  On August 4, 2020, Corizon Health and Plaintiffs entered into the Second Amendment to the Hospital Service Agreement (the "Second Amendment") with a nearly identical introductory section.  This Second Amendment further modified the Agreement by altering the claim filing deadline for patients with a denied Medicaid application, adding a requirement for Corizon Health to supply a monthly list of patients that apply for Medicaid eligibility, and adding a covenant not to boycott Israel.[6]

12.    Corizon Health's contract with the MDOC was set to expire in June 2021.[7]  At the end of May 2021, the MDOC awarded its new contract to a different healthcare provider after a bidding process, and Corizon Health protested that award.[8]  When its protest was denied, Corizon Health filed a lawsuit over that award, and pending the lawsuit, its contract with the MDOC was extended to November 14, 2021.[9]

---

[3] *See* Amended Petition Ex. 1, First Amendment to the Hospital Services Agreement.

[4] *See* Amended Petition Ex. 1, First Amendment to the Hospital Services Agreement.

[5] *See* Amended Petition Ex. 1, First Amendment to the Hospital Services Agreement.

[6] *See* Amended Petition Ex. 1, Second Amendment to the Hospital Services Agreement.

[7] Amended Petition ¶ 50.  By citing the alleged facts in the Amended Petition, CHS TX and YesCare do not admit that such alleged facts are true or that they have any knowledge regarding those alleged facts.

[8] *Id.* ¶¶ 52-53.

[9] *Id.* ¶ 54.

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

13.     Both parties allegedly continued to perform on the Agreement through November 2021.[10]  In May 2021, Corizon Health was allegedly made aware that there were outstanding claims to be paid to Plaintiffs, and began work on plans to pay for these claims.[11]  Corizon Health allegedly kept Plaintiffs informed of the plans it considered to cover these claims.[12]

14.     On February 8, 2022, Corizon Health allegedly informed Plaintiffs that it would not be able to provide an exact time frame for payment at that time, though asked that Plaintiffs "allow 30 more days for clean up."[13]  On April 19, 2022, seventy days later, Plaintiffs allegedly sent a letter to Corizon Health demanding the outstanding payments within seven business days. Twenty-two days after that, on May 11, 2022, Plaintiffs filed the instant action against Corizon Health.  On October 7, 2022, Plaintiffs amended the petition to add CHS TX and YesCare.

## II.     The 2022 Corporate Restructuring

### i.     *The Combination Merger*

15.     In Spring of 2022, Corizon Health and several of its affiliates, including Corizon, LLC (formerly a Missouri limited liability company), Valitás Health Services, Inc. ("Valitas") (formerly a Delaware corporation), and Corizon Health of New Jersey, LLC ("Corizon NJ") (formerly a New Jersey limited liability company) (collectively, the "Company") began to take steps to execute a corporate reorganization (the "2022 Corporate Restructuring").  The 2022 Corporate Restructuring was effectuated through two merger transactions under the Texas Business Organizations Code ("TBOC"): a Combination Merger and a Divisional Merger (each as defined below).  The following steps comprised the Combination Merger:

---

[10] *Id.* ¶ 55.

[11] *Id.* ¶¶ 76-78.

[12] *Id.* ¶ 78.

[13] *See id.* ¶ 84.

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

- On April 28, 2022, Corizon Health (previously incorporated in Delaware) converted to a Texas corporation.[14]

- Each of Corizon Health, Corizon, LLC, Valitas, and Corizon NJ merged pursuant to a plan of combination merger under Texas law (the "Combination Merger").[15]

- Corizon Health filed the Certificate of Combination Merger with the Texas Secretary of State on May 2, 2022,[16] and the Combination Merger became effective on May 5, 2022;

- Corizon Health was the sole survivor of the Combination Merger and was vested with all assets and liabilities of the merged entities.[17] The other entities ceased to exist.[18]

### ii.    The Divisional Merger

16.    With all assets and liabilities of the Company having been allocated to Corizon Health under the Combination Merger, Corizon Health then completed a divisional merger (the "Divisional Merger"),[19] whereby, under the TBOC, all assets and liabilities of Corizon Health were allocated between Corizon Health and CHS TX, a Texas corporation formed through the Divisional Merger.[20] The board of directors and sole shareholder of Corizon Health, Valitás Intermediate Holdings, Inc. ("Valitas Holdings") determined that the Divisional Merger was in the

---

[14] *See* Amended Petition Ex. 6, Certificate of Conversion dated April 28, 2022.

[15] *See* Amended Petition Ex. 12, Agreement and Plan of Divisional Merger ("Plan of Merger"); Amended Petition Ex. 8, Certificate of Merger of Corizon Health, Valitas, Corizon NJ, and Corizon, LLC dated May 2, 2022 (the "Certificate of Combination Merger").

[16] *See* Amended Petition Ex. 8, Certificate of Combination Merger.

[17] *See* Amended Petition Ex. 12 Plan of Merger.

[18] *See* Amended Petition Ex. 12 Plan of Merger; Amended Petition Ex. 8, Certificate of Combination Merger.

[19] *See* Amended Petition Ex. 12, Plan of Merger; Amended Petition Ex. 9, Certificate of Merger dated May 3, 2022 (the "Certificate of Merger").

[20] *See* Amended Petition Ex. 12, Plan of Merger.

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

best interests of Corizon Health, its shareholders and its creditors, and approved the Divisional

Merger on May 1, 2022.[21]  The following steps comprised the Divisional Merger:

- Corizon Health drafted the Plan of Merger, which provided that CHS TX would be formed and documented which assets and liabilities were to remain with Corizon Health and which were to be allocated to CHS TX;[22]

- The approved Plan of Merger was in writing and included all information required by the TBOC;[23]

- Corizon Health filed the Certificate of Merger and Certificate of Formation for CHS TX with the Texas Secretary of State on May 3, 2022,[24] and the Divisional Merger became effective on May 5, 2022.

- On May 11, 2022, the Texas Secretary of State approved and accepted the Certificate of Merger and Certificate of Formation for CHS TX, effective as of May 5, 2022.

17.    After the Divisional Merger became effective, CHS TX was acquired by YesCare,

which completed the 2022 Corporate Restructuring.  Corizon Health then changed its name to

Tehum Care Services, Inc.[25]

18.    As a result of the 2022 Corporate Restructuring, Corizon Health was allocated and

remained vested with all inactive or expired customer contracts—including the MDOC Contract,

which has always been an asset of Corizon Health—as well as all liabilities related to such

contracts.[26]  Corizon Health was also allocated and remained vested with, among other assets,

(i) $1 million in cash, (ii) a receivable, subject to certain conditions being met, of $4 million under

a $15 million total funding commitment (the "Funding Agreement") provided by M2 LoanCo,

---

[21] *See* Amended Petition Ex. 12, Plan of Merger, Recitals ("the board of directors of the Company and [Valitas], in its capacity as the sole shareholder of the Company, have each approved the Merger and this Plan.").

[22] *See* Amended Petition Ex. 12 Plan of Merger, §§ 3-4.

[23] *See* Amended Petition Ex. 12, Plan of Merger, §§ 1, 3-8.

[24] *See* Amended Petition Ex. 9, Certificate of Merger.

[25] *See* Amended Petition Ex. 18, Certificate of Amendment of Corizon Health, Inc. dated June 1, 2022.

[26] *See* Amended Petition Ex. 12, Plan of Merger, Schedule 3.01(b); Schedule 4.01(b).

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

LLC ("M2 LoanCo"), an affiliate of Corizon Health and (iii) the right to make claims on any and all of the Company's medical malpractice, general liability, or errors and omissions insurance policies relating to or arising from the assets it acquired or retained through the merger (including the contract at issue in Plaintiffs' case).[27]   Critically, through the Divisional Merger, Corizon Health was also released from nearly $100 million of senior secured debt, which, prior to the 2022 Corporate Restructuring, had encumbered all of the Company's assets and left no value for unsecured creditors.[28]   The Divisional Merger therefore allowed Corizon Health's unsecured creditors the ability to assert claims against Corizon Health's assets without remaining subordinate in right of payment to nearly $100 million of secured debt.   Corizon Health's secured debt obligations were allocated to, and continue to be liabilities of, CHS TX as a result of the Divisional Merger.[29]

19.     The 2022 Corporate Restructuring was the subject of a fairness opinion rendered by FTI Capital Advisors LLC ("FTI"), which determined that the 2022 Corporate Restructuring was fair to the Company's unsecured creditors.   Specifically, FTI compared potential recoveries for unsecured creditors under the then-proposed 2022 Corporate Restructuring to recoveries in a liquidation or a bankruptcy.   As a result of its analysis, FTI determined that unsecured creditors would have access to equal or greater recoveries if the Company completed the 2022 Corporate Restructuring.   In particular, the 2022 Corporate Restructuring unlocks greater value for Corizon Health's unsecured creditors by (i) releasing Corizon Health from nearly $100 million of existing secured debt, which was allocated to CHS TX;[30] (ii) providing Corizon Health the right to make

---

[27] See Amended Petition Ex. 12, Plan of Merger, Schedule 3.01(b).

[28] See Amended Petition Ex. 12, Plan of Merger, Schedule 4.01(a)(1).

[29] See Amended Petition Ex. 12, Plan of Merger, Schedule 4.01(a).

[30] See Amended Petition Ex. 12, Plan of Merger, Schedule 4.01(a)(1).

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

claims on any and all of the Company's medical malpractice, general liability, or errors and omissions insurance policies relating to or arising from the assets it acquired or retained through the merger;[31] (iii) allocating $1 million in cash to Corizon Health;[32] and (iv) allocating to Corizon Health a receivable from M2 LoanCo under the Funding Agreement, which provides up to $15 million for unsecured creditors of the Company, $4 million of which is allocated to Corizon Health's creditors.

## LEGAL STANDARD

20.    "A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's Amended Petition.  It assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom.  No attempt is made to weigh any facts alleged as to whether they are credible or persuasive.  Instead, the petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case." *Bosch v. St. Louis Healthcare Network*, 41 S.W.3d 462, 463-64 (Mo. banc 2001) (citation omitted).  However, claims alleging fraud must meet a heightened particularity requirement.  Mo. Sup. Ct. R. 55.15 ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.")

## ARGUMENT

### I.    The Court Lacks Personal Jurisdiction over CHS TX and YesCare.

21.    "Personal jurisdiction is the authority of a court over the parties in a particular case . . . The basis of a court's personal jurisdiction over a corporation can be general—that is, all-purpose jurisdiction—or it can be specific—that is, conduct-linked jurisdiction."  *State ex rel.*

---

[31] *See* Amended Petition Ex. 12, Plan of Merger, Schedule 3.01(b)(9)-(11).

[32] *See* Amended Petition Ex. 12, Plan of Merger, Schedule 3.01(b)(1).

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

*Norfolk S. Ry. Co. v. Dolan*, 512 S.W.3d 41, 46 (Mo. banc 2017).  General personal jurisdiction

exists when an entity's contacts with the forum state are "so substantial and of such a nature as to

render the corporation at home in that State."  *Id.* (quoting *Daimler AG v. Bauman*, 571 U.S. 117,

139 n.19 (2014)).  Specific jurisdiction encompasses cases where "the suit arises out of or relates

to the defendant's contacts with the forum."  *Id.* at 48 (quoting *Daimler*, 571 U.S. 117, 118).

However, specific jurisdiction extends only to claims related to those specific contacts.  *Id.*  Neither

CHS TX nor YesCare is subject to general or limited personal jurisdiction in Missouri.  This alone

requires dismissal of the Amended Petition.

### A.    CHS TX and YesCare Are Not Subject to General Personal Jurisdiction in Missouri.

22.    A court may exercise general personal jurisdiction over foreign corporations where

their "affiliations with the State are so 'continuous and systematic' as to render them essentially at

home in the forum State."  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919

(2011) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317 (1945)).  This threshold is quite

high: "[a] court normally can exercise general jurisdiction over a corporation only when the

corporation's place of incorporation or its principal place of business is in the forum state."

*Norfolk S. Ry.*, 512 S.W.3d at 46.  In determining a corporation's principal place of business, a

court looks to the location of its "nerve center,"—usually its corporate headquarters— which is

defined as "where a corporation's officers direct, control, and coordinate the corporation's

activities."  *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010).

23.    Plaintiffs have alleged no facts to suggest that CHS TX or YesCare are subject to

general personal jurisdiction in Missouri.  *See* Amended Petition ¶¶ 9-10.  Plaintiffs do not allege

either corporation was incorporated in Missouri, that they are headquartered in the state, or that

their business operations within the state are so extensive as to render it their "principal place of

business."  *See Norfolk S. Ry.*, 512 S.W.3d at 46.  Indeed, Plaintiffs' own exhibits prove the

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

opposite: YesCare and CHS TX's state of incorporation is Texas and their principal place of business is in Tennessee.[33]  In accordance with *Daimler* and *Norfolk S. Ry.*, no general personal jurisdiction exists over them in Missouri.

**B.      CHS TX Is Not Subject to Specific Personal Jurisdiction in Missouri.**

24.     Missouri courts may exercise specific personal jurisdiction over out-of-state corporations only if that exercise is authorized by Missouri's long-arm statute § 506.500, RSMo 2016, and comports with constitutional due process.  *State ex rel. Cedar Crest Apartments, LLC v. Grate*, 577 S.W.3d 490, 493 (Mo. banc 2017).  Missouri's long-arm statute states:

> Any person or firm, whether or not a citizen or resident of this state, or any corporation, who in person or through an agent does any of the acts enumerated in this section, thereby submits such person, firm, or corporation, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action *arising from the doing of any of such acts*: (1) The transaction of any business within this state; (2) The making of any contract within this state; (3) The commission of a tortious act within this state; . . .

§ 506.500.1, RSMo 2016 (emphasis added).  Constitutional due process is satisfied where the corporation "purposefully availed" itself of the forum state, the plaintiff's claims "arise out of or relate to" the defendant's forum contacts, and the exercise of jurisdiction is reasonable.  *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1785-86 (2017).

25.     Where a foreign corporation's contacts with Missouri are insufficient to establish general personal jurisdiction, Missouri courts may exercise specific personal jurisdiction without violating due process only if "that entity has at least one contact with this state *and* the cause of action being pursued arises out of that contact."  *Cedar Crest Apartments*, 577 S.W.3d at 493 (emphasis in original).  For example, in *Cedar Crest Apartments*, the Missouri Supreme Court held the state could not exercise specific personal jurisdiction over a corporation that was registered in

---

[33] *See* Amended Petition Ex. 9, Certificate of Merger; *see also* Amended Petition Ex. 4, Certificate of Formation of YesCare Corp. dated January 31, 2022.

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

Missouri, solicited business in Missouri, filed lawsuits in Missouri, and owned rental properties in Missouri, where the underlying injury did not arise from any of these contacts.  577 S.W.3d at 495.

26.     In an attempt to hale CHS TX and YesCare into this Court, Plaintiffs allege their claims arise from "Defendants[']" transaction of business, contracting, and commission of tortious acts within Missouri.  Amended Petition ¶ 9.  However, the remainder of the Amended Petition clarifies that it is ***Corizon Health*** that conducted business in this state, that Plaintiffs' contract is with ***Corizon Health***, and that ***Corizon Health*** is alleged to have committed various tortious acts.  *See, e.g*, Amended Petition ¶¶ 16-17 (discussing the signing of the Hospital Services Agreement between Plaintiffs and Corizon Health); ¶¶ 39-47 (alleging Corizon Health did not pay certain claims); ¶¶ 73-86 (alleging communications between Plaintiffs and Corizon Health).  But Corizon Health, CHS TX, and YesCare are separate corporations, and it is black letter law that even if Corizon Health and these corporations were related or shared common ownership, Corizon Health's jurisdictional contacts cannot be attributed to CHS TX or YesCare.  *See, e.g.*, *Goodyear*, 564 U.S. at 915 (refusing to extend specific personal jurisdiction over the foreign subsidiaries of an in-state parent); *Cedar Crest Apartments*, 577 S.W.3d at 495-96 (same).

27.     Plaintiffs' conspiracy allegations are not a sufficient independent basis for this Court to extend personal jurisdiction over YesCare or CHS TX, either.  *See, e.g.*, *Hallmark Cards, Inc. v. Monitor Clipper Partners*, LLC, 757 F. Supp. 2d 904, 912 (W.D. Mo. 2010) ("While many cases establish that a party can be liable for a co-conspirator's actions, it does not appear that Missouri law imposes personal jurisdiction on a party based solely on a co-conspirator's action."); *State ex rel. Sperandio v. Clymer*, 581 S.W.2d 377, 383-84 (Mo. banc 1979) (holding Missouri did not have jurisdiction over out-of-state defendant alleged to have engaged in conspiracy with another in-state defendant).

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

28.    There are no other bases for asserting specific personal jurisdiction over either YesCare or CHS TX.  Plaintiffs have not alleged that YesCare has any contacts with Missouri whatsoever.  As for CHS TX, it does conduct limited business in Missouri pursuant to a contract with the City of St. Louis.[34]  However, Plaintiffs' allegations in no way "arise" from CHS TX's contract with St. Louis, so that contract cannot serve as the basis for specific personal jurisdiction with respect to Plaintiffs' claims.  *See* § 506.500, RSMo 2016; *Cedar Crest Apartments*, 577 S.W.3d at 493.  That ends the personal jurisdiction inquiry with respect to both YesCare and CHS TX.

## II.    Plaintiffs' Claims Based on Its Contract with Corizon Health Cannot Support Liability With Respect to CHS TX or YesCare (Counts I, II and III).

29.    Plaintiffs' first three claims, for Breach of Contract (Count I), Breach of Covenant of Good Faith and Fair Dealing (Count II), and Successor Liability: Express and/or Implied Agreement to Assume Debts and/or Liabilities (Count III) stem from a misreading of the Hospital Services Agreement.  Based on the actual language of the contract, Plaintiffs have failed to state a claim on these three counts.

30.    "The terms of a contract are read as a whole to determine the intention of the parties and are given their plain, ordinary, and usual meaning."  *Dunn Indus. Grp., Inc. v. City of Sugar Creek*, 112 S.W.3d 421, 428 (Mo. banc 2003).  "Where the language of a contract is unambiguous, the intent of the parties is to be gathered from the contract alone, and a court will not resort to construction where the intent of the parties is expressed in clear, unambiguous language."  *Id.* at 428-429.  However, "a construction that attributes a reasonable meaning to all the provisions of the agreement is preferred to one that leaves some of the provisions without function or sense."  *Id.* at 428.

---

[34] *See* Amended Petition Ex. 12, Plan of Merger, Schedule 3.01(a).

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

31.     Plaintiffs base their entire theory of contract liability on the following allegation: "The Agreement and amendments thereto define 'Corizon Health' under the Agreement as 'Corizon, LLC . . . acting for itself or on behalf of any/all/other affiliated companies.'"  Amended Petition ¶¶ 136, 172.  While the Amendment contains this language, Plaintiffs' argument is based on a misconstruction.[35]

32.     First, Plaintiffs do not explain how Corizon Health could have bound YesCare and CHS TX to any contractual successor liability through the Amendment, since neither existed at the time it was entered into.  Indeed, the Agreement defines "Affiliated Entity" to mean "any entity who directly or indirectly through one (1) or more intermediaries, controls, or is controlled by, or is under common control with, Corizon Health."[36]  Yet neither CHS TX nor YesCare could have been "Affiliated Entities" at the time when the parties signed the Agreement in 2016 and the two Amendments in 2017 and 2020, because neither yet existed.[37]  Plaintiffs also assert, but do not explain how, CHS TX and YesCare are "Affiliated Entities" now.  Corizon Health is owned by Valitas Holdings; CHS TX is owned by YesCare; neither party has governing bodies in common.  Plaintiffs allege in a conclusory manner common control between Valitas Holdings and YesCare (*see* Amended Petition ¶¶ 138, 154, 173) but have provided no facts to demonstrate this common control.

---

[35] The clause Plaintiffs reference appears in the First Amendment to the Hospital Services Agreement, and reads in full:

> This First Amendment ("Amendment") is made to the Hospital Services Agreement ("Agreement") effective the 1st day of November 2016 between Corizon, LLC a Limited Liability Company with principal offices located at 103 Powell Court, Suite 104, Brentwood, TN 37027, acting for itself or on behalf of any/all/other affiliated companies (hereinafter collectively referred to as "Corizon Health") . . .

Amended Petition, Ex. 1, First Amendment to Hospital Services Agreement.

[36] Ex. 1, Hospital Services Agreement.

[37] Ex. 1, Hospital Services Agreement; First Amendment to Hospital Services Agreement; Second Amendment to Hospital Services Agreement.

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

33.      Second, even if CHS TX and YesCare could be "Affiliated Entities" under the Amendment (and they could not be), the Amendment would not bind them.  The original Hospital Services Agreement defines "Corizon Health" as solely "Corizon, LLC a Limited Liability Company with principal offices located at 103 Powell Court, Suite 1-4, Brentwood, TN 37027."[38] There is no mention of Corizon Health's affiliated entities.  Nor is there mention of "Corizon Health" as carrying a definition other than Corizon, LLC in the Agreement's definition section.[39]

34.      The Amendment added the words "acting for itself *or* on behalf of any/all/other affiliated companies" (emphasis added).  That language is disjunctive and, contrary to Plaintiffs' theory, does not mean that Corizon, LLC *is* acting on behalf of any particular party.  Rather, it simply means that the defined term "Corizon Health" means either (i) Corizon LLC or (ii) any affiliated companies on whose behalf Corizon LLC happens to be acting, if any.  We know this wording is deliberate because, by contrast, the Amendment defines the word "Hospital" as "The Curators of the University of Missouri, *on behalf of* University of Missouri Health and its affiliates."[40]  In other words, "Hospital" includes the Curators, who are acting in all cases on behalf of the University, but "Corizon Health" refers to Corizon, LLC or the affiliates on whose behalf it may be acting, *if any*.

35.      Nor does the remainder of the Amendment support Plaintiffs' contention that the definition of "Corizon Health" is an attempt to alter the parties' substantive rights.  As structured, the Amendment consists of an introduction (which includes the "Corizon Health" definition), recitals and the updated terms and conditions.  The updated terms and conditions are preceded by the statement: "NOW THEREFORE, in consideration of the mutual covenants and agreements

---

[38] Amended Petition, Ex. 1, Hospital Services Agreement at 1.

[39] Amended Petition, Ex. 1, Hospital Services Agreement at 1-2.

[40] Amended Petition, Ex. 1, First Amendment to Hospital Services Agreement at 1 (emphasis added).

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

contained herein, the parties agree to amend the Agreement as follows[.]"  There are then two amendments; one alters the reimbursement rate for certain surgeries, and the other states, "Except as to the terms and conditions updated by this Amendment, all of the terms and conditions of the Agreement are declared by the parties to be in full force and effect."[41]  Read as a whole, the structure evinces the parties' clear intent to designate these two terms—and only these two terms—as modifying the original Agreement.  *See Dunn Indus. Grp.,* 112 S.W.3d at 428.  Conversely, Plaintiffs' preferred interpretation of the Amendment would render the "NOW THEREFORE" clause entirely superfluous by suggesting the Amendment contained a substantial change in the parties' contractual relationship through the definitions section, before the "NOW THEREFORE" clause.  This interpretation would leave the "NOW THEREFORE" clause "without function or sense," contravening the basic principles of contract interpretation.  *Id.*  It would also subvert a plain reading of the Amendment, which shows that the parties intended to memorialize two substantive changes to their Agreement, not sneak in an additional substantive change through the definitions.

36.     Additionally, Plaintiffs have alleged no facts to indicate Corizon Health acted as an agent of YesCare or CHS TX to bind them to the Agreement.  As a basic principle of corporate separateness, even if two corporations are related, the actions of one cannot normally be attributed to the other.  *See, e.g, Hampton v. American Family Mut. Ins. Co.*, 624 S.W.2d 497, 498 (Mo. App. E.D. 1981).  This presumption can be overcome where one entity is acting as the other entity's agent.  *See, e.g., Travis v. Newark Corp. (In re A.T.)*, No. 4:16-VC-448-SNLJ, 2017 U.S. Dist. LEXIS 182548, at *8 (E.D. Mo. Nov. 3, 2017) (citing *State ex rel. Elson v. Koehr*, 856 S.W.2d 57,

---

[41] Amended Petition, Ex. 1, First Amendment to Hospital Services Agreement.  The Second Amendment to the Hospital Services Agreement contains different terms but is structured in the same manner and contains a substantively identical introduction, so its meaning is the same with respect to the definition of "Corizon Health."  Petition, Ex. 1, Second Amendment to Hospital Services Agreement.

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

60 (Mo. banc 1993). The essential elements of an agency relationship are that "'an agent holds a power to alter legal relations between the principal and a third party,' (2) 'an agent is a fiduciary with respect to matters within the scope of the agency,' and (3) 'a principal has the right to control the conduct of the agent with respect to matters entrusted to the agent . . . .'" *Id.* at *8-9 (quoting *Elson*, 856 S.W.2d at 60 and citing Restatement (Second) of Agency §§ 12, 13, 14)).

37.    Plaintiffs have alleged no facts indicating Corizon Health was invested with the agency authority to bind any other entity, much less CHS TX or YesCare specifically, to the Hospital Services Agreement. The language Plaintiffs point to in the Amendment does not, on its face, impose any kind of agency relationship that did not previously exist. It certainly provides no indication that any other entity granted Corizon Health the power to bind it to successor liability. No other language in the Agreement or Amendments does, either. Indeed, "Corizon, LLC" is the sole signatory on both the Agreement and each Amendment, and there is no indication in either contract that it signed on any other party's behalf.[42] And with respect to CHS TX and YesCare specifically, Plaintiffs could not bind them to the Agreement at a time when they did not yet exist. *See, e.g, Acetylene Gas Co. v. Oliver*, 939 S.W.2d 404, 412 (Mo. App. E.D. 1996) (explaining that the typical rule is that "[a] corporation is not liable on a contract made prior to its incorporation[.]").

38.    Because the contract does not apply to any party except Corizon Health, it cannot serve as a basis for specific personal jurisdiction over CHS TX or YesCare. *See, e.g.*, *Cedar Crest Apts.*, 577 S.W.3d at 495-96 (explaining that, as a general rule, the jurisdictional contacts of a corporation cannot be attributed to its affiliates).

---

[42] Ex. 1, Hospital Services Agreement; First Amendment to Hospital Services Agreement; Second Amendment to Hospital Services Agreement.

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

### III.    Plaintiffs Fail to State a Claim for Successor Liability (Counts III, IV, V and VI).

39.    Plaintiffs also fail to state a claim on their remaining theories.  As shown below, Texas law governs questions of successor liability arising from the 2022 Corporate Restructuring, and that law provides that liability remains with Corizon Health.

### A.    Texas Law, Which Governs the Determination of Successor Liability, Provides That Liability for Plaintiffs' Claims Remain with Corizon Health.

40.    Texas law applies to the Court's analysis regarding the 2022 Corporate Restructuring.  Following a statutory merger, courts look to the governing statute to determine the effect of that merger, including on issues of liability and on the post-merger corporation's structure.  *See Payne v. Sec. Sav. & Loan Ass'n, F.A.*, 924 F.2d 109, 111 (7th Cir. 1991) (looking to the "congressional scheme that governs the transfer of assets that took place" to determine the successor on the plaintiff's claim following a statutory receivership); *Bouchillon v. Deutz-Fahr*, 268 F. Supp. 3d 890, 905 (N.D. Miss. 207) (applying the law of Germany to questions concerning organization effect and successor liability following corporate asset transfer in Germany).

41.    Furthermore, under Missouri choice-of-law rules, the law of the state of incorporation (here, Texas) applies to "internal affairs" including mergers, consolidations, and reorganizations.  *See* § 351.582, RSMo 2022 ("This chapter does not authorize this state to regulate the organization or internal affairs of a foreign corporation authorized to transact business in this state."); *see also Montgomery Bank, N.A. v. First Horizon Home Loan Corp.*, No. 4:09CV01334 ERW, 2010 U.S. Dist. LEXIS 40600, at *4 (E.D. Mo. Apr. 26, 2010) ("[T]he internal affairs doctrine, a conflict of laws principle, generally provides that the law of the state of incorporation governs a corporation's internal affairs[.]"); *In re Bridge Info. Sys.*, 325 B.R. 824, 830 (Bankr. E.D. Mo. 2005) ("Missouri courts generally apply the internal affairs doctrine with respect to disputes involving the administration or governance of a corporation."); Restatement (Second) of Conflict of Laws § 302 (describing "mergers, consolidations and reorganizations" as the type of

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

matters typically governed by the law of the state of incorporation).  Accordingly, this Court must look to the TBOC to determine which entity resulting from the 2022 Corporate Restructuring bears liability in connection with Plaintiffs' claims.

**B.    Plaintiffs' Successor Liability Theories are Unavailing**

42.    Under Texas law, Plaintiffs have failed to state any of their three non-contractual claims for successor liability—Counts IV (De Facto Merger), V (Mere Continuation), and VI (Intent to Defraud Creditors).

**1.    Texas Law provides that Corizon Health is Exclusively Liable on Plaintiffs' Claims (Count III).**

43.    For over 30 years, Texas law has permitted divisional mergers that exclusively allocate assets and liabilities between the surviving entity and a new entity created by the transaction.  Curtis W. Huff, *The New Texas Business Corporation Act Merger Provisions*, 21 ST. MARY'S L.J. 109, 110 (1989).  Several other states have since enacted similar statutes.  *See* 15 Pa. Cons. Stat. § 361; Ariz. Rev. Stat. § 29-2601; 6 Del. C. § 18-217(b)-(c).  Any exclusive allocation of assets and liabilities through a divisional merger under the TBOC is fully enforceable under Texas law.  *See, e.g.*, *1400 FM 1417 LLC v. CertainTeed Corp.*, No. 4:21-cv-00847, 2022 U.S. Dist. LEXIS 55548, at *10-11 (E.D. Tex. Mar. 28, 2022) (determining citizenship of corporation based on effect of divisional merger).

44.    Importantly, the TBOC provides that the surviving or new entity "to which a liability or obligation is allocated under the plan of merger is the primary obligor for the liability or obligation," and "no other party to the merger . . . and no other new domestic entity. . . created under the plan of merger is liable for the debt or other obligation."  Tex. Bus. Orgs. Code § 10.008(a)(3) and (4).[43]  The Plan of Merger confirms that it shall have the effects set forth in

---

[43] Tex. Bus. Orgs. Code § 10.008(a) provides in relevant part:

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

Section 10.008 of the TBOC.[44]  Thus, under Texas law, CHS TX, an entity created by the Plan of Merger, cannot be liable for any obligations allocated to Corizon Health.  *See id.*

46.    In accordance with these provisions, once the Divisional Merger took effect, Corizon Health ceased to exist in its former capacity, and all of its assets and liabilities were allocated between Corizon Health or CHS TX in accordance with the Plan of Merger.  As relevant here, Plaintiffs' contract, and the associated lawsuit, were allocated to Corizon Health—*i.e.*, they were not allocated to CHS TX (or YesCare).[45]  CHS TX and YesCare did not exist prior to the 2022 Corporate Restructuring and therefore were never liable for Plaintiffs' claims.  Rather, all liability in connection with Plaintiffs' lawsuit rested with Corizon Health before the Divisional Merger, and all liability in connection with Plaintiffs' lawsuit remained with Corizon Health after the Divisional Merger.  It is therefore Corizon Health alone—not CHS TX or YesCare—that is and has always has been the proper defendant in this action.

### 2.    Plaintiffs Fail to State a De Facto Merger Claim (Count IV).

46.    The clear language of Tex. Bus. Orgs. Code § 10.008(a) (3) and (4) is alone sufficient to bar Plaintiffs' claims for successor liability through the Divisional Merger.  However, each of Plaintiffs' individual theories of successor liability is also barred by Texas law, as "Texas

---

When a merger takes effect: . . . (3) all liabilities and obligations of each organization that is a party to the merger are allocated to one or more of the surviving or new organizations in the manner provided by the plan of merger; (4) each surviving or new domestic organization to which a liability or obligation is allocated under the plan of merger is the primary obligor for the liability or obligation, and, except as otherwise provided by the plan of merger or by law or contract, no other party to the merger, other than a surviving domestic entity or non-code organization liable or otherwise obligated at the time of the merger, and no other new domestic entity or non-code organization created under the plan of merger is liable for the debt or other obligation . . .

[44] *See* Amended Petition Ex. 12, Plan of Merger, § 2(c).

[45] *See* Amended Petition Ex. 12, Plan of Merger, Schedule 3.01(b)(RC) (allocating the Hospital Services Agreement to Corizon Health); 4.01(a) (listing lawsuits related to Corizon Health's contracts as liabilities allocated to Corizon Health).

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

strongly embraces the non-liability rule." *Lockheed Martin Corp. v. Gordon*, 16 S.W.3d 127, 139

(Tex. App.—Houston [1st Dist.] 2000).  Plaintiffs' first claim for successor liability (Count IV),

based on de facto merger, fails for two separate reasons—because such a claim does not apply

under Texas law, and because the Divisional Merger complies with all statutory requirements.

47.    First, Texas law expressly bans "de facto merger" as a means to impose liabilities

on an acquiring corporation.  *See Shapolsky v. Brewton*, 56 S.W.3d 120, 138-39 (Tex. App.—

Houston [14th Dist.] 2001).  This ban is codified at Tex. Bus. Orgs. Code § 10.254, which applies

to dispositions of assets (rather than mergers) but contains similar language to Section 10.008

explicitly blocking successor liability.  Tex. Bus. Orgs. Code § 10.254 & Reviser's Notes ("Section

10.254 codifies for all domestic entities to which Chapter 10 applies that a disposition of assets

will not constitute a merger or conversion such that the acquiring entity would be liable for the

obligations of the transferring entity under the 'de facto merger' doctrine or otherwise unless the

acquiring person expressly assumes an obligation.");  *Lockheed Martin*, 16 S.W.3d at 135 n.6

(pointing out Texas statutory law eliminated the "de facto merger doctrine").

48.    Second, the de facto merger doctrine does not apply because the 2022 Corporate

Restructuring was a statutory merger that complied with the TBOC.  It was not a consolidation or

merger in which two or more entities combine to form one surviving entity.  Rather, through the

2022 Corporate Restructuring, two entities emerged, each with different assets, liabilities, and

contractual relationships.  The merger complied with all Texas statutory rules; at the time of the

merger, each entity was a Texas corporation, the merger was executed in accordance with the

required statutory procedures, and the Texas Secretary of State accepted the merger filing.[46]  By

definition, this statutory restructuring was not a "de facto" merger.  *See Channel Clarity Holdings*

---

[46] *See* Amended Petition Ex. 8, Certificate of Combination Merger; Amended Petition Ex. 9, Certificate of
Merger; Amended Petition Ex. 12, Texas Office of the Secretary of State Certificate of Merger.

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

*LLC v. Klaas (In re Channel Clarity Holdings LLC)*, No. 21-bk-07972, 2022 Bankr. LEXIS 1985, at *20 (Bankr. N.D. Ill. July 18, 2022) (de facto merger only applies when statutory formalities are not met).

### 3.    Plaintiffs Fail to State a Claim of Mere Continuation (Count V).

49.    Plaintiffs' second count for successor liability (Count V), based on a theory of mere continuation, similarly fails.

50.    Texas courts have rejected the mere continuation doctrine as a basis for successor liability.  *See Mudgett v. Paxson Mach. Co.*, 709 S.W.2d 755, 758 (Tex. App.—Corpus Christi [13th Dist.] 1986) ("Certainly if the de facto merger doctrine is contrary to the public policy of our state, so must be the mere continuation doctrine."); *Motor Components, LLC v. Devon Energy Corp.*, 338 S.W. 3d 198, 205 (Tex. App.—Houston [14th Dist.] 2011) (applying *Mudgett*); *see also TFT Galveston Portfolio, Ltd. v. C.I.R.*, No. 1082-12, 144 T.C. 96, 113 (T.C. Feb. 26, 2015) ("Texas courts have also refused to apply the doctrine of mere continuation."); *Allied Home Mortg. Corp. v. Donovan*, 830 F. Supp. 2d 223, 233 (S.D. Tex. 2011) ("[T]he Texas legislature has refused to recognize the theory that a successor corporation is a mere continuation of its predecessor as an exception to the traditional rule that a successor corporation does not assume the liabilities of a predecessor.").  As with the bar on the de facto merger doctrine, this case law is rooted in Texas statute.  *See Motor Components*, 338 S.W.3d at 204 (explaining that in codifying Section 10.254(b) the Texas legislature "rejected long ago the 'continuation' doctrine of implied successor liability[.]").  Accordingly, plaintiffs have failed to state a claim for successor liability based on mere continuation.

### 4.    Plaintiffs' "Intent to Defraud Creditors" Claim Cannot Provide the Basis for Successor Liability (Count VI).

51.    Plaintiffs' third and final theory of successor liability (Count VI), alleging successor liability through "intent to defraud creditors" is no more availing.

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

52.     As with claims for successor liability based on de facto merger and mere continuation theories, Texas courts have concluded that the Texas statutes do not provide for successor liability through a theory of fraud.  In *Shapolsky v. Brewton*, for example, the court held that the relevant Texas statute in that case—Section 10.254(b)—did not allow for successor liability based on allegations of fraud because that statute barred successor liability unless specifically authorized by another Texas statute, and no Texas statute so authorized.  56 S.W.3d at 138-39.  Thus, in *In re 1701 Commerce, LLC*, the court explained that even if the plaintiff could state a claim for fraudulent transfer against the debtor, that claim could only serve as a basis for direct liability, not successor liability.  511 B.R. 812, 823-26 (Bankr. N.D. Tex. 2014), *id.* at 824 ("This court, like other courts, has been unable to locate a Texas statute providing that a fraudulent transfer creates successor liability.").

53.     Plaintiffs have therefore failed to state a valid claim on any of their theories of successor liability.  The court should dismiss their Counts IV-VI of the Amended Petition.

IV.    **Plaintiffs Have Failed to State a Claim for Common Law Fraud or any Conspiracy Claim (Counts VII, VIII, IX, X and XI).**

54.     Plaintiffs cannot sustain their remaining claims for direct liability against CHS TX and YesCare: Count VII (Common Law Fraud and Conspiracy to Commit Common Law Fraud), IX (Conspiracy to Commit Fraudulent Transfer), and XI (Conspiracy to Engage in a Constructive Fraudulent Transfer).

55.     First, Plaintiffs have not succeeded in stating their underlying allegations of fraud. "Civil conspiracy is not itself actionable in the absence of an underlying wrongful act or tort.  If the underlying wrongful act alleged fails to state a cause of action, the civil conspiracy claim fails." *Park Ridge Assocs. v. U.M.B. Bank*, 613 S.W.3d 456, 464 (Mo. App. E.D. 2020) (citations omitted); *Mo. Highways & Transp. Comm'n v. Westgrove Corp.*, 364 S.W.3d 695, 702 (Mo. App.

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

E.D. 2012) (Affirming trial court's denial of conspiracy claim where plaintiff failed to provide evidence of underlying fraudulent transfer).

56.    Second, Plaintiffs' conspiracy claims fail for the independent reason that they depend on a legal and logical impossibility: Corizon Health could not have conspired with CHS TX and YesCare when those companies were nonexistent or non-operational.

### 1.    Plaintiffs Fail to State a Claim for Common Law Fraud (Count VII).

57.    Nine elements are essential to establish a common law fraud claim: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury. *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 131-32 (Mo. banc 2010) ("A plaintiff's failure to establish any one of the essential elements of fraud is fatal to recovery.").  Plaintiffs fail to plead these elements.

58.    First, Plaintiffs' underlying common law fraud claim must fail because Plaintiffs did not sufficiently allege the first essential element, a representation.  Corizon Health did not make any representation that can support an action for fraud.[47]  Plaintiffs' alleged representation by Corizon Health, that it intended to pay Plaintiffs the amounts due and owing under the Agreement, is not sufficient to support a claim of fraud because that statement is merely a promise, whose later breach cannot prove that the intention of making such a promise was false. *Yerington v. Riss*, 374 S.W.2d 52, 58 (Mo. banc 1964) ("[F]raud must relate to a present or pre-existing fact, and cannot ordinarily be predicated on representations or statements which involve mere matters

---

[47] Plaintiffs allege no fraudulent representations by CHS TX or YesCare.  Accordingly, liability under Count VII can attach only if they properly allege a conspiracy, which, as explained below, they have not done.

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

of futurity or things to be done or performed in the future."); *Central Dist. Alarm v. Hal-Tuc*, 886 S.W.2d 210, 213 (Mo. App. E.D. 1994) ("The intention of the promisor not to perform an enforceable or unenforceable agreement cannot be established solely by proof of its nonperformance nor does his failure to perform the agreement throw upon him the burden of showing that his nonperformance was due to reasons which operated after the agreement was entered into.").  Plaintiffs' argument would turn every breach-of-contract action into a fraud case.

59.    Furthermore, Plaintiffs' common law fraud claim must fail because they did not plead with the requisite particularity.  Mo. Sup. Ct. R. 55.15 ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.").  Plaintiffs merely restated the elements under common law fraud when they averred Corizon Health "knowingly and falsely" made representations, without providing any particular details as to Corizon Health's knowledge or the falsity of its statements.  *Jennings v. SSM Health Care St. Louis*, 355 S.W.3d 526, 537 (Mo. App. E.D. 2011) (dismissing fraud claim when the plaintiff "merely set forth allegations that mirrored the elements of fraudulent misrepresentation").  Plaintiffs also did not allege with particularity how Corizon Health's statement proximately caused the harm.  *Schauer v. Gundaker Movits Real Estate Co.*, 813 S.W.2d 112, 115 (Mo. App. E.D. 1991) (upholding dismissal of fraud claim for failing to plead proximate cause with particularity).

### 2.    Plaintiffs Fail to State a Claim for Fraudulent Transfer or Constructive Fraudulent Transfer (Counts VIII and X).

60.    The essential elements of a fraudulent transfer are the conveyance or assignment of goods or chattels with "an intent to hinder, delay or defraud creditors."  *Higgins v. Ferrari*, 474 S.W.3d 630, 636 (Mo. App. W.D. 2015).  A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor ("fraudulent transfer"); or

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor: (a) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or (b) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due ("constructive fraudulent transfer").  § 428.024.1, RSMo 2022.

61.    Plaintiffs cannot succeed on their purported fraudulent transfer claim under Section 428.024.1(1).  Though Plaintiffs claim the Divisional Merger constituted a "transfer" (Amended Petition ¶¶ 250, 266), the TBOC—which governed the Corporate Restructuring—is clear that the allocation of assets and liabilities through a divisional merger is not a "transfer."  Tex. Bus. Orgs. Code § 10.008(a)(2)(C).[48]   The lack of a transfer is fatal to Plaintiffs' claim.  *Konopasek v. Konopasek*, No. SD37388, 2022 Mo. App. LEXIS 575, at *3 (Mo. App. S.D. Sept. 13, 2022) (dismissing fraudulent transfer claim due to lack of a "transfer").

62.    Furthermore, not only does the Amended Petition fail to identify a fraudulent "transfer," but it also fails to allege with specificity facts, actions, or evidence that the 2022 Corporate Restructuring was intentionally fraudulent.  *See Jennings*, 355 S.W.3d at 537.  Notably, in alleging fraudulent transfer, Plaintiffs merely repeat many of the Missouri "badges of fraud," verbatim with no supporting factual allegations.  *Compare Higgins*, 474 S.W.3d at 636 (listing the eight "badges of fraud") *with* Amended Petition ¶¶ 252, 267 (repeating these badges as allegations).  For instance, Plaintiffs have provided no facts from which this Court could conclude that any party "concealed" the Divisional Merger, when YesCare announced it a mere two weeks

---

[48] "When a merger takes effect: . . . all rights, title, and interests to all real estate and other property owned by each organization that is a party to the merger is allocated to and vested, subject to any existing liens or other encumbrances on the property, in one or more of the surviving or new organizations as provided in the plan of merger **without: . . . any transfer or assignment having occurred. . . .**"  Tex. Bus. Orgs. Code § 10.008(a)(2)(C) (emphasis added).

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

after its execution.  *See* Amended Petition ¶ 65; *cf. In re 1701 Commerce, LLC*, 511 B.R. at 838 (concluding that a corporation did not "conceal" the alleged fraudulent transfer when it referenced it in public filings the following month).  Nor have Plaintiffs alleged facts to support their contention that Corizon Health has become insolvent or will become insolvent due to the Divisional Merger.  And, as discussed below, the 2022 Corporate Restructuring involved reasonable equivalent value.

63.     The only facts Plaintiffs plead with particularity are the facts of the 2022 Corporate Restructuring itself.  *See* Amended Petition ¶¶ 60-61.  But the mere fact that Corizon Health chose to enter the 2022 Corporate Restructuring is inadequate to support a claim for fraudulent transfer. Plaintiffs attack the Divisional Merger as inherently fraudulent (even though it was a lawful exercise under the TBOC), but this is a policy argument; it is not a substitute for the particularity required to state an intentional fraudulent transfer claim under Rule 55.15.  Indeed, in alleging that the Divisional Merger constituted a "fraudulent transfer," Plaintiffs ask this Court to effectively invalidate the legal effect of the Texas statutes governing the Divisional Merger.  No Missouri court has unwound a Texas merger in this manner, and Plaintiffs provide no justification for their extraordinary request.

64.     Plaintiffs' constructive fraudulent transfer claim under Section 428.024.1(2) suffers from several additional flaws.  Under Missouri law, a constructive fraudulent transfer claim is valid only where a party engaged in a transaction " (1) '[w]ithout receiving a reasonably equivalent value in exchange for the transfer' and (2) the debtor either (a) '[w]as engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction' or (b) '[i]ntended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.'"  *Higgins*, 474 S.W.3d at 640 (quoting § 428.029(1), RSMo 2022) (upholding

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

judgment finding no fraudulent transfer where reasonably equivalent value was paid and the creditors' position was not undermined).    As previously outlined, the 2022 Corporate Restructuring involved reasonably equivalent value, because in exchange for certain assets being vested in CHS TX, CHS TX assumed nearly $100 million of secured debt, leaving Corizon Health with an enhanced ability to pay unsecured creditors.[49]  Among other benefits, the 2022 Corporate Restructuring also allocated $1 million in cash to Corizon Health,[50] and provided up to $15 million for unsecured creditors of the Company, $4 million of which was specifically allocated to Corizon Health's creditors.   Plaintiffs have no basis to claim that the transaction lacked a reasonably equivalent value.

### 3.    Plaintiffs' Conspiracy Claims Fail as Matter of Law (Counts VII, IX and XI).

65.    Plaintiffs cannot succeed on their conspiracy allegations (Counts VII, IX, and XI) because two of the three alleged "conspirators" did not exist at the time of the alleged torts. Furthermore, even if all three parties were in existence (and they were not), Plaintiffs defeat their own conspiracy argument by alleging that the three companies are alter egos, meaning that the supposed conspiracy would not involve two or more people as required by Missouri law.

66.    "A claim of conspiracy must establish: (1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and, (5) the plaintiff was thereby damaged." *Creative Walking, Inc. v. American States Ins. Co.*, 25 S.W.3d 682, 688 (Mo. App. E.D. 2000) (citations omitted).  By definition, a party cannot conspire with itself.  *State v. May*, 142 Mo. 135, 151 (1897).  The formation of the conspiracy must predate the underlying action.  *See, e.g, Flittie v. Solem*, 775 F.2d 933 (8th Cir.

---

[49] *See* Amended Petition Ex. 12, Plan of Merger, Schedule 4.01(a)(1).

[50] *See* Amended Petition Ex. 12, Plan of Merger, Schedule 3.01(b)(1).

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

1985) (explaining, in the context of criminal conspiracy, that "conspiracy involves an agreement to commit an offense that of necessity must be pre-offense[.]").

67.    In addition, a corporation cannot be held liable for a tort committed prior to its formation since it would not be "legally capable of committing the tort." *Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*, No. 11-cv-02861-SC, 2013 U.S. Dist. LEXIS 76269, at \*16-17 (N.D. Cal. May 30, 2013); *Jones v. Shooshan*, 855 F. Supp. 2d 594, 600 (E.D. Va. 2012) (dismissing conspiracy claims as to defendant companies that "were not in existence until years after" alleged torts); *Bep, Inc. v. Atkinson*, 174 F. Supp. 2d 400, 408-09 (D. Md. 2001) (holding that there was no conspiracy between alleged co-conspirators because the alleged individual co-conspirator "could not have been a member of a conspiracy with [alleged corporate co-conspirator] because that corporation was not in existence at the time of the alleged tort."). Furthermore, "an identity between agent and principal leads to a legal impossibility in the context of conspiracy. Two entities which are not legally distinct cannot conspire with one another." *Creative Walking*, 25 S.W.3d at 688.

68.    Plaintiffs' conspiracy claims must fail as only Corizon Health existed at the time of the alleged torts. Plaintiffs allege that Corizon Health, CHS TX, and YesCare conspired together to render Corizon Health insolvent. However, as previously outlined, it was not until the May 3, 2022 Divisional Merger that CHS TX was formed, with all assets and liabilities allocated at its moment of incorporation.[51] It would be impossible for CHS TX to conspire with Corizon Health regarding the Divisional Merger, as CHS TX did not exist until the Merger's completion. Similarly, it was not until after the Divisional Merger that YesCare acquired CHS TX, thereby becoming an operating corporation. Plaintiffs have provided neither allegations nor records of

---

[51] *See* Amended Petition Ex. 9, Certificate of Merger; Amended Petition Ex. 12, Schedule 3.01(a), (b).

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

YesCare's actions prior to the Divisional Merger, and Plaintiffs' exhibits do not show its involvement in any decision-making in the lead-up period.[52]

69.    Moreover, even if all parties existed at the time of the alleged tort, Plaintiffs' conspiracy claims are inconsistent with their successor liability claim, as conspiracy requires two parties under Missouri law.  *Creative Walking*, 25 S.W.3d 682 at 688.  Here, Plaintiffs specifically state that "YesCare and CHS TX are alter–egos, successors, or mere continuations of Corizon Health . . . and are responsible for assuming Corizon Health's obligations to Plaintiffs" while simultaneously alleging that the three parties committed conspiracy.  Amended Petition at ¶ 7. Plaintiffs' conspiracy claims thus undermine their own position.

## CONCLUSION

70.    For the foregoing reasons, the Court should dismiss the Amended Petition, with prejudice, with respect to CHS TX and YesCare.

Dated: December 9, 2022

Respectfully submitted,

**DOWD BENNETT LLP**

*/s/ Philip A. Cantwell*
Philip A. Cantwell #65505
Robyn Parkinson #72956
7733 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
(314) 889-7300 (telephone)
(314) 863-2111 (facsimile)
pcantwell@dowdbennett.com
rparkinson@dowdbennett.com

**WHITE & CASE LLP**

Samuel P. Hershey (*pro hac vice pending*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200

---

[52] *See* Amended Petition Ex. 12, Plan of Merger.

Electronically Filed - Boone - December 09, 2022 - 09:28 PM

Email: sam.hershey@whitecase.com

*Attorneys for CHS TX, Inc. and YesCare Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2022 the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record:

Patrick J. Stueve
Ethan M. Lange
Jordan A. Kane
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

Thomas R. Warburton
twarburton@bradley.com

By: */s/ Philip A. Cantwell*

Electronically Filed - Boone - December 09, 2022 - 12:22 PM

## IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI

**THE CURATORS OF THE UNIVERSITY OF**   )
**MISSOURI and CAPITAL REGION**   )
**MEDICAL CENTER,**   )
           )
      Plaintiffs,   )
           )   Case No. 22BA-CV01701-01
v.   )
           )
**TEHUM CARE SERVICES, INC. d/b/a**   )
**CORIZON HEALTH, INC.,**   )
           )
**CHS TX, Inc.,**   )
           )
**and YESCARE CORP.,**   )
           )
      Defendants.   )

## **[PROPOSED] ORDER**

Before this Court is CHS TX, Inc. and YesCare Corp.'s Motion for Admission Pro Hac Vice as to Samuel P. Hershey. The Court being duly advised on the premises, and for good cause shown,

IT IS HEREBY ADJUDGED, DECREED, AND ORDERED that the Motion for Admission Pro Hac Vice is hereby GRANTED.

### SO ORDERED:

DATED: _____, 2022

_____  12/12/2022

Honorable Joshua C. Devine, Division IV

COURT SEAL OF



BOONE COUNTY

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

**IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI**

| | | |
|---|---|---|
| **THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **v.** | ) ) | **Civil Action No. 22BA-CV01701** |
| **TEHUM CARE SERVICES, INC. d/b/a CORIZON HEALTH, INC., CHS TX, INC., and YESCARE CORP.,** | ) ) ) ) | Division 4 |
| **Defendants.** | ) | |

---

## AMENDED ANSWER TO FIRST AMENDED PETITION

---

Defendant Tehum Care Services, Inc. d/b/a Corizon Health, Inc. ("Defendant" or "Corizon"), by and through undersigned counsel, respectfully submits this Amended Answer to Plaintiffs' First Amended Petition.

### **PARTIES**

1.      Corizon admits that Plaintiff The Curators of the University of Missouri ("Curators") is a state university that operates University Physicians and University of Missouri Health Care. Upon information and belief, Corizon admits the University includes accredited healthcare facilities that are authorized to operate as hospitals in the State of Missouri.

2.      Corizon admits that Plaintiff Capital Region Medical Center ("Capital Region") is a nonprofit corporation organized under the laws of the State of Missouri with a principal place of business in Jefferson City, Missouri. Corizon further admits that Capital Region is an affiliate of Curators that operates a healthcare facility. Upon information and belief, Corizon admits that this healthcare facility is accredited and authorized to operate as a hospital in the State of Missouri.

1

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

3.      Corizon admits that its name was changed to Tehum Care Services, Inc. (but for ease of reference will continue using the name "Corizon" with respect to this litigation). Corizon further admits that Corizon Health, Inc. was formed as part of a four-way merger. Moreover, Corizon admits that one of the four entities that merger to form Corizon Health, Inc. was Corizon LLC, a former Missouri limited liability company. In addition, Corizon admits that it actively provided correctional healthcare throughout the United States, including the State of Missouri, through May 5, 2022. Corizon denies that it currently maintains a present place of business at 205 Powell Place, Suite 104, Brentwood, Tennessee. Corizon also denies that it "transferred" all of its active contracts to CHS TX, Inc. in May 2022 as this mischaracterizes the transaction. Finally, Corizon denies that its officers and directors currently include Sara Tirschwell, Jeff Sholey, J. Scott King, Gregory Ladele, David Gefner, Abe Goldbeger, Jay Leitner, and Isaac Lefkowitz. Corizon denies all remaining allegations not expressly admitted within Paragraph 3 of the First Amended Petition.

4.      Corizon admits that Defendant YesCare is a Texas for-profit corporation formed on January 26, 2022 by organizer/director Sara Tirschwell. Corizon further admits that YesCare maintains a corporate office at 205 Powell Place, Suite 104, Brentwood, Tennessee. Corizon moreover admits that YesCare's executive team includes Sara Tirschwell, Jeff Sholey, J. Scott King, and Gregory Ladele. Corizon denies that David Gefner, Jay Leitner, and Isaac Lefkowitz retain ownership interests in YesCare. Corizon denies all remaining allegations not expressly admitted within Paragraph 4 of the First Amended Petition.

5.      Corizon admits that Defendant CHS TX, Inc. is a Texas for-profit corporation formed on May 3, 2022 by organizer/director Sara Tirschwell. Corizon further admits that CHS TX, Inc. maintains a corporate office at 205 Powell Place, Suite 104, Brentwood, Tennessee.

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

Corizon further admits that two (although not all) of CHS TX, Inc.'s directors are Sara Tirschwell and Jeff Sholey, and that CHS TX, Inc. is a wholly-owned subsidiary of YesCare. Corizon denies all remaining allegations not expressly admitted within Paragraph 5 of the First Amended Petition.

6.      Corizon denies the allegations contained in Paragraph 6 of the First Amended Petition.

7.      Corizon denies the allegations contained in Paragraph 7 of the First Amended Petition.

## JURISDICTION AND VENUE

8.      Corizon admits that this Court has jurisdiction over Corizon. Corizon further admits that with respect to the claims asserted by Plaintiffs against it, venue is proper in this Court.

9.      Corizon admits that this Court has personal jurisdiction over it. Corizon denies the remaining allegations in Paragraph 9 of the First Amended Petition.

10.     Corizon denies the allegations contained in Paragraph 10 of the First Amended Petition.

11.     Corizon admits the allegations contained in Paragraph 11 of the First Amended Petition.

12.     Corizon admits that this case is not removable on the basis of federal diversity jurisdiction in light of the United States District Court for the Western District of Missouri's order remanding this action to Missouri state court.

13.     Corizon admits the allegations contained in Paragraph 13 of the First Amended Petition to the extent it alleges that the United States District Court for the Western District of Missouri remanded this action to Missouri state court, but otherwise notes that the Court's order remanding this action speaks for itself.

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

14.     Corizon admits that with respect to the claims that Plaintiffs have asserted against it as part of the First Amended Petition, venue is proper in this Court. Corizon denies the remaining allegations in Paragraph 14 of the First Amended Petition.

## FACTUAL ALLEGATIONS

15.     Corizon denies that it is a "privately held correctional health care provider," as while Corizon did actively provide correctional healthcare throughout the United States through May 5, 2022, it is no longer an active entity providing correctional healthcare. Corizon denies that it markets itself via corizonhealth.com as "the pioneer and foremost provider of correctional healthcare in the United States" and "a company built on more than 40 years of innovation and expertise in the industry" as this website is no longer accessible.

16.     Corizon admits that it entered into a separate agreement with the Missouri Department of Corrections ("MDOC") whereby Corizon would provide or arrange for the provision of healthcare services to certain inmates and detainees under the control of the MDOC.

17.     Corizon admits the allegations contained in Paragraph 17 of the First Amended Petition.

18.     Corizon admits the allegations contained in Paragraph 18 of the First Amended Petition.

19.     Corizon admits the allegations contained in Paragraph 19 of the First Amended Petition.

20.     Corizon admits the allegations contained in Paragraph 20 of the First Amended Petition.

21.     Corizon admits the allegations contained in Paragraph 21 of the First Amended Petition.

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

22.    Corizon states that Section 3 of the Agreement speaks for itself, and any allegations contained in Paragraph 22 of the First Amended Petition that are contrary to Section 3 of the Agreement are denied. *See generally* Agreement, Compl., Ex. A, ¶ 3.

23.    Corizon admits the allegations contained in Paragraph 23 of the First Amended Petition.

24.    Corizon admits the allegations contained in Paragraph 24 of the First Amended Petition.

25.    Corizon admits the allegations contained in Paragraph 25 of the First Amended Petition, but notes that this provision appears at ¶ 3.3, p. 7.

26.    Corizon admits the allegations contained in Paragraph 26 of the First Amended Petition.

27.    Corizon admits the allegations contained in Paragraph 27 of the First Amended Petition.

28.    Corizon admits that the Agreement provides that "in the event payment is not made within such sixty (60) day time period, an interest charge of (1%) of the claim per month shall be paid," and clarifies that this provision, which is on page 6, not page 7, goes on to provide that: "However, any claim which has been properly denied before the 45th day shall not be subject to interest or penalties." Agreement, Compl., Ex. A, ¶ 3.1.3.

29.    Corizon admits the allegations contained in Paragraph 29 of the First Amended Petition.

30.    Corizon admits the allegations contained in Paragraph 30 of the First Amended Petition.

31.    Corizon admits that Plaintiffs provided Patients with Health Care Services.

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

32.     Corizon admits that it was billed for Health Care Services on approved hospital billing forms. Corizon denies that the Health Care Services rendered were properly billed as "Completed Claims" as defined in the Agreement because of billing discrepancies.

33.     Corizon denies that the Health Care Services rendered were properly submitted as "Completed Claims" as defined in the Agreement within 120 days of the service rendered to Patients because of billing discrepancies.

34.     Corizon is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34 of the First Amended Petition, and therefore denies them.

35.     Corizon is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34 of the First Amended Petition, and therefore denies them.

36.     Corizon admits the allegations contained in Paragraph 36 of the First Amended Petition.

37.     Corizon denies the allegations contained in Paragraph 37 of the First Amended Petition as stated.

38.     Corizon admits the allegations contained in Paragraph 38 of the First Amended Petition.

39.     Because of billing discrepancies, Corizon denies that all Health Care Services rendered were properly billed as "Completed Claims" as defined in the Agreement, therefore the allegations contained in this paragraph are denied as stated.

40.     Corizon admits that it has not paid for all Health Care Services rendered to Patients because of billing discrepancies.

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

41.    Because of billing discrepancies, Corizon denies that the Health Care Services rendered were properly billed as "Completed Claims" as defined in the Agreement, therefore the allegations contained in this paragraph are denied as stated. Corizon admits that it received at least some notices from Plaintiffs.

42.    Because of billing discrepancies, Corizon denies that the Health Care Services rendered were properly billed as "Completed Claims" as defined in the Agreement, therefore the allegations contained in this paragraph are denied as stated. Corizon admits that it received at least some notices from Plaintiffs.

43.    Corizon denies the allegations in Paragraph 43 of the First Amended Petition as stated.

44.    Corizon denies that $12,000,000.00 is the correct amount owed pursuant to the Agreement. Corizon admits that it has not paid for all Health Care Services rendered because Corizon believed that Plaintiffs failed to correctly or accurately bill for Health Care Services rendered. Because of these billing discrepancies, Corizon denies that the Health Care Services rendered were properly billed as "Completed Claims" as defined in the Agreement.

45.    Corizon denies that it is in default on all of Plaintiffs' outstanding "Completed Claims" as referenced throughout the First Amended Petition, therefore denied as stated.

46.    Corizon admits that, in error, it previously responded in discovery that "Corizon shows that the total amount owed to Plaintiffs under the Agreement, once billing discrepancies are accounted for, is $11,174,465.50." This response should have correctly noted that Corizon was billed $11,174,465.50 by Plaintiffs under the Agreement. Corizon disputes that $11,14,465.50 is the correct amount owed to Plaintiffs pursuant to the Agreement as prior limited audits of claims exceeding $25,000.00 revealed billing discrepancies by Plaintiffs. The Parties have not yet

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

engaged in or performed an audit of the remaining claims, and Corizon is therefore without knowledge or information sufficient to form a belief as to what amount is owed to Plaintiffs pursuant to the Agreement.

47.    Corizon admits that, in error, it previously responded in discovery that "Corizon shows that the total amount owed to Plaintiffs under the Agreement, once billing discrepancies are accounted for, is $11,174,465.50." This response should have correctly noted that Corizon was billed $11,174,465.50 by Plaintiffs under the Agreement. Corizon disputes that $11,14,465.50 is the correct amount owed to Plaintiffs pursuant to the Agreement as prior limited audits of claims exceeding $25,000.00 revealed billing discrepancies by Plaintiffs. The Parties have not yet engaged in or performed an audit of the remaining claims, and Corizon is therefore without knowledge or information sufficient to form a belief as to what amount is owed to Plaintiffs pursuant to the Agreement. The remaining allegations contained in Paragraph 47 of the First Amended Petition are denied.

48.    Corizon admits the allegations contained in Paragraph 48 of the First Amended Petition.

49.    Corizon admits the allegations contained in Paragraph 49 of the First Amended Petition.

50.    Corizon admits that in 2014 it won the bid for a renewed contract with the MDOC that was slated to run from July 1, 2014 to June 30, 2021. Corizon notes that its RFP submitted as part of that bid process stated, among other things, that Corizon had "access to more than $72 million in operating cash as of December 31, 2012 (including cash held by its parent company – Valitas)," had access "to a $75 million line of credit," that in 2012 "Valitas generated approximately $1.2 billion of revenues from correctional health care services," that as of 2012

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

Corizon represented "approximately 55% of total Valitas revenues," and that "Corizon's EBITDA for 2012 was $51.6 million." All other allegations contained in Paragraph 50 of the First Amended Petition, including Plaintiffs' characterization of Corizon's RFP statements, are denied.

51.     Corizon admits that in 2016, it sent a proposal to MDOC to amend the terms of the contract and that as part of this proposal Corizon requested a reduction in amount of the required bond performance. Corizon further admits that the MDOC agreed with Corizon's proposed changes. Corizon admits that later that year, Corizon and Plaintiffs entered into the Agreement.

52.     Corizon admits the allegations contained in Paragraph 52 of the First Amended Petition.

53.     Corizon admits the allegations contained in Paragraph 53 of the First Amended Petition.

54.     Corizon admits the allegations contained in Paragraph 54 of the First Amended Petition.

55.     Corizon is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 55 of the First Amended Petition and therefore denies them.

56.     Corizon denies the allegations contained in Paragraph 56 of the First Amended Petition.

57.     Corizon admits that Sara Tirschwell was appointed as Corizon's CEO and that the article attached as Exhibit 3 to the First Amended Petition notes that Sara Tirschwell has "more than 30 years of experience in distressed finance."

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

58.     Corizon admits that it underwent a divisional merger pursuant to the Texas Business Organization Code ("TBOC"). The remaining allegations in Paragraph 58 of the First Amended Petition are denied.

59.     Corizon is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 59 of the First Amended Petition, and therefore denies them.

60.     Corizon is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 60 of the First Amended Petition, particularly what was known to Plaintiffs at a specific time. Corizon admits that it underwent a divisional merger in 2022.

a.     Corizon admits the allegations contained in Paragraph 60(a) of the First Amended Petition.

b.     Corizon admits that on April 28, 2022, it and Valitas Health Services, Inc. were converted from Delaware corporations to Texas corporations. Corizon further admits that at this time its corporate headquarters was in Brentwood, Tennessee. Corizon denies that at this time it maintained a second major corporate office in St. Louis, Missouri. Corizon denies all remaining allegations not expressly admitted within Paragraph 60(b) of the First Amended Petition.

c.     Corizon admits the allegations contained in Paragraph 60(c) of the First Amended Petition.

d.     Corizon admits that it underwent a divisional merger pursuant to the Texas Business Organization Code ("TBOC"). Corizon further admits that CHS TX, Inc. is a wholly-owned subsidiary of YesCare, but expressly notes that on May 5, 2022, YesCare purchased the

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

equity of CHS TX, Inc. Corizon denies all remaining allegations not expressly admitted within Paragraph 60(d) of the First Amended Petition.

61. Corizon denies the allegations contained in Paragraph 61 of the First Amended Petition as stated.

62. Corizon denies the allegations contained in Paragraph 62 of the First Amended Petition as stated.

63. Corizon denies the allegations contained in Paragraph 63 of the First Amended Petition.

64. Corizon admits the allegations contained in Paragraph 64 of the First Amended Petition.

65. Corizon admits that at 8:07 AM on May 16, 2022, BusinessWire published a press release titled "Leading Healthcare Group Forms YesCare, Debuting New Vision and Leadership" that introduced YesCare management. Corizon admits that the individuals listed in the press release referenced in Paragraph 65 of the First Amended Petition previously held positions at Corizon. Corizon denies that those individually currently hold positions at Corizon, and further denies all remaining allegations not expressly admitted within Paragraph 65 of the First Amended Petition.

66. Corizon admits that a UCC-1 was filed in Texas against YesCare Corp. and CHS TX, Inc. on May 16, 2022 and notes that those documents speak for themselves. Corizon denies all remaining allegations not expressly admitted within Paragraph 66 of the First Amended Petition.

67. Corizon admits the allegations contained in Paragraph 67 of the First Amended Petition, and notes that the UCC-3s speak for themselves.

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

68.      Corizon admits that on June 1, 2022, it filed a "Certificate of Amendment" pursuant to which Corizon changed its name to Tehum Care Services, Inc. Corizon further admits that Isaac Lefkowitz was the signatory for this filing.

69.      Corizon admits that it did not inform Plaintiffs of the divisional merger that occurred pursuant to the Texas Business Organization Code ("TBOC"). Corizon denies that it had any obligation to so inform Plaintiffs of this transaction.

70.      Corizon admits the allegations contained in Paragraph 70 of the First Amended Petition. Corizon denies that it had any obligation to so inform Plaintiffs of its name change.

71.      Corizon admits that it was named in this lawsuit as "Corizon Health, Inc." and is referred to as "Corizon Health, Inc." in the public filings in this case. The remaining allegations in Paragraph 71 of the First Amended Petition are denied.

72.      Corizon denies the allegations contained in Paragraph 72 of the First Amended Petition.

73.      Corizon admits that it owes Plaintiffs some amount pursuant to the Agreement that dates back to 2020, but denies that the amount claimed by Plaintiffs is correct or that this constituted a "default" under the Agreement as prior limited audits of claims exceeding $25,000.00 revealed billing discrepancies by Plaintiffs. The Parties have not yet engaged in or performed an audit of the remaining claims, and Corizon is therefore without knowledge or information sufficient to form a belief as to what amount is owed to Plaintiffs pursuant to the Agreement. Corizon denies the remaining allegations contained in Paragraph 73 of the First Amended Petition.

74.      Corizon denies the allegations in Paragraph 74 of the First Amended Petition as stated.

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

75.    Corizon denies the allegations in Paragraph 75 of the First Amended Petition as stated.

76.    Corizon admits that on May 14, 2021, Shawn Lewis (not Darrell Barker) emailed representatives of Capital Region Medical Center and asked that a Capital Regional Medical Center representative, Michelle Hughey, call him "discuss the plans" for "getting [Plaintiffs'] balance paid to the contract position." Corizon further admits that Darrell Barker is a Claims Director for YesCare and noted in an August 2021 email to a Capital Region Medical Center representative that he would have "better visibility" and would "continue to advise what [Corizon] can do week to week to resolve the backlog." Corizon is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 76 of the First Amended Petition, and therefore denies them.

77.    Corizon admits the allegations contained in Paragraph 77 of the First Amended Petition.

78.    Corizon denies that on September 27, 2021 Darrell Barker "promised" Plaintiffs that Corizon would pay Plaintiffs on a rolling basis. Corizon admits that Darrell Barker noted in an email on September 27, 2021 that he would "work to calculate the interest payment for the 2nd quarter and have approved for reimbursement," and that he would "work to calculate the interest for the 3rd quarter next week and have approved for reimbursement." Corizon admits that Darrell Barker provided the schedule listed in Paragraph 78 of the First Amended Petition in his September 27, 2021 email. Corizon denies that Darrell Barker explained that Corizon would "work to[] reimburse billed charges" on that schedule, as this is an incomplete recitation of Darrell Barker's statement. Corizon denies as stated that Darrell Barker's email indicated that Corizon hoped to "close out" the balance within 60-days from the termination of the contract.

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

79.    Corizon denies the allegations contained in Paragraph 79 of the First Amended Petition.

80.    Corizon denies that Plaintiffs' joint demand letter sent to Corizon requested the amounts owed under the Agreement as, because of billing discrepancies, Corizon denies that all of the Health Care Services rendered were properly billed as "Completed Claims" as defined in the Agreement. Corizon admits that Vince Cooper followed up on that letter, and that Carla Copeland responded on behalf of Corizon. The communications between the parties speak for themselves and Corizon denies the remaining allegations to the extent they differ from those communications.

81.    Corizon is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 81 of the First Amended Petition, and therefore denies them.

82.    Corizon is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 82 of the First Amended Petition, and therefore denies them.

83.    Corizon is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 83 of the First Amended Petition, and therefore denies them.

84.    Corizon admits that Sara Tirschwell was the organizer of YesCare. Corizon is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 84 of the First Amended Petition, and therefore denies them.

85.    Corizon admits that Plaintiffs' counsel sent a Demand for Payment of Amounts Due and Owing on or about April 19, 2022. Corizon denies as stated that "nine days later, Corizon

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

Health reincorporated in Texas, underwent the four-way merger, and shed its assets." Corizon further denies that $12,000,000 is the correct amount owed to Plaintiffs pursuant to the Agreement.

86.     Corizon is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 86 of the First Amended Petition, and therefore denies them.

87.     Corizon admits that 205 Powell Place, Suite 104, Brentwood TN 37027 was previously its corporate headquarters. Corizon is no longer an active entity and denies that it currently has a corporate headquarters. Corizon admits that 205 Powell Place, Suite 104, Brentwood TN 37027 is a corporate office for YesCare and CHS TX, Inc., but denies as stated that 205 Powell Place is the "corporate headquarters."

88.     Corizon admits the allegations contained in Paragraph 88 of the First Amended Petition.

89.     Corizon denies that the website referenced in Paragraph 89 of the First Amended Petition states that "YesCare acquired all employees and active contracts of Corizon Health in early 2022."

90.     Corizon admits the allegations contained in Paragraph 90 of the First Amended Petition, but notes that Paragraph 90 is not a complete recitation of the press released referenced therein and that the press release speaks for itself.

91.     Corizon admits that its website is no longer operational. Corizon further admits that Sara Tirschwell was previously Corizon's CEO and is now YesCare's CEO. Corizon further admits that Sara Tirschwell is listed as the sole director for YesCare on its January 26, 2022 Certificate of Formation which speaks for itself.  Corizon admits that Sara Tirschwell is listed a

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

director on Corizon Health Inc.'s January 26, 2022 Certificate of Formation along with Abe Goldberger, David Gefner, and Isaac Lefkowitz.

92.     Corizon admits that J. Scott King is the EVP and Chief Legal Officer for YesCare. Corizon denies the remaining allegations contained in Paragraph 92 of the First Amended Petition.

93.     Corizon admits that Michael Middleton is the Chief Information Officer for YesCare. Corizon denies the remaining allegations contained in Paragraph 93 of the First Amended Petition.

94.     Corizon admits that Michael Murphy is the SVP for State Client Relations and Business Development for YesCare. Corizon denies the remaining allegations contained in Paragraph 94 of the First Amended Petition.

95.     Corizon admits that Karen Davies is the Senior Vice President Community Operations – Southeast for YesCare. Corizon denies the remaining allegations contained in Paragraph 95 of the First Amended Petition.

96.     Corizon admits that Jeffrey Sholey is the Senior Vice President and Chief Financial Officer for YesCare. Corizon denies the remaining allegations contained in Paragraph 96 of the First Amended Petition.

97.     Corizon admits that Steve Tomlin is the Senior Vice President of Reentry and Community Partnerships for YesCare. Corizon denies the remaining allegations contained in Paragraph 97 of the First Amended Petition.

98.     Corizon admits that Gregory Ladele is the Chief Medical Officer of YesCare. Corizon denies the remaining allegations contained in Paragraph 98 of the First Amended Petition.

99.     Corizon admits that Joseph Pastor is the Chief Psychiatric Officer for YesCare. Corizon denies the remaining allegations contained in Paragraph 99 of the First Amended Petition.

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

100.    Corizon admits that Mary Silva is the Chief Clinical Officer for YesCare. Corizon denies the remaining allegations contained in Paragraph 100 of the First Amended Petition.

101.    Corizon admits that Stacie Koch is the Vice President of Operations – Wyoming for YesCare. Corizon denies the remaining allegations contained in Paragraph 101 of the First Amended Petition.

102.    Corizon admits that Tasha McMillan is the Vice President of Operations – Maryland for YesCare. Corizon denies the remaining allegations contained in Paragraph 102 of the First Amended Petition.

103.    Corizon admits that Vandelyn Phillips is the Vice President of Operations – City of Philadelphia for YesCare. Corizon denies the remaining allegations contained in Paragraph 103 of the First Amended Petition.

104.    Corizon denies the allegations contained in Paragraph 104 of the First Amended Petition as stated.

105.    Corizon admits the allegations contained in Paragraph 105 of the First Amended Petition to the extent YesCare's website notes that it has 40 years of experience. Corizon denies the remainder of the allegations in Paragraph 105 of the First Amended Petition.

106.    Corizon admits that the statements contained in Paragraph 106 of the First Amended Petition appear on YesCare's website, but denies the remainder of the allegations in Paragraph 106 of the First Amended Petition.

107.    Corizon admits that there are commonalities between YesCare's social media and marketing content and Corizon's prior social media and marketing content. Corizon further admits that there are references to Corizon on YesCare's website, including on the "Culture" page, but denies any allegation that those reference need to be or will be "scrubbed." Corizon further admits

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

that the LinkedIn icon on YesCare's website takes users to Corizon's LinkedIn. Corizon denies the remaining allegations contained in Paragraph 107 of the First Amended Petition.

108.    Corizon admits that YesCare's social media profiles make reference to Corizon. Corizon denies the remaining allegations contained in Paragraph 108 of the First Amended Petition as stated.

109.    Corizon denies the allegations contained in Paragraph 109 of the First Amended Petition as stated.

110.    Corizon admits that the April 26, 2022 article attached as Exhibit 3 to the First Amended Petition identifies Sara Tirschwell as "CEO of Corizon, Soon to be YesCare" and further notes that "[a]mong our patient population at Corizon, Soon to be YesCare…", but otherwise notes that the article speaks for itself.

111.    Corizon admits that on May 13, 2022, Corizon representatives informed Corizon client(s) of the upcoming changes to Corizon, particularly the divisional merger. Corizon admits that it did not inform Plaintiffs of these upcoming changes, particularly the divisional merger, on May 13, 2022, but expressly denies that it had any obligation to so inform Plaintiffs.

112.    Corizon admits that Jennifer Finger was previously in-house counsel for Corizon and that she currently serves as in-house counsel for YesCare. Corizon admits that Jennifer Finger redlined the yet-to-be-signed Memorandum of Understanding as referenced in Paragraph 112 of the First Amended Petition as stated, but notes that the Memorandum of Understanding speaks for itself.

113.    Corizon admits that the announcement referenced in Paragraph 113 of the First Amended Petition has the subject line "Excited to Announce that Corizon Health is now YesCare."

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

Corizon denies the remaining allegations contained in Paragraph 113 of the First Amended Petition as stated.

114.    Corizon admits that the statements contained in Paragraph 114 of the First Amended Petition are found in the announcement referenced therein, but notes that the announcement, which is attached as Exhibit 37 of the First Amended Petition, speaks for itself.

115.    Corizon admits that member(s) of Corizon's management sent a similar email to that attached as Exhibit 37 to the First Amended Petition to various Corizon clients on or about May 13, 2022.

116.    Corizon admits the allegations contained in Paragraph 116 of the First Amended Petition to the extent it alleges that Sara Tirschwell posted the tweet identified in Paragraph 116, but denies that this tweet was posted on May 16, 2022.

117.    Corizon admits that Karen Davies is YesCare's Senior Vice President of Community Corrections, but denies that Karen Davies is currently Corizon's Senior Vice President. Corizon further admits that Karen Davies sent the email attached as Exhibit 10 to the First Amended Petition on June 2, 2022 and notes that the email speaks for itself.

118.    Corizon denies the allegations contained in Paragraph 118 of the First Amended Petition as stated.

119.    Corizon admits that Karen Davies sent the email attached as Exhibit 10 to the First Amended Petition on June 2, 2022 and notes that the email speaks for itself.

120.    Corizon admits that Ms. Davies' email referenced in Paragraph 120 of the First Amended Petition, which speaks for itself, says that "There will be no change in bank account information at this time, however, that may be updated in the future."

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

121.    Corizon admits that Karen Davies sent the email attached as Exhibit 10 to the First Amended Petition on June 2, 2022 and notes that the email speaks for itself.

122.    Corizon admits that Stacie Koch is YesCare's Vice President of Operations for Wyoming, but denies that Stacie Koch is currently Corizon's Vice President of Operations for Wyoming. Corizon further admits that Stacie Koch sent the email attached as Exhibit 11 to the First Amended Petition on June 3, 2022 to individuals in Wyoming and notes that the email speaks for itself.

123.    Corizon denies the allegations contained in Paragraph 123 of the First Amended Petition as stated.

124.    Corizon admits that one of questions posed in the Q&A attached as Exhibit 38 to the First Amended Petition is "Why is Corizon becoming YesCare?," and that that the Q&A speaks for itself.

125.    Corizon admits the allegations contained in Paragraph 125 of the First Amended Petition but notes that the Q&A speaks for itself.

126.    Corizon admits the allegations contained in Paragraph 126 of the First Amended Petition but notes that the Q&A speaks for itself.

127.    Corizon admits the allegations contained in Paragraph 127 of the First Amended Petition but notes that the Q&A speaks for itself.

128.    Corizon admits that all Health Care Services at issue were rendered before May 5, 2022. Corizon further admits that any amounts owed to Plaintiffs by Corizon were incurred for Health Care Services rendered before May 5, 2022. Corizon denies that it "restructured to avoid those liabilities."

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

129.    Corizon denies the allegations contained in Paragraph 129 of the First Amended Petition.

130.    Corizon denies the allegations contained in Paragraph 130 of the First Amended Petition.

131.    Corizon denies the allegations contained in Paragraph 131 of the First Amended Petition.

132.    Corizon denies the allegations contained in Paragraph 132 of the First Amended Petition.

133.    Corizon denies the allegations contained in Paragraph 133 of the First Amended Petition.

<u>**COUNT I:**</u>
**BREACH OF CONTRACT**
*All Defendants*

134.    Corizon incorporates and realleges its previous responses to the preceding paragraphs as though fully set forth herein.

135.    Corizon admits the allegations contained in Paragraph 135 of the First Amended Petition to the extent that it states Corizon is a party to a valid and enforceable contract with Plaintiffs. Corizon denies that YesCare Corp. or CHS TX, Inc. are parties to that same contract.

136.    Corizon admits the allegations contained in Paragraph 136 of the First Amended Petition.

137.    Corizon admits the allegations contained in Paragraph 137 of the First Amended Petition.

138.    Corizon denies the allegations contained in Paragraph 138 of the First Amended Petition.

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

139.    Corizon denies the allegations contained in Paragraph 139 of the First Amended Petition.

140.    Corizon denies the allegation contained in Paragraph 140 of the First Amended Petition.

141.    Corizon denies the allegation contained in Paragraph 141 of the First Amended Petition as stated.

142.    Because of billing discrepancies, Corizon denies that all of the Health Care Services rendered were properly billed as "Completed Claims" as defined in the Agreement, therefore the allegations contained in Paragraph 142 of the First Amended Petition are denied as stated.

143.    Because of billing discrepancies, Corizon denies that all of the Health Care Services rendered were properly billed as "Completed Claims" as defined in the Agreement, and therefore denies that Plaintiffs requested payment pursuant to the terms of the Agreement, therefore the allegations contained in Paragraph 143 of the First Amended Petition are denied as stated.

144.    Corizon admits that beginning in 2020, Corizon did not pay for all Health Care Services rendered because Corizon believed that Plaintiffs failed to correctly or accurately bill for Health Care Services rendered. Corizon denies that the Health Care Services rendered were properly billed as "Completed Claims" as defined in the Agreement because of billing discrepancies, therefore the allegations contained in Paragraph 144 of the First Amended Petition are denied as stated.

145.    Corizon admits that it has not paid for all Health Care Services rendered to Patients because of billing discrepancies, and denies all remaining allegations contained in Paragraph 145 of the First Amended Petition.

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

146.    Corizon denies the allegations contained in Paragraph 146 of the First Amended Petition.

147.    Corizon denies the allegations contained in Paragraph 147 of the First Amended Petition.

148.    Corizon denies the allegations contained in Paragraph 148 of the First Amended Petition as stated.

<u>COUNT II:</u>
**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**
**All Defendants**

149.    Corizon denies the allegation contained in Paragraph 149 of the First Amended Petition.

150.    Corizon incorporates and realleges its previous responses to the preceding paragraphs as though fully set forth herein.

151.    Corizon admits the allegations contained in Paragraph 151 of the First Amended Petition to the extent that it states Corizon is a party to a valid and enforceable contract with Plaintiffs. Corizon denies that YesCare Corp. or CHS TX, Inc. are parties to that same contract.

152.    Corizon admits the allegations contained in Paragraph 152 of the First Amended Petition.

153.    Corizon admits the allegation contained in Paragraph 153 of the First Amended Petition.

154.    Corizon denies the allegations contained in Paragraph 154 of the First Amended Petition.

155.    Corizon denies the allegation contained in Paragraph 155 of the First Amended Petition.

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

156.    Because of billing discrepancies, Corizon denies that all of the Health Care Services rendered were properly billed as "Completed Claims" as defined in the Agreement, therefore the allegations contained in Paragraph 156 of the First Amended Petition are denied as stated.

157.    Because of billing discrepancies, Corizon denies that all of the Health Care Services rendered were properly billed as "Completed Claims" as defined in the Agreement, and therefore denies that Plaintiffs requested payment pursuant to the terms of the Agreement, therefore the allegations contained in Paragraph 157 of the First Amended Petition are denied as stated.

158.    Corizon is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 158 of the First Amended Petition and therefore denies them.

159.    Corizon is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 159 of the First Amended Petition and therefore denies them.

160.    Corizon is without knowledge or information sufficient to form a belief as to Plaintiffs' expectations, therefore that allegation is denied. Corizon denies as stated the remaining allegations contained in Paragraph 160 of the First Amended Petition.

161.    Corizon is without knowledge or information sufficient to form a belief as to Plaintiffs' expectations, therefore that allegation is denied. Corizon denies as stated the remaining allegations contained in Paragraph 161 of the First Amended Petition.

162.    Corizon denies the allegations contained in Paragraph 162 of the First Amended Petition.

163.    Corizon denies the allegations contained in Paragraph 163 of the First Amended Petition.

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

164.    Corizon denies the allegations contained in Paragraph 164 of the First Amended Petition.

165.    Corizon denies the allegations contained in Paragraph 165 of the First Amended Petition.

**COUNT III:**
**<u>SUCCESSOR LIABILITY</u>**
**Express and/or Implied Agreement to Assume Debts and/or Liabilities**
***YesCare Corp. and CHS TX, Inc.***

166.    Corizon incorporates and realleges its previous responses to the preceding paragraphs as though fully set forth herein.

167.    The allegations contained in Paragraph 167 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

168.    The allegations contained in Paragraph 168 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

169.    The allegations contained in Paragraph 169 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

170.    The allegations contained in Paragraph 170 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

171.    The allegations contained in Paragraph 171 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

172.    The allegations contained in Paragraph 172 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

173.    The allegations contained in Paragraph 173 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

174.     The allegations contained in Paragraph 174 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

175.     The allegations contained in Paragraph 175 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

### COUNT IV:
### SUCCESSOR LIABILITY
### De Facto Merger
### *YesCare Corp. and CHS TX, Inc.*

176.     Corizon incorporates and realleges its previous responses to the preceding paragraphs as though fully set forth herein.

177.     The allegations contained in Paragraph 177 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

178.     The allegations contained in Paragraph 178 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

179.     The allegations contained in Paragraph 179 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

180.     The allegations contained in Paragraph 180 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

181.     The allegations contained in Paragraph 181 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

182.     The allegations contained in Paragraph 182 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

183.     The allegations contained in Paragraph 183 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

184.    The allegations contained in Paragraph 184 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

185.    The allegations contained in Paragraph 185 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

186.    The allegations contained in Paragraph 186 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

187.    The allegations contained in Paragraph 187 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

188.    The allegations contained in Paragraph 188 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

189.    The allegations contained in Paragraph 189 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

190.    The allegations contained in Paragraph 190 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

191.    The allegations contained in Paragraph 191 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

192.    The allegations contained in Paragraph 192 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

193.    The allegations contained in Paragraph 193 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

194.    The allegations contained in Paragraph 194 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

195.    The allegations contained in Paragraph 195 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

196.    The allegations contained in Paragraph 196 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

197.    The allegations contained in Paragraph 197 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

**COUNT V:**
**SUCCESSOR LIABILITY**
**Mere Continuation**
***YesCare Corp. and CHS TX, Inc.***

198.    Corizon incorporates and realleges its previous responses to the preceding paragraphs as though fully set forth herein.

199.    The allegations contained in Paragraph 199 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

200.    The allegations contained in Paragraph 200 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

201.    The allegations contained in Paragraph 201 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

202.    The allegations contained in Paragraph 202 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

203.    The allegations contained in Paragraph 203 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

204.    The allegations contained in Paragraph 204 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

205.    The allegations contained in Paragraph 205 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

206.    The allegations contained in Paragraph 206 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

207.    The allegations contained in Paragraph 207 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

208.    The allegations contained in Paragraph 208 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

209.    The allegations contained in Paragraph 209 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

210.    The allegations contained in Paragraph 210 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

211.    The allegations contained in Paragraph 211 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

212.    The allegations contained in Paragraph 212 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

213.    The allegations contained in Paragraph 213 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

214.    The allegations contained in Paragraph 214 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

**COUNT VI:**
**SUCCESSOR LIABILITY**
**Intent to Defraud Creditors**
***YesCare Corp. and CHS TX, Inc.***

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

215.    Corizon incorporates and realleges its previous responses to the preceding paragraphs as though fully set forth herein.

216.    The allegations contained in Paragraph 216 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

217.    The allegations contained in Paragraph 217 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

218.    The allegations contained in Paragraph 218 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

219.    The allegations contained in Paragraph 219 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

220.    The allegations contained in Paragraph 220 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

221.    The allegations contained in Paragraph 221 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

222.    The allegations contained in Paragraph 222 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

223.    The allegations contained in Paragraph 223 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

224.    The allegations contained in Paragraph 224 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

225.    The allegations contained in Paragraph 225 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

226.    The allegations contained in Paragraph 226 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

227.    The allegations contained in Paragraph 227 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

228.    The allegations contained in Paragraph 228 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

229.    The allegations contained in Paragraph 229 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

230.    The allegations contained in Paragraph 230 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

231.    The allegations contained in Paragraph 231 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

<u>COUNT VII:</u>
**COMMON LAW FRAUD and CONSPIRACY TO COMMIT COMMON LAW FRAUD**
*All Defendants*

232.    Corizon incorporates and realleges its previous responses to the preceding paragraphs as though fully set forth herein.

233.    Corizon denies the allegations contained in Paragraph 233 of the First Amended Petition.

234.    Corizon denies the allegations contained in Paragraph 234 of the First Amended Petition.

235.    Corizon denies the allegations contained in Paragraph 235 of the First Amended Petition.

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

236.     Corizon is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 236 of the First Amended Petition and therefore denies them.

237.     Corizon denies the allegations contained in Paragraph 237 of the First Amended Petition.

238.     Corizon denies the allegations contained in Paragraph 238 of the First Amended Petition as stated.

239.     Corizon denies the allegations contained in Paragraph 239 of the First Amended Petition.

240.     Corizon is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 240 of the First Amended Petition and therefore denies them.

241.     Corizon is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 241 of the First Amended Petition and therefore denies them.

242.     Corizon denies the allegations contained in Paragraph 242 of the First Amended Petition.

243.     Corizon denies the allegations contained in Paragraph 243 of the First Amended Petition.

**COUNT VIII:**
**FRAUDULENT TRANSFER**
**Pursuant to the Missouri Uniform Fraudulent Transfer Act, Mo. Rev. Stat. §§ 428.005 *et seq.***
***Corizon Health***

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

244.    Corizon incorporates and realleges its previous responses to the preceding paragraphs as though fully set forth herein.

245.    The allegations contained in Paragraph 245 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

246.    Paragraph 246 of the First Amended Petition contains a legal conclusion to which Corizon is not required to respond, therefore denied.

247.    Paragraph 247 of the First Amended Petition contains a legal conclusion to which Corizon is not required to respond, therefore denied.

248.    Corizon admits that, in error, it previously responded in discovery that "Corizon shows that the total amount owed to Plaintiffs under the Agreement, once billing discrepancies are accounted for, is $11,174,465.50." This response should have correctly noted that Corizon was billed $11,174,465.50 by Plaintiffs under the Agreement. Corizon disputes that $11,14,465.50 is the correct amount owed to Plaintiffs pursuant to the Agreement as prior limited audits of claims exceeding $25,000.00 revealed billing discrepancies by Plaintiffs. The Parties have not yet engaged in or performed an audit of the remaining claims, and Corizon is therefore without knowledge or information sufficient to form a belief as to what amount is owed to Plaintiffs pursuant to the Agreement.

249.    Corizon denies that $11,14,465.50 is the correct amount owed to Plaintiffs pursuant to the Agreement. The remainder of Paragraph 249 of the First Amended Petition contains a legal conclusion to which Corizon is not required to respond, therefore denied.

250.    Corizon denies the allegations contained in Paragraph 250 of the First Amended Petition.

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

251.    Corizon denies the allegations contained in Paragraph 251 of the First Amended Petition.

252.    Corizon denies that it demonstrated "actual intent" under Mo. Rev. Stat. § 428.024(1) to defraud Plaintiffs, and further:

a.    Corizon denies the allegations contained in Paragraph 252(a) of the First Amended Petition as stated.

b.    Corizon denies the allegations contained in Paragraph 252(b) of the First Amended Petition as stated.

c.    Corizon denies the allegations contained in Paragraph 252(c) of the First Amended Petition as stated.

d.    Corizon denies the allegations contained in Paragraph 252(d) of the First Amended Petition.

e.    Corizon denies the allegations contained in Paragraph 252(e) of the First Amended Petition as stated.

f.    Corizon denies the allegations contained in Paragraph 252(f) of the First Amended Petition.

g.    Corizon denies the allegations contained in Paragraph 252(g) of the First Amended Petition as stated.

h.    Corizon denies the allegations contained in Paragraph 252(h) of the First Amended Petition as stated.

253.    Corizon denies the allegations contained in Paragraph 253 of the First Amended Petition.

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

254.    Corizon denies the allegations contained in Paragraph 254 of the First Amended Petition.

255.    Corizon denies the allegations contained in Paragraph 255 of the First Amended Petition.

256.    Corizon denies the allegations contained in Paragraph 256 of the First Amended Petition.

<u>COUNT IX:</u>
**CIVIL CONSPIRACY TO ENGAGE IN A FRAUDULENT TRANSFER**
**Pursuant to the Missouri Uniform Fraudulent Transfer Act, Mo. Rev. Stat. §§ 428.005 *et***
***seq.***
***All Defendants***

257.    Corizon incorporates and realleges its previous responses to the preceding paragraphs as though fully set forth herein.

258.    The allegations contained in Paragraph 258 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

259.    Paragraph 259 of the First Amended Petition contains a legal conclusion to which Corizon is not required to respond, therefore denied.

260.    Paragraph 260 of the First Amended Petition contains a legal conclusion to which Corizon is not required to respond, therefore denied.

261.    Corizon admits that, in error, it previously responded in discovery that "Corizon shows that the total amount owed to Plaintiffs under the Agreement, once billing discrepancies are accounted for, is $11,174,465.50." This response should have correctly noted that Corizon was billed $11,174,465.50 by Plaintiffs under the Agreement. Corizon disputes that $11,14,465.50 is the correct amount owed to Plaintiffs pursuant to the Agreement as prior limited audits of claims exceeding $25,000.00 revealed billing discrepancies by Plaintiffs. The Parties have not yet

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

engaged in or performed an audit of the remaining claims, and Corizon is therefore without knowledge or information sufficient to form a belief as to what amount is owed to Plaintiffs pursuant to the Agreement.

262.     Corizon denies that $11,14,465.50 is the correct amount owed to Plaintiffs pursuant to the Agreement. The remainder of Paragraph 262 of the First Amended Petition contains a legal conclusion to which Corizon is not required to respond, therefore denied.

263.     Corizon denies the allegations contained in Paragraph 263 of the First Amended Petition.

264.     Corizon denies the allegations contained in Paragraph 264 of the First Amended Petition.

265.     Corizon denies the allegations contained in Paragraph 265 of the First Amended Petition.

266.     Corizon denies the allegations contained in Paragraph 266 of the First Amended Petition.

267.     Corizon denies that it demonstrated "actual intent" under Mo. Rev. Stat. § 428.024(1) to defraud Plaintiffs, and further:

a.     Corizon denies the allegations contained in Paragraph 267(a) of the First Amended Petition as stated.

b.     Corizon denies the allegations contained in Paragraph 267(b) of the First Amended Petition as stated.

c.     Corizon denies the allegations contained in Paragraph 267(c) of the First Amended Petition as stated.

d.      Corizon denies the allegations contained in Paragraph 267(d) of the First Amended Petition.

e.      Corizon denies the allegations contained in Paragraph 267(e) of the First Amended Petition as stated.

f.      Corizon denies the allegations contained in Paragraph 267(f) of the First Amended Petition.

g.      Corizon denies the allegations contained in Paragraph 267(g) of the First Amended Petition as stated.

h.      Corizon denies the allegations contained in Paragraph 267(h) of the First Amended Petition as stated.

268.    Corizon denies the allegations contained in Paragraph 268 of the First Amended Petition.

269.    Corizon denies the allegations contained in Paragraph 269 of the First Amended Petition.

270.    Corizon denies the allegations contained in Paragraph 270 of the First Amended Petition.

271.    Corizon denies the allegations contained in Paragraph 271 of the First Amended Petition.

272.    Corizon denies the allegations contained in Paragraph 272 of the First Amended Petition.

**COUNT X:**
**CONSTRUCTIVE FRAUDULENT TRANSFER**
**Pursuant to the Missouri Uniform Fraudulent Transfer Act, Mo. Rev. Stat. §§ 428.005 *et seq.***
***Corizon Health***

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

273.    Corizon incorporates and realleges its previous responses to the preceding paragraphs as though fully set forth herein.

274.    The allegations contained in Paragraph 274 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

275.    Paragraph 275 of the First Amended Petition contains a legal conclusion to which Corizon is not required to respond, therefore denied.

276.    Paragraph 276 of the First Amended Petition contains a legal conclusion to which Corizon is not required to respond, therefore denied.

277.    Corizon admits that, in error, it previously responded in discovery that "Corizon shows that the total amount owed to Plaintiffs under the Agreement, once billing discrepancies are accounted for, is $11,174,465.50." This response should have correctly noted that Corizon was billed $11,174,465.50 by Plaintiffs under the Agreement. Corizon disputes that $11,14,465.50 is the correct amount owed to Plaintiffs pursuant to the Agreement as prior limited audits of claims exceeding $25,000.00 revealed billing discrepancies by Plaintiffs. The Parties have not yet engaged in or performed an audit of the remaining claims, and Corizon is therefore without knowledge or information sufficient to form a belief as to what amount is owed to Plaintiffs pursuant to the Agreement.

278.    Corizon denies that $11,14,465.50 is the correct amount owed to Plaintiffs pursuant to the Agreement. The remainder of Paragraph 278 of the First Amended Petition contains a legal conclusion to which Corizon is not required to respond, therefore denied.

279.    Corizon denies the allegations contained in Paragraph 279 of the First Amended Petition.

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

280.    Corizon denies the allegations contained in Paragraph 280 of the First Amended Petition.

281.    Corizon denies the allegations contained in Paragraph 281 of the First Amended Petition.

282.    Corizon denies the allegations contained in Paragraph 282 of the First Amended Petition.

283.    Corizon denies the allegations contained in Paragraph 283 of the First Amended Petition.

<u>COUNT XI:</u>
**CONSPIRACY TO ENGAGE IN A CONSTRUCTIVE FRAUDULENT TRANSFER**
**Pursuant to the Missouri Uniform Fraudulent Transfer Act, Mo. Rev. Stat. §§ 428.005 *et***
***seq.***
***All Defendants***

284.    Corizon incorporates and realleges its previous responses to the preceding paragraphs as though fully set forth herein.

285.    The allegations contained in Paragraph 285 of the First Amended Petition are not directed to Corizon, and Corizon therefore provides no response.

286.    Paragraph 286 of the First Amended Petition contains a legal conclusion to which Corizon is not required to respond, therefore denied.

287.    Paragraph 287 of the First Amended Petition contains a legal conclusion to which Corizon is not required to respond, therefore denied.

288.    Corizon admits that, in error, it previously responded in discovery that "Corizon shows that the total amount owed to Plaintiffs under the Agreement, once billing discrepancies are accounted for, is $11,174,465.50." This response should have correctly noted that Corizon was billed $11,174,465.50 by Plaintiffs under the Agreement. Corizon disputes that $11,14,465.50 is

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

the correct amount owed to Plaintiffs pursuant to the Agreement as prior limited audits of claims exceeding $25,000.00 revealed billing discrepancies by Plaintiffs. The Parties have not yet engaged in or performed an audit of the remaining claims, and Corizon is therefore without knowledge or information sufficient to form a belief as to what amount is owed to Plaintiffs pursuant to the Agreement.

289.    Corizon denies that $11,14,465.50 is the correct amount owed to Plaintiffs pursuant to the Agreement. The remainder of Paragraph 289 of the First Amended Petition contains a legal conclusion to which Corizon is not required to respond, therefore denied.

290.    Corizon denies the allegations contained in Paragraph 290 of the First Amended Petition.

291.    Corizon denies the allegations contained in Paragraph 291 of the First Amended Petition.

292.    Corizon denies the allegations contained in Paragraph 292 of the First Amended Petition.

293.    Corizon denies the allegations contained in Paragraph 293 of the First Amended Petition.

294.    Corizon denies the allegations contained in Paragraph 294 of the First Amended Petition.

295.    Corizon denies the allegations contained in Paragraph 295 of the First Amended Petition.

296.    Corizon denies the allegations contained in Paragraph 296 of the First Amended Petition.

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

297.    Corizon denies the allegations contained in Paragraph 297 of the First Amended Petition.

298.    Corizon denies the allegations contained in Paragraph 298 of the First Amended Petition.

Corizon denies that Plaintiffs are entitled to the relief requested within the "Prayer for Relief."

## ADDITIONAL AND AFFIRMATIVE DEFENSES

1.    Plaintiffs have failed to state a claim upon which relief may be granted.

2.    Plaintiffs' claims are barred by the doctrines of unclean hands, waiver, estoppel, and laches.

3.    Plaintiffs' breach of contract claim is barred as Plaintiffs were the first to materially breach the Agreement by failing to correctly or accurately bill for Health Care Services rendered.

4.    Plaintiffs' claims are barred to the extent they failed to properly and timely appeal the denial or underpayment of claims or failed to exhaust the remedial measures included in the Agreement and provider manuals.

5.    The Corizon divisional merger was not an assignment or transfer. Instead, it was a divisional merger pursuant to the Texas Business Organization Code.

6.    At no point did Corizon have actual intent to frustrate Plaintiffs' ability to collect any amounts owed to it, or to hinder, delay, or defraud Plaintiffs.

7.    To the extent there was a "transfer," that "transfer" was for reasonably equivalent value and performed in good faith.

8.    To the extent there was a "transfer," that transfer is not voidable under Mo. Rev. Stat. § 428.029 as it was made in the ordinary course of Corizon's business or financial affairs.

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

9.      To the extent there was a "transfer," Corizon did not have a wrongful or unlawful objective in effectuating that transfer.

10.     Plaintiffs have failed to plead the elements of fraud with the necessary specificity and/or particularity.

11.     The divisional merger transaction may be fairly reconciled with honesty, and therefore fraud may not be presumed.

12.     At no point did Corizon engage in intentional conduct without just cause and with deliberate and flagrant disregard for Plaintiffs' rights.

13.     Plaintiffs' claims against Corizon seeking punitive damages violate the substantive and procedural rights provided and guaranteed to Corizon by the United States and Missouri Constitutions as well as the public policy of the state of Missouri.

14.     To the extent Plaintiffs are entitled to an award of punitive damages against Corizon, punitives damages cannot exceed the Missouri statutory limit.

15.     Corizon reserves the right to assert such additional defenses and additional affirmative defenses as may be revealed by discovery in this matter.

**Dated:**  December 16, 2022

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

Respectfully submitted,


  /s/  R. Thomas Warburton
R. Thomas Warburton (MO Bar No. 65477)
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 5th Avenue N.
Birmingham, AL 35203
205.521.8987
twarburton@bradley.com

*Counsel for Tehum Care Services, Inc. d/b/a
Corizon Health, Inc.*

Electronically Filed - BOONE - December 16, 2022 - 03:02 PM

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2022, a copy of the foregoing was filed electronically with the Clerk's office by using the CM/ECF system. We provided copies to:

Patrick J. Stueve
Ethan M. Lange
Jordan A. Kane
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

*Counsel for Plaintiffs*

Philip A. Cantwell
Robyn Parkinson
Dowd Bennett LLP
7733 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
(314) 889-7300 (telephone)
(314) 863-2111 (facsimile)
pcantwell@dowdbennett.com
rparkinson@dowdbennett.com

Samuel P. Hershey
White & Case LLP
1221 Avenue of the Americas
New York, New York  10020
(212) 819-8200 (telephone)
sam.hershey@whitecase.com

*Attorneys for CHS TX, Inc. and YesCare Corp.*

_____
R. Thomas Warburton

Electronically Filed - BOONE - December 20, 2022 - 12:23 PM

## IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI

THE CURATORS OF THE UNIVERSITY OF     )
MISSOURI and CAPITAL REGION           )
MEDICAL CENTER,                       )
                                      )
                Plaintiffs,           )          Case No. 22BA-CV01701-01
                                      )
v.                                    )
                                      )          Division 4
TEHUM CARE SERVICE, INC. d/b/a        )
CORIZON HEALTH, INC., CHS TX, INC.,   )
and YESCARE CORP.,                    )
                                      )
                                      )
                Defendants.           )

## PLAINTIFFS' MOTION FOR LEAVE TO FILE UNDER SEAL PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND CERTAIN EXHIBITS

Plaintiffs The Curators of the University of Missouri and Capital Region Medical Center respectfully request the Court enter an order granting Plaintiff leave to file under seal: (1) Plaintiffs' Motion for Preliminary Injunction; and (2) Exhibits 16-18, 23, 25-30, 33-45, 47, 63, 68, 77. In support of the present Motion, Plaintiffs state as follows:

1.      On December 9, 2022, the Court entered the Stipulated Protective Order in this case. The Protective Order allows the parties to designate documents and material as "Confidential," which the Protective Order defines to include information "that the producing party believes in good faith to contain or reflect trade secrets of other confidential, proprietary, and/or sensitive research, development, technical, technological, customer, marketing, financial, commercial, operational, or personnel information." Stipulated Protective Order at ¶ 2.

2.      The Protective Order requires a party to conditionally file under seal any pleading or exhibit containing Confidential Information. *Id.* at ¶ 7.

Electronically Filed - BOONE - December 20, 2022 - 12:23 PM

3.     Plaintiffs' Motion for Preliminary Injunction substantively discusses and incorporates Confidential Information designated by Defendants YesCare Corp. and CHS TX, Inc., and Exhibits 16-18, 23, 25-30, 33-45, 47, 63, 68, 77 thereto have been designated Confidential by the same Defendants. Plaintiffs take no position on whether such information is, in fact, confidential.

Accordingly, Plaintiffs respectfully request that the Court grant this Motion.

Dated: December 20, 2022                Respectfully submitted,

                                        **STUEVE SIEGEL HANSON LLP**

                                         */s/ Patrick J. Stueve*
                                        Patrick J. Stueve MO Bar # 37682
                                        Ethan M. Lange MO Bar # 67857
                                        Jordan A. Kane MO Bar # 71028
                                        460 Nichols Road, Suite 200
                                        Kansas City, Missouri 64112
                                        816-714-7100 (p)
                                        816-714-7101 (f)
                                        stueve@stuevesiegel.com
                                        lange@stuevesiegel.com
                                        kane@stuevesiegel.com

                                        **COUNSEL FOR PLAINTIFFS THE
                                        CURATORS OF THE UNIVERSITY OF
                                        MISSOURI AND CAPITAL REGION
                                        MEDICAL CENTER**

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

# EXHIBIT 1

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

### IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI

THE CURATORS OF THE UNIVERSITY )
OF MISSOURI and CAPITAL REGION )
MEDICAL CENTER, )
       )
       **Plaintiffs,** )
       )
v. )     **Civil Action No. 22BA-CV01701**
       )
TEHUM CARE SERVICES, INC. d/b/a )    Division 4
CORIZON HEALTH, INC., CHS TX, INC., )
and YESCARE CORP., )
       )
       )
       **Defendants.** )

### DEFENDANT TEHUM CARE SERVICES INC. d/b/a CORIZON HEALTH, INC.'S RESPONSES TO PLAINTIFFS' SECOND SET OF REQUESTS FOR ADMISSION

Defendant Tehum Care Services, Inc. d/b/a/ Corizon Health, Inc. ("Corizon") in response to Plaintiffs' Second Set of Requests for Admission (the "Requests for Admission"), states as follows:

### SECOND REQUESTS FOR ADMISSION

19.     Admit that in response to Judge Nanette K. Laughrey's October 13, 2022 order in Case No. 2:22-cv-04100 that "Defendants shall pay $12,000 to Plaintiffs on or before October 20, 2022." YesCare issued a $12,000 check to Stueve Siegel Hanson, LLP. *See* Case No. 2:22-cv-04100, Dkt 29.

**ANSWER**: Corizon admits that the order referenced in Request No. 19 states "Defendants shall pay $12,000 to Plaintiffs on or before October 20, 2022." Corizon admits a $12,000 check was issued to Stueve Siegel Hanson, but denies that the party listed on the check is YesCare as the check was issued by Geneva Consulting, LLC.

20.     Admit that YesCare acquired all the active business of Corizon Health.

**ANSWER**: Corizon objects to this Request for Admission as not relevant because Corizon is the only proper party to this suit and neither YesCare Corp. nor CHS TX, Inc. are parties to the Agreement. Subject to and without waiving its objections, Corizon denies this Request for Admission as written.

1

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

21.     Admit that YesCare acquired all the employees of Corizon Health.

**ANSWER**: Corizon objects to this Request for Admission as not relevant because Corizon is the only proper party to this suit and neither YesCare Corp. nor CHS TX, Inc. are parties to the Agreement. Subject to and without waiving its objections, Corizon denies this Request for Admission as written.

22.     Admit that YesCare and CHS TX assumed the liabilities of Corizon Health necessary for the uninterrupted continuation of Corizon Health's business, including rent, electricity, salaries, wages, and business services expenses.

**ANSWER**: Corizon objects to this Request for Admission as not relevant because Corizon is the only proper party to this suit and neither YesCare Corp. nor CHS TX, Inc. are parties to the Agreement. Subject to and without waiving its objections, Corizon denies this Request for Admission as written.

23.     Admit that there were "no operation changes" for Corizon Health's active business after YesCare acquired it, including that "Staff, P&P, contract structures" all remained the same. *See* Am. Pet. ¶¶ 117-118.

**ANSWER**: Corizon objects to this Request for Admission as not relevant because Corizon is the only proper party to this suit and neither YesCare Corp. nor CHS TX, Inc. are parties to the Agreement. Subject to and without waiving its objections, Corizon admits that Karen Davies sent the email included as Amended Petition Exhibit 10, that this email included the language quoted in Request No. 23, and that the email speaks for itself. Corizon denies that YesCare "acquired" Corizon.

24.     Admit that "Corizon Health is now YesCare." Am. Pet. ¶ 114; Am. Pet. Ex. 37.

**ANSWER**: Corizon objects to this Request for Admission as not relevant because Corizon is the only proper party to this suit and neither YesCare Corp. nor CHS TX, Inc. are parties to the Agreement. Subject to and without waiving its objections, Corizon admits that Sara Tirschwell sent the email included as Amended Petition Exhibit 37, that this email included the language quoted in Request No. 24 as part of the email's subject line, and that the email speaks for itself.

25.     Admit that Sara Tirschwell informed clients that the transition from Corizon Health to YesCare "will not impact our service to you in any way." Am. Pet ¶114; Am. Pet. Ex. 37.

**ANSWER**: Corizon objects to this Request for Admission as not relevant because Corizon is the only proper party to this suit and neither YesCare Corp. nor CHS TX, Inc. are parties to the

2

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

Agreement. Subject to and without waiving its objections, Corizon admits that Sara Tirschwell sent the email included as Amended Petition Exhibit 37, that this email included the language quoted in Request No. 25, and that the email speaks for itself.

26.    Admit that Sara Tirschwell represented to clients that the transition from Corizon Health to YesCare was "the company's next chapter as a leading correctional healthcare company." "under the YesCare name." Am. Pet. Ex. 37.

**ANSWER**: Corizon objects to this Request for Admission pursuant to Mo. R. Civ. P. 59.01(a), which provides that "a party may serve upon any other party no more than 25 written requests for the admission, without leave of court or stipulation of the parties." Corizon further objects to this Request for Admission as not relevant because Corizon is the only proper party to this suit and neither YesCare Corp. nor CHS TX, Inc. are parties to the Agreement. Subject to and without waiving its objections, Corizon admits that Sara Tirschwell sent the email included as Amended Petition Exhibit 37, that this email included the language quoted in Request No. 26, and that the email speaks for itself.

27.    Admit that Sara Tirschwell referred to the transition from Corizon Health to "our name change." Am. Pet. ¶117.

**ANSWER**: Corizon objects to this Request for Admission pursuant to Mo. R. Civ. P. 59.01(a), which provides that "a party may serve upon any other party no more than 25 written requests for the admission, without leave of court or stipulation of the parties." Subject to and without waiving its objections, denied as written. Corizon admits that Karen Davies wrote the email quoted in Paragraph 117 of the First Amended Petition and notes that the email speaks for itself.

28.    Admit that 205 Powell Place, Suite 104, Brentwood, TN 37027 is Your corporate headquarters.

**ANSWER**: Corizon objects to this Request for Admission pursuant to Mo. R. Civ. P. 59.01(a), which provides that "a party may serve upon any other party no more than 25 written requests for the admission, without leave of court or stipulation of the parties." Subject to and without waiving its objections, Corizon denies that 205 Powell Place, Suite 104, Brentwood, TN 37207 is its corporate headquarters because it is no longer an active entity and denies it currently have a "corporate headquarters." Corizon admits that 205 Powell Place, Suite 104, Brentwood, TN 37207 was previously its corporate headquarters.

29.    Admit that there was "no change in bank account information" in the transition from Corizon Health to YesCare. *See* Am. Pet ¶120.

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**ANSWER**: Corizon objects to this Request for Admission pursuant to Mo. R. Civ. P. 59.01(a), which provides that "a party may serve upon any other party no more than 25 written requests for the admission, without leave of court or stipulation of the parties." Corizon further objects to this Request for Admission as not relevant because Corizon is the only proper party to this suit and neither YesCare Corp. nor CHS TX, Inc. are parties to the Agreement. Subject to and without waiving its objections, Corizon admits that Ms. Davies' email referenced in Paragraph 120 of the First Amended Petition, which speaks for itself, says that "[t]here will be no change in bank account information at this time, however, that may be updated in the future." This email otherwise speaks for itself.

30.    Admit that Corizon Health's federal identification number is the same as YesCare's federal identification number.  *See* Am. Pet ¶125.

**ANSWER**:  Corizon objects to this Request for Admission pursuant to Mo. R. Civ. P. 59.01(a), which provides that "a party may serve upon any other party no more than 25 written requests for the admission, without leave of court or stipulation of the parties." Corizon further objects to this Request for Admission as not relevant because Corizon is the only proper party to this suit and neither YesCare Corp. nor CHS TX, Inc. are parties to the Agreement. Subject to and without waiving its objections, Corizon admits that its federal identification number is the same as YesCare's federal identification number.

31.    Admit that Corizon Health has insufficient assets to pay Plaintiffs the $11,174,465.50 owed under the Agreement.

**ANSWER**: Corizon objects to this Request for Admission pursuant to Mo. R. Civ. P. 59.01(a), which provides that "a party may serve upon any other party no more than 25 written requests for the admission, without leave of court or stipulation of the parties." Subject to and without waiving its objections, Corizon admits that it has insufficient assets to pay Plaintiffs the amount that Plaintiffs claim Corizon owes under the Agreement.

32.    Admit that, immediately prior to the 2022 Corporate Restructuring, Corizon Health had sufficient assets to pay the $11,174,465.50 owed under the Agreement.

**ANSWER**: Corizon objects to this Request for Admission pursuant to Mo. R. Civ. P. 59.01(a), which provides that "a party may serve upon any other party no more than 25 written requests for the admission, without leave of court or stipulation of the parties." Subject to and without waiving its objections, Corizon denies that "immediately prior to the" Divisional Merger, it had sufficient assets to pay Plaintiffs the amount that Plaintiffs claim Corizon owed under the Agreement. Corizon denies the accuracy of Plaintiffs' articulation of the Divisional Merger as the "2022 Corporate Restructuring."

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

33.    Admit that YesCare and CHS TX are each an "Affiliated Entity" under the Agreement.

**ANSWER**: Corizon objects to this Request for Admission pursuant to Mo. R. Civ. P. 59.01(a), which provides that "a party may serve upon any other party no more than 25 written requests for the admission, without leave of court or stipulation of the parties." Subject to and without waiving its objections, denied.

34.    Admit that Corizon Health ceased it ordinary business operations following the 2022

Corporate Restructuring.

**ANSWER**: Corizon objects to this Request for Admission pursuant to Mo. R. Civ. P. 59.01(a), which provides that "a party may serve upon any other party no more than 25 written requests for the admission, without leave of court or stipulation of the parties." Subject to and without waiving its objections, Corizon admits that it ceased its ordinary business operations following the 2022 Divisional Merger. Corizon denies the accuracy of Plaintiffs' articulation of the Divisional Merger as the "2022 Corporate Restructuring."

35.    Admit that Corizon Health was paid in full by the Missouri Department of Corrections

pursuant to Corizon Health's contract with the Missouri Department of Corrections to provide

healthcare services to inmates.

**ANSWER**: Corizon objects to this Request for Admission pursuant to Mo. R. Civ. P. 59.01(a), which provides that "a party may serve upon any other party no more than 25 written requests for the admission, without leave of court or stipulation of the parties." Subject to and without waiving its objections, Corizon admits that the Missouri Department of Corrections paid Corizon all base fees owed pursuant to Corizon's contract with the Missouri Department of Corrections to provide healthcare services to inmates and further paid Corizon pursuant to a Settlement Agreement to settle COVID-19 related costs incurred by Corizon during the contract period.

Dated:  November 28, 2022                                Respectfully submitted,

R. Thomas Warburton (MO Bar No. 654777)
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 5th Avenue N.
Birmingham, AL  35203
Telephone: 205.521.8987
twarburton@bradley.com

*Counsel for Tehum Care Services, Inc. d/b/a*
*Corizon Health, Inc.*

5

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of November, 2022, I served the following individuals by electronic mail:

Patrick J. Stueve
Ethan M. Lange
Jordan A. Kane
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

*Counsel for Plaintiffs*

Philip A. Cantrell
Dowd Bennett LLP
7733 Forsyth Blvd./Suite 1900
St. Louis, Missouri 63105
pcantwell@dowdbennett.com

*Counsel for CHS TX, Inc. and YesCare Corp.*

_____
R. Thomas Warburton

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

# EXHIBIT 2

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI**

| | |
|---|---|
| THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER, ) ) ) ) | |
|     **Plaintiffs,** ) | |
| **v.** ) | **Civil Action No. 22BA-CV01701** |
| TEHUM CARE SERVICES, INC. d/b/a CORIZON HEALTH, INC., CHS TX, INC., and YESCARE CORP., ) ) ) ) ) | Division 4 |
|     **Defendants.** ) | |

**DEFENDANT TEHUM CARE SERVICES INC. d/b/a CORIZON HEALTH, INC.'S RESPONSES TO PLAINTIFFS' SECOND SET OF INTERROGATORIES**

Defendant Tehum Care Services Inc. d/b/a Corizon Health, Inc. ("Corizon"), in response to Plaintiffs' Second Set of Interrogatories (the "Interrogatories"), states as follows:

**SECOND SET OF INTERROGATORIES**

13.    Explain why YesCare Corp. paid the $12,000 judgment entered against You by Judge Nanette K. Laughrey in her October 13, 2022 order in Case No. 2:22-cv-04100 that "Defendants shall pay $12,000 to Plaintiffs on or before October 20, 2022." In your answer, identify: (1) the person(s) from YesCare Corp. and Corizon Health that authorized YesCare's payment of the $12,000 judgment; (2) the terms and/or details of the agreement, arrangement, or understanding between Corizon Health and YesCare Corp. that formed the basis of YesCare Corp's payment of the $12,000 judgment to Plaintiffs; (3) the terms of any and all agreements or arrangements between you and YesCare Corp. to pay the monetary obligations incurred by You; (4) any bank accounts, funds, or assets accessible to both You and YesCare Corp., including whether you have access, custody, or control over the funds in the account used to pay the $12,000 judgment.

**RESPONSE**: Corizon objects to parts (2), (3), and (4) of this Interrogatory as they are entirely

1

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

unrelated to the initial substantive inquiry of this Interrogatory. Corizon objects to parts (2), (3), and (4) of this Interrogatory as not relevant because Corizon is the only proper party to this suit and neither YesCare Corp. nor CHS TX, Inc. are parties to the Agreement. Corizon moreover objects to parts (2), (3), and (4) of this Interrogatory to the extent they are overly broad and unduly burdensome. Furthermore, Corizon objects to parts (2), (3), and (4) of this interrogatory to the extent they seek information protected from disclosure by the attorney-client privilege, the work product doctrine, or other privileges. Subject to and without waiving Corizon's objections, YesCare Corp. did not pay the $12,000 judgment entered against Corizon by Judge Nanette K. Laughrey in her October 13, 2022 order. Geneva Consulting, LLC paid the $12,000 judgment. Geneva Consulting is named on the check, and Corizon notes that the check speaks for itself. The person who authorized the $12,000 payment was Isaac Lefkowitz, a Director of Corizon.

14.　　Please identify the efforts You took to secure funding from the Missouri Department of Corrections to satisfy Your obligations under the Agreement.

**RESPONSE**:  Corizon objects to this Interrogatory as not relevant. Subject to and without waiving its objections, Corizon was paid by the Missouri Department of Corrections in the normal course of business the base amounts owed pursuant to Corizon's agreement with the Missouri Department of Corrections. Additionally, on December 20, 2021, Corizon amended its agreement with the Missouri Department of Corrections to settle COVID-19 related costs incurred by Corizon during the contract period. Amendment #21 to Contract C314039001 (the "Settlement Agreement") stated that the agreed-to payment would be the last payment for past or future pandemic-related expenses and would resolve and settle all matters related to such invoicing and fully satisfied all claims of Corizon.

15.　　During the Relevant Time Period, did you receive funds owed to you by the Missouri Department of Corrections for the services provided to them by You or Your independent contractors? If so, please identify: (1)  the amount of funds received; (2) when you received them; (3) where they are currently located; and (4) each person who has access, custody, or control over those funds and their affiliation to You, YesCare Corp., and/or CHS TX, Inc.; (5) whether you received all funds owed to you by the Missouri Department of Corrections, and if not, the amount of funds still owed.

**RESPONSE**:  Corizon objects to parts (3) and (4) of this Interrogatory as not relevant. Corizon objects to part (4) of this Interrogatory as not relevant because Corizon is the only proper party to this suit and neither YesCare Corp. nor CHS TX, Inc. are parties to the Agreement. Subject to and without waiving its objections, Corizon was paid in full by the Missouri Department of Corrections the total base funds owed totaling approximately $764,848,295.67 paid over the course of the term of the Agreement, generally on a monthly basis. Additionally, Corizon received $4.9 million from the Missouri Department of Corrections pursuant to the terms of the Settlement

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

Agreement entered on or about December 20, 2021. The Settlement Agreement resolved all outstanding claims and costs Corizon incurred during the contract period due to the COVID-19 pandemic.

16.     Identify each of Your shareholders, officers, and directors for the Relevant Time Period.  For each person identified in your answer, also state: (1) the title and/or role of each person at Corizon Health; (2) the dates each person held such title and/or role; (3) whether each person is or has been a shareholder, officer, director, or is/was otherwise affiliated with YesCare Corp. or CHS TX, Inc.; (4) if so, the title, role, or affiliation each person has or had with YesCare Corp. of CHS TX, Inc.; and (5) the dates of such title, role, or affiliation.

**RESPONSE**: Corizon objects to this Interrogatory as overly broad and unduly burdensome. Corizon further objects to this Interrogatory as it relates to YesCare Corp. and CHS TX, Inc. as not relevant because Corizon is the only proper party to this suit and neither YesCare Corp. nor CHS TX, Inc. are parties to the Agreement. Subject to and without waiving its objections, Corizon incorporates by reference the list being produced herewith which covers the Relevant Time Period.

Dated:  November 28, 2022

Respectfully submitted,

R. Thomas Warburton (MO Bar No. 654777)
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 5th Avenue N.
Birmingham, AL  35203
Telephone: 205.521.8987
twarburton@bradley.com

*Counsel for Tehum Care Services, Inc. d/b/a*
*Corizon Health, Inc.*

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of November, 2022, I served the following individuals

by electronic mail:

Patrick J. Stueve
Ethan M. Lange
Jordan A. Kane
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

*Counsel for Plaintiffs*

Philip A. Cantrell
Dowd Bennett LLP
7733 Forsyth Blvd./Suite 1900
St. Louis, Missouri 63105
pcantwell@dowdbennett.com

*Counsel for CHS TX, Inc. and YesCare Corp.*

_____
R. Thomas Warburton

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

# EXHIBIT 3

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

THE CURATORS OF THE
UNIVERSITY OF MISSOURI, et al.,

       Plaintiffs,

vs.                        Case No.  2:22-cv-04100-NKL

CORIZON HEALTH, INC., et al.,

       Defendants.

_____/

**DEFENDANTS' RESPONSES TO PLAINTIFFS' FIRST SET OF
INTERROGATORIES**

       Defendants, Corizon Health, Inc. and Corizon, LLC (together "Defendants" or "Corizon"),

in response to Plaintiffs' First Set of Interrogatories (the "Interrogatories"), state as follows:

**FIRST SET OF INTERROGATORIES**

       1.      Identify all Completed Claims submitted to You on the approved hospital billing

forms within one hundred and twenty (120) days of date of service rendered to the Patient.

       **RESPONSE**: Corizon objects to Plaintiffs' incomplete definition of the contractually defined
term "Completed Claim." Subject to and without waiving its objections, and pursuant to Federal Rule
of Civil Procedure 33(d), which permits a party responding to an interrogatory to answer by "(1)
specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to
locate and identify them as readily as the responding party could; and (2) giving the interrogating
party a reasonable opportunity to examine and audit the records and to make copies, compilations,
abstracts, or summaries," please refer to the "Claim Status" spreadsheets being produced which list
each claim submitted by each Plaintiff to Corizon, as well as each claim submitted by the physicians
for each Plaintiff (whom billed Corizon separately). For each claim, the Claim Status spreadsheets
include the type of claim form utilized, the date of the service, and the received date for the claim,
among other categories of information.

1

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

2.      Identify all Completed Claims submitted by Plaintiffs under the Agreement for which you have not made full payment to Plaintiffs.  In answering this Interrogatory, identify any partial payments You have made to Plaintiffs for each Completed Claim in which you have not made full payment.

**RESPONSE**:  Corizon objects to Plaintiffs' incomplete definition of the contractually defined term "Completed Claim." Subject to and without waiving its objections, and pursuant to Federal Rule of Civil Procedure 33(d), which permits a party responding to an interrogatory to answer by "(1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries," please refer to the documents being produced titled "Provider Remittance Advice," which were sent at various times between 2016 and 2022, and directed to Plaintiffs. For each disputed claim (which are identified by Claim Number and Service Date), the Provider Remittance Advice documents identify the amount billed, the ineligible portion of the amount billed, the allowed portion of the amount billed, the discount applied, any amount withheld, and the amount paid. Also pursuant to Federal Rule of Civil Procedure 33(d), please refer to the "Claim Status" spreadsheets which summarize all claims submitted by each Plaintiff to Corizon, as well as the physicians for each Plaintiff (whom billed Corizon separately).

3.      Explain in detail why You have not paid Plaintiffs in full for Completed Claims submitted to You on the approved hospital billing forms within one hundred and twenty (120) days of date of service rendered to the Patient.

**RESPONSE**:  Corizon objects to Plaintiffs' incomplete definition of the contractually defined term "Completed Claim." Subject to and without waiving its objections, and pursuant to Federal Rule of Civil Procedure 33(d), which permits a party responding to an interrogatory to answer by "(1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries," please refer to the documents being produced titled "Provider Remittance Advice," which were sent at various times between 2016 and 2022, and directed to Plaintiffs. The Provider Remittance Advice documents contain as explanation code (abbreviated "Expl. Code") for each claim that Corizon maintains that Plaintiffs failed to correctly or accurately bill. Those explanation codes succinctly provide why Corizon did not pay Plaintiffs for such claims.

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

4.      Explain in detail why You "believed that Plaintiffs failed to correctly or accurately bill for Health Care Services rendered."  *See, e.g.,* Doc. 9, p. 4 at ¶ 28.

**RESPONSE**: Pursuant to Federal Rule of Civil Procedure 33(d), which permits a party responding to an interrogatory to answer by "(1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries," please refer to the documents being produced titled "Provider Remittance Advice," which were sent at various times between 2016 and 2022, and directed to Plaintiffs.  The Provider Remittance Advice documents contain as explanation code (abbreviated "Expl. Code") for each claim that Corizon maintains that Plaintiffs failed to correctly or accurately bill. Those explanation codes succinctly provide why Corizon "believed that Plaintiffs failed to correctly or accurately bill for Health Care Services rendered."

5.      Explain in detail why You contend Plaintiffs "failed to properly and timely appeal the denial or underpayment of claims or failed to exhaust the remedial measures included in the Agreements and provider manuals," including identification of all "Agreements" and "provider manuals."  *See, e.g.,* Doc. 9, p. 7 at ¶ 4.

**RESPONSE**:    The appeal process is outlined in the Agreement at Section 3.5 and states as follows:

3.5 Appeal Process. In the event that a dispute arises concerning the resolution of a Completed Claim, Hospital may appeal by submitting the dispute to Corizon Health in writing, with supporting documentation, within ninety (90) calendar days following Corizon Health's response or denial of the Completed Claim. Corizon Health shall provide a reply within forty five (45) days following receipt of Hospital's appeal. If Hospital fails to dispute in writing Corizon Health's handling of a Completed Claim within ninety (90) calendar days following receipt of Corizon Health's response, then such claim may be considered waived and Corizon Health shall not be obligated to make any payment or adjustment thereafter.

Corizon is producing documentation of all "appeals" received by Plaintiffs for invoices related to Health Care Services rendered pursuant to the Agreement. Pursuant to Federal Rule of Civil Procedure 33(d), which permits a party responding to an interrogatory to answer by "(1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries," please refer to those appeals being produced, as well as the documents being produced titled "Provider Remittance Advice," which were sent at various times between 2016 and 2022 and directed to Plaintiffs.  The Provider Remittance Advice documents contain an explanation code (abbreviated "Expl. Code") for each claim that Corizon maintains that Plaintiffs failed to correctly

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

or accurately bill. Corizon did not appeal many of the claims that Corizon included on the Provider Remittance Advice documents.

6.      Identify any claims for payment for Health Care Services rendered that You contend You properly denied before the 45th day.  For each claim, explain when You denied it, the basis for that denial, and how You noticed Plaintiffs that You denied it.  *See, e.g.,* Doc. 9, p. 4, ¶ 25.

**RESPONSE**:  Pursuant to Federal Rule of Civil Procedure 33(d), which permits a party responding to an interrogatory to answer by "(1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries," please refer to the documents being produced titled "Provider Remittance Advice," which were sent at various times between 2016 and 2022, and directed to Plaintiffs.

7.      Explain in detail how and when You notified Plaintiffs that You believed Plaintiffs failed to correctly or accurately bill for Health Care Services rendered.  In so identifying, state how and when You notified Plaintiffs that You would not pay for Health Care Services rendered because You believed Plaintiffs failed to correctly or accurately bill for them.  *See, e.g.,* Doc. 9, p. 5 at ¶ 39.

**RESPONSE**: Pursuant to Federal Rule of Civil Procedure 33(d), which permits a party responding to an interrogatory to answer by "(1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries," please refer to the documents being produced titled "Provider Remittance Advice," which were sent at various times between 2016 and 2022, and directed to Plaintiffs.

8.      Identify all "Health Care Services rendered" for which "Corizon admits that it has not paid," including but not limited to, information sufficient to identify the Health Care Services rendered, the requested amount submitted for payment by Plaintiffs, and the amount You contend You owe or would have owed if the request was properly submitted under the Agreement.  This Interrogatory specifically calls for the identification of each request for payment by Plaintiffs for which You did not remit a full payment of the amount requested to Plaintiffs, whether or not You contend the request for

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

payment was a properly submitted "Completed Claim."

**RESPONSE**:  Corizon objects to Plaintiffs' incomplete definition of the contractually defined term "Completed Claim." Subject to and without waiving its objections, and pursuant to Federal Rule of Civil Procedure 33(d), which permits a party responding to an interrogatory to answer by "(1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries," please refer to the documents being produced titled "Provider Remittance Advice," which were sent at various times between 2016 and 2022, and directed to Plaintiffs. For each disputed claim (identified by Claim Number and Service Date), the Provider Remittance Advice documents identify the amount billed, the ineligible portion of the amount billed, the allowed portion of the amount billed, the discount applied, any amount withheld, and the amount paid. Also pursuant to Federal Rule of Civil Procedure 33(d), please additionally refer to the "Claim Status" spreadsheets which summarize this information by each Plaintiff, as well as the physicians for each Plaintiff (whom billed Corizon separately).

9.      State the total amount owed to Plaintiffs under the Agreement, including with interest.

**RESPONSE**:  Corizon shows that the total amount owed to Plaintiffs under the Agreement, once billing discrepancies are accounted for, is $11,174,465.50. Pursuant to Federal Rule of Civil Procedure 33(d), which permits a party responding to an interrogatory to answer by "(1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries," please refer to the documents produced in response to Plaintiffs' First Set of Requests for Production, including but not limited to the "Claim Status" spreadsheets.

10.      Identify the name, job title (current, or if former employee, then former job title), employment status with Defendants, and specific role for all persons who had any involvement with the Agreement, including but not limited to processing Completed Claims, determining the amount, if any, owed for Completed Claims, or issuing payments for Completed Claims.

**RESPONSE**:      Corizon objects to Plaintiffs' incomplete definition of the contractually defined term "Completed Claim." Subject to and without waiving its objections, the following current and former Corizon employees had involvement with the Agreement, including processing Completed Claims, determining what was owed for Completed Claims, and issuing payments for Completed Claims:

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

| Name | Current Job Title (or Former Job Title if Former Employee) |
|---|---|
| Carla Copeland | Senior Director of Network Development & Purchasing (current employee) |
| Andrew Fornes | Senior Director of Claims (current employee) |
| Jeffrey Sholey | Chief Financial Officer (current employee) |
| Michael Murphy | Senior Vice President of Operations – State (current employee) |
| Roland Maldonado | Vice President of Operations (current employee) |
| Scot Ward | Executive Vice President and Chief Administrative Officer (former employee) |
| Ralf Salke | Vice President of Operations (current employee) |
| Todd Sparlin | Vice President of Healthcare Analytics (former employee) |
| Therese Brumfield | Vice President of Provider Operations (former employee) |
| Cindy Hagenhoff | Director Operations Analysis (former employee) |

11.     Identify any payment bonds, insurance coverage, guarantees, or other mechanisms where a third-party to the Agreement may be liable or responsible for the payment of unpaid Completed Claims submitted by Plaintiffs under the Agreement, including but not limited to the reasons why the third-party is liable or responsible for the payment of unpaid Completed Claims submitted by Plaintiffs under the Agreement.  Identify all supporting documentation in response to this Interrogatory.

**RESPONSE:** There are no "payment bonds, insurance coverage [agreements], guarantees, or other mechanisms where a third-party to the Agreement may be liable or responsible for the payment of unpaid Completed Claims submitted by Plaintiffs under the Agreement."  Accordingly, Corizon has no supporting documentation to identify.

12.     Identify in detail all opinions, including but not limited to supporting factual allegations and evidence, of any expert witness(es) you intend to rely on in support of or concerning the defenses

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

You intend to rely on at trial or summary judgment in this lawsuit.

**RESPONSE**:   Corizon has not yet decided who it may call as an expert witness in this case and will make any required disclosures pertaining to expert(s) as required under the Federal Rules of Civil Procedure, the Local Rules of this Court, and orders in this case. Subject to and without waiving these objections, Corizon reserves the right to supplement this response as factual investigations and discovery are ongoing.

Dated:  August 25, 2022                                    Respectfully submitted,

                                                            *s/ R. Thomas Warburton*
                                                            R. Thomas Warburton (MO Bar No. 654777)
                                                            BRADLEY ARANT BOULT CUMMINGS LLP
                                                            One Federal Place
                                                            1819 5th Avenue N.
                                                            Birmingham, AL  35203
                                                            Telephone: 205.521.8987
                                                            twarburton@bradley.com

                                                            *Counsel for Defendants Corizon Health, Inc. and*
                                                            *Corizon, LLC*

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of August, 2022, I served the following individuals by electronic mail:

Patrick J. Stueve
Ethan M. Lange
Jordan A. Kane
Stueve Siegel Hanson LLP
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

*Counsel for Plaintiffs*

*R. Thomas Warburton*
R. Thomas Warburton

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

# EXHIBIT 4

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **WILLIAM KELLY**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 2:22-cv-10589 |
| v. | ) | Hon.: Terrence G. Berg |
| | ) | Mag.: David R. Grand |
| **CORIZON HEALTH, INC.**, et al, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | / | |

**YESCARE CORP. AND CHS TX, INC.'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION TO SUBSTITUTE YESCARE CORP. AND CHS TX, INC. AS
PARTY DEFENDANTS IN PLACE OF CORIZON HEALTH, INC., AND TO REQUIRE
YESCARE CORP. AND CHS TX, INC. TO ASSUME CORIZON HEALTH, INC.'S
DUTY TO INDEMNIFY DEFENDANTS BOHJANEN, KOCHA, ALFORD, GHASEMI
AND YARID, OR, IN THE ALTERNATIVE, TO ADD YESCARE CORP. AND CHS TX,
<u>INC. AS PARTY DEFENDANTS</u>**

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

## TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................. iii

TABLE OF AUTHORITIES ............................................................................................. iv

STATEMENT OF ISSUES ............................................................................................. viii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ....................................... ix

INDEX OF EXHIBITS ..................................................................................................... x

PRELIMINARY STATEMENT ....................................................................................... 1

BACKGROUND ............................................................................................................... 4

STANDARD OF REVIEW ............................................................................................... 9

ARGUMENT .................................................................................................................. 10

I.      The Court Lacks Personal Jurisdiction over YesCare and CHS TX. ............................... 10

        A.      YesCare and CHS TX Are Not Subject to General Personal Jurisdiction in
                Michigan. ................................................................................................. 10

        B.      Neither YesCare Nor CHS TX Is Subject to Limited Personal Jurisdiction in
                This Case. ................................................................................................. 12

II.     Texas Law, Which Governs the Determination of Successor Liability, Provides
        That Liability for Plaintiff's Claims Remains with Corizon Health. ............................... 13

        A.      Texas Law, Not Michigan Law, Applies to the Court's Assessment of
                Successor Liability Resulting from the 2022 Corporate Restructuring. ............... 14

        B.      The Divisional Merger Complied with Texas Law. ........................................ 16

        C.      Texas Law provides that Corizon Health is Exclusively Liable on Plaintiff's
                Claim. ....................................................................................................... 18

        D.      It Would Be an Abuse of Discretion for This Court to Find YesCare or CHS
                TX Liable for Plaintiff's Claims Because There Has Been No Transfer .............. 20

III.    The Motion Should Be Denied as an Improper Attack on the 2022 Corporate
        Restructuring under the Guise of Substitution. ............................................................ 22

IV.     Plaintiff's Fraud, Alter Ego, and Successor Liability Theories Fail. .............................. 24

        A.      CHS TX Is Not Corizon Health's Alter Ego. ............................................... 24

        B.      Plaintiff Has Failed to Make the Required Showing for Veil-Piercing. ............... 25

        C.      Plaintiff's Successor Liability Argument Fails ............................................. 26

        D.      The 2022 Corporate Restructuring Was Not a *De Facto* Merger .................... 28

        E.      CHS TX Is Not a Mere Continuation of Corizon Health. ................................ 28

REQUEST FOR DUE PROCESS ................................................................................... 29

CONCLUSION ............................................................................................................... 30

IBUTZEL\999999999\0400\100011690.v1-8/17/22

Case 2:23-cv-10168-MAG-DRG ECF No. 1-8, PageID.488 Filed 02/14/23 Page 331 of 627

Case 23-40176-mlo Doc 1-8 Filed 02/14/23 Entered 02/14/23 09:47:24 Page Desc
Exhibit Exhibit 3 - State Court File    Page 330 of 627

**B.**

IBUTZEL\999999999\0400\100011690.v1-8/17/22

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

## **TABLE OF AUTHORITIES**

### **CASES**

*Allen v. Westpoint-Pepperell, Inc.*,
    933 F. Supp. 261 (S.D.N.Y. 1996) ................................................................................ 22

*Bailey v. Floyd County Bd. of Educ.*,
    106 F.3d 135 (6th Cir. 1997) ..................................................................................... 10

*Bayer Healthcare LLC v. Nektar Therapeutics*,
    No. 17-cv-05055-LHK, 2018 U.S. Dist. LEXIS 41193 (N.D. Cal. Mar. 12, 2018) .............. 12

*Best Foods v. Aerojet-General Corp.*,
    173 F. Supp 2d 729 (W.D. Mich. 2001) ...................................................................... 24

*Bouchillon v. Deutz-Fahr*,
    268 F. Supp. 3d 890 (N.D. Miss. 2017) ............................................................ 14, 15, 16

*Channel Clarity Holdings LLC v. Klaas (In re Channel Clarity Holdings LLC)*,
    No. 21-bk-07972, 2022 Bankr. LEXIS 1985 (Bankr. N.D. Ill. July 18, 2022) ................ 27

*City Envtl. v. United States Chem. Co.*,
    814 F. Supp. 624 (E.D. Mich. 1993) ......................................................................... 14

*Craig v. Oakwood Hosp.*,
    471 Mich. 67 (2004) ............................................................................................... 28

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ......................................................................................... 11, 12

*Daymon v. Fuhrman*,
    No. 249007, 2004 Mich. App. LEXIS 2607 (App. Ct. 1st Dist. Oct. 5, 2004) ............... 25, 26

*Emmet v. Franco*,
    No. 16-cv-11211, 2016 U.S. Dist. LEXIS 109726 (E.D. Mich. Aug. 18, 2016) ................ 23

*Foodland Distribs. v. Al-Naimi*,
    220 Mich. App. 453 (1996) ...................................................................................... 25

*Franklin Capital Funding, LLC v. Ace Funding Source, LLC*,
    No. 2:20-CV-12059-TGB-APP, 2021 U.S. Dist. LEXIS 62854 (E.D. Mich. Mar. 31, 2021)
    ............................................................................................................... 10, 13

*Gilmore v. Augustus*,
    No. 12-cv-00925-LJO-GSA-PC, 2015 U.S. Dist. LEXIS 68581 (E.D. Cal. May 27, 2015) .. 10

IBUTZEL\999999999\0400\100011690.v1-8/17/22

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

*Green v. Zeigelman*,
   310 Mich. App. 436 (2015) .............................................................................................25

*Guar. Residential Lending, Inc. v. Homestead Mortg. Co., L.L.C.*,
   No. 04-cv-74842-DT, 2010 U.S. Dist. LEXIS 49209 (E.D. Mich. May 19, 2010)................9

*Harris v. Nerium Int'l*,
   No. 18-cv-02877-EDL, 2019 U.S. Dist. LEXIS 234461 (N.D. Cal. Jan. 25, 2019)..............12

*In re Merrill Lynch & Co., Inc. Rsch. Reps Sec. Litig.*,
   No. 02 Civ. 8472 (JFK), 2008 U.S. Dist. LEXIS 53923 (S.D.N.Y. June 26, 2008)..............23

*Kitchen v. Farrell Log Structures LLC*,
   No. 1:07-cv-219, 2008 U.S. Dist. LEXIS 132202 (W.D.N.C. Nov. 13, 2008).....................24

*Lee Contracting, Inc. v. Shore W. Mfg.*,
   No. 1:19-cv-831, 2020 U.S. Dist. LEXIS 196309 (W.D. Mich. Oct. 22, 2020) ...................11

*Leitner v. Sadhana Temple of N.Y., Inc.*,
   No. CV 13-07902 MMM (Ex), 2014 U.S. Dist. LEXIS 198479 (C.D. Cal. Oct. 17, 2014)...15

*Magna Powertrain de Mex. S.A. de C.V. v. Momentive Performance Materials USA LLC*,
   192 F. Supp. 3d 824 (E.D. Mich. 2016) ...............................................................................11

*McCourt v. A.O. Smith Water Prods. Co.*,
   No. 14-221, 2015 U.S. Dist. LEXIS 110111 (D.N.J. Aug. 20, 2015)...................................12

*Mroz v. Lee*,
   884 F. Supp. 246 (E.D. Mich. 1995)....................................................................................20

*Opportunity Fund, LLC v. Savana, Inc.*,
   No. 2:11-cv-528, 2014 U.S. Dist. LEXIS 115105 (S.D. Oh. Aug. 19, 2014) .......................10

*Payne v. Sec. Sav. & Loan Ass'n, F.A.*,
   924 F.2d 109, 111 (7th Cir. 1991) .......................................................................................14

*Phillips v. United Heritage Corp.*,
   319 S.W.3d 156 (Tex. Ct. App. 2010) ..................................................................................16

*Plastronics Socket Parts., Ltd. v. Hwang*,
   No. 18-cv-00014, 2019 U.S. Dist. LEXIS 111892 (E.D. Tex. June 11, 2019) .....................19

*PNC Equip. Fin., LLC v. Darin (In re Darin)*,
   631 B.R. 301 (Bankr. W.D. Mich. 2021) ..............................................................................23

*Priestly v. Headminder, Inc.*,
   647 F.3d 497 (2d Cir. 2011) .................................................................................................28

IBUTZEL\999999999\0400\100011690.v1-8/17/22

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**B.**

*Provident Life & Accident Ins. Co. v. Adie*,
   982 F. Supp. 1269 (E.D. Mich. 1997) ................................................................23

*Ryan Racing, LLC v. Gentilozzi*,
   231 F. Supp. 3d 269 (W.D. Mich. 2017) .............................................................25

*SCD Chem. Distribs., Inc. v Medley*,
   203 Mich. App. 374 (1994) ..................................................................................25

*Simplifi Health Benefit Mgmt., LLC v. Cayman Is. Nat'l Ins. Co.*,
   No. 2:13-cv-714, 2015 U.S. Dist. LEXIS 120137 (S.D. Ohio Sep. 9, 2015) .........20

*Software Freedom Conservancy, Inc. v. Best Buy Co.*,
   No. 09 Civ. 10155 (SAS), 2010 U.S. Dist. LEXIS 125426 (S.D.N.Y. Nov. 29, 2010)... 20, 21,
   22

*Soviet Pan Am Travel Effort v. Travel Comm., Inc.*,
   756 F. Supp. 126 (S.D.N.Y. 1991) ......................................................................15

*State Bank of India v. Chalasani (In re Chalasani)*,
   92 F.3d 1300 (2d Cir. 1996) ................................................................................21

*Stenger v. Freeman*,
   No. 14-cv-10999, 2015 U.S. Dist. LEXIS 127072 (E.D. Mich. Sep. 23, 2015) ......23

*Welco Indus., Inc. v. Applied Cos.*,
   617 N.E.2d 1129 (Ohio 1993) .............................................................................14

*Wells v. Firestone Tire & Rubber Co.*,
   421 Mich. 641 (1984) ...........................................................................................25

*Wilcox v. Kalchert*,
   No. 2:20-cv-234, 2021 U.S. Dist. LEXIS 191701 (W.D. Mich. Oct. 5, 2021) .......20

*Young-Allen v. Bank of Am., N.A.*,
   298 Va. 462 (2020) ...............................................................................................23

*Zinna v. Congrove*,
   No. 05-cv-01016-PAB, 2019 U.S. Dist. LEXIS 43783 (D. Colo. Mar. 18, 2019) ......21

## STATUTES AND OTHER AUTHORITY

15 Pa. Cons. Stat. § 361 .........................................................................................18

Ariz. Rev. Stat. § 29-2601 ......................................................................................19

Del. Code tit. 6, § 18-217 .......................................................................................19

MCL 566.34.............................................................................................................24

IBUTZEL\999999999\0400\100011690.v1-8/17/22

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**B.**

MCL 566.35 .................................................................................................... 24

Tex. Bus. Orgs. Code § 1.002 ........................................................................... 16

Tex. Bus. Orgs. Code § 10.001 .................................................................... 16, 17

Tex. Bus. Orgs. Code. §10.002-004 .................................................................. 17

Tex. Bus. Orgs. Code § 10.003 ................................................................... 17, 18

Tex. Bus. Orgs. Code § 10.008 ................................................................... 19, 21

Tex. Bus. Orgs. Code §10.151 ......................................................................... 17

## OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) .................................................................................. 24, 28

Fed. R. Civ. P. 25 .................................................................................. passim

IBUTZEL\999999999\0400\100011690.v1-8/17/22

**B.**

## <u>STATEMENT OF ISSUES</u>

1. **Is YesCare or CHS TX subject to personal jurisdiction in Michigan?**

   YesCare and CHS TX's Answer: No.

   Plaintiff May Answer: Yes.

2. **What law applies to the question of whether YesCare or CHS TX is a successor to Corizon Health?**

   YesCare and CHS TX's Answer: Texas law

   Plaintiff May Answer: Michigan law

3. **Does Texas law provide that YesCare or CHS TX is the proper defendant?**

   YesCare and CHS TX's Answer: No.

   Plaintiff May Answer: Yes.

4. **Can Plaintiff seek the relief sought in his motion without a complaint?**

   YesCare and CHS TX's Answer: No.

   Plaintiff May Answer: Yes.

5. **Does successor liability attach to YesCare or CHS TX under Michigan Law?**

   YesCare and CHS TX's Answer: No.

   Plaintiff May Answer: Yes.

IBUTZEL\999999999\0400\100011690.v1-8/17/22

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**B.**

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

1. Tex. Bus. Orgs. Code § 10.001, *et al.*

2. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)

3. *Franklin Capital Funding, LLC v. Ace Funding Source, LLC*, No. 2:20-CV-12059-TGB-APP, 2021 U.S. Dist. LEXIS 62854 (E.D. Mich. Mar. 31, 2021)

4. *Welco Indus., Inc. v. Applied Cos.*, 617 N.E.2d 1129, 1132 (Ohio 1993)

5. *Young-Allen v. Bank of Am., N.A.*, 298 Va. 462, 468 (2020)

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

B.

## INDEX OF EXHIBITS

Exhibit A – Plan of Combination Merger

Exhibit B – Certificate of Conversion (Corizon Health)

Exhibit C – Form 805 Statement of Event or Fact (Combination Merger)

Exhibit D – Plan of Divisional Merger

Exhibit E – Form 805 Statement of Event of Fact (Divisional Merger)

Exhibit F – Certificate of Amendment (Corizon Health to Tehum Care Services)

Exhibit G – Certificate of Formation (YesCare)

x

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

B.

YesCare Corp. ("YesCare") and CHS TX, Inc. ("CHS TX") respond in opposition to *Plaintiff's Motion to Substitute YesCare Corp. and CHS TX, Inc. as Party Defendants in Place of Corizon Health, Inc., and to Require YesCare Corp. and CHS TX, Inc. to Assume Corizon Health, Inc.'s Duty to Indemnify Defendants Bohjanen, Kocha, Alford, Ghasemi and Yarid, or, in the Alternative, to Add YesCare Corp. and CHS TX, Inc. as Party Defendants* [ECF No. 25] (the "Motion").[1]

## PRELIMINARY STATEMENT

1.      At the end of 2021, Defendant Corizon Health, Inc. ("Corizon Health") faced dire financial circumstances.  Years of mounting costs, including litigation expenses relating to claims asserted by incarcerated individuals, threatened Corizon Health's ability to continue as a going concern.  Corizon Health was deeply insolvent and headed towards bankruptcy.  For a company in the highly regulated correctional healthcare industry, bankruptcy would have meant a liquidation of the company, a recovery of pennies on the dollar for the lenders of Corizon Health's nearly $100 million of first-priority secured debt, termination of employment for its over two thousand  employees, potential interruption of necessary healthcare services to inmates of correctional facilities across the country during the pandemic, and zero recovery for its unsecured creditors and other stakeholders, including Plaintiff and other litigation claimants.

2.      Faced with these circumstances, Corizon Health determined that the fairest and value-maximizing path forward would be a divisional merger under the Texas Business Organizations Code (the "TBOC")—a statutory framework that enables one or more corporate

---

[1] By responding to the Motion, YesCare and CHS TX do not concede that they are subject to personal jurisdiction in this Court or waive any defenses related to personal jurisdiction.  As set forth herein, YesCare and CHS TX expressly assert those arguments and defenses.

**B.**

entities to merge into one or more surviving or new legal entities and re-allocate assets and liabilities among the resulting entities in a manner that is binding on creditors under Texas law.

3.     Corizon Health merged with several of its affiliates, survived that merger, and then divided into two entities:  (i) Corizon Health and (ii) CHS TX, a Texas corporation formed in connection with the merger.  In accordance with Texas law, that merger process re-allocated Corizon Health's assets and liabilities between these two entities.  The merger allocated to CHS TX all current customer contracts and related liabilities, including nearly $100 million of secured debt and litigation claims related to current customer contracts.  Corizon Health remained vested with, among other things, expired customer contracts, and certain cash, valuable rights to insurance coverage, and rights to additional funding from a credit-worthy affiliate under a funding agreement.  Because of the merger transaction, Corizon Health will be able to provide substantially greater consideration to unsecured creditors (including tort claimants like Plaintiff should he succeed in this action) than it would absent the merger.  This is because Corizon Health retained valuable assets while shedding nearly $100 million of secured debt that would otherwise have stood ahead of unsecured creditors.

4.     To ensure that this transaction was fair to all stakeholders, Corizon Health tasked FTI Capital Advisors, LLC ("FTICA") with conducting a fairness analysis and issuing a fairness opinion to the board of directors.  That expert opinion confirmed that the divisional merger rendered Corizon Health's unsecured creditors (such as Plaintiff) in a better position than if Corizon Health had been forced to liquidate or file for bankruptcy protection—paths that would have resulted in zero recoveries for these creditors.

5.     Without discussing any of the significant benefits to Corizon Health and its stakeholders from the divisional merger, the Motion seeks to portray that transaction as an attempt to shield Corizon Health's assets from litigation claimants.  To the contrary, the merger transaction

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**B.**

preserved significant value for all unsecured creditors (such as litigation claimants).  Substitution is both unnecessary and inappropriate under these circumstances.

6.       In addition to being wrong on the facts, Plaintiff is wrong on the law.  The Motion should be denied for at least four independent reasons.

7.       ***First***, YesCare and CHS TX cannot properly be substituted in this action because neither is subject to personal jurisdiction in Michigan.  Plaintiff does not even attempt to allege facts sufficient to establish either general or specific jurisdiction over either of the proposed new defendants.  Nor can he because no such facts exist.  Neither entity is "at home" in Michigan.  Rather, both have their principal place of business in Tennessee, and are incorporated in Texas.  YesCare has no contacts with Michigan whatsoever, and CHS TX has only two contracts with Michigan correctional facilities (and certain ancillary contracts related to those engagements), neither of which relate to Plaintiff's lawsuit.  The Michigan long-arm statute does not allow Plaintiff to drag YesCare or CHS TX into this forum under these circumstances.  The absence of personal jurisdiction requires the Court to deny the Motion.

8.       ***Second***, the question of successor liability is properly determined under Texas law, and under Texas law neither YesCare nor CHS TX are liable for any of the claims asserted in this case.  The TBOC governs the challenged transaction, and it expressly provides that, in the context of a divisional merger, no interest is transferred, and the entity to which a claim is allocated under a plan of merger is the ***only*** successor to such claim.  In accordance with Texas law, Plaintiff's lawsuit was allocated to (and thus remained vested in) Corizon Health through the divisional merger.  As a result, Corizon Health is the only entity that is liable on Plaintiff's claim by operation of law.  This, too, ends the inquiry.

9.       ***Third***, the Motion is an improper attempt to use Rule 25(c) to effect the "drastic" and "extraordinary" equitable remedy of rescinding the Texas divisional merger and other aspects

3

**B.**

of the 2022 Corporate Restructuring (as defined below).  The Motion makes various references to fraudulent conveyances and fraud, which are plainly Plaintiff's actual (though misguided) bases for the motion.  But each of these purported causes of action must be asserted in a complaint, not in a motion to substitute.  The Court should not permit Plaintiff to use the Motion as an end-run around the due-process rights of YesCare and CHS TX.

10.     ***Fourth***, even if Michigan law applied (and it does not), Plaintiff's claims for alter ego and successor liability fail.  This is not a case in which all valuable assets were stripped from an entity leaving creditors with claims against an empty shell.  Instead, Corizon Health was vested with valuable assets, and the 2022 Corporate Restructuring (as defined below) actually improved available recoveries for unsecured creditors.

11.     For these reasons, the Court should deny the Motion.  To the extent the Court does not deny the Motion as a matter of law, YesCare and CHS TX respectfully request that the Court set any factual disputes for an evidentiary hearing after appropriate time for discovery and supplemental briefing.

## BACKGROUND

12.     The Plaintiff William Kelly was incarcerated in the custody of the Michigan Department of Corrections ("MDOC") from April 2015 through July 2021.[2]  During this period, Corizon Health was obligated to provide medical services to MDOC prisoners under the terms of a five-year contract by and between MDOC and Corizon Health that became effective on June 1, 2016 (the "MDOC Contract").[3]  That contract has since expired and is no longer in effect.  On March 19, 2022, following his release from MDOC custody, Plaintiff filed a complaint (the

---

[2]     Complaint (as defined below) ¶ 9.

[3]     Complaint ¶ 10 ("At all times relevant to this action, Defendant Corizon Health, Inc. was the contracted healthcare provider for the Michigan Department of Corrections.").

4

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**B.**

"Complaint") against, among others, Defendant Corizon Health. [ECF No. 1]. In Count I of the Complaint, Plaintiff alleges that Defendant Corizon Health deprived him of his constitutional rights by acting with deliberate indifference to his medical needs. In Count II of the Complaint, Plaintiff alleges that Defendant Corizon Health committed common-law negligence, and in Count III of the Complaint, Plaintiff alleges that Defendant Corizon Health committed medical malpractice.

13.    On July 26, 2022, Plaintiff filed the instant Motion, seeking to substitute YesCare and CHS TX for Corizon Health as defendants in Plaintiff's lawsuit. [ECF No. 25].

14.    Corizon Health and several of its affiliates, including Corizon, LLC, formerly a Missouri limited liability company, Valitás Health Services, Inc. ("Valitas"), formerly a Delaware corporation, and Corizon Health of New Jersey, LLC, formerly a New Jersey limited liability company ("Corizon NJ" and together with Corizon Health, Corizon, LLC and Valitas, the "Company") experienced financial difficulties that reached a critical stage in 2021. Facing insolvency and the seemingly unavoidable prospect of bankruptcy and liquidation, the Company explored various restructuring alternatives. Eventually the Company's boards of directors determined that the 2022 Corporate Restructuring (as defined below) represented the best path forward for all stakeholders, including litigation claimants like Plaintiff.[4]

### i.    *The Combination Merger*

15.    The 2022 Corporate Restructuring was effectuated under the TBOC through the following steps:

---

[4] *See* Exhibit A, Agreement and Plan of Combination Merger (the "Plan of Combination Merger"), Recitals ("the board of directors of [Corizon Health], the board of directors of Valitás, the Company in its capacity as the sole member of [Corizon, LLC] and Corizon NJ, Valitás in its capacity as the sole shareholder of [Corizon Health], Valitás Intermediate Holdings, Inc. . . . , in its capacity as the sole shareholder of Valitás have each approved the Merger and this Plan.").

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**B.**

- On April 28, 2022, Corizon Health (previously incorporated in Delaware) converted to a Texas corporation.[5]

- On May 1, 2022, the board of directors, shareholders, and members of the Company approved the 2022 Corporate Restructuring.[6]

- Each of Corizon Health, Corizon, LLC, Valitas, and Corizon NJ merged pursuant to a plan of combination merger under Texas law (the "Combination Merger").[7]

- Corizon Health filed the Certificate of Combination Merger with the Texas Secretary of State on May 2, 2022,[8] and the Combination Merger became effective on May 5, 2022;[9]

- Corizon Health was the sole survivor of the Combination Merger and was vested with all assets and liabilities of the merged entities.[10]  The other entities ceased to exist.[11]

### ii. *The Divisional Merger*

16.    With all assets and liabilities of the Company consolidated in Corizon Health, Corizon Health then completed a divisional merger (the "Divisional Merger"),[12] whereby, under the TBOC, all assets and liabilities of Corizon Health were allocated between Corizon Health and

---

[5] *See* Exhibit B, Certificate of Conversion dated April 28, 2022.

[6] *See* Plan of Combination Merger, Recitals ("the board of directors of [Corizon Health], the board of directors of Valitás, the Company in its capacity as the sole member of [Corizon, LLC] and Corizon NJ, Valitás in its capacity as the sole shareholder of [Corizon Health], Valitás Intermediate Holdings, Inc. . . . , in its capacity as the sole shareholder of Valitás have each approved the Merger and this Plan.").

[7] *See* Plan of Combination Merger, Ex. A Certificate of Merger of Corizon Health, Valitas, Corizon NJ, and Corizon, LLC dated May 2, 2022 (the "Certificate of Combination Merger"); *see also* Plan of Combination Merger.

[8] *See* Certificate of Combination Merger.

[9] *See* Exhibit C, Form 805, Statement of Event or Fact, May 5, 2022.

[10] *See* Plan of Combination Merger.

[11] *See* Plan of Combination Merger; *see also* Certificate of Combination Merger.

[12] *See* Exhibit D, Agreement and Plan of Divisional Merger ("Plan of Merger"), Ex. A, Certificate of Merger dated May 3, 2022 (the "Certificate of Merger").

IBUTZEL\999999999\0400\100011690.v1-8/17/22

Case 23-90086 Document 1341-3 Filed in TXSB on 02/14/23 Page 1 of 42
Case 3:23-cv-01018-MAG-DRG ECF No. 1-3, PageID.447 Filed 02/14/23 Page 1 of 42
Exhibit Exhibit 3 - State Court File    Page 344 of 627

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**B.**

CHS TX, a Texas corporation formed through the Divisional Merger.[13]  The Divisional Merger

was effectuated through the following steps:

· Corizon Health drafted the Plan of Merger, which provided that CHS TX would be formed and documented which assets and liabilities were to remain with Corizon Health and which were to be allocated to CHS TX;[14]

· The board of directors and sole shareholder of Corizon Health reviewed the Plan of Merger with the assistance of their respective outside advisors, determined that the Divisional Merger was in the best interests of Corizon Health, its shareholders and its creditors, and approved the Divisional Merger on May 1, 2022;[15]

· The approved Plan of Merger was in writing and included all information required by the TBOC;[16]

· Corizon Health filed the Certificate of Merger and Certificate of Formation for CHS TX with the Texas Secretary of State on May 3, 2022,[17] and the Divisional Merger became effective on May 5, 2022.[18]

17.    After the Divisional Merger became effective, CHS TX was acquired by YesCare

as the last step, along with the Combination Merger and Divisional Merger, in Corizon Health's

---

[13] *See* Plan of Merger, Ex. B (Certificate of Formation).

[14] *See* Plan of Merger, §§ 3-4.

[15] *See* Plan of Merger, Recitals ("the board of directors of the Company and [Valitas], in its capacity as the sole shareholder of the Company, have each approved the Merger and this Plan."); Written Consent of the Sole Shareholder of Corizon Health, Inc., May 1, 2022 ("the Shareholder deems it advisable and in the best interest of [Corizon Health] to effectuate a divisional merger . . . pursuant to which . . . the assets and liabilities of [Corizon Health] will be allocated and vested in [Corzion Health] and [CHS TX], in accordance with and as further described in the [Plan of Merger]"); Unanimous Written Consent of the Board of Directors of Corizon Health, Inc., May 1, 2022 ("the board of directors deems it advisable and in the best interest of [Corizon Health] to effectuate a divisional merger . . . pursuant to which . . . the assets and liabilities of [Corizon Health] will be allocated and vested in [Corzion Health] and [CHS TX], in accordance with and as further described in the [Plan of Merger]").

[16] *See* Plan of Merger, §§ 1, 3-8.

[17] *See* Certificate of Merger.

[18] *See* Exhibit E, Form 805, Statement of Event or Fact, May 5, 2022.

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

corporate restructuring (the "<u>2022 Corporate Restructuring</u>").  Corizon Health then changed its

name to Tehum Care Services, Inc.[19]

18.     As a result of the 2022 Corporate Restructuring, Corizon Health was allocated and

remained vested with all inactive or expired customer contracts (including the MDOC Contract,

which has always been an asset of Corizon Health) as well as all liabilities related to such

contracts.[20]  Corizon Health was also allocated and remained vested with, among other assets,

(i) $1 million in cash, (ii) the right, subject to certain conditions being met, to $4 million under a

$15 million total funding commitment (the "<u>Funding Agreement</u>") provided by M2 LoanCo, LLC

("<u>M2 LoanCo</u>"), an affiliate of Corizon Health and (iii) the right to make claims on any and all of

the Company's medical malpractice, general liability, or errors and omissions insurance policies

relating to or arising from the assets it acquired or retained through the merger (including the

contract at issue in Plaintiff's case).[21]  Critically, Corizon Health was also released of nearly $100

million of senior secured credit debt that, absent the 2022 Corporate Restructuring, would have

encumbered all of the Company's assets and left no value for unsecured creditors.[22]  This allowed

Corizon Health's unsecured creditors the ability to assert claims against Corizon Health's assets,

without standing behind nearly $100 million of secured debt.  The secured debt obligations were

allocated to CHS TX.[23]

---

[19] *See* Exhibit F, Certificate of Amendment of Corizon Health, Inc. dated June 1, 2022.

[20] *See* Plan of Merger, Schedule 3.01(b); Schedule 4.01(b).

[21] *See* Plan of Merger, Schedule 3.01(b).

[22] *See* Plan of Merger, Schedule 4.01(a)(1).

[23] *See* Plan of Merger, Schedule 4.01(a).

IBUTZEL\999999999\0400\100011690.v1-8/17/22

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**B.**

19.    As noted above, the 2022 Corporate Restructuring was the subject of a fairness opinion from FTICA that determined that the 2022 Corporate Restructuring was fair to the Company's unsecured creditors. Specifically, FTICA compared potential recoveries for unsecured creditors under the proposed transaction to those under a liquidation or a bankruptcy filing, and determined that unsecured creditors would have access to equal or greater recoveries if the Company completed the 2022 Corporate Restructuring. The 2022 Corporate Restructuring unlocks greater value for Corizon Health's unsecured creditors by (i) releasing Corizon Health from nearly $100 million of existing secured debt, which in turn was allocated to CHS TX;[24] (ii) providing Corizon Health the right to make claims on any and all of the Company's medical malpractice, general liability, or errors and omissions insurance policies relating to or arising from the assets it acquired or retained through the merger;[25] (iii) allocating $1 million in cash to Corizon Health;[26] and (iv) establishing the Funding Agreement provided to Corizon Health by M2 LoanCo, which provides up to $15 million for unsecured creditors of the Company, $4 million of which is allocated to Corizon Health's creditors.

## STANDARD OF REVIEW

20.    The party alleging a transfer of interest bears the burden of proving it by admissible evidence.  *See Guar. Residential Lending, Inc. v. Homestead Mortg. Co., L.L.C.*, No. 04-cv-74842-DT, 2010 U.S. Dist. LEXIS 49209, at *9 (E.D. Mich. May 19, 2010) (denying motion to substitute where the requesting party "ha[d] not demonstrated that a transfer of interest took place as contemplated by Fed. R. Civ. P. 25(c)."); *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145

---

[24] *See* Plan of Merger, Schedule 4.01(a)(1).

[25] *See* Plan of Merger, Schedule 3.01(b)(9)-(11).

[26] *See* Plan of Merger, Schedule 3.01(b)(1).

9

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**B.**

(6th Cir. 1997) (citing *Winskunas v. Birnbaum*, 23 F.3d 1264, 1267 (7th Cir. 1994)) (explaining that evidence submitted with a motion must be admissible in substance); *Gilmore v. Augustus*, No. 12-cv-00925-LJO-GSA-PC, 2015 U.S. Dist. LEXIS 68581, at *13 (E.D. Cal. May 27, 2015) (denying plaintiff's motion to substitute because it relied upon inadmissible hearsay). The same is true for a party asserting successor liability. *See Opportunity Fund, LLC v. Savana, Inc.*, No. 2:11-cv-528, 2014 U.S. Dist. LEXIS 115105, at *7 (S.D. Oh. Aug. 19, 2014) ("The party that asserts successor liability bears the burden of proving facts which bring the case within one of [the] exceptions") (citation omitted).

## **ARGUMENT**

### I.    The Court Lacks Personal Jurisdiction over YesCare and CHS TX.

21.    "Michigan law recognizes two bases for personal jurisdiction over a corporation: (1) general, and (2) specific (called 'limited personal jurisdiction' in state law parlance)." *Franklin Capital Funding, LLC v. Ace Funding Source, LLC*, No. 2:20-CV-12059-TGB-APP, 2021 U.S. Dist. LEXIS 62854, at *8 (E.D. Mich. Mar. 31, 2021). General personal jurisdiction exists when an entity's contacts within the forum are so "continuous and systematic" as to render it essentially at home in the forum state. *Id.* Limited personal jurisdiction, by contrast, subjects an entity to suit in the forum state "only on claims that arise out of the [entity's] activities in the forum state." *Id.* at *16 (citation omitted).

22.    Neither YesCare nor CHS TX is subject to either general or limited personal jurisdiction here. That alone requires denial of the Motion.

### A.    YesCare and CHS TX Are Not Subject to General Personal Jurisdiction in Michigan.

23.    "[A] court may exercise general jurisdiction over corporations only 'when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State.'" *Lee Contracting, Inc. v. Shore W. Mfg.*, No. 1:19-cv-831, 2020 U.S. Dist.

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**B.**

LEXIS 196309, at *10 (W.D. Mich. Oct. 22, 2020).  General jurisdiction over a corporation is typically reserved for the corporation's principal place of business or state of incorporation.  *Id.* at *11.  As the United States Supreme Court has stated, "[w]ith respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction[,]'" and "have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable."  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citation omitted); *see also Magna Powertrain de Mex. S.A. de C.V. v. Momentive Performance Materials USA LLC*, 192 F. Supp. 3d 824, 828 (E.D. Mich. 2016) (finding that corporations are "'at home' only in their place of incorporation or principal place of business").

24.     For parties seeking to assert general jurisdiction over an entity that does not have its headquarters or principal place of business in the State, "an 'exceptional case' must be shown[.]"  *Lee Contracting, Inc.*, 2020 U.S. Dist. LEXIS 196309, at *11 (citing *Daimler AG*, 571 U.S. at 139 n.19) ("We do not foreclose the possibility that in an exceptional case a corporation's operations in a forum other than its principal place of business may be so substantial and of such a nature as to render the corporation at home in that State.").

25.     Here, it is not disputed that YesCare and CHS TX's state of incorporation is Texas and their principal place of business is in Tennessee.[27]  Plaintiff does not even attempt to identify *any* basis for this Court's exercise of personal jurisdiction over these non-Michigan entities, much less an "exceptional" one.  Nor could such a case be made: YesCare has no business at all in Michigan, and CHS TX's contact with Michigan is limited to providing healthcare services to correctional facilities in two counties (St. Clair and Calhoun).[28]  These services have nothing to do

---

[27] *See* Certificate of Merger; *see also* Exhibit G, Certificate of Formation of YesCare Corp. dated January 31, 2022

[28] *See* Plan of Merger, Schedule 3.01(a)(NC).

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

with Plaintiff's lawsuit.  Moreover, CHS TX operates its business almost entirely out of Tennessee and it has no offices in Michigan.[29]  The minimal contacts that CHS TX has with this state fall far short of the "exceptional" levels of contact necessary to create general jurisdiction over an out-of-state defendant.  *See Daimler AG*, 571 U.S. at 139 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them."); *Harris v. Nerium Int'l*, No. 18-cv-02877-EDL, 2019 U.S. Dist. LEXIS 234461, at *5 (N.D. Cal. Jan. 25, 2019) ("Even the presence of 'multiple offices, continuous operations, and billions of dollars' worth of sales' in the forum' is insufficient to subject a corporation to general personal jurisdiction."); *Bayer Healthcare LLC v. Nektar Therapeutics*, No. 17-cv-05055-LHK, 2018 U.S. Dist. LEXIS 41193, at *14 (N.D. Cal. Mar. 12, 2018) (allegations that defendants "have employees and a manufacturing facility in California, maintain a partnership with [a] California-based [company], buy products made in California, and sell products in California" are insufficient 'to support a finding that [defendants] are 'essentially at home in' California."); *McCourt v. A.O. Smith Water Prods. Co.*, No. 14-221, 2015 U.S. Dist. LEXIS 110111, at *12-13 (D.N.J. Aug. 20, 2015) (finding no general jurisdiction in New Jersey over corporation that leased two office spaces in New Jersey and had New Jersey employees).

> **B.    Neither YesCare Nor CHS TX Is Subject to Limited Personal Jurisdiction in This Case.**

26.    To determine whether a defendant may constitutionally be subjected to limited personal jurisdiction in Michigan, this Court applies a three-prong test.  *Franklin Capital Funding, LLC*, 2021 U.S. Dist. LEXIS 62854, at *16.  "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the

---

[29] *See* Certificate of Merger.

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**B.**

defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Id.* (citations omitted).

27.    YesCare has no contacts with Michigan whatsoever.  That ends the personal jurisdiction inquiry as to that entity.

28.    As for CHS TX, while it does conduct limited business in Michigan with two counties, the events giving rise to Plaintiff's claims in no way relate to either of those two counties or any other activity in Michigan that CHS TX conducts.  Rather, Plaintiff's claims and allegations arise out of events occurring at various correctional facilities that are part of the MDOC, where CHS TX has no contractual relationship.  The MDOC Contract—the one from which Plaintiff's alleged injuries arise—was entered into by Corizon Health and remains with Corizon Health following the 2022 Corporate Restructuring.[30]  YesCare and CHS TX have nothing to do with it.

## II.    Texas Law, Which Governs the Determination of Successor Liability, Provides That Liability for Plaintiff's Claims Remains with Corizon Health.

29.    Even if the Court finds that it has personal jurisdiction over YesCare or CHS TX (it does not), the Court should still deny the Motion.  As shown below, (i) Texas law governs questions of successor liability arising from the 2022 Corporate Restructuring; (ii) the 2022 Corporate Restructuring complied with Texas law in all respects, (iii) Texas law provides that no

---

[30] *See* Plan of Merger, Schedule 3.01(b)(3).

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**B.**

transfer occurred through the 2022 Corporate Restructuring and that liability remains with Corizon Health and (iv) it would be an abuse of discretion for this Court to allow substitution in this case.

    A.    **Texas Law, Not Michigan Law, Applies to the Court's Assessment of Successor Liability Resulting from the 2022 Corporate Restructuring.**

    30.    Texas law applies to the Court's analysis regarding the 2022 Corporate Restructuring for three separate and independent reasons. *First*, following a statutory merger, courts look to the governing statute to determine which party to the merger bears post-merger liability. *See Welco Indus., Inc. v. Applied Cos.*, 617 N.E.2d 1129, 1132 (Ohio 1993) (finding that if "the transaction was a merger," then the "liability [is] imposed by statute"); *see also Payne v. Sec. Sav. & Loan Ass'n, F.A.*, 924 F.2d 109, 111 (7th Cir. 1991) (looking to the "congressional scheme that governs the transfer of assets that took place" to determine the successor on plaintiff's claim following a statutory receivership). Accordingly, this Court must look to the TBOC to determine which entity resulting from the 2022 Corporate Restructuring bears liability in connection with Plaintiff's claims.

    31.    *Second*, the Court should apply the law of the state of incorporation of the purported successor to determine whether to impose alter ego or successor liability. *See City Envtl. v. United States Chem. Co.*, 814 F. Supp. 624, 634 (E.D. Mich. 1993) ("All the corporations involved here are creatures of state law and such questions [of successor liability] should be determined by reference to the law of the state of their incorporation, unless the application of that law would conflict with federal policy"); *see also Bouchillon v. Deutz-Fahr*, 268 F. Supp. 3d 890, 905 (N.D. Miss. 2017) (applying the laws of the place of incorporation to "the successor liability issues"). This is consistent with public policy, as the courts "should seek to further harmonious relations between states and to facilitate commercial intercourse between them," which would be

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

undermined if courts of one state were to challenge the corporate formations made in accordance with other states' laws. *Bouchillon* at 905.

32.     ***Third***, as Plaintiff acknowledges, a court should apply "the local law of the state where [an] injury occurred, unless, with respect to the particular issues, ***some other state has a more significant relationship***." Mot. at 15 (emphasis added). While Michigan may have the most significant relationship to Plaintiff's alleged injuries, the matter at issue here is not the tort alleged in the Complaint, but the legal effect of a Texas merger on questions of successor liability. There is no doubt that Texas has a more significant relationship to that issue than does Michigan. *See Soviet Pan Am Travel Effort v. Travel Comm., Inc.*, 756 F. Supp. 126, 131 (S.D.N.Y. 1991) ("Because a corporation is a creature of state law whose primary purpose is to insulate shareholders from legal liability, the state of incorporation has the greater interest in determining when and if that insulation is to be stripped away."); *Leitner v. Sadhana Temple of N.Y., Inc.*, No. CV 13-07902 MMM (Ex), 2014 U.S. Dist. LEXIS 198479, at *49 (C.D. Cal. Oct. 17, 2014) ("New York, as the Temple's state of incorporation, has a substantial interest in determining the nature and extent to which entities incorporated within its borders can be held liable. Whatever interest California has in regulating the conduct of foreign businesses is insubstantial by comparison.").[31]

33.     Applying Michigan law to determine successor liability in the context of a Texas statutory merger risks creating inconsistent results. *See Bouchillon*, 268 F. Supp. 3d at 905 (finding that applying the law of the state of merger would "advance the principles of certainty,

---

[31] Plaintiff argues that a state's alter-ego and successor-liability laws conflict with federal policy if they allow a state to "becom[e] a haven for companies seeking to avoid their obligations" (Mot. at 13-14). The TBOC has provided for divisional mergers for over 30 years, with no court finding that it creates a conflict with federal policy. Additionally, several other states have similar divisional merger statutes, and no court has found that any of their laws conflict with federal policy. In any event, far from providing Corizon Health with a "haven . . . to avoid [its] obligations," the Divisional Merger provided Corizon Health access to as much, if not *greater*, value for its unsecured creditors.

15

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

B.

predictability, and uniformity of result" and "is vastly preferable to the alternative, which would base a . . . corporation's successor liability on the law of whichever state an injury happened to occur"). For each of these reasons, this Court should look to Texas law when determining questions of successor liability resulting from the 2022 Corporate Restructuring.

### B.    The Divisional Merger Complied with Texas Law.

34.    The TBOC "applies to all business entities, regardless of when such entities were formed." *Phillips v. United Heritage Corp.*, 319 S.W.3d 156, 163 n.5 (Tex. Ct. App. 2010). The single party to the Divisional Merger, Corizon Health, was properly domiciled in Texas at the time of the Divisional Merger, and subject to Texas law.[32] Corizon Health, therefore, was permitted to participate in a divisional merger under the TBOC.[33]

35.    The TBOC expressly permits a divisional merger by one organization whereby that entity's assets and liabilities are divided among two or more organizations that survive or are created by a plan of merger. *See* Tex. Bus. Orgs. Code § 1.002(55)(A) ("Merger' means (A) the division of a domestic entity into two or more new domestic entities or other organizations or into a surviving domestic entity and one or more new domestic or foreign entities or non-code organizations"); *see also* Tex. Bus. Orgs. Code § 10.003 (providing for "more than one

---

[32] *See* Certificate of Conversion. As discussed above, pursuant to the Combination Merger, which the parties underwent prior to the Divisional Merger, all assets and liabilities, including those of pre-merger Corizon Health, were merged into post-merger Corizon Health, as the survivor of such merger. The Combination Merger was proper under Texas law. *See* Tex. Bus. Orgs. Code Ann. § 1.002(55)(A) ("Merger' means . . . (B) the combination of one or more domestic entities[.]").

[33] *See* Tex. Bus. Orgs. Code Ann. § 10.001(a) ("A domestic entity may effect a merger by complying with the applicable provisions of this code. A merger must be set forth in a plan of merger."); *see also* Tex. Bus. Orgs. Code Ann. § 1.002(55)(A) ("Merger means . . . (A) the division of a domestic entity into two or more new domestic entities or other organizations or into a surviving domestic entity and one or more new domestic or foreign entities or non-code organizations").

IBUTZEL\999999999\0400\100011690.v1-8/17/22

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**B.**

organization [] to survive or to be created by the plan of merger"). That is precisely what Corizon Health did here.

36.     The TBOC sets forth the procedures that an entity must follow to effect a divisional merger. It provides that "a domestic entity may effect a merger by complying with the applicable provisions of [the TBOC]" and that "[a] merger must be set forth in a plan of merger." Tex. Bus. Orgs. Code Ann. §§ 10.001(a) and (b).[34] It also outlines the provisions that are required to be included in a plan of merger, and those provisions that are discretionary. *See* Tex. Bus. Orgs. Code. Ann. §10.002-004. If a divisional merger is being effectuated, then the plan of merger must specify the manner and basis of allocating and vesting the property and liabilities of each merger party among one or more of the surviving or new organizations. *See* Tex. Bus. Orgs. Code Ann. §§ 10.003 ("If more than one organization is to survive or to be created by the plan of merger, the plan of merger must include . . . (1) the manner and basis of allocating and vesting the property of each organization that is a party to the merger among one or more of the surviving or new organizations."). If any Texas organization is a party to the merger, a certificate of merger must be filed with the Secretary of State in order for the merger to take effect. *See* Tex. Bus. Orgs. Code Ann. §10.151.

37.     Corizon Health satisfied all of these requirements. Corizon Health effectuated the Divisional Merger through the Plan of Merger and Certificate of Merger. The Plan of Merger was properly approved by Corizon Health,[35] was in writing, and included all the information required

---

[34] "To effect a merger, each domestic entity that is a party to the merger must act on and approve the plan of merger in the manner prescribed by this code for the approval of mergers by the domestic entity." Tex. Bus. Orgs. Code Ann. § 10.001(b).

[35] *See* Plan of Merger, Recitals ("the board of directors of the Company and [Valitas], in its capacity as the sole shareholder of the Company, have each approved the Merger and this Plan.").

17

**B.**

by section 10.002 of the TBOC.[36]  The Plan of Merger also specified how all assets and liabilities

of the combined Corizon Health would be allocated among Corizon Health or CHS TX,

respectively, as required by Section 10.003 of the TBOC.[37]  The Plan of Merger provided that the

merger would take effect as set forth in the Certificate of Merger.[38]  Because Corizon Health is

and was a Texas entity at the time of the Divisional Merger, it filed the Certificate of Merger with

the Secretary of State.[39]  The Texas Secretary of State accepted the filing on May 3, 2022,[40] and

the Divisional Merger became fully effective on May 5, 2022.[41]

**C.    Texas Law provides that Corizon Health is Exclusively Liable on Plaintiff's Claim.**

38.    For over 30 years, Texas law has permitted divisional mergers that exclusively

allocate assets and liabilities between the surviving entity and a new entity created by the

transaction.  Huff, The New Texas Business Corporation Act Merger Provisions, 21 St, Mary's

L.J. 109, 110 (1989).  Several other states have since enacted similar statutes.  *See* 15 Pa. Cons.

Stat. § 361; Ariz. Rev. Stat. Ann. § 29-2601; Del. Code Ann. tit. 6, § 18-217(b)-(c).  Any exclusive

allocation through a divisional merger under the TBOC is fully enforceable under Texas law.  *See,*

*e.g.*, *Plastronics Socket Parts., Ltd. v. Hwang*, No. 18-cv-00014, 2019 U.S. Dist. LEXIS 111892,

at *17–18 (E.D. Tex. June 11, 2019) *adopted* 2019 U.S. Dist. LEXIS 111206 (E.D. Tex. July 3,

---

[36] *See* Plan of Merger, §§ 1-6, 8.

[37] *See* Plan of Merger, § 3-4; Schedule 3.01(a)-(b); Schedule 4.01(a)-(b).

[38] *See* Plan of Merger, § 2(a).

[39] *See* Certificate of Merger.

[40] *See* Certificate of Merger.

[41] *See* Exhibit E, Form 805, Statement of Event or Fact, May 5, 2022.

18

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**B.**

2019) (deciding rights of parties based on allocation of assets effected through a Texas divisional merger as provided by the TBOC).

39.     Importantly, the TBOC provides that the surviving or new entity "to which a liability or obligation is allocated under the plan of merger is the primary obligor for the liability or obligation." and "no other party to the merger. . . and no other new domestic entity. . . created under the plan of merger is liable for the debt or other obligation." *Id.* § 10.008(a)(3) and (4).[42] The Plan of Merger confirms that it shall have the effects set forth in Section 10.008 of the TBOC.[43] Thus, under Texas law, CHS TX, an entity created by the Plan of Merger, cannot be liable for any obligations allocated to Corizon Health. *See id.*

40.     In accordance with these provisions, once the Divisional Merger took effect, Corizon Health ceased to exist in its former capacity; all of its assets and liabilities were allocated between Corizon Health or CHS TX in accordance with the Plan of Merger.  As relevant here, Plaintiff's lawsuit was specifically listed on the schedule of lawsuits and claims that were allocated

---

[42] Tex. Bus. Orgs. Code § 10.008(a) provides in relevant part:

> When a merger takes effect: . . . (3) all liabilities and obligations of each organization that is a party to the merger are allocated to one or more of the surviving or new organizations in the manner provided by the plan of merger; (4) each surviving or new domestic organization to which a liability or obligation is allocated under the plan of merger is the primary obligor for the liability or obligation, and, except as otherwise provided by the plan of merger or by law or contract, no other party to the merger, other than a surviving domestic entity or non-code organization liable or otherwise obligated at the time of the merger, and no other new domestic entity or non-code organization created under the plan of merger is liable for the debt or other obligation . . .

[43] *See* Plan of Merger, § 2(c).

IBUTZEL\999999999\0400\100011690.v1-8/17/22

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**B.**

to Corizon Health—*i.e.*, it was not allocated to CHS TX (or YesCare).[44]  CHS TX did not exist prior to the 2022 Corporate Restructuring and therefore was never liable for Plaintiff's claim. Rather, all liability in connection with Plaintiff's lawsuit rested with Corizon Health before the Divisional Merger, and all liability in connection with Plaintiff's lawsuit remained with Corizon Health after the Divisional Merger.  It is therefore Corizon Health alone—not CHS TX or YesCare—that is and has always been the proper defendant in this action.

> **D.      It Would Be an Abuse of Discretion for This Court to Find YesCare or CHS TX Liable for Plaintiff's Claims Because There Has Been No Transfer.**

41.    "[S]ubstitution under Rule 25(c) is discretionary."  *Wilcox v. Kalchert*, No. 2:20-cv-234, 2021 U.S. Dist. LEXIS 191701, at *3 (W.D. Mich. Oct. 5, 2021); *see also Mroz v. Lee*, 884 F. Supp. 246, 249 (E.D. Mich. 1995) ("Rule 25 sets out a discretionary standard for the Court to determine whether a party should be substituted.  It also allows the original party to continue the action.").  Importantly, Rule 25 permits (but does not require) substitution "[i]f an interest is transferred."  Fed. R. Civ. P. 25.  It is well-established that "[i]t would be an abuse of discretion for a court to allow a substitution in the absence of a transfer in interest."  *Software Freedom Conservancy, Inc. v. Best Buy Co.*, No. 09 Civ. 10155 (SAS), 2010 U.S. Dist. LEXIS 125426, at *9 (S.D.N.Y. Nov. 29, 2010) (internal quotation marks omitted); *Simplifi Health Benefit Mgmt., LLC v. Cayman Is. Nat'l Ins. Co.*, No. 2:13-cv-714, 2015 U.S. Dist. LEXIS 120137, at *5 (S.D. Ohio Sep. 9, 2015) (denying substitution where "the cause of action in this case was specifically excluded from the transfer"); *State Bank of India v. Chalasani (In re Chalasani),* 92 F.3d 1300, 1312 (2d Cir. 1996) ("For Society to be substituted for State Bank, there must have been a transfer of interest from it to Society.  Here there was none.  Although granting substitution of one party

---

[44] *See* Plan of Merger, Schedule 4.01(b)(RL) (listing William Kelly's lawsuit as a liability allocated to Corizon Health).

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**B.**

in litigation for another under Rule 25(c) is a discretionary matter for the trial court, such discretion may not be abused by allowing substitution in the absence of a transfer of interest." (internal citation omitted)); *Zinna v. Congrove*, No. 05-cv-01016-PAB, 2019 U.S. Dist. LEXIS 43783, at *30-31 (D. Colo. Mar. 18, 2019) (holding that a party potentially liable to plaintiff pursuant to an indemnity agreement cannot be substituted because no transfer occurred).

42.    Texas law is clear that the allocation of assets and liabilities through a divisional merger is not a "transfer." Tex. Bus. Orgs. Code § 10.008(a)(2)(C);[45] *see also Simplifi Health Benefit Mgmt.,* 2015 U.S. Dist. LEXIS 120137, at *7 ("To determine whether a transfer of interest has occurred, the Court applies state substantive law.").  As a result, the Motion should be denied.

43.    Courts have recognized that Rule 25(c) "does not easily lend itself to contested motions practice." *Software Freedom Conservancy*, 2010 U.S. Dist. LEXIS 125426, at *9.  For that reason, the "primary consideration in deciding a motion pursuant to Rule 25(c)" is whether "substitution will expedite and simplify the action." *Id.* at *8–9 (internal quotation marks omitted). Here, Plaintiff's request for substitution will only complicate and delay the action, as it will require significant discovery, further briefing and a full trial or evidentiary hearing.  Under these circumstances, a protracted dispute regarding substitution serves no purpose.

44.    Nor will Plaintiff be prejudiced if substitution is denied.  Rule 25(c) is clear that a case may continue against the original defendant while still binding any successor entity, regardless of whether that entity was substituted during the case. *Software Freedom Conservancy*, 2010 U.S. Dist. LEXIS 125426, at *9 (Rule 25(c) "permits automatic continuation of a lawsuit

---

[45] "When a merger takes effect: . . . all rights, title, and interests to all real estate and other property owned by each organization that is a party to the merger is allocated to and vested, subject to any existing liens or other encumbrances on the property, in one or more of the surviving or new organizations as provided in the plan of merger *without: . . . any transfer or assignment having occurred. . . .*" Tex. Bus. Orgs. Code § 10.008(a)(2)(C) (emphasis added).

21

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**B.**

against an original corporate party, although the outcome will bind the successor corporation, unless the court believes the transferee's presence would facilitate the conduct of the litigation." (internal quotation marks omitted)).  Substitution is therefore neither necessary nor appropriate.

### III.  The Motion Should Be Denied as an Improper Attack on the 2022 Corporate Restructuring under the Guise of Substitution.

45.    This is not a typical request for substitution following an asset sale or single-survivor merger resulting in an uncontested transfer of liability.  Rather, the Motion is really an attack on—and attempt to have this Court unwind—the 2022 Corporate Restructuring.  That is not a proper use of a Rule 25(c) motion, and the Court should reject it.

46.    First, as shown above, the relief Plaintiff seeks is incompatible with Texas law, which explicitly provides that Corizon Health is the only party liable to Plaintiff, should he succeed in this action.  The relief that Plaintiff seeks is not mere substitution, but the "drastic" and "extraordinary" equitable remedy of rescission.  *Allen v. Westpoint-Pepperell, Inc.*, 933 F. Supp. 261, 268 (S.D.N.Y. 1996) (internal quotation marks omitted), *aff'd sub nom Krumme v. Westpoint Stevens Inc.*, 143 F.3d 71 (2d Cir. 1998); *Young-Allen v. Bank of Am., N.A.*, 298 Va. 462, 468 (2020) (calling rescission "the highest and most drastic exercise of the power of a court of chancery—to annul and set at naught the solemn contracts of parties."); *see Provident Life & Accident Ins. Co. v. Adie*, 982 F. Supp. 1269, 1271 (E.D. Mich. 1997).  But rescission cannot be sought through motion.  Rather, "a claim seeking the equitable rescission of a contract must be adequately pled in a valid pleading."  *Young-Allen*, 298 Va. at 468.  Not only that, but Plaintiff must show fraud or inequitable conduct through "clear and convincing evidence."  *Stenger v. Freeman*, No. 14-cv-10999, 2015 U.S. Dist. LEXIS 127072, at *9 (E.D. Mich. Sep. 23, 2015).  By disregarding these requirements and presenting the issue as a Rule 25(c) motion, Plaintiff is attempting to skip the necessary steps of pleading his cause of action, allowing an answer,

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**B.**

subjecting his claim to dispositive motion practice, and developing a factual record sufficient to

prove his case by clear and convincing evidence.  Due process does not allow such shortcuts.

47.     The same is true to the extent Plaintiff's request for substitution rests on allegations

that the 2022 Corporate Restructuring constitutes a fraudulent transfer or any other type of fraud.

*See, e.g.*, Mot. at 10, 16.  These allegations require Plaintiff to state a claim in a complaint, not

merely seek substitution by motion.  Indeed, the Michigan Voidable Transfer Act, MCLS § 566.34,

requires a plaintiff to plead the following to state a claim: "(1) that the defendant is a person under

the Act; (2) that it made a conveyance; (3) that it did so with actual intent to hinder, delay, or

defraud creditors; and (4) that plaintiffs are creditors under the Act."  *Emmet v. Franco*, No. 16-

cv-11211, 2016 U.S. Dist. LEXIS 109726, at *20-21 (E.D. Mich. Aug. 18, 2016) (finding Plaintiff

failed to allege all necessary elements under the Fraudulent Conveyance Act); *see also PNC Equip.*

*Fin., LLC v. Darin (In re Darin)*, 631 B.R. 301, 312 (Bankr. W.D. Mich. 2021) (granting summary

judgment for defendants due to plaintiff's failure to state a "prima facie case").  These claims must

also meet the heightened pleading standards of Rule 9(b).  *See* Fed. R. Civ. P. 9(b); *In re Merrill*

*Lynch & Co., Inc. Rsch. Reps Sec. Litig.*, No. 02 Civ. 8472 (JFK), 2008 U.S. Dist. LEXIS 53923,

at *22 (S.D.N.Y. June 26, 2008) (applying Rule 9(b) to non-fraud claims that "indisputably [were]

based on plaintiffs' allegations of Defendant's fraudulent conduct"); *Kitchen v. Farrell Log*

*Structures LLC*, No. 1:07-cv-219, 2008 U.S. Dist. LEXIS 132202, at *3–4 (W.D.N.C. Nov. 13,

2008) (applying Rule 9(b) to allegations of fraudulent conduct in the context of an alter ego claim).

Here, Plaintiff has not even sought to plead fraud or fraudulent conveyance, much less stated a

claim for either cause of action.  Plaintiff's attempt to end-run basic pleading requirements through

the use of a Rule 25(c) motion should be rejected.

48.     Nor can Plaintiff succeed on its purported fraudulent transfer claim.  **First**, there

was no transfer—as discussed above, the TBOC is clear that a merger does not operate as a

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**B.**

transfer.  **Second**, even if there was a transfer, it was for reasonably equivalent value.  In exchange for certain assets being vested in CHS TX, Inc., CHS TX assumed nearly $100 million of secured debt, leaving Corizon Health with an enhanced ability to pay unsecured creditors.[46]  This is reasonably equivalent value under both MCL 566.34 and MCL 566.35.

### IV.    Plaintiff's Fraud, Alter Ego, and Successor Liability Theories Fail.

49.    Finally, Plaintiff argues that Michigan law applies to the issues of alter ego and successor liability.  Even if Plaintiff were correct that Michigan law applies here (and he is not), the Motion would still fail to state any basis for finding that YesCare or CHS TX is liable to Plaintiff.

50.    As an initial matter, there can be no successor liability as to YesCare, which did not participate in the Divisional Merger and is merely the parent of CHS TX.  *Best Foods v. Aerojet-General Corp.*, 173 F. Supp 2d 729, 757 (W.D. Mich. 2001) (parent corporation cannot be held liable solely on the basis of a *de facto* merger of a subsidiary with a predecessor).  Plaintiff asserts no basis for why corporate separateness between CHS TX and YesCare should be ignored.

### A.    CHS TX Is Not Corizon Health's Alter Ego.

51.    Plaintiff relies on alter ego theory to argue that the corporate separateness between CHS TX and YesCare, on the one hand, and Corizon Health, on the other, should be disregarded and all three entities should be treated as one.  But this theory is inapt, as it applies only in cases involving corporate parents or owners.  Every one of the cases Plaintiff cites occurs in this context.  *Wells v. Firestone Tire & Rubber Co.*, 421 Mich. 641, 650-51 (1984) (analyzing corporate separateness between Firestone, parent, and its wholly owned subsidiary); *Green v. Zeigelman*, 310 Mich. App. 436, 452 (2015) (analyzing corporate separateness of owners and company);

---

[46] *See* Plan of Merger, Schedule 4.01(a)(1).

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**B.**

*Foodland Distribs. v. Al-Naimi*, 220 Mich. App. 453, 456 (1996) (analyzing whether owner should be liable for it's company's debt); *Daymon v. Fuhrman*, No. 249007, 2004 Mich. App. LEXIS 2607, at *3-4 (App. Ct. 1st Dist. Oct. 5, 2004) (analyzing whether owner should be personally liable for default judgment against his defunct company); *Ryan Racing, LLC v. Gentilozzi*, 231 F. Supp. 3d 269, 281-82 (W.D. Mich. 2017) (applying alter ego to whether individual owner should liable for defunct company's claim and not to whether purchaser of defunct company's assets should be liable).

52.     Here, neither YesCare nor CHS TX is Corizon Health's parent or owner, so alter ego theory does not apply.

## B.     Plaintiff Has Failed to Make the Required Showing for Veil-Piercing.

53.     Michigan law establishes the following standard for piercing the corporate veil: "First, the corporate entity must be a mere instrumentality of another entity or individual.  Second, the corporate entity must be used to commit a fraud or wrong.  Third, there must have been an unjust loss or injury to the plaintiff."  *SCD Chem. Distribs., Inc. v Medley,*  203 Mich. App. 374, 381 (1994) (citation omitted); *Gentilozzi*, 231 F. Supp. 3d at 281–83 (applying three-part test).  As Plaintiff's authority clarifies, a causal connection between factors two and three is required—*i.e.*, there must be evidence that the defendant used the corporate entity to commit a wrong that caused an injury or loss to the plaintiff.  *Daymon*, 2004 Mich. App. LEXIS 2607, at *3-4.

54.     Plaintiff has failed to allege any facts for how any of these factors are met.  First, he has failed to state any facts showing that CHS TX—an independent corporation with its own assets, liabilities and contractual relationships—is a "mere instrumentality" of Corizon Health.

55.     Additionally, Plaintiff fails to state any facts regarding what unjust loss or injury he has experienced.  Plaintiff may have experienced the injuries outlined in the Amended Complaint, but these injuries in no way relate to or arise from the 2022 Corporate Restructuring

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**B.**

or any misuse of the corporate form.  Rather, Plaintiff's entire argument is that a Texas divisional merger is an abuse of corporate form and that YesCare, CHS TX, and Corizon Health's "separate legal personalities serve no legitimate business purpose and were merely contrived . . . as a device to evade legal obligations to creditors."  Mot. at 19.

56.      As an initial matter, this argument is at best premature.  Plaintiff has received no judgment against Corizon Health, much less one that he has been unable to collect on because of the Divisional Merger.  Given that Plaintiff has suffered no injury from the 2022 Corporate Restructuring, his veil-piercing argument is wholly theoretical, and he lacks standing to make it.  Moreover, a decision by the Court on this issue would constitute an advisory opinion, which the Court should decline to make.

57.      But even if Plaintiff's veil-piercing argument were procedurally proper (and it is not), it would still be wrong.  As discussed above, far from injuring Plaintiff, the 2022 Corporate Restructuring was the best device available to preserve jobs and ensure unsecured creditors could receive value on their claims.  In fact, Plaintiff's preferred outcome of treating CHS TX and Corizon Health as one entity may actually put him in a worse position than he is in now, as he would at best have an unsecured claim against an entity with nearly $100 million of secured debt.  The 2022 Corporate Restructuring thus served a "legitimate business purpose": it was the best restructuring alternative available for all of Corizon Health's stakeholders—including Plaintiff.

**C.      Plaintiff's Successor Liability Argument Fails.**

58.      Plaintiff's successor liability claim against CHS TX fares no better.  Michigan follows the traditional rule of non-liability for corporate successors who acquire a predecessor through the purchase of assets.  Michigan recognizes five narrow exceptions to the traditional rule of non-liability: (1) where there is an express or implied assumption of liability; (2) where the transaction amounts to a consolidation or merger; (3) where the transaction was fraudulent; (4)

26

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**B.**

where some elements of a purchase in good faith were lacking, or where the transfer was without consideration and the creditors of the transferor were not provided for; or (5) where the transferee corporation was a mere continuation or reincarnation of the old corporation. Here, none of these exceptions to the non-liability rule apply.

59.    Plaintiff concedes that the first exception does not apply.

60.    The second exception is effectively the de facto merger doctrine and it does not apply because the 2022 Corporate Restructuring was a statutory merger that complied with the TBOC. It was not a consolidation or merger in which two or more entities combine to form one surviving entity. Rather, as explained above, the relevant transaction of the 2022 Corporate Restructuring was a "divisional merger" under Texas law, whereby two entities emerged, each with different assets, liabilities, and contractual relationships. *See Channel Clarity Holdings LLC v. Klaas (In re Channel Clarity Holdings LLC)*, No. 21-bk-07972, 2022 Bankr. LEXIS 1985, at *20 (Bankr. N.D. Ill. July 18, 2022) (*de facto* merger only applies when statutory formalities are not met).    Additionally, as further explained below, there is no *de facto* merger.

61.    The third exception does not apply because Plaintiff fails to plead fraud both as a matter of procedure (by filing a motion rather than a complaint) and as a matter of substance (by failing to state facts sufficient to satisfy the heightened pleading standards of Rule 9(b)). Moreover, the Divisional Merger was not fraudulent because, among other things, the allocation of assets to CHS TX was for reasonably equivalent value and fair to creditors.

62.    The fourth exception does not apply because consideration was, in fact, provided to Corizon Health through the Divisional Merger. Specifically, CHS TX assumed nearly $100 million of secured debt, and Corizon Health was allocated cash, a loan and insurance rights.

63.    The fifth exception does not apply because, as explained below, there was no mere continuation.

IBUTZEL\999999999\0400\100011690.v1-8/17/22

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**B.**

### D.    The 2022 Corporate Restructuring Was Not a *De Facto* Merger.

64.    Under Michigan Law, courts consider four factors to determine whether a transaction is a *de facto* merger: (1) there is a continuation of the enterprise of the seller corporation; (2) there is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation; (3) the seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; (4) the purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation. *Craig v. Oakwood Hosp.*, 471 Mich. 67 (2004). Importantly, "[a]ll four factors must be present to find a de facto merger under Michigan law." *Best Foods*, 173 F. Supp. 2d at 757–58.

65.    Among other things, Plaintiff has failed to allege facts sufficient to show the second requirement: continuity of shareholders. *Priestly v. Headminder, Inc.*, 647 F.3d 497, 506 (2d Cir. 2011) (holding that Plaintiff's allegations of de facto merger fail to include any evidence that establishes common ownership). Nevertheless, continuity of shareholders does not exist here because CHS TX did not pay for the assets it acquired with shares of its own stock. Rather, it provided consideration for the assets it acquired through the assumption of over $100 million of Corizon Health's secured debt.

### E.    CHS TX Is Not a Mere Continuation of Corizon Health.

66.    To determine whether mere continuation applies, the Court must find common ownership and a transfer of substantially all assets. *See Stramaglia v. United* States, 377 Fed. Appx. 472, 475 (6th Cir. 2010) ("The only indispensable prerequisites to application of the [mere

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

continuation] exception appear to be common ownership and a transfer of substantially all assets.").[47]

67.     Among other things, Plaintiff's fail to prove a transfer of substantially all assets. Corizon Health's pre-merger assets were not all transferred to CHS TX or YesCare.[48]  To the contrary, significant assets and contracts remained with Corizon Health as part of the Divisional Merger.[49]  These include $1 million in cash, access to additional funds under the Funding Agreement, and access to insurance policy proceeds.  And far from "transferring all its assets" to CHS TX through the 2022 Corporate Restructuring, Corizon Health transferred its most significant liability—nearly $100 million in secured debt.[50]  Thus, Plaintiff's successor liability theories fail.

## REQUEST FOR DUE PROCESS

68.     As noted above, Plaintiff improperly seeks to use the Motion to assert fraud and other causes of action against CHS TX and YesCare, and to cause the rescission of the 2022 Corporate Restructuring.  In the interest of due process, to the extent the Court is inclined to consider the Motion rather than deny it for the legal deficiencies identified above, CHS TX and YesCare respectfully request the opportunity to further develop the record in advance of an evidentiary hearing.  CHS TX and YesCare also respectfully request that the Court order Plaintiff

---

[47] It is also not clear whether the mere continuation doctrine applies to a statutory merger, as the doctrine was developed to address the issue of liability incurred by asset purchasers.  *See Stramaglia*, 377 Fed. Appx. at 475 (finding that the doctrine of mere continuation ensures that a "corporation which acquires the entire property of another corporation under an arrangement which has the effect of distributing the assets of the latter corporation among its stockholders, to the exclusion of its creditors, takes the property subject to payment of the debts of its vendor") (quoting *Grenell v. Detroit Gas Co.*, 70 N.W. 413, 413-14 (Mich. 1897)).

[48] *See* Plan of Merger, Schedule 3.01(a).

[49] *See* Plan of Merger, Schedule 3.01(b).

[50] *See* Plan of Merger, Schedule 4.01(a)(1).

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**B.**

either to amend the Complaint or to commence a new action properly asserting the causes of action

embedded in the Motion, and provide CHS TX and YesCare with a full and fair opportunity to

exercise their rights as defendants to a complaint, rather than respondents to a Rule 25(c) motion.

## <u>CONCLUSION</u>

69.    For the foregoing reasons, YesCare and CHS TX respectfully submit that the

Motion should be denied.

IBUTZEL\999999999\0400\100011690.v1-8/17/22

Case 23-40186 Document 13 Filed in TXSB on 02/14/23 Page 41 of 42
Case 2:23-cv-00106-Z-BR Document 3 Filed 02/14/23 Page 41 of 42 Desc
Exhibit Exhibit 3 - State Court File    Page 368 of 627
B.

Respectfully submitted,

**WHITE & CASE LLP**

Attorneys for YesCare Corp. and CHS TX, Inc.

Samuel P. Hershey (admission application forthcoming)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
Email: sam.hershey@whitecase.com

Brian Pfeiffer (admission application forthcoming)
Amanda Parra Criste (admission application forthcoming)
200 South Biscayne Boulevard, Suite 900
Miami, FL 33131
Telephone: (305) 371-2700
Email: brian.pfeiffer@whitecase.com
Email: aparracriste@whitecase.com

Jason N. Zakia (admission application forthcoming)
111 South Wacker Drive, Suite 5100
Chicago, IL 60606
Telephone: (312) 881-5400
Email: jzakia@whitecase.com

By: _____ /s/ Samuel P. Hershey _____

**BUTZEL LONG, P.C.**

_____ /s/ Max J. Newman _____
By:     Max J. Newman (P51483)
Attorneys for YesCare Corp. and CHS TX, Inc.
201 W. Big Beaver Rd., Ste. 1200
Troy, MI  48084
(248) 258-2907
newman@butzel.com

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**B.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S.

Mail and facsimile this 17th day of August, 2022 upon:

| | |
|---|---|
| Laurence H. Margolis (P69635) | Ronald W. Chapman Sr., (P37603) |
| Ian T. Cross (P83367) | Delvin Scarber (P64532) |
| Attorneys for Plaintiff | *Chapman Law Group* |
| 214 S. Main St., Suite 200 | Attorneys for Defendants Corizon Health, |
| Ann Arbor, MI 48104 | Inc. and Keith Papendick, M.D. |
| Phone: (734) 994-9590 | 1441 West Long Lake Rd., Suite 310 |
| Email: larry@lawinannarbor.com | Troy, MI 48098 |
| Email: ian@lawinannarbor.com | Phone: (248) 644-6326 |
| | Email: rchapman@chapmanlawgroup.com |
| | Email: dscarber@chapmanlawgroup.com |

By:   Max J. Newman

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

# EXHIBIT 5

FILED by Macomb County Circuit Court
6/14/202

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

## STATE OF MICHIGAN

### IN THE MACOMB COUNTY CIRCUIT COURT

BLUE CROSS BLUE SHIELD OF
MICHIGAN,

      Plaintiff,

v

CORIZON HEALTH INCORPORATED,

      Defendant.

_____/

Case No.: 2022-002172-CB

RICHARD L. CARETTI

Gabe Sybesma (P66632)
Paul Wilk Jr (P83691)
Attorneys for Plaintiff
One Woodward Avenue, Suite 2400
Detroit, MI 48226-5485
(313) 965-7848
gabe.sybesma@kitch.com
paul.wilk@kitch.com

_____/

## COMPLAINT

There is no other civil action between these parties arising out of the same transaction or occurrence as alleged in this Complaint pending in this Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge.    MCR 2.113(C)(2)(b).

(P83691)

This Case meets the statutory requirements to be assigned to the Business Court pursuant to MCL 600.8031(C) and MCL 600.8035.

(P83691)

Kitch Drutchas
Wagner Valitutti &
Sherbrook

(313) 965-7900

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

NOW COMES BLUE CROSS BLUE SHIELD OF MICHIGAN ("Plaintiff") and for its Complaint against Defendant CORIZON HEALTH INCORPORATED ("Defendant") states as follows:

## GENERAL ALLEGATIONS

1. Plaintiff Blue Cross Blue Shield of Michigan ("BCBSM") is a nonprofit mutual insurance company headquartered at 600 East Lafayette Boulevard, Detroit, Michigan 48226.

2. Defendant, Corizon Health Incorporated, is a prison healthcare contractor in the United States that provides services nationwide.

3. Defendant, Corizon Health Incorporated, has an office in Lansing, Michigan and contracted with the State of Michigan to provide healthcare services at over 30 facilities across the State.

4. Specifically, Corizon Health Incorporated provided healthcare services at the Michigan Department of Corrections facility located in Macomb County, Michigan.

5. Therefore, Defendant conducted business in Macomb County Michigan and Venue is proper pursuant to MCL 600.1621.

6. This Court has jurisdiction over this matter as the amount in controversy exceeds $25,000.00.

## FACTUAL BACKGROUND

7. Plaintiff restates the allegations contained in the above Paragraphs as if fully set forth herein.



Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
One Woodward Ave Ste
Burn 2448
Detroit, Michigan
48226-6495

(313) 965-7900

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

8. In December of 2015, Plaintiff and Defendant signed an administrative services contract ("The Contract"), in which Plaintiff processed medical claims for incarcerated individuals at Michigan correctional facilities serviced by Defendant.[1]

9. Both parties performed under this contract until September of 2021.

10. On September 29, 2021, Defendant terminated The Contract.

11. However, pursuant to the terms of The Contract, Defendant is responsible for reimbursing Plaintiff for all claims incurred prior to September 29, 2021, which is the date the termination became effective.

12. Plaintiff sent an Invoice to Defendant detailing the amount owed, which totals $3,410,136.51.[2]

13. As of early 2022, Defendant had yet to make any payments towards the amount owed.

14. Plaintiff mailed a demand letter to Defendant in March of 2022 detailing the amount due and owing.[3]

15. Defendant did not respond to this letter and did not object to the amount owed.

16. As of the date of this Complaint, Defendant has not made any payment towards the overdue balance.

17. Defendant is in breach of the contract it entered into with Plaintiff and currently owes Plaintiff $3,410,136.51, in addition to interest, costs, and attorney fees, as a result of said breach.



Klch Drutchas
Wagner Valitutti &
Sherbrook
...
...
(313) 965-7900

---

[1] **Exhibit A-** Contract
[2] **Exhibit B-** Invoice
[3] **Exhibit C-** Demand Letter

3

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

## COUNT I: BREACH OF CONTRACT

18. Plaintiff restates the allegations contained in the above Paragraphs as if fully set forth herein.

19. A valid and enforceable contract exists between Plaintiff and Defendant, created in December of 2015.[4] This contract was renewed yearly, most recently in December of 2020.[5]

20. Plaintiff complied with all of its obligations under The Contract by processing medical claims submitted by Corizon on behalf of incarcerated individuals.

21. Defendant breached The Contract by failing to make payments for all claims processed prior to September 29, 2021, which was the date that Defendant terminated The Contract.

22. The breach by Defendant has caused damages to Plaintiff in the amount of $3,410,136.51, as well as interest, costs, and attorney fees.

WHEREFORE, Blue Cross Blue Shield of Michigan respectfully requests that this Honorable Court enter judgment in its favor and against Defendant, in addition to pre-suit and pre-judgment interest, costs, and attorneys' fees.

## COUNT II: ACCOUNT STATED

23. Plaintiff restates the allegations contained in the above Paragraphs as if fully set forth herein.



Kitch Drutchas
Wagner Valitutti &
Sherbrook
ATTORNEYS AND
COUNSELORS
One Woodward Avenue,
Suite 2400
Detroit, Michigan
48226-3485

(313) 965-7900

[4] Ex. A
[5] Exhibit D- Group Signature Page

4

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

24. Defendant entered into a valid and enforceable contract promising to reimburse in return for Plaintiff processing medical claims for incarcerated individuals at Michigan correctional facilities serviced by Defendant.

25. Plaintiff sent Defendant statements outlining the claims processed by Plaintiff and the amount owed to Plaintiff by Defendant.[6]

26. Defendant received the demand letter and never objected to the stated amount owed.

27. Defendant has not paid the balance owed on the account, despite Plaintiff's demand for payment.

28. Defendant is justly indebted to Plaintiff in the amount of $3,410,136.51 plus interest, costs, and attorneys' fees.

29. An Affidavit verifying the balance due on the account is attached as **Exhibit E**.

WHEREFORE, Plaintiff Blue Cross Blue Shield of Michigan respectfully requests that this Honorable Court enter judgment in its favor and against Defendant, in addition to pre-suit and pre-judgment interest, costs, and attorneys' fees.

## COUNT III: QUANTUM MERUIT

30. Plaintiff restates the allegations contained in the above Paragraphs as if fully set forth herein.

31. Plaintiff processed medical claims submitted by Defendant based upon Defendant's promise to pay Plaintiff the agreed-upon amount.

32. Defendant received benefits from the work performed by Plaintiff.



Kitch Drutsiue
Wagner Valitutti &
Sherbrook
Honolulu
Del Woodward Ave.
Suite 2400
Detroit, Michigan
48226-4485

(313) 965-7900

---

[6] Ex. C

5

DET02:2554611.1

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

33. As a result of Defendant's failure and refusal to pay the agreed-upon amount, Defendant has been unjustly enriched.

34. As a result of Defendant's failure and refusal to pay the agreed-upon amount, Plaintiff has sustained damages of at least $3,410,136.51, plus interest, costs, and attorneys' fees.

WHEREFORE, Plaintiff Blue Cross Blue Shield of Michigan respectfully requests that this Honorable Court enter judgment in its favor and against Defendant, in addition to pre-suit and pre-judgment interest, costs, and attorneys' fees.

Respectfully submitted,

KITCH DRUTCHAS WAGNER
VALITUTTI & SHERBROOK

By: _____

Gabe Sybesma (P66632)
Paul Wilk Jr (P83691)
Attorneys for Plaintiff
One Woodward Avenue, Suite 2400
Detroit, MI 48226-5485
(313) 965-7848

Dated: June 14, 2022



Kitch Drutchas
Wagner Valitutti &
Sherbrook

(313) 965-7900

6

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

# EXHIBIT A

Case 2:23-cv-01758-cMAG-DDoc 13CF Filed 05/14/23 Entered 02/14/23 09:27 Page 0 of 41
Case 2:23-01758-cMAG-DDoc 1 ECF No. 26-14/23 ell Entered 02/14/23 09:27 Page 0 of 41
Exhibit Exhibit 3 - State Court File    Page 378 of 627

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

---

### Administrative Services Contract –Weekly Invoiced Program

### Corizon

---

This Contract commences on ___December 1, 2015___ (the "Effective Date") and is made between Blue Cross Blue Shield of Michigan, a Michigan non-profit mutual insurance corporation, with offices at 600 Lafayette East, Detroit, Michigan 48226-2998 ("BCBSM") and _____ Corizon _____ with offices at  105 Westpark Drive Suite 200, Brentwood, TN 37027  ("Group"), as the plan sponsor and administrator of its group health care plan ("Plan").

BCBSM and Group have agreed that BCBSM shall administer Claims processing for the Plan. This Contract sets forth the administrative responsibilities of BCBSM and Group's financial and other obligations with respect to BCBSM's role as a service provider to the Plan.

By entering into this Contract, Group and BCBSM hereby agree that, to the extent the Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), their relationship is that of Group as "Plan Fiduciary" and BCBSM as "Service Provider" as those terms are used in Department of Labor guidance including 29 C.F.R. §2550.408b-2.

BCBSM and Group agree as follows:

## ARTICLE I
## DEFINITIONS

A.    "Amounts Billed" means the amount that Group shall reimburse and pay BCBSM for Claims which have been processed and paid by BCBSM or another BCBS Plan under the terms of this Contract, Pharmacy Benefits if applicable, the Administrative Fee set forth in Schedule A, any Additional Administrative Compensation ("AAC") as set forth in Schedule A, Michigan Claims Tax, Pharmacy benefit fees as set forth in Schedule A, Health Care Provider Interest, and other fees and charges as set forth in Schedules A and B.

B.    "BCBS Plan" means a company that has been licensed by BCBSA other than BCBSM.

C.    "BCBSA" means the Blue Cross and Blue Shield Association.

D.    "BlueCard Program" means the national program established by BCBSA under which Enrollee Claims are processed by BCBS Plans when Enrollees receive health care services outside of the geographic area that BCBSM serves. BCBSA mandates the policies, procedures and disclosures of the BlueCard Program and amends them from time to time. Schedule B sets forth BCBSA's required disclosures for the BlueCard Program and is incorporated into this Contract. If BCBSA amends the disclosures, such amendments shall automatically become a part of this Contract upon BCBSM giving 60 days prior written notice to Group.

E.    "Claim" means a request for payment from a health care provider for a health care service provided to an Enrollee, with an incurred date for the service during the term of this Contract. Claims billed to Group include all amounts that BCBSM reimburses health care providers including both service-based and value-based reimbursement. BCBSM negotiates provider reimbursement rates on its own behalf and may set the rate for health care services to cover any BCBSM obligation to health care providers. BCBSM does not retain any portion of Claims as compensation. Provider reimbursement is governed by separate agreements with providers, BCBSM standard operating procedures for Claims, and BCBSM Quality Programs.

Claims received from an out-of-state BCBS Plan for a health care service provided to an Enrollee out-of-state are paid according to that BCBS Plan's health provider contracts and processed according to BlueCard Program standard operating procedures. Pursuant to the BlueCard Program, as described in Schedule B, out-of-state Claims may include a BlueCard Access Fee for processing the claim. Out-

1

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

of-state Claims are reported and billed to the Group as they are received by BCBSM from the out-of-state BCBS Plan.

F.   "Contract" means this Administrative Services Contract – Weekly Invoiced Program, as may be amended from time to time, and any Schedules, Parts, Exhibits and Addenda attached hereto and incorporated herein by reference.

G.   "Contract Year" means the period from the Effective Date to the first Renewal Date, or the period from one Renewal Date to the next Renewal Date. If termination occurs other than at the end of a Contract Year, Contract Year means that period from the Effective Date or the most recent Renewal Date through the date of termination.

H.   "Coverages" means the health care benefits set forth in Universal Group Application or Part C of the Group Enrollment and Coverage Agreement, which is incorporated into this Contract.

I.   "Employee" means the following which are eligible and enrolled for Coverage under the terms of the Plan or as required by law: (i) employees as designated by Group; (ii) retirees and their surviving spouses as designated by the Group; and (iii) COBRA beneficiaries.

J.   "Enrollee" means an individual that Group enrolled as an employee, spouse or dependent in the Plan pursuant to Article II.B, either as an Employee or as a dependent of an Employee.

K.   "ERISA" means the Employee Retirement Income Security Act of 1974, as amended, 29 USC 1101, *et seq*, and regulations promulgated thereunder.

L.   "HIPAA" means the Health Insurance Portability and Accountability Act of 1996, as amended, Public Law 104-191 of 1996, *et seq*, and regulations promulgated thereunder.

M.   "IBNR Claims" means Claims which are incurred during the term of this Contract, including during the Transition Assistance Period, but have not been reported to the Group as Amounts Billed or paid and which remain the Group's liability.

N.   "PPACA" means the Patient Protection and Affordable Care Act, as amended, Public Law 111-148 of 2010, *et seq*, and regulations promulgated thereunder.

O.   "Quality Programs" refer to BCBSM programs funded with value-based provider reimbursement. Quality Programs are governed by separate agreements with health care providers and are designed to improve health care outcomes and control health care costs.

P.   "Renewal Date" means the date one year after the Effective Date, and the same date of every subsequent year. The Renewal Date may be changed by mutual agreement of BCBSM and Group.

Q.   "Transition Assistance Period (TAP)" means a period of twenty-four (24) months after Termination has been effectively demanded under Article IV, during which BCBSM shall provide those services, and Group shall perform those obligations, set forth in Article IV, Section B.

## ARTICLE II
## GENERAL RESPONSIBILITIES

A.   Claims Administrator Status.

If the Plan is governed by ERISA, based on Group's disclosure of ERISA status in this Contract, Group hereby delegates to BCBSM the responsibility and discretionary authority as claims administrator to makes final benefit determinations and plan interpretations necessary to make those benefit determinations. BCBSM's claims administrator responsibilities extend only to the full and fair review of claims and administrative appeals as set forth in ERISA §433. By assuming these specifically delegated responsibilities as claims administrator, BCBSM does not thereby assume any other duty of the Group as Plan Administrator or any other fiduciary function Group performs on behalf of its Plan. Any determination or interpretation made by BCBSM pursuant to its claim determination authority is

2

ASC Weekly Invoiced Program – CID# 279476

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

binding on the Enrollee, Group, and BCBSM unless it is demonstrated that the determination or interpretation was arbitrary and capricious. Group retains all other fiduciary responsibilities and duties under ERISA not specifically delegated to BCBSM in this Contract.

BCBSM shall not be responsible for Group's failure to meet any of its financial obligations or Plan Administrator responsibilities with respect to the Plan.

B.      **Eligibility and Enrollment.**

Prior to the Effective Date, Group shall notify BCBSM of all Enrollees that will be covered by the Plan. During the term of this Contract, following agreed upon procedures, Group shall notify BCBSM of all changes in Plan enrollment. Until BCBSM has been properly notified of changes to Group's Plan enrollment, BCBSM shall continue to process Claims for Enrollees as listed on BCBSM's computer membership programs. Group represents and warrants that any eligibility and status changes it requests are compliant with and permissible under applicable state and federal law, including the PPACA; and, agrees that it will only request eligibility and status change requests that are compliant with and permissible under applicable state and federal law, including the PPACA.

C.      **Claims Processing.**

During the term of this Contract, requests for payment from Michigan providers will be directly submitted to BCBSM and shall be processed according to BCBSM's standard operating procedures for Claims. Requests for payment from out-of-state providers may, depending on the type of request for payment, be directly submitted to the appropriate out-of-state BCBS Plan and shall be processed pursuant to the BlueCard Program as set forth in Schedule B.

D.      **Disputed Claims.**

Group shall notify BCBSM in writing of any Claim that Group disputes within 60 days of Group's access to a paid Claims listing. BCBSM shall investigate such Claims and respond to Group within a reasonable time period. Upon BCBSM's request, Group shall execute any reasonably necessary documents that will allow BCBSM to recover any amounts that may be owed by a third party with respect to such disputed Claim. If BCBSM recovers any amount from a third party or if BCBSM determines that the disputed Claim is not Group's financial responsibility or is incorrect, then BCBSM shall give Group a credit for the recovered or corrected amount (reduced by any stop loss credits given by BCBSM relating to such disputed Claim).

E.      **Subrogation.**

BCBSM shall be subrogated to all of Group's, the Plan's, or an Enrollee's rights with respect to any Claim, however, BCBSM is not obligated to institute or become involved in any litigation concerning such Claim. BCBSM will use reasonable efforts to identify Claims in which the Group may have a subrogation or reimbursement interest. BCBSM will evaluate information provided by the Enrollee and other sources to determine whether a subrogation or reimbursement interest exists. BCBSM will not be obligated to undertake any such recovery litigation unless mutually agreed to by BCBSM and Group in writing. Absent written agreement, should Group elect to pursue such recovery litigation, BCBSM agrees to cooperate in Group's recovery efforts. BCBSM will remit to Group the funds recovered from third parties, less any expenses BCBSM has incurred in the recovery effort, including any attorney fees. BCBSM may assign or subcontract a portion of its duties under this provision of the Contract to third parties. Group will assist BCBSM or its assignee or subcontractor as reasonably necessary for BCBSM, its assignee, or subcontractor to carry out its duties under this provision.

Group authorizes BCBSM to act on behalf of Group and/or the Plan in any health care class action litigation of which BCBSM has knowledge, including but not by way of limitation, drug manufacturer and product liability litigation. BCBSM will take reasonable steps to notify Group of such class action litigation. Group will notify BCBSM if Group desires to independently pursue such litigation and BCBSM will reasonably cooperate with Group. As part of BCBSM's subrogation duties, BCBSM will use reasonable efforts to identify Claims that may be included in such class action litigation. BCBSM may institute and participate in such class action litigation, however, Group acknowledges that

3

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

BCBSM is not obligated to do so unless BCBSM and Group otherwise agree in writing. Group will reasonably cooperate with BCBSM with respect to any such litigation. BCBSM may assign or subcontract a portion of its duties under this provision to third parties. Group authorizes BCBSM to settle or compromise any litigation and BCBSM will remit to Group any funds recovered, less any expenses that BCBSM has incurred in participation of such class action litigation.

F.      **Litigation.**

If a third party initiates a claim, suit, or proceeding against the Plan, Group, or BCBSM relating to benefits payable under the Plan or any of the administrative services subject to this Contract ("Litigation"):

1.      Each party shall provide prompt written notice of the Litigation to the other party if served with such Litigation.

2.      Group may, with BCBSM's consent, request that BCBSM select counsel and defend litigation. BCBSM retains the right to deny this request and enforce Group's obligation to defend the Litigation.

3.      Whenever Group or BCBSM is a party in any Litigation, regardless of who is obligated to defend the litigation, Group and BCBSM each reserve the right, at its own cost and expense, to retain counsel to protect its own interests.

4.      Regardless of who is obligated to defend the litigation, Group and BCBSM shall reasonably cooperate with each other to provide all relevant information and documents within their respective control that are not subject to a privilege or confidentiality obligation; and to reasonably assist each other to defend, settle, compromise, or otherwise resolve the Litigation. Whenever either party is served with any Litigation, the party served shall take all steps necessary to prevent a default in the Litigation prior to determining which party will defend such Litigation.

5.      BCBSM shall have full authority to settle or compromise such Litigation, without Group's specific consent, unless:

a.      $50,000 or more is at issue in the Litigation;
b.      State tax issues or mandated benefit issues are part of the Litigation and Group has requested BCBSM to defend the Litigation; or
c.      Settlement of the Litigation could have a material adverse impact on Plan costs or administration.

If Group's consent to settle or compromise Litigation is required, such consent shall not be unreasonably withheld. If Group withholds consent for any reason and the final resolution of the Litigation is equal to or greater than a settlement or compromise proposed by BCBSM, Group shall pay BCBSM the additional cost of any subsequent settlement, compromise or judgment including all of BCBSM's reasonable attorney fees and costs for proceeding with the Litigation.

6.      When Group is obligated to defend the Litigation, Group shall have full authority to settle or compromise such Litigation without BCBSM's consent, unless BCBSM has notified Group that the Litigation may have a material adverse impact on BCBSM.

If BCBSM's consent to settle or compromise Litigation is required, such consent shall not be unreasonably withheld. If BCBSM withholds consent for any reason and the final resolution of the Litigation is equal to or greater than a settlement or compromise proposed by Group, BCBSM shall pay the additional cost of any subsequent settlement, compromise or judgment including all of Group's reasonable attorney fees and costs for proceeding with the Litigation.

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

7.     When BCBSM defends the Litigation, the cost and expenses of such defense shall be paid by BCBSM. The cost and expenses of such defense shall include reasonable attorney fees and other reasonable litigation costs, however, any settlement or payment of amounts that are the financial responsibility of Group, including but not limited to Claims, (via judgment, award, etc.) shall be paid by Group.

8.     Subject to paragraph 7 above, when the Group defends the Litigation, the cost and expenses of such defense shall be paid by Group. The cost and expenses of such defense shall include reasonable attorney fees and other reasonable litigation costs and any settlement or payment for benefits or Claims shall be paid by Group.

G.    **Group Audits.**

Group, at its own expense, shall have the right to audit Claims incurred under this Contract; however, audits shall not occur more frequently than once every twelve months and shall not include Claims from previously audited periods or Claims paid prior to the last 24 months. Both parties acknowledge that Claims with incurred dates over two years old may be more costly to retrieve and that it may not be possible to recover over-payments for these Claims; however, BCBSM shall use best efforts to retrieve such Claims.

All audits shall be conducted pursuant to BCBSM corporate policy and other requirements at the time of the audit. The parties acknowledge staffing constraints may exist in servicing concurrent Group initiated audits. Therefore after notice from Group requesting an audit, BCBSM will have 60 to 90 days, depending on scope and sample size, to begin gathering requested documentation and to schedule the on-site phase of the audit.

Sample sizes shall not exceed 200 Claims and shall be selected to meet standard statistical requirements (i.e., 95% Confidence Level; precision of +/- 3%). Group shall reimburse BCBSM for Claims documentation in excess of 200 Claims at $50 per Claim.

Following the on-site activity and prior to disclosing the audit findings to Group, the auditor shall meet with BCBSM Management and present the audit findings. BCBSM, depending upon the scope of the audit, shall be given a reasonable period of time to respond to the findings and provide additional documentation to the Auditor before the Auditor discloses the audit findings to the Group.

BCBSM shall have no obligation to make any payments in connection with audit findings to Group unless there has been a recovery from the provider, Enrollee, or third-party carrier as applicable. No adjustments or refunds shall be made on the basis of the auditor's statistical projections of sampled dollar errors. An audit error will not be assessed if the Claim payment is consistent with BCBSM policies and procedures, or consistent with specific provisions contained in this Contract or other written Group instructions agreed to by BCBSM.

Prior to any audit, Group and BCBSM must mutually agree upon any independent third party auditor that Group wishes to perform the audit. Additionally, prior to audit, Group and any third party auditor shall sign all documents BCBSM believes necessary for the audit which will, at a minimum, provide for: the scope of the audit; the costs for which BCBSM is to be reimbursed by Group; the protection of confidential and proprietary information belonging to BCBSM, and of any patient specific information; and the indemnification and hold harmless of BCBSM from any claims, actions, demands or loss, including all expenses and reasonable attorney fees, arising from any suit or other action brought by an individual or provider to the extent caused by Group or its auditor.

Group shall provide BCBSM with a copy of any internal audit or review of the services performed under any agreement with BCBSM.

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

H.   **Disclosures.**

Group shall disclose the following to Enrollees in writing:

1. BCBSM services being provided.
2. BCBSM does not insure any Enrollees.
3. Group is responsible for the payment of Claims.
4. Group is responsible for changes in Plan benefits.
5. Group is responsible for enrollment.

I.   **Health Care Provider Interest.**

Group acknowledges that various states including Michigan have enacted prompt payment legislation with respect to the payment of Claims that may require the payment of interest to providers under circumstances dictated by statute. BCBSM will invoice the Group for any interest required by statute and Group shall pay such interest. Additionally, out-of-state Claims may be inclusive of any interest owed by statute or required by the terms of provider contracts with the out-of-state BCBS Plan. Out-of-state Claims are reported and billed to Group as submitted to BCBSM by the out-of-state BCBS Plan.

J.   **Confidentiality.**

The terms of this Contract and the items set forth below are confidential and shall not be disclosed or released to a third party without the prior written consent of BCBSM, unless required by law.

1. Claim Information
   Enrollee personal or individually identifiable health information.

2. Provider Proprietary Information
   Health care provider names, addresses, tax identification numbers, and financial amounts paid to such providers.

3. BCBSM and Other BCBS Plan Proprietary Information
   BCBSM's or any other BCBS Plan's methods of reimbursement, amounts of payments, discounts and access fees; BCBSM's administrative fees and, if applicable, stop loss fees; those processes, methods, and systems developed for collecting, organizing, maintaining, relating, processing and transacting comprehensive membership, provider reimbursement and health care utilization data.

K.   **Amounts Billed.**

1. Claims:

   The Claims billed to Group include both service-based and value-based reimbursement to health care providers. Group acknowledges that BCBSM's negotiated reimbursement rates include all reimbursement obligations to providers including provider obligations and entitlements under BCBSM Quality Programs. Service-based reimbursement means the portion of the negotiated rate attributed to a particular health care service. Value-based reimbursement is the portion of the negotiated reimbursement rate attributable to BCBSM Quality Programs, as described in the Exhibit to Schedule A.

   BCBSM negotiates provider reimbursement rates and settles provider obligations on its own behalf, not Group. Through this contract, Group receives the benefit of BCBSM provider rates, but it has no entitlement to a particular rate or to unbundle the service-based or value-based components of Claims. BCBSM does not retain any portion of Claims as compensation. All amounts collected from Group in Claims are used to satisfy provider obligations. Group agrees to pay Claims as defined herein.

   Out-of-state Claims processed through the BlueCard Program, shall be calculated according to the BlueCard Program policies and procedures, as set forth in Schedule B.

6

ASC Weekly Invoiced Program – CID# 279476

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

2. Additional Administrative Compensation:

Group shall pay Additional Administrative Compensation ("AAC") as set forth in Schedule A unless the Group has elected a Full Fixed Administrative Fee in lieu of AAC. AAC is calculated as a percentage of BCBSM discounts on Michigan hospital Claims with a cap and floor as set forth in Schedule A.

3. Health Care Provider Interest:

See Article II.I.

4. Taxes and Surcharges:

State and Federal governments may impose surcharges or taxes on Claims. The State of Michigan imposes a tax on all Michigan Claims for Michigan residents. Tax rates are governed by applicable law.

Such surcharges or taxes, where imposed by law, may be invoiced to Group or billed and reported to Group in Claims. Group agrees to pay all such surcharges or taxes.

5. Pharmacy Benefits Services:

If Group elects BCBSM pharmacy benefits, Amounts Billed shall include pharmacy Claims and any claims processing, pharmacy fees, and rebate processing fees set forth in Schedule A.

6. Amounts Billed shall also include any fee or charge identified in Group's Schedule A, including but not limited to Group's Administrative Fee.

L.    Coordination with Medicare.

Group shall timely notify BCBSM whether Medicare is the primary payer for Claims of any Enrollee. BCBSM shall change such Enrollee's eligibility record within 15 business days of BCBSM's receipt of Group's notice. Group shall indemnify and hold harmless BCBSM for any claim, demand, judgment, penalty or other liability that arises out of Group's failure to provide timely notice to BCBSM.

M.    Pharmacy Benefits.

To the extent Group has engaged BCBSM to administer prescription drug claims for its Plan, BCBSM or its subcontractor shall process all prescription drug claims according to Group's benefit design and BCBSM's participating pharmacy contracts.

Group acknowledges that payments to participating pharmacies may include prescription drug costs, dispensing fees, and incentive fees for dispensing a generic drug or compounding a prescription drug.

Group authorizes BCBSM to act and serve as Group's exclusive agent for the purpose of negotiating with and obtaining rebates from pharmaceutical manufacturers. Group understands and agrees that BCBSM may directly contract with pharmaceutical manufacturers or BCBSM may contract with various subcontractors that have contracts with pharmaceutical manufacturers. BCBSM's rebate administrators retain a portion of the total rebates collected from drug manufacturers as a rebate administration fee. BCBSM will pass on to Group rebates net of rebate administration fees. If BCBSM receives rebate adjustments or de minimis amounts of unidentifiable rebates that cannot practicably be tied to particular claims, BCBSM will proportionally allocate those rebate amounts to customers with pharmacy benefits.

Pharmacy administration fees and rebate administration fees are set forth in Schedule A.

ASC Weekly Invoiced Program – CID# 279476

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

## ARTICLE III
## FINANCIAL RESPONSIBILITIES

**A.**    **Group Responsibilities.**

Group shall be liable for all risks, financial obligations, Amounts Billed, fees, and interest set forth in this Contract, including Schedules A, B, and C. Group shall also be liable for any statutory court costs and attorney's fees awarded by a court to Enrollees, and all other liabilities which BCBSM may assume or which might otherwise attach with respect to the administration of Coverages pursuant to this Contract, including Schedules A, B, and C. Group shall make full payment and satisfaction to BCBSM for all amounts resulting from such risks, financial obligations, and liabilities.

**B.**    **Scheduled Payments by Group.**

Group shall make payments of amounts due and owing as set forth on Schedule A, including, but not by way of limitation, (1) administrative fee per Employee and additional administrative compensation, if any; (2) the hospital advance; and (3) Amounts Billed.

**C.**    **Interest.**

Pursuant to the instructions in Schedule A, Group shall pay the Estimated Weekly Payment to a designated BCBSM bank account, which funds other BCBSM accounts. To the extent any of those bank accounts are interest bearing, BCBSM retains any interest earned and will not pay or credit any interest to Group. Additionally, banks holding BCBSM accounts may retain float interest earned on transactions with the funds in those accounts.

**D.**    **Schedule A Renewals.**

Thirty (30) days prior to each Renewal Date, BCBSM shall send Group a Schedule A for the new Contract Year with all pricing terms, including BCBSM's administrative fee, applicable AAC, interest rates, and any new Michigan hospital advance. Such Schedule A may specify the pricing terms for a single Contract Year or, with the agreement of BCBSM and Group, may specify the pricing terms for multiple Contract Years. The renewal term Schedule A as received by the Group shall be considered fully executed and effective on the Renewal Date unless the Group notifies BCBSM prior to the Renewal Date that the contract will not be renewed.

**E.**    **Group's Weekly Wire and Other Payments.**

Group shall make weekly payments of all amounts due to BCBSM within one business day of the payment day set forth in the Schedule A. In addition, Group shall pay to BCBSM any separately invoiced amounts within fifteen (15) days of invoice or settlement receipt. If Group's payment for any amount payable under this Contract is more than one business day late, Group shall pay a late fee of the lesser of two percent of any outstanding amount due or the maximum amount permitted by law. In addition, BCBSM may cease to process Claims retroactive to the last date for which full payment was made.

**F.**    **Settlements.**

1. <u>Annual Settlements</u>. Group shall receive its Annual Settlement approximately one hundred twenty (120) days after the end of each Contract Year, which may include a reconciliation of the administrative fee based on BCBSM's enrollment records for the Contract Year at the time the reconciliation is performed. Because reconciliation of Group's hospital Claims depends on BCBSM's final settlement with the hospitals, a separate settlement process called CSR, explained below, captures that reconciliation.

   If the Group has an arrangement whereby it pays AAC, the total AAC reported to Group with the Annual Settlement equals the total amount of AAC collected from Group during the year in Amounts Billed less any AAC that was refunded to Group pursuant to a stop-loss insurance policy

8

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

with BCBSM. If the total AAC exceeds the maximum AAC set forth in Schedule A, BCBSM shall return the excess AAC to Group. If the total AAC is less than the minimum AAC set forth in Schedule A, Group shall pay BCBSM the shortfall. Neither Group nor BCBSM shall pay any interest on these payments/refunds.

2. Customer Savings Refund. Customer Savings Refund (CSR) is the annual report reconciling Group's Amounts Billed during the 12-month period 7/1 – 6/30 with any of the following items settled during the same period: (1) retroactive adjustments made in the Michigan Hospital Settlement (MHS), explained below, (2) drug rebates received pursuant to Group's Pharmacy Benefits arrangement, (3) class action recoveries, and (4) any other settlements from litigation and provider audits for which claim readjudication is not practicable.

If a refund is due, Group will receive a CSR payment in the year following the close of the CSR period. In the case of a liability resulting from the MHS, the liability will be reported to Group in the year following the close of the CSR period. A liability will accumulate with interest and be offset against future CSR payments. BCBSM may in its sole discretion elect not to offset any MHS liability against some or all drug rebates.

MHS liabilities will continue to accumulate from year to year unless Group elects to pay the liability or CSR payments in subsequent years exceed the amount of Group's outstanding MHS liability. BCBSM may in its sole discretion invoice Group for some or all of Group's CSR liability, which invoice shall be paid within thirty (30) days of receipt by Group.

The MHS is designed to reconcile amounts BCBSM paid to a hospital during a year with the total amount of reimbursement due to the hospital. Pursuant to separate agreements between BCBSM and Michigan hospitals, BCBSM makes periodic estimated payments to each hospital based on expected claims for all BCBSM customers. At the end of the contract year with the hospital, BCBSM settles the amount the hospital received in payments with actual claims experience, hospital reward and incentive payments under Quality Programs, and hospital obligations to Quality Programs. The MHS will result in a gain or loss applied to Group's CSR.

Group will not receive a CSR or incur adjusted liability attributable to a particular hospital until after the finalization of the MHS for a particular hospital. Group's refund or liability attributable to a particular hospital gain or loss, respectively, is proportionate to Group's utilization for that hospital.

G.      Changes in Enrollment or Coverages – Effect on Pricing Terms.

If there is more than a 10 percent (10%) change in the number of Enrollees from the number stated in Schedule A during any month of the Contract Year or a change in Coverages, BCBSM may immediately revise any affected pricing terms in the Schedule A to reflect such changes in Enrollment and/or Coverages. Any revisions will be effective beginning with the next month following thirty (30) day notification by BCBSM to the Group. The revised Schedule A will be treated as executed by Group and effective as of the date it is received by Group.

## ARTICLE IV
## TERMINATION AND TERMINATION ASSISTANCE

A.      Termination & Notice.

1. With or Without Cause. Either party may with or without cause provide notice of intent to terminate this Contract by giving written notice to the other party. For the ninety (90) days following such written notice, each Party's obligations and entitlements will remain unaltered. At the conclusion of this ninety (90) day notice period, no claims with service dates following the conclusion of the ninety (90) day notice period will be approved and the Transition Assistance Period ("TAP") will begin, which will conclude 24 months later, at which time the contract will be terminated.

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

2. **Nonpayment, Partial Payment, Insolvency, or Bankruptcy.** Notwithstanding any other Contract provisions, if Group fails to timely pay any amounts owed or becomes insolvent or files for bankruptcy protection, BCBSM may at its option, after giving five (5) days notice in writing, cause the contract to immediately enter the TAP.

3. **Termination within the First Contract Year.** If Group gives notice of termination of the Contract before the end of the first Contract Year or if BCBSM terminates the contract under paragraph (2.) before the end of the first Contract Year, Group's total administrative fee liability to BCBSM shall be twelve months of administrative fees at the rate stated in Schedule A in order to compensate BCBSM for the costs of setting up and implementing the arrangement. Group's termination liability for administrative fees shall be determined using the average monthly enrollment prior to termination times twelve months, and shall be net of administrative fees paid prior to termination.

B.     **Transition Assistance Period.**

Once written notice of termination has been given under Section A of this Article and the notice period has expired, the parties will continue to perform, and this Contract will continue, with respect to each party's obligations related to the wind-down of this Contract as set forth in this Section for the TAP. Upon the expiration of the TAP, this Contract shall terminate. The date on which the applicable notice period has expired following a termination trigger and on which the TAP commences will be called the "TAP Effective Date."

1. **End of Coverage.** Notwithstanding any other provisions contained herein, neither BCBSM nor any BCBS Plan shall have any obligation for payment for any health care services which are incurred after the TAP Effective Date.

2. **Obligation to Pay.** Notwithstanding any other provisions contained herein, Group's obligation to pay amounts incurred under the Contract shall survive during the TAP, and Group shall continue to timely pay all amounts owed. All Claims incurred prior to the TAP Effective Date, but not paid before that date, shall be processed by BCBSM or other BCBS Plans pursuant to the terms and conditions in this Contract and separate agreements with providers. Group agrees that it shall have no right to have any Claims incurred before the TAP Effective Date processed by a replacement carrier or administrator.

BCBSM retains the right to cease paying Claims if, during the TAP, Group fails to timely pay BCBSM for Amounts Billed and/or if Group is insolvent and/or files for bankruptcy protection. Group represents and warrants that it understands that it will be solely liable for any Claims BCBSM does not pay as a result of Group's failure to make timely payment to BCBSM, and Group will indemnify, defend, and hold BCBSM harmless for any Litigation or other adversary proceeding brought by an Enrollee whose claim was not paid by BCBSM as a result of Group's failure to timely pay BCBSM. This paragraph is independent of BCBSM's rights under Art. IV.A.2.

3. **Claim Payments.** For the first three (3) months following the TAP Effective Date, Group shall make weekly payments in the same manner as prior to the TAP Effective Date; however, Group shall pay the fixed administrative fee for only the first two months after the TAP Effective Date. AAC, if any, will continue to be paid for the TAP. For the next twenty-one (21) months, BCBSM will invoice Group each month and Group shall make payments to BCBSM. After six months from the TAP Effective Date, BCBSM shall offset any Amounts Billed against the Michigan hospital advance.

4. **Settlement-Last Contract Year.** Within one hundred eighty (180) days following the TAP Effective Date, BCBSM shall prepare a settlement statement for the last Contract Year. Such settlement statement shall include any compensation to BCBSM, including administrative fees.

5. **Interest.** If the total amount of the estimated Amounts Billed included in the weekly payments made during the first three (3) month period following termination exceed the actual Amounts Billed during the period, BCBSM will pay the Group interest at the then rate for short term government treasury bonds (STIGB), which is currently calculated as a rolling twelve-month

10

Case 2:23-cv-00589-MAG-DRG ECF No. 1-3, PageID.184 Filed 02/14/23 Page 1 of 41
Case 2:22-cv-40153-DRG Doc 1-3 Filed 05/17/23 Entered 05/17/23 09:47 Page Des of 41
Exhibit Exhibit 3 - State Court File    Page 388 of 627

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

average of the 90-day T-Bill yield rate on the average monthly balance of any excess. The total amount of any excess will be included in the settlement for the last Contract Year.

6. **Final Settlement.** Within ninety (90) days after the expiration of the Transition Assistance Period, BCBSM will prepare a final settlement and will refund any positive balance or invoice Group for any negative balance. Any negative balance will be due within ten (10) days of the date of invoice. The payment to Group or to BCBSM as provided in the immediately preceding sentence shall fully and finally settle, release, and discharge each party from any and all claims that are known, unknown, liquidated, non-liquidated, incurred-but-not-reported, adjustments, recoupments, receivables, recoveries, rebates, hospital settlements, and other sums of money due and owing between the parties and arising under this Contract.

7. **Group Duty to Notify/Indemnity.** Group shall notify BCBSM if, as a result of its insolvency or other status, another party is required by law to receive any refunds, payments, or returned funds from BCBSM under this Article IV. Group shall indemnify, defend, and hold BCBSM harmless for any liability, including attorney fees, resulting from Group's failure to notify BCBSM under this paragraph.

**C.    Conversion to Underwritten Group.**

If Group converts from a self-funded group to a BCBSM underwritten group, Group shall continue to be obligated for any balance due and Group shall timely pay the amounts due and owing under this Contract in addition to any premium payments as a BCBSM underwritten group.

**ARTICLE V**
**GENERAL PROVISIONS**

**A.    Entire Agreement.**

This entire Contract, including Schedules, represents the entire understanding and agreement of the parties regarding matters contained herein. This Contract supersedes any prior verbal or written agreements and understandings between the parties and shall be binding upon the parties, their successors or assigns.

**B.    Indemnity.**

Group agrees to indemnify, defend and hold BCBSM harmless from any claims resulting from Group's breach of any term of this Contract and/or breach of any obligation or duty not expressly delegated to BCBSM in this Contract, including, but not limited to, Group's obligation to manage enrollment, to disclose Plan Information to Enrollees, to respond to requests for Plan documents, and to read and understand the terms of this Contract.

The indemnity and hold harmless provisions of this Contract shall survive the termination of the Contract.

**C.    Service Mark Licensee Status.**

BCBSM is an independent licensee of BCBSA and is licensed to use the "Blue Cross" and "Blue Shield" names and service marks in Michigan. BCBSM is not an agent of BCBSA and, by entering into this Contract, Group agrees that it made this Contract based solely on its relationship with BCBSM or its agents. Group agrees that BCBSA is not a party to this Contract, has no obligations under this Contract, and that no BCBSA obligations are created or implied under this Contract.

**D.    Notices.**

Unless otherwise provided in this Contract, any notice required shall be given in writing and sent to the other party either by hand-delivery, electronic mail message to designated representative of the

11

ASC Weekly Invoiced Program – CID# 279476

Case 2:22-cv-40159-MAG-DECF 1-3 Filed 02/14/23 PageID.1155 02/14/23 09:47 Page 15 of 41
Case 2:23-cv-00789-MAG-DECF 1-3 Filed 02/14/23 PageID.1155 Entered 02/14/23 09:47 Page 15 of 41
Exhibit Exhibit 3 - State Court File · Page 389 of 627

other party, or postage pre-paid US first class mail at the following address or such other address as a party may designate from time to time.

If to Group:      If to BCBSM:

Current address shown on    Blue Cross Blue Shield of Michigan
BCBSM Group Header      600 Lafayette East, Mail Code B612
           Detroit, Michigan 48226-2998

**E.** **Amendment.**

This Contract may be amended only by a written agreement duly executed by authorized representatives of each party provided, however that this Contract may be amended by BCBSM upon written notice to Group in order to facilitate compliance with applicable law including changes in regulations, reporting requirements or data disclosure as long as such amendment is applicable to all BCBSM groups that would be similarly affected by the legal change in question. BCBSM will provide thirty (30) calendar days notice of any such amendment and regulatory provision, unless a shorter notice is necessary in order to accomplish regulatory compliance.

Upon request by Group BCBSM will consult with Group regarding the regulatory basis for any amendment to this Contract as a result of regulatory requirements.

**F.** **Severability.**

The invalidity or nonenforceability of any provision of this Contract shall not affect the validity or enforceability of any other provision of this Contract.

**G.** **Waiver.**

The waiver by a party of any breach of this Contract by the other party shall not constitute a waiver as to any subsequent breach.

**H.** **Law.**

This Contract is entered into in the State of Michigan and, unless preempted by federal law, shall be construed according to the laws of Michigan. Group agrees to abide by all applicable state and federal law. Group agrees that, where applicable, the federal common law applied to interpret this Contract shall adopt as the federal rule of decision Michigan law on the interpretation of contracts. .

**I.** **HIPAA.**

  **1.** **Group Certification.**

   Group certifies that it is the Plan Sponsor and Plan Administrator, performs Plan administration functions, needs access to Enrollee protected health information to carry out such administration functions, and has amended the Plan documents to comply with the requirements of 45 CFR 164.504(f)(2), BCBSM is therefore authorized to provide Group with the minimum necessary Enrollee protected health information for Group to perform its plan administration functions.

  **2.** **Business Associate Agreement.**

   The parties shall enter into a business associate agreement.

**J.** **Force Majeure.**

Neither BCBSM nor Group shall be deemed to have breached this Contract or be held liable for any failure or delay in the performance of all or any portion of its obligations under this Contract if

ASC Weekly Invoiced Program – CID# 279476

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

prevented from doing so by acts of God or the public enemy, fires, floods, storms, earthquakes, riots, strikes, boycotts, lock-outs, wars and war-operations, restraints of government, power or communication line failure, judgment, ruling, order of any federal or state court or agency of competent jurisdiction, change in federal or state law or regulation subsequent to the execution of this Contract, or other circumstances beyond the party's reasonable control for so long as such "force majeure" event reasonably prevents performance.

K.    **Group Disclosure of Other Coverage Vendors.**

Group agrees that, to the extent that BCBSM does not administer all of Plan's "essential health benefits," as that term is defined by the PPACA, Group shall identify for BCBSM all those vendors ("Vendors") that are also providing or administering essential health benefits to the Plan's participants, the benefits the Vendors are providing to them, the number of participants receiving such benefits, and the cost sharing arrangements for such benefits.

In addition, Group shall cause its officers, directors, employees, and representatives and Vendors' officers, directors, employees and representatives to fully and timely cooperate with BCBSM and provide it with the necessary information for BCBSM to ensure its compliance and that of the Plan with PPACA to the extent BCBSM is obligated to do so by law or by contract. This information includes, but is not limited to, social security numbers or other forms of government identification numbers of each Plan participant and beneficiary.

Group is solely responsible to ensure Group's maximum out-of-pocket amount is in compliance with PPACA. If BCBSM agrees to assist Group in determining whether Group's maximum out-of-pocket amount is in compliance with PPACA, then Group authorizes all Vendors to, and shall inform the Vendors in Group's contract with them that they must, effective on the beginning of the Group's first plan year on or after January 1, 2014, disclose to BCBSM on a daily basis (or some other regularly scheduled period as determined by BCBSM) all claims data for the essential health benefit(s) of Plan participants and beneficiaries that they possess.

L.    **Other Data Requirements.**

Group agrees to provide to BCBSM all data reasonably necessary for BCBSM to comply with the requirements of PPACA or other applicable federal or state laws. Such data includes, but is not limited to, all Enrollee data needed to comply with any reporting or other requirements of PPACA, e.g., the employer's share of any premium and social security or tax identification numbers. Group certifies that if it fails to provide all the data requested and if it has provided such information to BCBSM in response to a previous request, then Group shall be deemed to have certified to BCBSM that such information previously supplied remains correct and can be relied upon.

Group and Group's Vendors will maintain relevant books, records, policies, procedures, internal practices, and/or data logs relating to this Contract in a manner that permits review for a period of seven (7) years or (ten (10) years in the case of Medicare/Medicaid transactions) after the expiration of this Contract. With reasonable notice and during usual business hours, BCBSM, or its designated third party (with appropriate confidentiality obligations), may audit those relevant books, records, policies, procedures, internal practices, and/or data logs of Group and/or its Vendors, as necessary, to verify calculations related to the imposition of any taxes and fees under PPACA or other federal or state laws and to ensure compliance with this Contract and any applicable federal and state laws. Group shall cooperate with BCBSM in all reasonable respects in connection with such audits.

BCBSM's failure to detect, failure to notify Group of detection, or failure to require Group's remediation of any unsatisfactory practices does not relieve Group of its responsibility to comply with this Contract or applicable law, does not constitute acceptance of such practice, and does not constitute a waiver of BCBSM's enforcement rights under this Contract or applicable law.

If Group conducts, or contracts to have conducted, an internal audit or review of the services performed under any agreement with BCBSM, Group shall provide BCBSM with a copy of such audit or review within thirty (30) days of BCBSM's written request. This also applies to audits/reviews performed by or at the request of any federal or state regulatory agencies of BCBSM services. The

13

ASC Weekly Invoiced Program – CID# 279476

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

selection of an independent auditor by Group to conduct an internal audit of Group does not preclude BCBSM from conducting an audit in accordance with the terms contained herein.

The provisions of this Section shall survive the termination of this Contract.

M.    **Grandfather Status; Women's Preventative Care Religious Exemption.**

Group acknowledges and agrees that unless a written certificate of grandfather status and indemnity in form and substance satisfactory to BCBSM was previously provided to BCBSM by Group or, for a Group new to BCBSM as of January 1, 2013, was provided to and accepted by BCBSM concurrently with the signing of this Contract, Group will be considered non-grandfathered for all purposes.

In addition, Group acknowledges that the health care coverages provided to its Enrollees will include recommended women's preventive health services without cost sharing (as required by PPACA) unless the Plan (i) is a grandfathered group health plan that has not provided such coverage or (ii) qualifies as either an exempt group health plan or one eligible for the temporary safe harbor under PPACA and has provided a certificate to that effect in form and substance satisfactory to BCBSM.

N.    **Summary of Benefits and Coverage.**

Group is solely responsible for compliance with the federal Summary of Benefit and Coverage (SBC) rules, including SBC creation and distribution. BCBSM does not assume any responsibility for SBC rule compliance relating to the Plan, or for creation or disclosure of compliant SBCs. BCBSM disclaims any liability or responsibility for any non-compliance by Plan with SBC rules and regulations relating to creation, disclosure or other requirements.

O.    **Plan Year.**

Group's Plan Year, as that term is defined in PPACA, is the one year period beginning on the Effective Date and ending one year (or less) later on the last day of the month immediately preceding the month in which the Effective Date falls ("Effective Date Month"). Each Plan Year thereafter shall begin on the first day of the Effective Date Month and end one year later.

If Group's Plan Year that is not consistent with that reflected in the preceding paragraph, Group will promptly notify BCBSM in writing. Group will notify BCBSM at least six months in advance of any change in the Plan Year.

P.    **Knowing Assent.**

Group acknowledges that it has had full opportunity to consult with such legal and financial advisors as it has deemed necessary or advisable in connection with its decision knowingly to enter into this Contract. Group acknowledges that it is its obligation as Plan Fiduciary to determine whether the financial arrangements set forth in this Contract and Schedules are an appropriate Plan expense and for the exclusive benefit of the Plan. Group acknowledges that it has had any questions about this Contract posed to BCBSM fully answered to Group's satisfaction.

Neither party has executed this Contract in reliance on any representations, warranties, or statements other than those expressly set forth herein.

Q.    **Group Health Plan Type; Attestation.**

Is Groups' Plan governed by ERISA?    ☐ Yes.    ☒ No.

Group attests that, to the best of its knowledge, this response is correct and acknowledges that BCBSM will rely on this response to determine requirements applicable to Group and the performance of this Contract.

ASC Weekly Invoiced Program – CID# 279476

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**AGREED AND ACCEPTED.**

**BCBSM:**

| | |
|---|---|
| By: (Signature) | *[signature]* |
| Name: (Print) | Yvonne Moore |
| Title: | Act Mgr. |
| Date: | 5/24/16 |

**GROUP:**

| | |
|---|---|
| By: (Signature) | *[signature]* |
| Name: (Print) | M. Therese Brumfield |
| Title: | VP, Provider Operations |
| Date: | 5-23-16 |

| | |
|---|---|
| By: (Signature) | *[signature]* |
| Name: (Print) | Gary R. Gauin |
| Title: | VP, KLGIB |
| Date: | 6-16-16 |

| | |
|---|---|
| By: (Signature) | |
| Name: (Print) | |
| Title: | |
| Date: | |

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

# EXHIBIT B

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

A nonprofit corporation and independent licensee
of the Blue Cross and Blue Shield Association

| | | | |
|---|---|---|---|
| **Group Name** | CORIZON HEALTH, INC. | **Invoice Due Date** | 05/01/2022 |
| **Group Number** | 000071499 | **Invoice Date** | 04/12/2022 |
| **Invoice Number** | 141444768 | **Invoice Type** | MONTHLY INVOICED |
| **Total Balance Due** | $3,410,136.51 | **Bill Period** | 03/01/2022-03/31/2022 |

### Previous Invoice Summary

| | |
|---|---|
| Previous Balance | $3,376,244.91 |
| Balance Forward | $3,376,244.91 |

### Claim Summary

| Utilization Summary | Unit | Current Charges |
|---|---|---|
| Facility - Cases | 44 | $1,225.70CR |
| Professional - Clm | 115 | $35,024.65 |

### Taxes and Fees Summary

| Fee Type | Rate | Unit | Total |
|---|---|---|---|
| BCBSM PAYMENT INTEGRITY SHARE/ADMIN COMP | | | $92.65 |
| ADVANCE DEPOSIT | | | $0.00 |

### Total Charges Summary

| | |
|---|---|
| Total Current Charges | $33,891.60 |
| Total Balance Due | $3,410,136.51 |

Non-payment of this bill will result in cancellation of this policy retroactive to the last date for which full payment was made.

If there are questions concerning this invoice, contact Group Customer Inquiry and Billing Dept.
Phone: 1-800-446-5251   Email: ascbilling@bcbsm.com

Payment Options:
Wire Payment

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM



**Blue Cross**
**Blue Shield**
of Michigan

A nonprofit corporation and independent licensee
of the Blue Cross and Blue Shield Association

ACH Payment
eBilling Application
Mail your regular or overnight payment to:

Blue Cross Blue Shield of Michigan
600 Lafayette E. Mail Code 1002
ATTENTION: ASC BILLING
Detroit, Michigan 48226

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

# EXHIBIT C

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

March 18, 2022

Jeff Sholey
Isaac Lefkowitz
Corizon Health, Inc.
105 Westpark Drive, Suite 200
Brentwood, TN 37027

Re:    Payment of Outstanding Balance Owed to BCBSM

Dear Mr. Sholey and Mr. Lefkowitz:

Corizon Health, Inc. and Blue Cross Blue Shield of Michigan were parties to an administrative services contract ("ASC"), effective December 1, 2015, in which BCBSM processed medical claims for incarcerated individuals at Michigan correctional facilities serviced by Corizon. As a result of Corizon's loss of a servicing contract with the state of Michigan, Corizon terminated the ASC with a termination effective date of September 30, 2021. Pursuant to the terms of the ASC, Corizon is responsible for reimbursing BCBSM for all claims incurred by incarcerated individuals prior to September 30, 2021 and paying BCBSM administrative fees for processing such claims. As of the date of this letter, the total balance owed by Corizon is $3,359,102.28 per the attached invoice.

BCBSM demands that Corizon make full payment of the outstanding balance owed by March 31, 2022. If BCBSM does not receive payment by this date, BCBSM will pursue all rights and legal remedies, including litigation, to recover this amount. In addition, BCBSM will notify the Michigan Department of Technology and the Michigan Department of Corrections of Corizon's failure to pay amounts owed.

Sincerely,

Robert Fine
Assistant General Counsel
Blue Cross Blue Shield of Michigan
rfine@bcbsm.com

cc: Jason Helling; Yvonne Johnson

Enclosures

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**Blue Cross
Blue Shield**
of Michigan

A nonprofit corporation and independent licensee
of the Blue Cross and Blue Shield Association

| | | | |
|---|---|---|---|
| **Group Name** | CORIZON HEALTH, INC. | **Invoice Due Date** | 03/01/2022 |
| **Group Number** | 000071499 | **Invoice Date** | 02/10/2022 |
| **Invoice Number** | 138326093 | **Invoice Type** | MONTHLY INVOICED |
| **Total Balance Due** | $3,359,102.28 | **Bill Period** | 01/15/2022-01/31/2022 |

### Previous Invoice Summary

| | |
|---|---|
| Previous Balance | $3,229,610.76 |
| Balance Forward | $3,229,610.76 |

### Claim Summary

| Utilization Summary | Unit | Current Charges |
|---|---|---|
| Facility - Cases | 16 | $2,472.79 |
| Professional - Clm | 33 | $12,308.22 |

### Taxes and Fees Summary

| Fee Type | Rate | Unit | Total |
|---|---|---|---|
| CUSTOMER SAVINGS REFUND - CANCELLED GRO | | | $113,824.10 |
| BCBSM PAYMENT INTEGRITY SHARE/ADMIN COMP | | | $886.41 |
| ADVANCE DEPOSIT | | | $0.00 |

### Total Charges Summary

| | |
|---|---|
| Total Current Charges | $129,491.52 |
| Total Balance Due | $3,359,102.28 |

Non-payment of this bill will result in cancellation of this policy retroactive to the last date for which full payment was made.

If there are questions concerning this invoice, contact Group Customer Inquiry and Billing Dept.
Phone: 1-800-446-5251   Email: ascbilling@bcbsm.com

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM



**Blue Cross**
**Blue Shield**
of Michigan

A nonprofit corporation and independent licensee
of the Blue Cross and Blue Shield Association

Payment Options:

Wire Payment

ACH Payment

eBilling Application

Mail your regular or overnight payment to:    Blue Cross Blue Shield of Michigan
                                              600 Lafayette E. Mail Code 1002
                                              ATTENTION: ASC BILLING
                                              Detroit, Michigan 48226

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

# EXHIBIT D

DocuSign Envelope ID: 8259F666-E87C-4A4B-A7FF-26E39B99950B

Case 2:28-cv-00589-cMAG-DB Doc 1-3 F Filed 25/17/23 ID Entered 02/14/22 09:47 Page 38 of 41
Exhibit Exhibit 3 State Court File    Page 401 of 627

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM



| | **GROUP SIGNATURE PAGE** |
|---|---|
| Blue Cross Blue Shield Blue Care Network of Michigan. Nonprofit corporations and independent licensees of the Blue Cross and Blue Shield Association | Effective for 12/01/2020 – 11/30/2021 |

**Between Blue Cross Blue Shield of Michigan and**

**CORIZON HEALTH, INC (CID – 279476)**

Group and Blue Cross Blue Shield of Michigan agree to sign the specified documents checked-off below ("Documents") via this Group Signature Page.   Also included are the 2020 Exhibit 1 to Schedule A (Value-Based Provider Reimbursement), the 2020 Schedule B BlueCard Disclosures, and the 2020 Stop Loss Policy (if applicable).

Each party's Signature is the legal equivalent of a manual / handwritten signature on the specified Documents. By providing their Signatures below, the parties are legally bound by the terms and conditions in the Documents. Group agrees that no certification authority or other third-party verification is necessary to validate Group's Signature, and that the lack of such certification or third-party verification will not in any way affect the enforceability of Group's Signature or the Documents.

**Documents Included:**                          Stop-Loss Insurance

• **Stop-Loss Policy**

☐ **ASC Contract Amendment**                    ☐ Stop-Loss Exhibit

☒ **Schedule A**

| REQUIRES GROUP SELECTION (Specific Stop Loss Only) | |
|---|---|
| • Exhibit 1 to Schedule A <br> ☐ Exhibit 2 to Schedule A | Group is electing Specific Stop-Loss "Run-Out" Coverage:   ☐ Yes  ☐ No |
| • Schedule B | Policyholder Initials: |
| • Exhibit 1 to Schedule B | ☐ Amendment to Stop-Loss Insurance |

Upon signature by the parties, this page will be electronically attached to the Documents and stored for reference and record. Group may review this documentation by requesting a copy from their BCBSM salesperson.

**BLUE CROSS BLUE SHIELD OF MICHIGAN:**          **GROUP CUSTOMER:**

| By: (Signature). | DocuSigned by: Lori Shannon E10A3D94FF47603... | By: (Signature) | [signature] |
|---|---|---|---|
| Name: (Print) | Lori Shannon | Name: (Print) | Mason Call |
| Title: | VP, Key Accounts | Title: | VP of Operations |
| Date: | 12/17/2020 | Date: | 12/9/20 |

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**Blue Cross Blue Shield of Michigan**
**SCHEDULE A – Renewal Term (Effective 12/01/2020 thru 11/30/2021)**
**Administrative Services Contract (ASC)**

1. **Group Name**            CORIZON HEALTH, INC
2. **Customer ID**           279476
3. **ASC Funding Arrangement**   Monthly Invoice

4. **Line(s) of Business and Products**

| Line of Business | Applicable |
|---|---|
| Facility | X |
|    Facility Foreign | |
|    Facility Domestic | |
| Professional | X |
| Prescription Drugs | |
| Dental | |
| Vision | |
| Hearing | |

| Products | Applicable |
|---|---|
| Flexlink | |

5. **Administrative Fees**

The below administrative fees cover the Lines of Business and Products checked in Section 4 above, unless otherwise indicated.

   A.   Fixed Administrative Fees – *Not Applicable*

| B. Variable Administrative Fees | Percentage | Effective Date | Effective Date |
|---|---|---|---|
| i. Additional Administrative Compensation* | 9.0% | 12/01/2020 | 11/30/2021 |

     *In exchange for a fixed administrative fee, BCBSM will retain as Additional Administrative Compensation (AAC), nine and one-half percent (9.5%) of the Michigan Hospital discounts. AAC is included in the medical claims cost that is contained in the Groups Amount Billed. The AAC is separate from and does not include BlueCard fees.

6. **Data Feeds**

| Category | Data Feed | Pricing Method | Fee Amount | Monthly Cap | Start Date | End Date |
|---|---|---|---|---|---|---|
| Monthly Maintenance Fee | Standard Medical Claims to Corizon Health [PHS]. | PCPM | $0.00 | — | 12/01/2020 | 11/30/2021 |
| Monthly Maintenance Fee | Standard Dental Claims to Corizon Health (PHS). | PCPM | $0.00 | — | 12/01/2020 | 11/30/2021 |
| Monthly Maintenance Fee | Standard Hearing Claims to Corizon Health (PHS). | PCPM | $0.00 | — | 12/01/2020 | 11/30/2021 |

7. **Hospital Advance – *Not Applicable***

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

8.  **Advanced Deposit Monthly Cap Amount** – *Not Applicable*

9.  **BCBSM Account**

| 1840-09397-3 | Comerica | 0720-00096 |
|---|---|---|
| Wire Number | Bank | American Bank Association |

10. **Late Payment / Interest Charges**
    A. Late Payment Charge                      2%
    B. Health Care Provider Interest Charge      12%

11. **Buy-Ups** – *Not Applicable*

12. **Shared Savings Programs**
BCBSM has implemented programs to enhance the savings realized by its customers. As stated below, BCBSM will retain as administrative compensation a percent of the recoveries or cost avoidance. Administrative compensation retained by BCBSM through the Shared Savings Program will be available through reports obtained on eBookshelf:

| Program: | BCBSM Retention of: | |
|---|---|---|
| A. Pre-Payment Forensic Billing Review: | 30% | Cost avoidance of improper hospital billing identified by third party vendor(s) through forensic pre-payment billing review. |
| B. Advanced Payment Analytics: | 30% | Recoveries of claims overpayments identified by third party vendor(s) using proprietary data mining analytics and enhanced reviews. |
| C. Subrogation: | 30% | Recoveries of claims overpayments from subrogation efforts. |
| D. Provider Credit Balance Recovery: | 30% | Recoveries of claims overpayments obtained by third party vendor(s) through enhanced review of hospital patient accounting systems. |
| E. Non-Participating Provider Negotiated Pricing: | 30% | Cost avoidance for out-of-network, non-participating Claims equal to the difference between the amount that would have been paid pursuant to the Group's benefit design (before Enrollee cost-share is applied) and the amount actually paid for such Claims (before Enrollee cost-share is applied) as a result of third-party vendor negotiations or benchmark-based pricing. |
| F. Rebate Service Fee for Medical Prescription Drugs: | 10% | Medical benefit drug rebates on Claims incurred in the renewal term net of the Rebate Administrator Fee. The Rebate Administrator Fee is 5.25% of gross rebates for medical benefit drug Claims. |
| G. Rebate Service Fee for Pharmacy Prescription Drugs: | -- | *Not Applicable* |

13. Traditional Prescription Drug Pricing and Administrative Compensation – *Not Applicable*

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

### 14.    3rd Party Rx Vendor Fee

If Group's prescription drug benefits are administered by a third-party vendor, BCBSM will charge Group an administrative fee of $5.00 per contract per month due to the additional costs and resources necessary for BCBSM to effectively manage and administer the medical benefit without administering the prescription drug benefit.

### 15.    3rd Party Stop-Loss Vendor Fee

If Group obtains stop-loss coverage from a third-party stop-loss vendor, BCBSM will charge an additional fee of $8.00 per contract per month due to the additional costs and resources necessary for BCBSM to effectively manage Group's benefits.

### 16.    Agent Fees

This Schedule A does not include any fees payable by Group to an Agent.  If Group has an Agent Fee Processing Agreement on file with BCBSM, please refer to that agreement for fees and details.

### 17.    Medicare Contracts

If Group has Medicare contracts that are being separated from the current funding arrangement, all figures within the current funding arrangement will be adjusted.

### 18.    Compensation Agreement with Providers

The Group acknowledges that BCBSM or a Host Blue may have compensation arrangements with providers in which the provider is subject to performance or risk-based compensation, including but not limited to withholds, bonuses, incentive payments, provider credits and member management fees. Often the compensation amount is determined after the medical service has been performed and after the Group has been invoiced. The Claims billed to Group include both service-based and value-based reimbursement to health care providers. Group acknowledges that BCBSM's negotiated reimbursement rates include all reimbursement obligations to providers including provider obligations and entitlements under BCBSM Quality Programs. Service-based reimbursement means the portion of the negotiated rate attributed to a health care service. Value-based reimbursement is the portion of the negotiated reimbursement rate attributable to BCBSM Quality Programs, as described in Exhibit 1 to Schedule A. BCBSM negotiates provider reimbursement rates and settles provider obligations on its own behalf, not Group. Group receives the benefit of BCBSM provider rates, but it has no entitlement to a particular rate or to unbundle the service-based or value-based components of Claims.

BCBSM Quality Programs may also include risk sharing arrangements with certain provider entities ("PE"), e.g., physician organizations, facilities, health systems, or any combination thereof, that have contracted with BCBSM for upside and downside risk for a performance year. The PE's performance will be measured by comparing its total cost of care trend for attributed members to BCBSM's statewide total cost of care trend which may be equated to a per member per month amount. BCBSM will calculate each PE's performance approximately 11 months after the end of a performance year.

If the PE's performance results in a payment of additional reimbursement, Group may be invoiced an additional amount based on its attributed membership to that PE. If the PE's performance results in a return of reimbursement, Group may receive a credit based on its attributed membership to that PE. BCBSM will provide Group with supporting documentation for such amounts. Invoice or credit to Group will occur in conjunction with BCBSM's customer savings refund process as set forth in the administrative services contract.

Notwithstanding the above, in the first year of the program (2020), BCBSM will not invoice Group for any additional reimbursement earned by a PE. Moreover, reimbursement returned to BCBSM will be used to offset any additional reimbursement earned by a PE in the following year. BCBSM will not retain any amounts resulting from such risk sharing arrangements.

See Exhibit 1 to Schedule A and Schedule B to ASC for additional information.

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**19.  Out-of-State Claims**

Amounts billed for out-of-state claims may include BlueCard access fees and any value-based provider reimbursement negotiated by a Host Blue with out-of-state providers.  See Schedule B to ASC and Exhibit 1 to Schedule A for additional information.

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

# EXHIBIT E

Case 3:23-cv-00589-MAG-DRG ECF No. 1-3, PageID.1205 Filed 02/14/23 Page 57 of 41
Case 2:22-cv-00789-MAG-DRG Doc 1-3 Filed 12/14/22 Entered 12/14/22 09:27 Page 25 of 41
Exhibit Exhibit 3 - State Court File    Page 407 of 627

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

## AFFIDAVIT OF YVONNE JOHNSON

State of Michigan ⟩
               ⟩ ss
County of Wayne ⟩

I, Yvonne Johnson, after being first duly sworn, say as follows:

1. I have attained the age of eighteen, I am competent to testify to the facts set forth herein, and make this Affidavit upon my personal knowledge and/or upon review of the records of the business.

2. I am a Client Engagement Manager for Blue Cross Blue Shield of Michigan.

3. In December of 2015, Blue Cross Blue Shield of Michigan ("BCBSM") and Corizon Health Inc. ("Corizon") were parties to an administrative services contract ("the contract"), in which BCBSM processed medical claims for incarcerated individuals at Michigan correctional facilities serviced by Corizon.

4. BCBSM performed the agreed-upon services and processed all medical claims pursuant to the contract.

5. On September 30, 2021, Corizon terminated the contract between the parties.

6. Pursuant to the terms of the contract, Corizon is responsible for reimbursing BCBSM for all claims incurred prior to September 30, 2021 and BCBSM sent invoices to Corizon detailing the amounts owed.

7. BCBSM sent multiple invoices to Corizon detailing the amounts owed. Corizon ignored all of these invoices.

8. BCBSM sent Corizon a demand letter in March of 2022, regarding the overdue balance and attached the invoice to this demand letter.

9. Corizon has not objected to the statements sent by BCBSM seeking payment for the agreed-upon services rendered by BCBSM.

10. As of the date of this document, Corizon has not made any payments and is justly indebted to BCBSM in the amount of $3,410,136.51, over and above all legal setoffs and counter-claims. **(Exhibit A)**

## AFFIDAVIT OF YVONNE JOHNSON

11. The statement of account attached is true and correct.

Dated:

Yvonne Johnson

Subscribed and sworn to before me
This 9 <sup>th</sup> day of JUNE , 2022

Notary Public
WAYNE          County, MI
My Commission Expires:  4-9-23

**MARTIN F PARODY**
Notary Public, Wayne County, MI
My Commission Expires: April 9, 2023
Acting in the County of  WAYNE

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

# EXHIBIT A

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

**Blue Cross Blue Shield**
of Michigan

A nonprofit corporation and independent licensee
of the Blue Cross and Blue Shield Association

| | | | |
|---|---|---|---|
| **Group Name** | CORIZON HEALTH, INC. | **Invoice Due Date** | 05/01/2022 |
| **Group Number** | 000071499 | **Invoice Date** | 04/12/2022 |
| **Invoice Number** | 141444768 | **Invoice Type** | MONTHLY INVOICED |
| **Total Balance Due** | $3,410,136.51 | **Bill Period** | 03/01/2022-03/31/2022 |

### Previous Invoice Summary

| | |
|---|---|
| Previous Balance | $3,376,244.91 |
| Balance Forward | $3,376,244.91 |

### Claim Summary

| Utilization Summary | Unit | Current Charges |
|---|---|---|
| Facility - Cases | 44 | $1,225.70CR |
| Professional - Clm | 115 | $35,024.65 |

### Taxes and Fees Summary

| Fee Type | Rate | Unit | Total |
|---|---|---|---|
| BCBSM PAYMENT INTEGRITY SHARE/ADMIN COMP | | | $92.65 |
| ADVANCE DEPOSIT | | | $0.00 |

### Total Charges Summary

| | |
|---|---|
| Total Current Charges | $33,891.60 |
| Total Balance Due | $3,410,136.51 |

Non-payment of this bill will result in cancellation of this policy retroactive to the last date for which full payment was made.

If there are questions concerning this invoice, contact Group Customer Inquiry and Billing Dept.
Phone: 1-800-446-5251   Email: ascbilling@bcbsm.com

Payment Options:
Wire Payment

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM



**Blue Cross**
**Blue Shield**
of Michigan

A nonprofit corporation and independent licensee
of the Blue Cross and Blue Shield Association

ACH Payment
eBilling Application
Mail your regular or overnight payment to:

Blue Cross Blue Shield of Michigan
600 Lafayette E. Mail Code 1002
ATTENTION: ASC BILLING
Detroit, Michigan 48226

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

# EXHIBIT 6

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

| **CORIZON HEALTH, INC.** <br> **(effective 8/5/14-11/1/15)** | |
|---|---|
| **NAME** | **TITLE** |
| Woodrow A. Myers, Jr., M.D. | Chief Executive Officer |
| Scott A. Bowers | President & Chief Operating Officer |
| Calvin Johnson, M.D. | Group Vice President & Chief Medical Officer |
| Carla Cesario | Group Vice President of Operations |
| J. Scott King | Executive Vice President - Chief Legal Officer and Secretary |
| Dennis F. Wade | Executive Vice President – Chief Human Resources Officer |
| Jonathan Walker | Executive Vice President – Chief Business Development Officer |
| F. Jeffrey Sholey | Acting Chief Financial Officer & Treasurer |
| Todd G. Sparlin | Vice President of Finance & Assistant Treasurer |
| Jennifer Finger | Assistant Secretary |
| Maya Patel | Assistant Secretary |
| Tracy Bartoli | Assistant Secretary |
| Woodrow A. Myers, Jr., M.D. | Director |
| Scott A. Bowers | Director |

| **CORIZON HEALTH, INC.** <br> **(Effective 11/2/15-4/13/17)** | |
|---|---|
| **NAME** | **TITLE** |
| Karey L. Witty | Chief Executive Officer |
| Scott A. Bowers | President & Chief Operating Officer |
| Calvin Johnson, M.D. | Group Vice President & Chief Medical Officer |
| J. Scott King | Executive Vice President - Chief Legal Officer and Secretary |
| Open | Executive Vice President – Chief Human Resources Officer |
| Jonathan Walker | Executive Vice President – Chief Business Development Officer |
| F. Jeffrey Sholey | Acting Chief Financial Officer & Treasurer |
| Todd G. Sparlin | Vice President of Healthcare Analytics & Assistant Treasurer |
| Jennifer Finger | Assistant Secretary |
| Maya Patel | Assistant Secretary |
| Tracy Bartoli | Assistant Secretary |
| Karey L. Witty | Director |
| Scott A. Bowers | Director |

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

| CORIZON HEALTH, INC. (Effective 4/14/17-9/18/18) | |
|---|---|
| **NAME** | **TITLE** |
| Karey L. Witty | President & Chief Executive Officer |
| J. Scott King | Executive Vice President - Chief Legal Officer and Secretary |
| Sally A. Powers | Executive Vice President – Chief Human Resources Officer |
| James Donovan, Jr. | Executive Vice President – Chief Operating Officer |
| Scot M. Ward | Executive Vice President & Chief Administrative Officer |
| Renee FallHowe, M.D. | Chief Medical Officer, State Corrections |
| Sylvia McQueen, M.D. | Chief Medical Officer, Community Corrections |
| Frank Fletcher | Senior Vice President & Chief Growth Officer |
| F. Jeffrey Sholey | Vice President, Corporate Controller & Assistant Treasurer |
| Levin Jones | Senior Vice President of Operations, Community Corrections |
| Roland Maldonado | Senior Vice President of Operations, State Corrections |
| Jennifer Finger | Assistant Secretary |
| Maya Patel | Assistant Secretary |
| Tracy Bartoli | Assistant Secretary |
| Karey L. Witty | Director |
| James Donovan, Jr. | Director |

| CORIZON HEALTH, INC. (Effective 9/19/18 – 9/3/19) | |
|---|---|
| **NAME** | **TITLE** |
| Steve Rector | President & Chief Executive Officer |
| Shalin Shah | Executive Vice President, Chief Financial Officer & Treasurer |
| James Powell, M.D. | Executive Vice President & Chief Medical Officer |
| Carolyn Schneider | Executive Vice President & Chief Human Resources Officer |
| J. Scott King | Executive Vice President, Chief Legal Officer & Secretary |
| F. Jeffrey Sholey | Vice President, Corporate Controller & Assistant Treasurer |
| Jennifer Finger | Assistant Secretary |
| Maya Patel | Assistant Secretary |
| Tracy Bartoli | Assistant Secretary |
| Steve Rector | Director |
| Shalin Shah. | Director |

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

| CORIZON HEALTH, INC. (Effective 9/4/19-7/31/20) | |
|---|---|
| **NAME** | **TITLE** |
| James Hyman | President & Chief Executive Officer |
| Shalin Shah | Executive Vice President, Chief Financial Officer & Treasurer |
| James Powell, M.D. | Executive Vice President & Chief Medical Officer |
| Carolyn Schneider | Executive Vice President & Chief Human Resources Officer |
| J. Scott King | Executive Vice President, Chief Legal Officer & Secretary |
| F. Jeffrey Sholey | Vice President, Corporate Controller & Assistant Treasurer |
| Jennifer Finger | Assistant Secretary |
| Maya Patel | Assistant Secretary |
| Tracy Bartoli | Assistant Secretary |
| James Hyman | Director |
| Shalin Shah. | Director |

| CORIZON HEALTH, INC. (Effective 8/1/20-9/6/20) | |
|---|---|
| **NAME** | **TITLE** |
| James Hyman | President & Chief Executive Officer |
| F. Jeffrey Sholey | Senior Vice President, Chief Financial Officer & Treasurer |
| Ayodeji Ladele, M.D. | Senior Vice President & Chief Medical Officer |
| J. Scott King | Executive Vice President, Chief Legal Officer & Secretary |
| Jennifer Finger | Assistant Secretary |
| Maya Patel | Assistant Secretary |
| Tracy Bartoli | Assistant Secretary |
| Michael Flacks | Director, Chairman |
| Michel Rypkin | Director, Vice Chairman |
| James Gassenheimer | Director |

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

| CORIZON HEALTH, INC. (Effective 9/7/20-11/11/20) | |
| --- | --- |
| **NAME** | **TITLE** |
| James Hyman | President & Chief Executive Officer |
| F. Jeffrey Sholey | Senior Vice President, Chief Financial Officer & Treasurer |
| Ayodeji Ladele, M.D. | Senior Vice President & Chief Medical Officer |
| J. Scott King | Executive Vice President, Chief Legal Officer & Secretary |
| Jennifer Finger | Assistant Secretary |
| Maya Patel | Assistant Secretary |
| Tracy Bartoli | Assistant Secretary |
| James Hyman | Director |
| Michael Flacks | Director |
| Michel Rypkin | Director, Vice Chairman |
| James Gassenheimer | Director, Chairman |

Corizon010358

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

| CORIZON HEALTH, INC. Effective 11/12/20-12/17/21) | |
|---|---|
| **NAME** | **TITLE** |
| James Hyman | President & Chief Executive Officer |
| F. Jeffrey Sholey | Senior Vice President, Chief Financial Officer & Treasurer |
| Ayodeji Ladele, M.D. | Senior Vice President & Chief Medical Officer |
| J. Scott King | Executive Vice President, Chief Legal Officer & Secretary |
| Jennifer Finger | Assistant Secretary |
| Maya Patel | Assistant Secretary |
| Tracy Bartoli | Assistant Secretary |
| James Hyman | Director |
| Michael Flacks | Director |
| Michel Rypkin | Director, Vice Chairman |
| James Gassenheimer | Director, Chairman |

| CORIZON HEALTH, INC. (Effective 12/17/21 – 5/5/22) | |
|---|---|
| **NAME** | **TITLE** |
| Sara Tirschwell | President & Chief Executive Officer |
| F. Jeffrey Sholey | Senior Vice President, Chief Financial Officer & Treasurer |
| Ayodeji Ladele, M.D. | Senior Vice President & Chief Medical Officer |
| J. Scott King | Executive Vice President, Chief Legal Officer & Secretary |
| Jennifer Finger | Assistant Secretary |
| Maya Patel | Assistant Secretary |
| Tracy Bartoli | Assistant Secretary |
| Sara Tirschwell | Director, Chairman |
| David Gefner | Director |
| Abe Goldberger | Director |
| Isaac Lefkowitz | Director |
| Jay Leitner | Director |

Corizon010359

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

# EXHIBIT 7

# We Have the Tools to Address Opioid Addiction at its Core, But Do We Have the Political Will to Take Action?

## COMMENTARY

April 26, 2022    by Sara Tirschwell, CEO of Corizon, soon to be YesCare

We Have the Tools to Address Opioid Addiction at its Core, But Do We Have the Political Will to Take Action?

OxyContin, in 80 mg pills, in a 2013 file image. (Liz O. Baylen/Los Angeles Times/TNS)

Having recently finished the original docuseries "Dopesick," it occurred to me that many Americans may just be learning how opioid abuse turned thousands of patients into addicts and then into inmates.

As the CEO of one of the nation's largest correctional health care providers, I have witnessed the toll of opioids on many otherwise law-abiding Americans — because they end up in our care.

The country now has an opportunity to break the tragic cycle between opioid use, addiction and incarceration. With a $6 billion settlement offer from the founders of Purdue Pharma, $26 billion from other manufacturers and distributors, and the billions of dollars yet to be collected, policymakers must aggressively rethink addiction care at one of the last stops for addicts — prisons and jails.

This will require our leaders to step up and reverse decades of underfunding for inmate behavioral health, as well as embracing evidence-based models of treatment.

The opioid story begins with large pharmaceutical companies'

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

We Have the Tools to Address Opioid Addiction at its Core, But Do We...     https://www.thewellnews.com/opinions/we-have-the-tools-to-address-o...

Case 2:23-cv-01753-MAG-DRG   ECF No. 13   PageID.260   Filed 02/14/23   Page 2 of 5

Exhibit Exhibit 3 - State Court File     Page 420 of 627

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

targeted and deceitful marketing to poor suburban and rural communities to drive sales for the strongest versions of addictive OxyContin to the highest-volume prescribers.

For decades, a shockingly large part of our country's health care infrastructure fed cycles of addiction, misery and death. The number of Americans arrested for drug possession **has tripled since 1980,** alongside the rise in opioid use. Overdose deaths in the United States now top 100,000 per year and are rising fastest amongst Black men. Fatal overdoses rose by more than **40%** in Washington, D.C., and Virginia in the last year — a climb that continues across the country.

The opioid epidemic is estimated to cost our economy at least $1.3 trillion annually. Compare that to the meager billions in settlements with drug manufacturers and distributors.

No population has been as disproportionately harmed by the opioid crisis as the presently and formerly incarcerated.

At least 25% of those with Opioid Use Disorder have had an encounter with the criminal justice system in the past year. And as the severity of disorder increases, so does the likelihood and magnitude of involvement with the criminal justice system.

Among our patient population at Corizon, soon to be YesCare, close to half battle drug dependence. In Maryland, **70%** of individuals suffer from substance abuse or dependence upon entering the system, and there, as is the case nationally, opioid overdoses are the leading cause of death upon re-entry to their communities. However, there is considerable evidence that Medication-Assisted Treatment during and after incarceration breaks the vicious cycle of relapse and recidivism.

A+

a-

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

Addiction often is seen as a criminal choice, rather than a disease in need of treatment.

Our patients often come from communities that lack robust and well-funded systems of care for behavioral and mental health. Without other support, many people turn to self-medication. Ultimately, they land in our care at various entry points of the criminal justice system, which is the first time many of them receive any sort of treatment at all.

Having seen the connection between incarceration and addiction up close, I can attest to the critical importance of treating addiction in correctional settings as a public health issue.

We must apply the settlement monies by thoughtfully using evidence-based practices that free people from cycles of addiction, which benefits not only them, but also their loved ones and communities. Reflecting the impact of the opioid crisis, a disproportionate share of these funds should be invested in addiction treatment, including MAT, in state and county prison systems nationwide.

Our patients are disproportionately victims of the opioid epidemic and deserve treatment that will increase their chances for success upon release — a win-win for all, given that 95% of formerly incarcerated individuals return to their communities. We will not solve the opioid crisis until we break the connection between incarceration and addiction.

My fear is that this is not the popular choice, nor the choice that polls well, but investing in addiction treatment as an integral part of correctional health programs is the right and fiscally sound choice.

A+

a-

Society continues to pay the price — in lives lost and ruined, in

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

communities ravaged by crime — for our shortsighted embrace of this "magic pill." My company is determined to do its part by helping those in our care devastated by opioids return safely to their communities. We intend to lead by partnering with state and local governments to fight for and guide spending of settlement dollars so that their communities receive the highest return on investment.

By shepherding funds from opioid settlements toward treating opioid use disorder among the incarcerated, we can address the problem at its core. By breaking the addiction-to-prison pipeline, we can save productive lives, make our communities safer and make progress toward finally ending the opioid tragedy.

———————

**Sara Tirschwell** is the chief executive officer of Corizon, soon to be **YesCare**. For four years she was the chief financial officer of Foundation House, an addiction treatment center in Portland, Maine. With more than 30 years of experience in distressed finance, she has been intimately involved with numerous settlements of similar mass-tort litigations. You can reach Sara by **email**, **LinkedIn**, or Twitter **@STirschwell**.



A+

a-

We Have the Tools to Address Opioid Addiction at its Core, But Do We...          https://www.thewellnews.com/opinions/we-have-the-tools-to-address-o...

Case 3:23-401766-aMAG-DDoc 13CF File 2521/14/23ageEnt1264 02/le4/27/09;44721Pages of 5
Exhibit Exhibit 3 - State Court File     Page 423 of 627

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

A+

a-

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

# EXHIBIT 8

Home    About Quest    Services    Approach    Professionals    Case Studies    Careers    Contact Us

## Professionals

Jeffrey A. Brodsky

Gerald Madigan

Robert A. Schmitz

Barry D. Shalov

Sara Tirschwell

Robert Allen

Samuel Dawidowicz

Michael Doyle

Christopher Motogawa

Matthew Veedon

Dr. Alexander A. Kulpecz

Quest Administrative Services, LLC

Tony Naes

Mary Palmquist

Mark Chambers

# Sara Tirschwell



Sara Tirschwell, CFA, is a Managing Director of Quest Turnaround Advisors, and brings to her assignments extensive experience successfully investing in distressed companies over the past 30 years.

She is currently serving as the CEO of Corizon Health. Previously she served as the Interim Chief Financial Officer of Foundation House, a privately-owned addiction treatment company headquartered in Portland, Maine where she led an operational turnaround and balance sheet restructuring.

She also serves as a Director and Chair of the Budget and Audit Committee on the board of Atlas Marketplace & Delivery LLC, a privately-held transportation and logistics company with operations throughout New England.  Ms. Tirschwell also provides portfolio advisory and outsourced workout services to CLO's and BDC's through a strategic alliance with TRS Advisors, LLC.  Previously, Ms. Tirschwell spent 29 years in distressed finance.  Ms. Tirschwell has been a portfolio manager, a partner in a start-up hedge fund and a long-time investor, analyst and trader in the distressed debt field since 1989.  She has extensive industry knowledge, having invested in financials, healthcare, telecom, homebuilders, building products, shipping, chemicals, retailers, energy, infrastructure and industrials in the US, Europe and Latin America.

Ms. Tirschwell spent the largest portion of her career in distressed finance as a Managing Director at Davidson Kempner Capital Management, fka MH Davidson.  She led the firm's investments in complex distressed situations such as Washington Mutual, Smurfit Stone, Hostess, Southedge, Rescap, Horizon Lines and PDVSA/Venezuela, among many others.  Notably, Ms. Tirschwell organized and led a bankruptcy litigation strategy against Vitro, SA, ultimately causing Mexico to overhaul its insolvency laws.

Ms. Tirschwell graduated from Rice University with an Economics degree in 1987 after spending her childhood in Corpus Christi, TX.  She started her career in distressed finance at R.D. Smith, as the Drexel-induced high yield bubble was bursting.  Ms. Tirschwell became a pioneer in distressed bank loan trading, leading the creation of an efficient marketplace for distressed and stressed term loans and the innovation of a mechanism for transacting revolving credit facilities.  She has led and participated on dozens of creditor committees, collaborated with the Loan Syndications and Trading Association, Senate Judiciary Committee and Managed Funds Association, spoken on panels for the Turnaround Management Association and has been a guest lecturer on the subject of bankruptcy investing.

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

© Copyright 2021 • Quest Turnaround Advisors • All Rights Reserved.

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

# EXHIBIT 9



Home    About Quest    Services    Approach    Professionals    Case Studies    Careers    Contact Us



# About Quest

Quest provides its services as an advisor, interim manager, plan administrator or liquidating trust manager to accomplish the objectives of the engagement. Quest specializes in situations demanding significant and rapid change in a company's capital structure, operations or strategy. Whether the crisis is caused by a sharp decline in earnings or cash flow, key management departures, loss of confidence in management, rapid loss of market share, liquidity shortfalls, debt defaults, discovery of accounting irregularities or fraud, these circumstances demand a heightened sense of urgency, quality, fact-based analysis, and rapid decision-making.

Quest helps its clients resolve these difficult circumstances. As outsiders we bring a sense of objectivity and are unburdened by the loyalties and identification with past decisions. We bring a wide range of experiences from similar situations that help operating management overcome the tendency to resist or compromise on making the painful but necessary changes that are required to preserve cash, save the business and restore the confidence of important constituencies including banks, bondholders, stockholders, employees and customers.

Having worked through many crisis situations, Quest understands the dynamics of these situations and the needs of the constituents involved. For example, when working for management we help them develop a realistic view of their options and help them avoid inadequate responses that waste time and, in the process, consume cash. We help creditors understand when continuing financial support will benefit their ultimate recoveries and how they can leverage their willingness to provide financial flexibility into a position that improves their recovery.

Quest personnel frequently work with companies as they complete an out of court restructuring or exit Chapter 11 to implement their plan. In the role of Plan Administrator, Liquidating Trust Manager or Director, Quest has achieved results far in excess of the original plan. Examples of cases include NTL Incorporated, Adelphia Communications Corporation, and ResCap Liquidating Trust.

© Copyright 2021  •  Quest Turnaround Advisors  •  All Rights Reserved.

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

# EXHIBIT 10

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM



Home    About Quest    Services    Approach    Professionals    Case Studies    Careers    Contact Us

## Services

Financial Restructuring

Crisis/Interim

Chapter 11 Planning

Plans of Reorganization

Strategic Business Plans

Claims Resolution

Serving on Boards

Quest Administrative Services, LLC

# Financial Restructuring

Quest assists clients in turnaround situations by developing and implementing plans to restructure the Company's capital structure, negotiating with constituents including secured and unsecured creditors and arranging, where necessary, new credit facilities and equity sources of financing.

- Reviewing indentures, credit agreements, lease financing agreements, inter-creditor agreements,  covenants, blocking rights and local insolvency laws

- Developing strategies for negotiation in consultation with client's legal advisors

- Developing market sense through conversations with distressed debt investors, banks and capital market analysts

- Preparing or validating detailed cash flow forecasts

- Identifying opportunities to improve cash flow from operations

- Recommending action plans and negotiating strategy, including use of interest moratoriums, change of venue, transfer of assets, consents and waivers and other appropriate actions tailored to the case specifics

- Leading negotiations to reach consensual agreements to restructure

© Copyright 2021  ·  Quest Turnaround Advisors  ·  All Rights Reserved.

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

# EXHIBIT 11



Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

## Services

Financial Restructuring

Crisis/Interim

Chapter 11 Planning

Plans of Reorganization

Strategic Business Plans

Claims Resolution

Serving on Boards

Quest Administrative Services, LLC

# Crisis/Interim Management

Quest professionals have extensive industry operating experience across all functional areas of management. They have directly managed companies and are prepared to function as an interim management team through a period of significant change. Our professionals have extensive experience as members of senior management in troubled situations that enhances our ability to act as interim managers or advisors. Quest professionals assess situations and formulate turnaround strategies rapidly; and effect necessary change to stabilize the business, allowing for a successful restructuring to proceed.

Examples of these activities include:

- Preparing or validating detailed cash flow forecasts
- Identifying opportunities to improve cash flow from operations
- Identifying opportunities to sell assets or raise new financing
- Organizing the interim management team
- Handling all the specialized activities related to the restructuring or the insolvency process so management can remain focused on managing the business
- Developing operating plans working closely with incumbent management
- Retaining recruiters, select and train new managers as appropriate
- Leading negotiations with customers, suppliers, landlords, and creditors
- Negotiating employment contracts with key managers including design of key employee retention and incentive programs
- Communicating with constituents

© Copyright 2021  •  Quest Turnaround Advisors  •  All Rights Reserved.

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

# EXHIBIT 12

Electronically Filed - BOONE - December 20, 2022 - 05:09 PM

Home   About Quest   Services   Approach   Professionals   Case Studies   Careers   Contact Us

## Services

Financial Restructuring

Crisis/Interim

Chapter 11 Planning

Plans of Reorganization

Strategic Business Plans

Claims Resolution

Serving on Boards

Quest Administrative Services, LLC

# Plans of Reorganization

Quest develops the business aspects of the Plan of Reorganization in conjunction with debtors counsel and negotiates with the various constituents as required to Confirm the Plan. This allows for the company to emerge with an appropriate capital structure and a plan that will ensure a high chance of long-term operating success.

*Viable major activities include:*

- Reviewing indentures, credit agreements, lease financing agreements, inter-creditor agreements, covenants, blocking rights and local insolvency laws
- Developing strategies for negotiation in consultation with client's legal counsel
- Developing market sense through conversations with distressed debt investors, banks and capital markets analysts
- Preparing or validating detailed cash flow forecasts over a multiple-year period
- Testing viability of new capital structure
- Retaining and managing activities of independent appraisers, business valuation consultants, liquidators and administrators
- Taking positions as directors of companies to help manage the re-organization process when appropriate

© Copyright 2021  •  Quest Turnaround Advisors  •  All Rights Reserved.

Electronically Filed - BOONE - December 20, 2022 - 05:14 PM

# EXHIBIT 48

Electronically Filed - BOONE - December 20, 2022 - 05:14 PM



Home    About    Services    Choosing YesCare    Contact    Careers    Our Motivation

## YesCare Client Services

205 Powell Place, Suite 104 | Brentwood, TN 37407 | 800-729-0069 | clientservices@yescarecorp.com

## YesCare Careers Contact

For questions regarding our employment opportunities please fill out the form **below.**

## Media Contact

If you are a member of the news media, we want to respond quickly and accurately to any questions you may have. Please send your inquiry and our team will contact you right away: media@yescarecorp.com

## Provider Network Contact

If you are interested in becoming a part of YesCare's provider or vendor network, please contact us using the form below.

## Get in Touch

For general information on our healthcare services, please call our toll free number at 800-729-0069 or fill out the form below.

12/17/22, 3:44 PM     Contact | yescare

Case 23-40176-can11    Doc 1-3    Filed 02/14/23   Entered 02/14/23 09:47:21    Desc
Exhibit Exhibit 3 - State Court File    Page 437 of 627

Electronically Filed - BOONE - December 20, 2022 - 05:14 PM



Home     About     Services     Choosing YesCare     Contact     Careers     Our Motivation

**Email \***

e.g., email@example.com

**Phone**

e.g., 123-456-7890

**Address \***

Address

**City \***

City

**State \***

State

**Zip Code \***

XXXXX

**Your message \***

Enter text here

NOTE: This portal is not to be used for requests for medical records, patient specific information or patient care information - such requests will not be accepted. All inquiries of this nature should be directed in writing to the correctional facility. You must read and agree to these terms before submitting the form.

I agree to the above terms

Send



As the correctional healthcare pioneer and leader for 40 years, YesCare provides client partners with high quality healthcare and reentry services that will improve the health and safety of our patients, break the cycle of recidivism and better the communities where we live and work.

**Quick Link**

Home

About

Services

Choosing YesC

Contact

Our Motivation

Claims

Careers

**Contact**

Job Inquiries:
800-989-7471

careers@yescarecorp.com

Media Inquiries:
media@yescarecorp.com

Business Development:
clientservices@yescarecorp.com



© 2022 YesCare Corp. All Rights Reserved. | Terms of Use

Electronically Filed - BOONE - December 20, 2022 - 05:14 PM

# EXHIBIT 49

YesCare
Say Yes To Exceptional Care

Careers   Our Motivation



Say Yes to the Future of Correctional Healthcare

DISCOVER HOW

**Our Values**
Built on more than 40 years of industry expertise

**Our Services**
Improving partner and community outcomes

**Our Team**
Driving results for patients and communities

## Clinically Focused

YesCare* sets the standard for excellence in correctional healthcare. Drawing from our team's history as the leading U.S. correctional health care providers, we provide our client partners with high-quality healthcare and reentry services to improve the health and safety of our patients, reduce recidivism and better the communities where we live and work.



Electronically Filed - BOONE - December 20, 2022 - 05:14 PM



**Physical Healthcare**   **Release With YesCare**   **Behavioral Health**

SEE ALL SERVICES



INDUSTRY LEADERS FOR MORE THAN 40 YEARS*

## Caring with compassion.
## Treating with dignity.
## Leading with integrity.
## Responding with urgency.

YesCare is the pioneer and foremost provider of correctional healthcare in the United States. We are a company built on more than 40 years of innovation and earned expertise in the industry.

Our people, our practices, our commitment to success through evolving evidence-based healthcare — these are the traits that make us the ideal partner for your correctional healthcare needs.

Electronically Filed - BOONE - December 20, 2022 - 05:14 PM

**475+**
Correctional Facilities
Across the Country

**1,000,000**
Patients cared for,
and counting

**40+**
Years of innovation, patient
care and reentry services



# Correctional healthcare is not just a job.
## It's a calling.

See All Available Positions

**CAREERS**





As the correctional healthcare pioneer and leader for 40 years, YesCare provides client partners with high quality healthcare and reentry services that will improve the health and safety of our patients, break the cycle of recidivism and better the communities where we live and work.

*YesCare acquired all of the employees and active contracts of Corizon Health in early 2022.

**Quick Links**

Home

About

Services

Choosing YesCare

Contact

Our Motivation

Claims

Careers

**Contact**

Job Inquiries:
800-989-7471
careers@yescarecorp.com

Media Inquiries:
media@yescarecorp.com

Business Development:
clientservices@yescarecorp.com

 

© 2022 YesCare Corp. All Rights Reserved. | Terms of Use

Electronically Filed - BOONE - December 20, 2022 - 05:17 PM

# EXHIBIT 78

Electronically Filed - BOONE - December 20, 2022 - 05:17 PM





# Editorial: Medical concerns at MDC must be addressed pronto

**BY ALBUQUERQUE JOURNAL EDITORIAL BOARD**

PUBLISHED: WEDNESDAY, NOVEMBER 16TH, 2022 AT 12:02AM

UPDATED: WEDNESDAY, NOVEMBER 16TH, 2022 AT 12:15AM

Running a jail is no doubt difficult, especially one that averages 1,300 inmates. The tensions are high and the stakes are even higher.

The Bernalillo County commissioners made the right move in mid-July by raising the salaries of correctional officers by 13% across the board. Something had to be done. The chief of the Metropolitan Detention Center declared a staffing emergency twice this summer that required on-duty officers to stay and others to come in.

Compulsory work will drive down the morale of any workforce and inmates were being locked down for days at a time because of the staffing shortage without access to phones or showers or outdoor time.

The county has fortunately reported an uptick in applicants with a new starting pay of $18.90 per hour.

But there is another crisis at MDC — an apparent failure to provide proper medical care to the jail's population.

Seventeen inmates have died in custody at MDC since the beginning of 2020, several of whom were withdrawing from drugs or alcohol.

advertisement

Electronically Filed - BOONE - December 20, 2022 - 05:17 PM

Brentwood, Tennessee-based YesCare, the jail's medical provider, went several months without meeting its contractual obligation to have two doctors present at the jail.

A recently released report by medical expert Muthusamy Anandkumar found the jail's medical team out of compliance regarding screening for and managing inmate withdrawal symptoms. It says the high number of detox assessments done by each nurse is increasing risks to inmates. For example, no electrolyte powder and water was available for inmates going through withdrawal.

Forty-one-year-old Sao Chau, who was being held in the detox unit, died at the jail in August after reportedly vomiting over 57 hours. A detox nurse examined him and said medical personnel should be contacted if he continued feeling sick. The Vietnamese refugee asked for help 4 1/2 hours later. Another inmate helped put Chau in a wheelchair, where he lost consciousness and became limp before dying a short time later.

"Several sick call requests were reviewed, and the acuity level was not appropriate for the complaints," according to Anandkumar's report. It says there is a delay in responding to medical requests, nursing assessments are not detailed and nurses are not consistently reevaluating detainees.

## Sign up for our free Daily Headlines newsletter

Lawsuits about medical care and conditions at MDC have been ongoing for years. The McClendon settlement of 2015 lays out more than 250 requirements regarding mental heath services, medical services and confinement at the jail.

Yet, serious problems persist.

advertisement

Electronically Filed - BOONE - December 20, 2022 - 05:17 PM

Bernalillo County commissioners approved a new, $64.9 million four-year contract with Corizon Health — the forerunner of YesCare — in September 2021. In the months that followed, medical personnel reported care only got worse. Anandkumar says in his report there is a "delay in care and inadequate care for sick inmates."

The county has required YesCare to make changes to address concerns. The CEO of YesCare contends the company has eliminated many chronic care backlogs, simplified reporting, created checklists for medical staff and provided additional training to improve patient care.

Nonetheless, an attorney representing Chau's brother says Chau was "left to die on the floor of this detox wing, vomiting, and in pain to the point where he couldn't even walk." Attorney Rick Sandoval says he expects to file a wrongful death lawsuit against the county soon.

"I don't know how many deaths it's going to take for them to address the problem," Sandoval says.

One of the county's most basic responsibilities is to safely operate a jail to hold defendants until trial or for short-term sentences. It's essential to the administration of justice. And taxpayers are forking over more than $62 million annually to run MDC.

The county needs to continue demanding improvement by YesCare. If YesCare isn't up to the task, the county has a responsibility to taxpayers to find someone else who is.

*This editorial first appeared in the Albuquerque Journal. It was written by members of the editorial board and is unsigned as it represents the opinion of the newspaper rather than the writers.*

Home » Opinion » Editorials » **Editorial: Medical concerns at MDC must be addressed pronto**

Electronically Filed - BOONE - December 20, 2022 - 05:17 PM

**Albuquerque Journal and its reporters are committed to telling the stories of our community.**

**• Do you have a question you want someone to try to answer for you? Do you have a bright spot you want to share?**
  We want to hear from you. **Please email yourstory@abqjournal.com**

\+

\+

\+

\+

\+

\+

\+

\+

\+

Electronically Filed - BOONE - December 20, 2022 - 05:17 PM

# EXHIBIT 79

Contribute

Electronically Filed - BOONE - December 20, 2022 - 05:17 PM

Advertisement



News

# Alabama rescinds prison health care contract award, will start process over

Published: Aug. 08, 2022, 4:13 p.m.

Signed-in readers now can bookmark stories to read later.

NEW!

**147**
shares

By **Mike Cason | mcason@al.com**

The Alabama Department of Corrections has rescinded its decision to pick a new company to provide comprehensive medical and mental health care to inmates.

The ADOC announced in July that it had picked YesCare Corp., based in Brentwood, Tenn., for the three-year contract covering 26 correctional facilities. The ADOC said it would enter contract negotiations with YesCare and expected the agreement to take effect Oct. 1.

The updated notification posted on the ADOC website says: "Out of an abundance of caution, the ADOC has determined that it is in the state's best interest to rescind this RFP (request for proposals) and any previously issued notice of intent to award." The department said it will reissue the RFP but did not say when. The update was posted last week.

In July, the ADOC said it picked YesCare over four other companies that submitted proposals: Centurion, Vital Core, Wellpath, and Wexford Health, the current provider. ADOC Commissioner John Hamm said an RFP committee reviewed the five proposals and picked YesCare based on a combination of quality and overall cost.

Advertisement

Electronically Filed - BOONE - December 20, 2022 - 05:17 PM

The quality of health care and mental health care for inmates is the subject of an eight-year-old federal lawsuit filed on behalf of inmates.

Five years ago, U.S. District Judge Myron Thompson ruled that the state's mental health care was "horrendously inadequate." The court remains involved in overseeing efforts by the state to increase staffing and improve care.

The case is separate but has some overlapping issues with the Department of Justice lawsuit filed in 2020 alleging unconstitutional conditions in Alabama's prisons for men.

If you purchase a product or register for an account through one of the links on our site, we may receive compensation.

## Around the Web

### Kansas City: Unsold Never-Driven Cars Now Almost Being Given Away: See Prices

**SUV Deals | Search Ads** | Sponsored

### What Throat Phlegm Could Mean For your Health (No What You Expect)

**SaneSolution** | Sponsored

### Fastest Way to Pay Off $5,000 in Debt

Get out of credit card debt while paying less!

**CompareCredit.com** | Sponsored

### If You Like to Play on Your Computer, this Vintage Game is a Must-Have. No Install.

**Forge Of Empires** | Sponsored

Electronically Filed - BOONE - December 20, 2022 - 05:17 PM

**Man Who Predicted Lehman Crash Says Get Ready For A 2023 "Cash Frenzy"**

**Investing Outlook** | Sponsored

**This is the best time of year to buy return pallets, pallets are only on sale for 2 weeks!**

**Amazon** | Sponsored

**Amazon Left Scrambling As Prime Users Find Out About Secret Deals**

**Online Shopping Tools** | Sponsored

**Throat Phlegm? Your Body Is Trying To Tell You Something**

**SaneSolution** | Sponsored

**Forget Old Doorbell Cams, Get This Instead**

**Stack Bargains** | Sponsored

**Regular People Call It A Pocketknife - It's Anything but That**

**Deejo** | Sponsored

**"Move your money in 2022," Wall St. legend warns**

**Chaikin Analytics** | Sponsored

**Top Scientists: If Anyone Has Tinnitus (Ear Ringing) Do This Immediately**

TINNITUS | sponsored

**Former Birmingham mayor Cooper Green's grandson gets life in Georgia prison for running woman over**

AL.com

**Sarah Sanders, Arkansas candidate and ex-Trump press secretary, out of hospital after cancer surgery**

AL.com



Registration on or use of this site constitutes acceptance of our User Agreement, Privacy Policy and Cookie Statement, and Your California Privacy Rights (User Agreement updated 1/1/21. Privacy Policy and Cookie Statement updated 7/1/2022).

Cookies Settings

© 2022 Advance Local Media LLC. All rights reserved (About Us).
The material on this site may not be reproduced, distributed, transmitted, cached or otherwise used, except with the prior written permission of Advance Local.

Community Rules apply to all content you upload or otherwise submit to this site.

Ad Choices

Electronically Filed - BOONE - December 20, 2022 - 05:17 PM

Electronically Filed - BOONE - December 20, 2022 - 05:17 PM

# EXHIBIT 80

Electronically Filed - BOONE - December 20, 2022 - 05:17 PM

| | |
|---|---|
| **From:** | Lewis, Shawn [Shawn.Lewis@corizonhealth.com] |
| on behalf of | Lewis, Shawn <Shawn.Lewis@corizonhealth.com> [Shawn.Lewis@corizonhealth.com] |
| **Sent:** | 8/18/2021 11:36:54 AM |
| **To:** | Barker Jr, Darrell [Darrell.BarkerJr@corizonhealth.com] |
| **Subject:** | RE: Payment for 8/13/2021 |

Okay thank you I will inform Mr. Luebbering.

Shawn Lewis
Claims Lead
615-376-3794
Fax 629-333-7446
Emai claimscs@corizonhealth.com



**Healthcare Support Team**
*Serving our people, patients and partners*

---

**From:** Barker Jr, Darrell <Darrell.BarkerJr@corizonhealth.com>
**Sent:** Tuesday, August 17, 2021 4:14 PM
**To:** Lewis, Shawn <Shawn.Lewis@corizonhealth.com>
**Subject:** RE: Payment for 8/13/2021

Hello Shawn,
       Our plan of action is to continue to work to supplement their payments each week until we receive the funding from MO DOC.  Since we do not know when we will receive those dollars, we are not able to provide a solid timeline for when we will be able to eliminate the backlog.

Darrell Barker
Claims Director



**Healthcare Support Team**
*Serving our people, patients and partners*

**Phone:** 615.376.1321
**Fax:** 629.333.7243
103 Powell Court | Brentwood, TN 37027
www.corizonhealth.com
Safety, Motivation, Accountability, Respect, Teamwork

---

**From:** Lewis, Shawn
**Sent:** Tuesday, August 17, 2021 7:43 AM
**To:** Barker Jr, Darrell <Darrell.BarkerJr@corizonhealth.com>
**Subject:** FW: Payment for 8/13/2021

Darrell,

Corizon010277

Electronically Filed - BOONE - December 20, 2022 - 05:17 PM

Please see email below Mr. Luebbering is wanting to know your plan of action.

Thank you,

Shawn Lewis
Claims Lead
615-376-3794
Fax 629-333-7446
Emai claimscs@corizonhealth.com



**Healthcare Support Team**
*Serving our people, patients and partners*

---

**From:** Luebbering, Thomas <TLuebbering@crmc.org>
**Sent:** Monday, August 16, 2021 5:00 PM
**To:** Lewis, Shawn <Shawn.Lewis@corizonhealth.com>
**Cc:** Hughey, Michelle <MHughey@crmc.org>
**Subject:** [EXTERNAL] RE: Payment for 8/13/2021

**This Message has originated outside of your organization.**

Shawn:  Thank you.  So this has cleaned up a lot of the December claims if not all of them.  When can we expect the Jan-Mar claims to be paid?  I was looking for some catching up not just keeping up.  YOU are still paying interest, and I thought the goal was to eliminate that issue.  In order to do so, you will need to catch up on the older claims.

Please let me know your plan.

Thank you,


Tom Luebbering
Vice President Finance
Capital Region Medical Center
(573) 632-5100

---

**From:** Lewis, Shawn [mailto:Shawn.Lewis@corizonhealth.com]
**Sent:** Monday, August 16, 2021 1:10 PM
**To:** Luebbering, Thomas <TLuebbering@crmc.org>; Hughey, Michelle <MHughey@crmc.org>
**Subject:** Payment for 8/13/2021

CAUTION: This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

The latest payments that went out.

Shawn Lewis
Claims Lead
615-376-3794
Fax 629-333-7446
Emai claimscs@corizonhealth.com

Corizon010278



Electronically Filed - BOONE - December 20, 2022 - 05:17 PM

Electronically Filed - BOONE - December 20, 2022 - 05:17 PM

# EXHIBIT 81

Electronically Filed - BOONE - December 20, 2022 - 05:17 PM

| Message | |
|---|---|
| **From**: | Barker Jr, Darrell [Darrell.BarkerJr@corizonhealth.com] |
| **Sent**: | 9/27/2021 9:32:51 PM |
| **To**: | Luebbering, Thomas [/O=Capital Region Medical Center/OU=CRMC/cn=Recipients/cn=TLuebbering] |
| **CC**: | Barker Jr, Darrell [Darrell.BarkerJr@corizonhealth.com] |
| **Subject**: | RE: [EXTERNAL] Corizon payments encryptme |

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good Afternoon Tom,

I completely understand your frustration and will have better visibility into the payment for this week on Thursday.  I will work to calculate the interest payment for the 2nd quarter and have approved for reimbursement.  I will work to calculate the interest for the 3rd quarter next week and have approved for reimbursement.  We continue to work with the state to recover COVID expenditures over the last year which has been escalated within their leadership.  From a plan perspective, we will work to reimburse billed charges on the below schedule unless we receive the expected funding from the state at which point the reimbursement will be accelerated accordingly.  My hope is that we will receive the funding and close out your balances 60-days from the termination of the contract.

October-$3M
November-$3M
December-$3M
January-$3M

Darrell Barker
Claims Director



**Phone:** 615.376.1321
**Fax:** 629.333.7243
103 Powell Court | Brentwood, TN 37027
www.corizonhealth.com
**S**afety, **M**otivation, **A**ccountability, **R**espect, **T**eamwork

---

**From:** Luebbering, Thomas [mailto:TLuebbering@crmc.org]
**Sent:** Friday, September 24, 2021 3:00 PM
**To:** Barker Jr, Darrell <Darrell.BarkerJr@corizonhealth.com>
**Subject:** RE: [EXTERNAL] Corizon payments encryptme

**This Message has originated outside of your organization.**

---

Darrell:  So when do you think we will receive the next significant payment?

I have concerns that with all that is changing in this contract with DOC, CRMC is being asked to front the cash for all involved.  We have provided the services that we were contracted to do and would expect timely payment on those services.  I am not a party to your agreement with the state, but based on our agreement payment is due in 60 days or interest is due.  We have not received an interest payment in some time and would appreciate getting one this next week along with a payment for services rendered.

This contract is signed by the University of Missouri (Our affiliate) and I have asked them to intervene.

PLTF00004150

Electronically Filed - BOONE - December 20, 2022 - 05:17 PM

There has been  a great working relationship between Corizon and CRMC for many years and I am deeply concerned with the amount of outstanding claims that have yet to be paid with the contract potentially coming to a close in November.

I would like a detailed plan on how interest and claim payments will be made to resolve the outstanding liability.

Thank you,


Tom Luebbering
Vice President Finance
Capital Region Medical Center
(573) 632-5100

---

**From:** Barker Jr, Darrell [mailto:Darrell.BarkerJr@corizonhealth.com]
**Sent:** Wednesday, August 11, 2021 2:19 PM
**To:** Luebbering, Thomas <TLuebbering@crmc.org>
**Subject:** RE: [EXTERNAL] Corizon payments encryptme

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good Afternoon Mr. Luebbering,
        I appreciate the message and apologize for the payment pace issues.  We will have better visibility tomorrow on what we will be able to do this week and the team will continue to advise what we can do week to week to resolve the backlog.  Our situation likely resembles that of your organization with respect to COVID.  We have experienced significant expenditures associated with the pandemic and are working with the MO DOC to recover those dollars.


Darrell Barker
Claims Director



**Healthcare Support Team**
*Serving our people, patients and partners*

**Phone:** 615.376.1321
**Fax:** 629.333.7243
103 Powell Court | Brentwood, TN 37027
www.corizonhealth.com
**S**afety, **M**otivation, **A**ccountability, **R**espect, **T**eamwork

---

**From:** Luebbering, Thomas [mailto:TLuebbering@crmc.org]
**Sent:** Friday, August 6, 2021 3:37 PM
**To:** Barker Jr, Darrell <Darrell.BarkerJr@corizonhealth.com>
**Cc:** Luebbering, Thomas <TLuebbering@crmc.org>
**Subject:** FW: [EXTERNAL] Corizon payments encryptme

**This Message has originated outside of your organization.**

---

PLTF00004151

Electronically Filed - BOONE - December 20, 2022 - 05:17 PM

Mr Barker: My apologies. I neglected to include you on the original. I spoke with Shawn and he said he would discuss this with you early next week and I should expect a call back sometime Wednesday. Thank you for making this a priority and look forward to our conversation next week.

Thank you,

Tom Luebbering
Vice President Finance
Capital Region Medical Center
(573) 632-5100

---

**From:** Luebbering, Thomas
**Sent:** Friday, August 6, 2021 3:11 PM
**To:** 'Lewis, Shawn' <Shawn.Lewis@corizonhealth.com>
**Cc:** Cooper, Vince (coopervi@health.missouri.edu) <coopervi@health.missouri.edu>; 'm.madsen@mchsi.com' <m.madsen@mchsi.com>; Hughey, Michelle <MHughey@crmc.org>; Rundle, Mike <mrundle@crmc.org>; Calvaruso, Gaspare <GCalvaruso@crmc.org>
**Subject:** RE: [EXTERNAL] Corizon payments encryptme

So Shawn: This is great information. Thank You.

Can you verify that the date in the Paid date column of 1/2/1900 really means that it has been approved (Claim Status of Pay) to pay but a check has not been processed?

If this is correct, then it is suggesting that you have $4,841,750.28 that you have approved and ready to be sent. Please help me understand why that amount has not been remitted to capital region to date? Is there something you need form us to remit that payment?

There is $368,696.13 that you had received back in December. That is 8 months and you still have not sent the remittance. What is holding that up?

From my perspective it is reasonable for us to expect payment within 30-45 days from the date you received the claim. Thus I would expect payment of $4,618,419 (claims that you have in the pay status that you had received prior to 7/20/21) to be remitted to CRMC within the next week and then we would expect the continued timely remittance of claims going forward.

If you disagree that my request is reasonable, please call me immediately.

I would like verification of your plan to resolve this situation.

Thank you,

Tom Luebbering
Vice President Finance
Capital Region Medical Center
(573) 632-5100
Cell (573) 619-1183

---

**From:** Lewis, Shawn [mailto:Shawn.Lewis@corizonhealth.com]
**Sent:** Friday, August 6, 2021 2:09 PM

Electronically Filed - BOONE - December 20, 2022 - 05:17 PM

**To:** Hughey, Michelle <MHughey@crmc.org>
**Cc:** Luebbering, Thomas <TLuebbering@crmc.org>
**Subject:** RE: [EXTERNAL] Corizon payments encryptme

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Here is the list you requested.

Shawn Lewis
Claims Lead
615-376-3794
Fax 629-333-7446
Emai claimscs@corizonhealth.com



**Healthcare Support Team**
*Serving our people, patients and partners*

---

**From:** Hughey, Michelle <MHughey@crmc.org>
**Sent:** Friday, August 6, 2021 2:00 PM
**To:** Lewis, Shawn <Shawn.Lewis@corizonhealth.com>
**Cc:** Luebbering, Thomas <TLuebbering@crmc.org>
**Subject:** RE: [EXTERNAL] Corizon payments

**This Message has originated outside of your organization.**

---

Thank you for sending this.  Could you also send me a list of the outstanding claims that you have to be processed/paid?

Thanks for your help.

Michelle Hughey, MBA., CPC., CMPE.
Director of Revenue Cycle
Capital Region Medical Center
mhughey@crmc.org
573-632-5584

---

**From:** Lewis, Shawn <Shawn.Lewis@corizonhealth.com>
**Sent:** Friday, August 6, 2021 12:40 PM
**To:** Hughey, Michelle <MHughey@crmc.org>
**Cc:** Luebbering, Thomas <TLuebbering@crmc.org>
**Subject:** RE: [EXTERNAL] Corizon payments

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Michelle,

Please see the attached payments. Two of the remits are prerelease copies and the checks will be mailed on Monday. The others were mailed on 7/29/2021. This is all the information I have at this point.

Mr. Lubbering – please provide me with a date and time that would be good for you to discuss your issues with Mr. Barker my director and I will try to coordinate the meeting time for your gentlemen.

Thank you in advance.

Shawn Lewis
Claims Lead
615-376-3794
Fax 629-333-7446
Emai claimscs@corizonhealth.com



**Healthcare Support Team**
*Serving our people, patients and partners*

---

**From:** Hughey, Michelle <MHughey@crmc.org>
**Sent:** Friday, August 6, 2021 10:45 AM
**To:** Luebbering, Thomas <TLuebbering@crmc.org>
**Cc:** Barker Jr, Darrell <Darrell.BarkerJr@corizonhealth.com>; Lewis, Shawn <Shawn.Lewis@corizonhealth.com>
**Subject:** FW: [EXTERNAL] Corizon payments

**This Message has originated outside of your organization.**

We are also needing our next interest payment.

Thanks

Michelle Hughey, MBA., CPC., CMPE.
Director of Revenue Cycle
Capital Region Medical Center
mhughey@crmc.org
573-632-5584

---

**From:** Hughey, Michelle
**Sent:** Thursday, August 5, 2021 5:17 PM
**To:** 'Lewis, Shawn' <Shawn.Lewis@corizonhealth.com>
**Subject:** RE: [EXTERNAL] Corizon payments

Shawn
I know we have played phone tag a few times.  I'm needing to get an updated list on outstanding claims and when we will be receiving payment for them.

Thanks

Michelle Hughey, MBA., CPC., CMPE.
Director of Revenue Cycle
Capital Region Medical Center
mhughey@crmc.org
573-632-5584

Electronically Filed - BOONE - December 20, 2022 - 05:17 PM

Electronically Filed - BOONE - December 20, 2022 - 05:17 PM

**From:** Lewis, Shawn <Shawn.Lewis@corizonhealth.com>
**Sent:** Monday, May 24, 2021 12:46 PM
**To:** Luebbering, Thomas <TLuebbering@crmc.org>; Hughey, Michelle <MHughey@crmc.org>
**Cc:** Schupp, Cindy <Cindy.Schupp@corizonhealth.com>; Cooper, Vince (coopervi@health.missouri.edu)
<coopervi@health.missouri.edu>
**Subject:** RE: [EXTERNAL] Corizon payments

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the
> sender and know the content is safe.

Thomas,

We will work more aggressively over the next 8 weeks to lower the your balance.

Thank you,

Shawn Lewis
Claims Lead
615-376-3794
Fax 629-333-7446
Emai claimscs@corizonhealth.com



**Healthcare Support Team**
*Serving our people, patients and partners*

---

**From:** Luebbering, Thomas <TLuebbering@crmc.org>
**Sent:** Friday, May 21, 2021 12:03 PM
**To:** Lewis, Shawn <Shawn.Lewis@corizonhealth.com>; Hughey, Michelle <MHughey@crmc.org>
**Cc:** Schupp, Cindy <Cindy.Schupp@corizonhealth.com>; Cooper, Vince (coopervi@health.missouri.edu)
<coopervi@health.missouri.edu>
**Subject:** RE: [EXTERNAL] Corizon payments

**This Message has originated outside of your organization.**

---

Shawn:  First of all I want to thank you for helping get this back on track.  I am still concerned that 6 million in charges over eight weeks is not really going to get us caught up.  We are doing 2.4 million a month so not gaining that much ground.  Can the 6 million over the next 8 weeks be increased and also a plan after that eight week cycle to cover more ground and get us on a schedule that pay in 45 days.  Based on my calculation we are 6 months behind and a normal A/R should be around 3.6 million and we are at 15.

Not sure I understand why it takes this long to process the claims?


Thank you,


Tom Luebbering
Vice President Finance
Capital Region Medical Center
(573) 632-5100

Electronically Filed - BOONE - December 20, 2022 - 05:17 PM

**From:** Lewis, Shawn [mailto:Shawn.Lewis@corizonhealth.com]
**Sent:** Friday, May 21, 2021 11:24 AM
**To:** Hughey, Michelle <MHughey@crmc.org>
**Cc:** Luebbering, Thomas <TLuebbering@crmc.org>; Schupp, Cindy <Cindy.Schupp@corizonhealth.com>
**Subject:** RE: [EXTERNAL] Corizon payments
**Importance:** High

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Michelle,

Please see attached copies of the checks that will go out Monday. The copies are prerelease copies, however you will be able to see what claims are paying this week. As in my email from yesterday will continue over the next several weeks  to make payments to help reduce the balance. If you have questions let me know.

Thank you,

Shawn Lewis
Claims Lead
615-376-3794
Fax 629-333-7446
Emai claimscs@corizonhealth.com



**Healthcare Support Team**
*Serving our people, patients and partners*

---

**From:** Hughey, Michelle <MHughey@crmc.org>
**Sent:** Thursday, May 20, 2021 11:40 AM
**To:** Lewis, Shawn <Shawn.Lewis@corizonhealth.com>
**Cc:** Luebbering, Thomas <TLuebbering@crmc.org>; Schupp, Cindy <Cindy.Schupp@corizonhealth.com>
**Subject:** RE: [EXTERNAL] Corizon payments

**This Message has originated outside of your organization.**

Hey Shawn,
I just wanted to follow up from our call on Friday and see if you had any additional details on the plan to get our accounts caught up?

Please let me know when we can expect to hear the approved plan.

Thank you

Michelle Hughey, MBA., CPC., CMPE.
Director of Revenue Cycle
Capital Region Medical Center
mhughey@crmc.org
573-632-5584

Electronically Filed - BOONE - December 20, 2022 - 05:17 PM

**From:** Lewis, Shawn <Shawn.Lewis@corizonhealth.com>
**Sent:** Friday, May 14, 2021 12:17 PM
**To:** Hughey, Michelle <MHughey@crmc.org>
**Cc:** Luebbering, Thomas <TLuebbering@crmc.org>; Schupp, Cindy <Cindy.Schupp@corizonhealth.com>
**Subject:** RE: [EXTERNAL] Corizon payments
**Importance:** High

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Michelle,

Please see the attached payments that will be sent on Monday 5/17/2021. This is not all the payments, please call me so we can discuss the plans we have in getting your balance paid to the contract postion. Keep in my the attached are just copies of what is coming.

Thank you,

Shawn Lewis
Claims Lead
615-376-3794
Fax 629-333-7446
Emai claimscs@corizonhealth.com




**Healthcare Support Team**
*Serving our people, patients and partners*

---

**From:** Hughey, Michelle <MHughey@crmc.org>
**Sent:** Thursday, May 13, 2021 10:53 AM
**To:** Lewis, Shawn <Shawn.Lewis@corizonhealth.com>
**Cc:** Luebbering, Thomas <TLuebbering@crmc.org>; Schupp, Cindy <Cindy.Schupp@corizonhealth.com>
**Subject:** [EXTERNAL] Corizon payments

**This Message has originated outside of your organization.**



**Capital Region**
MEDICAL CENTER
University of Missouri Health Care
*Better. Every day.*

This is a secure message.

Click here by 2021-05-15 10:53 CDT to read your message.
After that, open the attachment.

More Info

Disclaimer: This email and its content are confidential and intended solely for the use of the addressee. Please notify the sender if you have received this email in error or simply delete it.

Secured by Proofpoint Encryption, Copyright © 2009-2021 Proofpoint, Inc. All rights reserved.

Electronically Filed - BOONE - December 20, 2022 - 05:17 PM

Electronically Filed - BOONE - December 20, 2022 - 05:19 PM

**IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI**

| | | |
|---|---|---|
| THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 22BA-CV01701-01 |
| v. | ) ) | Division 4 |
| TEHUM CARE SERVICE, INC. d/b/a CORIZON HEALTH, INC., CHS TX, INC., and YESCARE CORP., | ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' REQUEST FOR HEARING ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs The Curators of The University of Missouri and Capital Region Medical Center,

by and through undersigned counsel, request the Court schedule Plaintiffs' Motion for Preliminary

Injunction to be heard on December 28, 2022.

Dated: December 20, 2022

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

  _/s/ Patrick J. Stueve_
Patrick J. Stueve MO Bar # 37682
Ethan M. Lange MO Bar # 67857
Jordan A. Kane MO Bar # 71028
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
816-714-7100 (p)
816-714-7101 (f)
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

**COUNSEL FOR PLAINTIFFS THE CURATORS OF THE UNIVERSITY OF MISSOURI AND CAPITAL REGION MEDICAL CENTER**

Electronically Filed - BOONE - December 20, 2022 - 11:53 PM

## IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI

| | | |
|---|---|---|
| **THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER,** | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 22BA-CV01701 |
| v. | ) | |
| | ) | Division 4 |
| **TEHUM CARE SERVICES, INC. d/b/a CORIZON HEALTH, INC.,** | ) ) | |
| | ) | |
| **CHS TX, Inc.,** | ) | |
| | ) | |
| **and YESCARE CORP.,** | ) | |
| | ) | |
| Defendants. | ) | |

## CHS TX, INC. AND YESCARE CORP.'S REQUEST
## FOR HEARING ON MOTION TO DISMISS FIRST AMENDED PETITION

Defendants CHS TX, Inc. and YesCare Corp. ("Defendants") request that their Motion to Dismiss be considered simultaneously with plaintiffs' motion for preliminary injunction, which plaintiffs have currently requested to be heard on December 28, 2022.

Defendants do not agree that December 28, 2022 is the correct date for the Court to hear such matters, and intend to file an opposition to plaintiff's hearing request.

Electronically Filed - BOONE - December 20, 2022 - 11:53 PM

**DOWD BENNETT LLP**

By: */s/     Philip A. Cantwell*
Philip A. Cantwell #65505
Robyn Parkinson #72956
7676 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
(314) 889-7300 (telephone)
(314) 863-2111 (facsimile)
pcantwell@dowdbennett.com
rparkinson@dowdbennett.com

**WHITE & CASE LLP**

Samuel P. Hershey (pro hac vice application
pending)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
Email: sam.hershey@whitecase.com

*Attorneys for CHS TX, Inc. and YesCare Corp.*

Electronically Filed - BOONE - December 20, 2022 - 11:53 PM

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2022 the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record:

Patrick J. Stueve
Ethan M. Lange
Jordan A. Kane
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

Thomas R. Warburton
twarburton@bradley.com

Samuel P. Hershey
sam.hershey@whitecase.com

/s/ Philip A. Cantwell
Philip A. Cantwell

Electronically Filed - BOONE - December 20, 2022 - 11:58 PM

## IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI

THE CURATORS OF THE UNIVERSITY OF )
MISSOURI and CAPITAL REGION )
MEDICAL CENTER, )
                                   )
        Plaintiffs, )
                                   )     Case No. 22BA-CV01701
v. )
                                   )     Division 4
TEHUM CARE SERVICES, INC. d/b/a )
CORIZON HEALTH, INC., )
                                   )
CHS TX, Inc., )
                                   )
and YESCARE CORP., )
                                   )
        Defendants. )

## CHS TX, INC. AND YESCARE CORP.'S OPPOSITON TO PLAINTIFFS' DECEMBER 28, 2022 REQUEST FOR HEARING DATE

Just before 5:00 p.m. on December 20, 2022, Plaintiffs filed their preliminary injunction motion (the "PI Motion"). Plaintiffs did not consult with Defendants about the anticipated PI Motion hearing date before doing so. Plaintiffs request that the Court hear the 57-page, 86-exhibit PI Motion on five days' notice, over the Christmas holiday, on December 28, 2022.

Plaintiffs offer no basis for this Court to require Defendants to scramble over the Christmas holidays to respond to and argue the PI Motion. This matter has been pending since May 2022, and CHS TX, Inc. and YesCare Corp. were added as defendants nearly two months ago. Defendants believe that the Court would best be served by allowing Defendants an appropriate amount of time to respond to the PI Motion, given its length and the severity of the relief requested. Additionally, Defendants believe that their Motion to Dismiss (to which Plaintiffs have not yet responded) should be considered at the same time as the PI Motion. It

Electronically Filed - BOONE - December 20, 2022 - 11:58 PM

would be inappropriate for the Court to enter a preliminary injunction in connection with a motion to dismiss. Defendants' Motion to Dismiss and Plaintiffs' PI Motion address overlapping issues, including, without limitation, this Court's jurisdiction over Defendants and the power of this Court to invalidate corporate transactions performed by Texas entities in accordance with Texas law.

Thus, Defendants respectfully request that the Court deny Plaintiffs' request to schedule the PI Motion to be heard on December 28, 2022, and instead order the parties to negotiate a reasonable briefing schedule that will allow Defendants' Motion to Dismiss to be heard simultaneously with Plaintiffs' PI Motion.

Alternatively, should the Court choose to proceed with a hearing on the PI Motion on December 28, 2022 (and it should not), Defendants respectfully request that the Court schedule their Motion to Dismiss to be heard on the same day, as set forth in the separate filing noticing such hearing.

**DOWD BENNETT LLP**

By: */s/    Philip A. Cantwell*
Philip A. Cantwell #65505
Robyn Parkinson #72956
7676 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
(314) 889-7300 (telephone)
(314) 863-2111 (facsimile)
pcantwell@dowdbennett.com
rparkinson@dowdbennett.com

**WHITE & CASE LLP**

Samuel P. Hershey (pro hac vice application pending)
1221 Avenue of the Americas
New York, NY 10020

2

Electronically Filed - BOONE - December 20, 2022 - 11:58 PM

Telephone: (212) 819-8200
Email: sam.hershey@whitecase.com

*Attorneys for CHS TX, Inc. and YesCare Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2022 the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record:

Patrick J. Stueve
Ethan M. Lange
Jordan A. Kane
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

Thomas R. Warburton
twarburton@bradley.com

Samuel P. Hershey
sam.hershey@whitecase.com

*/s/ Philip A. Cantwell*
Philip A. Cantwell

Electronically Filed - BOONE - January 05, 2023 - 10:49 AM

**IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI**

| | |
|---|---|
| THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER, ) ) ) ) | |
| **Plaintiffs,** ) | Case No. 22BA-CV01701-01 |
| ) | |
| v. ) | |
| ) | Division 4 |
| TEHUM CARE SERVICE, INC. d/b/a CORIZON HEALTH, INC., CHS TX, INC., and YESCARE CORP., ) ) ) | |
| ) ) | |
| **Defendants.** ) | |

<u>**[PROPOSED] ORDER GRANTING THE PARTIES' BRIEFING SCHEDULE**</u>

On December 9, 2022, Defendants YesCare Corp. and CHS TX, Inc. filed their Motion to Dismiss. On December 20, 2022, Plaintiffs filed their Motion for Preliminary Injunction (collectively, the "Motions"). Plaintiffs, Defendants YesCare Corp. and CHS TX, Inc., and Defendant Tehum Care Services, Inc., have conferred and agreed to a briefing schedule for both Motions. Thus, the Court hereby ORDERS as follows:

a. Plaintiffs' Opposition to YesCare Corp. and CHS TX, Inc.'s Motion to Dismiss is due **<u>January 20, 2023</u>**.

b. Defendants' Opposition(s) to Plaintiffs' Motion for Preliminary Injunction is due **<u>January 20, 2023</u>**.

c. YesCare Corp. and CHS TX, Inc.'s Reply in Support of Motion to Dismiss is due **<u>January 30, 2023.</u>**

d. Plaintiffs' Reply in Support of Motion for Preliminary Injunction is due **<u>January 30, 2023</u>**.

IT IS SO ORDERED.


Dated: _____          _____
                                       JOSHUA DEVINE
                                       BOONE COUNTY CIRCUIT COURT JUDGE

Electronically Filed - BOONE - January 05, 2023 - 10:49 AM

Electronically Filed - BOONE - January 05, 2023 - 10:49 AM

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

 _/s/ Jordan A. Kane_
Patrick J. Stueve MO Bar # 37682
Ethan M. Lange MO Bar # 67857
Jordan A. Kane MO Bar # 71028
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: 816-714-7100
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

*Counsel for Plaintiffs The Curators of The University
of Missouri and Capital Region Medical Center*

**DOWD BENNETT LLP**

 _/s/    Philip A. Cantwell_
Philip A. Cantwell #65505
Robyn Parkinson #72956
7733 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
Tel: 314-889-7300
pcantwell@dowdbennett.com
rparkinson@dowdbennett.com

*Attorneys for CHS TX, Inc. and YesCare Corp.*

**BRADLEY ARANT BOULT CUMMINGS LLP**

 _/s/ R. Thomas Warburton_
R. Thomas Warburton (MO Bar No. 65477)
One Federal Place
1819 5th Avenue N.
Birmingham, AL 35203
Tel: 205-521-8987
twarburton@bradley.com

*Counsel for Tehum Care Services, Inc. d/b/a Corizon
Health, Inc.*

3

Electronically Filed - BOONE - January 05, 2023 - 10:49 AM

## IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI

| | |
|---|---|
| THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER,    ) ) ) )         Plaintiffs,    ) ) v.    ) ) TEHUM CARE SERVICE, INC. d/b/a    ) CORIZON HEALTH, INC., CHS TX, INC.,    ) and YESCARE CORP.,    ) ) )         Defendants.    ) | Case No. 22BA-CV01701-01 Division 4 |

### [PROPOSED] ORDER GRANTING THE PARTIES' BRIEFING SCHEDULE

On December 9, 2022, Defendants YesCare Corp. and CHS TX, Inc. filed their Motion to Dismiss. On December 20, 2022, Plaintiffs filed their Motion for Preliminary Injunction (collectively, the "Motions"). Plaintiffs, Defendants YesCare Corp. and CHS TX, Inc., and Defendant Tehum Care Services, Inc., have conferred and agreed to a briefing schedule for both Motions. Thus, the Court hereby ORDERS as follows:

a. Plaintiffs' Opposition to YesCare Corp. and CHS TX, Inc.'s Motion to Dismiss is due **January 20, 2023**.

b. Defendants' Opposition(s) to Plaintiffs' Motion for Preliminary Injunction is due **January 20, 2023**.

c. YesCare Corp. and CHS TX, Inc.'s Reply in Support of Motion to Dismiss is due **January 30, 2023.**

d. Plaintiffs' Reply in Support of Motion for Preliminary Injunction is due **January 30, 2023**.

Electronically Filed - BOONE - January 05, 2023 - 10:49 AM

IT IS SO ORDERED.

Dated: ___ **1/8/2023** ___ _____
                                              Honorable Joshua C. Devine, Division IV



COURT SEAL OF

BOONE COUNTY

Electronically Filed - BOONE - January 05, 2023 - 10:49 AM

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

  */s/ Jordan A. Kane*
Patrick J. Stueve MO Bar # 37682
Ethan M. Lange MO Bar # 67857
Jordan A. Kane MO Bar # 71028
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Tel: 816-714-7100
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

*Counsel for Plaintiffs The Curators of The University
of Missouri and Capital Region Medical Center*

**DOWD BENNETT LLP**

  */s/   Philip A. Cantwell*
Philip A. Cantwell #65505
Robyn Parkinson #72956
7733 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
Tel: 314-889-7300
pcantwell@dowdbennett.com
rparkinson@dowdbennett.com

*Attorneys for CHS TX, Inc. and YesCare Corp.*

**BRADLEY ARANT BOULT CUMMINGS LLP**

  */s/ R. Thomas Warburton*
R. Thomas Warburton (MO Bar No. 65477)
One Federal Place
1819 5th Avenue N.
Birmingham, AL 35203
Tel: 205-521-8987
twarburton@bradley.com

*Counsel for Tehum Care Services, Inc. d/b/a Corizon
Health, Inc.*

3

Electronically Filed - BOONE - January 20, 2023 - 02:18 PM

**IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI**

| | | |
|---|---|---|
| **THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER,** | ) ) ) ) | |
| **Plaintiffs,** | ) | **Case No. 22BA-CV01701-01** |
| **v.** | ) ) | **Division 4** |
| **TEHUM CARE SERVICES, INC. d/b/a CORIZON HEALTH, INC., CHS TX, INC., and YESCARE CORP.,** | ) ) ) ) | |
| **Defendants.** | ) | |

**DEFENDANT TEHUM CARE SERVICES, INC. d/b/a CORIZON HEALTH, INC'S MOTION FOR LEAVE TO FILE UNDER SEAL ITS SUGGESTIONS IN SUPPORT OF ITS OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND EXHIBIT A THERETO**

Defendant Tehum Care Services, Inc. d/b/a Corizon Health, Inc. ("Corizon") respectfully requests the Court to enter an order granting Corizon leave to file under seal its Suggestions in Support of Its Opposition to Plaintiffs' Motion for Preliminary Injunction and Exhibit A thereto. In support of this Motion, Corizon states as follows:

1. On December 9, the Court entered the Stipulated Protective Order, which allows a party to designate documents and material as "Confidential," defined to include information that "the producing party believes in good faith to contain or reflect trade secrets or other confidential, proprietary, and/or sensitive research, development, technical, technological, customer, marketing, financial commercial, operational or personnel information." Stipulated Protective Order ¶ 2.

2. The Protective Order requires a party to conditionally file under seal any pleading or exhibit containing Confidential Information. *Id.* at ¶ 7.

1

Electronically Filed - BOONE - January 20, 2023 - 02:18 PM

3.    Corizon's Suggestions in Support of Its Opposition to Plaintiffs' Motion for Preliminary Injunction substantively discusses Confidential Information designated by Defendants YesCare Corp. and CHS TX Inc. Further, Exhibit A contains information deemed Confidential by Corizon in discovery.

Accordingly, Corizon respectfully requests that the Court grant this Motion.

Respectfully submitted,

_R. Thomas Warburton_
R. Thomas Warburton (MO Bar No. 65477)
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 5th Avenue N.
Birmingham, AL 35203
205.521.8987
twarburton@bradley.com

*Counsel for Tehum Care Services, Inc. d/b/a Corizon Health, Inc.*

Electronically Filed - BOONE - January 20, 2023 - 02:18 PM

**IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI**

| | |
|---|---|
| **THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER,** ) ) ) ) | |
| **Plaintiffs,** ) | **Case No. 22BA-CV01701-01** |
| **v.** ) ) | **Division 4** |
| **TEHUM CARE SERVICES, INC. d/b/a CORIZON HEALTH, INC., CHS TX, INC., and YESCARE CORP.,** ) ) ) ) | |
| **Defendants.** ) | |

**PROPOSED ORDER GRANTING DEFENDANT TEHUM CARE SERVICES, INC. D/B/A CORIZON HEALTH, INC.'s MOTION FOR LEAVE TO FILE UNDER SEAL**

Before the Court is Defendant Tehum Care Services, Inc. d/b/a Corizon Health, Inc.'s ("Corizon") Motion for Leave to File Under Seal Its Suggestions in Support of Its Opposition to Plaintiffs' Motion for a Preliminary Injunction and Exhibit A Thereto. For good cause shown, Corizon's motion is **GRANTED**, and it is hereby **ORDERED** that Corizon is granted leave to file under seal its Suggestions in Support of Its Opposition to Plaintiffs' Motion for Preliminary Injunction, and Exhibit A thereto.

IT IS SO ORDERED.

Dated: _____        _____

JOSHUA DEVINE
BOONE COUNTRY CIRCUIT JUDGE

Electronically Filed - BOONE - January 20, 2023 - 02:18 PM

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2023 the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record:

Patrick J. Stueve
Ethan M. Lange
Jordan A. Kane
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

Philip A. Cantwell
Robyn Parkinson
pcantwell@dowdbennett.com
rparkinson@dowdbennett.com

Samuel P. Hershey
sam.hershey@whitecase.com

*R. Thomas Warburton*

Electronically Filed - BOONE - January 20, 2023 - 02:24 PM

**IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI**

| | |
|---|---|
| **THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER,** ) ) ) ) | |
| Plaintiffs, ) | |
| ) | Case No. 22BA-CV01701 |
| v. ) | |
| ) | Division 4 |
| **TEHUM CARE SERVICES, INC. d/b/a CORIZON HEALTH, INC.,** ) ) | |
| ) | |
| **CHS TX, Inc.,** ) | |
| ) | |
| **and YESCARE CORP.,** ) | |
| ) | |
| Defendants. ) | |

**CHS TX, INC. AND YESCARE CORP.'S MOTION FOR LEAVE TO FILE UNDER SEAL THEIR OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND ANY EXHIBITS DESIGNATED AS CONFIDENTIAL**

Defendants CHS TX, Inc. and YesCare Corp. (together "Defendants") respectfully request that the Court enter an order granting them leave to file under seal their opposition to Plaintiffs' Motion for Preliminary Injunction and any exhibits previously produced as confidential by a party to this litigation.  In support of this Motion, Defendants state as follows:

1.      On December 9, 2022, the Court entered the Stipulated Protective Order. The Protective Order allows the parties to designate documents and material as "Confidential," which the Protective Order defines to include information "that the producing party believes in good faith to contain or reflect trade secrets of other confidential, proprietary, and/or sensitive research, development, technical, technological, customer, marketing, financial, commercial, operational, or personnel information." Stipulated Protective Order at ¶ 2.

Electronically Filed - BOONE - January 20, 2023 - 02:24 PM

2.      The Protective Order requires a party to conditionally file under seal any pleading or exhibit containing confidential information. Id. at ¶ 7.

3.      When Plaintiffs filed their motion, the Court granted permission to file under seal that motion and certain accompanying exhibits that had been designated as confidential.

4.      Because Defendants' opposition to Plaintiffs' motion substantively discusses Plaintiffs' motion and references confidential information discussed therein, Defendants respectfully request that the Court grant this Motion to allow them to file their opposition under seal and any and any exhibits previously produced as confidential by a party to this litigation.

Dated: January 20, 2023                          Respectfully submitted,

                                                 **DOWD BENNETT LLP**

                                                 By: /s/    *Philip A. Cantwell*
                                                 Philip A. Cantwell #65505
                                                 Robyn Parkinson #72956
                                                 7676 Forsyth Blvd., Suite 1900
                                                 St. Louis, Missouri 63105
                                                 (314) 889-7300 (telephone)
                                                 (314) 863-2111 (facsimile)
                                                 pcantwell@dowdbennett.com
                                                 rparkinson@dowdbennett.com

                                                 **WHITE & CASE LLP**

                                                 Samuel P. Hershey (pro hac vice)
                                                 1221 Avenue of the Americas
                                                 New York, NY 10020
                                                 Telephone: (212) 819-8200
                                                 Email: sam.hershey@whitecase.com

                                                 *Attorneys for CHS TX, Inc. and YesCare Corp.*

2

Electronically Filed - BOONE - January 20, 2023 - 02:24 PM

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2023 the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record:

Patrick J. Stueve
Ethan M. Lange
Jordan A. Kane
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

Thomas R. Warburton
twarburton@bradley.com

Samuel P. Hershey
sam.hershey@whitecase.com

*/s/ Philip A. Cantwell*
Philip A. Cantwell

Electronically Filed - BOONE - January 20, 2023 - 02:24 PM

## IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI

THE CURATORS OF THE UNIVERSITY OF )
MISSOURI and CAPITAL REGION )
MEDICAL CENTER, )
                           )
        Plaintiffs, )
                           )    Case No. 22BA-CV01701
v. )
                           )    Division 4
TEHUM CARE SERVICES, INC. d/b/a )
CORIZON HEALTH, INC., )
                           )
CHS TX, Inc., )
                           )
and YESCARE CORP., )
                           )
        Defendants. )

### PROPOSED ORDER GRANTING
### DEFENDANTS' MOTION FOR LEAVE TO FILE UNDER SEAL

Before the Court is *CHS TX, Inc.'s and YesCare Corp.'s Motion for Leave to File Under Seal Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction and Any Exhibits Designated as Confidential*. For good cause shown, Defendants' Motion is GRANTED, and it is hereby ORDERED that Defendants are granted leave to file under seal their Opposition to Plaintiffs' Motion for Preliminary Injunction and any exhibits designated as confidential.

       IT IS SO ORDERED

Dated: _____       _____
                                        JOSHUA DEVINE
                                        BOONE COUNTY CIRCUIT COURT JUDGE

Electronically Filed - BOONE - January 20, 2023 - 05:36 PM

# IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI

| | | |
|---|---|---|
| **THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | Case No. 22BA-CV01701-01 |
| **v.** | ) ) | Division 4 |
| **TEHUM CARE SERVICE, INC. d/b/a CORIZON HEALTH, INC., CHS TX, INC., and YESCARE CORP.,** | ) ) ) ) ) | |
| **Defendants.** | ) | |

## PLAINTIFFS' OPPOSITION TO CHS TX, INC. AND YESCARE CORP.'S MOTION TO DISMISS PLAINTIFFS' AMENDED PETITION

Electronically Filed - BOONE - January 20, 2023 - 05:36 PM

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................. ii

LEGAL STANDARD ........................................................................................................ 4

ARGUMENT ..................................................................................................................... 4

I.      This Court Has Personal Jurisdiction Over YesCare and CHS TX. .................................. 4

II.     Plaintiffs State a Claim Under MUFTA. ........................................................................ 6

III.    Plaintiffs Plausibly Plead Successor Liability. ................................................................ 10

IV.     Plaintiffs Plausibly Plead Common Law Fraud. ............................................................. 11

V.      Plaintiffs Plausibly Plead Conspiracy. .......................................................................... 13

CONCLUSION ................................................................................................................ 15

Electronically Filed - BOONE - January 20, 2023 - 05:36 PM

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Aldein v. Asfoor*,
  213 S.W.3d 213 (Mo. App. E.D. 2007) ......................................................................... 4, 5

*Allenspach-Boller v. United Cmty. Bank*,
  2021 WL 1738884 (W.D. Mo. May 3, 2021) ................................................................... 9

*BancorpSouth Bank v. Hall*,
  2011 WL 529971 (W.D. Mo. Feb. 7, 2011) ..................................................................... 6

*Brown v. Adtalem Glob. Educ., Inc.*,
  421 F. Supp. 3d 825 (W.D. Mo. 2019) ........................................................................... 12

*Calder v. Jones*,
  465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) .................................................... 6

*Dontos v. Vendomation NZ Ltd.*,
  582 Fed. Appx. 338 (5th Cir. 2014) ................................................................................. 6

*Fischer v. Brancato*,
  147 S.W.3d 794 (Mo. App. E.D. 2004) ......................................................................... 14

*Fleming Companies, Inc. v. Rich*,
  978 F. Supp. 1281 (E.D. Mo. 1997) ................................................................................. 6

*Hanrahan v. Nashua Corp.*,
  752 S.W.2d 878 (Mo. App. E.D. 1988) ......................................................................... 11

*Heberer v. Shell Oil Co.*,
  744 S.W.2d 441 (Mo. banc 1988) ................................................................................... 11

*Hess v. Chase Manhattan Bank*,
  220 S.W.3d 758 (Mo. banc 2007) ................................................................................... 11

*Higgins v. Ferrari*,
  474 S.W.3d 630 (Mo. App. W.D. 2015) ..................................................................... 9, 10

*Jennings v. SSM Health Care St. Louis*,
  355 S.W.3d 526 (Mo. App. E.D. 2011) ........................................................................... 8

*Jones v. Shooshan*,
  855 F. Supp. 2d 594 (E.D. Va. 2012) ............................................................................. 14

*Killiam Const. Co. v. Jack D. Ball & Associates*,
  865 S.W.2d 889 (Mo. App. S.D. 1993) ........................................................................... 4

Electronically Filed - BOONE - January 20, 2023 - 05:36 PM

*Konopasek v. Konopasek*,
    2022 WL 4178971 (Mo. App. S.D. Sept. 13, 2022) ............................................................ 7

*Lemery v. Duroso*,
    2009 WL 1176269 (E.D. Mo. Apr. 30, 2009) .................................................................... 13

*Mays-Maune & Associates, Inc. v. Werner Bros., Inc.*,
    139 S.W.3d 201 (Mo. App. E.D. 2004) .............................................................................. 4

*Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*,
    No. 11-CV-02861-SC, 2013 WL 2386635 (N.D. Cal. May 30, 2013) .................................. 14

*Monroe v. Missouri Dept. of Corrections*,
    105 S.W.3d 915 (Mo. App. W.D. 2003) .............................................................................. 4

*Mullins v. TestAmerica, Inc.*,
    564 F.3d 386 (5th Cir. 2009) ............................................................................................ 6

*Nazeri v. Missouri Valley Coll.*,
    860 S.W.2d 303 (Mo.banc 1993) ...................................................................................... 4

*Nisbet v. Bucher*,
    949 S.W.2d 111 (Mo. App. E.D. 1997) .............................................................................. 4

*Ray v. Dunn*,
    753 S.W.2d 652 (Mo. App. S.D. 1988) .............................................................................. 4

*Rehab Care Grp. E., Inc. v. Stratford Health Care Properties, LLC*,
    2016 WL 11469771 (W.D. Mo. Feb. 8, 2016) .............................................................. 13, 14

*Retamco Operating, Inc. v. Republic Drilling Co.*,
    278 S.W.3d 333 (Tex. 2009) ............................................................................................ 6

*Saidawi v. Giovanni's Little Place, Inc.*,
    987 S.W.2d 501 (Mo. App. E.D. 1999) .............................................................................. 4

*Wion v. Carl I. Brown & Co.*,
    808 S.W.2d 950 (Mo. App. W.D. 1991) ............................................................................ 11

*Yerington v. Riss*,
    374 S.W.2d 52 (Mo. 1964) .............................................................................................. 13

## Statutes

Mo. Rev. Stat. § 428.014 .................................................................................................... 9

Mo. Rev. Stat. § 428.024.1 .............................................................................................. 7, 8

Mo. Stat. Ann. § 428.009 .................................................................................................... 7

Electronically Filed - BOONE - January 20, 2023 - 05:36 PM

Tex. Bus. & Com. Code § 24.001 ................................................................................ 2

Tex. Bus. & Com. Code § 24.002 ................................................................................ 7

Tex. Bus. Orgs. Code § 10.901 ................................................................................... 9

Tex. Bus. Orgs. Code § 10.008 ................................................................................... 7

**Rules**

Mo. Sup. Ct. R. 55.15 ................................................................................................ 11

**Other Authorities**

*The New Texas Business Corporation Act Merger Provisions*,
 21 St. Mary's L.J. 109 (1989) ................................................................................ 7

*The Texas Two-Step: How Divisive Mergers Turn Plaintiffs' Litigation into
 A Nationwide Honkytonk*,
 41 Rev. Litig. 275 (2022) ...................................................................................... 7

Electronically Filed - BOONE - January 20, 2023 - 05:36 PM

Until the last quarter of 2021, Corizon Health was the contracted healthcare provider for the Missouri Department of Corrections ("MDOC") for twenty-nine years, maintaining a regional office in Jefferson City, Missouri since 1992.[1] The University of Missouri and Capital Region provided health care services to inmates with the MDOC pursuant to a hospital services agreement with Corizon Health and its Missouri subsidiary, Corizon, LLC.[2] But starting in 2020, Corizon Health stopped paying Plaintiffs for those services, and to date, has failed to pay Plaintiffs over twelve million dollars.[3]

To prevent Plaintiffs from recovering on its assets, Corizon Health's board enacted a scheme to quietly transfer all of Corizon Health's operations and assets to new companies of its own creation—Defendants YesCare and CHS TX.[4]

Unbeknownst to Plaintiffs and despite Corizon Health's assurances that it would pay, Corizon Health converted to a Texas corporation, merged with Corizon, LLC and two other subsidiaries, split into "CHS TX, Inc." and "Corizon Health, Inc.," and then allocated its business, employees, management, and substantially all of its assets to CHS TX, which YesCare then immediately acquired.[5] As a result of that scheme, Defendants now seek to bind Plaintiffs to recovering the amounts owed solely from Corizon Health's drained accounts, claiming this action should be regarded as a "simple breach of contract claim against Corizon Health," and attempting to cast themselves as parties outside of this Court's jurisdiction. MTD ¶¶ 1, 4.

Not so. Defendants cannot avoid their obligations to Plaintiffs by fraudulently shifting Corizon Health's assets to YesCare and CHS TX. And Defendants are wrong that they can avoid

---

[1] Plaintiffs' First Amended Petition ¶ 48.
[2] *Id.* at ¶ 17.
[3] *Id.* at ¶¶ 39; 44; 46-47.
[4] *Id.* at ¶¶ 60-61.
[5] *Id.*

Electronically Filed - BOONE - January 20, 2023 - 05:36 PM

this Court's jurisdiction by the simple expedient of incorporating and receiving the fraudulently transferred assets in another state.

Far from "an attempt by Plaintiffs to abrogate the laws of another state," (MTD ¶ 2) Plaintiffs' suit seeks to hold YesCare, CHS TX, and Corizon Health accountable for conduct that Texas and Missouri uniformly condemn: the transfer of assets from one corporation to another with the actual intent to hinder, delay, or frustrate creditors.[6] Defendants decry their restructuring as a "lawful transaction" in that "Corizon Health adhered to Texas law in every way in executing the Texas-law divisional merger." MTD ¶ 2. But adherence to the mechanical rules for executing a combination and divisional merger does not insulate Defendants from the consequences of their fraudulent transfers. Indeed, the Texas Business Organizations Code ("TBOC") expressly recognizes that claims under fraudulent transfer laws, like claims under Missouri's Uniform Fraudulent Transfer Act ("MUFTA") apply to these types of transactions.

Instead of addressing these issues, Defendants seek to avoid liability for Plaintiffs' claims at the Motion to Dismiss stage by relying largely on summary judgment arguments while ignoring Missouri law and Plaintiffs' actual allegations. For example, Defendants complain that Plaintiffs' MUFTA claim fails because the restructuring was not a "transfer;" an argument foreclosed by MUFTA's plain language. Defendants argue that the restructuring was not fraudulent because it was made for "reasonably equivalent value," but this summary judgment argument, supported only by purported facts not contained in the pleading, is inappropriate at

---

[6] Texas, like Missouri, has adopted the Uniform Fraudulent Transfer Act. *See* Tex. Bus. & Com. Code Ann. § 24.001 *et seq.*

Electronically Filed - BOONE - January 20, 2023 - 05:36 PM

this stage.[7] Further, to avoid successor liability, Defendants argue that Texas law, instead of Missouri law, should apply—but this argument, too, fails under Missouri's choice of law test.

Likewise, Defendants seek to dismiss Plaintiffs' common law fraud claims by arguing that Plaintiffs have not pled facts regarding fraud with particularity, but this argument is belied by Defendants' own admission that Plaintiffs pled the restructuring scheme with particularity. *See* MTD ¶ 63. Indeed, Plaintiffs' fifty-page petition, containing over a hundred paragraphs of detailed factual allegations, provide a comprehensive account of Defendants' restructuring scheme to silently transfer its assets to YesCare and CHS TX while keeping its creditors at bay using false assurances and concealment of the restructuring. Finally, Defendants seek to dismiss Plaintiffs' conspiracy claims by arguing, without support, that CHS TX and YesCare "did not exist, or were not in operation" at the time of the tortious conduct. This argument defies logic; CHS TX and YesCare were core players to the conspiracy; indeed, these companies, under the same control as Corizon Health, were the recipients of Corizon Health's funds and business.

For the foregoing reasons, and those stated more fully herein and in Plaintiffs' Motion for Preliminary Injunction, Plaintiffs respectfully request this Court deny Defendants' Motion to Dismiss.

---

[7] Defendants claim Corizon Health was allocated "a receivable, subject to certain conditions being met, of $4 million under a $15 million total funding commitment (the 'Funding Agreement') provided by M2 LoanCo, LLC ('M2 LoanCo'), an affiliate of Corizon Health." MTD ¶ 18. This fact appears nowhere in Plaintiffs' Amended Petition, nor does it appear in Ex. 12, Plan of Merger, Schedule 3.01(b) that Defendants cite. Defendants also claim that Corizon Health "was also released from nearly $100 million of senior secured debt, which, prior to the 2022 Corporate Restructuring, had encumbered all of the Company's assets and left no value for unsecured creditors." MTD ¶ 18. This also does not appear anywhere in Plaintiffs' Amended Petition; nor does it appear in any of Plaintiffs' exhibits. Defendants also claim that the restructuring was "the subject of a fairness opinion rendered by FTI Capital Advisors, LLC" which "determined that the 2022 Corporate Restructuring was fair to the Company's unsecured creditors." MTD ¶ 19. This claimed fact, and the paragraph of discussion that follow it, appear nowhere in Plaintiffs' Amended Petition; nor does it appear in any of Plaintiffs' exhibits.

Electronically Filed - BOONE - January 20, 2023 - 05:36 PM

## LEGAL STANDARD

A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition." *Monroe v. Missouri Dept. of Corrections*, 105 S.W.3d 915, 918 (Mo. App. W.D. 2003) (citing *Nazeri v. Missouri Valley Coll.*, 860 S.W.2d 303, 306 (Mo.banc 1993)). Accordingly, Defendants "bear[] the burden of establishing that the elements pled by plaintiff fail to state a cause of action." *Saidawi v. Giovanni's Little Place, Inc.*, 987 S.W.2d 501, 504 (Mo. App. E.D. 1999) (citing *Nisbet v. Bucher*, 949 S.W.2d 111, 113 (Mo. App. E.D. 1997)). In evaluating whether Defendants met this burden, the Court "construe[s] the petition favorably" and "give[s] the pleader the benefit of every reasonable and fair intendment in view of the facts alleged." *Mays-Maune & Associates, Inc. v. Werner Bros., Inc.*, 139 S.W.3d 201, 204-5 (Mo. App. E.D. 2004). If the pleader's allegations "invoke principles of substantive law that may entitle it to relief, the petition is not to be dismissed." *Id.* To be sure, "[a] petition is not to be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Killiam Const. Co. v. Jack D. Ball & Associates*, 865 S.W.2d 889, 890-91 (Mo. App. S.D. 1993) (citing *Ray v. Dunn*, 753 S.W.2d 652, 654 (Mo. App. S.D. 1988)).

## ARGUMENT

I.    **This Court Has Personal Jurisdiction Over YesCare and CHS TX.**

As explained in Plaintiffs' Motion for Preliminary Injunction Section III p. 53-54, and incorporated by reference herein, Defendants are wrong that this Court lacks personal jurisdiction. To determine whether a defendant has sufficient minimum contacts with Missouri, Missouri courts consider five factors: (1) the nature and quality of the contacts; (2) the quantity of the contacts; (3) the relationship of the cause of action to those contacts; (4) the interest of Missouri in providing a forum for its residents; and (5) the convenience to the parties. *Aldein v.*

Electronically Filed - BOONE - January 20, 2023 - 05:36 PM

*Asfoor*, 213 S.W.3d 213, 215-16 (Mo. App. E.D. 2007). In essence, there must be "some act by which the defendant purposefully avails itself" of the forum statute; this requirement "exists to prevent a defendant from being hailed into a particular jurisdiction solely as a result of random, fortuitous, or attenuated contacts by the unilateral activity of another party or third person." *Id.*

Defendants' relationship with Missouri is far from random, fortuitous, or attenuated. Plaintiffs plead that Defendants, companies formed by and continuing on with Corizon Health's board, received substantially all of Corizon Health's assets in a series of technical maneuvers intended to prevent Missouri creditors from reaching unsecured assets to satisfy Corizon Health's debts. *See, e.g.*, Am. Pet. ¶¶ 60-63. In pursuit of this fraud, Corizon, LLC changed from a Missouri LLC to a Texas LLC, merged with Corizon Health, Inc. (converted from a Delaware corporation to a Texas corporation), and split into Corizon Health, Inc. (a Texas corporation) and CHS TX, Inc. (a Texas corporation) despite neither entity having any business in Texas. *Id.* at ¶ 60. The reincorporation under Texas law, absent any business there, was intended to allow Defendants to take advantage of the Texas Business Organization Code's provisions regarding combination and divisional mergers, so that the Corizon Health board could move assets out of Corizon Health's hands and into that of CHS TX, Inc. and YesCare Corp., run by the same ownership and management, so that Plaintiffs and other Missouri creditors could not recover on those funds.

These maneuvers are fraudulent, and the law does not permit Defendants to avoid personal jurisdiction in this state by reincorporating in another state and transferring assets to another company of its owners/managers own creation in that state for the purpose of avoiding Missouri creditors. Defendants were engaged in a scheme to prevent Plaintiffs, Missouri creditors, from collecting a Missouri judgment. Intentional conduct designed to cause harm in a

Electronically Filed - BOONE - January 20, 2023 - 05:36 PM

forum state is a basis for finding minimum contacts. *Calder v. Jones,* 465 U.S. 783, 787-90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (holding that the defendants must "reasonably anticipate being haled into court [in the forum state]" because "their intentional, and allegedly tortious actions were expressly aimed at" the forum state and "they knew the brunt of th[e] injury would be felt" in the forum state). Consistent with this understanding, cases addressing personal jurisdiction in fraudulent transfer cases, including in the Eighth Circuit and Fifth Circuit, hold that nonresidents like CHS TX and YesCare can be sued in the state where the funds were transferred from and the victims are located. *See, e.g.,* Plaintiffs' Motion for Preliminary Injunction Section III; *see also Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 402 (5th Cir. 2009) (upholding district court finding of personal jurisdiction over a party with no contacts with Texas other than its involvement in a fraudulent transfer scheme that affected a known, major creditor in Texas whose right to payment arose out of contacts that share a strong connection with Texas); *see Dontos v. Vendomation NZ Ltd.*, 582 Fed. Appx. 338, 345-48 (5th Cir. 2014) (holding personal jurisdiction over out-of-state defendants was present where the plaintiff alleged defendants participated in a scheme to fraudulently transfer assets to prevent a Texas creditor/plaintiff from collecting a pre-existing Texas judgment in violation of Texas's uniform fraudulent transfer act); *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 341 (Tex. 2009) (finding that when a nonresident defendant receives Texas property for the purposes of defrauding a Texas resident, the nonresident defendant is subject to suit in Texas courts). Thus, this Court has personal jurisdiction over Defendants.

## II.    Plaintiffs State a Claim Under MUFTA.

MUFTA was designed to protect unsecured creditors. *BancorpSouth Bank v. Hall*, 2011 WL 529971, at *4 (W.D. Mo. Feb. 7, 2011) (citing *Fleming Companies, Inc. v. Rich*, 978 F. Supp. 1281, 1294 (E.D. Mo. 1997)). MUFTA defines a fraudulent transfer as a transfer made

Electronically Filed - BOONE - January 20, 2023 - 05:36 PM

with the "actual intent to hinder[,] delay, or defraud any creditor of the debtor." Mo. Rev. Stat. § 428.024.1(1). As stated in Plaintiffs' Motion for Preliminary Injunction Section I p. 41-45, and incorporated by reference herein, Plaintiffs state valid claims under MUFTA.

Defendants argue Plaintiffs' MUFTA claims fail "because under Texas law the Divisional Merger did not and could not constitute a 'transfer,'" citing Tex. Bus. Orgs. Code § 10.008(a)(2)(C). MTD ¶ 7. This is incorrect. MUFTA broadly defines "transfer" to include "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." Mo. Stat. Ann. § 428.009(12). Defendants' restructuring involved Corizon Health parting with, and CHS TX and YesCare gaining, substantially all of its assets, fitting squarely within MUFTA's reach, and Defendants provide no support for the proposition that MUFTA's definition of "transfer" should be supplanted by the TBOC's definition.[8] The only case Defendants cite to support the proposition that no "transfer" occurred is inapposite. *See Konopasek v. Konopasek*, 2022 WL 4178971, at *3 (Mo. App. S.D. Sept. 13, 2022), *reh'g and/or transfer denied* (Sept. 26, 2022) (holding the plaintiff failed to allege a "transfer" where the plaintiff merely alleged the debtor moved, as opposed to disposed of or parted with, assets to a bank account the debtor held with his wife).

---

[8] Texas, in its Uniform Fraudulent Transfer Act, also uses the same definition for "transfer" as MUFTA. Tex. Bus. & Com. Code § 24.002(12). Curtis Huff, an original drafter of the TBOC, has explained that the business code, especially in regards to "transferring" assets and liabilities, was intended to work in conjunction with the UFTA, UFCA, and federal Bankruptcy Code. Curtis W. Huff, *The New Texas Business Corporation Act Merger Provisions*, 21 St. Mary's L.J. 109, 129 (1989) ("Although a merger will not involve a "transfer" of assets in the traditional sense, and [the TBOC] provides that the allocation of assets in a merger occurs 'without transfer or assignment having occurred,' the allocation of assets in a merger should constitute both a 'transfer' and 'conveyance' of assets under both the letter and spirit of the UFTA, the UFCA and the Bankruptcy Code"); Jamie M. Scherbeh, *The Texas Two-Step: How Divisive Mergers Turn Plaintiffs' Litigation into A Nationwide Honkytonk*, 41 Rev. Litig. 275, 287 (2022) (citing the same). Permitting the merger statutes to constitute a legal work-around these statutes is antithetical to these stated intentions. *See id.*

Electronically Filed - BOONE - January 20, 2023 - 05:36 PM

Defendants next contend that Plaintiffs' fraudulent transfer claims fail because Plaintiffs fail to "allege with specificity facts, actions or evidence that the 2022 Corporate Restructuring was intentionally fraudulent." MTD ¶ 62. To support this contention, Defendants cite *Jennings v. SSM Health Care St. Louis*, 355 S.W.3d 526, 537 (Mo. App. E.D. 2011), but that case, which does not address MUFTA claims at all, involved a plaintiff who *only* set forth allegations that mirrored elements of fraudulent misrepresentation (the cause of action at issue). Here, while Plaintiffs do, of course, allege the elemental badges of fraud, Plaintiffs do not *only* "merely repeat many of the Missouri 'badges of fraud,' verbatim with no supporting allegations." MTD ¶ 62. This claim defies logic in light of the wealth of specific factual allegations on the various badges of fraud that are present in this case. Mo. Rev. Stat. § 428.024.2 (listing the badges of fraud); Am. Pet. ¶ 60 (alleging facts establishing Corizon Health transferred its assets to an insider); ¶¶ 80, 85 (explaining Plaintiffs threatened Corizon Health with suit before the restructuring); ¶ 61 (explaining Corizon Health transferred substantially all of its assets); ¶¶ 69-70 (alleging Corizon Health concealed the restructuring from Plaintiffs); ¶¶ 39-45, 62, 79 (alleging facts establishing Corizon Health was insolvent or became insolvent as a result of the transfer). In sum, Plaintiffs allege over twenty pages of factual allegations across nearly one hundred paragraphs that detail with specificity Defendants restructuring scheme and its intended consequences. In fact, Defendants' Motion concedes Plaintiffs pled the restructuring "with particularity." MTD ¶ 63.

Defendants, instead, attack only two of many badges of fraud Plaintiffs allege, claiming Plaintiffs do not allege facts supporting its contention that Corizon Health is insolvent, or that any party concealed the Divisional Merger (MTD at 26-27). But that is not true. *See, e.g.*, Am. Pet. ¶¶ 39-45; 79 (establishing Corizon Health failed to pay outstanding debts to Plaintiffs as

Electronically Filed - BOONE - January 20, 2023 - 05:36 PM

they became due); Mo. Rev. Stat. § 428.014 (explaining courts presume a debtor is insolvent under Missouri law if the debtor is not paying its debts as they become due); *see, e.g.*, Am. Pet. ¶¶ 56, 60 (explaining the restructuring strategy was unbeknownst to Plaintiffs);[9] *Allenspach-Boller v. United Cmty. Bank*, 2021 WL 1738884, at *4 (W.D. Mo. May 3, 2021) (finding the settling parties concealed a transfer from the bank when the settling parties agreed to pay their, "debt to [the bank] in the settlement agreement with [third-party] commercial insurer," and the settling parties "did not tell [the bank] that they had received the settlement"). In any case, these facts are merely factors to consider, and even if not pleaded, would not support dismissing Plaintiffs' MUFTA claims. *See, e.g., Higgins v. Ferrari*, 474 S.W.3d 630, 636 (Mo. App. W.D. 2015) (explaining the list enumerated in Section 428.024.2 is a set of statutory "factors" that may be considered in determining actual intent).

That argument failing, Defendants pivot to claiming that Plaintiffs fail to state a claim for fraudulent transfer because the divisional merger "was a lawful exercise under the TBOC." MTD ¶ 63. Even if Defendants followed the TBOC in their technical execution of the restructuring, the TBOC does not provide Defendants carte blanche to use a restructuring to fraudulently frustrate its creditors. Indeed, the TBOC expressly states that companies may not use the TBOC to "abridge any right or rights of any creditor under existing laws," including MUFTA. *See* Tex. Bus. Orgs. Code Ann. § 10.901; Pls.' Mot. For Prelim. Injunction Section I p. 41. In short, technical compliance with statutory provisions for merging and dividing companies does not provide cover for the otherwise fraudulent transfer of assets to frustrate creditors.

Citing no case law, Defendants next argue Plaintiffs "have no basis to claim that the transaction lacked a reasonably equivalent value." MTD ¶ 64. MUFTA does not specifically

---

[9] *See also Blue Cross Blue Shield of Michigan v. Corizon Health Inc.*, Case No. 22-cv-11598-MAG-EAS, Doc. 11 (E.D. MI Nov. 22, 2022) (Blue Cross Blue Shield's motion for summary judgment alleging Corizon Health stopped paying amounts owed under contract starting in September 2021 and now owes over three million dollars).

Electronically Filed - BOONE - January 20, 2023 - 05:36 PM

define "reasonably equivalent value;" instead, whether reasonably equivalent value has been received by the debtor is a fact intensive inquiry that looks to the substance of the transaction. *Higgins v. Ferrari*, 474 S.W.3d 630, 640 (Mo. App. W.D. 2015). In light of the fact-intensive nature of this inquiry, Defendants cite to a number of "facts" that are not pled in Plaintiffs' Petition to argue the restructuring "involved reasonably equivalent value," including that "in exchange for certain assets being vested in CHS TX, CHS TX assumed nearly $100 million in secured debt, leaving Corizon Health with an enhanced ability to pay unsecured creditors," and the restructuring "allocated $1 million in cash to Corizon Health, and provided up to $15 million for unsecured creditors of the Company, $4 million of which was specifically allocated to Corizon Health's creditors." MTD ¶ 64. Because these disputed issues do not appear on the face of Plaintiffs' Amended Petition, Defendants' argument fails.  Accordingly, Plaintiffs have adequately stated claims for actual and constructive fraud under MUFTA.

### III.    Plaintiffs Plausibly Plead Successor Liability.

As stated in Plaintiffs' Motion for Preliminary Injunction Section II p. 45-54, and incorporated by reference herein, Missouri law applies to the determination of successor liability. Under Missouri law, Plaintiffs have sufficiently pled successor liability for both YesCare and CHS TX. Defendants, who focus their successor liability arguments solely on the application of Texas law, do not argue otherwise. Plaintiffs' successor liability theories provide a plausible basis for, among other things, YesCare and CHS TX's liability for Plaintiffs' breach of contract claim (Count I) and Plaintiffs' breach of covenant of good faith and fair dealing claim (Count II), and Defendants cite no case law establishing that YesCare and CHS TX must be technical parties to the underlying Agreement between Plaintiffs and Corizon Health for such liability to attach. *See* MTD at Section II. Thus, Defendants' Motion should be denied on this basis as well.

Electronically Filed - BOONE - January 20, 2023 - 05:36 PM

IV.    **Plaintiffs Plausibly Plead Common Law Fraud.**

Missouri law provides that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Mo. Sup. Ct. R. 55.15. The plaintiff need not plead every circumstance of the fraud, but must particularly describe the essential elements of fraud to present a justiciable claim. *Hanrahan v. Nashua Corp.*, 752 S.W.2d 878, 882 (Mo. App. E.D. 1988); *Wion v. Carl I. Brown & Co.*, 808 S.W.2d 950, 953 (Mo. App. W.D. 1991). The elements of fraud include "a representation; that is false; that is material; the speaker's knowledge of its falsity or ignorance of its truth; the speaker's intent it be acted on; the hearer's ignorance of the falsity of the representation; the hearer's reliance; the hearer's right to rely on it; and injury." *Heberer v. Shell Oil Co.*, 744 S.W.2d 441, 443 (Mo. banc 1988). An action for fraud may also be based on a party's silence in the face of a legal duty to disclose certain information. *Hess v. Chase Manhattan Bank*, 220 S.W.3d 758, 765 (Mo. banc 2007). In effect, silence in the face of that legal duty to speak amounts to a representation. *Id.* Such a duty to speak arises where one has superior knowledge of information that is not reasonably available to the other party by ordinary diligence. *Id.*

Defendants argue Plaintiffs fail to state a claim for common law fraud because Plaintiffs did not sufficiently allege "a representation," claiming "Corizon Health did not make any representations that can support an action for fraud." MTD at p. 24. Defendants also claim that Plaintiffs' common law fraud claim fails because "they did not plead with the requisite particularity." MTD p. 25. But Plaintiffs did not, as Defendants claim, "merely restate[] the elements under common law fraud." MTD p. 25. Rather, Plaintiffs' Amended Petition contains myriad factual allegations establishing Corizon Health board's scheme to fraudulently and silently transfer its assets to YesCare and CHS TX while keeping its creditors at bay using false assurances and concealment of the restructuring, including:

Electronically Filed - BOONE - January 20, 2023 - 05:36 PM

- "Corizon Health repeatedly provided assurances to Plaintiffs that it intended to perform under the Agreement and pay the amounts owed" Am. Pet. ¶ 75;

- "At no point did Corizon Health inform Plaintiffs it was 'restructuring'" and "At no point did Corizon Health inform Plaintiffs it was changing its name" *Id.* at ¶¶ 69-70;

- "Instead, Corizon Health continued and continues to hold itself out to Plaintiffs as 'Corizon Health, Inc,' even in public filings in this case" *Id.* at ¶ 71;

- "Unbeknownst to Plaintiffs, and while simultaneously representing its intention to pay Plaintiffs the amounts owed, Corizon Health enacted its restructuring plan in the spring of 2022" *Id.* at ¶ 60;

- "After the termination of the Agreement but before the restructuring, and in pursuit of the conspiracy, Corizon Health knowingly and falsely represented to Plaintiffs that Corizon Health intended to pay Plaintiffs the amounts due and owing under the Agreement," *Id.* at ¶ 237; and

- "In the midst of Defendants' spring 2022 restructuring scheme, Corizon Health intentionally told vendors, like Plaintiffs, to 'wait 30 days for clean up' of outstanding payments to delay vendors from taking any action against it while it restructured in an attempt to make Corizon Health's assets judgment proof," *Id.* at ¶ 238;

- "Corizon Health's repeated assurances were intended to and did induce Plaintiffs to continue to perform under the Agreement through the fall of 2021." *Id.* at ¶ 79;

- "Plaintiffs reliance on Corizon Health's repeated assurances caused Plaintiffs to incur over $12,000,000.00 in unpaid services to Corizon Health during the height of the COVID-19 pandemic." *Id.* at ¶ 79.

These, and the wealth of other facts included in Plaintiffs' fifty-page petition, establish Plaintiffs' fraud claims with particularity, and Defendants cannot reasonably claim they lack notice of the specific misconduct Plaintiffs are alleging against them. *See, e.g., Brown v. Adtalem Glob. Educ., Inc.*, 421 F. Supp. 3d 825, 834 (W.D. Mo. 2019) (finding the plaintiff sufficiently alleged a fraudulent misrepresentation claim with the requisite particularity where the plaintiff alleged the content of the representations he heard, who made them, where and how they were

Electronically Filed - BOONE - January 20, 2023 - 05:36 PM

made, and the approximate dates they were made, explaining such allegations "put Defendants on notice of the specific misconduct alleged against them"); *Lemery v. Duroso*, 2009 WL 1176269, at *4 (E.D. Mo. Apr. 30, 2009) (finding the plaintiffs sufficiently alleged fraud claim where the plaintiffs alleged the party making the representation, the nature of the representation, the defendant's superior knowledge, and a reasonable time frame in which the representations occurred, finding these allegations were "specific enough to enable Defendant to construct an appropriate response").

And although Defendants argue that a promise alone may not be actionable fraud, Plaintiffs' fraud claims do not hinge on a mere unfulfilled promise to pay. Rather, Plaintiffs' fraud claims relate to Corizon Health intentionally misrepresenting that it intended to pay Plaintiffs the amounts owed under the Agreement when, at the time such statements were made, it had no such intention; instead, Corizon Health made such statements in tandem with its concealment of the simultaneous restructuring, and it did so to strip itself of its assets before Plaintiffs could recover against it. In short, Plaintiffs' well-pleaded facts plausibly establish that Corizon Health's representations regarding its intent to pay were false when made, which is actionable fraud. *See Yerington v. Riss*, 374 S.W.2d 52, 58 (Mo. 1964) (explaining "[a] false statement of a present purpose may be a misstatement of fact," and "concealment of an existing fact may amount to actionable fraud, the same as an actionable misrepresentation of fact"). Consequently, Defendants' Motion to Dismiss fails for this reason, too.

## V.     Plaintiffs Plausibly Plead Conspiracy.

To establish a civil conspiracy under Missouri law, plaintiff must prove (1) an agreement or understanding; (2) between two or more people; (3) to do an unlawful act or to do a lawful act by unlawful means. *Rehab Care Grp. E., Inc. v. Stratford Health Care Properties, LLC*, 2016 WL 11469771, at *4 (W.D. Mo. Feb. 8, 2016). Missouri law recognizes civil conspiracy claim

Electronically Filed - BOONE - January 20, 2023 - 05:36 PM

for an underlying fraudulent transfer against non-debtors. *Id.* at \*7 (citing *Fischer v. Brancato*, 147 S.W.3d 794, 800-01 (Mo. App. E.D. 2004)).

Defendants argue the conspiracy claim fails because "at the time of the alleged tortious conduct" "CHS TX and YesCare either did not exist, or were not in operation." MTD ¶ 8. But YesCare and CHS TX were indeed in operation at the time of the restructuring scheme and were controlled by the same individuals that constituted Corizon Health's board. Am. Pet. ¶ 60(a) (explaining Sara Tirschwell incorporated YesCare on January 31, 2022); ¶ 60(d) (explaining YesCare purchased CHS TX on the date it was formed, May 3, 2022). Further, YesCare and CHS TX were plainly necessary players in the conspiracy, as the recipients of Corizon Health's assets with full knowledge of the conspiracy. *Id.* at ¶ 61 (explaining CHS TX absorbed substantially all of Corizon Health's assets); *see, e.g., Rehab Care Grp.*, 2016 WL 11469771, at \*4 (finding the plaintiffs sufficiently pled knowledge and intent for conspiracy to commit fraudulent transfer where at the time the conspirator assisted with conveying the property, he knew that the primary defendant was indebted to the plaintiffs and planned to continue to receiving goods and services from the plaintiffs without paying invoices; where the conspirator knew that as a result of the transfer, the primary defendant would become insolvent; where the conspirator intended that as a result of the transfer, the primary defendant's assets would be shielded from the plaintiffs as creditors and structured the transfer in a way such that the primary defendant received no monetary compensation for the transfer).[10]

---

[10] The cases cited by Defendants on this point are inapposite. *Jones v. Shooshan*, 855 F. Supp. 2d 594, 600 (E.D. Va. 2012) (involving defendant companies that "were not in existence until years after" the alleged torts); *Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*, No. 11-CV-02861-SC, 2013 WL 2386635, at \*5 (N.D. Cal. May 30, 2013) (holding court erred in holding company jointly and severally likable for acts committed for a conspiracy starting in 2000 when the company was not incorporated until 2008; distinguishing a case in which an alleged conspirator joined the conspiracy within a few hours of an underlying crime, with full knowledge of the prior acts of his coconspirators, and actively participated in the overall purpose to convert all of the stolen property to their use and benefit).

Electronically Filed - BOONE - January 20, 2023 - 05:36 PM

Here, the conspiracy was ongoing, with the full participation of YesCare (incorporated and managed by Tirschwell since January 2022) and CHS TX (incorporated and managed by Tirschwell since May 2022). These facts establish that, at the time of their incorporation, and with full knowledge of the prior acts of its coconspirators, YesCare and CHS TX actively participated in the overall purpose of the conspiracy, through the same actors that had initiated the conspiracy in the first place. Thus, because Plaintiffs have plausibly pled facts supporting their conspiracy claim, Defendants' motion to dismiss should be denied.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request the Court deny Defendants' Motion to Dismiss and grant any and all relief as the Court deems just and proper.

Electronically Filed - BOONE - January 20, 2023 - 05:36 PM

Dated: January 20, 2023

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

 */s/ Patrick J. Stueve*
Patrick J. Stueve MO Bar # 37682
Ethan M. Lange MO Bar # 67857
Jordan A. Kane MO Bar # 71028
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
816-714-7100 (p)
816-714-7101 (f)
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

**COUNSEL FOR PLAINTIFFS THE
CURATORS OF THE UNIVERSITY OF
MISSOURI AND CAPITAL REGION
MEDICAL CENTER**

Electronically Filed - BOONE - January 23, 2023 - 11:56 AM

**IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI**

|  |  |  |
|---|---|---|
| **THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER,** | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 22BA-CV01701-01 |
| v. | ) | |
| | ) | Division 4 |
| **TEHUM CARE SERVICES, INC. d/b/a CORIZON HEALTH, INC.,** | ) ) | |
| | ) | |
| **CHS TX, Inc.,** | ) | |
| | ) | |
| **and YESCARE CORP.,** | ) | |
| | ) | |
| Defendants. | ) | |

**CHS TX, INC. AND YESCARE CORP.'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Electronically Filed - BOONE - January 23, 2023 - 11:56 AM

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

PRELIMINARY STATEMENT ...............................................................................................1

BACKGROUND ....................................................................................................................3

I.      The 2022 Corporate Restructuring......................................................................3

II.     YesCare's Current Operations ............................................................................8

LEGAL STANDARD............................................................................................................10

ARGUMENT .......................................................................................................................11

I.      The Court Cannot Grant the Motion Because It Lacks Personal Jurisdiction over
        CHS TX and YesCare .......................................................................................11

II.     Plaintiffs Have Failed to Meet Their Burden for Injunctive Relief ..................13

        A.      Plaintiffs Have Not Demonstrated a Probability of Success on the Merits ..........14

                1.      Plaintiffs Have Not Demonstrated Likelihood of Success on the
                        Merits of Their Fraudulent Transfer Claims................................14
                2.      Plaintiffs Have Not Demonstrated Likelihood of Success on the
                        Merits for Their Successor Liability Claims................................18

        B.      Plaintiffs Have Failed to Show Irreparable Harm..................................22

        C.      Issuing the Injunction Against YesCare Would Harm YesCare's Patients,
                Business Interests, Clients and All Other Contingent Litigation Claimants..........24

        D.      The Public Interest Disfavors an Injunction ......................................26

CONCLUSION....................................................................................................................27

Electronically Filed - BOONE - January 23, 2023 - 11:56 AM

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*1400 FM 1417 LLC v. CertainTeed Corp.*, No. 4:21-cv-00847, 2022 U.S. Dist. LEXIS 55548 (E.D. Tex. Mar. 28, 2022) ................................................................................................. 16

*A.O.A. v. Rennert*, 350 F. Supp. 3d 818 (E.D. Mo. 2018) ............................................... 20

*Alexander & Alexander, Inc. v. Koelz*, 722 S.W.2d 311 (Mo. App. E.D. 1986) ................ 20

*BancorpSouth Bank v. Hall,* No. 6:10-CV-03390-DGK, 2011 U.S. Dist. LEXIS 12012 (W.D. Miss. Feb. 7, 2021) ........................................................................................... 24, 27

*C.D. Acquisition Holdings, Inc. v. Meinershagen,* No. 05cv1719, 2007 U.S. Dist. LEXIS 4342 (W.D. Pa. Jan. 22, 2007) ......................................................................................... 12

*Calvert v. Paniagua*, No. 2:17CV2 HEA, 2018 U.S. Dist. LEXIS 77279 (E.D. Mo. May 8, 2018) ............................................................................................................................. 26

*Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41 (2nd Cir. 2003) ................................ 22

*Citimortgage, Inc. v. First Preference Mortg. Corp.*, No. 4:06CV01296 ERW, 2007 U.S. Dist. LEXIS 66490 (E.D. Mo. Sept. 7, 2007) .......................................................... 11, 12

*CitiMortgage, Inc. v. Just Mort'g., Inc.,* No. 4:09 CV 1909 DDN,  2013 U.S. Dist. LEXIS 174962 (E.D. Mo. Dec. 13, 2013) .................................................................................... 23

*Community Title Co. v. Roosevelt Federal Savings and Loan Association*, 670 S.W.2d 895 (Mo. App. 1984) ........................................................................................................... 11

*Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109 (8th Cir. 1981) .......... 11, 26

*Edwards v. Black Twig Mktg. & Communs. LLC*, 418 S.W.3d 512 (Mo. App. E.D. 2013) ... 20, 22

*Enslein as Tr. for Xurex, Inc. v. Di Mase*, No. 16-09020-CV-W-ODS, 2019 U.S. Dist. LEXIS 100973 (W.D. Mo. June 17, 2019) ...................................................................... 19, 20

*Farm Bureau Town and Country Ins. Co. of Missouri v. Angoff*, 909 S.W.2d 348 (Mo. banc 1995) .............................................................................................................................. 11

*FiberTower Network Servs. Corp. v. FCC (In re FiberTower Network Servs. Corp.)*, 482 B.R. 169 (Bankr. N.D. Tex. 2012) ....................................................................................... 26

*Gelco Corp. v. Coniston Partners*, 811 F.2d 414 (8th Cir. 1987) .................................. 23

*Green v. Montgomery Ward & Co.*, 775 S.W.2d 162 (Mo. App. W.D. 1989) .................. 22

Electronically Filed - BOONE - January 23, 2023 - 11:56 AM

*Greenwood v. Schnake*, 396 S.W.2d 723 (Mo. banc 1965) ............................................................1

*Guidry v. Seven Trails W., LLC*, No. 4:12CV1652 FRB, 2013 U.S. Dist. LEXIS 64240 (E.D. Mo. May 6, 2013)................................................................................................................12

*Harman v. First Am. Bank of Md. (In re Jeffrey Bigelow Design Grp., Inc.),* 127 B.R. 580 (D. Md. 1991), *aff'd*, 956 F.2d 479 (4th Cir. 1992)...................................................................17

*Higgins v. Ferrari*, 474 S.W.3d 630 (Mo. App. W.D. 2015) .......................................................18

*Hunter v. Hamilton County Bd. of Elections*, 635 F.3d 219 (6th Cir. 2011) ...............................26

*In re 1701 Commerce, LLC*, 511 B.R. 812 (Bankr. N.D. Tex. 2014)...........................................17

*In re Teknek, LLC*, 343 B.R. 850 (Bankr. N.D. Ill. 2006) ...........................................................23

*Kelly v. Corizon Health Inc., et al*, Case No. 2:22-cv-10589, 2022 U.S. Dist. LEXIS 198725 (E.D. Mich. Nov. 1, 2022) ................................................................................................20, 21

*Koch Supplies, Inc. v. Charles Needham Indus.*, No. 86-1330-CV-W-9-6, 1990 U.S. Dist. LEXIS 15707 (W.D. Mo. Nov. 14, 1990)...............................................................................13

*Konopasek v. Konopasek*, No. SD37388, 2022 Mo. App. LEXIS 575 (Mo. App. S.D. Sept. 13, 2022) ...................................................................................................................................16

*LaBarge v. Vierkant (In re Vierkant)*, 240 B.R. 317 (8th Cir. 1999)...........................................27

*Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Management, Inc.*, 519 F.2d 634 (8th Cir. 1975) .............................................................................................................................13

*LearSchmidt Inv. Grp., LLC v. AB-Alpine SPE, LLC*, No. 2:19-CV-04053-NKL, 2019 WL 3779521 (W.D. Mo. Aug. 12, 2019)...................................................................................13

*Leitner v. Sadhana Temple of N.Y., Inc.*, No. CV 13-07902 MMM (Ex), 2014 U.S. Dist. LEXIS 198479 (C.D. Cal. Oct. 17, 2014) .......................................................................................21

*McDonald v. City of Brentwood*, 66 S.W.3d 46 (Mo. App. E.D. 2001).......................................11

*Montgomery Bank, N.A. v. First Horizon Home Loan Corp.*, No. 4:09CV01334 ERW, 2010 U.S. Dist. LEXIS 40600 (E.D. Mo. Apr. 26, 2010)...............................................................19, 21

*Munaf v. Green,* 553 U.S. 674 (2008).........................................................................................11

*Nat'l Green Gas, L.L.C. v. Estrategy, Inc.*, No. 4:18-CV-00285-BCW, 2019 U.S. Dist. LEXIS 244680 (W.D. Mo. June 27, 2019) ......................................................................................12

*Orrick Farm Serv. v. Coats*, 2021 U.S. Dist. LEXIS 78920 (W.D. Miss. Apr. 23, 2021) ............26

*Osborn v. Prime Tanning Corp.,* No. 09-06082-CV-SJ-GAF, 2011 U.S. Dist. LEXIS 165374 (W.D. Mo. Apr. 29, 2011) ...................................................................................................20

Electronically Filed - BOONE - January 23, 2023 - 11:56 AM

*Pacific Intermountain Express Co. v. Best Truck Lines, Inc.*, 518 S.W.2d 469 (Mo. App. W.D. 1974) ...................................................................................................19

*Payne v. Sec. Sav. & Loan Ass'n, F.A.*, 924 F.2d 109 (7th Cir. 1991) ........................................20

*Porretti v. Dzurenda*, 11 F.4th 1037 (9th Cir. 2021) ...................................................................26

*Proby v. Russell*, No. 4:14-CV-1620-JAR, 2015 U.S. Dist. LEXIS 18972 (E.D. Mo. Feb. 18, 2015) ...................................................................................................26

*Riegel v. Jungerman*, 597 S.W.3d 695 (Mo. App. W.D. 2019)....................................................24

*Sampson v. Murray*, 415 U.S. 61 (1974) ....................................................................................23

*Shaffer v. Health Acquisition Co., LLC,* No. 4:18-CV-00601-NKL, 2019 U.S. Dist. LEXIS 34417 (March 5, 2019) ...................................................................................................20

*Smulls v. State*, 71 S.W.3d 138 (Mo. Banc. 2002)........................................................................3

*Soviet Pan Am Travel Effort v. Travel Comm., Inc.*, 756 F. Supp. 126 (S.D.N.Y. 1991) ............21

*State ex rel. Director of Revenue v. Gabbert*, 925 S.W.2d 838 (Mo. 1996)...........................11, 14

*Stewart v. GeoStar Corp.*, No. 07-13675-BC, 2008 U.S. Dist. LEXIS 67964 (E.D. Mich. Sep. 5, 2008) ...................................................................................................21

*Stolzenburg v. Biewer Lumber, LLC,* 2016 U.S. Dist. LEXIS 83564 (E.D. Mo. June 28, 2016)..13

*Watkins Inc. v. Lewis*, 346 F.3d 841 (8th Cir. 2003) ...................................................................23

*Wildhawk Invs., LLC v. Brava I.P., LLC*, 27 F.4th 587 (8th Cir. 2022) ..................................23, 24

## STATUTES AND RULES

Fla. Stat. § 617.1405 (2022)............................................................................................................8

Missouri Rule of Civil Procedure 55.26 ..........................................................................................1

Mo. Sup. Ct. R. 55.27(a)..................................................................................................................1

Restatement (Second) of Conflict of Laws § 302 ..........................................................................16

RSMo 2022 § 428.024 ...................................................................................................................18

Tex. Bus. Orgs. Code § 10.008(a) ..................................................................................16, 17, 19, 20

Electronically Filed - BOONE - January 23, 2023 - 11:56 AM

Pursuant to Rule 55.26 of the Missouri Rules of Civil Procedure, CHS TX, Inc. ("CHS TX") and YesCare Corp. ("YesCare Corp." and, together with CHS TX, "YesCare") respectfully state the following Opposition to Plaintiffs' Motion for Preliminary Injunction (the "Opposition"). For the reasons discussed below, the Court should deny Plaintiffs' Motion for Preliminary Injunction (the "Mot.").[1]

## PRELIMINARY STATEMENT

1.     Plaintiffs are contingent, unliquidated litigation claimants who seek to freeze more than $11 million of YesCare's liquid assets so that those funds will be available solely to Plaintiffs in the event that they someday prevail in this litigation.  The relief that Plaintiffs seek, if granted, would be irreparably harmful to YesCare—which needs that money to run its business—YesCare's clients—nearly two dozen state and local governments relying on YesCare to provide Constitutionally-mandated healthcare services for over 38,000 inmates in 11 states—and the hundreds of other litigants who Plaintiffs acknowledge exist and are pursuing the same funds.

2.     Straining to find a legal basis to arrogate such preferential (and prejudicial) treatment to themselves, Plaintiffs advance a misleading and hearsay-based narrative in which Corizon Health, Inc.'s ("Corizon") publicly disclosed, lawful reorganization under Texas law was actually a secret, illicit attempt to dodge Plaintiffs' particular claims.  That narrative is wrong.  Full stop.  Each facet of Corizon's reorganization complied with applicable Texas law, and Plaintiffs do not (and cannot) argue otherwise.  Moreover, Plaintiffs' own facts demonstrate that Corizon's

---

[1] In accordance with Mo. Sup. Ct. R. 55.27(a), CHS TX and YesCare raised their objection based on lack of personal jurisdiction in their first responsive pleading, *CHS TX, Inc. and YesCare Corp.'s Suggestions in Support of Their Motion to Dismiss Plaintiffs' Amended Petition* ("Motion to Dismiss").  *See* Mo. Sup. Ct. R. 55.27(a)(1).  Having done so, they are free to contest Plaintiffs' Motion on the merits without effecting a waiver of their personal jurisdiction objections.  *See Greenwood v. Schnake*, 396 S.W.2d 723, 726 (Mo. banc 1965) ("Having once hoisted the flag at the beginning of the journey a litigant over whose person a court lacks jurisdiction need not continuously wave the flag at every way station along the route.")

Electronically Filed - BOONE - January 23, 2023 - 11:56 AM

reorganization was not just public, but much publicized. Additionally, as discussed below and in the accompanying affidavit of YesCare CFO Jeffrey Sholey (the "Sholey Affidavit"), the timing of the completion of the restructuring had nothing to do with Plaintiffs, but was instead driven by the administrative steps that were precursors to the restructuring and a processing backlog at the Texas Secretary of State's office. Indeed, although Plaintiffs refuse to acknowledge it, Corizon's restructuring was conducted not to secrete assets, but to ensure that value was safeguarded for unsecured creditors, like Plaintiffs, who would have likely faced zero recovery on their claims absent the restructuring.

3.        This Court should deny the Motion for at least two reasons:

4.        **First**, this Court lacks personal jurisdiction over both CHS TX and YesCare Corp., making Plaintiffs' request for a preliminary injunction a nullity. The cases on which Plaintiffs rely are inapt, as they involve judgment creditors (which Plaintiffs are not) and defendants who have purposefully targeted their actions at the state in which the plaintiff has brought suit, which is not the case here.

5.        **Second**, Plaintiffs do not establish any of the required elements for preliminary injunctive relief. Plaintiffs cannot demonstrate likelihood of success on the merits for the reasons YesCare identified in the Motion to Dismiss ("Mot. To Dismiss").[2] Moreover, Plaintiffs fail to explain why this Court should disregard the longstanding bar against injunctive relief for solely monetary damages, which is an adequate remedy at law. Additionally, as discussed in the Sholey Affidavit, the Court's appointment of a receiver or entry of an order freezing the more than $11 million that Plaintiffs claim against YesCare would cripple its cashflow, require YesCare to lay off thousands of employees and contract healthcare professionals, cost YesCare future business,

---

[2] The facts and arguments in the Motion to Dismiss are incorporated herein by reference.

Electronically Filed - BOONE - January 23, 2023 - 11:56 AM

and place at risk the ability of YesCare to deliver Constitutionally-required healthcare to tens of thousands of inmates.  It would also improperly prioritize Plaintiffs' unproven claims over the other contingent, unliquidated litigation claimants who Plaintiffs acknowledge exist.  The public interest would not be served by this outcome.

## BACKGROUND[3]

### I.    The 2022 Corporate Restructuring

6.    As explained in the Motion to Dismiss, Plaintiffs' underlying litigation stems from a contract between correctional healthcare provider Corizon and the Missouri Department of Corrections ("MDOC") to provide healthcare to prison inmates.[4]  On November 1, 2016, Corizon's affiliate, Corizon, LLC, signed a Hospital Services Agreement (the "Agreement") under which Plaintiffs would provide healthcare treatment to MDOC inmates, and Corizon, LLC (doing business as "Corizon Health") would reimburse Plaintiffs upon receipt of timely submitted claims.[5]  This Agreement, subject to several minor Amendments, remained in effect through November of 2021.[6]  Plaintiffs allege that Corizon did not reimburse them for certain services rendered pursuant to the Agreement.[7]

---

[3] The Motion contains extensive hearsay, including from certain of Corizon's competitors, regarding Corizon's directors, officers, and business operations.  Most of these allegations are irrelevant.  More importantly, they are all inadmissible.  *See Smulls v. State*, 71 S.W.3d 138 (Mo. Banc. 2002) (upholding exclusion of newspaper article as hearsay where the proponent cited it for the truth of its reporting).  YesCare therefore will not engage in a point-by-point rebuttal of the baseless allegations contained in the Motion.  YesCare disputes those allegations and reserves all rights.

[4] *See* Mot. to Dismiss at 3.

[5] *Id.*  The term "Corizon Health" in that Agreement refers solely to "Corizon, LLC," and Plaintiffs' contract is solely with Corizon, LLC.  At the time the Agreement was entered into, Corizon, Health, Inc. had three related companies: Corizon, LLC; Valitás Health Services, Inc. ("Valitás"); and Corizon Health of New Jersey, LLC (collectively, "Corizon" or the "Company").  Any use of the term "Corizon" does not waive the argument that the Agreement was solely with Corizon, LLC, and that Corizon, LLC was solely liable to Plaintiffs for any contractual claims.

[6] Mot. to Dismiss at 5.

[7] *Id.*

Electronically Filed - BOONE - January 23, 2023 - 11:56 AM

7.      As Plaintiffs acknowledge (*see* Mot. at 6), at the end of 2021, Corizon's financial situation became increasingly dire.[8]  The Company was deeply insolvent and heading towards bankruptcy as a result of mounting litigation expenses relating to professional liability claims asserted by numerous incarcerated individuals.[9]  Plaintiffs' own documents show that Corizon faced several hundred lawsuits at the time of the 2022 Corporate Restructuring (defined below), most of them concerning inmates' healthcare.[10]  For a company in the highly regulated correctional healthcare industry, bankruptcy would have likely meant liquidation of the company, interruption of the necessary healthcare services for inmates in correctional facilities across the country during the pandemic, a recovery of pennies on the dollar for the lenders under Corizon's first-priority secured debt, and *no* recovery for unsecured creditors, such as Plaintiffs.[11]

8.      Corizon determined that the fairest and most value-maximizing path forward, which would also maximize the prospects of the Company's former business as a going concern, was to engage in a divisional merger under the Texas Business Organizations Code (the "TBOC").[12]  To ensure a divisional merger was a viable and equitable path forward, on February 8, 2022, Corizon engaged independent financial analysis firm FTI Capital Advisors, LLC ("FTI") to render a fairness opinion on the proposed transaction.[13]  FTI determined that, under the proposed transaction, Corizon's unsecured creditors would have access to equal or greater value following

---

[8] *See* **Motion Ex. 4,** *Kelly v. Corizon Health Inc., et al*, Case No. 222-cv-10589, ECF No. 32, ECF p. 1.

[9] *Id.*

[10] *See* **Motion Ex. 28**, Agreement and Plan of Divisional Merger, YESCARE-CHS-0000203-369 at 334-347.

[11] *See* **Motion Ex. 4,** *Kelly v. Corizon Health Inc., et al*, Case No. 222-cv-10589, ECF No. 32, ECF p. 1.

[12] *Id.* at 2.

[13] **Motion Ex. 18**, Presentation to Corizon Health, Inc on Fairness Analysis Pertaining to Proposed Transaction, YESCARE-CHS-00000383 at 390.

Electronically Filed - BOONE - January 23, 2023 - 11:56 AM

the proposed divisional merger than in the absence of that merger.[14]  It based this opinion on several factors, including the availability of a $15 million funding agreement (the "Funding Agreement") from M2 LoanCo, LLC ("M2 LoanCo"), discussed below.[15]  FTI also noted that, if Corizon were forced into bankruptcy, the related expenses would consume an estimated $6 to $9 million that would otherwise be saved under the proposed transaction.[16]  Therefore, after taking into account the cost of a potential bankruptcy and the fact that nearly all of the Company's cash and other assets were encumbered by the first-priority security interests of the Company's secured creditors, FTI concluded that the assignment of the secured debt to YesCare and entry into the Funding Agreement rendered the 2022 Corporate Restructuring an equal or better chance for unsecured creditors to recover on their claims, and it deemed the then-proposed transaction fair to Corizon's unsecured creditors.[17]

9.    On February 25, 2022, Corizon began to prepare for the process of executing certain mergers under Texas law (the "2022 Corporate Restructuring") by signing Certificates of Conversion that, when filed, would convert Corizon Health and Valitás from Delaware corporations into Texas corporations.[18]  On April 4, 2022, however, these Certificates of Conversion were rejected because the entities were required to file franchise tax reports, resulting

---

[14] **Motion Ex. 18**, Presentation to Corizon Health, Inc on Fairness Analysis Pertaining to Proposed Transaction, YESCARE-CHS-00000383 at 399; **Ex. 23**, FTI Capital Advisor's Fairness Opinion, YESCARE-CHS-000018-24 at 023.

[15] **Motion Ex. 18**, Presentation to Corizon Health, Inc on Fairness Analysis Pertaining to Proposed Transaction, YESCARE-CHS-00000383 at 403.

[16] **Motion Ex. 18**, Presentation to Corizon Health, Inc on Fairness Analysis Pertaining to Proposed Transaction, YESCARE-CHS-00000383 at 402.

[17] **Motion Ex. 18**, Presentation to Corizon Health, Inc on Fairness Analysis Pertaining to Proposed Transaction, YESCARE-CHS-00000383 at 395, 399.

[18] **Motion Ex. 20**, Corizon Health, Inc. Certificate of Conversion; **Ex. 21**, Valitás Health Services, Inc. Certificate of Conversion.

Electronically Filed - BOONE - January 23, 2023 - 11:56 AM

in a two-month delay.[19]  Without citation or support, Plaintiffs speculate that this delay occurred because the entire Restructuring was choreographed around Plaintiffs' claims.  *See* Mot. at 7 ("Corizon Health did not file these documents for two months—until Plaintiffs threatened suit"). This self-serving narrative, which places Plaintiffs at the center of Corizon's restructuring, is baseless.  Although Corizon was prepared to consummate the 2022 Corporate Restructuring by late February—months before Plaintiffs' supposedly "threatened suit"—it was not commenced until April 28, 2022, when the entities were able to refile their Certificates of Conversion after the Texas Secretary of State accepted the correction and filing of updated franchise tax returns.[20]  Just a few days later, on May 2, 2022, Corizon executed and filed its Certificate of Combination Merger and Certificate of Divisional Merger.[21]

10.    As explained in the Motion to Dismiss, this 2022 Corporate Restructuring was effectuated through two merger transactions under the TBOC, which were executed and became effective between May 2, 2022 and May 5, 2022.[22]  First, Corizon converted to a Texas corporation and merged with Corizon, LLC, Valitás, and Corizon, N.J., with Corizon surviving the merger.[23] Second, Corizon completed a "Divisional Merger" whereby it split into two entities—Corizon and

---

[19] **Ex. 1**, Affidavit of Jeffrey Sholey ("Sholey Affidavit") ¶¶ 18-19.

[20] *Id.* ¶¶ 18-19.

[21] Plaintiffs' theory that the 2022 Corporate Restructuring was driven entirely by them—and not by any of the hundreds of other litigations they acknowledge exist—is not only counterfactual, but absurd.  The Motion describes in great detail the significant effort that went into structuring and consummating the 2022 Corporate Restructuring, including, among other things, an FTI fairness opinion, legal analyses, a "167-page" Agreement and Plan of Divisional Merger, and extensive communications with contractual counterparties.  Mot. at 7-11.  The notion that all of this work was performed and then held in abeyance until Plaintiffs threatened suit is a consummate example of confusing correlation with causality.

[22] Mot. to Dismiss at 5-7.

[23] *Id.* at 5-6.

Electronically Filed - BOONE - January 23, 2023 - 11:56 AM

CHS TX.[24]  After the Divisional Merger became effective, CHS TX was acquired by YesCare.

Corizon then changed its name to Tehum Care Services, Inc.[25]

11.    In accordance with Texas law, the Divisional Merger allocated all of Corizon's

assets and liabilities to either Corizon or CHS TX.  Relevant to this litigation, Corizon was

allocated and remained vested with all inactive and expired customer contracts (over 600 in total),

including the MDOC Contract, as well as all liabilities related to such contracts.[26]  In turn, Corizon

was released from its obligations on nearly $100 million of senior secured debt, which, prior to the

2022 Corporate Restructuring, had encumbered nearly all of the Company's assets and left little

or no value for unsecured creditors, like Plaintiffs.[27]

12.    Corizon was also allocated assets allowing it to satisfy the claims of its unsecured

creditors.  In addition to remaining vested with $1 million of cash, Corizon has the right to draw

on the $15 million Funding Agreement with M2 LoanCo, $11 million of which is earmarked for

creditors who held claims against Corizon, LLC prior to the merger.[28]  Corizon also retains the

right to make claims on any and all of the Company's medical malpractice, general liability, or

errors and omissions insurance policies for losses relating to or arising from the assets allocated to

it through the merger.[29]  As a result, *all* of Corizon's creditors, both secured and unsecured, have

---

[24] *Id.* at 6-7.

[25] *Id.* at 7.

[26] *Id.* at 7; **Motion Ex. 28**, Agreement and Plan of Divisional Merger, YESCARE-CHS-0000203-369 at 226-293.

[27] *See* **Motion Ex. 18**, Presentation to Corizon Health, Inc on Fairness Analysis Pertaining to Proposed Transaction, YESCARE-CHS-00000383 at 395 (showing $97.787 million in long-term debt); **Motion Ex. 28**, Agreement and Plan of Divisional Merger, YESCARE-CHS-0000203-369 at 326 (assigning senior secured debt to CHS TX).

[28] See **Motion Ex. 18**, Presentation to Corizon Health, Inc on Fairness Analysis Pertaining to Proposed Transaction, YESCARE-CHS-00000383 at 403.

[29] *See* **Motion Ex. 28**, Agreement and Plan of Divisional Merger, YESCARE-CHS-0000203-369 at 224-225.

Electronically Filed - BOONE - January 23, 2023 - 11:56 AM

an enhanced opportunity to recover on their claims outside of a value-destructive bankruptcy that would have destroyed any prospect of recoveries for unsecured creditors.

13.     Grasping for any reason to attack the 2022 Corporate Restructuring, Plaintiffs assert that M2 LoanCo's administrative dissolution under Florida law somehow absolves it of obligations under the Funding Agreement.  This arguments fails.  First, although it is true that, at the time Plaintiffs drafted the Motion, M2 LoanCo was *administratively* dissolved, that does not mean that it was actually dissolved—it continued to exist and retain its assets and liabilities, including its obligations under the Funding Agreement.  *See* Fla. Stat. § 617.1405 (2022) (administratively dissolved corporations may still collect their assets and discharge their liabilities).  Second, M2 LoanCo has taken steps to rectify its administrative status with the Florida Secretary of State, including filing its 2022 annual report, and has been reinstated.[30]

## II.    YesCare's Current Operations

14.     YesCare's current operations focus on providing medical care in correctional facilities operated by state and local governments in the United States.[31]  It provides this care to more than 38,000 people incarcerated in 51 institutions across 11 states, which includes buying medication, staffing service providers, and paying for healthcare services.[32]

15.     YesCare or its affiliates are party to a total of 20 healthcare services contracts in 11 states, with more pending.  In exchange for providing these healthcare services, they receive in excess of $300 million in revenue on an annual basis, which payments are paid monthly in arrears

---

[30] *See* Florida Department of State, M2 LoanCo, LLC (last visited Jan. 20, 2023), available at: https://search.sunbiz.org/Inquiry/CorporationSearch/SearchResultDetail?inquirytype=EntityName&directionType=Initial&searchNameOrder=M2LOANCO%20L200001642160&aggregateId=flal-l20000164216-57b2e6fa-10e2-4423-9166-b4aafd29b231&searchTerm=m2%20loanco&listNameOrder=M2LOANCO%20L200001642160.

[31] Sholey Affidavit at ¶ 7.

[32] *Id.* at ¶¶ 8, 13.

Electronically Filed - BOONE - January 23, 2023 - 11:56 AM

by such entities.  This monthly revenue goes to pay employee salaries and other operating expenses, including the claims of YesCare's creditors.[33]

16.    While YesCare's assets exceed the $11,174,465.50 Plaintiffs seek to freeze, neither CHS TX nor YesCare has over $11 million of cash on hand that is not already allocated to payroll and other expenses, such as off-site medical providers and staffing agencies, or to YesCare's other creditors.[34]  As a result, if the Court were to freeze over $11 million of YesCare's liquid assets, or if the Court otherwise blocks YesCare from transferring assets (and the Court should decline to do either), YesCare would not be able to meet payroll, fund operating expenses, or make necessary payments, negatively impacting its patients, clients, employees, and creditors.[35]

17.    The results would be devastating.  YesCare would be unable to pay for medication or the services of doctors and nurses to treat the incarcerated individuals under its care.  YesCare's clients, Sheriff's offices and state Departments of Correction, would be forced to scramble to find coverage on an emergency basis.  This sudden and needless emergency transition would place all 38,000 incarcerated individuals at risk, creating a gap in everything from daily medication to life-saving emergency treatment.[36]

18.    This result also has a constitutional dimension: each incarcerated individual possesses an Eighth Amendment right to adequate medical care, and that right would be compromised if YesCare were suddenly forced to halt its operations.  In addition to the human toll, this situation would expose YesCare—as well as, potentially, its state and local government clients (and the taxpayers funding them)—to massive potential liability.[37]

---

[33] *Id.* at ¶¶ 7-8.

[34] *Id.* at ¶¶ 8, 11.

[35] *Id.* at ¶¶ 13, 20.

[36] *Id.* at ¶¶ 13-14.

[37] *Id.* at ¶ 14.

Electronically Filed - BOONE - January 23, 2023 - 11:56 AM

19.     YesCare recently completed negotiation of a $1 billion contract with a State Department of Corrections.[38]  Even if the Court does not prohibit YesCare from making the transfers necessary to continue day-to-day operations, an order placing YesCare into receivership would endanger its ability to begin performance under this contract (which is scheduled to start the second quarter of this year), depriving YesCare of a $1 billion future revenue stream.[39]  It would also eviscerate YesCare's ability to win new business, as YesCare is currently bidding on a number of other business opportunities with possible revenue in excess of $1 billion.[40]

20.     These disruptions to YesCare's operations and ability to attract new business would likely force YesCare into bankruptcy.  Were that to occur, Plaintiffs—even if they secured a judgment against YesCare—would be relegated in priority of payment behind YesCare's secured creditors.  That is the precise result that Corizon sought to avoid through the 2022 Corporate Restructuring.  Because YesCare has secured debt in excess of $95 million, unsecured creditors—including unsecured creditors in Missouri—would likely receive nothing.[41]  Absent a Preliminary Injunction, however, YesCare is in a position to begin performing under the new State Department of Corrections contract and win other potential revenue streams, placing it on a firm financial footing to satisfy all of its creditor claims.[42]

## LEGAL STANDARD

21.     A preliminary injunction is an "extraordinary and drastic" remedy that is never awarded as of right.  *Munaf v. Green,* 553 U.S. 674, 689-90 (2008) (internal quotations omitted); *McDonald v. City of Brentwood*, 66 S.W.3d 46, 49 (Mo. App. E.D. 2001) ("[A]n injunction . . . is

---

[38] *Id.* at ¶ 15.

[39] *Id.* at ¶ 16.

[40] *Id.* at ¶¶ 14-16.

[41] *Id.* at ¶¶ 17, 19.

[42] *Id.* at ¶ 18.

Electronically Filed - BOONE - January 23, 2023 - 11:56 AM

an extraordinary and harsh remedy and should not be employed where there is an adequate remedy at law") (internal quotations omitted) (citing *Farm Bureau Town and Country Ins. Co. of Missouri v. Angoff*, 909 S.W.2d 348, 354 (Mo. banc 1995)).

22.     "When considering a motion for a preliminary injunction, a court should weigh the movant's probability of success on the merits, the threat of irreparable harm to the movant absent the injunction, the balance between this harm and the injury that the injunction's issuance would inflict on other interested parties, and the public interest." *State ex rel. Director of Revenue v. Gabbert*, 925 S.W.2d 838, 839 (Mo. 1996) (internal quotations omitted) (citing *Pottgen v. Missouri State High Sch. Activities Assoc*, 40 F.3d 926, 928 (8th Cir. 1994)); *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (*en banc*)); *Community Title Co. v. Roosevelt Federal Savings and Loan Association*, 670 S.W.2d 895, 900 (Mo. App. 1984) (detailing that an injunction should not issue "against great public interest.").

## ARGUMENT

**I.      The Court Cannot Grant the Motion Because It Lacks Personal Jurisdiction over CHS TX and YesCare**

23.     As noted in the Motion to Dismiss, all of Plaintiffs' underlying claims are against ***Corizon***, not CHS TX or YesCare Corp., and the jurisdictional contacts of Corizon may not be attributed to those separate corporate entities. *See* Mot. to Dismiss at 12. Plaintiffs' fraudulent transfer claims do not change this analysis: the law is clear that where, as here, the only contact between the defendant-transferee and the forum state is the claimed impact on an in-state creditor, personal jurisdiction over the transferee does not exist. *See Citimortgage, Inc. v. First Preference Mortg. Corp.*, No. 4:06CV01296 ERW, 2007 U.S. Dist. LEXIS 66490, at *1 (E.D. Mo. Sept. 7, 2007) (no jurisdiction in Missouri over Texas corporation that received allegedly fraudulent transfer from a Texas corporation, allegedly impacting Missouri creditor); *Guidry v. Seven Trails W., LLC*, No. 4:12CV1652 FRB, 2013 U.S. Dist. LEXIS 64240, at *10-11 (E.D. Mo. May 6, 2013)

Electronically Filed - BOONE - January 23, 2023 - 11:56 AM

(defendant-transferee not subject to personal jurisdiction in Missouri based on allegedly fraudulent transfer of monies related to sale of Missouri property, which impacted Missouri creditors).

24.     Plaintiffs attempt to side-step this precedent by citing *Nat'l Green Gas* to argue that Missouri courts may exercise personal jurisdiction over non-resident transferees "based on the effects felt by creditors in the creditors' home state."  Mot. at 53 (quoting *Nat'l Green Gas, L.L.C. v. Estrategy, Inc.*, No. 4:18-CV-00285-BCW, 2019 U.S. Dist. LEXIS 244680, at *14 (W.D. Mo. June 27, 2019)).  But *Nat'l Green Gas* does not support that proposition.  Rather, the court in that case found that personal jurisdiction existed for reasons beyond the "effects felt by creditors," including, among other things, that the entity effecting the fraudulent transfer had its principal place of business in Missouri.  *Id*. at *15; *see also id.* at *13 (finding that the court could exercise "specific personal jurisdiction over a non-resident transferee of an allegedly fraudulent transfer from a ***resident debtor***") (emphasis added).  That is not the case here, as neither Corizon nor CHS TX nor YesCare is a Missouri corporation or has any other connection to Missouri sufficient to support the Court's exercise of personal jurisdiction with respect to Plaintiffs' claims.

25.     *C.D. Acquisition Holdings, Inc. v. Meinershagen* is equally unavailing. No. 05cv1719, 2007 U.S. Dist. LEXIS 4342 (W.D. Pa. Jan. 22, 2007).  There, the plaintiff was a judgment creditor—meaning that, unlike Plaintiffs, it had already prevailed in the underlying litigation and was seeking to enforce a court-ordered judgment.  *Id*. at *14-15.  Moreover, the Court found that it had personal jurisdiction over the defendant-transferee because the series of alleged transactions were specifically aimed at the forum state.  *Id*.  That, too, is not the case here, as Corizon engaged in the 2022 Corporate Restructuring for reasons unrelated to Plaintiffs, and to

Electronically Filed - BOONE - January 23, 2023 - 11:56 AM

improve the value available to **all** of its creditors, the vast majority of whom reside outside of Missouri.[43]

26.    Plaintiffs have also failed to establish that personal jurisdiction over CHS TX or YesCare exists pursuant to alleged successor liability—because, as explained below and in the Motion to Dismiss, neither entity is a successor to Corizon.  *See* Section II.A.2, *infra*; Mot. to Dismiss at 19-23.  Moreover, even if this Court were to find successor liability (and it should not), Plaintiffs ignore that Missouri courts still require the alleged successor to "ha[ve] sufficient contacts with Missouri so as not to offend due process." *Koch Supplies, Inc. v. Charles Needham Indus.*, No. 86-1330-CV-W-9-6, 1990 U.S. Dist. LEXIS 15707, at *9 (W.D. Mo. Nov. 14, 1990) (determining successor corporation had sufficient contacts with Missouri where *the successor* also transacted significant business with the state of Missouri); *Stolzenburg v. Biewer Lumber, LLC,* 2016 U.S. Dist. LEXIS 83564, at *27 (E.D. Mo. June 28, 2016) (detailing that contacts were sufficient where *the successor* handled warranty claims at issue in the dispute).[44]  Neither CHS TX nor YesCare has sufficient contacts with Missouri to support personal jurisdiction.

## II.    Plaintiffs Have Failed to Meet Their Burden for Injunctive Relief

27.    Plaintiffs have failed to meet the high burden for an injunction: (a) they have not demonstrated any likelihood of success on the merits of either their fraudulent transfer or successor liability claims; (b) they have not demonstrated why they will suffer irreparable harm if they do not obtain an injunction—which they cannot demonstrate given that only money damages are at

---

[43] **Motion Ex. 28**, Agreement and Plan of Divisional Merger, YESCARE-CHS-0000203-369 at 226-293.

[44] Several other cases relied on by Plaintiffs are inapt as either jurisdiction was not contested as it is here, or plaintiffs argued veil-piercing rather than successor liability.  *See LearSchmidt Inv. Grp., LLC v. AB-Alpine SPE, LLC*, No. 2:19-CV-04053-NKL, 2019 WL 3779521, at *2 (W.D. Mo. Aug. 12, 2019) (finding jurisdiction proper where the successor company did not allege "that it is inconvenient for this matter to proceed in Missouri"); *Lakota Girl Scout Council, Inc. v. Havey Fund-Raising Management, Inc.*, 519 F.2d 634, 642 (8th Cir. 1975).

Electronically Filed - BOONE - January 23, 2023 - 11:56 AM

stake, thus affording Plaintiffs an adequate remedy at law; (c) they have failed to overcome the detriment to CHS TX and YesCare that would flow from an injunction or receivership; and (d) they have failed to show that an injunction, which would deprive the tens of thousands of prisoners of their constitutional right to adequate medical care and prejudice hundreds of other contingent litigation claimants, serves the public interest.  *See Gabbert*, 925 S.W.2d at 839 (listing the four factors of consideration in a preliminary injunction).  The Motion must therefore be denied.

> **A.    Plaintiffs Have Not Demonstrated a Probability of Success on the Merits**

28.    Plaintiffs have not demonstrated a probability of success on the merits on either their fraudulent transfer or successor liability claims against YesCare.  In the Motion to Dismiss, YesCare has already explained at length why, in the Amended Petition, Plaintiffs failed to state a claim on either of these theories.  Mot. to Dismiss at 18-23, 25-28.  Despite filing the Motion nearly two weeks after YesCare filed its Motion to Dismiss, Plaintiffs fail to correct these deficiencies and their Motion therefore must be denied.

> **1.    Plaintiffs Have Not Demonstrated Likelihood of Success on the Merits
> of Their Fraudulent Transfer Claims**

29.    Plaintiffs premise their claims under the Missouri Uniform Fraudulent Transfer Act ("MUFTA") on two demonstrably false assertions: (a) the 2022 Corporate Restructuring was intended to prevent them, specifically, from securing a judgment against Corizon, and (b) the 2022 Corporate Restructuring makes recovery less likely for Corizon's contingent litigation claimants, including Plaintiffs.  Plaintiffs are wrong on both points.

30.    To obtain their desired injunction, Plaintiffs allege that Corizon consummated the 2022 Corporate Restructuring specifically to defraud Plaintiffs.  Plaintiffs support this claim with only one piece of purported evidence: the timing of Corizon's consummation of the 2022 Corporate Restructuring in relation to its receipt of a demand letter from Plaintiffs.  Mot. at 7-8. As explained above, the timing of consummation of the 2022 Corporate Restructuring in relation

Electronically Filed - BOONE - January 23, 2023 - 11:56 AM

to Plaintiffs' demand letter was driven by circumstances outside of Corizon's control and entirely unrelated to Plaintiffs or their claims.  Corizon had been making the necessary preparations for months before Plaintiffs threatened suit, including devoting substantial time and resources to a fairness opinion, legal analyses and a number of filings with the Texas Secretary of State and other governmental departments.[45]  But the unanticipated rejection of the Certificates of Conversion for Corizon and Valitás by the Secretary of State caused a significant delay in completing the mergers.  To re-file the Certificates of Conversion, the entities had to submit a number of missing or corrected franchise tax reports, request tax clearance letters, and file certificates of reinstatement.[46]

31.    Moreover, Corizon's decision to undergo the 2022 Corporate Restructuring in accordance with Texas law was not an effort to defraud creditors, as Plaintiffs allege, but to preserve value for them while maximizing the prospects of the Company's former business as a going concern.  In particular, the 2022 Corporate Restructuring was designed to unlock at least as much—if not more—value for unsecured creditors as would have existed under a Chapter 11 bankruptcy scenario.[47]  Just like Corizon's other unsecured creditors, Plaintiffs—should they succeed on their breach of contract claim—may recover funds that remained vested in Corizon as a result of the 2022 Corporate Restructuring, including funds available under the Funding Agreement.  As to Plaintiffs' allegation that the purpose of the 2022 Corporate Restructuring was structured to protect the shareholders' equity interests (Mot. at 46), they do not explain why, if this were the case, the 2022 Corporate Restructuring allocated nearly $100 million of secured debt to

---

[45] *See* Sholey Affidavit at ¶¶ 18-19; **Motion Ex. 18** Presentation to Corizon Health, Inc on Fairness Analysis Pertaining to Proposed Transaction, YESCARE-CHS-00000383; **Motion Ex. 20**, Corizon Health, Inc. Certificate of  Conversion and Certificate of Formation;  **Ex.  21**, Valitás Health Services, Inc. Certificate of Conversion.

[46] *See* Sholey Affidavit at ¶¶ 18-19.

[47] *See* **Motion Ex. 18**, Presentation to Corizon Health, Inc on Fairness Analysis Pertaining to Proposed Transaction, YESCARE-CHS-00000383 at 399.

Electronically Filed - BOONE - January 23, 2023 - 11:56 AM

YesCare (rather than Corizon), which debt is superior in right of payment to the interests of YesCare's equityholders.

32.     Just as important, Plaintiffs' fraudulent transfer claims are barred by operation of Texas law.  Under Missouri choice-of-law rules, the law of the state of incorporation (here, Texas) applies to the "internal affairs" of organizations, including mergers, consolidations, and reorganizations.  *See* Mot. to Dismiss at 18.[48]  The TBOC is clear that the allocation of assets and liabilities through a divisional merger is not a "transfer."    Tex. Bus. Orgs. Code § 10.008(a)(2)(C).[49]  That is fatal to Plaintiffs' MUFTA claim.  *Konopasek v. Konopasek*, No. SD37388, 2022 Mo. App. LEXIS 575, at *7 (Mo. App. S.D. Sept. 13, 2022) (dismissing fraudulent transfer claim due to lack of a "transfer"), *appeal docketed*, No. SC99816 (Mo. Nov. 1, 2022).

33.     Plaintiffs do not, and cannot, cite any case where a court has unwound or avoided a Texas divisional merger as a fraudulent transfer.  Yet that is precisely what they are asking this Court to do, as the Motion would require this Court to ignore Texas law, which provides that any exclusive allocation of assets and liabilities through a divisional merger under the TBOC is fully enforceable.  *See 1400 FM 1417 LLC v. CertainTeed Corp.*, No. 4:21-cv-00847, 2022 U.S. Dist. LEXIS 55548, at *10-11 (E.D. Tex. Mar. 28, 2022) (determining citizenship of corporation based on effect of divisional merger); Tex. Bus. Orgs. Code § 10.008(a)(3) & (4).[50]

---

[48] Plaintiffs contest whether the internal affairs doctrine requires the application of Texas law to claims of successor liability, but do not contest that Texas law governs the structure and effect of the merger.  *See* Mot. to Dismiss at 18; Restatement (Second) of Conflict of Laws § 302 (describing "mergers, consolidations and reorganizations" as the type of matters typically governed by the law of the state of incorporation).

[49] "When a merger takes effect: . . . all rights, title, and interests to all real estate and other property owned by each organization that is a party to the merger is allocated to and vested, subject to any existing liens or other encumbrances on the property, in one or more of the surviving or new organizations as provided in the plan of merger *without: . . . any transfer or assignment having occurred. . . .*"  Tex. Bus. Orgs. Code § 10.008(a)(2)(C) (emphasis added).

[50] Tex. Bus. Orgs. Code § 10.008(a) provides in relevant part:

Electronically Filed - BOONE - January 23, 2023 - 11:56 AM

34.     Plaintiffs further claim that Corizon's assets were transferred to insiders and that those insiders maintain an interest in the property.  Mot. at 43.  But the series of transactions Plaintiffs describe were the lawful steps required to effectuate the 2022 Corporate Restructuring. *See Harman v. First Am. Bank of Md. (In re Jeffrey Bigelow Design Grp., Inc.),* 127 B.R. 580, 583 (D. Md. 1991), *aff'd*, 956 F.2d 479, 484 (4th Cir. 1992) ("Although the evidence clearly demonstrates that the transactions at issue in this case involved insiders, the trustee presented no evidence that the parties chose this particular financial arrangement to hinder, delay, or defraud other creditors.").  Plaintiffs also claim that Corizon "concealed" the Divisional Merger from them. Mot. at 44.  Yet the 2022 Corporate Restructuring was consummated through a public filing with the Texas Secretary of State, and the TBOC requires that Corizon maintain a copy of the plan of merger and make such document available to creditors upon request.  Tex. Bus. Orgs. Code § 10.151(b)(1)(H).  Moreover, Plaintiffs acknowledge that YesCare publicly announced the 2022 Corporate Restructuring in press releases and communications both before and after it took place. *See* Amended Petition ¶ 65; Mot. at 8.  These public announcements belie any intent to conceal the transaction.  *See In re 1701 Commerce, LLC*, 511 B.R. 812, 838 (Bankr. N.D. Tex. 2014) (concluding that a corporation did not "conceal" the alleged fraudulent transfer when it referenced it in public filings the following month).

35.     Finally, Plaintiffs' arguments that the 2022 Corporate Restructuring involved the transfer of substantially all of Corizon's assets, and that Corizon was insolvent, fail to address the

---

When a merger takes effect: . . . (3) all liabilities and obligations of each organization that is a party to the merger are allocated to one or more of the surviving or new organizations in the manner provided by the plan of merger; (4) each surviving or new domestic organization to which a liability or obligation is allocated under the plan of merger is the primary obligor for the liability or obligation, and, except as otherwise provided by the plan of merger or by law or contract, no other party to the merger, other than a surviving domestic entity or non-code organization liable or otherwise obligated at the time of the merger, and no other new domestic entity or non-code organization created under the plan of merger is liable for the debt or other obligation . . .

Electronically Filed - BOONE - January 23, 2023 - 11:56 AM

actual effects of the Restructuring.  Mot. at 44.  Plaintiffs identify the assets allocated to CHS TX in the Divisional Merger but ignore the substantial assets allocated to Corizon—the Funding Agreement, cash on hand, and the right to make claims for coverage under insurance policies. Moreover, as noted above, as a result of the 2022 Corporate Restructuring, Corizon was released from approximately $100 million of secured debt that would collect ahead of unsecured creditors like Plaintiffs.  Thus, while Corizon was facing insolvency at the time of its financial restructuring, that restructuring *improved*, rather than hindered, its ability to pay potential unsecured creditors, such as Plaintiffs.  That fact defeats Plaintiffs claims.  *See Higgins v. Ferrari*, 474 S.W.3d 630, 638 (Mo. App. W.D. 2015) ("Although the presence of several badges of fraud gives rise to the presumption that the transfer was fraudulent, even the presumption may be rebutted if the transferor can provide evidence that the transfer was not made for the purpose to hinder, delay or defraud creditors.")

36.    Plaintiffs also omit many of the badges of fraud from their analysis, because they do not apply here: that the debtor absconded; that the debtor removed or concealed assets; the value of the consideration received by the debtor in comparison to the value of the asset transferred; that the transfer occurred shortly before or after incurring a substantial debt; and that the debtor transferred essential assets to a lienor who transferred those assets to an insider.  § 428.024, RSMo 2022.  Plaintiffs' inability to assert these elements underscores the weakness of their case.

### 2.    Plaintiffs Have Not Demonstrated Likelihood of Success on the Merits for Their Successor Liability Claims

37.    Texas law applies to the Plaintiffs' successor liability claims.  Under Missouri choice-of-law rules, the law of the state of incorporation applies to "internal affairs" including mergers, consolidations, and reorganizations.  *Montgomery Bank, N.A. v. First Horizon Home Loan Corp.*, No. 4:09CV01334 ERW, 2010 U.S. Dist. LEXIS 40600, at *4 (E.D. Mo. Apr. 26, 2010) ("[T]he internal affairs doctrine . . .   generally provides that the law of the state of

18

Electronically Filed - BOONE - January 23, 2023 - 11:56 AM

incorporation governs a corporation's internal affairs").  Because YesCare, CHS TX, and Corizon are all Texas corporations, Texas law determines whether Corizon's creditors may maintain a lawsuit against its purported successors.  *Id*.  ("Kansas law would govern the ability of a creditor to maintain a suit to recover assets from the shareholders of a dissolved Kansas corporation.");  *Pacific Intermountain Express Co. v. Best Truck Lines, Inc.*, 518 S.W.2d 469, 472 (Mo. App. W.D. 1974) ("When a corporation organized under the laws of another state becomes licensed to do business in Missouri it carries with it its charter and the law under which it is incorporated[.]") (quotation omitted).  Texas law unequivocally holds that those creditors may not do so.  *See* Mot. to Dismiss at 19-22.

38.    Plaintiffs' theories of successor liability are based on the corporate formation of YesCare and CHS TX, and therefore are subject to the internal affairs doctrine.  *See* Mot. at 46-47.  First, Plaintiffs' claims depend on what the "organic structure" of Corizon and CHS TX were following the Divisional Merger.  *See* Mot. at 46 (quoting *Enslein as Tr. for Xurex, Inc. v. Di Mase*, No. 16-09020-CV-W-ODS, 2019 U.S. Dist. LEXIS 100973, at *78 (W.D. Mo. June 17, 2019)).  It is settled law that, following a statutory merger, courts look to the governing statute to determine which party bears post-merger liability.  Tex. Bus. Orgs. Code § 10.008(a)(3) & (4) (stating that the surviving or new entity "to which a liability or obligation is allocated under the plan of merger is the primary obligor for the liability or obligation," and "no other party to the merger . . . and no other new domestic entity. . . created under the plan of merger is liable for the debt or other obligation"); *see also Alexander & Alexander, Inc. v. Koelz*, 722 S.W.2d 311, 313 (Mo. App. E.D. 1986) (relying on the underlying statute, § 351.450(4) & (5), RSMo 1978, to determine the liabilities of the proceeding corporation after a statutory merger); *Payne v. Sec. Sav. & Loan Ass'n, F.A.*, 924 F.2d 109, 111 (7th Cir. 1991) (looking to the "congressional scheme that governs the transfer of assets that took place" to determine the successor on plaintiff's claim following a

Electronically Filed - BOONE - January 23, 2023 - 11:56 AM

statutory receivership).  Second, Plaintiffs' successor liability theory is based on the argument that

Corizon "transferred" all, or substantially all, of its assets to CHS TX.  Amended Petition ¶¶ 203

& 220.  Absent such a "transfer" there can be no claim for successor liability—and whether, at the

time of the 2022 Corporate Restructuring, the assignment of assets legally constituted a "transfer"

is a question at the core of corporate formation.  *See* Tex. Bus. Orgs. Code § 10.008(a)(2)(C)

(stating that a divisional merger does not constitute a "transfer"); *Edwards v. Black Twig Mktg. &*

*Communs. LLC*, 418 S.W.3d 512, 520-21 (Mo. App. E.D. 2013) (stating that all theories of

successor liability depend on a transfer).  Texas law is clear: no transfer occurred in the formation

of YesCare and CHS TX.

      39.     Plaintiffs do not cite a single case holding otherwise.  Mot. at 46-47.  *Enslein* and

*Shaffer v. Health Acquisition Co., LLC,* No. 4:18-CV-00601-NKL, 2019 U.S. Dist. LEXIS 34417

(March 5, 2019) did not concern a corporation's internal organization.  *A.O.A. v. Rennert*

concerned a veil-piercing claim—a question of whether the corporation, in question, was *ignoring*

corporate formalities, and a theory Plaintiffs did not pursue.  350 F. Supp. 3d 818, 837 (E.D. Mo.

2018).  *Osborn v. Prime Tanning Corp.* is similarly unavailing, as corporate internal affairs were

not at issue in that case.  No. 09-06082-CV-SJ-GAF, 2011 U.S. Dist. LEXIS 165374, at *15 (W.D.

Mo. Apr. 29, 2011).  Finally, Plaintiffs misquote *Kelly v. Corizon Health, Inc.*, a report and

recommendation decided under Michigan law that YesCare has moved to dismiss.[51]  Moreover,

the Magistrate Judge in *Kelly* erred in rejecting the application of the internal affairs doctrine

because, *inter alia*, under Michigan law (like Missouri law) the internal affairs doctrine applies to

---

[51] Plaintiffs are correct that the Magistrate Judge concluded that the internal affairs doctrine did not apply
to the case before her, but not because she found that successor liability is an equitable remedy, as Plaintiffs
represent.  Case No. 2:22-cv-10589, 2022 U.S. Dist. LEXIS 198725, at *21 (E.D. Mich. Nov. 1, 2022);
Mot. at 47.  Rather, the Magistrate Judge cited successor liability's equitable nature as part of an inquiry
into the relevant interests of Texas and Michigan in the specific facts of that litigation, which are not
relevant here.  2022 U.S. Dist. LEXIS 198725 at *19-23.

Electronically Filed - BOONE - January 23, 2023 - 11:56 AM

claims regarding a merger.  *See Stewart v. GeoStar Corp*., No. 07-13675-BC, 2008 U.S. Dist. LEXIS 67964, at *17-19 (E.D. Mich. Sep. 5, 2008) (finding that the internal affairs doctrine should be applied to analyze the effects of a merger on a claim); *Montgomery Bank*, 2010 U.S. Dist. LEXIS 40600 at *4 (under internal affairs doctrine, Kansas law governed ability of creditor to maintain suit to recover assets from dissolved Kansas corporation).  That Divisional Merger occurred in Texas and is governed by Texas law.

40.     Even if this Court applies the "most significant relationship" test under choice of law rules, it should still apply Texas law.  *Kelly*, 2022 U.S. Dist. LEXIS 198725 at *16.  While Missouri may have the most significant relationship to the alleged breach of contract, the matter at issue here is the legal effect of a Texas merger on questions of successor liability.  Texas has a more significant relationship to that issue.  *See Soviet Pan Am Travel Effort v. Travel Comm., Inc.*, 756 F. Supp. 126, 131 (S.D.N.Y. 1991) ("Because a corporation is a creature of state law whose primary purpose is to insulate shareholders from legal liability, the state of incorporation has the greater interest in determining when and if that insulation is to be stripped away."); *Leitner v. Sadhana Temple of N.Y., Inc.*, No. CV 13-07902 MMM (Ex), 2014 U.S. Dist. LEXIS 198479, at *49 (C.D. Cal. Oct. 17, 2014) ("New York, as the Temple's state of incorporation, has a substantial interest in determining the nature and extent to which entities incorporated within its borders can be held liable.  Whatever interest California has in regulating the conduct of foreign businesses is insubstantial by comparison.").

41.     Finally, Plaintiffs' claims are unlikely to succeed regardless of which law this Court applies.  Missouri courts impose successor liability to prevent a litigant from "immuniz[ing] itself from liability by utilizing such a device as a change of name."  *Green v. Montgomery Ward & Co.*, 775 S.W.2d 162, 166 (Mo. App. W.D. 1989).  The 2022 Corporate Restructuring was not a mere name change, nor was it employed to immunize Corizon from liability—to the contrary, it

Electronically Filed - BOONE - January 23, 2023 - 11:56 AM

provided Corizon with more significant assets with which to satisfy any liability as compared to any other viable alternative.  Furthermore, "a transfer of all or substantially all of the assets of one corporation to another is a prerequisite to corporate successor liability" under any of the successor liability theories.  *Edwards*, 418 S.W.3d at 521.  In the Divisional Merger, significant assets and contracts remained vested in Corizon—$1 million in cash, access to additional funds under the Funding Agreement, and access to valuable insurance policy proceeds.  Conversely, Corizon's most significant liability—nearly $100 million in secured debt—was allocated to CHS TX.

42.     As to the de facto merger theory, that theory applies only in the absence of a formal, statutory merger.  *See Cargo Partner AG v. Albatrans, Inc.*, 352 F.3d 41, 45 (2nd Cir. 2003) ("A de facto merger occurs when a transaction, although *not in form a merger*, is in substance a consolidation or merger of seller and purchaser.") (emphasis added).  Here, there is no question that the Divisional Merger constituted a statutory merger executed in accordance with the formalities of Texas law.  *See* Mot. to Dismiss at 5-8, 20-21.  Indeed, complying with those formalities is what caused the delay that Plaintiffs complain of.

**B.     Plaintiffs Have Failed to Show Irreparable Harm**

43.     "To demonstrate irreparable harm, the movant must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Wildhawk Invs., LLC v. Brava I.P., LLC*, 27 F.4th 587, 597 (8th Cir. 2022) (citation omitted). "The failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction. . ." *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).  Plaintiffs have failed to show irreparable harm for at least two reasons.

44.     ***First***, it is black letter law that claims for money damages, such as those Plaintiffs assert here, are not sufficient to demonstrate irreparable harm.  *See Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("Mere injuries, however substantial, in terms of money, time and energy . . . are not

Electronically Filed - BOONE - January 23, 2023 - 11:56 AM

enough" for injunctive relief); *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) (affirming denial of preliminary injunction for breach of contract claims compensable by money damages because "[w]hen there is an adequate remedy at law, a preliminary injunction is not appropriate."); *In re Teknek, LLC*, 343 B.R. 850, 869-70 (Bankr. N.D. Ill. 2006) (denying bankruptcy trustee's request for injunctive relief to freeze defendants' assets pending resolution of fraudulent transfer litigation because "[f]inal equitable relief cannot be awarded if the final legal relief is adequate"). That alone defeats Plaintiffs' request for an injunction. *Gelco Corp.*, 811 F.2d at 420.

45.     ***Second***, Plaintiffs fail to show that the harm they claim is "certain and great and of such imminence that there is a clear and present need for equitable relief." *Wildhawk Invs., LLC*, 27 F.4th at 597.   Plaintiffs' theory seems to be that merely alleging fraudulent transfer, or speculating that an entity may possibly undergo a corporate restructuring at some point in the future, is enough to procure an injunction.  That is plainly incorrect.

46.     None of the cases Plaintiffs rely on support its position.   For example, *CitiMortgage, Inc. v. Just Mort'g., Inc.* concerned a debtor that had continuously hidden and concealed assets, engaged in secret transfers, destroyed records, and already refused to honor a judgment of monetary damages.  No. 4:09 CV 1909 DDN, 2013 U.S. Dist. LEXIS 174962, at *2-5, *11-12 (E.D. Mo. Dec. 13, 2013).  That is the opposite of the lawful and public 2022 Corporate Restructuring at issue here.  Similarly, in *BancorpSouth Bank v. Hall*, the Court's injunction was designed to halt an ongoing series of allegedly fraudulent transfers.  No. 6:10-CV-03390-DGK, 2011 U.S. Dist. LEXIS 12012, at *6-8, *15-16 (W.D. Miss. Feb. 7, 2021).  Here, in contrast, Plaintiffs have produced no evidence that YesCare intends to make any future transfers outside of routine business operations, much less fraudulent transfers.  There is therefore no similar threat of future unlawful transfer that is "certain," "great," and "imminent" here. *Wildhawk Invs., LLC*, 27 F.4th at 597.

Electronically Filed - BOONE - January 23, 2023 - 11:56 AM

47.     Because Plaintiffs have failed to identify a real and imminent threat of harm beyond their unsupported speculation, their request for a receiver must also be denied.  *See Riegel v. Jungerman*, 597 S.W.3d 695, 704 (Mo. App. W.D. 2019) (stating a receiver may be appropriate in pending fraudulent transfer claims where "through fraud, mismanagement, misconduct, or otherwise, there is a *likelihood* that without the interposition of the court the property will be *squandered, wasted, misappropriated, or unlawfully diverted*. . .") (emphasis added).

**C.     Issuing the Injunction Against YesCare Would Harm YesCare's Patients, Business Interests, Clients and All Other Contingent Litigation Claimants**

48.     Plaintiffs ask this Court to freeze YesCare's assets, halt their ability to operate and pay creditors, and eviscerate their ability to win new business—all to protect a judgment that has not been (and likely never will be) issued.  Not only would Plaintiffs' proposed relief effectively unwind the 2022 Corporate Restructuring, but it would materially harm YesCare's ability to continue as a going concern.

49.     As explained above, YesCare is responsible for providing medical care to 38,000 inmates at 51 facilities across 11 states.[52]  This provision of medical care is dependent on YesCare's ability to continue buying medical supplies and to continue paying its employees, including the service providers providing point-of-care service.[53]  YesCare does not have sufficient liquid assets to meet payroll and operational obligations if $11,174,465.50 million of assets are frozen, or if YesCare is enjoined from making routine transfers under a receivership.[54]  As a result, the Preliminary Injunction would disrupt YesCare's ability to provide medical care, creating enormous risk of harm to inmates.[55]

---

[52] Sholey Affidavit ¶¶ 8, 13.

[53] *Id.* ¶ 12.

[54] *Id.* ¶¶ 11-12.

[55] *Id.* ¶¶ 12-13.

Electronically Filed - BOONE - January 23, 2023 - 11:56 AM

50.      In turn, this disruption would endanger YesCare's ability to continue as a going concern.[56]  Inmates denied medical care would have the right to sue under the Eighth Amendment, so that halting YesCare's ability to pay employees, outside service providers, medical suppliers, and other vital operational expenses would create potentially significant liability.[57]  And these disruptions, or placement into a receivership, would likely preclude YesCare from being able to begin performance on the $1 billion Department of Corrections contract it just negotiated.[58]

51.      The result would be to unwind the 2022 Corporate Restructuring—but not, as Plaintiffs hope, in a manner that would grant them a recovery.  The 2022 Corporate Restructuring allowed Corizon to avoid bankruptcy while providing unsecured creditors an improved opportunity for recovery relative to any viable alternative.  If this Court grants the Preliminary Injunction, the most likely result is that YesCare would be forced into bankruptcy, through the combination of disruptions to their current operations, the incurrence of new liability, and loss of future contracts.[59]  Plaintiffs (as well as other contingent, unliquidated litigation claimants) would be in a position to recover nothing.

52.      Under these circumstances, the balance of harms supports denying the Motion.  *See, e.g.*, *Orrick Farm Serv. v. Coats*, 2021 U.S. Dist. LEXIS 78920, at *5-7 (W.D. Miss. Apr. 23, 2021) (denying preliminary injunction that was unnecessary to protect plaintiff's business but "would likely deal a death blow to Defendants' business.").

---

[56] Sholey Affidavit ¶ 20.

[57] *Id.* ¶¶ 12-14.

[58] *Id.* ¶ 15.

[59] *Id.* ¶ 17.

Electronically Filed - BOONE - January 23, 2023 - 11:56 AM

**D.        The Public Interest Disfavors an Injunction**

The public interest strongly favors denying the Motion.  This factor looks to both public policy goals and the impact of an injunction on non-parties to the litigation.  *Dataphase*, 640 F.2d at 112; *Porretti v. Dzurenda*, 11 F.4th 1037, 1050-51 (9th Cir. 2021); *Hunter v. Hamilton County Bd. of Elections*, 635 F.3d 219, 244 (6th Cir. 2011).

Public policy favors protecting the four groups of non-parties that would be impacted by a preliminary injunction.  The first are the prisoners whose constitutional right to medical care would be jeopardized by an injunction that hinders YesCare's operations.  *See Calvert v. Paniagua*, No. 2:17CV2 HEA, 2018 U.S. Dist. LEXIS 77279, at *33 (E.D. Mo. May 8, 2018) (granting preliminary injunction to protect prisoner's health because "[i]t is always in the public interest to prevent the violation of a party's constitutional rights.") (citation omitted).  The second are YesCare's clients: state and local correctional facilities that will have to scramble and expend significant resources to replace lost medical care.  *See Proby v. Russell*, No. 4:14-CV-1620-JAR, 2015 U.S. Dist. LEXIS 18972, at *4 (E.D. Mo. Feb. 18, 2015) (stating the public has an interest in the orderly administration of prisons).  The third is YesCare's current employees, whose paychecks would also be put at risk by an injunction.  *FiberTower Network Servs. Corp. v. FCC (In re FiberTower Network Servs. Corp.)*, 482 B.R. 169, 189 (Bankr. N.D. Tex. 2012) (stating there is a public interest in preserving corporations as a going concern in order to protect jobs).  And fourth are YesCare's current and potential creditors, who are far less likely to recover on their claims if this Court grants a Preliminary Injunction that would dramatically increase the risk of bankruptcy—a bankruptcy caused by Plaintiffs' short-sighted attempt to hoard the company's value for themselves.  *LaBarge v. Vierkant (In re Vierkant)*, 240 B.R. 317, 320 (8th Cir. 1999) (discussing the policy goal that "all creditors are treated equally").

Electronically Filed - BOONE - January 23, 2023 - 11:56 AM

Plaintiffs, on the other hand, name no outside parties that would benefit from their proposed preliminary injunction. *See* Mot. at 55-56. They cite only to *Bancorp South Bank* for the generic proposition that the public has an interest in allowing creditors to collect. 2011 U.S. Dist. LEXIS 12012, at *18. Putting aside that Plaintiffs seek to assist only their own efforts to collect—to the detriment of all other purported creditors—the *Bancorp* court gave this factor "little weight." *Id.* And unlike the plaintiff in *Bancorp South Bank*, here Plaintiffs have provided no evidence of ongoing or future fraudulent transfers.

## **CONCLUSION**

53.    For the foregoing reasons, the Court should deny the Motion.


Dated: January 20, 2023

Respectfully submitted,

**DOWD BENNETT LLP**

*/s/ Philip A. Cantwell*
Philip A. Cantwell #65505
Robyn Parkinson #72956
7676 Forsyth Blvd., Suite 1900
St. Louis, Missouri 63105
(314) 889-7300 (telephone)
(314) 863-2111 (facsimile)
pcantwell@dowdbennett.com
rparkinson@dowdbennett.com

**WHITE & CASE LLP**

Samuel P. Hershey (*pro hac vice pending*)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
Email: sam.hershey@whitecase.com

*Attorneys for CHS TX, Inc. and YesCare Corp.*

Electronically Filed - BOONE - January 23, 2023 - 11:56 AM

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2023 the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record or otherwise emailed to the following counsel of record at the following email addresses:

Patrick J. Stueve
Ethan M. Lange
Jordan A. Kane
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

Thomas R. Warburton
twarburton@bradley.com

By:    /s/ Philip A. Cantwell

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

**IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI**

| | | |
|---|---|---|
| THE CURATORS OF THE UNIVERSITY OF | ) | |
| MISSOURI and CAPITAL REGION | ) | |
| MEDICAL CENTER, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 22BA-CV01701-01 |
| v. | ) | |
| | ) | Division 4 |
| TEHUM CARE SERVICES, INC. d/b/a | ) | |
| CORIZON HEALTH, INC., CHS TX, INC., | ) | |
| and YESCARE CORP., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANT TEHUM CARE SERVICES, INC. d/b/a CORIZON HEALTH, INC'S
SUGGESTIONS IN SUPPORT OF ITS OPPOSITION TO PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION**

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

## TABLE OF CONTENTS

<b>Page(s)</b>

TABLE OF AUTHORITIES ............................................................................................ iii

INTRODUCTION ......................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................... 1

    A.    Corizon's Contracts With The Missouri Department Of Corrections
        ("MDOC") And Plaintiffs .................................................................... 1

    B.    Corizon's Dire Financial Condition And Plan To File For Chapter 11
        Bankruptcy ...................................................................................... 2

    C.    The Diligence Process ...................................................................... 3

    D.    The Transaction ............................................................................... 4

        i.    The Combination Merger ......................................................... 4

        ii.    The Divisional Merger ............................................................. 5

    E.    Corizon Today ................................................................................. 6

LEGAL STANDARD .................................................................................................. 6

    1.    Preliminary Injunction Standard ....................................................... 6

    2.    Standard For The Appointment Of A Receiver .................................. 8

ARGUMENT ............................................................................................................. 8

I.    THE COURT SHOULD DENY PLAINTIFFS' UNPRECEDENTED REQUEST
    FOR PRELIMINARY INJUNCTIVE RELIEF AGAINST CORIZON. .......................... 8

    A.    Applying Governing Texas Law, Plaintiffs Do Not Have A Fair
        Likelihood Of Success On The Merits Of Their Fraudulent Transfer
        Claims. ............................................................................................ 9

        1.    Texas law governs the divisional merger .................................. 9

        2.    Fraudulent transfer claims ..................................................... 10

    B.    Plaintiffs Face No Irreparable Harm As This Is A Simple Alleged Breach
        of Contract Case That Can Be Remedied In Full By Monetary Damages. ......... 11

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

C.    Granting Plaintiffs' Requested Injunctive Relief Pre-Judgment Is
        Premature And Will Cause Severe Harm To Corizon. ...................................... 15

D.    Public Interest Considerations Weigh Strongly In Favor Of Denying
        Plaintiffs' Motion for Preliminary Injunction. ...................................................... 18

CONCLUSION ................................................................................................................ 19

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A.O.A. v. Rennert*,
  350 F. Supp. 3d 818 (E.D. Mo. 2018) ...................................................................... 10

*BancorpSouth Bank v. Hall*,
  No. 6:10-CV-03390-DGK, 2011 WL 529971 (W.D. Mo. Feb. 7, 2011) ................... 14

*Barrett v. Claycomb*,
  705 F.3d 315 (8th Cir. 2013) .............................................................................. 7, 9

*Caballo Coal Co. v. Ind. Mich. Power Co.*,
  No. 4:01-CV-1558CAS, 2002 WL 32727070 (E.D. Mo. Jan. 10, 2002), *aff'd*,
  305 F.3d 796 (8th Cir. 2002) ................................................................................. 12

*CDI Energy Servs., Inc. v. W. River Pumps, Inc.*,
  567 F.3d 398 (8th Cir. 2009) .................................................................................... 7

*State ex rel. Chicago Cardinals Football Club, Inc. v. Nangle*,
  369 S.W.2d 167 (Mo. 1963) .................................................................................... 18

*CitiMortgage, Inc. v. Just Mortg., Inc.*,
  No. 4:09 CV 1909 DDN, 2013 WL 6538680 (E.D. Mo. Dec. 13, 2013) ................... 14

*Cook v. McElwain*,
  432 S.W.3d 286 (Mo. Ct. App. 2014) ........................................................................ 8

*CTS Corp. v. Dynamics Corp.*,
  481 U.S. 69 (1987) ................................................................................................... 19

*State ex rel. Dir. of Revenue v. Gabbert*,
  925 S.W.2d 838 (Mo. 1996) ............................................................................. 6, 7, 8

*Doe v. Phillips*,
  259 S.W.3d 34 (Mo. Ct. App. 2008) .......................................................................... 8

*State ex rel. Gardner v. Stelzer*,
  568 S.W.3d 48 (Mo. Ct. App. 2019) ........................................................................ 13

*Gelco Corp. v. Coniston Partners*,
  811 F.2d 414 (8th Cir. 1987) ..................................................................................... 7

*Konopasek v. Konopasek*,
  No. SD 37388, 2022 WL 4178971 (Mo. Ct. App. Sept. 13, 2022), *reh'g
  and/or transfer denied* (Sept. 26, 2022) ................................................................. 10

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

*Mgmt. Registry, Inc. v. A.W. Cos., Inc.*,
   920 F.3d 1181 (8th Cir. 2019) ................................................................. *passim*

*Miller v. Ziegler*,
   582 F. Supp. 3d 640 (W.D. Mo. 2022) ...........................................12, 13

*Minana v. Monroe*,
   467 S.W.3d 901 (Mo. Ct. App. 2015) ..............................................12

*State ex rel. Minn. Mut. Life Ins. Co. v. Denton*,
   129 S.W. 709 (Mo. 1910) ...............................................................18

*MPAY Inc. v. Erie Custom Comput. Apps., Inc.*,
   970 F.3d 1010 (8th Cir. 2020) ........................................................13

*Nat'l Rejectors, Inc. v. Trieman*,
   409 S.W.2d 1 (Mo. 1966) (en banc) ...............................................17

*Phelps-Roper v. Nixon*,
   509 F.3d 480 (8th Cir. 2007) ...........................................................7

*Plastronics Socket Partners, Ltd. v. Don Weon Hwang*,
   2019 WL 1009404 (E.D. Tex. Feb. 13, 2019) ...............................11

*Riegel v. Jungerman*,
   597 S.W.3d 695 (Mo. Ct. App. 2019) ..............................8, 15, 16

*Rodriguez v. Lawns of Distinction, Ltd.*,
   No. 4:07-MC-447CAS, 2008 WL 4552973 (E.D. Mo. Oct. 7, 2008) ..................14

*Rucker v. Fowler*,
   233 S.W.2d 809 (Mo. Ct. App. 1950) ............................................12

*Rural Cmty. Workers All. v. Smithfield Foods, Inc.*,
   459 F. Supp. 3d 1228 (W.D. Mo. 2020) ..........................................7

*Shafer v. Home Trading Co.*,
   52 S.W.2d 462 (Mo. Ct. App. 1932) ..............................................14

*SI03, Inc. v. Musclegen Rsch., Inc.*,
   No. 1:16-CV-274 RLW, 2021 WL 765293 (E.D. Mo. Feb. 26, 2021)........................7

*Sidway v. Missouri Land & Live-Stock Co.*,
   101 F. 481 (C.C.W.D. Mo. 1900) ..................................................18

*Simplex Paper Corp. v. Standard Corrugated Box Co.*,
   97 S.W.2d 862 (Mo. Ct. App. 1936) ..............................................12

iv

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

*Stockdale v. Stockdale,*
    2009 WL 2151159 (E.D. Mo. July 16, 2009) ........................................................14

*Watkins Inc. v. Lewis,*
    346 F.3d 841 (8th Cir. 2003) ..............................................................................12

*Yellow Mfg. Acceptance Corp. v. Am. Taxicabs,*
    130 S.W.2d 601 (Mo. 1939) ................................................................................15

**Statutes**

6 Del. C. § 18-217(b)–(c).......................................................................................20

15 Pa. Cons. Stat. Ann. § 361 ................................................................................20

Ariz. Rev. Stat. § 29-2601 .....................................................................................20

Mo. Rev. Stat. § 351.582 .........................................................................................9

Mo. Rev. Stat. § 428.039.1(3)(b)...........................................................................16

Mo. Rev. Stat. § 428.054 ........................................................................................18

Tex. Bus. Orgs. Code Ann. § 1.002(55)(A)......................................................10, 11

Tex. Bus. Orgs. Code Ann. § 10.003 .....................................................................10

Tex. Bus. Orgs. Code Ann. § 10.008(a)(2)(C).........................................................11

**Other Authorities**

17A Fletcher Cyc. Corp. § 8554 ...........................................................................17

Mo. R. Civ. P. 55.26 .................................................................................................1

Restatement (Second) of Conflicts of Laws § 302 cmt. g (1971)...........................10

Restatement (Second) of Conflicts of Laws § 302 cmt. a (1971)..............................9

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

Defendant Tehum Care Services, Inc. d/b/a Corizon Health, Inc. ("Corizon"), pursuant to Missouri Rule of Civil Procedure 55.26, provides the following Suggestions in Support of its Opposition to Plaintiffs The Curators of the University of Missouri and Capital Region Medical Center's ("Plaintiffs") Motion for Preliminary Injunction.

## INTRODUCTION

Plaintiffs—two unliquidated litigation claimants in a breach of contract action—have filed this Motion for Preliminary Injunction seeking unprecedented injunctive relief.  Indeed, Corizon is not aware of (and Plaintiffs have not pointed to) a single case where a Missouri court has ***ever*** fashioned equitable relief quite like what Plaintiffs suggest.  In reality, Plaintiffs' Motion for Preliminary Injunction is a bald attempt to invalidate decades-old corporate law of another state (Texas), including the corporate restructuring transaction conducted by Corizon to create value for unsecured creditors like Plaintiffs. While devoting ***39 pages*** to hearsay storytelling, Plaintiffs fail to satisfy the four well-known factors considered in assessing whether to grant the extraordinary relief of a preliminary injunction.  For these reasons and those explained in more detail below, Plaintiffs' Motion for Preliminary Injunction should be denied.

## FACTUAL BACKGROUND

**A.    Corizon's Contracts With The Missouri Department Of Corrections ("MDOC") And Plaintiffs**

1.    Until May 5, 2022, Corizon was a nationwide provider of correctional healthcare, providing services in states such as Missouri.  *See* Corizon's Am. Answer to Pls.' Am. Pet. at ¶ 3.

2.    Corizon previously entered into an agreement with the MDOC whereby Corizon would provide, or arrange for the provision of, healthcare services to certain inmates and detainees under the control of the MDOC.  *See id.* at ¶ 16.

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

3.      Plaintiffs and Corizon, LLC (a Corizon affiliate) entered into a Hospital Service Agreement (the "Agreement") on November 1, 2016, whereby Plaintiffs agreed to provide healthcare services to Corizon's patients, and Corizon would reimburse Plaintiffs for their services upon receipt of timely submitted claims. *See* Pls.' Am. Pet., Ex. 1, Agreement. The Agreement was between Plaintiffs, on the one hand, and Corizon, LLC, on the other, "acting for itself or on behalf of any/all/other affiliated companies." *Id.* at 34. The Agreement, which remained in effect through November 2021, predates the formation of Defendants CHS TX, Inc. and YesCare Corp, and does not bind those entities. *See* Pls.' Am. Pet. at ¶ 4 (noting that YesCare Corp. "is a Texas for-profit corporation formed on January 26, 2022"); ¶ 5 (noting that CHS TX, Inc. "is a Texas for-profit corporation formed on May 3, 2022").

4.      On April 19, 2022, Plaintiffs sent a demand letter to Corizon requesting payment for what they claim is over $12,000,000 in unpaid services. *See id.* at ¶ 85.

5.      Corizon admits that it was *billed* $11,174,465.50 by Plaintiffs under the Agreement but disputes that $11,14,465.50 is the correct amount *owed* to Plaintiffs pursuant to the Agreement as prior limited audits of claims exceeding $25,000.00 revealed billing discrepancies by Plaintiffs. Plaintiffs and Corizon have not yet engaged in or performed an audit of the remaining claims. *See e.g.*, *id.* at ¶ 46–47; 248; 261; 277; 288.

**B.      Corizon's Dire Financial Condition And Plan To File For Chapter 11 Bankruptcy**

6.      By the end of 2021, Corizon's financial situation was dire, and it was headed toward an almost certain bankruptcy: Its financial position had worsened in recent years due to revenue declines, margin compression, and deteriorating liquidity; it was operating in a significant negative working capital position due to its debt obligations; and it faced increased exposure to professional liability claims (indeed, hundreds) to the tune of an estimated $88 million in total exposure. *See*

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

*e.g.*, Pls.' Mot. for Prelim. Inj., Ex. 28, Plan of Divisional Merger, at § 4.01(b)(RL) (detailing the hundreds of lawsuits filed against Corizon); Feb. 23, 2022 Presentation to Board of Directors of Corizon Health, Inc. and Valitas Health Services, Inc., attached as **Exhibit A**, at 11601–02.

7.      Given Corizon's financial position, it did not have the financial wherewithal to satisfy its defaulted secured debt, let alone its unsecured debt and litigation claims.  In other words, Corizon's unsecured creditors like Plaintiffs were likely going to receive no compensation.  *See* Feb. 23, 2022 Presentation to Board of Directors of Corizon Health, Inc. and Valitas Health Services, Inc., **Ex. A**, at 11602.

8.      In early 2022, Corizon's Board, with the help of counsel, began considering restructuring alternatives other than bankruptcy.  *See id.*  One restructuring alternative was a divisional merger under the Texas Business Organizations Code ("TBOC")—a decades-old statutory framework that allows one or more corporate entities to merge into one or more surviving or new legal entities and re-allocate assets and liabilities among the resulting entities in a manner that is binding on creditors.

C.      **The Diligence Process**

9.      To ensure that a divisional merger was a viable and fair path forward, on February 8, 2022, Corizon engaged independent financial firm, FTI Capital Advisors, LLC ("FTI"), to render a fairness opinion on the proposed divisional merger.[1]  *See* Pls.' Mot. for Prelim. Inj., Ex. 18, Fairness Analysis Pertaining to the Proposed Transaction to the Board of Directors of Corizon Health, Inc., at 384 (noting that the engagement letter for the fairness opinion was dated February 8, 2022); *id.* at 390 (same).  FTI conducted widescale due diligence, including, but not limited to,

---

[1] Corizon engaged FTI on February 8, 2022, **more than two months before** Plaintiffs sent their demand letter to Corizon.  *See* Pls.' Am. Pet. at ¶ 85.  Any assertion that Corizon underwent the divisional merger in response to Plaintiffs' demand for payment is unfounded and inaccurate.

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

a review and analysis of Corizon's financial history and contingent liabilities. *Id.* at 394. FTI ultimately reached the conclusion that the proposed divisional merger provided Corizon's unsecured creditors with access to equal or greater value than not completing the merger (*i.e.*, a bankruptcy), a conclusion that was supported by the availability of a $15,000,00 M2 LoanCo, LLC funding agreement (the "Funding Agreement"). *Id.* at 394, 398–404.

10.    FTI again confirmed the fairness of the divisional merger in a May 1, 2022, Fairness Opinion sent to Corizon's Board of Directors. *See* Pls.' Mot. for Prelim. Inj., Ex. 23, FTI Fairness Opinion, at 23 ("[W]e are of the opinion that the Transaction is fair, from a financial point of view, to the RemainCo Unsecured Creditors as compared to a scenario in which the Transaction does not occur and instead there is a Restructuring.").

**D.    The Transaction[2]**

**i.    *The Combination Merger***

11.    In Spring of 2022, Corizon and several of its affiliates, including Corizon, LLC (formerly a Missouri limited liability company), Valitás Health Services, Inc. ("Valitas") (formerly a Delaware corporation), and Corizon Health of New Jersey, LLC ("Corizon NJ") (formerly a New Jersey limited liability company) (collectively, the "Company") began to take steps to execute a corporate reorganization (the "2022 Corporate Restructuring"). The 2022 Corporate Restructuring was effectuated through two merger transactions under the TBOC: A Combination Merger and a Divisional Merger. The following steps comprised the Combination Merger:

a.    On April 28, 2022, Corizon (previously incorporated in Delaware) converted to a Texas corporation.

---

[2] Corizon largely incorporates by reference the history of the Combination Merger and Divisional Merger from Plaintiffs' Amended Petition and CHS TX, Inc. and YesCare Corp.'s Motion to Dismiss.

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

b. Each of Corizon, Corizon, LLC, Valitas, and Corizon NJ merged pursuant to a plan of combination merger under Texas law (the "Combination Merger").

c. Corizon filed the Certificate of Combination Merger with the Texas Secretary of State on May 2, 2022, and the Combination Merger became effective on May 5, 2022.

d. Corizon was the sole survivor of the Combination Merger and was vested with all assets and liabilities of the merged entities. The other entities ceased to exist.

*See* CHS TX, Inc. and YesCare Corp.'s Mot. to Dismiss, at 5–6.

### ii.    *The Divisional Merger*

12.    Corizon then underwent a by-the-book divisional merger. *See generally* Pls.' Am. Pet., Ex. 28, Plan of Divisional Merger (containing Corizon 167-page plan to consummate the entirely lawful divisional merger under Texas law).

13.    The following steps comprised the Divisional Merger:

a. Corizon drafted the Plan of Merger, which provided that CHS TX, Inc. would be formed and documented which assets and liabilities were to remain with Corizon and which were to be allocated to CHS TX, Inc.[3]

b. The approved Plan of Merger was in writing and included all information required by the TBOC.

---

[3] As part of the divisional merger, Corizon was allocated and remained vested with all inactive and expired customer contracts, as well as all liabilities related to such contracts. *See* Pls.' Am. Pet., Ex. 28, Plan of Divisional Merger, Schedule 3.01(b); Schedule 4.01(b).

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

      c.     Corizon filed the Certificate of Merger and Certificate of Formation for CHS TX, Inc. with the Texas Secretary of State on May 3, 2022, and the Divisional Merger became effective on May 5, 2022.

      d.     On May 11, 2022, the Texas Secretary of State approved and accepted the Certificate of Merger and Certificate of Formation for CHS TX, Inc. effective as of May 5, 2022.

*See* CHS TX, Inc. and YesCare Corp.'s Mot. to Dismiss at 7.

14.     After the Divisional Merger became effective, CHS TX, Inc. was acquired by YesCare Corp., and the Transaction was complete. *Id.*

**E.**     **Corizon Today**

15.     Corizon is actively winding down its business as it is no longer an active entity with any active contracts. As part of the wind down process and since the effective date of the Divisional Merger, Corizon has resolved numerous claims made by its unsecured creditors.

<u>**LEGAL STANDARD**</u>

1.     **Preliminary Injunction Standard**

A preliminary injunction is an "extraordinary remedy." *Mgmt. Registry, Inc. v. A.W. Cos., Inc.*, 920 F.3d 1181, 1183 (8th Cir. 2019) (internal quotation omitted); *see also State ex rel. Dir. of Revenue v. Gabbert*, 925 S.W.2d 838, 839 (Mo. 1996) ("It is the movant's obligation to justify the court's exercise of such an extraordinary remedy."). "When considering a motion for a preliminary injunction, a court should weigh 'the movant's probability of success on the merits, the threat of irreparable harm to the movant absent the injunction, the balance between this harm and the injury that the injunction's issuance would inflict on other interested parties, and the public interest.'" *State ex rel. Dir. of Revenue*, 925 S.W.2d at 839 (quoting *Pottgen v. Mo. State High Sch. Activities Ass'n*, 40 F.3d 926, 928 (8th Cir. 1994)).

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

A likelihood of success on the merits "is the most significant" preliminary injunction factor. *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013) (internal quotation omitted). "To that end, 'the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied.'" *Id.* (quoting *CDI Energy Servs., Inc. v. W. River Pumps, Inc.*, 567 F.3d 398, 402 (8th Cir. 2009)). To demonstrate a likelihood of success on the merits, a movant must show that its "prospects for success is *sufficiently likely* to support the kind of relief it requests." *Rural Cmty. Workers All. v. Smithfield Foods, Inc.*, 459 F. Supp. 3d 1228, 1244 (W.D. Mo. 2020). In other words, a movant needs to show "a fair chance of prevailing" based on the record before the court. *See id.*; *Phelps-Roper v. Nixon*, 509 F.3d 480, 485 (8th Cir. 2007). To that point, movants face a higher degree of difficulty in obtaining injunctive relief absent full and robust discovery as the evidence offered is often "slim" and "based in part on speculation." *SI03, Inc. v. Musclegen Rsch., Inc.*, No. 1:16-CV-274 RLW, 2021 WL 765293, at *5 (E.D. Mo. Feb. 26, 2021).

But even if a movant demonstrates a likelihood of success on the merits, this warrants a preliminary injunction only "if there is a risk of irreparable harm and the balance of the factors support an injunction." *CDI Energy*, 567 F.3d at 402. Indeed, the "failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction." *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987); *see id.* at 420 ("Once a court determines that the movant has failed to show irreparable harm absent an injunction, the inquiry is finished and the denial of the injunctive request is warranted.").

Ultimately, "[w]hether an injunction should be granted is a matter of the trial court's discretion in balancing the equities." *Doe v. Phillips*, 259 S.W.3d 34, 36 (Mo. Ct. App. 2008). In determining whether to exercise its discretion to issue a preliminary injunction, courts should,

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

however, keep in mind the purpose of a preliminary injunction, which is only "to preserve the status quo until the trial court adjudicates the merits of the claim[s]." *See Cook v. McElwain*, 432 S.W.3d 286, 292 (Mo. Ct. App. 2014).

### 2. Standard For The Appointment Of A Receiver

Like a preliminary injunction, appointing a receiver is an "extraordinary remedy." *Riegel v. Jungerman*, 597 S.W.3d 695, 708 (Mo. Ct. App. 2019). The power to appoint a receiver is within the sound discretion of the trial court. *Id.* at 702. Still, before judgment against a defendant, a court should appoint a receiver "only in highly unusual and compelling circumstances." *Id.* at 708.

### ARGUMENT

## I. THE COURT SHOULD DENY PLAINTIFFS' UNPRECEDENTED REQUEST FOR PRELIMINARY INJUNCTIVE RELIEF AGAINST CORIZON.

Plaintiffs have failed to meet the high burden for the issuance of the "extraordinary remedy" of a preliminary injunction. *See Mgmt. Registry, Inc.*, 920 F.3d at 1183 (internal quotation omitted); *see also State ex rel. Dir. of Revenue*, 925 S.W.2d at 839 ("It is the movant's obligation to justify the court's exercise of such an extraordinary remedy."). Plaintiffs have not demonstrated a likelihood of success on the merits of their fraudulent transfer claims. Moreover, Plaintiffs have not—and indeed cannot—establish irreparable harm in this breach of contract action. In addition, Plaintiffs have entirely failed to address the harm that will come to Corizon should their premature pre-judgment request for injunctive relief be granted. Finally, Plaintiffs fail to demonstrate that granting an injunction against Corizon, which would indeed harm Corizon's unsecured creditors and the legitimate public interests of the state of Texas, is in the public interest. For these reasons, Plaintiffs' Motion for Preliminary Injunction should be denied.

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

**A.      Applying Governing Texas Law, Plaintiffs Do Not Have A Fair Likelihood Of Success On The Merits Of Their Fraudulent Transfer Claims.**

Plaintiffs have not satisfied their burden of demonstrating a likelihood of success on the merits of their fraudulent transfer claims, and this alone "strongly suggests" that Plaintiffs' request for injunctive relief vis a vis Corizon should be denied.  *See Barrett*, 705 F.3d at 320.[4]

**1.      Texas law governs the divisional merger.**

As an initial, threshold matter, Plaintiffs' conclusion that the divisional merger at issue in this case constitutes a "fraudulent transfer" proceeds from their conclusory presumption that Missouri law governs the analysis of the internal affairs of a Texas corporation.  Not so.  Under Missouri's own well-established choice-of-law principles, enshrined in statute, Missouri law may not "regulate the organization or internal affairs of a foreign corporation authorized to transact business in this state."  Mo. Rev. Stat. § 351.582; *see also* Restatement (Second) of Conflicts of Laws § 302 cmt. a (1971) (describing "mergers, consolidations and reorganizations" as the type of matters typically governed by the law of the state of incorporation).  Plaintiffs cite no Missouri case—and Corizon is aware of none—in which a court has discarded this long-recognized doctrine and analyzed lawful corporate transactions (and any "transfers" that occurred as part of such transactions) with total disregard for the law of the state of incorporation of the corporation(s) at issue.[5]  *See* Restatement (Second) of Conflicts of Laws § 302 cmt. g (1971) ("[T]he local law of

---

[4] In arguing the likelihood of success on the merits, Plaintiffs only address their fraudulent transfer claims (*see* Pls.' Mot. for Prelim. Inj. at 41–45) and successor liability claims (*see id.* at 45–53). Plaintiffs' successor liability claims (Counts III, IV, V, VI) are asserted against Defendants CHS TX, Inc. and YesCare, Corp., not Corizon. As such, Corizon will assess the likelihood of success on the merits of the fraudulent transfer claims only.  Plaintiffs do not address their likelihood of success on the merits of their remaining (and primary) claims: Breach of Contract (Count I) and Breach of the Covenant of Good Faith and Fair Dealing (Count II).

[5] *A.O.A. v. Rennert*, the sole Missouri case cited by Plaintiffs (*see* Pls.' Mot. for Prelim. Inj. at 47), does not apply here.  It concerned alter-ego claims involving a Peruvian corporation, and had nothing to do with a merger or other similar transaction conducted under the laws of another state. *See* 350 F. Supp. 3d 818, 836 (E.D. Mo. 2018).

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

the state of incorporation has been applied almost invariably to determine issues involving matters that are peculiar to corporations.").

Texas law governs when assessing the divisional merger at issue and whether, as part of that divisional merger, a "transfer" occurred. Plaintiffs make no effort to even address Texas law as part of their Motion for Preliminary Injunction, let alone demonstrate how they have *any* chance of success on their fraudulent transfer claims. *See* Pls.' Mot. for Prelim. Inj. at 41–45.

### 2. Fraudulent transfer claims

Despite boldly claiming that they have a high likelihood of success on the merits of their MUFTA claims against Corizon (*see id.* at 46), Plaintiffs ignore one glaring red flag that dooms their fraudulent transfer claims: there was no "transfer" of assets between Corizon, on the one hand, and CHS TX, Inc. and YesCare, Corp., on the other. While it goes without saying, "[a] fundamental requirement of the MUFTA statutory scheme is that the alleged fraud involve a 'transfer.'" *Konopasek v. Konopasek*, No. SD 37388, 2022 WL 4178971, at *3 (Mo. Ct. App. Sept. 13, 2022), *reh'g and/or transfer denied* (Sept. 26, 2022) (dismissing fraudulent transfer claim where there was no "transfer"). Where there is no "transfer," the additional elements of a MUFTA claims (*i.e.*, the "badges of fraud" that Plaintiffs belabor) are moot. *See id.* at *4.

Under relevant Texas law, one form of "merger" is the divisional merger whereby one or more corporate entities merges into one or more surviving or new legal entities and re-allocates assets and liabilities (via a plan of merger) among the resulting entities in a manner that is binding on creditors. *See* Tex. Bus. Orgs. Code Ann. § 1.002(55)(A); Tex. Bus. Orgs. Code Ann. § 10.003; *see also* Pls.' Am. Pet., Ex. 28, Plan of Divisional Merger (outlining this "allocation" of assets and liabilities with respect to the divisional merger at issue). When a "merger"—which by statutory definition includes a Tex. Bus. Orgs. Code Ann. § 1.002(55)(A) divisional merger—takes effect, all rights, title, and interests to property owned by each organization that is a party to the merger

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

is "allocated to and vested" in "one or more surviving or new organizations as provided in the plan

of merger *without… any transfer or assignment having occurred*." Tex. Bus. Orgs. Code Ann.

§ 10.008(a)(2)(C); *Plastronics Socket Partners, Ltd. v. Don Weon Hwang*, 2019 WL 1009404, at

*2–4 (E.D. Tex. Feb. 13, 2019) (holding that a patent that was allocated and vested in a separate

entity as part of a divisive merger did not violate a provision in a patent ownership agreement

prohibiting transfers without consent as, under the TBOC, an allocation of interests through a

divisive merger does not constitute a transfer).

Here, Corizon—faced with no other option than filing Chapter 11 bankruptcy—underwent

a by-the-book divisional merger.  *See generally* Pls.' Am. Pet., Ex. 28, Plan of Divisional Merger.

As part of this divisional merger, Corizon was allocated and remained vested with all inactive and

expired customer contracts, as well as all liabilities related to such contracts.  *See id.* at Schedule

3.01(b); Schedule 4.01(b).  In return, Corizon was released from nearly $100 million of senior

secured debt; those secured debt obligations were allocated to CHS TX, Inc.  *See id.* at 326;

Schedule 4.01(a).  Moreover, as part of the divisional merger, Corizon was allocated $1 million in

cash, as well as the right to draw on the $15 million Funding Agreement with M2 LoanCo, $11

million of which was earmarked for creditors of Corizon.  *See id.* at Schedule 3.01(b).  These

allocations *did not*, as a matter of Texas law, constitute a transfer or assignment.  *See* Tex. Bus.

Orgs. Code Ann. § 10.008(a)(2)(C).  Without the necessary predicate "transfer," Plaintiffs'

fraudulent transfer claims against Corizon will fail.

**B.      Plaintiffs Face No Irreparable Harm As This Is A Simple Alleged Breach of Contract Case That Can Be Remedied In Full By Monetary Damages.**

Plaintiffs' Motion for Preliminary Injunction should also be denied as to Corizon as

Plaintiffs have failed to demonstrate or allege irreparable harm.  This alone is an independently

sufficient ground upon which to deny Plaintiffs' request for injunctive relief, including the

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

appointment of a receiver.  *See Rucker v. Fowler*, 233 S.W.2d 809, 814 (Mo. Ct. App. 1950);

*Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003); *see also Simplex Paper Corp. v. Standard*

*Corrugated Box Co.*, 97 S.W.2d 862, 866 (Mo. Ct. App. 1936) ("It seems to be supported by the

great weight of the authorities that, before a court may be clothed with jurisdiction to appoint a

receiver, it must first appear that the plaintiff has no adequate remedy at law and, absent such a

showing, the court is without jurisdiction to appoint a receiver.").

"Irreparable harm is established if monetary remedies cannot provide adequate

compensation for improper conduct." *Minana v. Monroe*, 467 S.W.3d 901, 907 (Mo. Ct. App.

2015) (internal quotations omitted).  It follows then that quantifiable losses, such as losses based

on a purported breach of contract, are *not* irreparable.  *See Mgmt Registry, Inc.*, 920 F.3d at 1183

(affirming denial of preliminary injunction where facts presented the "opposite" of irreparable

harm—"that an award of money damages would fully compensate [movant] because its losses

were quantifiable"); *Miller v. Ziegler*, 582 F. Supp. 3d 640, 647 (W.D. Mo. 2022) (finding there

to be no irreparable harm where governing contract at issue could be used to calculate monetary

remedy owed to movant if succsessul on claims); *Caballo Coal Co. v. Ind. Mich. Power Co.*, No.

4:01-CV-1558CAS, 2002 WL 32727070, at *7 (E.D. Mo. Jan. 10, 2002), *aff'd*, 305 F.3d 796 (8th

Cir. 2002)) (finding there to be no irreparable harm in breach of contract action where movant

could and did in fact already "calculate[] damages for the next five-year contract period, should

[movant] prevail on the merits")). In a similar vein, harm is not irreparable where a plaintiff—by

its own admission—monetizes the value of its harm as part of the pleadings.  *See, e.g.*, *MPAY Inc.*

*v. Erie Custom Comput. Apps., Inc.*, 970 F.3d 1010, 1020 (8th Cir. 2020) (confirming that

movant's losses were quantifiable, and thus *not* irreparable, where movant's "own admission"

provided a numerical damages estimate of $580,000/year).

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

Here, there can be no doubt that Plaintiffs face *no* irreparable harm absent injunctive relief against Corizon. This action—despite Plaintiffs' best efforts to frame this dispute as more—is a breach of contract action. *See* Pls.' Pet. ¶¶ 35–50 (asserting claims for breach of contract and breach of the covenant of good faith and fair dealing only); Pls.' Am. Pet. ¶¶ 15–47; 134–48. Just like virtually all run of the mill breach of contract actions, Plaintiffs have an adequate remedy at law—money damages. Similar to *Miller*, Plaintiffs can easily quantify their alleged harm by looking to the Contract that they allege Corizon breached. *See* 582 F. Supp. 3d at 647. Indeed, Plaintiffs already did so by ***repeatedly quantifying their purported damages through the pleadings***. *See, e.g.*, Pls.' Am. Pet. ¶ 85 (explaining that on April 19, 2022, Plaintiffs' counsel sent Corizon a "Demand for Payment of Amounts Due and Owing under the Hospital Services Agreement, demanding the $12 million owed."); *id.* ¶ 279 (noting "the approximately $12 million owed to Plaintiffs"); *id.* ¶ 293 (same).

This inescapable conclusion fares no different in light of Plaintiffs' unsupported concerns that Corizon will engage in "additional transfers" and that without a preliminary injunction it "could make it difficult…for Plaintiffs to recover at the conclusion of the litigation." *See* Pls.' Mot. for Prelim. Inj. at 55. In Missouri, "one seeking injunctive relief on grounds of irreparable damage and lack of adequate remedy at law must plead irreparable injury and inadequate legal remedy as traversable facts, not mere conclusions." *State ex rel. Gardner v. Stelzer*, 568 S.W.3d 48, 51 (Mo. Ct. App. 2019) (internal quotations omitted). That Plaintiffs *may* have difficulty later collecting a judgment—a judgment that Plaintiffs (who are unsecured creditors) have in no way yet obtained[6]— is the type of unsupported "remote future injury" that cannot, as a matter of law,

---

[6] Plaintiffs are putting the cart before the horse. Plaintiffs are unsecured creditors seeking to obtain a judgment against Corizon and, as such, have "no rights to property or right to judgment." *Stockdale*, 2009 WL 2151159, at *3 (doubting the propriety of issuing an injunction against a

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

support the "dramatic and drastic power of injunctive force."  *See Stockdale v. Stockdale*, 2009 WL 2151159 at *2 (E.D. Mo. July 16, 2009) (quoting *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1981)); *Shafer v. Home Trading Co.*, 52 S.W.2d 462, 464 (Mo. Ct. App. 1932) (noting that appointing a receiver is "drastic" option which "should only be invoked when all other remedies fail").  And despite Plaintiffs' best efforts, none of the case law upon which Plaintiffs rely (*see* Mot. for Prelim. Inj. at 55) changes this conclusion.  *See, e.g.*, *Rodriguez v. Lawns of Distinction, Ltd.*, No. 4:07-MC-447CAS, 2008 WL 4552973, at *1 (E.D. Mo. Oct. 7, 2008) (presenting distinguishable facts where movant had previously obtained a MUFTA judgment against party it sought to enjoin from transferring assets); *CitiMortgage, Inc. v. Just Mortg., Inc.*, No. 4:09 CV 1909 DDN, 2013 WL 6538680, at *2 (E.D. Mo. Dec. 13, 2013) (presenting distinguishable facts where movant had previously obtained a MUFTA judgment that it could not collect upon against party it sought to enjoin from transferring assets); *BancorpSouth Bank v. Hall*, No. 6:10-CV-03390-DGK, 2011 WL 529971, at *6 (W.D. Mo. Feb. 7, 2011) (presenting distinguishable facts where movant was a secured creditor who sought preliminary injunction as to avoid disposal of class of preferred shares by conclusion of litigation).

Simply put, a preliminary injunction—especially a preliminary injunction of the magnitude proposed by Plaintiffs—is an "extraordinary remedy."  *See Mgmt. Registry, Inc.*, 920 F.3d at 1183. Plaintiffs have failed to satisfy their obligation of justifying the court's exercise of fashioning such an extraordinary remedy as the threat of irreparable harm is, as made clear by the less-than one-page Plaintiffs devote to it in their Motion for Preliminary Injunction (*see generally* Pls.' Mot. for Prelim. Inj. at 55), non-existent.

---

defendant at risk of insolvency from transferring assets as "an unsecured credit has no rights to property prior to judgment").

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

**C.      Granting Plaintiffs' Requested Injunctive Relief Pre-Judgment Is Premature And Will Cause Severe Harm To Corizon.**

When balancing the equities, the harm to Corizon weighs against granting Plaintiffs their requested injunctive relief.  Again, both preliminary injunctions and the appointment of a receiver are extraordinary remedies.[7]  At bottom, Plaintiffs seek to freeze Defendants' assets.  Such a remedy is extraordinary, yet Plaintiffs devote just one paragraph of their 63-page, 84 exhibit Motion for Preliminary Injunction to grappling with the harm posed to Corizon or the other Defendants.  *See* Pls.' Mot. for Prelim. Inj. at 55–56.[8]

To start, the harm to Corizon must be considered in the context of this litigation's procedural posture.  At this point, Plaintiffs have obtained ***no judgment*** against Corizon.  Under Missouri common law, courts will not appoint a receiver pre-judgment when the defendant lacks meaningful remaining assets to be managed.  *See Yellow Mfg. Acceptance Corp. v. Am. Taxicabs*, 130 S.W.2d 601, 610 (Mo. 1939) (affirming the refusal of the lower court to appoint a receiver where there was no judgment yet obtained against the corporate directors and the corporation at issue did not have remaining assets to be managed).   Such is the case here for Corizon—an entity that is currently winding down and that has no judgment against it.

True, the MUFTA allows a pre-judgment appointment of a receiver.  *See* Mo. Rev. Stat. § 428.039.1(3)(b); *Riegel*, 597 S.W.3d at 708.  But those limited instances where Missouri courts

---

[7] Before appointing a receiver under MUFTA, Missouri courts have ordered briefing and a hearing on the issue separate from other motions.  *See Riegel*, 597 S.W.3d at 706.  If the Court does not reject outright Plaintiffs' request for the appointment of a receiver, Corizon requests full briefing and a hearing on the issue.

[8] This is an interesting approach in light of *Mgmt. Registry, Inc.* where the Eighth Circuit Court of Appeals admonished a movant who "devoted most of its memorandum accompanying its preliminary-injunction motion to chronicling the [defendants'] alleged misdeeds, regardless of their relevance to the motion," in lieu of explaining how the movant satisfied the preliminary injunction factors.  *See* 920 F.3d at 1184.  The court criticized this approach, and noted that it was not the court's responsibility to "try to then connect the dots between [movant's] allegations and its legal theories."  *Id.*

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

have appointed a receiver pre-judgment, such as *Riegel*, are, in all respects, materially distinct from this case.  In *Riegel*, the individual-defendant was the alleged sole owner of other named defendant organizations operating as his alter ego.  *See id.* at 699.  The petition did not criticize a perfectly appropriate divisional merger (as is the case here), but that the individual-defendant moved money around from bank accounts, trusts, and deposits to various organizations he owned to avoid paying a $5,750,000 judgment against him from a different case—a wrongful death case where the individual-defendant allegedly murdered a lawyer who secured a judgment against him. *See id.* at 698–99.  Against that backdrop, plaintiff petitioned for the appointment of a pre-judgment receiver.  *Id.* at 700.  After separate briefing and oral argument, the trial court found that "the facts presented show the existence of conduct on the part of Defendants which constitutes a *great emergency* and places this matter in an *urgent posture* sufficient to require and justify the appointment of a receiver immediately to take charge of, manage, preserve, and protect the assets of the [d]efendants."  *Id.* at 701 (emphasis added).  In confirming the appointment, the Missouri Court of Appeals court recognized that "the appointment of a receiver over a civil defendant's property, during the pendency of litigation, is an extraordinary remedy which should be employed *only in high unusual and compelling circumstances*."  *Id.* at 708 (emphasis added).  A defendant who murdered the last lawyer to secure a judgment against him and who was transferring assets among his own companies is a highly unusual and compelling circumstance.  A healthcare company undergoing a lawful divisional merger under Texas law is not.

Further, the relief sought by Plaintiffs is overly broad.  Missouri courts have long recognized the "necessity that an injunction clearly and specifically describe the acts and things enjoined."  *Nat'l Rejectors, Inc. v. Trieman*, 409 S.W.2d 1, 18 (Mo. 1966) (en banc).  Plaintiffs' vague and broad request falls far short of this standard.  Plaintiffs do not delineate which

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

Defendants and which assets should be overseen by a receiver (*see, e.g.*, Pls.' Mot. for Prelim. Inj. at 56). In effect, their requested relief—appointing a receiver to take charge of all of the Defendants' assets—would be taking charge of the organizations as a whole. This kitchen sink approach is beyond the bounds of sound discretion.

Last, but of equal importance, it is unlikely that the Court even has the power to appoint a receiver over an out-of-state entity like Corizon. In general, "[c]ourts will not interfere to regulate the internal affairs of a foreign corporation and will not appoint a receiver for a foreign corporation where to do so would amount to interference with its internal affairs." 17A Fletcher Cyc. Corp. § 8554. Relevant here:

> A state court will not examine the affairs of a corporation created by another state and appoint a receiver to take possession of and to administer all its assets under the direction of the court pendente lite, since a court of equity never decrees what it cannot compel to be performed, and if a receiver for a foreign corporation were appointed, the receiver would have no power outside of the state in which the court was sitting.

*Id.* (footnotes omitted). Missouri courts have long held the same:

> A court of equity never does a vain act; it never decrees what it cannot compel to be performed. ***If this were a domestic corporation*** the court could… appoint a receiver, if it deemed proper, to take possession of all its assets and administer the same under the direction of the court pendente lite, and if the corporation or its officers should refuse to surrender its books or assets, there would be sufficient executive power forthcoming at the call of the court to enforce its decrees. But the commissioner or the receiver in such case is but the representative of the court. He is, while he keeps within his decree, pro hac vice the court. Where he goes the court goes, and what he does the court does. ***Can the circuit court in this case…go to Minnesota and take charge of the affairs of this corporation there?*** If the corporation should refuse to turn over its books to the commissioner or its money to the receiver, what could the court do? ***A court has no right to put itself in a position where its orders may be treated with contempt…***

*State ex rel. Minn. Mut. Life Ins. Co. v. Denton*, 129 S.W. 709, 712 (Mo. 1910) (emphasis added);

*see also State ex rel. Chicago Cardinals Football Club, Inc. v. Nangle*, 369 S.W.2d 167, 171 (Mo. 1963) ("The attempt here is not to appoint a receiver to preserve a specific asset of the estate

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

located in Missouri but to appoint a receiver to operate the business of an Illinois corporation in which decedent was a stockholder."); *Sidway v. Missouri Land & Live-Stock Co.*, 101 F. 481, 483–84 (C.C.W.D. Mo. 1900) ("[I]n the absence of a statute conferring such jurisdiction the settled rules of equity seem to answer the question [whether to appoint a receiver over an out of state corporation] in the negative.").

The MUFTA does not confer the power to appoint a receiver over an out-of-state corporation. Especially when the receiver would take charge of all of a corporation's assets—in effect, taking control of the corporation. Instead, MUFTA retains "the principles of law and equity" absent an explicit displacement. *See* Mo. Rev. Stat. § 428.054. Those principles of law and equity prohibit the appointment of a receiver to take charge of an out-of-state corporation—not just for Corizon in this instance, but also all other out-of-state corporations who may consider doing business in Missouri.

**D.    Public Interest Considerations Weigh Strongly In Favor Of Denying Plaintiffs' Motion for Preliminary Injunction.**

Finally, the public interest would not be served by granting the injunction Plaintiffs seek against Corizon. Plaintiffs' argument to the contrary—contained in a single sentence in their 63-page, 84 exhibit Motion for Preliminary Injunction—is that "the public has a legitimate interest in ensuring that debtors are not allowed to frustrate legitimate collection efforts by creditors." Pls.' Mot. for Prelim. Inj. at 56. On this point, Corizon agrees.

Indeed, a key purpose of the divisional merger transaction was to protect unsecured creditors—like Plaintiffs—who, absent the divisional merger, would have had no recourse as the keys to Corizon would have been turned to a bankruptcy trustee. The fairness of the divisional merger transaction, including its benefits to unsecured creditors, was thoroughly assessed by independent financial advisors, including as part of a fairness opinion. *See* Pls.' Mot. for Prelim.

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

Inj., Ex. 18, Presentation to Corizon Health, Inc. on Fairness Analysis Pertaining to Proposed Transaction; Pls.' Mot. for Prelim. Inj., Ex. 23, FTI Capital Advisor's Fairness Opinion. Those independent financial advisors determined that a divisional merger—the exact transaction that Plaintiffs criticize—was the fairest, most value-maximizing path forward. *See id.* Only after Corizon's Board determined that it was in the best interests of Corizon Health, its shareholders, and its creditors, did the Board approve the divisional merger transaction. *See* Pls.' Am. Pet., Ex. 28, Plan of Divisional Merger, Recitals. And the fruits of that decision are apparent in the various settlements Corizon has reached with its unsecured creditors since the divisional merger—money that those unsecured creditors would likely not have otherwise been paid if Corizon proceeded with a bankruptcy.

But the public interest considerations do not stop there. Texas's legitimate public interest—long recognized by the Supreme Court—in "promoting stable relationships among parties involved in the corporations it charters" through the enforcement of its corporate laws must also be considered. *CTS Corp. v. Dynamics Corp.,* 481 U.S. 69, 91 (1987). The relief Plaintiffs seek as part their Motion for Preliminary Injunction—effectively, allowing a creditor from one state to upend a sophisticated transaction lawfully conducted under the laws of another state— would hardly serve that interest. It would extinguish it.[9]

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants request this Court to deny Plaintiffs' Motion for Preliminary Injunction as to Corizon.

**Dated:** January 20, 2023

---

[9] To be sure, there is more on the line in this case than the corporate laws of Texas, which is but one of several states with statutory provisions allowing divisional mergers. *See, e.g.*, 15 Pa. Cons. Stat. Ann. § 361; Ariz. Rev. Stat. § 29-2601; 6 Del. C. § 18-217(b)–(c).

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

Respectfully submitted,

 /s/  R. Thomas Warburton
R. Thomas Warburton (MO Bar No. 65477)
BRADLEY ARANT BOULT CUMMINGS LLP
One Federal Place
1819 5th Avenue N.
Birmingham, AL 35203
205.521.8987
twarburton@bradley.com

*Counsel for Tehum Care Services, Inc. d/b/a Corizon
Health, Inc.*

Electronically Filed - BOONE - January 23, 2023 - 12:27 PM

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 20, 2023 the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record:

Patrick J. Stueve
Ethan M. Lange
Jordan A. Kane
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

Philip A. Cantwell
Robyn Parkinson
pcantwell@dowdbennett.com
rparkinson@dowdbennett.com

Samuel P. Hershey
sam.hershey@whitecase.com

 */s/  R. Thomas Warburton*

Electronically Filed - BOONE - January 27, 2023 - 04:29 PM

**IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI**

| | |
|---|---|
| **THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER,** ) ) ) ) | |
| **Plaintiffs,** ) | Case No. 22BA-CV01701-01 |
| ) **v.** ) | |
| ) **TEHUM CARE SERVICE, INC. d/b/a CORIZON HEALTH, INC., CHS TX, INC., and YESCARE CORP.,** ) ) ) ) ) ) | Division 4 |
| **Defendants.** ) | |

**PLAINTIFFS' MOTION FOR LEAVE TO FILE UNDER SEAL PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION AND CERTAIN EXHIBITS**

Plaintiffs The Curators of the University of Missouri and Capital Region Medical Center respectfully request the Court enter an order granting Plaintiffs leave to file under seal: (1) Plaintiffs' Reply In Support of Their Motion for Preliminary Injunction; and (2) the Exhibits thereto that have been designated as "Confidential" by one or more of the parties. In support of the present Motion, Plaintiffs state as follows:

1.      On December 9, 2022, the Court entered the Stipulated Protective Order in this case. The Protective Order allows the parties to designate documents and material as "Confidential," which the Protective Order defines to include information "that the producing party believes in good faith to contain or reflect trade secrets of other confidential, proprietary, and/or sensitive research, development, technical, technological, customer, marketing, financial, commercial, operational, or personnel information." Stipulated Protective Order at ¶ 2.

2.      The Protective Order requires a party to conditionally file under seal any pleading or exhibit containing Confidential Information. *Id.* at ¶ 7.

Electronically Filed - BOONE - January 27, 2023 - 04:29 PM

3.     Plaintiffs' Reply in Support of Their Motion for Preliminary Injunction substantively discusses and incorporates Confidential Information designated by one or more parties to this case, and anticipated Exhibits thereto have been designated Confidential by the same. Plaintiffs take no position on whether information designated as Confidential by any of the Defendants is, in fact, confidential.

Accordingly, Plaintiffs respectfully request that the Court grant this Motion.

Dated: January 27, 2023                    Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

  */s/ Patrick J. Stueve*
Patrick J. Stueve MO Bar # 37682
Ethan M. Lange MO Bar # 67857
Jordan A. Kane MO Bar # 71028
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
816-714-7100 (p)
816-714-7101 (f)
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

**COUNSEL FOR PLAINTIFFS THE
CURATORS OF THE UNIVERSITY OF
MISSOURI AND CAPITAL REGION
MEDICAL CENTER**

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

**IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI**

| | | |
|---|---|---|
| **THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | Case No. 22BA-CV01701-01 |
| **v.** | ) ) | Division 4 |
| **TEHUM CARE SERVICE, INC. d/b/a CORIZON HEALTH, INC., CHS TX, INC., and YESCARE CORP.,** | ) ) ) ) ) | |
| **Defendants.** | ) | |

## <u>PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION</u>

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

ADDITIONAL DISCOVERED FACTS ............................................................................... 2

I.       YesCare and CHS TX Are Setting Up Shop in Missouri..................................... 2

II.      Former Corizon Health CEO Mr. Hyman Also Alleges Defendants' Fraudulent Transfer
         Scheme. ................................................................................................................. 3

III.     Mr. Hyman Alleges Defendants Diverted At Least 3 Million In Company Money Shortly
After Takeover; Engaged in Suspicious Business Dealings. ......................................... 4

ARGUMENT ....................................................................................................................... 7

I.       This Court Has Personal Jurisdiction Over Defendants. ...................................... 7

         A.       Personal Jurisdiction Exists Over YesCare and CHS TX As Recipients of, and
                  Conspirators in, Corizon Health's Fraudulent Transfers. ....................... 7

         B.       Independently, Personal Jurisdiction Exists Over YesCare and CHS TX Because
                  They Are Successors to Corizon Health. ............................................... 10

II.      Plaintiffs Have a Fair Chance of Prevailing on Their Fraudulent Transfer Claims. .......... 12

         A.       The TBOC Does Not Authorize Defendants' Fraudulent Conduct. ..................... 12

         B.       Plaintiffs' Evidence Presumptively Establishes Actual Fraud............................. 13

                  i.       The Effect of the Restructuring Was Plainly to Hinder or Delay. ............ 13

                  ii.      Separately, Defendants' Admissions Are Overwhelming Direct Evidence of
                           Intent to Defraud. ......................................................................... 15

                  iii.     Independently, Missouri Law Presumes the Restructuring was Fraudulent
                           Because of the Presence of Several Badges of Fraud. ............................ 17

                  iv.      YesCare and CHS TX Have Failed to Establish "Good Faith" and
                           "Reasonably Equivalent Value." ..................................................... 19

III.     Plaintiffs Have a Fair Chance of Prevailing on Their Successor Liability Theories. ....... 20

IV.      Plaintiffs Will Suffer Irreparable Harm Absent Provisional Relief................................ 26

V.       The Balance of Harms Weighs in Plaintiffs' Favor........................................................ 29

VI.      The Public Interest Supports an Injunction.................................................................... 31

CONCLUSION.................................................................................................................... 32

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

## **TABLE OF AUTHORITIES**

**Cases**

*A.O.A. v. Rennert*,
   350 F. Supp. 3d 818 (E.D. Mo. 2018)..........................................................23

*Allstate Ins. Co. v. Countrywide Fin. Corp.*,
   824 F. Supp. 2d 1164 (C.D. Cal. 2011) .......................................................25

*ASARCO LLC v. Americas Mining Corp.*,
   396 B.R. 278 (S.D. Tex. 2008) ....................................................................14

*BancorpSouth Bank v. Hall*,
   2011 WL 529971 (W.D. Mo. Feb. 7, 2011) ................................................18

*Bennett v. Rapid Am. Corp.*,
   816 S.W.2d 677 (Mo. banc. 1991)...............................................................11

*C.D. Acquisition Holdings, Inc. v. Meinershagen*,
   2007 WL 184796 (W.D. Pa. Jan. 22, 2007)...................................................8

*Canty v. Morris St. Partners, LLC*,
   2006 WL 1769620 (Pa. Com. Pl. May 23, 2006) ........................................29

*Caterpillar Inc. v. Jerryco Footwear, Inc.*,
   880 F. Supp. 578 (C.D. Ill. 1994) ..........................................................29, 30

*Cent. Freight Lines Inc. v. APA Transp. Corp.*,
   322 F.3d 376 (5th Cir. 2003) .........................................................................9

*Chrysler Corp. v. Ford Motor Co.*,
   972 F. Supp. 1097 (E.D. Mich. 1997)..........................................................25

*CitiMortgage, Inc. v. Just Mortg., Inc.*,
   2013 WL 6538680 (E.D. Mo. Dec. 13, 2013) .................................15, 26, 31

*Citizens National Bank v. Cook*,
   857 S.W.2d 502 (Mo. App. W.D. 1993).......................................................13

*Cole v. Strauss*,
   2014 WL 4055787 (W.D. Mo. Aug. 15, 2014)..............................................18

*Craig v. Simon*,
   980 F.3d 614 (8th Cir. 2020) .......................................................................12

*Derma Pen, LLC v. 4EverYoung Ltd.*,
   2015 WL 641618 (D. Utah Feb. 16, 2015) ..................................................13

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

*Enslein as Tr. for Xurex, Inc. v. Di Mase*,
    2019 WL 2505052 (W.D. Mo. June 17, 2019) ........................................... 22

*Federal Trade Commission v. World Travel Vacation Brokers, Inc.*,
    861 F.2d 1020 (7th Cir. 1988) ..................................................................... 29

*First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*,
    462 U.S. 611 (1983) ..................................................................................... 21

*Green v. Montgomery Ward & Co.*
    775 S.W.2d 162 (Mo. App. W.D. 1989) ...................................................... 10

*Haase v. Chapman*,
    308 F. Supp. 399 (W.D. Mo. 1969) ............................................................. 26

*Harashe v. Flintkote Co.*,
    848 S.W.2d 506 (Mo. App. E.D. 1993) ....................................................... 26

*Higgins v. Ferrari*,
    474 S.W.3d 630 (Mo. App. W.D. 2015) ........................................... 17, 18, 23

*Hilao v. Marcos*,
    25 F.3d 1467 (9th Cir. 1994) ....................................................................... 26

*In re Aldrich Pump LLC*,
    2021 WL 3729335 (Bankr. W.D.N.C. Aug. 23, 2021) ................................ 12

*In re DBMP LLC*,
    2021 WL 3552350 (Bankr. W.D.N.C. Aug. 11, 2021) ................................ 12

*In re Sherman*,
    67 F.3d 1348 (8th Cir. 1995) ....................................................................... 17

*In re The Heritage Organization, L.L.C.*,
    413 B.R. 438 (Bankr. N.D. Tex. 2009) ....................................................... 18

*In re Tronox Inc.*,
    503 B.R. 239 (Bankr. S.D.N.Y. 2013) ................................................. 13, 14

*J.Y.C.C. v. Doe Run Res., Corp.*,
    370 F. Supp. 3d 1031 (E.D. Mo. 2019) ....................................................... 22

*Janvey v. Alguire*,
    647 F.3d 585 (5th Cir. 2011) ....................................................................... 26

*Jet Midwest Int'l Co. v. Jet Midwest Grp., LLC*,
    953 F.3d 1041 (8th Cir. 2020) ..................................................................... 31

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

*Jet Midwest Int'l Co. v. Jet Midwest Grp.*, LLC,
   2020 WL 4819416 (W.D. Mo. May 26, 2020) ................................................................ passim

*Koch Supplies, Inc. v. Charles Needham Indus.*,
   1990 WL 274485 (W.D. Mo. Nov. 14, 1990) ................................................................ 11

*LearSchmidt Inv. Grp., LLC v. AB-Alpine SPE, LLC*,
   2019 WL 3779521 (W.D. Mo. Aug. 12, 2019) .............................................................. 11

*Leitner v. Sadhana Temple of New York, Inc.*,
   2014 WL 12588643 (C.D. Cal. Oct. 17, 2014) .............................................................. 24

*Medicine Shoppe Int'l., Inc. v. S.B.S. Pill Dr., Inc.*,
   336 F.3d 801 (8th Cir. 2003) ........................................................................ 801 (31

*Montgomery Bank, N.A. v. First Horizon Home Loan Corp.*,
   2010 WL 1712848 (E.D. Mo. Apr. 26, 2010) ................................................................ 21

*Mullins v. Testamerica, Inc.*,
   554 F. 3d  (5th Cir. 2009) ............................................................................ 8, 9

*Nat'l Green Gas, L.L.C. v. Estrategy, Inc.*,
   2019 WL 13207472 (W.D. Mo. June 27, 2019) .............................................................. 7

*Osborn v. Prime Tanning Corp.*,
   2011 WL 13291159 (W.D. Mo. Apr. 29, 2011) ............................................................. 23, 25

*Pac. Intermountain Exp. Co. v. Best Truck Lines, Inc.*,
   518 S.W.2d 469 (Mo. App. K.C. 1974) ...................................................................... 21

*Pashaian v. Eccelston Props.*,
   88 F.3d 77 (2d Cir. 1996) .................................................................................. 27

*Rider v. The Young Men's Christian Ass'n of Greater Kansas City*,
   460 S.W.3d 378 (Mo. App. W.D. 2015) ...................................................................... 24

*Roland Machinery Co. v. Dresser Industries, Inc.*,
   749 F.2d 380 (7th Cir.1984) ................................................................................ 29

*S. New England Tel. Co. v. Glob. Naps, Inc.*,
   595 F. Supp. 2d 155 (D. Mass. 2009) ...................................................................... 28

*Schmoll v. ACandS, Inc.* ,
   703 F. Supp. 868 (D. Or. 1988) ............................................................................ 15

*Shaffer v. Health Acquisition Co., LLC*,
   2019 WL 1049392 (W.D. Mo. Mar. 5, 2019) ................................................................ 22

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

*Sleep No. Corp. v. Young*,
    532 F. Supp. 3d 793 (D. Minn. 2021) ........................................................... 31

*Soviet Pan Am Travel Effort v. Travel Comm., Inc.*,
    756 F. Supp. 126 (S.D.N.Y. 1991) ................................................................. 24

*Stewart v. GeoStar Corp.*,
    2008 WL 4155643 (E.D. Mich. Sept. 5, 2008) ............................................. 23

*Stolzenburg v. Biewer Lumber, LLC*,
    2016 WL 3582032 (E.D. Mo. June 28, 2016) ............................................... 11

*Total Renal Care, Inc. v. Bharati Enterprises, L.P.*,
    2011 WL 13248444 (E.D. Mo. Aug. 4, 2011) ............................................... 17

*Trafalgar Power, Inc. v. Aetna Life Ins. Co.*,
    131 F. Supp. 2d 341 (N.D.N.Y. 2001) ........................................................... 29

*United States v. Spencer*,
    2012 WL 4577927 (N.D.Okla. Oct. 2, 2012) ............................................... 14

**Statutes**

Mo. Ann. Stat. § 428.039 ....................................................................................... 30

Mo. Stat. Ann. § 428.024.1 ................................................................................... 13

Tex. Bus. Orgs. Code Ann § 10.901 ..................................................................... 12

**Other Authorities**

Article 9 of the Uniform Commercial Code ......................................................... 13

Restatement (Second) of Conflict of Laws § 313(a) (1971) ............................... 21

Restatement (Second) of Conflicts of Laws § 302 ........................................ 22, 24

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

The facts are not in dispute. As of at least November 2021, Corizon Health intended to "restructure." Driven "by the hundreds of [] litigations"[1] against it, the restructuring was intended to "maximize the prospects of the Company's former business,"[2] "re-allocate assets and liabilities among the resulting entities in a manner that is binding on creditors,"[3] gain a "stronger balance sheet"[4] and put "the Company" on "stronger financial footing."[5] As Corizon Health's—now YesCare's— CEO put it succinctly, the restructuring was intended to allow the Company to "make a fresh start."[6]

Defendants do not dispute the restructuring was an insider transaction. Nor do they dispute that they intended the restructuring to bind Plaintiffs. Indeed, Defendants confirm that they intended for the restructuring, which gutted Corizon Health, leaving behind an empty shell unable to pay its debts, to affect "***all*** of its creditors."[7]

Unable to escape the facts, Defendants' strategy is two-fold. First, they advance purely legal arguments. Ignoring both the letter and the spirit of the TBOC, Defendants advocate that the TBOC insulates their restructuring from fraudulent transfer laws because it was a "by-the-book" divisional merger. That's not true. The TBOC is not a safe harbor; technical compliance with its underlying legal requirements does not insulate Defendants from what the law presumptively deems a fraudulent transfer. Seemingly recognizing this, Defendants next argue this Court lacks jurisdiction. But Defendants' reincorporation in Texas, a place where they had and have no business, in order to effect their restructuring scheme does not rob this Court of jurisdiction. Nor

---

[1] YesCare and CHS TX's Opposition to Plaintiffs' Motion for Preliminary Injunction ("YesCare Opp.") at ¶ 27.
[2] *Id.* at ¶ 8.
[3] Corizon Health's Opposition to Plaintiffs' Motion for Preliminary Injunction ("Corizon Opp.") at ¶¶ 7-8.
[4] *See* Ex. A to Corizon Opp. at Corizon0011602.
[5] **Ex. 45**, YesCare Employee Q&A, YESCARE-CHS-00000493.
[6] *Id.*
[7] YesCare Opp. at ¶ 25 (emphasis in original).

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

does it render Texas a forum with a more significant relationship to the case for purposes of successor liability.

Those arguments failing, Defendants dedicate the remainder of their briefing to previewing the scorched earth tactics they will employ if the Court orders any injunctive relief. Defendants threaten to declare bankruptcy, "deprive the tens of thousands of prisoners of their constitutional right to adequate medical care," lay off their employees, and "prejudice hundreds of other contingent litigation claimants."[8]

But these tactics lack teeth. Not only because YesCare and CHS TX have represented they are on strong financial footing, generate over $300 million in revenue annually, and are set to begin work on a billion-dollar contract—but because this Court has broad authority to fashion equitable relief that protects Plaintiffs' interests while allowing Defendants to continue with their business. For the foregoing reasons, Plaintiffs respectfully request this Court grant their Motion for Preliminary Injunction.

## ADDITIONAL DISCOVERED FACTS

Since the filing of Plaintiffs' Motion, additional facts have come to light that provide further support for Plaintiffs' claims and requested injunctive relief.

### I.    YesCare and CHS TX Are Setting Up Shop in Missouri.

On June 6, 2022, CHS TX filed an Application for Certificate of Authority for a Foreign For-Profit Corporation with the Missouri Secretary of State's Office.[9] Then, on November 29, 2022, CHS TX filed a Registration of Fictitious Name with the Missouri Secretary of State, stating it is doing business in Missouri as "YesCare."[10]

---

[8] *Id.* at ¶ 27.
[9] **Ex. 87**, June 6, 2022 CHS TX Application for Certificate of Authority with Missouri Secretary of State (authorizing CHS TX to do business in Missouri).
[10] **Ex. 88**, November 29, 2022 CHS TX's Registration of Fictitious Name with Missouri Secretary of State.

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

On April 4, 2022, Sara Tirschwell organized CHS MO, LLC in Missouri, stating its purpose was "[t]o provide correctional healthcare services."[11] Tirschwell lists CHS MO, LLC's registered agent as CT Corporation System at 120 S. Central Ave in Clayton, Missouri—the same registered agent previously used by Corizon, LLC.[12] Tirschwell lists the "principle office address" of CHS MO, LLC as 3411 Yoakum Blvd Suite 2901—which is Tirschwell's personal residence, and is also listed as YesCare's registered office.[13] On January 13, 2023, CHS MO, LLC *also* filed a Registration of Fictitious Name with the Missouri Secretary of State, stating it, too, is doing business in Missouri as "YesCare."[14]

## II.    Former Corizon Health CEO Mr. Hyman Also Alleges Defendants' Fraudulent Transfer Scheme.

On December 30, 2022, Corizon Health's former CEO James Hyman, ousted as part of the restructuring, filed a lawsuit in the Middle District of Tennessee alleging the restructuring was indeed intended to frustrate Corizon Health's creditors.

Mr. Hyman alleges that in December 2021, new owners (whose identities were, and remain, unknown to him) purchased Flacks Group's interest in M2 EquityCo, LLC and/or M2Holdco, LLC.[15] Mr. Hyman alleges these new owners "performed no due diligence" prior to the purchase.[16] Mr. Hyman alleges that "[a]lthough unfathomable to Mr. Hyman at the time, the reason for the new owners' lack of due diligence became clear over the ensuring months—the liabilities did not matter to them."[17] Mr. Hyman alleges that "from the outset, the primary objective

---

[11] **Ex. 89**, CHS MO, LLC's Articles of Organization.
[12] *Id.*; *see* Corizon's Answer to Pls' Original Petition, filed 7/11/22 at ¶ 4 (stating "Corizon admits that it can be served through its registered agent as listed in Paragraph 4 of the [Petition]"); *see also* Original Petition ¶ 4 (alleging Corizon, LLC's registered agent is "120 South Central Avenue, Clayton, Missouri").
[13] *See* PI Motion, at p. 35.
[14] **Ex. 90**, January 13, 2023 CHS MO's Registration of Fictitious Name with Missouri Secretary of State.
[15] **Ex. 91**, Hyman v. YesCare, et al., Complaint ¶ 34.
[16] *Id.* at ¶ 35.
[17] *Id.* at ¶ 60.

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

of [Corizon Health's] divisional merger and forthcoming bankruptcy was to allow Defendants to operate outside of bankruptcy while subjecting Mr. Hyman and other creditors to the mandatory stay that would deprive such creditors of any recovery."[18]

### III.    Mr. Hyman Alleges Defendants Diverted At Least 3 Million In Company Money Shortly After Takeover; Engaged in Suspicious Business Dealings.

On December 8, 2021, Mr. Hyman alleges he discovered that Mr. Lefkowitz had ordered a wire transfer for $3 million be sent from Valitas to Geneva Consulting, LLC as payment for future services vaguely described as "Corporate Restructuring."[19]

Mr. Hyman alleges Mr. Lefkowitz had signed a "consulting agreement" with Geneva Consulting, LLC on behalf of Valitas, and by Jay Leitner on behalf of Geneva Consulting, LLC.[20]

Mr. Hyman also alleges that he emailed Mr. Lefkowitz, concerned about the $3 million payment to an entity apparently owned or controlled by Mr. Lefkowitz.[21] Mr. Hyman characterized this transfer as "a dissipation of Valitas' financial resources away from the daily health needs of its contracted clients, which could lead to a crisis for thousands of detainees and incarcerated prisoners."[22]

Less than ten minutes later, Mr. Lefkowitz responded that the payment was for "multiple Corizon litigation matters to get it settled before year end," even though Corizon Health was a separate entity at the time.[23] Then, via letter dated December 9, 2021, Mr. Lefkowitz instructed Mr. Hyman to "refrain from making any material company decisions or issue any orders to any of the company and all its subsidiaries' staff until the interim board will have a chance to install a permanent governing body of directors and officers will have the opportunity to evaluate each of

---

[18] *Id.* at ¶ 79.
[19] *Id.* at ¶ 44.
[20] *Id.* at ¶ 45.
[21] *Id.* at ¶ 46.
[22] *Id.*
[23] *Id.* at ¶ 47.

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

the former Corizon Health executives **for their new role in the restructuring of the company**."[24]

Mr. Lefkowitz signed the letter as "Interim CEO and Member of the Board."[25]

Mr. Hyman alleges that "[u]pon information and belief, the $3 million wire was part of Defendants' scheme to redirect assets and silo liabilities into a shell company via the divisional merger[.]"[26] On December 10, 2021, Mr. Hyman alleges he sent an email to Mr. Lefkowitz, expressing his concern about how the transition was being handled, stating:

> I take this opportunity to share a concern with you and the Board, that my refraining from engaging in my contractual duties, as you have directed in your letter, without my being advised who has been and who has not been consulted and/or notified of this intended course, may be an unwitting breach by the Company of important contractual and fiduciary duties to the Company's many stakeholders, who rely on the uninterrupted continuity of the Company's operations and decision-making processes to deliver patient care and respond to customer concerns.[27]

Mr. Lefkowitz responded an hour later instructing Mr. Hyman to take a leave of absence and stating:

> Be also aware, should you in any way have any negative communication that impacts the company, we will hold you liable for such damages.
>
> We will deal in short order with your employment termination by all the options available to the company, either through a friendly severance or through aggressive litigation with you, or alternatively through a bankruptcy filing which will wipe out all of your claims…[w]e will have to wait until the new CEO is in place with the new governing body in place.[28]

Mr. Hyman resigned.[29]

Shortly after he resigned, Mr. Hyman alleges another suspect transaction occurred.[30]

Another one of Lefkowitz, Leitner, and Gefner's companies, called Seven Trade, LLC purchased

---

[24] *Id.* at ¶ 48 (emphasis added).
[25] *Id.*
[26] *Id.* at ¶ 49.
[27] *Id.* at ¶ 50.
[28] *Id.* at ¶ 51.
[29] *Id.* at ¶57.
[30] *Id.* at ¶ 57.

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

COVID test kits for immediate resale to the "deeply insolvent" Corizon Health under its control

at a 57% markup (for a total of just over $3.2 million).[31]

---

[31] *Id.* at ¶ 58.

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

## ARGUMENT

**I.    This Court Has Personal Jurisdiction Over Defendants.**

Defendants fail to raise a colorable challenge to this Court's jurisdiction over YesCare and CHS TX.

### A.    Personal Jurisdiction Exists Over YesCare and CHS TX As Recipients of, and Conspirators in, Corizon Health's Fraudulent Transfers.

YesCare argues that where "the only contact between a defendant-transferee and the forum state is the claimed impact on an in-state creditor, personal jurisdiction over the transferee does not exist." YesCare Opp. at ¶ 23. But that is not the only contact here. Not only did the fraudulent transfer affect in-state creditors (Plaintiffs), but the *debtor* was a Missouri limited liability company (Corizon, LLC) whose contract with Plaintiffs, and subsequent performance and breach, were located in Missouri. Courts applying Missouri law acknowledge personal jurisdiction over non-resident defendants-transferees in these circumstances. *See, e.g., Nat'l Green Gas, L.L.C. v. Estrategy, Inc.*, 2019 WL 13207472, at *5 (W.D. Mo. June 27, 2019).

Defendants fail to meaningfully distinguish Plaintiffs' authority. YesCare argues *Nat'l Green Gas, L.L.C.* doesn't apply because the court found personal jurisdiction over a non-resident transferee where, along with the effects felt by Missouri creditors, the debtor had its principal place of business in Missouri. YesCare Opp. at ¶ 24. But that is also the case here: immediately before the Restructuring, Corizon, LLC was a Missouri limited liability company.[32] It was so when it contracted with Plaintiffs; when it contracted with the MDOC for the provision of services to Missouri inmates; when it performed its services in Missouri; when it received funds from the MDOC; when it failed to pay Plaintiffs; and when it developed a scheme to fraudulently transfer its assets, including $22.3 million in unsecured funds from its Corizon, LLC account to YesCare

---

[32] *See* Amended Answer to First Amended Petition ¶ 3.

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

and CHS TX. Defendants provide no authority for the proposition that *Nat'l Green Gas, L.L.C.* is rendered inapplicable by their conversion of Corizon, LLC to a Texas entity in the restructuring as part of the fraudulent scheme to shed its assets. Thus, YesCare's argument that "neither Corizon nor CHS TX nor YesCare is a Missouri corporation or has any other connection to Missouri sufficient to support the Court's exercise of personal jurisdiction" is wrong, and ignores Corizon Health's repeated admissions that this Court retains personal jurisdiction over it.[33]

YesCare next argues *C.D. Acquisition Holdings, Inc. v. Meinershagen*, 2007 WL 184796, at *1 (W.D. Pa. Jan. 22, 2007) doesn't apply because the "alleged transactions were specifically aimed at the forum state." YesCare Opp. at ¶ 25.[34] YesCare claims that Corizon Health engaged in the restructuring for "reasons unrelated to Plaintiffs," yet, in the same sentence, confirms that the restructuring was in fact intended to affect its mounting creditors. YesCare Opp. at ¶ 25 (claiming the restructuring was a step to "improve the value available to **all** of its creditors") (emphasis in original). Plaintiffs are two of those creditors. By admitting that the restructuring was intended to affect its creditors, including Plaintiffs, YesCare admits they targeted their conduct at the forum state. YesCare militates no support for the proposition that personal jurisdiction does not exist because the restructuring was intended to affect creditors *in addition to* Plaintiffs.

*Mullins v. Testamerica, Inc.*, 554 F. 3d 386 (5th Cir. 2009) is instructive here. In that case, the Fifth Circuit held that an out of state transferee of fraudulently conveyed assets in violation of UFTA was subject to personal jurisdiction in Texas, where the transferee was more than a mere passive recipient of a fraudulent transfer, but rather was an active, insider participant/conspirator in that transfer. The court concluded that these acts in "engineering a transfer that knowingly

---

[33] *See* Amended Answer ¶¶ 8-9.
[34] Defendants also argue this case is inapposite because it involved a "judgment creditor," but provide no support for why the distinction of "judgment creditor" versus "creditor" is relevant in the personal jurisdiction analysis. *See id.*

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

impaired the rights of a Texas resident under agreements centered in Texas substantiates that he purposefully aimed his intentionally tortious conduct at the forum state." *Id.* at 403; *see Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 383–84 (5th Cir.2003) (holding that the defendant shipper's awareness of and interference with a contractual relationship between two Texas-based companies whose business relationship centers in Texas and that resulted in harm to the plaintiff in Texas supported personal jurisdiction in Texas). So too, here. YesCare and CHS TX are not arm's-length, passive recipients of fraudulent transfers from Corizon Health. Rather, they are entities created and controlled by Corizon Health's board for the express purpose of engineering a transfer that knowingly impaired the rights of Missouri creditors under large-scale agreements centered in Missouri.[35]

This Court's personal jurisdiction over these entities is made even more obvious by the fact that the company is currently setting up shop and trying to do business in Missouri under the "YesCare" name, leaving a trail of unpaid Corizon, LLC creditors in its wake. Indeed, after benefiting from the fraudulent transfer of millions in assets from Missouri entity Corizon, LLC, CHS TX, Inc. (and an entity called "CHS MO, LLC") have submitted filings in Missouri to operate under the "YesCare" name. Defendants cannot have their cake and eat it too. This Court has personal jurisdiction over YesCare and CHS TX.

---

[35] **Ex. 87**, June 6, 2022 CHS TX Application for Certificate of Authority with Missouri Secretary of State (authorizing CHS TX to do business in Missouri); **Ex. 88**, November 29, 2022 CHS TX's Registration of Fictitious Name with Missouri Secretary of State (stating CHS TX, Inc. is "doing business" as "YesCare"); **Ex; 89**; **Ex. 90**, January 13, 2023 CHS MO's Registration of Fictitious Name with Missouri Secretary of State (stating CHS MO, LLC is "doing business" as "YesCare").

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

**B.     Independently, Personal Jurisdiction Exists Over YesCare and CHS TX Because They Are Successors to Corizon Health.**

Next, YesCare and CHS TX argue that this court doesn't have personal jurisdiction over them under successor liability principles "because…neither entity is a successor to Corizon." YesCare Opp. ¶ 26. As is fully laid out in Plaintiffs' Motion for Preliminary Injunction, Argument Section II, YesCare and CHS TX undisputedly satisfy the elements of three independent methods for establishing successor liability test in Missouri.

YesCare and CHS TX argue that even if they are successors to Corizon Health, they are not subject to this Court's personal jurisdiction because they don't have "sufficient contacts with Missouri to support personal jurisdiction," and "the jurisdictional contacts of Corizon may not be attributed to" CHS TX and YesCare. YesCare Opp. ¶¶ 23, 26. Not so.

In *Green v. Montgomery Ward & Co.* cited positively elsewhere in YesCare's Opposition (*see* YesCare's Opp. ¶ 41), the Western District Court of Appeals explained that in successor liability, "the close alignment" of the successor "to the predecessor is enough to bind" the successor "to its predecessor's jurisdictional contacts." 775 S.W.2d 162, 166 (Mo. App. W.D. 1989). The court affirmed that, "[a]s a 'mere continuation' of [the predecessor], [the successor] is subject to the personal jurisdiction of the Missouri courts if [the predecessor] had contacts with the state sufficient to allow this exercise of personal jurisdiction." *Id.* The court explained that "[t]he rationale for this is quite simple. It would be all too easy for a corporation to immunize itself from liability by utilizing such a device as a change of name." *Id.* Thus, the court explained that the proper question in this analysis is "whether the contacts [the predecessor] had with Missouri are sufficient to establish long-arm jurisdiction." *Id.*

The Missouri Supreme Court, en banc, citing *Green* and a wealth of other cases, has confirmed that "a corporation may be subject to personal jurisdiction if its predecessor had

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

sufficient contacts with the state to allow the exercise of jurisdiction." *Bennett v. Rapid Am. Corp.*, 816 S.W.2d 677, 678 (Mo. banc. 1991). Federal courts applying Missouri law likewise confirm this principle. In *LearSchmidt*, the Western District of Missouri, citing *Green*, explained that for personal jurisdiction over a purported successor, "the question is whether the contacts [the predecessor] had with Missouri are sufficient to establish jurisdiction over its successor." *LearSchmidt Inv. Grp., LLC v. AB-Alpine SPE, LLC*, 2019 WL 3779521, at *1-6 (W.D. Mo. Aug. 12, 2019). Finding that the defendant was a "mere continuation" of its predecessor, the Court confirmed that the defendant would be "subject to the personal jurisdiction of the Missouri courts" if its predecessor "had contacts with the state sufficient to allow this exercise of personal jurisdiction." *Id.*

YesCare and CHS TX fail to dispute this authority,[36] and the cases they cite do not require a contrary result. *See Koch Supplies, Inc. v. Charles Needham Indus.*, 1990 WL 274485, at *3 (W.D. Mo. Nov. 14, 1990) (explaining jurisdiction over successor company was proper even though the defendant "engaged in minimal amounts of business in Missouri," because the facts nonetheless established that it was a "mere continuation" of the predecessor and "purposefully availed itself of the privileges and benefits of conducting activities within Missouri"); *Stolzenburg v. Biewer Lumber, LLC*, 2016 WL 3582032, at *1 (E.D. Mo. June 28, 2016) (denying motion to dismiss for lack of personal jurisdiction over alleged successor company, Biewer, where the plaintiff sufficiently alleged that Biewer and its predecessor Green Tree were controlled by the same people, and that Biewer had expressly or impliedly agreed to assume liabilities of Green tree). Thus, this Court has personal jurisdiction over YesCare and CHS TX.

---

[36] YesCare seeks to distinguish *LearSchmidt* by arguing "jurisdiction was not contested" in that case. YesCare Opp. at fn. 44. But as the above analysis demonstrates, that reading of *LearSchmidt* is inaccurate; jurisdiction *was* contested; AB-Alpine had moved to dismiss the plaintiff's claims for lack of personal jurisdiction, prompting an evidentiary hearing and the Court's ruling. *Id.* at *1.

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

**II.      Plaintiffs Have a Fair Chance of Prevailing on Their Fraudulent Transfer Claims.**

This is the most important factor. *Craig v. Simon*, 980 F.3d 614, 617 (8th Cir. 2020). And it weighs strongly in Plaintiffs' favor.

**A.      The TBOC Does Not Authorize Defendants' Fraudulent Conduct.**

Corizon Health complains that Plaintiffs "make no effort to even address Texas law as part of their Motion." Corizon Opp. at 10. But as Plaintiffs explain in Section I of their Motion, the TBOC "does not permit that company to thereby prejudice its creditors." *In re Aldrich Pump LLC*, 2021 WL 3729335, at *27 (Bankr. W.D.N.C. Aug. 23, 2021). None of the Defendants address this. Indeed, the TBOC "explicitly states that the merger provisions do not 'abridge any right or rights of any creditor under existing laws.'" *Id.* (citing Tex. Bus. Orgs. Code Ann § 10.901). This has been the "unwavering and stated policy behind the Texas divisional merger statute since it was first adopted," memorialized in both the text of the statute and its legislative history. *Id.* (explaining the legislative history of the TBOC reflected that "creditors would continue to have the protections provided by the Uniform Fraudulent Transfer Act and other existing statutes that protect the rights of creditors"). Two recent bankruptcy court cases confirm: the Texas divisive merger statute did not relieve companies of obligations under preexisting agreements. *In re Aldrich Pump LLC*, 2021 WL 3729335, at *27–30 (Bankr. W.D.N.C. Aug. 23, 2021); *In re DBMP LLC*, 2021 WL 3552350, at *24–26 (Bankr. W.D.N.C. Aug. 11, 2021). In short, Plaintiffs Motion is not a request for this Court for analyze a "lawful corporate transaction[]" "with total disregard for the law of the state of incorporation,"[37] but is a request aligned with the policy of the very statute Defendants seek to invoke.

---

[37] Corizon Opp. at 9.

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

**B.      Plaintiffs' Evidence Presumptively Establishes Actual Fraud.**

Under MUFTA, a transfer is fraudulent if "the debtor made the transfer or incurred the obligation ... [w]ith actual intent to hinder, delay or defraud any creditor of the debtor." *See* Mo. Stat. Ann. § 428.024.1.(1); *Jet Midwest Int'l Co. v. Jet Midwest Grp.*, LLC, 2020 WL 4819416, at *49 (W.D. Mo. May 26, 2020), *amended*, 2020 WL 13049652 (W.D. Mo. Aug. 6, 2020).

The focus of the inquiry is "on the intent of the debtor," as opposed to the transferee's intent. *Jet Midwest Int' Co.*, 2020 WL 4819416, at *49. Corizon Health is the debtor. Yet, nowhere in Corizon Health's opposition does it dispute intent. Instead, it simply states it was "faced with no other option." Corizon Opp. at p. 10. Indeed, Corizon Health's only argument against Plaintiffs' MUFTA claims is that there was no "transfer" of assets. Corizon Opp. at 10, 11.[38] Because this argument fails on its face, Plaintiffs have established a likelihood of success on the merits.

*i.      The Effect of the Restructuring Was Plainly to Hinder or Delay.*

The best evidence of a debtor's intent is the effect of the debtor's conduct. *Citizens National Bank v. Cook*, 857 S.W.2d 502 (Mo. App. W.D. 1993). If the necessary consequence of a conceded transaction was defrauding another, then the transaction itself is conclusive evidence of a fraudulent intent. *Id.* (explaining a party cannot be permitted to say that he did not intend the necessary consequence of his own voluntary act).

There can be no dispute that the effect of Defendants' actions was, at the very least, to "hinder or delay" Plaintiffs from collecting the amounts owed under the Agreement. *In re Tronox Inc.* is instructive here. 503 B.R. 239, 280 (Bankr. S.D.N.Y. 2013). In that case, which was a non-

---

[38] As is fully laid out in Plaintiffs' Opposition to Defendants' Motion to Dismiss, Section II, and Plaintiffs' Motion for Preliminary Injunction, Section I, this argument lacks merit. The TBOC is not a safe harbor; If a divisional merger is fraudulent, it is voidable, just as any other transfer under MUFTA. *See, also, e.g., Derma Pen, LLC v. 4EverYoung Ltd.*, 2015 WL 641618, at *5 (D. Utah Feb. 16, 2015) (a debtor's "technical compliance with the underlying legal requirements for a grant of lien under Article 9 of the Uniform Commercial Code does not insulate him from a fraudulent transfer attack").

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

Texas two-step spinoff, Kerr-McGee Corporation (Old KM) was a chemical and energy company plagued with onerous liabilities. To rid itself of those liabilities, Old KM created a new parent entity, NKM, to which it transferred all of Old KM's equity in its profitable subsidiaries. Old KM retained all of its liabilities, and renamed itself "Tronox." After suit was filed, the court ruled that Defendants were liable for actual and constructive fraud under Oklahoma's Uniform Fraudulent Transfer Act. The court found that it was clear from the evidence that "there can be no dispute that [Old KM] acted to free substantially all of its assets—certainly its most valuable assets—from 85 years of environmental and tort liabilities." *Id.* at 280. The court explained that "[t]he obvious consequence of this act was that the legacy creditors would not be able to claim against 'substantially all of [old KM's] assets,' and with a minimal asset base against which to recover in the future, would accordingly be 'hindered or delayed' as the direct consequence of the scheme." *Id.* at 280; *see also United States v. Spencer*, 2012 WL 4577927 (N.D.Okla. Oct. 2, 2012) (concluding the debtor "admitted his intent to delay collection of the debt" where the defendant testified that he put funds in trust to delay his principal creditor and gain time so he could make enough money to pay the debt); *ASARCO LLC v. Americas Mining Corp.*, 396 B.R. 278, 386 (S.D. Tex. 2008) (observing that "a transfer may be made with fraudulent intent even though the debtor did not intend to harm creditors but knew that by entering the transaction, creditors would inevitably be hindered, delayed or defrauded").

So too, here. Corizon Health acted to free substantially all of its assets from years of mounting tort and professional liabilities. The obvious consequence of this act was that its unsecured creditors would not be able to claim against substantially all of Corizon Health's assets, and with a minimal asset base against which to recover, would accordingly be "hindered or delayed" as a direct consequence of the scheme.

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

> ii.     *Separately, Defendants' Admissions Are Overwhelming Direct Evidence of Intent to Defraud.*

While fraudulent intent is rarely proven by direct evidence, this is the rare case in which Defendants' own admissions evidence direct intent to defraud. *See, e.g., CitiMortgage, Inc. v. Just Mortg., Inc.*, 2013 WL 6538680, at *2 (E.D. Mo. Dec. 13, 2013) (explaining badges of fraud are typically used to prove intent because direct evidence of fraud is "rare").

*Schmoll v. ACandS, Inc.* is instructive here. 703 F. Supp. 868, 872 (D. Or. 1988), *aff'd*, 977 F.2d 499 (9th Cir. 1992). In that case, the district court found defendant Raymark Corporation was liable for the debts of its pre-restructuring predecessor, acknowledging statements made by the company evidencing that it carried out the restructuring to escape liability, including:

- "In response to Raymark Corporation's financial difficulties…officers and directors, with the advice of counsel, developed the sophisticated corporate restructuring scheme." *Id.* at 873;

- Raymark Corporation claimed in its annual report that the company's strategy was "to protect and enhance shareholder investment, to maximize the amounts available for deserving asbestos-injured claimants, and to limit exposure for asbestos claims only to businesses currently threatened, thus enabling our other businesses and any new business opportunities to grow, unshadowed by the cloud of [] liability." *Id.* at 873-74;

- Raymark Corporation stated the purpose of the restructuring was also "to gain access to new sources of capital and borrowed funds which could be used to finance the acquisition and operation of new business in a corporate restructure." *Id.* at 874.

The Court concluded, on these facts, that "[t]here is no just reason to respect the integrity of these transactions," because "although the corporate restructuring meets the technical formalities of corporate form, it was designed with the improper purpose of escaping asbestos-related liabilities." *Id.* at 874. The Court noted it was "ironic" that while Raymark "pride[s] itself" for not filing bankruptcy, it was "in effect attempting a bankruptcy-like reorganization without affording creditors the protections of a formal bankruptcy." *Id.*

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

That's exactly what Corizon Health has done, here. And like in *Schmoll*, Defendants' own statements reveal their intent:

- "The 2022 Corporate Restructuring allowed Corizon to avoid bankruptcy;"[39]

- "Given Corizon's financial position, it did not have the financial wherewithal to satisfy its defaulted secured debt, let alone its unsecured debt and litigation claims….In early 2022, Corizon's Board, with the help of counsel, began considering restructuring alternatives" including "a divisional merger" under the TBOC, which allows corporate entities to "re-allocate assets and liabilities among the resulting entities in a manner that is binding on creditors;"[40]

- "The Company was deeply insolvent and heading towards bankruptcy as a result of mounting litigation expenses related to professional liability claims…Corizon faced several hundred lawsuits at the time of the 2022 Corporate Restructuring…Corizon determined that the fairest and most value-maximizing path forward, which would also maximize the prospects of the Company's former business as a going concern, was to engage in a divisional merger…;"[41]

- Corizon's financial "challenges have negatively impact the Company's ability to retain existing contracts, as well as the Company's ability to win new business. Competitors with stronger balance sheets have a distinct advantage….For these reasons, Management believes it is critical that the Company…evaluate all available restructuring alternatives."[42]

- "**Why are we making this change?** After digging in, we decided that this was the best path forward—to make a fresh start….This change puts us on stronger financial footing and broadens our access to resources that we have never had"[43]

- "This affords our re-branded organization with….strong financial and leadership stability"[44]

In fact, Defendants repeatedly admit that Corizon Health's "decision to undergo the 2022 Corporate Restructuring," was intended to affect Corizon Health's creditors (what Defendants charitably characterize as an intent to "preserve value" for them), and to "maximize the prospect

---

[39] YesCare Opp. at ¶ 51.
[40] Corizon Opp. at ¶¶ 7-8.
[41] YesCare Opp. at ¶ 8.
[42] Ex. A to Corizon Opp. at 0011602.
[43] **Ex. 45**, YesCare Employee Q&A, YESCARE-CHS-00000493.
[44] **Ex. 16**, YesCare's 6.1.22 Invoicing Talking Points Email - YESCARE-CHS-00000446-449 at 448.

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

of the Company's former business." *See, e.g.,* YesCare Opp. at ¶¶ 1; fn. 21; 25; 31; Corizon Opp. at p. 18 ("a key purpose of the divisional merger" was "protect unsecured creditors").

Thus, even without the badges of fraud, Plaintiffs have established a fair chance of succeeding on the theory that Defendants acted to defraud, hinder or delay creditors when they executed the Restructuring.

### iii.    *Independently, Missouri Law Presumes the Restructuring was Fraudulent Because of the Presence of Several Badges of Fraud.*

Separate and apart from these statements of intent, the restructuring displays virtually all the badges of fraud. The badges of fraud are not "elements;"[45] while the presence of "any one" of the eleven badges of fraud "can be a sufficient basis on which to find the requisite intent," the presence of "more than one" of the eleven badges of fraud "strongly indicates that the debtor did, in fact, possess the requisite intent" to defraud. *Jet Midwest Int'l Co.*, 2020 WL 4819416, at *51. Because several badges of fraud are present, a presumption arises that the restructuring was fraudulent. *Higgins v. Ferrari*, 474 S.W.3d 630, 638 (Mo. App. W.D. 2015); *See also In re Sherman*, 67 F.3d 1348, 1354 (8th Cir. 1995) (explaining the confluence of several badges of fraud constitutes "conclusive evidence" of actual intent to defraud).

None of the Defendants dispute that the assets transferred were to insiders.[46] Likewise, none of the Defendants dispute that Corizon Health retained control of the assets transferred. YesCare and CHS TX dispute that the transaction was "concealed" because the corporate restructuring was "consummated through a public filing" and YesCare "publicly announced" it after the fact. YesCare Opp. at ¶ 34. But this argument lacks merit. *See, e.g., Total Renal Care,*

---

[45] *See* YesCare Opp. at ¶ 36 (characterizing the badges of fraud as elements).

[46] Since Plaintiffs' Motion, Plaintiffs have received corporate filings further confirming the insider-status of the transaction. **Ex. 92**, 2021 Annual Report of Valitas Intermediate Holdings, Inc. (establishing that David Gefner, Isaac Lefkowitz, Jay Leitner, and Abe Goldberger are Valitas Intermediate Holdings, Inc.'s board of directors; Valitas owns Corizon Health).

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

*Inc. v. Bharati Enterprises, L.P.*, 2011 WL 13248444, at *5 (E.D. Mo. Aug. 4, 2011) (rejecting the defendants' argument that the plaintiff had failed to plead the transfer was concealed because the quitclaim deed was a matter of public record, explaining defendant deliberately left out any mention of the transfer in a deposition taken three months after the transfer and implied it still owned the property). None of the Defendants dispute that before the transfer was made, Corizon Health had been threatened with suit.[47] None of the Defendants dispute that the transfer was of substantially all of Corizon Health's assets. None of the Defendants dispute that Corizon Health was insolvent or became insolvent shortly after the transfer.[48] And it cannot be reasonably disputed that the transaction occurred shortly after a substantial debt was incurred. Together, these factors establish a presumption and "strong inference" of fraud, and Plaintiffs have a high likelihood of success on their MUFTA claim. *See, e.g., BancorpSouth Bank v. Hall*, 2011 WL 529971, at *5 (W.D. Mo. Feb. 7, 2011) (granting plaintiffs' motion for preliminary injunction, finding plaintiffs were likely to succeed on the merits of their MUFTA claim where four badges of fraud were present).

Once the presumption of fraud has been established, the burden shifts to the debtor who bears the burden to prove that the transfer was not made for the purpose to hinder, delay or defraud creditors. *Higgins*, 474 S.W.3d at 638; *Jet Midwest Int'l Co.*, 2020 WL 4819416, at *50. This is "a heavy burden," and requires more than simply "explain[ing] away natural inferences[.]" *Cole v. Strauss*, 2014 WL 4055787, at *7 (W.D. Mo. Aug. 15, 2014), *aff'd*, 608 F. App'x 438 (8th Cir. 2015).

---

[47] All Defendants make much ado about how they were planning the restructuring *before* Plaintiffs sent their second demand letter in April of 2022. *See* Corizon Opp. at fn.1; YesCare Opp. at ¶ 9. This argument lacks legal significance. As is fully laid out in Plaintiffs' Motion, the April 2022 demand letter was preceded not only by a demand letter in *November* 2021, but months of repeated attempts by Plaintiffs to collect the amounts owed. This badge is undisputedly satisfied. *See, e.g., In re The Heritage Organization, L.L.C.*, 413 B.R. 438, 473–74 (Bankr. N.D. Tex. 2009) (finding demands for repayment sufficient to satisfy this badge).

[48] "Corizon was facing insolvency at the time of its financial restructuring." YesCare Opp. at ¶ 35.

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

Because Corizon Health does not attempt to dispute intent, it has failed to meet this burden. Indeed, the only evidence Corizon Health attaches to its Opposition is a presentation to Corizon Health's board which conspicuously *redacts*, among other things, Corizon Health's "core objectives" for the restructuring.[49] Corizon Health otherwise lends no support for the proposition that they did not intend to delay, hinder, or defraud.[50] While Corizon Health's Opposition generally claims the restructuring was intended to "protect unsecured creditors" (Corizon Opp. at 18), this is not a straight-faced argument. Before the restructuring, Corizon, LLC had $22.3 million in unsecured funds with which it could have paid Plaintiffs. Now, those funds are with YesCare— and Corizon Health claims it cannot pay Plaintiffs because they have no assets. How did this transaction protect Plaintiffs?

> **iv.    *YesCare and CHS TX Have Failed to Establish "Good Faith" and "Reasonably Equivalent Value."***

In response to an actual fraud claim, the transferee may attempt to assert, as an affirmative defense, that the transferee "took in good faith and for a reasonably equivalent value." *Jet Midwest*

---

[49] Ex. A to Corizon Opp. at Corizon011604.

[50] In its factual background (though not in the argument section of its Opposition) Corizon Health claims it "ensure[d]" that the Restructuring was "fair" because it engaged FTICA to render a "fairness opinion." Corizon Opp. at ¶¶ 9-10. Corizon Health alleges FTICA "conducted widescale due diligence," in preparing this opinion; a claim belied by FTICA's representations in the actual report. Corizon Opp. at ¶ 9; **Ex. 18**, Presentation to Corizon Health, Inc on Fairness Analysis Pertaining to Proposed Transaction, YESCARE-CHS-00000383 at 385 (explaining FTICA "has not performed or obtained any independent appraisal of the assets or liabilities…of the Company or of the parties to the Proposed Transaction"); *id.* ("In preparing this Presentation, FTICA (i) has relied upon and assumed the accuracy, completeness, and fair presentation of" all information provided by senior management of Corizon, and "does not assume any responsibility, obligation, or liability…for the accuracy, completeness, reasonableness, achievability, or independent verification of, and FTICA has not independently verified, any such information," and "has relied upon the assurances of Management that they are unaware of any facts or circumstances that would make any such information…incomplete, inaccurate, or misleading in any material respect,"); *id.* at 386 ("All analyses contained herein…and methodologies are predicated on numerous assumptions pertaining to prospective economic and operating conditions"); *id.* ("FTICA makes no representations regarding the accuracy or completeness of the information provided by the Company"); *id.* at 387 (""While FTICA is frequently engaged to render transaction, collateral value, tax and other financial reporting opinions to its clients, including ASC 820 fair value opinions, purchase price allocation opinions, goodwill impairment opinions, and equity-based incentive opinions, FTICA was not engaged to render any such opinions (or perform any supplemental due diligence and/or analyses that might be customary in connection with such opinions) in connection with this Presentation").

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

*Int'l Co.*, 2020 WL 4819416, at \*52 (citing Mo. Stat. Ann. § 428.044.1). To successfully assert this affirmative defense, "the transferee must prove *both* good faith *and* reasonably equivalent value." *Id.* (emphasis in original). In the Eighth Circuit, "[t]he question of good faith consists of two parts: (1) whether the transferee was on inquiry notice of the transferor's fraud or insolvency; and, if so, (2) whether the transferee conducted a diligent investigation." *Id.*

Here, YesCare and CHS TX fail to meet their burden under either element. It is undisputed that YesCare and CHS TX, created, owned, and controlled by Corizon Health's management, actually knew that Corizon Health was in financial distress and intended to shed its assets at the expense of its creditors—indeed, that was the impetus for the transfers. And while YesCare and CHS TX, like Corizon Health, conclude without support that the restructuring "preserve[d] value" for Plaintiffs because Corizon Health was released of "nearly $100 million of senior secured debt," they fail to address Corizon, LLC's $22.3 million in unsecured funds that would have been available to Plaintiffs before they were syphoned away by CHS TX and YesCare. Those funds are gone; and Plaintiffs now must stand among the creditors of not only Corizon, LLC, but of Corizon Health's other subsidiaries (who combined liabilities to form "Corizon Health") in seeking to recover from an insolvent shell.

## III.   Plaintiffs Have a Fair Chance of Prevailing on Their Successor Liability Theories.

Defendants do not dispute that Missouri law regards Defendants' restructuring as the paradigmatic case of successor liability. Thus, their sole defense to successor liability is that Texas law, instead of Missouri law, should apply. Notwithstanding that YesCare and CHS TX have no business in Texas whatsoever (in fact, their joint principal place of business is Corizon Health's former headquarters in Tennessee), this argument fails.

Defendants first argue that "[b]ecause YesCare, CHS TX, and Corizon are all Texas corporations, Texas law determines whether Corizon's creditors may maintain any lawsuit against

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

its purported successors." YesCare Opp. at ¶ 37. But neither of the cases Defendants cite for this proposition supports this argument. *Montgomery Bank, N.A. v. First Horizon Home Loan Corp.*, for example, did not involve disputes of successor liability, as the successor defendant did not contest that it assumed the obligation of its predecessor. 2010 WL 1712848, at *1 (E.D. Mo. Apr. 26, 2010). Instead, the defendants in *Montgomery* argued that the predecessor company should be dismissed because it no longer existed and the successor had admittedly taken on its obligations. *Id.* at *2 (explaining there was "no apparent basis" for the plaintiff to assert claims against the predecessor because it "ceased to exist" and the successor "assumed [its] debts and liabilities, including its obligations with respect to the [contract]"). *Pac. Intermountain Exp. Co. v. Best Truck Lines, Inc.*, likewise, is factually inapposite. 518 S.W.2d 469, 470 (Mo. App. K.C. 1974) (affirming judgment entered against defendant, holding defendant was estopped from asserting defense of lack of corporate existence).

Next, Defendants argue for application of Missouri's "internal affairs" doctrine, claiming "Plaintiffs' theories of successor liability are based on the corporate formation of YesCare and CHS TX." YesCare Opp. at ¶¶ 37-39. Not so. The "internal affairs" doctrine concerns the relationship between the corporation and its shareholders, directors, and officers, not the relationship between corporations and external parties. *See, e.g., First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 621 (1983) ("As a general matter, the law of the state of incorporation normally determines issues relating to the *internal* affairs of a corporation….Different conflicts principles apply, however, where the rights of third parties *external* to the corporation are at issue") (emphasis in original); Restatement (Second) of Conflict of Laws § 313(a) (1971) (explaining a "corporation's internal affairs are involved whenever the issue concerns the relations ***inter se of the corporation***, its shareholders, directors,

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

officers or agents") (emphasis added); *Id.* at § 302 cmt. e (explaining that matters regarding a corporate's internal administration include the election or appointment of directors, the adoption of bylaws, the issuance of corporate shares, or cumulative voting requirements); *J.Y.C.C. v. Doe Run Res., Corp.*, 370 F. Supp. 3d 1031, 1044 (E.D. Mo. 2019) (holding the "internal affairs" doctrine inapplicable to case involving veil piercing where it did not involve any disputes about the internal affairs of the various defendants, citing Restatement (Second) of Conflicts of Laws § 302 cmt. e).

Plaintiffs are not members, directors, shareholders, or officers of Defendants; and the theories Plaintiffs rely on to show breach of contract, fraudulent transfer, and fraud concern YesCare and CHS TX's liability for actions which affected them—external parties. Because Plaintiffs' successor liability theories concern YesCare and CHS TX's liability to third parties—instead of their shareholders, directors, or officers—the "internal affairs" doctrine does not apply. *See, e.g., Enslein as Tr. for Xurex, Inc. v. Di Mase*, 2019 WL 2505052, at *27 (W.D. Mo. June 17, 2019) (holding the internal affairs doctrine is not applicable to the plaintiff's claim of aiding and abetting breach of fiduciary duty where it did not affect the organic structure or internal administration of a corporation, did not have anything to do with internal regulation of a corporation, did not involve disputes about internal affairs, and did not involve the issuance of stock); *Shaffer v. Health Acquisition Co., LLC*, 2019 WL 1049392, at *6 (W.D. Mo. Mar. 5, 2019) (explaining an action by shareholders on behalf of a corporation seeking to vindicate its rights against third parties case did not involve "regulation of the internal affairs" of the corporation).

YesCare claims *Enslein* and *Schaffer* are not on point because they "did not concern a corporation's internal organization." YesCare Opp. at ¶ 39. But that is exactly the point—the courts

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

in those cases concluded, after considering whether the internal affairs doctrine should apply, that neither case concerned the "internal affairs" of a corporation, just as this case, too, does not.

YesCare seeks to distinguish *A.O.A.* because it "concerned a veil-piercing claim—a question of whether the corporation, in question, was *ignoring* corporate formalities," which YesCare claims is "a theory Plaintiffs did not pursue." YesCare Opp. at ¶ 39 (citing *A.O.A. v. Rennert*, 350 F. Supp. 3d 818, 834 (E.D. Mo. 2018)). This argument makes no sense. Successor liability is an equitable doctrine to "ignore" the corporate form to provide relief to outside parties, and Defendants fail to establish how the principles laid out in *A.O.A.* regarding veil-piercing, also an equitable doctrine closely related and often pursued in tandem with successor liability, do not apply here. In *A.O.A.*, the Court explained that the internal affairs doctrine's purpose was not served by applying it to the subject veil-piercing claims, which "relate[] to the way the various entities were operated in relation to one another and to [defendant]," and was not, for example, "a case involving a fight among shareholders or over the election of corporate officers." *Id.* at 836. The same is true here.

YesCare next argues that *Osborn* is "unavailing" because "corporate internal affairs were not at issue in that case." Like with *Enslein* and *Schaffer*, that is exactly the point—the *Osborn* court explained that Missouri law applies Missouri tort choice of law rules to successor liability, not the "internal affairs" doctrine. *Osborn v. Prime Tanning Corp.*, 2011 WL 13291159, at *5 (W.D. Mo. Apr. 29, 2011) (explaining successor liability issues require application of Missouri tort choice of law rules, rather than Missouri contract choice of law rules).

Defendants retort that Plaintiffs' claims are "based on the corporate formation of YesCare and CHS TX" and "depend on what the 'organic structure' of Corizon and CHS TX were following the divisional merger,'" citing *Stewart v. GeoStar Corp.*, 2008 WL 4155643, at *1 (E.D. Mich.

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

Sept. 5, 2008). YesCare Opp. at ¶¶ 38-39. But that case involved application of the internal affairs doctrine to an internal dispute between a corporation and its shareholder. *Id.* (plaintiff requested a declaratory judgment determining that he owned 300,000 shares of stock of defendant).

Second, Defendants argue that even if the proper inquiry is which state has the "most significant relationship," that this court should find Texas law instead of Missouri law, applies. In support, Defendants concede that Missouri has the most significant relationship to the breach of contract, but argue Texas has a more significant relationship because "the matter at issue here is the legal effect of a Texas merger on questions of successor liability." YesCare Opp. at ¶ 40. Defendants claim Texas "has a more significant relationship to that issue," but the Restatement, which Missouri courts follow to evaluate which law should govern,[51] instructs differently. "[W]hen a corporation has little or no contact with [a] state other than the fact that it was incorporated there…some other state will almost surely have a greater interest than the state of incorporation in the determination of the particular issue."[52] Restatement (Second) of Conflict of Laws, § 302, cmt. g.

That is precisely the situation here. YesCare and CHS TX have no connection with Texas other than their incorporation; Corizon Health did not conduct any business in Texas when it began the merger; nor do YesCare and CHS TX conduct any business there now. Moreover, the very

---

[51] *Rider v. The Young Men's Christian Ass'n of Greater Kansas City*, 460 S.W.3d 378, 388 (Mo. App. W.D. 2015) ("When a conflict of law exists, Missouri evaluates which law should govern according to the Restatement (Second) of Conflicts of Laws").

[52] Defendants cite *Soviet Pan Am* and *Leitner* for the proposition that Texas has the most significant relationship. YesCare Opp. at ¶ 40. But both cases, from New York and California respectively, are not persuasive; *Soviet Pan Am* involved defendants who had a more substantial connection with their requested forum other than mere incorporation, unlike YesCare and CHS TX, who maintain no business or operations in Texas but chose the forum as a means to effect a divisional merger and evade successor liability. *See Soviet Pan Am Travel Effort v. Travel Comm., Inc.*, 756 F. Supp. 126, 129 (S.D.N.Y. 1991) (explaining the successor had its principal place of business in Maryland). Similarly in *Leitner*, there were no allegations that the defendant incorporated in New York as a means of taking advantage of that forum's laws to the detriment of its existing creditors. *See Leitner v. Sadhana Temple of New York, Inc.*, 2014 WL 12588643, at *16 (C.D. Cal. Oct. 17, 2014).

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

purpose of the successor liability doctrine—disregarding the corporate form to provide relief to outside parties—is why this Court cannot disregard Missouri's interest in this matter. *See Osborn v. Prime Tanning Corp.*, 2011 WL 13291159, at *5 (W.D. Mo. Apr. 29, 2011) (explaining "Missouri has a judicially adopted policy concerning successor corporate liability" and "[t]his relevant policy strongly supports application of Missouri law"). For that reason, "a state's interest in applying its law to citizens injured by foreign corporations [often] outweighs the interest of the incorporating state." *Chrysler Corp. v. Ford Motor Co.*, 972 F. Supp. 1097, 1104 (E.D. Mich. 1997). Indeed, "when the plaintiff is a third party who had no business relationship with defendant," the plaintiff's state "has a stronger interest in applying its law to disregard the corporate form." *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1174 n. 11(C.D. Cal. 2011). Thus, Missouri has a heightened interest in applying its own laws to determine whether it should disregard the corporate form. *See also* Order on Plaintiff's Motion for Substitution, *Kelly v. Corizon Health*, Inc., Case 2:22-cv-10589, ECF No. 43 at 12-23 (Nov. 1, 2022) (Morris, M.J.) (**Ex. 86**).[53]

In short, Missouri has a strong interest in applying its own law to determine whether the Court should disregard the corporate form. By comparison, Texas has a relatively weak interest in enforcing its successorship liability doctrine under these circumstances. *See id.* Thus, the Court should look to Missouri law to determine whether YesCare and CHS TX are successors of Corizon Health.

Finally, Defendants declare that Plaintiffs' successor liability claims are unlikely to succeed in any case, because the corporate restructuring "was not a mere name change, nor was it

---

[53] This result makes sense in light of the relevant factors. *See, e.g., Osborn*, 2011 WL 13291159, at *5 (explaining the two most significant contacts under this analysis are "the place of injury" and the "place where the conduct causing the injury were located").

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

employed to immunize Corizon from liability." YesCare Opp. at ¶ 41. These self-serving conclusions neither align with the facts,[54] nor address the factors relevant to successor liability.[55]

## IV.   Plaintiffs Will Suffer Irreparable Harm Absent Provisional Relief.

Defendants argue Plaintiffs do not face irreparable harm because there is an "adequate remedy at law." Corizon Opp. at 13; YesCare Opp. at ¶ 44. Not true. MUFTA recognizes the danger that while a plaintiff's fraudulent transfer claim is pending, the transferee might seek to make further transfers, and protects against that danger by authorizing the Court to grant appropriate provisional relief. "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *CitiMortgage, Inc. v. Just Mortg., Inc.*, 2013 WL 6538680, at *4 (E.D. Mo. Dec. 13, 2013); *Haase v. Chapman*, 308 F. Supp. 399, 406 (W.D. Mo. 1969) (finding the plaintiff may suffer irreparable harm as a result of a fraudulent transfer without the appointment of a receiver). *See also Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) (explaining that "where a meaningful decision on the merits would be impossible without an injunction, the district court may maintain the status quo and issue a preliminary injunction to protect a remedy, including a damages remedy, when the freezing of the assets is limited to the property in dispute or its direct, traceable proceeds"); *Hilao v. Marcos*, 25 F.3d 1467, 1480 (9th Cir. 1994) (joining "majority of circuits in concluding that a

---

[54] **Ex. 41**, O'Neal to Clemons-Abdullah May 13, 2022, YESCARE-CHS-00000461; **Ex. 42**, O'Neal to Phelps May 13, 2022, YESCARE-CHS-0000467 ("As you are very well by now that Corizon was in the process of rebranding. We are excited to share its official now. Effective today, we are announcing our new company name YesCare."); **Ex. 43**, O'Neal to Farmer May 13, 2022, YESCARE-CHS-00000470 ("As I shar[e]d with you during the MAC meeting, we are excited to share our announcement of our new company name YesCare"); **Ex. 35**, YesCare Announcement-Client Email, YESCARE-CHS-0000486 ("Please join us in our excitement for this next stage of innovative and compassionate care, under the new YesCare name"); **Ex. 36**, YesCare Client Q&A - YESCARE-CHS-00000463 ("We have a new name…the current services we provide at your facility will continue").

[55] As their only attempt to address such factors, Defendants claim the de facto merger theory, just one of the four theories available to Plaintiffs, "applies only in the absence of a formal, statutory merger." YesCare Opp. at ¶ 42 (citing a second circuit case). Not so in Missouri. *See, e.g., Harashe v. Flintkote Co.*, 848 S.W.2d 506, 509 (Mo. App. E.D. 1993) ("While the agreement was delineated as a reorganization through a purchase of assets it contained all the elements of a *de facto* merger" thus "W.R. Grace has successor liability for the liabilities of Zonolite").

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

district court has authority to issue a preliminary injunction where the plaintiffs can establish that money damages will be an inadequate remedy due to impending insolvency of the defendant or that defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment."); *Pashaian v. Eccelston Props.*, 88 F.3d 77, 86-87 (2d Cir. 1996) ("preliminary injunction may issue to preserve assets as security for a potential monetary judgment where the evidence shows that a party intends to frustrate any judgment on the merits by making it uncollectible.").

YesCare and CHS TX next argue that Plaintiffs fail to show harm that is "certain and great and of such imminence that there is a clear and present need for equitable relief," concluding Plaintiffs' cited authority is "opposite" to Defendants' "lawful" restructuring and claiming Plaintiffs are merely "speculating" that Defendants "may possibly undergo a corporate restructuring at some point in the future," YesCare Opp. at ¶¶ 45-46. But Plaintiffs are more than speculating that Defendants are willing to dissipate or remove assets from this court's jurisdiction. Indeed, YesCare and CHS TX, in response to Plaintiffs' Motion, threaten bankruptcy should this Court initiate any provisional relief.[56]

To be sure, Plaintiffs have submitted substantial evidence regarding Defendants' fraudulent conduct and suspicious business behaviors. *See* Pls' Mot. at p. 27-28 (establishing Geneva Consulting, LLC is paying for Corizon Health's obligations using a joint bank account with YesCare); *Id.* at p. 29 (establishing David Gefner formed Geneva Consulting, LLC on November 16, 2021, two days after losing the MDOC contract); Section *Id.* at 28 (establishing Corizon Health director Lefkowitz also controls Geneva Consulting, LLC); *supra* p. 3-5 (noting

---

[56] This isn't the first time Defendants have demonstrated a willingness to take direct business action in response to this litigation. Pls' Mot. at p. 21 (establishing that after Plaintiffs' Amended Petition, YesCare removed a statement from its website stating "YesCare acquired all of the employees and active contracts of Corizon Health in early 2022"); YesCare Opp. at ¶ 13 (stating that, since Plaintiffs' Motion, M2LoanCo "has taken steps to rectify its administrative status with the Florida Secretary of State").

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

former Corizon Health CEO alleges he caught Lefkowitz transferring $3 million in Valitas funds to Geneva Consulting, LLC in December 2021); *Id.* (alleging Corizon Health directors Lefkowitz, Gefner, and Leitner sold COVID tests to a deeply insolvent Corizon Health for over $3 million, a 57% profit); Pls' Mot. at p. 12-13 (establishing Corizon Health VP David Gefner purchased YesCare's equity for $95, a fact none of the Defendants address); *id.* at p. 29-30 (establishing a lack of required regulatory filings despite Perigrove's claim that it raised $3 billion in equity, a fact none of the Defendants address); *id.* at p. 32-33 (establishing Perigrove's actual business address is the upstairs of an auto-parts store, a fact none of the Defendants address); *Id.* at p. 26-27 (establishing M2 LoanCo LLC, Corizon Health's purported lender controlled by Lefkowitz, was administratively dissolved). In short, Plaintiffs have presented substantial evidence of questionable business activity conducted by Defendants and their affiliate/related entities in relation to the restructuring.[57]

Thus, a meaningful threat exists that Defendants may render relief in this case meaningless by dissipating assets or removing them from this court's jurisdiction. *See, e.g., S. New England Tel. Co. v. Glob. Naps, Inc.*, 595 F. Supp. 2d 155, 159 (D. Mass. 2009) (finding this factor satisfied where the court was "persuaded that, absent an injunction, there is a substantial risk that [the involved company and its owner] would dissipate, conceal, or otherwise secrete assets" where there was "a plethora of circumstantial evidence that [the owner], as well as [the debtors] has been

---

[57] Indeed, though Mr. Sholey, in his affidavit, states he left Corizon in May 2022, he has continued to be the signatory on corporate filings for Corizon Health in which the company apparently fails to disclose its corporate restructuring. Just last month, on December 15, 2022, Jeff Sholey signed and filed a "Statement of Information" with the California Secretary of State for Corizon, LLC, affirming "under penalty of perjury" that "Corizon, LLC" was formed in Missouri; that Sara Tirschwell is its current CEO; and that 205 Powell Place in Brentwood, TN is its mailing address. **Ex. 93**. That same day, on December 15, 2022, Sholey signed and filed a "Statement of Information" in California for Corizon Health, Inc., claiming he was the "Chief Financial Officer," that Sara Tirschwell was its CEO ,and that J. Scott King was its Secretary. Despite claiming they no longer have a corporate headquarters, this document lists Corizon Health, Inc.'s "principal address" as 205 Powell Place in Brentwood, TN. **Ex. 94**.

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

implicated in suspicious business activity"); *Caterpillar Inc. v. Jerryco Footwear, Inc.*, 880 F. Supp. 578, 587 (C.D. Ill. 1994) (finding this element satisfied where, "[c]onsidering the defendants' past intentionally deceptive, bad faith acts," there was a "high probability that, absent a preliminary injunction, the defendants would engage in further acts designed to defraud [the plaintiff] and frustrate any enforcement the Court may enter");[58] *Trafalgar Power, Inc. v. Aetna Life Ins. Co.*, 131 F. Supp. 2d 341, 350 (N.D.N.Y. 2001) (explaining plaintiff established a likelihood of irreparable harm by demonstrating defendants' intent to frustrate any potential collection on counterclaims); *Canty v. Morris St. Partners, LLC*, 2006 WL 1769620, at *4 (Pa. Com. Pl. May 23, 2006) ("if Morris Street Partners, LLC were permitted to dispose of any and all remaining assets, Plaintiffs would be subject to irreparable harm as a result of the lack of funds to compensate them for their injuries if they were to receive a jury award").

## V.    The Balance of Harms Weighs in Plaintiffs' Favor.

In a full-throated opposition to any injunctive relief, YesCare and CHS TX advance a doomsday narrative, complaining that allowing injunctive relief sufficient to maintain the status quo would deal a "death blow" to its business. YesCare Opp. at p. 48.

First, should the Court freeze any of YesCare and CHS TX's assets, YesCare and CHS TX claim they would be "suddenly forced to halt" their operations as they apparently do not have assets over $11 million to freeze that are not "already allocated to payroll and other expenses." *Id.* at ¶ 17-18. Defendants provide no support for this conclusion. Based on recently-produced financials, YesCare and CHS TX have over $173 million in assets.[59] And according to Defendants,

---

[58] Citing *Roland Machinery Co. v. Dresser Industries, Inc.,* 749 F.2d 380, 386 (7th Cir.1984) (irreparable harm may exist where defendant may become insolvent before a final judgment can be collected); *Federal Trade Commission v. World Travel Vacation Brokers, Inc.,* 861 F.2d 1020, 1031 (7th Cir. 1988) (freezing defendants assets upheld where assets had been shifted from closely-held corporate defendant to individuals who were sole shareholders of corporate defendant)).

[59] **Ex. 95**, YesCare Corp. and Subsidiaries Balance Sheet.

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

CHS TX and YesCare generate in excess of $300 million in revenue on "an annual basis," [60] and have negotiated a state Department of Corrections contract, set to begin in the second quarter of 2023, which Defendants anticipate will bring in "in excess of $1 billion" in revenue. Sholey Aff. at ¶¶ 8, 15. Further, Defendants represent they are bidding on several other business opportunities "with other possible revenues in excess of $1 billion annually." *Id.* at ¶ 16. In short, YesCare and CHS TX have failed to explain how a small fraction of their total assets would spur a total shutdown of their operations.

Second, should the Court appoint a receiver, YesCare and CHS TX claim they would be likely forced into bankruptcy, concluding, without explanation, that a receivership would "endanger its ability to begin performance" under its new billion-dollar contract, and "eviscerate YesCare's ability to win new business." *Id.* at ¶ 19. Defendants, who fail to provide any support for these doomsday-conclusions, ask this Court to simply take their word for it. Plaintiffs are skeptical that their requested relief would lead to such results. *See, e.g, Caterpillar Inc. v. Jerryco Footwear, Inc*., 880 F. Supp. 578, 587 (C.D. Ill. 1994) (noting the defendants "offered no credible evidence" showing injunctive relief caused "any material or irreparable harm," explaining that the court "has the authority to fashion equitable relief that leaves Defendants in possession of their property and merely establishes control to prevent fraudulent transfers of assets").

But taking Defendants at their word, MUFTA provides this court broad discretion to fashion equitable relief that does not implicate Defendants' above concerns.  Mo. Ann. Stat. § 428.039 (explaining that a creditor may obtain "[a]ny other relief the circumstances may require"). For example, if YesCare is, as it claims, "in a position to begin performing under the new State Department of Corrections contract" worth $ 1 billion, and "win other potential revenue streams,

---

[60] Since CHS TX was only formed earlier this year, this figure likely represents the revenue Corizon Health generated on a yearly basis before the restructuring.

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

placing it on a firm financial footing to satisfy all of its creditor claims,"[61] then it should be reasonably able to provide a bond or letter of credit sufficient to cover the amounts at issue in this case. *See, e.g., CitiMortgage, Inc. v. Just Mortg., Inc.*, 2013 WL 6538680, at *5 (E.D. Mo. Dec. 13, 2013) (explaining that the court would reconsider its ruling sustaining plaintiffs' request to freeze the assets of defendants if defendants "secure a bond in the amount of plaintiff's judgment"). Thus, the balance of harms weighs in Plaintiffs' favor.

## VI.     The Public Interest Supports an Injunction.

Because Plaintiffs are likely to succeed on their fraudulent transfer claims, the general public interest against fraud is implicated here. *Jet Midwest Int'l Co. v. Jet Midwest Grp., LLC*, 953 F.3d 1041, 1046 (8th Cir. 2020). Further, the public has an interest in "enforcing contractual obligations." *Sleep No. Corp. v. Young*, 532 F. Supp. 3d 793, 804 (D. Minn. 2021), *aff'd*, 33 F.4th 1012 (8th Cir. 2022); *Medicine Shoppe Int'l., Inc.*, 336 F.3d at 805 ("[W]e agree that the public interest would not be served by permitting a party to avoid contractual obligations.").

Defendants' claim that "public policy" weighs against injunctive relief is premised on their unsupported argument that any injunctive relief will "hinder YesCare's operations." YesCare Opp. At p. 26. Indeed, YesCare threatens to "jeopardize[]" prisoners' "constitutional right to medical care," force its clients to "scramble and expend significant resources to replace lost medical care," and put its employees paychecks "at risk," all of which, YesCare argues, would be against public policy. YesCare Opp. at p. 26. This argument is disingenuous. YesCare and CHS TX, who since their inception have boasted of "financial strength" and "access to resources we have never had," and have undoubtedly used those assurances to secure over a billion-dollar contract, should not now be permitted to claim that providing assurances for $12 million will destroy their business.

---

[61] YesCare Opp. at ¶¶ 19-20.

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

To be sure, if Defendants intend to use their employees' salaries and the inmates within their care as bargaining chips in this litigation, then it is they who are acting contrary to public policy.

In any case, this Court has broad authority to fashion equitable relief that accommodates any reasonable business concerns.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs request this Court grant their motion for preliminary injunction, and afford any and all relief as the Court deems just and proper.

Electronically Filed - BOONE - January 30, 2023 - 04:55 PM

Dated: January 30, 2023

Respectfully submitted,

**STUEVE SIEGEL HANSON LLP**

_/s/ Patrick J. Stueve_
Patrick J. Stueve MO Bar # 37682
Ethan M. Lange MO Bar # 67857
Jordan A. Kane MO Bar # 71028
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
816-714-7100 (p)
816-714-7101 (f)
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

**COUNSEL FOR PLAINTIFFS THE
CURATORS OF THE UNIVERSITY OF
MISSOURI AND CAPITAL REGION
MEDICAL CENTER**

Electronically Filed - BOONE - January 30, 2023 - 05:02 PM

# EXHIBIT 87



**State of Missouri**

**John R. Ashcroft, Secretary of State**

Corporations Division
PO Box 778 / 600 W. Main St., Rm. 322
Jefferson City, MO 65102

F001425609
**Date Filed: 6/16/2022**
**John R. Ashcroft**
**Missouri Secretary of State**

Electronically Filed - BOONE - January 30, 2023 - 05:02 PM

# Application for Certificate of Authority
# For a Foreign For-Profit Corporation
*(Submit with filing fee of $155.00)*

1. The corporation's name is   CHS TX, Inc.

   and it is organized and existing under the laws    Texas

2. The name it will use in Missouri is    CHS TX, Inc.

3. The date of its incorporation was   5/3/2022        ,   and the period of its duration is   Perpetual
   *month/day/year*

4. The address of its principal place of business is    205 Powell Pl   Suite 104                          Brentwood  TN  37027-7522
   *Address*                                                          *City/State/Zip*

5. The name and physical address of its registered agent and office in the State of Missouri is
   C T CORPORATION SYSTEM         120 S Central Ave                     CLAYTON  MO  63105
   *Name*                          *Address*                            *City/State/Zip*

6. The specific purpose(s) of its business in Missouri are:
   correctional healthcare services

7. The name of its officers and directors and their business addresses are as follows:

| President | Tirschwell, Sara | 205 Powell Pl Suite 104 | Brentwood  TN  37027-7522 |
| Officer | Sholey, F. Jeffrey | 205 Powell Pl Suite 104 | Brentwood  TN  37027-7522 |
| Officer | King, J. Scott | 205 Powell Pl Suite 104 | Brentwood  TN  37027-7522 |
| Officer | Ladele, Gregg | 205 Powell Pl Suite 104 | Brentwood  TN  37027-7522 |
| Director | Tirschwell, Sara | 205 Powell Pl Suite 104 | Brentwood  TN  37027-7522 |
| Director | Sholey, F. Jeffrey | 205 Powell Pl Suite 104 | Brentwood  TN  37027-7522 |
| Director | King, J. Scott | 205 Powell Pl Suite 104 | Brentwood  TN  37027-7522 |
| Director | Ladele, Gregg | 205 Powell Pl Suite 104 | Brentwood  TN  37027-7522 |

8. The effective date of this document is the date it is filed by the Secretary of State of Missouri unless you indicate a future date is
Otherwise indicated :
   *(Date may not be more than 90 days after the filing date in this office)*

In Affirmation thereof, the facts stated above are true and correct:
*(The undersigned understands that false statements made in this filing are subject to the penalties provided under Section 575.040, RSMo)*

Name and address to return filed document:

Name:    Tracy Bartoli

Address:   Email: tracy.bartoli@yescarecorp.com

City, State, and Zip Code:

Corp. 42 (11/2008)

Application for Certificate of Authority For a Foreign For-Profit Corporation

Electronically Filed - BOONE - January 30, 2023 - 05:02 PM

| Sara Tirschwell | President | 06/16/2022 |
|---|---|---|
| *Must be an Officer or Chairman listed in #7* | *Title* | *Date of Signature* |

Note:  A current (not more than 60 days old) original certificate of good standing or certificate of existence must be submitted with this application. This may be obtained from the Secretary of State or other authority that issues corporate characters in the state of domicile.

Electronically Filed - BOONE - January 30, 2023 - 05:02 PM

Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697

John B. Scott
Secretary of State

# Office of the Secretary of State

### Certificate of Fact

The undersigned, as Secretary of State of Texas, does hereby certify that the document, Certificate of Merger for CHS TX, Inc. (file number 804552857), a Domestic For-Profit Corporation, was filed in this office on May 03, 2022.

It is further certified that the entity status in Texas is in existence.

In testimony whereof, I have hereunto signed my name officially and caused to be impressed hereon the Seal of State at my office in Austin, Texas on May 10, 2022.



John B. Scott
Secretary of State

*Come visit us on the internet at https://www.sos.texas.gov/*

Phone: (512) 463-5555        Fax: (512) 463-5709        Dial: 7-1-1 for Relay Services
Prepared by: SOS-WEB        TID: 10264        Document: 1147152400005

Electronically Filed - BOONE - January 30, 2023 - 05:02 PM

# STATE OF MISSOURI

**John R. Ashcroft**
**Secretary of State**

CERTIFICATE OF AUTHORITY

WHEREAS,

*CHS TX, Inc.*
*F001425609*

has complied with the Missouri General and Business Corporation Law which governs Foreign Corporations; by filing in the office of the Secretary of the State of Missouri authenticated evidence of its incorporation and good standing under the Laws of the State of Texas.

NOW, THEREFORE, I, JOHN R. ASHCROFT, Secretary of State of the State of Missouri, do hereby certify that said corporation is from this date duly authorized to transact business in this State, and is entitled to all rights and privileges granted to Foreign Corporations under the General and Business Corporation Law.

IN TESTIMONY WHEREOF, I hereunto set my hand and cause to be affixed the GREAT SEAL of the State of Missouri. Done at the City of Jefferson, this 16th day of June, 2022.



Secretary of State

Electronically Filed - BOONE - January 30, 2023 - 09:47 PM

**IN THE CIRCUIT COURT OF BOONE COUNTY, MISSOURI**

| | | |
|---|---|---|
| **THE CURATORS OF THE UNIVERSITY OF MISSOURI and CAPITAL REGION MEDICAL CENTER,** | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 22BA-CV01701-01 |
| v. | ) | |
| | ) | Division 4 |
| **TEHUM CARE SERVICES, INC. d/b/a CORIZON HEALTH, INC.,** | ) ) | |
| | ) | |
| **CHS TX, Inc.,** | ) | |
| | ) | |
| **and YESCARE CORP.,** | ) | |
| | ) | |
| Defendants. | ) | |

**CHS TX, INC. AND YESCARE CORP.'S REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' AMENDED PETITION**

Electronically Filed - BOONE - January 30, 2023 - 09:47 PM

# **TABLE OF CONTENTS**

**Page**

ARGUMENT ...................................................................................................................1

I.      The Court Lacks Personal Jurisdiction over YesCare and CHS TX. ...................................1

II.     YesCare and CHS TX are Not Corizon Health's Successors ...............................................3

III.    Plaintiffs Failed to Allege Common Law Fraud...................................................................4

IV.     Plaintiffs Have Not Adequately Alleged a Fraudulent Transfer or Constructive
        Fraudulent Transfer............................................................................................................5

V.      Plaintiffs Conspiracy Claims Fail Because Neither YesCare nor CHS TX Took Any
        Action in Furtherance of a Conspiracy ..............................................................................8

CONCLUSION.................................................................................................................10

CERTIFICATE OF SERVICE .........................................................................................11

i

Electronically Filed - BOONE - January 30, 2023 - 09:47 PM

# TABLE OF AUTHORITIES

## CASES                                              PAGE(S)

*Allenspach-Boller v. United Cmty. Bank*,
  2021 WL 1738884 (W.D. Mo. MAY. 3, 2021)................................................................7

*Armistead v. A.L.W. Grp.*,
  155 S.W.3D 814 (Mo. CT. APP. 2005).......................................................................7

*Auto-Owners Ins. Co. v. Midwest Agency*,
  2007 WL 2885345 (E.D. Mo. Sept. 27, 2007) ...........................................................4

*BillMatrix Corp. v. Fed. Ins. Co.*,
  2006 WL 8437453 (N.D. Tex. OCT. 11, 2006) ...........................................................4

*Calder v. Jones*,
  465 U.S. 783 (1984) .................................................................................................1

*Carlund Corp. v. Crown Center Redevelopment Corp.*,
  910 S.W.2d 273 (Mo. Ct. App. 1995) ........................................................................5

*Creative Walking, Inc. v. American States Ins. Co.*,
  25 S.W.3d 682 (Mo. App. E.D. 2000).......................................................................8

*Dontos v. Vendomation NZ Ltd.*,
  582 F. App'x 338 (5th Cir. 2014)..............................................................................2

*Ford v. R.J. Reynolds Tobacco Co.*,
  553 F. Supp. 3d 693 (E.D. Mo. 2021) ......................................................................6

*Hanna v. Darr*,
  154 S.W.3d 2 (Mo. App. E.D. 2004)..........................................................................4

*Higgins v. Ferrari*,
  474 S.W.3D 630 (Mo. App. W.D. 2015)....................................................................7

*In re 1701 Commerce, LLC*,
  511 B.R. 812 (Bankr. N.D. Tex. 2014) .....................................................................5

*Jennings v. SSM Health Care St. Louis*,
  355 S.W.3d 526 (Mo. App. E.D. 2011)......................................................................6

*Jones v. Shooshan*,
  855 F. SUPP.2D 594 (E.D. VA. 2012)......................................................................9

Electronically Filed - BOONE - January 30, 2023 - 09:47 PM

*Mullins v. TestAmerica, Inc.*,
 564 F.3d 386 (5th Cir. 2009) ............................................................................ 2

*RehabCare Grp. E., v. Stratford Health Care Properties, LLC*
 2016 WL 11469771 (W.D. Mo. Feb. 8, 2016) ................................................. 8, 9

*Renaissance Leasing, LLC v. Vermeer Mfg. Co.*,
 322 s.w.3d 112 (Mo. banc 2010) ....................................................................... 4

*Retamco Operating, Inc. v. Republic Drilling Co.*,
 278 S.W.3d 333 (Tex. 2009) .............................................................................. 2

*ServisFirst Bank v. Young*,
 2020 WL 7695689 (E.D. Mo. Dec. 24, 2020) .................................................... 6

*Yerington v. Riss*,
 374 S.W.2d 52 (Mo. banc 1964) ..................................................................... 4, 5

## STATUTES

Tex. Bus. Orgs. Code § 10.008(a)(2)(C) .................................................................. 6

Tex. Bus. Orgs. Code § 10.151(b)(1)(H) .................................................................. 5

## RULES

Mo. Sup. Ct. Rule 55.15 .......................................................................................... 6

Rule 55.26 of the Missouri Rules of Civil Procedure ............................................. 1

## OTHER AUTHORITIES

*Curtis W. Huff, The New Texas Business Corporation Act Merger Provisions*,
 21 St. Mary's L.J. 109 (1989) .............................................................................. 6

Electronically Filed - BOONE - January 30, 2023 - 09:47 PM

Pursuant to Rule 55.26 of the Missouri Rules of Civil Procedure, CHS TX, Inc. ("CHS TX") and YesCare Corp. ("YesCare") hereby reply to Plaintiffs' Opposition (the "Opposition") to CHS TX and YesCare's Motion to Dismiss Plaintiffs' First Amended Complaint (the "Motion to Dismiss").  For the reasons discussed below, the Court should overrule the Opposition and grant the Motion to Dismiss because CHS TX and YesCare are not subject to personal jurisdiction in Missouri on Plaintiffs' claims, which Plaintiffs otherwise fail to properly plead.

## ARGUMENT

### I.    The Court Lacks Personal Jurisdiction over YesCare and CHS TX

This Court should dismiss all claims against YesCare and CHS TX because it lacks personal jurisdiction over them. Plaintiffs, the Curators of the University of Missouri and Capital Region Medical Center, do not contend that YesCare or CHS TX are subject to general personal jurisdiction in Missouri. Instead, they argue specific personal jurisdiction exists due to the "effects" of the 2022 Corporate Restructuring[1] on them. *See Calder v. Jones*, 465 U.S. 783, 789 (1984); *see* Opp'n at 5-6.  Plaintiffs' argument rests on a fundamental misunderstanding of the *Calder* effects test. The test requires both (1) that the impact of the tort is felt in the forum state *and* (2) that the defendant intentionally directed their actions at the forum. *Id.* at 790. Under Plaintiff's formulation, only the impact of the tort in the forum state alone would be sufficient for a court to find jurisdiction, regardless of whether the action was intentionally directed at the forum state.

Under the correct reading of *Calder*, the 2022 Corporate Restructuring cannot be the basis of jurisdiction over YesCare and CHS TX in Missouri because it was not targeted at Missouri. Plaintiffs have not identified any Missouri property that was allegedly transferred to CHS TX or YesCare, nor have they shown that the restructuring was targeted at any ***Missouri*** creditors of

---

[1]    The steps constituting the 2022 Corporate Restructuring are described in detail in the Motion to Dismiss at 5-9.

Electronically Filed - BOONE - January 30, 2023 - 09:47 PM

Tehum Care Services, Inc., d/b/a Corizon Health, Inc. ("Corizon Health")—including themselves. Instead, the Amended Petition recognizes that the harm supposedly suffered was by all "creditors like Plaintiffs," Am Pet. ¶ 63, without regard to geographic location.  Despite Plaintiff's attempt to suggest that the 2022 Corporate Restructuring affected them (or Missouri) uniquely, Plaintiffs' Hospital Services Agreement (the "Agreement") with Corizon Health was just one agreement of many from across the country allocated to Corizon Health by the 2022 Corporate Restructuring.[2]

Plaintiffs' contention that personal jurisdiction is proper here because "fraudulent transfer cases [under Missouri and Texas law] hold that nonresidents like CHS TX and YesCare can be sued in the state where the funds were transferred from and the victims are located" is not supported by the law or their factual allegations. Opp'n at 6. For the reasons outlined in YesCare and CHS TX's Motion in Opposition to Plaintiffs' Motion for Preliminary Injunction Section I, Missouri courts will not find jurisdiction comports with due process unless the transfer is intentionally aimed at the forum state, which is not the case here.

Likewise, Texas law does not provide for personal jurisdiction based only on the fact that an alleged fraudulent transfer occurred. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 400 (5th Cir. 2009) ("The 'effects' test in *Calder* does not supplant the need to demonstrate minimum contacts that constitute purposeful availment, that is, conduct by the non-resident defendant that invoked the benefits and protections of the state or was otherwise purposefully directed toward a state resident."). Although jurisdiction might be proper based on a fraudulent transfer if it singled out a specific, major in-state creditor, *id*. at 401, impacted an in-state judgment, *Dontos v. Vendomation NZ Ltd.*, 582 F. App'x 338, 346 (5th Cir. 2014), or involved real property located in the state, *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009) (finding

---

[2]   *See* Amended Petition Ex. 12 Plan of Divisional Merger Schedule 3.01(b)(RC).

2

Electronically Filed - BOONE - January 30, 2023 - 09:47 PM

personal jurisdiction based on transfer of Texas oil and gas interests), the impact on a resident-creditor alone is insufficient. As stated above, Plaintiffs have not shown that the 2022 Corporate Restructuring singled them out. They do not allege that they are uniquely situated relative to Corizon Health's unsecured creditors, nor have they alleged that other unsecured creditors received a benefit in the restructuring that they did not. They do not allege the existence of any Missouri judgment or Missouri property impacted by the transfer. Even assuming that specific personal jurisdiction can be based on the location of funds within the forum state alone, jurisdiction still is not proper here, as Plaintiffs have not alleged that any Missouri funds existed or were impacted by the transfer.[3]

## II.    YesCare and CHS TX are not Corizon Health's Successors

Many of Plaintiffs' claims seek to hold YesCare and CHS TX liable for actions taken solely by Corizon Health. *See* Breach of Contract (Count I), Breach of Covenant of Good Faith and Fair Dealing (Count II) or Successor Liability: Express and/or Implied Agreement to Assume Debts and/or Liabilities (Count III), De Facto Merger (Count IV), Mere Continuation (Count V), and "Intent to Defraud Creditors" (Count VI). Plaintiffs contend that liability is proper on these counts because YesCare and CHS TX are Corizon Health's successors under Missouri law. They do not raise any other bases for liability. However, as briefed in § III.A of the Motion to Dismiss and § II.A.2 of CHS TX and YesCare's Opposition to Plaintiffs' Preliminary Injunction Motion, Texas law—not Missouri law—applies to determine the effects of the 2022 Corporate Restructuring because the reorganization took place pursuant to the Texas Business Organizations Code ("TBOC"). For the reasons discussed in those sections, neither entity is a successor to Corizon Health. Plaintiffs do not contest that under Texas law, YesCare and CHS TX are not successors to

---

[3]    Jurisdiction over YesCare and CHS TX is also not proper based on Plaintiffs' allegations of successor liability. *See* § II.A.2 of CHS TX and YesCare's Opposition to Plaintiff's Preliminary Injunction Motion.

Electronically Filed - BOONE - January 30, 2023 - 09:47 PM

Corizon Health, and therefore, when the Court applies Texas law, Plaintiffs' claims premised on successor liability should be dismissed.

Plaintiffs further suggest that YesCare and CHS TX need not be "technical parties to the underlying Agreement between Plaintiffs and Corizon Health," to state a claim for breach of contract, breach of covenant of good faith and fair dealing, or successor liability (Counts I, II, and III) (Opp'n at 10). To state a claim for breach of contract, a plaintiff must allege "the rights and obligations of each party." *Hanna v. Darr*, 154 S.W.3d 2, 5 (Mo. App. E.D. 2004). Neither YesCare nor CHS TX was a party to the Agreement and Plaintiffs have not alleged that either entity had any rights or obligations under it. Furthermore, as briefed in § II of the Motion to Dismiss, the language of the Agreement and subsequent Amendments unambiguously assigns liability to the original signatory alone, Corizon, LLC. Plaintiffs have failed to raise any contractual claims against CHS TX and YesCare. *See Auto-Owners Ins. Co. v. Midwest Agency*, 2007 WL 2885345, at \*5 (E.D. Mo. Sept. 27, 2007) (finding no claim for breach of contract against party who was not bound by the agreement); *BillMatrix Corp. v. Fed. Ins. Co.*, 2006 WL 8437453, at \*1 (N.D. Tex. Oct. 11, 2006) (dismissing breach of contract of insurance claim because defendant was not a party to the contract).

### III.   Plaintiffs Failed to Allege Common Law Fraud

Plaintiffs' claim for common law fraud (Count VII) fails because they did not adequately allege two essential elements: a representation or Corizon Health's knowledge of the falsity. *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 131-32 (Mo. banc 2010) (listing the elements of common law fraud). Plaintiffs claim Corizon Health's statement that it intended to pay Plaintiffs the amounts due and owing under the Agreement constitutes a representation. It does not. A promise alone it not a representation. *Yerington v. Riss*, 374 S.W.2d 52, 58 (Mo. banc 1964).

Electronically Filed - BOONE - January 30, 2023 - 09:47 PM

Plaintiffs further argue that Corizon Health's statement was made with knowledge of falsity because it knew at the time that it was not going to make any payment and concealed the restructuring from Plaintiffs. Although Plaintiffs point to a number of allegations in the Amended Petition, they still have not identified any specific factual allegations showing Corizon Health had knowledge that it would be unable to make the payments at the time it made the statement. Opp'n at 12. For example, Plaintiffs allege that "Corizon Health knowingly and falsely represented to Plaintiffs that Corizon Health intended to pay Plaintiffs the amounts due and owing under the Agreement." *Id.* (quoting Amended Petition at ¶ 237). These allegations are nothing more than a bare recitation of the elements of fraud. Moreover, failure to perform on a contract alone is not sufficient to show a promise to perform was fraudulent when made. *Carlund Corp. v. Crown Center Redevelopment Corp.,* 910 S.W.2d 273, 279 (Mo. Ct. App. 1995).

Furthermore, Corizon Health, YesCare, and CHS TX did not "conceal" the 2022 Corporate Restructuring. Opp'n at 13. The 2022 Corporate Restructuring was consummated through a public filing with the Texas Secretary of State, and Corizon Health maintains a copy of the plan of merger, which it must make available to creditors upon request. Tex. Bus. Orgs. Code § 10.151(b)(1)(H). Plaintiffs acknowledged that YesCare publicly announced the 2022 Corporate Restructuring in press releases and communications both before and after it took place.[4] Motion for Preliminary Injunction at 8. *See In re 1701 Commerce, LLC*, 511 B.R. 812, 823-26 (Bankr. N.D. Tex. 2014) (concluding that a corporation did not "conceal" the alleged fraudulent transfer when it referenced it in public filings the following month). Indeed, making clear the public nature of the transaction, Plaintiffs were able to file copies of the relevant transaction documents as attachments to their Amended Petition. *See, e.g.*, Am. Pet. Ex. 12 (Plan of Divisional Merger).

---

[4] *See* Amended Petition at ¶ 65.

Electronically Filed - BOONE - January 30, 2023 - 09:47 PM

**IV.    Plaintiffs Have Not Adequately Alleged a Fraudulent Transfer or Constructive Fraudulent Transfer**

Plaintiffs have failed to state a claim for Fraudulent Transfer (Count VIII) or Constructive Fraudulent Transfer (Count X). There was no transfer under Texas law. The TBOC clarifies that when property is allocated to a party to a merger, no "transfer or assignment" has occurred. § 10.008(a)(2)(C). Moreover, Plaintiffs fail to allege with specificity any facts, actions, or evidence that the transfer was intentionally fraudulent. *See Jennings v. SSM Health Care St. Louis*, 355 S.W.3d 526, 537 (Mo. App. E.D. 2011) (dismissing claim where allegations merely mirror elements of fraudulent misrepresentation). Plaintiffs attempt to distinguish *Jennings*, noting it is about a fraudulent misrepresentation claim rather than a fraudulent transfer claim. This is a distinction without a difference. Regardless of whether Plaintiffs allege a fraudulent transfer or fraudulent misrepresentation, they must do more than set forth allegations mirroring the elements of the claim. *See* Mo. Sup. Ct. Rule 55.15.

Plaintiffs next argue that YesCare and CHS TX conceded in ¶ 63 of their Motion to Dismiss that they pled their allegations "with particularity." YesCare and CHS TX stated that *only* the facts detailing the 2022 Corporate Restructuring itself were pled with particularity. Motion to Dismiss at ¶ 63. But describing a publicly available transaction says nothing about the fraudulent nature of the transfer.  Furthermore, Plaintiffs have failed to plead any facts showing a party concealed the 2022 Corporate Restructuring. *See* Section III, supra. Plaintiffs contend that *they* were unaware of the restructuring strategy, but do not allege that any party attempted to conceal it. *See ServisFirst Bank v. Young*, WL 7695689, at *4 (E.D. Mo. Dec. 24, 2020) (no evidence of fraudulent concealment where defendant complied with industry standards); *Ford v. R.J. Reynolds Tobacco Co.*, 553 F. Supp. 3d 693, 702–03 (E.D. Mo. 2021) (Dismissing fraudulent concealment and concealment fraud conspiracy claim where plaintiff "fails to adequately allege that the concealed facts were not within his fair and reasonable reach, and that he was unable to discovery the

Electronically Filed - BOONE - January 30, 2023 - 09:47 PM

concealed information, or that he exercised reasonable diligence"). Plaintiffs' reliance on *Allenspach-Boller v. United Cmty. Bank*, 2021 WL 1738884, at *4 (W.D. Mo. May 3, 2021) is misplaced. In that case, the defendants *deliberately hid* information regarding the allegedly fraudulent transfer from the creditor. Again, as reflected in the public pronouncements, emails, press releases and other communications cited in the Amended Petition and the other transaction documents attached thereto, Corizon Health has not attempted to hide the 2022 Corporate Restructuring from Plaintiffs or anyone else.  In fact, it did the opposite.

Plaintiffs have further failed to state a claim for fraudulent transfer because the 2022 Corporate Restructuring included reasonably equivalent value. A transfer is not fraudulent if it contained reasonably equivalent value. *Higgins v. Ferrari*, 474 S.W.3d 630, 640 (Mo. App. W.D. 2015). Plaintiffs do not contend that the 2022 Corporate Restructuring lacked reasonably equivalent value. Instead, they argue that YesCare and CHS TX rely on "purported facts not contained in the pleading." Opp'n at 2. This Court may consider exhibits attached to the petition as part of the allegations in ruling on a motion to dismiss. *Armistead v. A.L.W. Grp.*, 155 S.W.3d 814, 816 (Mo. Ct. App. 2005). The Plan of Divisional Merger provides that CHS TX assumed nearly $100 million of "senior secured credit facilities;" none of the liabilities assigned to Corizon Health are "secured." *See* Schedule 4.01(a)(1) & Schedule 4.01(b).The Divisional Merger is attached to the Amended Petition as Exhibit 12, and this Court may consider it in deciding a motion to dismiss.

Plaintiffs essentially seek to hold YesCare and CHS TX liable based on nothing more than the fact that Corizon Health underwent the 2022 Corporate Restructuring. They ask this Court to invalidate the Texas statutes authorizing the restructuring and claim that technical compliance with the TBOC does not insulate CHS TX and YesCare. Here, *the only thing* Plaintiffs have alleged is that 2022 Corporate Restructuring occurred. This standard would allow this Court, or any other in

Electronically Filed - BOONE - January 30, 2023 - 09:47 PM

Missouri, to hold that any divisional merger properly undertaken pursuant to the TBOC could be second-guessed upon the request of a single creditor in Missouri.

### V.     Plaintiffs Conspiracy Claims Fail Because Neither YesCare nor CHS TX Took Any Action in Furtherance of a Conspiracy

Finally, Plaintiffs conspiracy claims (Counts VII, VIII, IX, X, and XI) against YesCare and CHS TX should be dismissed because neither entity took any action in furtherance of the alleged conspiracy. These claims are merely strained attempts to hold YesCare and CHS TX liable as successors or alter egos of Corizon Health. To adequately plead a conspiracy, Plaintiffs must allege: "(1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and, (5) the plaintiff was thereby damaged." *Creative Walking, Inc. v. American States Ins. Co.*, 25 S.W.3d 682, 688 (Mo. App. E.D. 2000) (citations omitted).

Plaintiffs have not alleged any "act in furtherance of the conspiracy" taken by either YesCare or CHS TX. *Id.*  Furthermore, it is impossible that CHS TX could have had a "meeting of the minds" with Corizon Health or YesCare regarding the restructuring, as it did not exist until after the restructuring was complete. *Id*. Plaintiffs contend that YesCare and CHS TX may be held liable because they received assets from Corizon Health and had "full knowledge of the conspiracy." Opp'n at 14. Neither the passive receipt of assets nor knowledge is an *act* in furtherance of a conspiracy. *RehabCare Grp. E., Inc. v. Stratford Health Care Properties, LLC* does not support Plaintiffs' position. 2016 WL 11469771, at *4 (W.D. Mo. Feb. 8, 2016). In that case, the alleged conspirator took action in furtherance of the purported conspiracy by assisting in the conveyance of the property at issue. *Id*.

Plaintiffs' conspiracy claims are based on actions taken by *Corizon Health*, not YesCare or CHS TX. The majority of these allegations concern Corizon Health's conduct prior to the incorporation of YesCare, and all concern conduct that occurred prior to CHS TX's incorporation.

Electronically Filed - BOONE - January 30, 2023 - 09:47 PM

For example, Plaintiffs allege: "Defendants intended to and did induce Plaintiffs to perform under the Agreement by assuring Plaintiffs that Corizon Health would pay the amounts owed under the Agreement, including interest."[5] The Amended Petition clarifies that these "assurances" occurred in September of 2021—many months **before** either YesCare or CHS TX came into existence.[6] Indeed, CHS TX was created by the 2022 Corporate Restructuring in May 2022; it could not have participated in or had knowledge of the supposed conspiracy.[7]

The Opposition belies the true nature of Plaintiffs' conspiracy claims. They contend that YesCare and CHS TX may be held liable for conspiracy because they "were controlled by the same individuals that constituted Corizon Health's board…." Opp'n at 14. This is merely an attempt to hold YesCare and CHS TX liable for Corizon Health's alleged torts as alter egos or successors of Corizon Health. Thus, even if Plaintiffs' allegations were correct, their conspiracy claims would fail.  Two entities which are not legally distinct cannot conspire with each other. *RehabCare Grp.*, 2016 WL 11469771 at *5. As such, Plaintiffs' conspiracy claims must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant YesCare and CHS TX's Motion to Dismiss.

---

[5]    *See* Amended Petition at ¶ 234.

[6]    *See* Amended Petition at ¶¶ 77-78.

[7]    Plaintiffs claim *Jones v. Shooshan*, 855 F. Supp. 2d 594, 600 (E.D. Va. 2012) is inapposite because the company at issue in *Jones* was not created until years after the alleged tort. This is a distinction without a difference—regardless of whether a company is created days or years after an alleged tort, if it does not exist it cannot be a conspirator.

Electronically Filed - BOONE - January 30, 2023 - 09:47 PM

Dated: January 30, 2023

Respectfully submitted,

> **DOWD BENNETT LLP**
>
> */s/ Philip A. Cantwell*
> Philip A. Cantwell #65505
> Robyn Parkinson #72956
> 7676 Forsyth Blvd., Suite 1900
> St. Louis, Missouri 63105
> (314) 889-7300 (telephone)
> (314) 863-2111 (facsimile)
> pcantwell@dowdbennett.com
> rparkinson@dowdbennett.com
>
> **WHITE & CASE LLP**
>
> Samuel P. Hershey (*pro hac vice*)
> 1221 Avenue of the Americas
> New York, NY 10020
> Telephone: (212) 819-8200
> Email: sam.hershey@whitecase.com
>
> *Attorneys for CHS TX, Inc. and YesCare Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that on January 30, 2023 the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record:

Patrick J. Stueve
Ethan M. Lange
Jordan A. Kane
stueve@stuevesiegel.com
lange@stuevesiegel.com
kane@stuevesiegel.com

Thomas R. Warburton
twarburton@bradley.com

> By: */s/ Philip A. Cantwell*